MJS, P.C.

FILED
DEC 5 1994
CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| OMAR STRATMAN | No. 93-36006 |
| Plaintiff-Appellant, | D.C. No. CV-76-0132-A-JAV |
| v. | MEMORANDUM* |
| BRUCE BABBITT, Secretary of the Interior, LEISNOI INC., KONIAG INC. | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Alaska
James A. von der Heydt, District Judge, Presiding

Argued and Submitted October 31, 1994
Seattle, Washington

Before:   WRIGHT, BEEZER and FERNANDEZ, Circuit Judges

Omar Stratman appeals the district court's denial of his motion to vacate a judgment of dismissal that had been entered upon Stratman's motion, brought in accordance with the terms of a settlement agreement signed by Stratman and Koniag, Inc. The dismissal was as to all defendants. Stratman also appeals the court's declination to alter that ruling after granting his motion for reconsideration. We reverse.

We will not reverse a district court's refusal of relief under Federal Rule of Civil Procedure 60(b)(6) in the absence of

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

an abuse of discretion. United States v. RG&B Contractors, Inc., 21 F.3d 952, 954 (9th Cir. 1994). Moreover, as we have said, "[r]elief under Rule 60(b)(6) is extraordinary, especially where the judgment was rendered by consent." Washington v. Penwell, 700 F.2d 570, 574 (9th Cir. 1983); see also Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989) (resolution of litigation through settlement is favored). Even so, when an agreement fails of its purpose in its entirety, that does raise an extraordinary circumstance. Cf. Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162, 937 F.2d 408, 410 (9th Cir. 1991) (where party repudiated a settlement, the situation was extraordinary and setting aside dismissal was proper). This is just such a case.

Here, there was, as it turned out, a basic defect in the very inception and at the very core of the settlement agreement upon which the dismissal of this case was based. Unless Stratman made a deliberate choice to accept the risk of that defect, his agreement should not bind him and the dismissal of this action should be set aside. When the district court failed to set aside the dismissal it did, in this extraordinary circumstance, abuse its discretion. Thus, we will first refer to the effect that the defect had upon the settlement agreement itself and will then discuss the deliberate choice issue.

A.   The Agreement

The interpretation of the settlement agreement is subject to Alaska state law. Jeff D., 899 F.2d at 759. In Alaska, settlement agreements are interpreted according to the general principles of contract law. See Hayes v. Xerox Corp., 718 P.2d

929, 937 (Alaska 1986). Even a contract for a quitclaim deed can be rescinded if the parties who negotiated for the deed were operating under a material mutual mistake of fact. See <u>Matanuska Valley Bank v. Abernathy</u>, 445 P.2d 235, 237-38 (Alaska 1968). A material mutual mistake of fact occurs when "'there was a mistake of both parties at the time of contracting as to a basic assumption on which the contract was made; the mistake had a material effect on the agreed exchange of performances, and the party seeking relief did not bear the risk of the mistake.'" <u>Alaska Div. of Agric. v. Carpenter</u>, 869 P.2d 1181, 1183 (Alaska 1994) (citation omitted).

It cannot be gainsaid that the first two requirements are met. It is clear that the settlement agreement negotiated by Koniag and Stratman contemplated that the surface rights to the subject land would be included, and that this was the contracting parties' intention. Koniag and Stratman believed at the time they entered into the settlement agreement that Leisnoi did not exist and that Koniag held all of the former Leisnoi's interests. If, in practical effect, Leisnoi <u>did</u> exist, both parties were operating under a material mistake of fact that went to the heart of the contract they signed. Both parties believed that Koniag had the authority to represent Leisnoi's interests because Leisnoi was Koniag's predecessor. Leisnoi's interests in the disputed lands were the primary subject matter of the agreement; had the parties known that <u>at that time</u> it was impossible for them to negotiate a deal concerning those interests, they almost certainly never would have entered into the agreement.

Exhibit 3, p. 3

The only remaining requirement is that Stratman did not bear the risk of the mistake. For the reasons discussed below, he did not. Accordingly, the settlement agreement was not enforceable. It is in just such extraordinary circumstances that Rule 60(b)(6) relief is warranted. See In re Pacific Far E. Lines Inc., 889 F.2d 242, 248, 250 (9th Cir. 1989); see also Keeling, 937 F.2d at 410.

The result we reach is not foreclosed by issue preclusion because the Alaska Supreme Court did not consider whether the settlement agreement was invalid. It merely held that on account of the doctrine of lis pendens, the agreement was not binding on Leisnoi. See Leisnoi, Inc. v. Stratman, 835 P.2d 1202, 1208-10 (Alaska 1992). The Alaska Supreme Court had no occasion to consider whether frustration of the settlement agreement warranted reopening Stratman's district court case.

B.  Deliberate Choice

Rule 60(b)(6) relief is not available to remedy harm suffered as a result of a truly deliberate choice or strategy on the part of the moving party. Ackermann v. United States, 340 U.S. 193, 198, 71 S. Ct. 209, 211-12, 95 L. Ed. 207 (1950); Plotkin v. Pacific Tel. & Tel. Co., 688 F.2d 1291, 1293 (9th Cir. 1982).

