FILED

SEP 2 5 1995

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

OMAR STRATMAN, et al.,  )
                       Plaintiffs,  )
      vs.  )
BRUCE BABBITT, Secretary of the  )
Interior, et al.,  )
                       Defendants.  )

Case No. A76-0132 CV (JKS)

ORDER

       This action, colloquially referred to as the case that would not die and sometimes as the ghost of Christmas past, was the oldest on the Court's docket inherited from Judge von der Heydt after Judge von der Heydt retired. From its inception it has been characterized by vigorous debate and frequent name calling. Both sides have accused the other of fraud and chicanery.[1] It occurred to the Court that the central issue in this case—

---

[1] Stratman contends in essence that the non-governmental defendants are thieves who have outwitted the gullible government defendants to permit rape and pillage of the public lands. The non-governmental defendants implicitly, if not explicitly, contend that Stratman is a pirate who hopes to use some technical flaws in ancient proceedings as a device to extort
                                        (continued...)

00131

Exhibit 8, p. 1

whether the government had improvidently certified a figment of a developer's imagination as a Native village entitled to benefits under the Alaska Native Claims Settlement Act—was a matter best addressed in the first instance by the certifying agency, the Interior Board of Land Appeals ("Agency"). Consequently, the Court "remanded" the case to the Agency to allow the parties an evidentiary hearing to determine once, for all, and forever, whether Lesnois is real or imaginary, and if imaginary, whether Lesnois is improvidently-allocated land from the federal government.

Had this decision been made twenty years ago when I was on the Alaska Superior Court, I would have stayed further proceedings and retained jurisdiction. In those days many of my cases were inactive, benefiting or suffering from indefinite postponements stipulated to by the attorneys, if not always the parties. The enactment of the federal Civil Justice Reform Act of 1990[2] heralded a new policy in federal courts. Today, in this Court, no case is allowed inactivity. Every case should be expeditiously moving toward settlement, involuntary dismissal, or trial. As a result, it is not my practice to exercise discretion in favor of postponements, stays, continuances, or extensions, unless other alternatives are unavailable. Where the parties indicate that some action by some other body is necessary to bring a case to completion, it is my practice to dismiss without prejudice to refiling when the

---

(...continued)
money from needy Alaskans. Stratman sees himself as Robin Hood, the defendants see him as Blackbeard. The government defendants have chosen to emulate Jane Austen's Mr. Bennett.

[2] Pub. L. No. 101-650, 104 Stat. 5089 (1990), codified as amended as 28 U.S.C. §§ 471-482.

ORDER     2
F:\HOME\JUDGES\DOCS\SHARED\CIV\A76-0132.001

other action is completed. The only obstacle, intervening statutes of limitation, is assumed subject to equitable tolling while all i's are dotted and t's crossed.

It was never my expectation that this case would finally be resolved at the administrative level. Once an agency decision was reached, I assumed that the parties would file a new action and return to federal court. Nor have I ever expected that some other judge would ultimately resolve this case. In the Court's practice, when old dogs bark anew they are returned, even if bearing a new pedigree, to the kennel from which they escaped.

Finally, not wishing to prejudice the Agency, I decline to make any findings of fact or conclusions of law regarding the issues that most divide the parties. It appears that Stratman has a good, but by no means conclusive, case that the Agency initially erred. Whether the Agency erred or not is an issue I prefer to decide at a later time after I have the benefit of the Agency's decision. By the same token, what remedy is appropriate in 1996 for errors committed in 1976 is an issue not easily resolved. It is not clear that equity would require the same response to conclusions reached in 1996 that it would have required had those conclusions been reached in 1976.

In conclusion, the dismissal in this case was without prejudice to a new action after the Agency reaches a decision. It was, nonetheless, a dismissal.[3] Consequently, the Court has no action pending before it which would support a motion for a preliminary injunction. In fear, given the history of this case, that this comment might be viewed as an invitation to

---

[3] The whole case was remanded to the Agency to permit exhaustion of all available administrative remedies and the exercise of primary jurisdiction on any question about which the Agency's expertise would be helpful.

ORDER                                    3
F:\HOME\JUDGES\DOCS\SHARED\CIV\A76-0132.001

file a new action before the Agency acts, and that someone might view that invitation as fortified by the Court's comments on equitable tolling, it should be pointed out that if the Court had jurisdiction to grant a preliminary injunction it would not do so. Applying the Ninth Circuit's sliding scale, I find that there are significant issues in dispute, and I am not satisfied that the balancing of the hardships tilts in either party's favor. Thus, no action is the preferred action at this time. In part, this decision turns on my conclusion that Stratman has not proved his right to assert the public interest. At this stage, it appears that the United States should be permitted to speak for the public interest in the present, even if the Agency misjudged Lesnois' claims in the past. Further, while the Court has dismissed the parties' assertions of bad faith against each other as so much background noise, it is not prepared to find on this record, which is voluminous, that any party's hands are so clean that equity should intervene on his or her behalf. While the Court is prepared to consider each party's claims anew after the Agency acts, for the present they will be left where the Court found them.[4]

---

[4] Given Congress' enthusiasm for "private attorneys general," much litigation ensues in which greed, not the public interest, motivates the plaintiff and the ultimate settlement, nominal damages and large attorney's fees, might lead an objective third party to see scandal. For a judge to intervene in such cases to chill what Congress might desire could undermine congressional intent and violate the separation of powers. This case is more problematical than the typical "strike suit" and the issue of "clean hands" more ambiguous.

ORDER                                    4
F:\HOME\JUDGES\DOCS\SHARED\CV\A76-01J2.001

IT IS THEREFORE ORDERED:

The motion for a preliminary injunction at Docket No. 317 is DENIED for lack of jurisdiction. There is no action currently pending between these parties in this Court.

The motions to strike at Docket Nos. 319, 321, and 324 are MOOT and are therefore DENIED. The motions to stay briefing at Docket Nos. 320, 322, and 323 are MOOT and are therefore DENIED.[5]

Dated at Anchorage, Alaska, this 2[?] day of September, 1996.

JAMES K. SINGLETON, JR.
United States District Judge

---

[5] The Court has examined Stratman's claim that the Court's treatment of this case coupled with the Ninth Circuit's holding on appeal effectively denies him the right guaranteed by 28 U.S.C. § 1292(a)(1) to an immediate appeal of an order denying a preliminary injunction. Consequently, the Court has considered whether to grant a partial reconsideration, pursuant to Rule 60 of the Federal Rules of Civil Procedure, to reinstate the judgment dismissing this case to permit an immediate appeal. No such order will be entered. It is the considered view of this Court that the Agency should act before equity intervenes and that until the Agency acts any intervention would be unwise. Stratman's argument that if action is withheld trees will die unmourned and the beauty of Kodiak Island will be subjected to aesthetic blight until the end of time, has been carefully evaluated, but given uncertainty about Stratman's clean hands, the Court declines to intervene.

ORDER
(A76-0132--CV (JKS))

B. LANDON (AUSA)
T. BURTON

E. BOYKO (BOYKO)
R. MIDDLETON (MIDDLETON)
K. SCHNEIDER

5