

# United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS
Interior Board of Land Appeals
801 N. Quincy St. Suite 300
Arlington, VA  22203

703 235 3750                               703 235 8349 (fax)

OMAR STRATMAN
v.
LEISNOI, INC.
KONIAG, INC., INTERVENOR
BUREAU OF INDIAN AFFAIRS, INTERVENOR

IBLA 2000-16                               Decided October 29, 2002

    Decision following issuance of a recommended decision by Administrative Law Judge Harvey C. Sweitzer on the issue referred to the Board by the United States District Court for the District of Alaska of whether Woody Island is an eligible Native village under section 11(b)(3) of the Alaska Native Claims Settlement Act, 43 U.S.C. § 1610(b)(3) (1994).

Case returned to District Court.

1.     Alaska Native Claims Settlement Act: Native Land Selections: Village Selections: Generally--Alaska Native Claims Settlement Act: Village Eligibility: Generally--Patents to Public Land: Effect

    While the effect of the issuance of a patent by the United States is to transfer the legal title from the United States and to remove from the jurisdiction of the Department the consideration of all disputed questions concerning the rights to lands, that rule is not without qualification, and in a case involving the Secretary of the Interior's special fiduciary responsibility to Alaska Natives, it has been held that the Department retains the responsibility of making an initial determination as to the validity of a Native allotment claim to patented land as a prerequisite to deciding whether or not the Government should bear the burden of going forward with a suit to annul the patent and thereby restore adjudicatory jurisdiction over the land in question to the Department. However, when an individual, who does not stand in any special legal relation- ship with the Department, seeks to overturn an Alaska Native village eligibility determination approved by the Secretary, which has been the

Exhibit 10

IBLA 2000-16

> basis for transfer of lands to the village corporation, and the individual has no conflicting claim to the lands, the rationale for the exception does not exist.

2. Alaska Native Claims Settlement Act: Village Eligibility: Generally--Patents to Public Land: Effect--Rules of Practice: Appeals: Standing to Appeal

> Suits by the United States to vacate and annul any patent must, in accordance with 43 U.S.C. § 1166 (1994), be brought within six years after the date of issuance of such patents. Where land conveyances to an Alaska Native village corporation were made by patents and interim conveyances more than six years ago and title has been quieted in that corporation, the statutory limitation bars further Departmental involvement at any level, regardless of the possible merits of a challenge to the village's eligibility by an individual with no special relationship to the Department and no adverse claim to any of the land transferred to the Native village corporation.

APPEARANCES: John R. Fitzgerald, Esq., New Orleans, Louisiana, for Leisnoi, Inc.; Michael J. Schneider, Esq., Anchorage, Alaska, for Omar Stratman; James R. Mothershead, Esq., Assistant Regional Solicitor, Office of the Regional Solicitor, Alaska Region, U.S. Department of the Interior, Anchorage, Alaska, for the Bureau of Indian Affairs; R. Collin Middleton, Esq., and Brennan P. Cain, Esq., Anchorage, Alaska, for Koniag, Inc.

OPINION BY DEPUTY CHIEF ADMINISTRATIVE JUDGE HARRIS

This case originally came before the Board in 1995. On November 21, 1995, the United States District Court for the District of Alaska entered an order in the case of Stratman v. Babbitt, No. A76-0132 CV (JKS), remanding the case to this Board for consideration of Omar Stratman's challenge to the eligibility of Woody Island (incorporated as Leisnoi, Inc. (Leisnoi)) as a Native village under section 11(b)(3) of the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. § 1610(b)(3) (1994). 1/

_____

1/ The court's Nov. 21, 1995, remand order disposed of certain pending motions. The court had initially remanded the case in an order dated Sept. 13, 1995. Technically, however, the case was not a remand, but a referral for agency action. Stratman never sought nor received a final agency decision on the question of the eligibility of Woody Island for ANCSA benefits. The case "remanded" to this Board originated in Federal Court in 1976.

157 IBLA 303

Exhibit 10

The Board docketed the case as <u>Omar Stratman (On Judicial Remand)</u>, IBLA 96-152. Thereafter, pursuant to 43 CFR 4.29, the parties filed reports recommending procedures to be followed by the Board in order to comply with the court's order.

While this case commenced with the Board in 1995, its history extends to the early 1970's when the unlisted village of Woody Island filed an application with the Bureau of Indian Affairs (BIA) seeking ANCSA benefits. 2/ Following an investigation, the Acting Area Director, Juneau Area Office, BIA, provided notice by publication in the <u>Federal Register</u> on December 21, 1973, 38 FR 35028, of his decision that various Native villages, including Woody Island, were eligible for benefits under ANCSA. He allowed interested parties an opportunity to protest. Timely protests were filed, but Stratman did not protest. The Acting Area Director considered the timely protests and in his final decision published in the <u>Federal Register</u> on February 21, 1974, 39 FR 6627, found Woody Island to be an eligible Native village. The protestants filed administrative appeals, and, in an order dated August 28, 1974, the Alaska Native Claims Appeal Board (ANCAB) dismissed the appeals and directed the Area Director to certify the Native village of Woody Island to be eligible for benefits under ANCSA. 3/ The Secretary approved that determination on September 9, 1974, and it became a final Department decision. See 43 CFR 2651.2(a)(5) (1973). Thus, administrative proceedings concerning the eligibility of the unlisted village of Woody Island for ANCSA benefits concluded in 1974.