In its 1982 settlement agreement with Stratman, Koniag warranted that "it will pursue its best efforts to achieve conveyance and patent of the lands, and that it will take no action to prevent conveyance." Stratman could not have anticipated that Koniag would enter into a settlement agreement in the demerger litigation that would declare the merger "void ab

initio." That agreement jeopardized the surface-estate conveyance. Despite the agreement it had negotiated with Stratman, Koniag acquiesced in the use of the "void ab initio" language at the request of the shareholder in the demerger litigation. Thus, Koniag helped create the very circumstance that frustrated the 1982 settlement agreement.

It is not significant for the purposes of "deliberate choice" analysis that Stratman agreed to accept a quitclaim deed. The agreement clearly contemplated that the surface estate was part of the deal. Koniag's attorney insisted on the use of a quitclaim deed because "he did not want Koniag to be obligated to convey a greater interest in the land than it received from the U.S. government." The record does not indicate that the attorney's concern stemmed from any worry that Koniag might have only subsurface rights to convey as a result of a demerger, but rather from a concern that Leisnoi might not have taken all of the necessary procedural steps to allow the United States to perfect the conveyance, or that some other procedural problems might arise. If the attorney did have the former concern, nothing suggests that he made it known to Stratman.

On balance, the district court abused its discretion in finding that Stratman made a deliberate choice to ignore the risk that Leisnoi one day might not be bound to make the conveyance. Although the record shows that Stratman knew of the pending demerger litigation, he could not have known that Koniag would agree to declare the merger "void ab initio" and that that would enable Leisnoi to claim the benefits but eschew the burdens of the

-5-

Exhibit 3, p. 5

settlement agreement. As it is, Leisnoi's position depends upon a much later opinion of the Alaska Supreme Court. That, in turn, elicited a vigorous dissent which asserted that the court had greatly changed the law itself. See Leisnoi, 835 P.2d at 1211 (Moore, J., dissenting). Thus, no deliberate choice was made.

C.  Indispensable Party

Assuming arguendo that Koniag is an indispensable party to this action, its settlement agreement with Stratman, which would apparently require Koniag's dismissal as a defendant were this case to proceed, does not affect the reopening of the action under Federal Rule of Civil Procedure 19. Rule 19 dictates only that indispensable parties be joined in an action. Koniag has been a defendant in this suit since January 1977. Nothing prevents an indispensable-party defendant, once joined, from settling with the plaintiff.

By its very terms, Rule 19(b)'s considerations of "equity and good conscience" as to whether an action should go forward absent an indispensable party come into play only "whenever joinder [is] not feasible." Here, joinder is not only feasible, it was accomplished seventeen years ago.

D.  Timeliness of the Rule 60(b)(6) Motion

A Rule 60(b)(6) motion must be brought "within a reasonable time." "What constitutes a reasonable time 'depends on the facts of each case.'" Pacific Far East, 889 F.2d at 249 (citation omitted). The primary considerations in determining whether a motion to vacate a dismissal was brought within a reasonable time are whether the moving party had good reason for not acting sooner

-6-

and whether the adverse party was prejudiced by the delay. Id. The district court, without discussion, found that the motion to vacate the dismissal was timely made. We agree.

"In the usual course upon repudiation of a settlement agreement, the frustrated party may sue anew for breach of the agreement and may not, as here, reopen the underlying litigation after dismissal." Keeling, 937 F.2d at 410.

Stratman chose to follow the "usual course" and seek specific performance of the settlement agreement in state court. By not also seeking to reopen the district court litigation at that time, Stratman avoided expending judicial as well as his own resources on litigation that might later prove unnecessary--or even, depending on its outcome, incompatible with the relief he sought in the specific performance action.[1]

Leisnoi and the Secretary claim that there will be prejudice to Leisnoi's shareholders if the dismissal is set aside. We fail to discern that. Any harm suffered by Leisnoi will occur either because it seeks to enjoy the settlement agreement's benefits without paying for them or because its claim to the land was seriously defective in the first place.

## CONCLUSION

After Stratman brought this action against appellees, the attorney defending it believed that Stratman had an excellent (90%) chance of success. Stratman, however, did what we encourage

---

[1] At oral argument appellees conceded that the seven and a half months between the decision in Leisnoi and the bringing of the Rule 60(b)(6) motion was not an unreasonable delay.

parties to do: he settled the action with the only entity that could then negotiate a settlement with him--Koniag. Now Leisnoi seeks to secure a Panglossian result for itself. In its best of all possible worlds everything will be for the best as far as it is concerned. Stratman will be held to his agreement with Koniag, but Leisnoi will have no obligations. We understand the desire, but the law does not allow for its gratification.

A material mutual mistake of fact existed at the time Stratman and Koniag negotiated the 1982 settlement agreement. Rule 60(b)(6) relief is warranted when there has been complete frustration of a settlement agreement, and the district court abused its discretion in declining to reopen Stratman's action under these extraordinary circumstances. We therefore reverse the district court's order denying Stratman's motion for Rule 60(b)(6) relief and remand to the district court with instructions that it vacate the judgment of dismissal and reopen Stratman's decertification litigation.[2]

REVERSED AND REMANDED.

---

[2] We deny the Secretary's motion to strike the reply brief or parts thereof.