However, in 1976 Stratman commenced his judicial challenges to Woody Island's eligibility in what became known as the "decertification

---

2/ Congress set forth at section 11(b)(1) of ANCSA, 43 U.S.C. § 1610(b)(1) (1994), a list of Native villages considered to be presumptively eligible for the benefits afforded by the statute. Woody Island was not listed. However, in section 11(b)(3), Congress provided criteria for the Secretary to follow in determining whether other villages, not listed in subsection (b)(1), were eligible for benefits. 43 U.S.C. § 1610(b)(3) (1994).
3/ There were three appellants in that case, the Sierra Club, the Alaska Wildlife Federation and Sportsmen's Council, and Phil R. Holdsworth. On May 20, 1974, the latter two appellants filed a "Notice of Inability to Continue in Appeals Proceedings." However, they requested that ANCAB consider the points of law raised in their previous pleadings. By order dated May 24, 1974, ANCAB dismissed them as appellants, but accorded them <u>amicus curiae</u> status. Thereafter, on July 13, 1974, the Sierra Club withdrew its challenge to the eligibility of Woody Island. In its Aug. 28, 1974, order, ANCAB stated that it had "considered the briefs previously filed by the Alaska Wildlife Federation and Sportsmen's Council and Phil R. Holdsworth, and finds the legal arguments advanced therein to be without sufficient merit to justify the continuance of these proceedings." (Order at 2.)

Exhibit 10

litigation." 4/ At that time, he and several other residents of Kodiak Island filed suit in the United States District Court for the District of Alaska seeking to enjoin the United States from patenting any land to Leisnoi, the village corporation, under ANCSA. 5/ The plaintiffs in that litigation alleged two sources of standing--all claimed that transfer of lands to the Native village corporation would injure their recreational interests in the land and two plaintiffs, Stratman and Toni Burton, also asserted direct economic injury because they held Federal grazing leases on some of the lands selected by Leisnoi.

The district court dismissed the claims based on recreational injury because of plaintiffs' failure to exhaust administrative remedies following notice in the Federal Register of Woody Island's application. However, it declined to dismiss Stratman's and Burton's claims, based on the rationale that their grazing leases entitled them to actual, rather than constructive, notice of the application and BIA's decision. Kodiak-Aleutian Chapter of the Alaska Conservation Society v. Kleppe, 423 F. Supp. 544, 547 (D. Alaska 1976). Thereafter, Leisnoi relinquished any claims to lands covered by the Federal grazing leases and the district court dismissed the case as moot. Stratman v. Andrus, A76-132 (Oct. 16, 1978).

Stratman and others sought review by the United States Court of Appeals for the Ninth Circuit. That court remanded the case to the district court for a ruling on the Government's motion for relief from judgment. In that motion, the Government had argued that persons who held grazing leases (such as Stratman and Burton) and other interests which constituted valid existing right under section 14(g) of ANCSA, 43 U.S.C. § 1613(g) (1994), should not be allowed to collaterally attack village eligibility decisions because the property interests which gave rise to their due process claims were protected by that section. Thereafter, United States District Chief Judge von der Heydt, in granting the Government's motion, held:

> The government correctly contends that the plaintiffs
> could allege no injury to their property interest because
> the Alaska Native Claims Settlement Act, 43 U.S.C. § 1613(g),

---

4/ A time line covering actions through 1985 is found in the decision of the Supreme Court of Alaska, Leisnoi, Inc. v. Stratman, 835 P.2d 1202, 1214-15 (1992), and BIA, in its report to the Board, provided a concise chronological narrative of events from the time of Woody Island's 1973 application for recognition as a qualified Native village to the district court's 1995 remand. BIA Report at 7-14. We will not recount that history in detail herein.
5/ Stratman also pursued an administrative appeal of the BIA's Jan. 19, 1977, decision finding Leisnoi to be entitled to ANCSA benefits. However, ANCAB dismissed Stratman's appeal finding that, although Stratman's Federal grazing lease was a property interest in land under the meaning of 43 CFR 4.902 (1977), he was not adversely affected by the decision and, therefore, lacked standing to appeal. Appeal of Omar Stratman, 2 ANCAB 329 (1978).

Exhibit 10

IBLA 2000-16

>
> protects all valid existing rights and makes the land
> patented to the Natives subject to those rights. The
> Act provides:
>
>> ["]Where prior to patent of any land or
>> minerals under this Act, a lease, contract,
>> permit, right-of-way, or easement (including
>> a lease issued under 6(g) of the Alaska
>> Statehood Act) has been issued. . the patent
>> shall contain provisions making it subject
>> to the lease, contract . ."
>
> 43 U.S.C. § 1613(g). This provision means that whatever
> property interests were held by Stratman and Burton, including
> the federal grazing leases, could not be injured by Woody
> Island's eligibility and the selection of land by its village
> corporation. Any patents issued to the village corporation
> would have to protect the property interests upon which the
> court previously based its decision on exhaustion of
> administrative remedies.

Stratman v. Andrus, 472 F. Supp. 1172, 1173-74 (D. Alaska 1979).
Accordingly, he vacated that portion of his 1976 decision denying the
Government's motion to dismiss as to Stratman and Burton, and he dis-
missed the claims of Stratman and Burton.

Stratman again appealed to the United States Court of Appeals for
the Ninth Circuit, and that court held that, as recreational users, all
the plaintiffs had standing to appeal. However, it then differentiated
between the plaintiffs with purely recreational interests and the plain-
tiffs who had recreational interests and, through their Federal grazing
leases, "record interests in land which was subject to allotment."
Stratman v. Watt, 656 F.2d 1321, 1325 (9th Cir. 1981). It affirmed the
dismissal of the action as to the former group on the basis of their
failure to exhaust administrative remedies following notice in the Federal
Register of Woody Island's application. Id. It concluded that those
plaintiffs were not entitled to actual notice.

On the other hand, it held that it agreed with the district court's
original determination that the latter group was entitled to actual notice
of the application, and that "[s]ince they did not receive such notice,
they should not be barred by exhaustion requirements." Id. The circuit
court then concluded:

> The district court, in finally disposing of this case
> on jurisdictional grounds, did not consider Stratman's
> and Burton's remaining recreational interests and there-
> fore did not weigh the various alternatives which might
> be open to it in this regard. The judicial requirement
> of exhaustion of administrative remedies is not
> mechanically applied and we believe the question should

Exhibit 10

    be considered initially by the district court; we remand for such consideration.

Id. at 1326.

    The district court did not rule on that remand because the decertification litigation was voluntarily dismissed in 1982 on the basis of a settlement agreement between Stratman and Koniag, later declared invalid. 6/ In 1994, the United States Court of Appeals for the Ninth Circuit directed the United States District Court for the District of Alaska to reopen Stratman's decertification litigation. Stratman v. Babbitt, No. 93-36006 (9th Cir. Dec. 4, 1994); BIA Report, Appendix O.

    In a scheduling Order dated May 10, 1995, Judge von der Heydt, who presided in the original suit, "identified five threshold issues in this action." (Leisnoi's Report, Ex. 6 at 1.) He listed those issues, as follows:

    1. Whether the court should dismiss this action for failure of plaintiff Omar Stratman (hereinafter "plaintiff") to exhaust his administrative remedies;

    2. Whether res judicata bars this action;

    3. Whether plaintiff's second settlement agreement with Koniag, Inc., contractually precludes Stratman from proceeding against Leisnoi, Inc.; [7/]

    4. Whether Section 1427 of the Alaska National Interest Lands Conservation Act [(ANILCA), Pub. L. No. 96-487, 94 Stat. 2519-20 (1980)] constitutes congressional ratification of Leisnoi's eligibility thus barring plaintiff's action; and

    5. Whether plaintiff's lis pendens should be expunged.

Id.

    The court allowed briefing on the issues and stated: "If the court does not resolve this action on one of the five threshold issues, the court

---

6/ At the time of the settlement, Leisnoi had merged with Koniag and Koniag had taken over Leisnoi's defense in the decertification litigation. In 1984, the merger was declared void ab initio. See Leisnoi, Inc. v. Stratman, 835 P.2d at 1204-05.

7/ At page 12 of its report, BIA states that Koniag and Stratman entered into a second settlement agreement, dated June 6, 1990, and recounts some of the provisions of that agreement.

IBLA 2000-16

will remand the matter to the Interior Board of Land Appeals for a determination of Leisnoi's eligibility." Id. at 2.

The court did not resolve the case on any of those issues. In an Order dated September 13, 1995, Judge James Singleton, to whom the case had been transferred following Judge von der Heydt's retirement, found that res judicata did not bar the action, that failure to exhaust did not apply to the action "[s]ince the Ninth Circuit has already determined that Stratman did not have notice of the occasion to exhaust administrative remedies," and that Koniag's second settlement did not preclude Stratman's action. (Order at 2). He further stated:

> [T]his appears to be a perfect case to read ripeness and primary jurisdiction together to require that Stratman litigate his challenge to Leisnoi before the agency before he brings it here. The agency in the first instance should determine whether Leisnoi is a phantom of the Secretary's imagination, as Stratman contends, or as its members contend, the modern representative of an ancient people, the victim of an itinerant berry picker. Sending the issue back will permit the agency to exercise its expertise. If there is a reasonable basis for the Secretary's action, taking into account the limited time Congress allowed him for making the determination, his action will be upheld. If, despite the leeway he must be given, the Secretary did certify a phantom village, the agency is the best place for that determination to be made.  * * *

\*   \*   \*   \*   \*   \*   \*

> This case should therefore be sent to the IBLA for consideration of Stratman's challenge to Leisnoi. That course will permit exhaustion of administrative remedies, albeit belated, and give the Court the benefit of the agency's expertise and the agency the benefit of any intervening action by Congress.  * * * Leisnoi has been in limbo too long. It should have an opportunity to show that it is real.

(Order at 2-3.)

Regarding the issue of ratification under section 1427 of ANILCA, Judge Singleton stated: "This is a difficult question that should be decided in the first instance by the agency." Id. at 2. 8/

In his November 21, 1995, Order, Judge Singleton denied further motions of the parties, including requests by Stratman that the court direct this Board to expedite the matter, and stated:

---

8/ The court made no mention of the fifth issue listed in the May 10, 1995, Order.

Exhibit 10

> It is unfortunate that a case with a 1976 docket
> number is still pending. Stratman fears that agency
> action, like a tree to be grown from a seed, takes
> much time. The Court agrees. We had best plant the
> seed so that the tree can begin to grow. An interlocutory
> appeal would not speed the termination of this litigation.
> The parties have already been to the circuit and back. The
> agency should address the statutes and regulations in the
> first instance. [9/]

In their reports to this Board about the proper procedure to take following the court's "remand," the parties took various positions about whether the Board should decide any controlling legal issues first or address the factual issue of eligibility. After considering each of those reports, the Board concluded that the proper course of action in complying with the court's referral order was to defer ruling on any possible controlling legal issues and refer the case to the Hearings Division for the assignment of an Administrative Law Judge to provide a recommended decision on the eligibility issue. Our rationale was that any ruling by the Board on a controlling legal issue at that juncture would have resulted in immediate further judicial review, the culmination of which could have been another remand for an eligibility determination.

We now have before us the results of our referral to the Hearings Division, Judge Sweitzer's recommended decision on the eligibility of Woody Island, and the legal issues raised by the parties. 10/ The Board finds itself in a novel position in this case because our jurisdiction has not been invoked in the usual fashion. This Board is a quasi-judicial tribunal whose only function and obligation is to consider and decide appeals over which it has jurisdiction. 43 CFR 4.1(b)(3). Ordinarily, a party adversely affected by a decision of an agency official would seek review by this Board of such a decision. In this case, however, there is no agency

---

9/ In an oral argument on Apr. 8, 1996, before the United States Court of Appeals for the Ninth Circuit in Stratman v. Babbitt, No. 95-35376, an interlocutory appeal proceeding from denial of a preliminary injunction, Stratman argued that despite its remand Order, the district court had "retained jurisdiction of a number of issues in this case." (Reply to Stratman's Opposition to Motion to Strike, Ex. 3 at 3.) The court disagreed: "After this appeal was filed, the district court, on November 21, 1995, entered judgment and remanded this action, in its entirety, to the Interior Board of Land Appeals." (Emphasis in original.) Id., Ex. 4; see id., Ex. 3 at 18. The court dismissed Stratman's appeal as moot and, on June 3, 1996, denied Stratman's petition for rehearing. Id., Ex. 5. Also, on June 14, 1996, the court dismissed Stratman's appeal of the district court's remand Order. Id., Ex. 9.
10/ Stratman argues that the Board lacks jurisdiction to determine any issues other than those referred by the district court, which he asserts are whether Leisnoi satisfied ANCSA's criteria for eligibility as a native village; and (2) whether Leisnoi's status as an eligible native village

Exhibit 10

decision for direct review. All the agency decisions in this case issued over 25 years ago. The case has found its way to us on referral from District Judge Singleton, who read "ripeness and primary jurisdiction together to require that Stratman litigate his challenge to Leisnoi before the agency before he brings it here." (Sept. 13, 1995, Order at 2.)

### Jurisdiction/Administrative Finality

Stratman seeks to resurrect the issue of the eligibility of Woody Island for ANCSA benefits, an issue decided with administrative finality in 1974 when the Secretary of the Interior approved the determination that Woody Island was, in fact, eligible. Since that time the Department of the Interior has treated Woody Island as an Alaska Native village and the benefits of that eligibility have been bestowed on Leisnoi.

In a decision dated September 24, 2001, the United States Court of Appeals for the Ninth Circuit ruled in a Quiet Title Act action brought by Leisnoi, and dismissed by the District Court for the District of Alaska for lack of jurisdiction, that the district court erred in dismissing the case. Leisnoi, Inc. v. United States, 267 F.3rd 1019 (9th Cir. 2001). The land at issue was the surface estate of lands described in Patent Nos. 50-86-0067, 50-86-0093, 50-86-0632, 50-86-0634, and interim conveyances 171 and 1137 issued by the United States to Leisnoi. The circuit court held that two conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act, 28 U.S.C. § 2409a (1994): (1) the United States must claim an interest in the property at issue; and (2) there must be a disputed title to real property between interests of the plaintiff and the United States. It found that the first condition existed because the United States claimed reserved easements in Leisnoi's property. It explained that the condition was met, even though Leisnoi did not dispute the Federal Government's entitlement to those easements, because the relevant language of the Quiet Title Act does not require that the claimed interest be in dispute. It found the second requirement met because, at the time the complaint was filed (and since), there was a continuing dispute between the asserted interests of Leisnoi and the United States in the property at issue. It stated that the fact that the United States' interests in the dispute were asserted by Stratman, rather than the United States itself, did not change the conclusion. The court ruled that a third party's claim of an interest of the United States can suffice to create a dispute in title if the third party's claim clouds the plaintiff's title. Leisnoi, Inc. v. United States, supra at 1023. The court expressly stated, however, that "the land could not revert to the United States regardless of the outcome of the decertification proceeding [pursued by Stratman]." Id. at 1022 n.2.

On remand, the district court noted the circuit court's language that, regardless of the outcome of the decertification proceeding, the land

---

fn. 10 (continued)
was ratified by Congress in its passage of section 1427 of ANILCA. We disagree. We do not read the court's referral to be so limiting.

IBLA 2000-16

could not revert to the United States. It also stated that on January 9, 2002, the United States had disclaimed any interest in the lands included in the patents and interim conveyances, "except for those property interests retained or reserved on the face of those patents and/or interim conveyances or statutorily reserved." The district court confirmed the disclaimer of interest filed by the United States and quieted title to the surface of the lands in Leisnoi. Leisnoi Inc. v. United States, No. A99-608 CV (HRH) (Jan. 15, 2002).

[1] The effect of the issuance of a patent by the United States is to transfer the legal title from the United States and to remove from the jurisdiction of the Department the consideration of all disputed questions concerning the rights to lands. Germania Iron Co. v. United States, 165 U.S. 379, 383 (1897); Southern Pacific R. Co. v. United States, 51 F.2d 873 (9th Cir. 1931); Sage v. United States, 140 F. 65 (8th Cir. 1905); Eddie S. Beroldo, 123 IBLA 156, 158 (1992); Lone Star Steel Co., 101 IBLA 369, 374 (1988). 11/ However, that rule is not without qualification. Thus, the court recognized in Aguilar v. United States, 474 F. Supp. 840 (D. Alaska 1979), that, where the land sought by a Native allotment applicant had been previously conveyed out of Federal ownership and, therefore, was no longer subject to the Department's adjudicatory jurisdiction, the Department nevertheless retained the responsibility of making an initial determination as to the validity of the allotment claim as a prerequisite to deciding whether or not the Government should bear the burden of going forward with a suit to annul the patent and thereby restore adjudicatory jurisdiction over the land in question to the Department.

The basis for the exception in Aguilar was the court's recognition of the Secretary's special fiduciary responsibility to Native Americans, in that case, Alaska Natives. The court stated: "The protection of Indian property rights is an area where the trust responsibility has its greatest force." Aguilar v. United States, 474 F. Supp. at 846 (citations omitted).

The rationale for creation of the exception in Aguilar does not exist in this case, however. The individual seeking to overturn the Department's eligibility determination does not stand in any special legal relationship to the Federal Government. In addition, he does not have a conflicting claim to the lands transferred to Leisnoi. In fact, he never made an administrative challenge to Woody Island's eligibility.

[2] Moreover, suits by the United States to vacate and annul any patent must, in accordance with 43 U.S.C. § 1166 (1994), be brought within six years after the date of issuance of such patents. See United States v. Eaton Shale Co., 433 F. Supp. 1256 (D. Colo. 1977). The patents and interim conveyances to Leisnoi were all made more than six years ago and

---

11/ An interim conveyance operates like a patent under 43 U.S.C. § 1621(j) (1994), and title to the affected land passes from the United States. Bay View, Inc., 126 IBLA 281, 286 (1993); Heirs of Linda Anelon, 101 IBLA 333, 336 (1988); Peter Andrews, Sr., 77 IBLA 316, 319 (1983).

Exhibit 10

title to those lands has been quieted in Leisnoi. Such facts brings into play the limitation against the United States provided by that statute and bar further Departmental involvement at any level, regardless of the possible merits of Stratman's challenge. See State of Alaska, 45 IBLA 318, 330 (1980). Therefore, even assuming that Stratman had a meritorious claim, we could not recommend to the Secretary that she support litigation by the United States to recover title from Leisnoi because the statute protects Leisnoi's title from such action. 12/

Because this Board lacks subject matter jurisdiction in this case, we have no authority to entertain Stratman's challenge to Woody Island's eligibility, which has made its way to us through referral from a court. The court cannot vest the Board with jurisdiction it does not have. Were Stratman's challenge to have arrived, as our cases do, in the form of an appeal from an agency decision, it would be dismissed.

Nevertheless, we recognize that an agency, on remand of a matter from a court, must obey the court's mandate and directions without variation and, if the cause is remanded with specific directions, further proceedings before the agency must be in substantial compliance with such directions, even if the directions are erroneous. Mefford v. Gardner, 383 F.2d 748, 758-59 (6th Cir. 1967).

While this case has not been remanded to us, it has been referred to us. And the district court has asked that we bring agency expertise to bear on questions before it. Despite our lack of subject matter jurisdiction, we have followed the court's directive by referring the eligibility question to the Hearings Division, Office of Hearings and Appeals, for a recommended decision. Judge Sweitzer's decision, which concluded that Woody Island was not an eligible village under sections 14(a) and (b) of ANCSA, fulfills the court's mandate on that issue. Next, in compliance with the court's order we will address the requisite legal issues.

### Ratification

The legal issue referred to the Board by the court is whether Woody Island's status as a Native village has been ratified by Congress.

In ANILCA, Pub. L. No. 96-487, 94 Stat. 2371, 2518-28 (1980), Congress enacted section 1427, entitled "Koniag Village and Regional

---

12/ In Cramer v. United States, 261 U.S. 219, 233 (1923), the Court held that, despite the fact that more than 6 years had passed since issuance of patent, the United States had jurisdiction "to remove a cloud upon the possessory rights of its [Indian] wards." Because of that relationship, the Court found that the action on behalf of Indian allotment claimants could be maintained despite the 6-year statute of limitations "because the relation of the Government to them is such as to justify or require its affirmative intervention." Id. at 234. No such relationship exists in this case.

Exhibit 10

Corporation Lands." In section 1427(a)(4) of ANILCA, Congress defined the term "Koniag deficiency village corporation," as meaning any or all of four corporations, one of which was "Leisnoi, Incorporated." It also defined the term "Deficiency village acreage on the Alaska Peninsula" as

> the aggregate number of acres of public land to which "Koniag deficiency Village Corporations" are entitled, under section 14(a) of the Alaska Native Claims Settlement Act, to a conveyance of the surface estate on account of deficiencies in available lands on Kodiak Island, and to which Koniag, Incorporated is entitled under section 14(f) of that Act to conveyance of the subsurface estate.

Section 1427(a)(2) of ANILCA.

Congress then provided that in satisfaction of various rights, including "the right of each Koniag Deficiency Village Corporation to conveyance under [ANCSA] of the surface estate of deficiency village acreage on the Alaska Peninsula," the Secretary of the Interior would convey, as provided in section 1427(c), "the surface estate of all public lands on Afognak Island," with certain exceptions. 13/

Leisnoi and Koniag argue that such action by Congress amounts to a ratification of Woody Island's certification and the right of Leisnoi to receive conveyances of land under ANCSA. Such action, itself, they assert, dictates that Stratman's administrative challenge to Leisnoi's eligibility must be dismissed.

Stratman, on the other hand, states that the purpose of section 1427 of ANILCA was merely to exchange the land selection and entitlement rights of various village corporations and Koniag Regional Corporation to the lands on the Alaska Peninsula, to which they were entitled under ANCSA, for lands on Afognak Island, which were unavailable under ANCSA. Stratman argues that nothing in section 1427 or the legislative history of that provision evidences any intent by Congress to exempt Woody Island from the eligibility requirements of section 11(b)(3) of ANCSA. Section 1427, he claims, only amended the land selection and entitlement provisions of ANCSA by substituting the lands on Afognak Island for those lands withdrawn and available for selection by the Koniag villages. Rather than a ratification, Stratman asserts, inclusion of Leisnoi in section 1427 constituted simply an identification or recognition of Woody Island's status as a Native village.

Koniag bases its position on the plenary power of Congress to designate Leisnoi as a Native village. According to Koniag, three sources of Congressional power support its assertion: 1) the power to ratify

---

13/ Subsection (c) provided that the land on Afognak Island would be conveyed to a joint venture consisting of several parties, including "the Koniag Deficiency Village Corporations."

Exhibit 10

unauthorized acts; 2) the power to dispose of the public land; and 3) the power to moot a pending controversy by enacting new legislation. While Stratman does not dispute that Congress has all those powers, for which Koniag has supplied ample legal authority, he claims that Congress did not exercise any of them in enacting section 1427, insofar as it affects Leisnoi. First, Stratman asserts that there was no unauthorized act involved in this case because the Secretary of the Interior had the authority under section 11(b)(3) to certify Woody Island as a Native village. Stratman challenges the Secretary's actions as an erroneous exercise of delegated authority, not the exercise of undelegated authority. Second, Stratman agrees that Congress has the power to dispose of public land, and that ANCSA was an exercise of that power, but, he contends, such an assertion begs the question whether Congress repealed the village eligibility requirements of ANCSA by designating Leisnoi as a participant in the Afognak exchange. Third, while Stratman does not contest the power to moot a pending lawsuit through legislation, he asserts that Congress did not do so in recognizing Leisnoi in section 1427.

We find that the listing of Leisnoi in section 1427(a)(4) and its entitlement to lands on Afognak Island was not a ratification of its eligibility as a Native village. At the time Congress passed ANILCA there was extant a final decision by the Secretary of the Interior that Woody Island, in fact, satisfied the ANCSA requirements for status as a Native village. The listing of Leisnoi in section 1427(a)(4) was merely reflective of that status. There was no unauthorized act to ratify and, as an ANCSA Native village, Woody Island was qualified to participate in ANCSA entitlements.

In addition, in 1980, when section 1427 was enacted, Stratman's decertification litigation had been dismissed by the district court (Stratman v. Andrus, 472 F. Supp. 1172 (D. Alaska 1979)), although that matter was on appeal to the circuit court on procedural grounds. Thus, in 1980, the Secretary's September 1974 approval of BIA's February 1974 final eligibility determination was in effect, and not the subject of an immediate judicial challenge. In September 1981, after enactment of section 1427, the circuit court reinstated the decertification litigation, remanding the matter to the district court. See Stratman v. Watt, supra.

We must presume that Congress took these facts into account when listing Leisnoi as entitled to the benefits of section 1427 of ANILCA, by virtue of Leisnoi's then unchallenged entitlement under section 14(a) of ANCSA. See 2B Sutherland Statutory Construction § 49.01 (5th Ed. 1992), at 1. The conclusion that it was not the intention of Congress to moot any lawsuit regarding Leisnoi's eligibility by listing it in section 1427(a)(4) is reinforced by the fact that in the same section Congress expressly provided for the resolution of disputes concerning the status of seven unlisted villages by declaring each to be "deemed an eligible village under the Alaska Native Claims Settlement Act." Section 1427(e)(1), Pub. L. No. 96-487, 94 Stat. 2525 (1980) (S. Rep. No. 413, 96th Cong., 1st Sess. 261, 324 (1979), reprinted in 1980 U.S. Code Cong. & Ad. News 5205, 5268). It could have done the same for Leisnoi, but it did not.

Exhibit 10

Other facts support a conclusion that passage of section 1427 was not a ratification of the eligibility of Woody Island's status as an ANCSA Native village. In issuing its September 22, 1995, order, the district court noted at page 1 that "new light" might be shed on the case with enactment of the "Stratman Bill." Id. at 1. The court was alluding to the fact that, at that time, Congress had passed section 109 of H.R. 402, 104th Cong., 1st Sess. (1995), which specifically "confirmed [Leisnoi] as an eligible Alaska Native Village, pursuant to Section 11(b)(3) of [ANCSA]." See 141 Cong. Rec. S11342, S11343, S11347 (daily ed. Aug. 3, 1995); 141 Cong. Rec. H9068, H9069, H9074 (daily ed. Sept. 18, 1995); 141 Cong. Rec. H9150-51 (daily ed. Sept. 19, 1995). However, Congress later resolved to strike section 109 from H.R. 402. See 141 Cong. Rec. H9710-11 (daily ed. Sept. 29, 1995); 141 Cong. Rec. S15199 (daily ed. Oct. 17, 1995). In agreeing to the resolution, Congressman Miller, who had worked on the overall legislation, stated:

> [Section 109] was added by the other body without public hearings and was intended to intervene in pending litigation. But the Senate did not do their homework. This provision generated significant controversy, especially amongst the affected citizens of Kodiak, AK. Moreover, this technical amendments bill was an inappropriate vehicle for controversy. The gentleman from Alaska and I had worked over two Congresses to develop a consensus on this legislation only to be undercut, in my view, by the other body.

141 Cong. Rec. H9710 (daily ed. Sept. 29, 1995). Legislative confirmation did not occur, and it would not have been needed if, in fact, passage of section 1427 in 1980 had acted as ratification of Woody Island's eligibility.

### Federally-recognized Tribal Entity

In its objections to Judge Sweitzer's recommended decision, BIA raises a legal issue not discussed in the post-hearing briefs. BIA argues that in 1993 the Department of the Interior confirmed the pre-existing status of "Leisnoi Village (aka Woody Island)" as a federally-recognized tribe by including such village in the published list of "Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs" (Tribal Entities List). 58 FR 54364, 54369 (Oct. 21, 1993). According to BIA, this action by Congress essentially confirmed the status of Woody Island as "a historical (and traditional) sovereign tribe having an identifiable location on Woody Island." (BIA Objections to Recommended Decision at 5.) BIA asserts that "[s]uch status as a recognized tribe cannot be terminated (or decertified) except by Act of Congress." Id.

The preamble to the Tribal Entities List indicates that the Department intended the list to clarify which Native entities in Alaska were operating as Federally-recognized Tribes and also to clarify that tribes in Alaska enjoyed the same status as tribes in the contiguous 48 states:

Exhibit 10

> The purpose of the current publication is to publish an Alaska
> list of entities conforming to the intent of 25 C.F.R. 83.6(b)
> and to eliminate any doubt as to the Department's intention by
> expressly and unequivocally acknowledging that the Department
> has determined that the villages and regional tribes listed
> below are distinctly Native communities and have the same
> status as tribes in the contiguous 48 states. * * * This list
> is published to clarify that the villages and regional tribes
> listed below are not simply eligible for services, or
> recognized as tribes for certain narrow purposes. Rather, they
> have the governmental status as other federally acknowledged
> Indian tribes by virtue of their status as Indian tribes with a
> government-to-government relationship with the United States;
> are entitled to the same protection, immunities, privileges as
> other acknowledged tribes; have the right, subject to general
> principles of Federal Indian law, to exercise the same inherent
> and delegated authorities available to other tribes; and are
> subject to the same limitations imposed by law on other tribes.

58 FR 54366-67 (Oct. 21, 1993).

Thereafter, Congress passed the Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C. §§ 479a and note, 479a-1 (1994), which recognized the Tribal Entities List, confirmed the responsibility and authority of the Secretary to recognize tribes, took notice of the sovereign status of such tribes, and affirmed the obligation of the United States, as part of its trust responsibility, to maintain a government-to-government relationship with those tribes. The act also provided that "a tribe which has been recognized * * * may not be terminated except by Act of Congress." 25 U.S.C. § 479a note (1994). 14/ In discussing the Act, the Alaska Supreme Court stated:

> And for those who may have doubted the power of the
> Department of the Interior to recognize sovereign
> political bodies, a 1994 act of Congress appears to
> lay such doubts to rest. In the Federally Recognized

Tribe List Act of 1994, Congress specifically directed the Department to publish annually a list of all Indian tribes which the Secretary recognizes to be eligible * * *.

---

14/ In discussing that provision, the Committee stated:
"While the Department clearly has a role in extending recognition to previously unrecognized tribes, it does not have the authority to "derecognize" a tribe * * *. The Committee cannot stress enough its conclusion that the Department may not terminate the federally-recognized status of an Indian tribe absent an Act of Congress."
H.R. No. 781, 103rd Cong., 2nd Sess. 1994, 1994 U.S. Code Cong. & Ad. News 3768.

Exhibit 10

IBLA 2000-16

Through the 1993 tribal list and the 1994 Tribe List Act, the federal government has recognized the historical tribal status of Alaska Native villages * * *.

John v. Baker, 982 P.2d 738 (Alaska 1999).

BIA argues that the inclusion of "Leisnoi Village (aka Woody Island)" on the Tribal Entities List "confirmed the status of the Village as a historical (and traditional) sovereign tribe having an identifiable location on Woody Island." (BIA Objections to Recommended Decision at 5.) It added that, as an historical tribe, the village can truly be said to be a "traditional village" within the meaning of 43 CFR 2651.2(b)(2), which provides that no traditional village shall be disqualified for certification "by reason of having been temporarily unoccupied in 1970 because of an act of God or governmental authority occurring within the preceding 10 years." Id.

Leisnoi's position is that the Tribal Entity List and the passage of the Federally Recognized Indian Tribe List Act are but the latest factors which "have eliminated the ability of the Department of the Interior and the courts to declare Woody Island not to be an Alaska Native village." (Leisnoi Objections to Recommended Decision at 12.)

The Department of the Interior first published a list of Indian Tribal Entities on February 6, 1979, noting therein that a list of "eligible Alaskan entities" would be published at a later date. 44 FR 7325 (Feb. 9, 1979). Thereafter, it published a "preliminary list" of "Alaskan Native Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs." 47 FR 53133 (Nov. 24, 1982). In 1988, the Department, in publishing an updated list, stated:

> The purpose of this updated list is: (1) To comply with the regulatory requirement of annual publication pursuant to 25 CFR Part 83, (2) to reflect the Alaska entities which are statutorily eligible for funding and services from the Bureau of Indian Affairs, (3) to make it easier for previously unlisted, but statutorily eligible, entities to receive funding and services, and in so doing, (4) to describe the criteria used for inclusion on the list and for making additions.

53 FR 52832 (Dec. 29, 1988). The Department stated that the

> list includes all of the Alaska entities meeting any of the following criteria which are used in one or more Federal statutes for the benefit of Alaska Natives:
>
> 1. Tribes as defined or established under the Indian Reorganization Act as supplemented by the Alaska Native Act.

157 IBLA 317

Exhibit 10

    2. Alaska Native Villages defined in or established pursuant to the Alaska Native Claims Settlement Act (ANCSA).

    3. Village Corporations defined in or established pursuant to ANCSA. * * *

Id. at 52833. The list included "Leisnoi, Inc. (Woody Island)." Id. at 52834.

    In 1993, the Department published a new list of Alaskan Native entities stating that the 1988 publication had raised a number of questions regarding the Department's intent and the effect of the list. 58 FR 54365 (Oct. 21, 1993). The Department stated:

> The purpose of the current publication is to publish an Alaska list of entities conforming to the intent of 25 CFR 83.6(b) and to eliminate any doubt as to the Department's intention by expressly and unequivocally acknowledging that the Department has determined that the villages and regional tribes listed below are distinctly Native communities and have the same status as tribes in the contiguous 48 states.

Id. It also clarified that the 1993 list was limited to entities found to be tribes and did not include non-tribal Alaska Native entities, such as ANCSA village and regional corporations. Id. Leisnoi claims that the village continues to be recognized as a tribe, citing 63 FR 71945 (Dec. 30, 1998).

    The question presented is whether Congressional recognition of the Department's listing of Woody Island on the Tribal Entities List constitutes ratification of the status of Woody Island as an Alaska Native village, such that the Department is barred from engaging in further proceedings investigating the eligibility of that village to receive ANCSA benefits.

    In the Federally Recognized Indian Tribe List Act of 1994, Congress found that tribes could be recognized in any of three ways: (1) by act of Congress, (2) by the administrative procedures in 25 CFR Part 83, or (3) by a decision of a United States court. 25 U.S.C. § 479a note (1994). As stated above, the 1993 preamble to the publication of the Tribal Entities List states that the tribes on that list "conform[ed] to the intent of 25 CFR 83.6(b)." Thus, to the extent tribes on the list had not been recognized by an act of Congress or by a decision of a United States court, their inclusion on the list indicated that they had been recognized by the administrative procedures in 25 CFR Part 83. The appearance of "Leisnoi Village (aka Woody Island)" on the list indicates that it "conform[ed] to the intent of 25 CFR 83.6(b)." Congress also found, as set out above, that "a tribe which has been recognized in one of these manners may not be terminated except by Act of Congress." 25 U.S.C. § 479a note (1994).

Exhibit 10

IBLA 2000-16

Stratman asserts that inclusion of Woody Island on the Tribal Entities List does not establish that Woody Island constitutes an eligible ANCSA Native village, but only that it constitutes a "tribe." Stratman is correct. While a tribe may be a Native village and vice versa (43 U.S.C. § 1602(d) (1994)), in order to constitute an ANCSA Native village a tribe must satisfy the ANCSA criteria for eligibility. There is no evidence that Congress either expressly or impliedly modified the village eligibility requirements of ANCSA in enacting the Federally Recognized Indian Tribe List Act of 1994. The fact that Woody Island appears on the Tribal Entity List means that it has been recognized as a tribe. That recognition is related to its status as an ANCSA Native village, but whether or not it is entitled to that status is a separate question, one that was decided with administrative finality by the Secretary in September 1974. Moreover, as with the arguments concerning the effect of section 1427 of ANILCA, if Woody Island's status as an ANCSA Native village had been confirmed by the Federally Recognized Tribe List Act of 1994, there would not have been any need for the "Stratman Bill" in 1995, discussed supra.

Issues such as standing and timeliness raised by Leisnoi are not relevant given the posture of this case and our lack of subject matter jurisdiction. 15/ To the extent the parties have raised other legal issues, they have been considered and rejected.

### Recommended Decision

Judge Sweitzer's 100-page recommended decision in this case represents a comprehensive and exhaustive analysis of the evidence presented in the case consisting of over 3,600 pages of transcript of the testimony of over 40 witnesses; depositions, affidavits, and interviews from over 50 witnesses; over 600 exhibits, totaling thousands of pages, and over a thousand pages of post-hearing briefing. In conclusion, he found that Woody Island did not have 25 or more Native residents on April 1, 1970; was not an established Native village and did not have an identifiable physical location evidenced by occupancy consistent with the

---

15/ We note that at the hearing, counsel for Stratman, in cross-examination of Fred Frank Zharoff, a Leisnoi shareholder and Alaska State Legislator, regarding Stratman's Exhibit 30-G, a full page notice in the Apr. 4, 1973, Kodiak Daily Mirror, prepared by Karl Armstrong, a Leisnoi shareholder, showing a comparison of benefits under ANCSA and the land and monetary benefits of enrollment to Woody Island, stated: "The point I'm trying to get you to concede, Senator, is it would be hard for people in a community to not be aware in a community this size with a publication that prominent at that point in time." (Tr. 3110.) Thus, Stratman's point was that virtually everyone on Kodiak Island would have been aware of efforts to enroll Natives to Woody Island. It is certainly conceivable, then, that Stratman himself, as a member of that community, had actual knowledge of such efforts and the subsequent filing of the application and eligibility decision and failed to bring any timely administrative challenge thereof.

IBLA 2000-16

Natives' own cultural patterns and life-style; and was used during 1970 by less than 13 enrollees to Woody Island as a place where they actually lived for a period of time. (Decision at 99-100.) He also determined that Woody Island was not unoccupied in 1970 due to one or more acts of God or governmental authority occurring within the preceding ten years. (Decision at 86-92.) We have reviewed the objections to Judge Sweitzer's recommended decision filed by the parties and we find no reason to alter his findings and conclusions with which we agree.

The court will now have the benefit of our analysis of the legal issues presented by the parties and Judge Sweitzer's recommended decision on the eligibility of Woody Island.

All motions or requests not expressly addressed have been considered and are, hereby, denied.

Accordingly, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 CFR 4.1, we conclude that we do not have subject matter jurisdiction in this matter and we return the case to the District Court. 16/

Bruce R. Harris
Deputy Chief Administrative Judge

I concur:

James L. Burski
Administrative Judge

---

16/ The regulations at 43 CFR 2651.2(a)(5) provide that "[d]ecisions of the Board [of Land Appeals] on village eligibility appeals are not final until personally approved by the Secretary." We do not believe it is necessary to seek Secretarial approval for this decision because we are not issuing a decision on a village eligibility appeal. The Secretary approved the Department's final decision on the eligibility of Woody Island in September 1974.

Exhibit 10