1967), cert. denied, *392 U.S. 908, 88 S. Ct. 2052, 20 L. Ed. 2d 1366 (1968)*.

n4. Defendants argue that because the statute provides that the allotment of land to the Native village shall be subject to any valid existing rights, *43 U.S.C. § 1613(g)*, there need be no notice. We disagree, for those with leasehold interests should receive notice in order to protect the rights intended to be preserved by the statute.

The difficult remaining question is the effect to be given Leisnoi's subsequent disclaimer of any interest in the property encompassed by Stratman's and Burton's leases. Had such a disclaimer occurred prior to the application for certification, their interests probably would not have differed [**13] from those of any other recreational user. However, the disclaimer did not occur until after the administrative proceedings had concluded and hence after the opportunity to participate in the original determination had been lost. Since the administrative proceedings were not limited to the consideration of economic interests, a strong argument can be made that parties like Stratman and Burton, who were originally entitled to notice of the application and an opportunity to participate in the administrative hearings, and who were not given such notice, should be permitted to air all of their grievances, not merely economic grievances, in a judicial forum.

Application of the doctrine of exhaustion of administrative remedies to the Stratman-Burton claims requires a balancing of factors, however. Judicially developed exhaustion requirements, which are necessarily susceptible to judicial refinement [*1326] and modification, must be tailored to fit the peculiarities of an administrative system and the particular facts of each case. *Montgomery v. Rumsfeld, 572 F.2d 250, 253 (9th Cir. 1978)*. A balancing analysis considers "both the interests of the agency in applying its expertise, correcting [**14] its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances." *Id.* See also *McKart v. United States, 395 U.S. 185, 194-95, 89 S. Ct. 1657, 1662-63, 23 L. Ed. 2d 194 (1969); SEC v. G. C. George Sec., Inc., 637 F.2d*

*685, 688 n.4 (9th Cir. 1981)*. In this case, Stratman and Burton, who were originally entitled to notice and an opportunity to participate in the administrative proceedings, did not deliberately flout or seek a premature interruption of the administrative process. Contrast *McGee v. United States, 402 U.S. 479, 488, 91 S. Ct. 1565, 1571, 29 L. Ed. 2d 47 (1971)* (deliberately side-stepped administrative proceedings); *Pattillo v. Schlesinger, 625 F.2d 262, 266 (9th Cir. 1980)* (complete relief available through existing administrative procedures). The agency, on the other hand, undoubtedly had an interest and expertise in this basically factual dispute.

The district court, in finally disposing of this case on jurisdictional grounds, did not consider Stratman's and Burton's remaining recreational [**15] interests and therefore did not weigh the various alternatives which might be open to it in this regard. The judicial requirement of exhaustion of administrative remedies is not mechanically applied and we believe the question should be considered initially by the district court; we remand for such consideration. *SEC v. G.C. George Sec., Inc., supra, 637 F.2d at 688 n.3; Montgomery v. Rumsfeld, supra, 572 F.2d at 254*.

A remand is particularly appropriate here because the government, after the judgment was entered, represented to this Court that it intended to conduct further administrative inquiries into the qualifications of Woody Island. If such proceedings have occurred, plaintiffs may well have been given some opportunity to present administratively the matters which they sought to litigate in a judicial forum. n5 Any pending or intervening administrative action should be taken into account by the district court in determining what, if any, further judicial proceedings in connection with Stratman's and Burton's claims are warranted.

n5. Although plaintiffs' brief contains extensive discussion of claimed irregularities in the application, neither this Court nor the district court has considered the merits of their challenges. Defendants' motion to strike that portion of plaintiffs' brief is denied as moot.

[**16]

Affirmed in part; reversed and remanded in part.

Source: Legal > Cases - U.S. > All Courts - By Circuit > 9th Circuit - Federal & State Cases, Combined
Terms: 34354 (Edit Search | Suggest Terms for My Search)

✦Select for FOCUS™ or Delivery

*1994 U.S. App. LEXIS 34354, **

OMAR STRATMAN, Plaintiff-Appellant, v. BRUCE BABBITT, Secretary of the Interior, LEISNOI INC., KONIAG INC., Defendants-Appellees.

No. 93-36006

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

1994 U.S. App. LEXIS **34354**

October 31, 1994, Argued, Submitted, Seattle Washington
December 5, 1994, FILED

**NOTICE:** **[*1]** THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION AND MAY NOT BE CITED TO OR BY THE COURTS OF THIS CIRCUIT EXCEPT AS PROVIDED BY THE 9TH CIR. R. 36-3.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 42 F.3d 1402, 1994 U.S. App. LEXIS 39533. Certiorari Denied October 2, 1995, Reported at: 1995 U.S. LEXIS 5493.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Alaska. D.C. No. CV-76-0132-A-JAV. James A. von der Heydt, District Judge, Presiding.

**DISPOSITION:** REVERSED AND REMANDED

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant landowner challenged the decision of the United States District Court for the District of Alaska, which denied his motion to vacate a judgment of dismissal, and declined to alter that ruling after granting his motion for reconsideration.

**OVERVIEW:** The district court denied appellant landowner's motion to vacate a judgment of dismissal that had been entered upon appellant's motion, brought in accordance with the terms of a settlement agreement signed by appellant and appellee corporation. The dismissal was to appellee and co-appellee corporation. Appellant sought review of this decision as well as the district court's declination to alter that ruling after granting his motion for reconsideration. The court reversed the judgment and held that the district court abused its discretion in failing to set aside the dismissal. The court noted that there was a basic defect in the very inception and at the very core of the settlement agreement upon which the dismissal of the case was based. The court ruled that the settlement agreement was not enforceable because appellant did not bear the risk of the mistake, and, therefore, Fed. R. Civ. P. 60(b)(6) relief was warranted. The court found that the district court abused its discretion in finding that appellant made a deliberate choice to ignore the risk that co-appellee one day would not be bound to make the conveyance.

**OUTCOME:** The court reversed the district court's denial of appellant landowner's motion to vacate a judgment of denial, holding that the district court abused its discretion in

EXHIBIT 11
Page 2 of 42 Pages

declining to reopen appellant's action upon a finding of extraordinary circumstances associated with a complete frustration of the settlement agreement.

**CORE TERMS:** settlement agreement, deliberate choice, settlement, conveyance, negotiated, reopen, demerger, reasonable time, mutual mistake, quitclaim deed, indispensable party, motion to vacate, void ab initio, extraordinary circumstances, extraordinary circumstance, harm suffered, usual course, moving party, frustration, reopening, abused, joined, judgment of dismissal, specific performance, shareholder, frustrated, negotiate, feasible, joinder, surface

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview 

*HN1* ⚓The court will not reverse a district court's refusal of relief under Fed. R. Civ. P. 60(b) (6) in the absence of an abuse of discretion. More Like This Headnote

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview 

*HN2* ⚓Relief under Fed. R. Civ. P. 60(b)(6) is extraordinary, especially where the judgment was rendered by consent. Even so, when an agreement fails of its purpose in its entirety, that does raise an extraordinary circumstance. More Like This Headnote

Civil Procedure > Settlements > Settlement Agreements > General Overview 

Contracts Law > Types of Contracts > Settlement Agreements 

*HN3* ⚓The interpretation of a settlement agreement is subject to state law. More Like This Headnote

Civil Procedure > Settlements > General Overview 

Contracts Law > Contract Interpretation > General Overview 

Contracts Law > Types of Contracts > Settlement Agreements 

*HN4* ⚓In Alaska, settlement agreements are interpreted according to the general principles of contract law. More Like This Headnote

Contracts Law > Defenses > Ambiguity & Mistake > Mutual Mistake 

Contracts Law > Formation > Ambiguity & Mistake > Mutual Mistake 

Real Property Law > Deeds > Types > Quit Claim Deeds 

*HN5* ⚓A contract for a quitclaim deed can be rescinded if the parties who negotiated for the deed were operating under a material mutual mistake of fact. More Like This Headnote

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview 

Contracts Law > Defenses > Ambiguity & Mistake > Mutual Mistake 

Contracts Law > Formation > Ambiguity & Mistake > Mutual Mistake



EXHIBIT
Page 22 of 43 Pages

HN6 A material mutual mistake of fact occurs when there was a mistake of both parties at the time of contracting as to a basic assumption on which the contract was made; the mistake had a material effect on the agreed exchange of performances, and the party seeking relief did not bear the risk of the mistake.  More Like This Headnote

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview 

HN7 Fed. R. Civ. P. 60(b)(6) relief is not available to remedy harm suffered as a result of a truly deliberate choice or strategy on the part of the moving party.  More Like This Headnote

Civil Procedure > Parties > Joinder > Indispensable Parties

Civil Procedure > Dismissals > General Overview

Civil Procedure > Settlements > General Overview

HN8 Fed. R. Civ. P. 19 dictates only that indispensable parties be joined in an action.  More Like This Headnote

Civil Procedure > Parties > Joinder > Indispensable Parties

Civil Procedure > Parties > Joinder > Necessary Parties

HN9 Nothing prevents an indispensable-party defendant, once joined, from settling with the plaintiff.  More Like This Headnote

Civil Procedure > Parties > Joinder > Necessary Parties

HN10 By its very terms, Fed. R. Civ. P. 19(b)'s considerations of equity and good conscience as to whether an action should go forward absent an indispensable party come into play only whenever joinder is not feasible.  More Like This Headnote

Civil Procedure > Dismissals > General Overview

Civil Procedure > Judgments > Relief From Judgment > Excusable Neglect & Mistakes > General Overview

HN11 A Fed. R. Civ. P. 60(b)(6) motion must be brought within a reasonable time. What constitutes a reasonable time depends on the facts of each case. The primary considerations in determining whether a motion to vacate a dismissal was brought within a reasonable time are whether the moving party had good reason for not acting sooner and whether the adverse party was prejudiced by the delay.  More Like This Headnote

Civil Procedure > Dismissals > General Overview

Contracts Law > Breach > General Overview

Contracts Law > Types of Contracts > Settlement Agreements

HN12 In the usual course upon repudiation of a settlement agreement, the frustrated party may sue anew for breach of the agreement and may not reopen the

EXHIBIT
Page 24 of 42 Pages

underlying litigation after dismissal. <u>More Like This Headnote</u>

**JUDGES:** Before: WRIGHT, BEEZER and FERNANDEZ, Circuit Judges

**OPINION: MEMORANDUM \***

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -


\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Omar Stratman appeals the district court's denial of his motion to vacate a judgment of dismissal that had been entered upon Stratman's motion, brought in accordance with the terms of a settlement agreement signed by Stratman and Koniag, Inc. The dismissal was as to all defendants. Stratman also appeals the court's declination to alter that ruling after granting his motion for reconsideration. We reverse.

*HN1* We will not reverse a district court's refusal of relief under <u>Federal **[*2]** Rule of Civil Procedure 60(b)(6)</u> in the absence of an abuse of discretion. <u>United States v. RG&B Contractors, Inc., 21 F.3d 952, 954 (9th Cir. 1994)</u>. Moreover, as we have said, *HN2* "relief under Rule 60(b)(6) is extraordinary, especially where the judgment was rendered by consent." <u>Washington v. Penwell, 700 F.2d 570, 574 (9th Cir. 1983)</u>; see also <u>Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989)</u> (resolution of litigation through settlement is favored). Even so, when an agreement fails of its purpose in its entirety, that does raise an extraordinary circumstance. Cf. <u>Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162, 937 F.2d 408, 410 (9th Cir. 1991)</u> (where party repudiated a settlement, the situation was extraordinary and setting aside dismissal was proper). This is just such a case.

Here, there was, as it turned out, a basic defect in the very inception and at the very core of the settlement agreement upon which the dismissal of this case was based. Unless Stratman made a deliberate choice to accept the risk of that defect, his agreement should **[*3]** not bind him and the dismissal of this action should be set aside. When the district court failed to set aside the dismissal it did, in this extraordinary circumstance, abuse its discretion. Thus, we will first refer to the effect that the defect had upon the settlement agreement itself and will then discuss the deliberate choice issue.

A. The Agreement

*HN3* The interpretation of the settlement agreement is subject to Alaska state law. <u>Jeff D., 899 F.2d at 759.</u> *HN4* In Alaska, settlement agreements are interpreted according to the general principles of contract law. See <u>Hayes v. Xerox Corp., 718 P.2d 929, 937 (Alaska 1986)</u>. Even *HN5* a contract for a quitclaim deed can be rescinded if the parties who negotiated for the deed were operating under a material mutual mistake of fact. See <u>Matanuska Valley Bank v. Abernathy, 445 P.2d 235, 237-38 (Alaska 1968)</u>. *HN6* A material mutual mistake of fact occurs when "'there was a mistake of both parties at the time of contracting as to a basic assumption on which the contract was made; the mistake had a material effect on the agreed exchange of performances, and the **[*4]** party seeking relief did not bear the risk of the mistake.'" <u>Alaska Div. of Agric. v. Carpenter, 869 P.2d 1181, 1183 (Alaska 1994)</u> (citation omitted).

EXHIBIT 11

Page 25 of 43 Pages

It cannot be gainsaid that the first two requirements are met. It is clear that the settlement agreement negotiated by Koniag and Stratman contemplated that the surface rights to the subject land would be included, and that this was the contracting parties' intention. Koniag and Stratman believed at the time they entered into the settlement agreement that Leisnoi did not exist and that Koniag held all of the former Leisnoi's interests. If, in practical effect, Leisnoi did exist, both parties were operating under a material mistake of fact that went to the heart of the contract they signed. Both parties believed that Koniag had the authority to represent Leisnoi's interests because Leisnoi was Koniag's predecessor. Leisnoi's interests in the disputed lands were the primary subject matter of the agreement; had the parties known that at that time it was impossible for them to negotiate a deal concerning those interests, they almost certainly never would have entered into the agreement.

The only remaining **[*5]** requirement is that Stratman did not bear the risk of the mistake. For the reasons discussed below, he did not. Accordingly, the settlement agreement was not enforceable. It is in just such extraordinary circumstances that Rule 60(b)(6) relief is warranted. See In re Pacific Far E. Lines Inc., 889 F.2d 242, 248, 250 (9th Cir. 1989); see also Keeling, 937 F.2d at 410.

The result we reach is not foreclosed by issue preclusion because the Alaska Supreme Court did not consider whether the settlement agreement was invalid. It merely held that on account of the doctrine of lis pendens, the agreement was not binding on Leisnoi. See Leisnoi, Inc. v. Stratman, 835 P.2d 1202, 1208-10 (Alaska 1992). The Alaska Supreme Court had no occasion to consider whether frustration of the settlement agreement's warranted reopening Stratman's district court case.

## B. Deliberate Choice

*HN7*Rule 60(b)(6) relief is not available to remedy harm suffered as a result of a truly deliberate choice or strategy on the part of the moving party. Ackermann v. United States, 340 U.S. 193, 198, 71 S. Ct. 209, 211-12, 95 L. Ed. 207 (1950); **[*6]** Plotkin v. Pacific Tel. & Tel. Co., 688 F.2d 1291, 1293 (9th Cir. 1982).

In its 1982 settlement agreement with Stratman, Koniag warranted that "it will pursue its best efforts to achieve conveyance and patent of the lands, and that it will take no action to prevent conveyance." Stratman could not have anticipated that Koniag would enter into a settlement agreement in the demerger litigation that would declare the merger "void ab initio." That agreement jeopardized the surface-estate conveyance. Despite the agreement it had negotiated with Stratman, Koniag acquiesced in the use of the "void ab initio" language at the request of the shareholder in the demerger litigation. Thus, Koniag helped create the very circumstance that frustrated the 1982 settlement agreement.

It is not significant for the purposes of "deliberate choice" analysis that Stratman agreed to accept a quitclaim deed. The agreement clearly contemplated that the surface estate was part of the deal. Koniag's attorney insisted on the use of a quitclaim deed because "he did not want Koniag to be obligated to convey a greater interest in the land than it received from the U.S. government." The **[*7]** record does not indicate that the attorney's concern stemmed from any worry that Koniag might have only subsurface rights to convey as a result of a demerger, but rather from a concern that Leisnoi might not have taken all of the necessary procedural steps to allow the United States to perfect the conveyance, or that some other procedural problems might arise. If the attorney did have the former concern, nothing suggests that he made it known to Stratman.

On balance, the district court abused its discretion in finding that Stratman made a deliberate choice to ignore the risk that Leisnoi one day might not be bound to make the conveyance. Although the record shows that Stratman knew of the pending demerger litigation, he could not have known that Koniag would agree to declare the merger "void ab initio" and that that

would enable Leisnoi to claim the benefits but eschew the burdens of the settlement agreement. As it is, Leisnoi's position depends upon a much later opinion of the Alaska Supreme Court. That, in turn, elicited a vigorous dissent which asserted that the court had greatly changed the law itself. See Leisnoi, 835 P.2d at 1211 (Moore, J., dissenting). **[*8]** Thus, no deliberate choice was made.

## C. Indispensable Party

Assuming arguendo that Koniag is an indispensable party to this action, its settlement agreement with Stratman, which would apparently require Koniag's dismissal as a defendant were this case to proceed, does not affect the reopening of the action under Federal Rule of Civil Procedure 19. *HN8* Rule 19 dictates only that indispensable parties be joined in an action. Koniag has been a defendant in this suit since January 1977. *HN9* Nothing prevents an indispensable-party defendant, once joined, from settling with the plaintiff.

*HN10* By its very terms, Rule 19(b)'s considerations of "equity and good conscience" as to whether an action should go forward absent an indispensable party come into play only "whenever joinder [is] not feasible." Here, joinder is not only feasible, it was accomplished seventeen years ago.

## D. Timeliness of the Rule 60(b)(6) Motion

*HN11* A Rule 60(b)(6) motion must be brought "within a reasonable time." "What constitutes a reasonable time 'depends on the facts of each case.'" Pacific Far East, 889 F.2d at 249 (citation omitted). The primary considerations in determining whether **[*9]** a motion to vacate a dismissal was brought within a reasonable time are whether the moving party had good reason for not acting sooner and whether the adverse party was prejudiced by the delay. Id. The district court, without discussion, found that the motion to vacate the dismissal was timely made. We agree.

*HN12* "In the usual course upon repudiation of a settlement agreement, the frustrated party may sue anew for breach of the agreement and may not, as here, reopen the underlying litigation after dismissal." Keeling, 937 F.2d at 410.

Stratman chose to follow the "usual course" and seek specific performance of the settlement agreement in state court. By not also seeking to reopen the district court litigation at that time, Stratman avoided expending judicial as well as his own resources on litigation that might later prove unnecessary--or even, depending on its outcome, incompatible with the relief he sought in the specific performance action. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 At oral argument appellees conceded that the seven and a half months between the decision in Leisnoi and the bringing of the Rule 60(b)(6) motion was not an unreasonable delay.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*10]**

Leisnoi and the Secretary claim that there will be prejudice to Leisnoi's shareholders if the dismissal is set aside. We fail to discern that. Any harm suffered by Leisnoi will occur either because it seeks to enjoy the settlement agreement's benefits without paying for them or because its claim to the land was seriously defective in the first place.

EXHIBIT
Page _____ of _____ Pages

## CONCLUSION

After Stratman brought this action against appellees, the attorney defending it believed that Stratman had an excellent (90%) chance of success. Stratman, however, did what we encourage parties to do: he settled the action with the only entity that could then negotiate a settlement with him--Koniag. Now Leisnoi seeks to secure a Panglossian result for itself. In its best of all possible worlds everything will be for the best as far as it is concerned. Stratman will be held to his agreement with Koniag, but Leisnoi will have no obligations. We understand the desire, but the law does not allow for its gratification.

A material mutual mistake of fact existed at the time Stratman and Koniag negotiated the 1982 settlement agreement. Rule 60(b)(6) relief is warranted when there has been complete frustration of a settlement agreement, **[*11]** and the district court abused its discretion in declining to reopen Stratman's action under these extraordinary circumstances. We therefore reverse the district court's order denying Stratman's motion for Rule 60(b)(6) relief and remand to the district court with instructions that it vacate the judgment of dismissal and reopen Stratman's decertification litigation. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 We deny the Secretary's motion to strike the reply brief or parts thereof.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

REVERSED AND REMANDED.

Source:   Legal > Cases - U.S. > All Courts - By Circuit > 9th Circuit - Federal & State Cases, Combined 🔲
Terms:   34354  (Edit Search | Suggest Terms for My Search)
View:   Full
Date/Time:  Wednesday, October 25, 2006 - 2:12 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
🔲 - Questioned: Validity questioned by citing refs
🔺 - Caution: Possible negative treatment
➕ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis®     About LexisNexis  | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

EXHIBIT
Page _____ of _____ Pages

FILED

MINUTES OF THE UNITED STATES DISTRICT COURT SEP 13 1995
DISTRICT OF ALASKA

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
_____
Dep..

*Omar Stratman, et al. v. Bruce Babbitt, et al.*
Case No.  A76-132 CV (JKS)

RECEIVED

SEP 13 1995

Office of
United States Attorney
Anchorage, Alaska

By:             THE HONORABLE JAMES K. SINGLETON

Deputy Clerk:   Marvel Hansbraugh, Case Management: 271-5575*

PROCEEDINGS:    ORDER FROM CHAMBERS

There are a number of motions pending in this case addressing issues reserved by Judge von der Heydt prior to his transfer of this case to me.  The parties have been briefing variations on these issues for many years and have no doubt exhausted whatever could be said about them. I am certainly exhausted reading what has been written.  Oral argument therefore would serve no purpose and will not be allowed. *See* D. Ak L.R. 7.1(i).  The request for oral argument at Docket No. 287 is therefore DENIED.

The facts of this case have been set out by those more articulate than I and I cannot improve upon their statement. *See, e.g., Stratman v. Watt*, 656 F.2d 1321 (9th Cir. 1981); *Leisnoi, Inc. v. Stratman*, 835 P.2d 1202 (Alaska 1992); and *see Stratman v. Babbitt*, No. 93-36006 (9th Cir. Dec. 5, 1994); Docket No. 259 Exhibit No. 1.  Judge von der Heydt recognized a number of issues required by the remand in this case that would have to be provisionally addressed.  The parties have filed copious briefs.  Suffice to say, Stratman argues that the Secretary of the Interior incorrectly recognized a phantom native village in violation of the Alaska Native Land Claim's Settlement Act and as a result thousands of acres of land have passed into the hands of men and women not entitled to receive them.  The Defendants respond that Stratman is using litigation to extort land and money from Alaska's native people.  There is little love lost between the parties.

Leisnoi moves for summary judgment at Docket No. 207.  It argues that complementary litigation ended in a final judgment of dismissal based on standing which trumps this litigation. The Court has considered the facts in light of the doctrine of *res judicata* and concludes that the only issue resolved in the other case was Stratman's standing to bring suit.  The law of this case precludes this Court from barring Stratman's suit for lack of standing.  A contrary conclusion would compel the Court to grant a motion under FED. R. CIV. P. 60 and open the other judgment on equitable grounds.  Prolonging this case for that purpose is a waste of time and money.  The motion at Docket No. 207 is DENIED.

Leisnoi moves at Docket No. 245 to dismiss for lack of subject matter jurisdiction.  Essentially, Leisnoi argues that Stratman's claims should be dismissed for failure to exhaust administrative

EXHIBIT 4
Page 21 of 43 Pages

Appendix A
PAGE 1 OF 3

292

remedies. Since the Ninth Circuit has already determined that Stratman did not have notice of the occasion to exhaust remedies, Leisnoi is simply arguing that this law suit should die a natural death. The government joins in this request. Docket No. 245. The Court is not persuaded. The Court reads the U.S. Supreme Court cases cited by the parties as altering the analysis in the Ninth Circuit decision. *See, e.g., Darby v. Cisneros*, 113 S. Ct. 2539 (1993). The Court sees no material inconsistency. Moreover, the Court is not persuaded that Congress absolutely precluded someone without notice from litigating a claim like Stratman's simply because he failed to take administrative steps he did not know he had. On the other hand, this appears to be a perfect case to read ripeness and primary jurisdiction together to require that Stratman litigate his challenge to Leisnoi before the agency before he brings it here. The agency in the first instance should determine whether Leisnoi is a phantom of the Secretary's imagination, as Stratman contends, or as its members contend, the modern representative of an ancient people, the victim of an itinerant berry picker. Sending the issue back will permit the agency to exercise its expertise. If there is a reasonable basis for the Secretary's action, taking into account the limited time Congress allowed him for making the determination, his action will be upheld. If, despite the leeway he must be given, the Secretary did certify a phantom village, the agency is the best place for that determination to be made. The motions for summary judgment at Docket Nos. 245 and 249 are DENIED.

Leisnoi also moves at Docket No. 246 for summary judgment, arguing that Congress ratified its status. This issue is better left for resolution by the agency. Leisnoi's motion at Docket No. 246 is DENIED. Finally, Leisnoi moves at Docket No. 248 for summary judgment on the ground that a second settlement with Koniag, Inc., should preclude this case. The Court is not persuaded. Given the intervening decisions of the Ninth Circuit and the Alaska Supreme Court there are numerous issues that would have to be resolved before the Court could conclude that this action violates that settlement. If Koniag feels Stratman has breached a contract with it, a separate lawsuit is the vehicle for its redress. Given the Alaska court decision, Leisnoi has no standing to assert rights under that settlement agreement. Leisnoi's motion at Docket No. 248 is therefore DENIED.

Koniag moves for summary judgment at Docket Nos. 250 & 251. At Docket No. 250, Koniag argues that § 1427 establishes Leisnoi's status as a village. This is a difficult question that should be decided in the first instance by the agency. Koniag's motion at Docket No. 250 is therefore DENIED. Koniag moves at Docket No. 251 to dismiss based on the 1990 settlement agreement. *See also* Docket No. 248. Koniag certainly has standing to sue on its own agreement, but the Ninth Circuit in its decision in this case all but held that Koniag breached its agreement with Stratman by stipulating with the plaintiffs in the demerger litigation to declare the merger void *ab initio. See Stratman v. Babbitt*, No. 93-36006 at 4-5. Given that decision

No. A76-132 CV (JKS)
Minute Order 9/12/95
Page 2

EXHIBIT 11
Page 30 of 43 Pages

APP. A
PAGE 2 OF 3

at Justice Moore's dissent, equity does not look with favor on this argument.[1]  Koniag's motion at Docket No. 251 is therefore DENIED.

This case should therefore be sent to the IBLA for consideration of Stratman's challenge to Leisnoi.  That course will permit exhaustion of administrative remedies, albeit belated, and give the Court the benefit of the agency's expertise and the agency the benefit of any intervening action by Congress.  Given the total confusion that has reigned in this case, any effort to resolve this case on the basis of *res judicata* would appear wrong, and if right, would simply generate another Rule 60 motion.  To attempt to resolve it on the basis of the 1990 settlement agreement would require a lengthy trial and probably an eventual determination that this case should go back to the agency.  Leisnoi has been in limbo too long.  It should have an opportunity to show that it is real.

The motion for extension of time at Docket No. 264 is GRANTED.  The motion to strike at Docket No. 269 is DENIED.  The motion at Docket No. 286 to accept late filing of reply briefs is GRANTED.  The motion to stay for sixty days at Docket No. 270 is DENIED.  While it is my fondest hope that Congress will resolve this case, its actions, whatever they are, should first be considered by the agency.

IT IS THEREFORE ORDERED:

The motions at Docket Nos. 207, 245, 246, 248-251, 269, 270, and 287 are DENIED.  The motions at Docket Nos. 264 and 286 are GRANTED.  This case is remanded to the administrative agency for consideration not inconsistent with this Order.

Entered at the direction of the Honorable James K. Singleton, United States District Court Judge, by Ardel Burritt, secretary to Judge Singleton.

DATE: <u>September 12, 1995</u>                    SECRETARY'S INITIALS: <u>ab.RS</u>

\*    ALL INQUIRIES REGARDING THE SCHEDULING OR CALENDARING OF THIS CASE SHOULD BE DIRECTED TO THE ABOVE-INDICATED CASE MANAGER.

---

[1]  In glancing about, equity wears blinders forged by higher courts.  This Court has dismissed this case with regularity only to see it return like the proverbial penny.  I have decided to spend that penny with the IBLA.

No. A76-132 CV (JKS)
Minute Order 9/12/95
Page 3

A76-0132--CV (JKS)
--------------------------
E. BOYKO (BOYKO)
R. MIDDLETON (MIDDLETON)
M. SCHNEIDER

B. LANDOW (AUSA)
A. SCHMITT
T. BURTON



EXHIBIT 11
Page 21 of 43 Pages

App. A
PAGE 3 OF 3

OMAR STRATMAN v. LEISNOI, INC., KONIAG, INC., INTERVENOR, BUREAU
OF INDIAN AFFAIRS, INTERVENOR

IBLA 2000-16

Interior Board of Land Appeals

*157 IBLA 302; 2002 IBLA LEXIS 46*

October 29, 2002, Decided

**ACTION:**
[**1]

[*302] Decision following issuance of a recommended decision by Administrative Law Judge Harvey C. Sweitzer on the issue referred to the Board by the United States District Court for the District of Alaska of whether Woody Island is an eligible Native village under section 11(b)(3) of the Alaska Native Claims Settlement Act, 43 U.S.C. § 1610(b)(3) (1994).

Case returned to District Court.

**HEADNOTES:**

1. Alaska Native Claims Settlement Act: Native Land Selections: Village Selections: Generally--Alaska Native Claims Settlement Act: Village Eligibility: Generally--Patents to Public Land: Effect

While the effect of the issuance of a patent by the United States is to transfer the legal title from the United States and to remove from the jurisdiction of the Department the consideration of all disputed questions concerning the rights to lands, that rule is not without qualification, and in a case involving the Secretary of the Interior's special fiduciary responsibility to Alaska Natives, it has been held that the Department retains the responsibility of making an initial determination as to the validity of a Native allotment claim to patented land as a prerequisite to deciding whether or not [**2] the Government should bear the burden of going forward with a suit to annul the patent and thereby restore adjudicatory jurisdiction over the land in question to the Department. However, when an individual, who does not stand in any special legal relationship with the Department, seeks to overturn an Alaska Native village eligibility determination approved by the Secretary, which has been the [*303] basis for transfer of lands to the village corporation, and the individual has no conflicting claim to the lands, the rationale for the exception does not exist.

2. Alaska Native Claims Settlement Act: Village Eligibility: Generally--Patents to Public Land: Effect--Rules of Practice: Appeals: Standing to Appeal

Suits by the United States to vacate and annul any patent must, in accordance with 43 U.S.C. § 1166 (1994), be brought within six years after the date of issuance of such patents. Where land conveyances to an Alaska Native village corporation were made by patents and interim conveyances more than six years ago and title has been quieted in that corporation, the statutory limitation bars further Departmental involvement at any level, regardless of the possible merits of a challenge [**3] to the village's eligibility by an individual with no special relationship to the Department and no adverse claim to any of the land transferred to the Native village corporation.

APPEARANCES: John R. Fitzgerald, Esq., New Orleans, Louisiana, for Leisnoi, Inc.; Michael J. Schneider, Esq., Anchorage, Alaska, for Omar Stratman; James R. Mothershead, Esq., Assistant Regional Solicitor, Office of the

Regional Solicitor, Alaska Region, U.S. Department of the Interior, Anchorage, Alaska, for the Bureau of Indian Affairs; R. Collin Middleton, Esq., and Brennan P. Cain, Esq., Anchorage, Alaska, for Koniag, Inc.

**OPINIONBY:** HARRIS

OPINION BY DEPUTY CHIEF ADMINISTRATIVE JUDGE HARRIS

This case originally came before the Board in 1995. On November 21, 1995, the United States District Court for the District of Alaska entered an order in the case of Stratman v. Babbitt, No. A76-0132 CV (JKS), remanding the case to this Board for consideration of Omar Stratman's challenge to the eligibility of Woody Island (incorporated as Leisnoi, Inc. (Leisnoi)) as a Native village under section 11(b)(3) of the Alaska Native Claims Settlement Act (ANCSA), *43 U.S.C. § 1610*(b)(3) (1994). [**4] n1 [*304] The Board docketed the case as Omar Stratman (On Judicial Remand), IBLA 96-152. Thereafter, pursuant to 43 CFR 4.29, the parties filed reports recommending procedures to be followed by the Board in order to comply with the court's order.

n1 The court's Nov. 21, 1995, remand order disposed of certain pending motions. The court had initially remanded the case in an order dated Sept. 13, 1995. Technically, however, the case was not a remand, but a referral for agency action. Stratman never sought nor received a final agency decision on the question of the eligibility of Woody Island for ANCSA benefits. The case "remanded" to this Board originated in Federal Court in 1976.

While this case commenced with the Board in 1995, its history extends to the early 1970's when the unlisted village of Woody Island filed an application with the Bureau of Indian Affairs (BIA) seeking ANCSA benefits. n2 Following an investigation, the Acting Area Director, Juneau Area Office, BIA, provided notice by publication in the Federal Register on December 21, 1973, 38 FR 35028, of his decision that various Native villages, including Woody Island, were eligible [**5] for benefits under ANCSA. He allowed interested parties an opportunity to protest. Timely protests were filed, but Stratman did not protest. The Acting Area Director considered the timely protests and in his final decision published in the Federal Register on February 21, 1974, 39 FR 6627, found Woody Island to be an eligible Native village. The protestants filed administrative appeals, and, in an order dated August 28, 1974, the Alaska Native Claims Appeal Board (ANCAB) dismissed the appeals and directed the Area Director to certify the Native village of Woody Island to be eligible for benefits under ANCSA. n3 The Secretary approved that determination on September 9, 1974, and it became a final Department decision. See 43 CFR 2651.2(a)(5) (1973). Thus, administrative proceedings concerning the eligibility of the unlisted village of Woody Island for ANCSA benefits concluded in 1974.

n2 Congress set forth at section 11(b)(1) of ANCSA, *43 U.S.C. § 1610*(b)(1) (1994), a list of Native villages considered to be presumptively eligible for the benefits afforded by the statute. Woody Island was not listed. However, in section 11(b)(3), Congress provided criteria for the Secretary to follow in determining whether other villages, not listed in subsection (b)(1), were eligible for benefits. *43 U.S.C. § 1610*(b)(3) (1994). [**6]

n3 There were three appellants in that case, the Sierra Club, the Alaska Wildlife Federation and Sportsmen's Council, and Phil R. Holdsworth. On May 20, 1974, the latter two appellants filed a "Notice of Inability to Continue in Appeals Proceedings." However, they requested that ANCAB consider the points of law raised in their previous pleadings. By order dated May 24, 1974, ANCAB dismissed them as appellants, but accorded them amicus curiae status. Thereafter, on July 13, 1974, the Sierra Club withdrew its challenge to the eligibility of Woody Island. In its Aug. 28, 1974, order, ANCAB stated that it had "considered the briefs previously filed by the Alaska Wildlife Federation and Sportsmen's Council and Phil R. Holdsworth, and finds the legal arguments advanced therein to be without sufficient merit to justify the continuation of these proceedings." (Order at 2.)

However, in 1976 Stratman commenced his judicial challenges to Woody Island's eligibility in what became known as the "decertification [*305] litigation." n4 At that time, he and several other residents of Kodiak Island filed suit in

the United States District Court for the District of Alaska seeking to enjoin [**7] the United States from patenting any land to Leisnoi, the village corporation, under ANCSA. n5 The plaintiffs in that litigation alleged two sources of standing--all claimed that transfer of lands to the Native village corporation would injure their recreational interests in the land and two plaintiffs, Stratman and Toni Burton, also asserted direct economic injury because they held Federal grazing leases on some of the lands selected by Leisnoi.

n4 A time line covering actions through 1985 is found in the decision of the Supreme Court of Alaska, *Leisnoi, Inc. v. Stratman, 835 P.2d 1202, 1214-15 (1992),* and BIA, in its report to the Board, provided a concise chronological narrative of events from the time of Woody Island's 1973 application for recognition as a qualified Native village to the district court's 1995 remand. BIA Report at 7-14. We will not recount that history in detail herein.

n5 Stratman also pursued an administrative appeal of the BIA's Jan. 19, 1977, decision finding Leisnoi to be entitled to ANCSA benefits. However, ANCAB dismissed Stratman's appeal finding that, although Stratman's Federal grazing lease was a property interest in land under the meaning of 43 CFR 4.902 (1977), he was not adversely affected by the decision and, therefore, lacked standing to appeal. Appeal of Omar Stratman, 2 ANCAB 329 (1978). [**8]

The district court dismissed the claims based on recreational injury because of plaintiffs' failure to exhaust administrative remedies following notice in the Federal Register of Woody Island's application. However, it declined to dismiss Stratman's and Burton's claims, based on the rationale that their grazing leases entitled them to actual, rather than constructive, notice of the application and BIA's decision. *Kodiak-Aleutian Chapter of the Alaska Conservation Society v. Kleppe, 423 F. Supp. 544, 547 (D. Alaska 1976).* Thereafter, Leisnoi relinquished any claims to lands covered by the Federal grazing leases and the district court dismissed the case as moot. Stratman v. Andrus, A76-132 (Oct. 16, 1978).

Stratman and others sought review by the United States Court of Appeals for the Ninth Circuit. That court remanded the case to the district court for a ruling on the Government's motion for relief from judgment. In that motion, the Government had argued that persons who held grazing leases (such as Stratman and Burton) and other interests which constituted valid existing right under section 14(g) of ANCSA, *43 U.S.C. § 1613* [**9] (g) (1994), should not be allowed to collaterally attack village eligibility decisions because the property interests which gave rise to their due process claims were protected by that section. Thereafter, United States District Chief Judge von der Heydt, in granting the Government's motion, held:

The government correctly contends that the plaintiffs could allege no injury to their property interest because the Alaska Native Claims Settlement Act, *43 U.S.C. § 1613(g),* [*306] protects all valid existing rights and makes the land patented to the Natives subject to those rights. The Act provides:

["]Where prior to patent of any land or minerals under this Act, a lease, contract, permit, right-of-way, or easement (including a lease issued under 6(g) of the Alaska Statehood Act) has been issued . the patent shall contain provisions making it subject to the lease, contract . ."

*43 U.S.C. § 1613(g).* This provision means that whatever property interests were held by Stratman and Burton, including the federal grazing leases, could not be injured by Woody Island's eligibility and the selection of land by [**10] its village corporation. Any patents issued to the village corporation would have to protect the property interests upon which the court previously based its decision on exhaustion of administrative remedies.

*Stratman v. Andrus, 472 F. Supp. 1172, 1173-74 (D. Alaska 1979).* Accordingly, he vacated that portion of his 1976 decision denying the Government's motion to dismiss as to Stratman and Burton, and he dismissed the claims of Stratman and Burton.

Stratman again appealed to the United States Court of Appeals for the Ninth Circuit, and that court held that, as recreational users, all the plaintiffs had standing to appeal. However, it then differentiated between the plaintiffs with purely recreational interests and the plaintiffs who had recreational interests and, through their Federal grazing leases, "record interests in land which was subject to allotment." *Stratman v. Watt, 656 F.2d 1321, 1325 (9th Cir. 1981).* It

157 IBLA 302, *; 2002 IBLA LEXIS 46, **

affirmed the dismissal of the action as to the former group on the basis of their failure to exhaust administrative remedies following notice in the Federal Register of Woody Island's application.  [**11]  Id. It concluded that those plaintiffs were not entitled to actual notice.

On the other hand, it held that it agreed with the district court's original determination that the latter group was entitled to actual notice of the application, and that "since they did not receive such notice, they should not be barred by exhaustion requirements." Id. The circuit court then concluded:

> The district court, in finally disposing of this case on jurisdictional grounds, did not consider Stratman's and Burton's remaining recreational interests and therefore did not weigh the various alternatives which might be open to it in this regard. The judicial requirement of exhaustion of administrative remedies is not mechanically applied and we believe the question should  [*307]  be considered initially by the district court; we remand for such consideration.

*Id. at 1326.*

The district court did not rule on that remand because the decertification litigation was voluntarily dismissed in 1982 on the basis of a settlement agreement between Stratman and Koniag, later declared invalid. n6 In 1994, the United States Court of Appeals for the Ninth Circuit directed the  [**12]  United States District Court for the District of Alaska to reopen Stratman's decertification litigation. Stratman v. Babbitt, No. 93-36006 (9th Cir. Dec. 4, 1994); BIA Report, Appendix O.

n6 At the time of the settlement, Leisnoi had merged with Koniag and Koniag had taken over Leisnoi's defense in the decertification litigation. In 1984, the merger was declared void ab initio. See *Leisnoi, Inc. v. Stratman*, 835 P.2d at 1204-05.

In a scheduling Order dated May 10, 1995, Judge von der Heydt, who presided in the original suit, "identified five threshold issues in this action." (Leisnoi's Report, Ex. 6 at 1.) He listed those issues, as follows:

1. Whether the court should dismiss this action for failure of plaintiff Omar Stratman (hereinafter "plaintiff") to exhaust his administrative remedies;

2. Whether res judicata bars this action;

3. Whether plaintiff's second settlement agreement with Koniag, Inc., contractually precludes Stratman from proceeding against Leisnoi, Inc.; n7

4. Whether Section 1427 of the Alaska National Interest Lands Conservation Act [(ANILCA); Pub. L. No. 96-487, 94 Stat. 2519-20 (1980)] constitutes congressional  [**13]  ratification of Leisnoi's eligibility thus barring plaintiff's action; and

5. Whether plaintiff's lis pendens should be expunged.

Id.

n7 At page 12 of its report, BIA states that Koniag and Stratman entered into a second settlement agreement, dated June 6, 1990, and recounts some of the provisions of that agreement.

The court allowed briefing on the issues and stated: "If the court does not resolve this action on one of the five threshold issues, the court  [*308]  will remand the matter to the Interior Board of Land Appeals for a determination of Leisnoi's eligibility." Id. at 2.

The court did not resolve the case on any of those issues. In an Order dated September 13, 1995, Judge James Singleton, to whom the case had been transferred following Judge von der Heydt's retirement, found that res judicata did not bar the action, that failure to exhaust did not apply to the action "since the Ninth Circuit has already determined that Stratman did not have notice of the occasion to exhaust administrative remedies," and that Koniag's second settlement did not preclude Stratman's action. (Order at 2.) He further stated:


EXHIBIT 11
Page 35 of 43 Pages

This appears to be a perfect case to read ripeness [**14] and primary jurisdiction together to require that Stratman litigate his challenge to Leisnoi before the agency before he brings it here. The agency in the first instance should determine whether Leisnoi is a phantom of the Secretary's imagination, as Stratman contends, or as its members contend, the modern representative of an ancient people, the victim of an itinerant berry picker. Sending the issue back will permit the agency to exercise its expertise. If there is a reasonable basis for the Secretary's action, taking into account the limited time Congress allowed him for making the determination, his action will be upheld. If, despite the leeway he must be given, the Secretary did certify a phantom village, the agency is the best place for that determination to be made. * * *

* * * *

This case should therefore be sent to the IBLA for consideration of Stratman's challenge to Leisnoi. That course will permit exhaustion of administrative remedies, albeit belated, and give the Court the benefit of the agency's expertise and the agency the benefit of any intervening action by Congress. * * * Leisnoi has been in limbo too long. It should have an opportunity to show that it is real.

[**15]
(Order at 2-3.)

Regarding the issue of ratification under section 1427 of ANILCA, Judge Singleton stated: "This is a difficult question that should be decided in the first instance by the agency." Id. at 2. n8

n8 The court made no mention of the fifth issue listed in the May 10, 1995, Order.

In his November 21, 1995, Order, Judge Singleton denied further motions of the parties, including requests by Stratman that the court direct this Board to expedite the matter, and stated:

[*309] It is unfortunate that a case with a 1976 docket number is still pending. Stratman fears that agency action, like a tree to be grown from a seed, takes much time. The Court agrees. We had best plant the seed so that the tree can begin to grow. An interlocutory appeal would not speed the termination of this litigation. The parties have already been to the circuit and back. The agency should address the statutes and regulations in the first instance. n9

n9 In an oral argument on Apr, 8, 1996, before the United States Court of Appeals for the Ninth Circuit in Stratman v. Babbitt, No. 95-35376, an interlocutory appeal proceeding from denial of a preliminary injunction, Stratman argued that despite its remand Order, the district court had "retained jurisdiction of a number of issues in this case." (Reply to Stratman's Opposition to Motion to Strike, Ex. 3 at 3.) The court disagreed: "After this appeal was filed, the district court, on November 21, 1995, entered judgment and remanded this action, in its entirety, to the Interior Board of Land Appeals." (Emphasis in original.) Id., Ex. 4; see id., Ex. 3 at 18. The court dismissed Stratman's appeal as moot and, on June 3, 1996, denied Stratman's petition for rehearing. Id., Ex. 5. Also, on June 14, 1996, the court dismissed Stratman's appeal of the district court's remand Order. Id., Ex. 9.
[**16]

In their reports to this Board about the proper procedure to take following the court's "remand," the parties took various positions about whether the Board should decide any controlling legal issues first or address the factual issue of eligibility. After considering each of those reports, the Board concluded that the proper course of action in complying with the court's referral order was to defer ruling on any possible controlling legal issues and refer the case to the Hearings Division for the assignment of an Administrative Law Judge to provide a recommended decision on the eligibility issue. Our rationale was that any ruling by the Board on a controlling legal issue at that juncture would have resulted in immediate further judicial review, the culmination of which could have been another remand for an eligibility determination.

We now have before us the results of our referral to the Hearings Division, Judge Sweitzer's recommended decision on the eligibility of Woody Island, and the legal issues raised by the parties. n10 The Board finds itself in a novel position in this case because our jurisdiction has not been invoked in the usual fashion. This Board is a quasi-judicial



[**17] tribunal whose only function and obligation is to consider and decide appeals over which it has jurisdiction. 43 CFR 4.1(b)(3). Ordinarily, a party adversely affected by a decision of an agency official would seek review by this Board of such a decision. In this case, however, there is no agency [*310] decision for direct review. All the agency decisions in this case issued over 25 years ago. The case has found its way to us on referral from District Judge Singleton, who read "ripeness and primary jurisdiction together to require that Stratman litigate his challenge to Leisnoi before the agency before he brings it here." (Sept. 13, 1995, Order at 2.)

      n10 Stratman argues that the Board lacks jurisdiction to determine any issues other than those referred by the district court, which he asserts are whether Leisnoi satisfied ANCSA's criteria for eligibility as a native village; and (2) whether Leisnoi's status as an eligible native village was ratified by Congress in its passage of section 1427 of ANILCA. We disagree. We do not read the court's referral to be so limiting.

Jurisdiction/Administrative Finality

    Stratman seeks to resurrect the issue of the eligibility of Woody Island [**18] for ANCSA benefits, an issue decided with administrative finality in 1974 when the Secretary of the Interior approved the determination that Woody Island was, in fact, eligible. Since that time the Department of the Interior has treated Woody Island as an Alaska Native village and the benefits of that eligibility have been bestowed on Leisnoi.

    In a decision dated September 24, 2001, the United States Court of Appeals for the Ninth Circuit ruled in a Quiet Title Act action brought by Leisnoi, and dismissed by the District Court for the District of Alaska for lack of jurisdiction, that the district court erred in dismissing the case. *Leisnoi, Inc. v. United States, 267 F.3rd 1019 (9th Cir. 2001).* The land at issue was the surface estate of lands described in Patent Nos. 50-86-0067, 50-86-0093, 50-86-0632, 50-86-0634, and interim conveyances 171 and 1137 issued by the United States to Leisnoi. The circuit court held that two conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act, *28 U.S.C. § 2409a* (1994): (1) the United States must claim an interest in the property [**19] at issue; and (2) there must be a disputed title to real property between interests of the plaintiff and the United States. It found that the first condition existed because the United States claimed reserved easements in Leisnoi's property. It explained that the condition was met, even though Leisnoi did not dispute the Federal Government's entitlement to those easements, because the relevant language of the Quiet Title Act does not require that the claimed interest be in dispute. It found the second requirement met because, at the time the complaint was filed (and since), there was a continuing dispute between the asserted interests of Leisnoi and the United States in the property at issue. It stated that the fact that the United States' interests in the dispute were asserted by Stratman, rather than the United States itself, did not change the conclusion. The court ruled that a third party's claim of an interest of the United States can suffice to create a dispute in title if the third party's claim clouds the plaintiff's title. *Leisnoi, Inc. v. United States, supra at 1023.* The court expressly stated, however, that "the land could not revert to the [**20] United States regardless of the outcome of the decertification proceeding [pursued by Stratman]." *Id. at 1022 n.2.*

    On remand, the district court noted the circuit court's language that, regardless of the outcome of the decertification proceeding, the land [*311] could not revert to the United States. It also stated that on January 9, 2002, the United States had disclaimed any interest in the lands included in the patents and interim conveyances, "except for those property interests retained or reserved on the face of those patents and/or interim conveyances or statutorily reserved." The district court confirmed the disclaimer of interest filed by the United States and quieted title to the surface of the lands in Leisnoi. Leisnoi Inc. v. United States, No. A99-608 CV (HRH) (Jan. 15, 2002).

    [1] The effect of the issuance of a patent by the United States is to transfer the legal title from the United States and to remove from the jurisdiction of the Department the consideration of all disputed questions concerning the rights to lands. *Germania Iron Co. v. United States, 165 U.S. 379, 383 (1897); Southern Pacific R. Co. v. United States, 51 F.2d 873 (9th Cir. 1931); [**21] Sage v. United States, 140 F. 65 (8th Cir. 1905); Eddie S. Beroldo, 123 IBLA 156, 158 (1992); Lone Star Steel Co., 101 IBLA 369, 374 (1988).* n11 However, that rule is not without qualification. Thus, the court recognized in *Aguilar v. United States, 474 F. Supp. 840 (D. Alaska 1979),* that, where the land sought by a Native allotment applicant had been previously conveyed out of Federal ownership and, therefore, was no longer subject to the Department's adjudicatory jurisdiction, the Department nevertheless retained the responsibility of making an initial determination as to the validity of the allotment claim as a prerequisite to deciding whether or not the Government should bear the burden of going forward with a suit to annul the patent and thereby restore adjudicatory jurisdiction over the land in question to the Department.



n11 An interim conveyance operates like a patent under *43 U.S.C. § 1621(j) (1994)*, and title to the affected land passes from the United States. *Bay View, Inc., 126 IBLA 281, 286 (1993); Heirs of Linda Anelon, 101 IBLA 333, 336 (1988); Peter Andrews, Sr., 77 IBLA 316, 319 (1983).* [**22]

The basis for the exception in Aguilar was the court's recognition of the Secretary's special fiduciary responsibility to Native Americans, in that case, Alaska Natives. The court stated: "The protection of Indian property rights is an area where the trust responsibility has its greatest force." *Aguilar v. United States, 474 F. Supp. at 846* (citations omitted).

The rationale for creation of the exception in Aguilar does not exist in this case, however. The individual seeking to overturn the Department's eligibility determination does not stand in any special legal relationship to the Federal Government. In addition, he does not have a conflicting claim to the lands transferred to Leisnoi. In fact, he never made an administrative challenge to Woody Island's eligibility.

[2] Moreover, suits by the United States to vacate and annul any patent must, in accordance with *43 U.S.C. § 1166 (1994)*, be brought within six years after the date of issuance of such patents. See *United States v. Eaton Shale Co., 433 F. Supp. 1256 (D. Colo. 1977).* The patents and interim conveyances to Leisnoi [**23] were all made more than six years ago and [*312] title to those lands has been quieted in Leisnoi. Such facts brings into play the limitation against the United States provided by that statute and bar further Departmental involvement at any level, regardless of the possible merits of Stratman's challenge. See *State of Alaska, 45 IBLA 318, 330 (1980).* Therefore, even assuming that Stratman had a meritorious claim, we could not recommend to the Secretary that she support litigation by the United States to recover title from Leisnoi because the statute protects Leisnoi's title from such action. n12

n12 In *Cramer v. United States, 261 U.S. 219, 233 (1923)*, the Court held that, despite the fact that more than 6 years had passed since issuance of patent, the United States had jurisdiction "to remove a cloud upon the possessory rights of its [Indian] wards." Because of that relationship, the Court found that the action on behalf of Indian allotment claimants could be maintained despite the 6-year statute of limitations "because the relation of the Government to them is such as to justify or require its affirmative intervention." *Id. at 234.* No such relationship exists in this case. [**24]

Because this Board lacks subject matter jurisdiction in this case, we have no authority to entertain Stratman's challenge to Woody Island's eligibility, which has made its way to us through referral from a court. The court cannot vest the Board with jurisdiction it does not have. Were Stratman's challenge to have arrived, as our cases do, in the form of an appeal from an agency decision, it would be dismissed.

Nevertheless, we recognize that an agency, on remand of a matter from a court, must obey the court's mandate and directions without variation and, if the cause is remanded with specific directions, further proceedings before the agency must be in substantial compliance with such directions, even if the directions are erroneous. *Mefford v. Gardner, 383 F.2d 748, 758-59 (6th Cir. 1967).*

While this case has not been remanded to us, it has been referred to us. And the district court has asked that we bring agency expertise to bear on questions before it. Despite our lack of subject matter jurisdiction, we have followed the court's directive by referring the eligibility question to the Hearings Division, Office of Hearings and Appeals, for a recommended [**25] decision. Judge Sweitzer's decision, which concluded that Woody Island was not an eligible village under sections 14(a) and (b) of ANCSA, fulfills the court's mandate on that issue. Next, in compliance with the court's order we will address the requisite legal issues.

Ratification

The legal issue referred to the Board by the court is whether Woody Island's status as a Native village has been ratified by Congress.

In ANILCA, Pub. L. No. 96-487, 94 Stat. 2371, 2518-28 (1980), Congress enacted section 1427, entitled "Koniag Village and Regional [*313] Corporation Lands." In section 1427(a)(4) of ANILCA, Congress defined the term "Koniag deficiency village corporation," as meaning any or all of four corporations, one of which was "Leisnoi, Incorporated." It also defined the term "Deficiency village acreage on the Alaska Peninsula" as



EXHIBIT 11
Page 38 of 43 Pages

the aggregate number of acres of public land to which "Koniag deficiency Village Corporations" are entitled, under section 14(a) of the Alaska Native Claims Settlement Act, to a conveyance of the surface estate on account of deficiencies in available lands on Kodiak Island, and to which Koniag, Incorporated is entitled under section 14(f) of that [**26] Act to conveyance of the subsurface estate.

Section 1427(a)(2) of ANILCA.

Congress then provided that in satisfaction of various rights, including "the right of each Koniag Deficiency Village Corporation to conveyance under [ANCSA] of the surface estate of deficiency village acreage on the Alaska Peninsula," the Secretary of the Interior would convey, as provided in section 1427(c), "the surface estate of all public lands on Afognak Island," with certain exceptions. n13

n13 Subsection (c) provided that the land on Afognak Island would be conveyed to a joint venture consisting of several parties, including "the Koniag Deficiency Village Corporations."

Leisnoi and Koniag argue that such action by Congress amounts to a ratification of Woody Island's certification and the right of Leisnoi to receive conveyances of land under ANCSA. Such action, itself, they assert, dictates that Stratman's administrative challenge to Leisnoi's eligibility must be dismissed.

Stratman, on the other hand, states that the purpose of section 1427 of ANILCA was merely to exchange the land selection and entitlement rights of various village corporations and Koniag Regional Corporation to the lands on [**27] the Alaska Peninsula, to which they were entitled under ANCSA, for lands on Afognak Island, which were unavailable under ANCSA. Stratman argues that nothing in section 1427 or the legislative history of that provision evidences any intent by Congress to exempt Woody Island from the eligibility requirements of section 11(b)(3) of ANCSA. Section 1427, he claims, only amended the land selection and entitlement provisions of ANCSA by substituting the lands on Afognak Island for those lands withdrawn and available for selection by the Koniag villages. Rather than a ratification, Stratman asserts, inclusion of Leisnoi in section 1427 constituted simply an identification or recognition of Woody Island's status as a Native village.

Koniag bases its position on the plenary power of Congress to designate Leisnoi as a Native village. According to Koniag, three sources of Congressional power support its assertion: 1) the power to ratify [*314] unauthorized acts; 2) the power to dispose of the public land; and 3) the power to moot a pending controversy by enacting new legislation. While Stratman does not dispute that Congress has all those powers, for which Koniag has supplied ample legal authority, [**28] he claims that Congress did not exercise any of them in enacting section 1427, insofar as it affects Leisnoi. First, Stratman asserts that there was no unauthorized act involved in this case because the Secretary of the Interior had the authority under section 11(b)(3) to certify Woody Island as a Native village. Stratman challenges the Secretary's actions as an erroneous exercise of delegated authority, not the exercise of undelegated authority. Second, Stratman agrees that Congress has the power to dispose of public land, and that ANCSA was an exercise of that power, but, he contends, such an assertion begs the question whether Congress repealed the village eligibility requirements of ANCSA by designating Leisnoi as a participant in the Afognak exchange. Third, while Stratman does not contest the power to moot a pending lawsuit through legislation, he asserts that Congress did not do so in recognizing Leisnoi in section 1427.

We find that the listing of Leisnoi in section 1427(a)(4) and its entitlement to lands on Afognak Island was not a ratification of its eligibility as a Native village. At the time Congress passed ANILCA there was extant a final decision by the Secretary of [**29] the Interior that Woody Island, in fact, satisfied the ANCSA requirements for status as a Native village. The listing of Leisnoi in section 1427(a)(4) was merely reflective of that status. There was no unauthorized act to ratify and, as an ANCSA Native village, Woody Island was qualified to participate in ANCSA entitlements.

In addition, in 1980, when section 1427 was enacted, Stratman's decertification litigation had been dismissed by the district court ( *Stratman v. Andrus, 472 F. Supp. 1172 (D. Alaska 1979)),* although that matter was on appeal to the circuit court on procedural grounds. Thus, in 1980, the Secretary's September 1974 approval of BIA's February 1974 final eligibility determination was in effect, and not the subject of an immediate judicial challenge. In September 1981, after enactment of section 1427, the circuit court reinstated the decertification litigation, remanding the matter to the district court. See *Stratman v. Watt, supra.*

157 IBLA 302, *; 2002 IBLA LEXIS 46, **

We must presume that Congress took these facts into account when listing Leisnoi as entitled to the benefits of section 1427 of ANILCA, by virtue of Leisnoi's then unchallenged [**30] entitlement under section 14(a) of ANCSA. See 2B Sutherland Statutory Construction § 49.01 (5th Ed. 1992), at 1. The conclusion that it was not the intention of Congress to moot any lawsuit regarding Leisnoi's eligibility by listing it in section 1427(a)(4) is reinforced by the fact that in the same section Congress expressly provided for the resolution of disputes concerning the status of seven unlisted villages by declaring each to be "deemed an eligible village under the Alaska Native Claims Settlement Act." Section 1427(e)(1), Pub. L. No. 96-487, 94 Stat. 2525 (1980) (S. Rep. No. 413, 96th Cong., 1st Sess. 261, 324 (1979), reprinted in 1980 U.S. Code Cong. & Ad. News 5205, 5268). It could have done the same for Leisnoi, but it did not.

[*315]  Other facts support a conclusion that passage of section 1427 was not a ratification of the eligibility of Woody Island's status as an ANCSA Native village. In issuing its September 22, 1995, order, the district court noted at page 1 that "new light" might be shed on the case with enactment of the "Stratman Bill." Id. at 1. The court was alluding to the fact that, at that time, Congress had passed section 109 of H.R. 402, [**31] 104th Cong., 1st Sess. (1995), which specifically "confirmed [Leisnoi] as an eligible Alaska Native Village, pursuant to Section 11(b)(3) of [ANCSA]." See 141 Cong. Rec. S11342, S11343, S11347 (daily ed. Aug. 3, 1995); 141 Cong. Rec. H9068, H9069, H9074 (daily ed. Sept. 18, 1995); 141 Cong. Rec. H9150-51 (daily ed. Sept. 19, 1995). However, Congress later resolved to strike section 109 from H.R. 402. See 141 Cong. Rec. H9710-11 (daily ed. Sept. 29, 1995); 141 Cong. Rec. S15199 (daily ed. Oct. 17, 1995). In agreeing to the resolution, Congressman Miller, who had worked on the overall legislation, stated:

[Section 109] was added by the other body without public hearings and was intended to intervene in pending litigation. But the Senate did not do their homework. This provision generated significant controversy, especially amongst the affected citizens of Kodiak, AK. Moreover, this technical amendments bill was an inappropriate vehicle for controversy. The gentleman from Alaska and I had worked over two Congresses to develop a consensus on this legislation only to be undercut, in my view, by the other body.

141 Cong. Rec. H9710 (daily ed. Sept. 29, 1995). Legislative [**32] confirmation did not occur, and it would not have been needed if, in fact, passage of section 1427 in 1980 had acted as ratification of Woody Island's eligibility.

Federally-recognized Tribal Entity

In its objections to Judge Sweitzer's recommended decision, BIA raises a legal issue not discussed in the post-hearing briefs. BIA argues that in 1993 the Department of the Interior confirmed the pre-existing status of "Leisnoi Village (aka Woody Island)" as a federally-recognized tribe by including such village in the published list of "Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs" (Tribal Entities List). 58 FR 54364, 54369 (Oct. 21, 1993). According to BIA, this action by Congress essentially confirmed the status of Woody Island as "a historical (and traditional) sovereign tribe having an identifiable location on Woody Island." (BIA Objections to Recommended Decision at 5.) BIA asserts that "such status as a recognized tribe cannot be terminated (or decertified) except by Act of Congress." Id.

The preamble to the Tribal Entities List indicates that the Department intended the list to clarify [**33] which Native entities in Alaska were operating as Federally-recognized Tribes and also to clarify that tribes in Alaska enjoyed the same status as tribes in the contiguous 48 states:

[*316]  The purpose of the current publication is to publish an Alaska list of entities conforming to the intent of 25 C.F.R. 83.6(b) and to eliminate any doubt as to the Department's intention by expressly and unequivocally acknowledging that the Department has determined that the villages and regional tribes listed below are distinctly Native communities and have the same status as tribes in the contiguous 48 states. * * * This list is published to clarify that the villages and regional tribes listed below are not simply eligible for services, or recognized as tribes for certain narrow purposes. Rather, they have the governmental status as other federally acknowledged Indian tribes by virtue of their status as Indian tribes with a government-to-government relationship with the United States; are entitled to the same protection, immunities, privileges as other acknowledged tribes; have the right, subject to general principles of Federal Indian law, to exercise the same inherent and delegated authorities [**34] available to other tribes; and are subject to the same limitations imposed by law on other tribes.

58 FR 54366-67 (Oct. 21, 1993).

EXHIBIT 11
Page 40 of 43 Pages

157 IBLA 302, *; 2002 IBLA LEXIS 46, **

Thereafter, Congress passed the Federally Recognized Indian Tribe List Act of 1994, *25 U.S.C. § § 479a* and note, 479a-1 (1994), which recognized the Tribal Entities List, confirmed the responsibility and authority of the Secretary to recognize tribes, took notice of the sovereign status of such tribes, and affirmed the obligation of the United States, as part of its trust responsibility, to maintain a government-to-government relationship with those tribes. The act also provided that "a tribe which has been recognized * * * may not be terminated except by Act of Congress." *25 U.S.C. § 479a* note (1994). n14 In discussing the Act, the Alaska Supreme Court stated:

> And for those who may have doubted the power of the Department of the Interior to recognize sovereign political bodies, a 1994 act of Congress appears to lay such doubts to rest. In the Federally Recognized Tribe List Act of 1994, Congress specifically directed the Department to publish annually [**35] a list of all Indian tribes which the Secretary recognizes to be eligible * * *.

> [*317] Through the 1993 tribal list and the 1994 Tribe List Act, the federal government has recognized the historical tribal status of Alaska Native villages * * *.

*John v. Baker, 982 P.2d 738 (Alaska 1999).*

> n14 In discussing that provision, the Committee stated:
> "While the Department clearly has a role in extending recognition to previously unrecognized tribes, it does not have the authority to "derecognize" a tribe * * *. The Committee cannot stress enough its conclusion that the Department may not terminate the federally-recognized status of an Indian tribe absent an Act of Congress."
> H.R. No. 781, 103rd Cong., 2nd Sess. 1994, 1994 U.S. Code Cong. & Ad. News 3768.

BIA argues that the inclusion of "Leisnoi Village (aka Woody Island)" on the Tribal Entities List "confirmed the status of the Village as a historical (and traditional) sovereign tribe having an identifiable location on Woody Island." (BIA Objections to Recommended Decision at 5.) It added that, as an historical tribe, the village can truly be said to be a "traditional village" within the meaning [**36] of 43 CFR 2651.2(b)(2), which provides that no traditional village shall be disqualified for certification "by reason of having been temporarily unoccupied in 1970 because of an act of God or governmental authority occurring within the preceding 10 years." Id.

Leisnoi's position is that the Tribal Entity List and the passage of the Federally Recognized Indian Tribe List Act are but the latest factors which "have eliminated the ability of the Department of the Interior and the courts to declare Woody Island not to be an Alaska Native village." (Leisnoi Objections to Recommended Decision at 12.)

The Department of the Interior first published a list of Indian Tribal Entities on February 6, 1979, noting therein that a list of "eligible Alaskan entities" would be published at a later date. *44 FR 7325* (Feb. 9, 1979). Thereafter, it published a "preliminary list" of "Alaskan Native Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs." *47 FR 53133* (Nov. 24, 1982). In 1988, the Department, in publishing an updated list, stated:

> The purpose of this updated list is: (1) To comply with [**37] the regulatory requirement of annual publication pursuant to 25 CFR Part 83, (2) to reflect the Alaska entities which are statutorily eligible for funding and services from the Bureau of Indian Affairs, (3) to make it easier for previously unlisted, but statutorily eligible, entities to receive funding and services, and in so doing, (4) to describe the criteria used for inclusion on the list and for making additions.

*53 FR 52832* (Dec. 29, 1988). The Department stated that the

> list includes all of the Alaska entities meeting any of the following criteria which are used in one or more Federal statutes for the benefit of Alaska Natives:

> 1. Tribes as defined or established under the Indian Reorganization Act as supplemented by the Alaska Native Act.

EXHIBIT 11
Page 41 of 42 Pages

157 IBLA 302, *; 2002 IBLA LEXIS 46, **

[*318]  2. Alaska Native Villages defined in or established pursuant to the Alaska Native Claims Settlement Act (ANCSA).

3. Village Corporations defined in or established pursuant to ANCSA. * * *

*Id. at* 52833. The list included "Leisnoi, Inc. (Woody Island)." *Id. at* 52834.

In 1993, the Department published a new list of Alaskan [**38] Native entities stating that the 1988 publication had raised a number of questions regarding the Department's intent and the effect of the list. *58 FR 54365* (Oct. 21, 1993). The Department stated:

The purpose of the current publication is to publish an Alaska list of entities conforming to the intent of 25 CFR 83.6(b) and to eliminate any doubt as to the Department's intention by expressly and unequivocally acknowledging that the Department has determined that the villages and regional tribes listed below are distinctly Native communities and have the same status as tribes in the contiguous 48 states.

Id. It also clarified that the 1993 list was limited to entities found to be tribes and did not include non-tribal Alaska Native entities, such as ANCSA village and regional corporations. Id. Leisnoi claims that the village continues to be recognized as a tribe, citing *63 FR 71945* (Dec. 30, 1998).

The question presented is whether Congressional recognition of the Department's listing of Woody Island on the Tribal Entities List constitutes ratification of the status of Woody Island as an Alaska Native village, such that [**39] the Department is barred from engaging in further proceedings investigating the eligibility of that village to receive ANCSA benefits.

In the Federally Recognized Indian Tribe List Act of 1994, Congress found that tribes could be recognized in any of three ways: (1) by act of Congress, (2) by the administrative procedures in 25 CFR Part 83, or (3) by a decision of a United States court. *25 U.S.C. § 479a* note (1994). As stated above, the 1993 preamble to the publication of the Tribal Entities List states that the tribes on that list "conformed to the intent of 25 CFR 83.6(b)." Thus, to the extent tribes on the list had not been recognized by an act of Congress or by a decision of a United States court, their inclusion on the list indicated that they had been recognized by the administrative procedures in 25 CFR Part 83. The appearance of "Leisnoi Village (aka Woody Island)" on the list indicates that it "conformed to the intent of 25 CFR 83.6(b)." Congress also found, as set out above, that "a tribe which has been recognized in one of these manners may not be terminated except by Act of Congress." *25 U.S.C. § 479a* [**40] note (1994).

[*319]  Stratman asserts that inclusion of Woody Island on the Tribal Entities List does not establish that Woody Island constitutes an eligible ANCSA Native village, but only that it constitutes a "tribe." Stratman is correct. While a tribe may be a Native village and vice versa *(43 U.S.C. § 1602(d) (1994)),* in order to constitute an ANCSA Native village a tribe must satisfy the ANCSA criteria for eligibility. There is no evidence that Congress either expressly or impliedly modified the village eligibility requirements of ANCSA in enacting the Federally Recognized Indian Tribe List Act of 1994. The fact that Woody Island appears on the Tribal Entity List means that it has been recognized as a tribe. That recognition is related to its status as an ANCSA Native village, but whether or not it is entitled to that status is a separate question, one that was decided with administrative finality by the Secretary in September 1974. Moreover, as with the arguments concerning the effect of section 1427 of ANILCA, if Woody Island's status as an ANCSA Native village had been confirmed by the Federally Recognized Tribe List Act of 1994, there [**41] would not have been any need for the "Stratman Bill" in 1995, discussed supra.

Issues such as standing and timeliness raised by Leisnoi are not relevant given the posture of this case and our lack of subject matter jurisdiction. n15 To the extent the parties have raised other legal issues, they have been considered and rejected.

n15 We note that at the hearing, counsel for Stratman, in cross-examination of Fred Frank Zharoff, a Leisnoi shareholder and Alaska State Legislator, regarding Stratman's Exhibit 30-G, a full page notice in the Apr. 4, 1973, Kodiak Daily Mirror, prepared by Karl Armstrong, a Leisnoi shareholder, showing a comparison of benefits under ANCSA and the land and monetary benefits of enrollment to Woody Island, stated: "The point I'm trying to get you to concede, Senator, is it would be hard for people in a community to not be aware in a



community this size with a publication that prominent at that point in time." (Tr. 3110.) Thus, Stratman's point was that virtually everyone on Kodiak Island would have been aware of efforts to enroll Natives to Woody Island. It is certainly conceivable, then, that Stratman himself, as a member of that community, had actual knowledge of such efforts and the subsequent filing of the application and eligibility decision and failed to bring any timely administrative challenge thereof. [**42]

Recommended Decision

Judge Sweitzer's 100-page recommended decision in this case represents a comprehensive and exhaustive analysis of the evidence presented in the case consisting of over 3,600 pages of transcript of the testimony of over 40 witnesses; depositions, affidavits, and interviews from over 50 witnesses; over 600 exhibits, totaling thousands of pages, and over a thousand pages of post-hearing briefing. In conclusion, he found that Woody Island did not have 25 or more Native residents on April 1, 1970; was not an established Native village and did not have an identifiable physical location evidenced by occupancy consistent with the [*320] Natives' own cultural patterns and life-style; and was used during 1970 by less than 13 enrollees to Woody Island as a place where they actually lived for a period of time. (Decision at 99-100.) He also determined that Woody Island was not unoccupied in 1970 due to one or more acts of God or governmental authority occurring within the preceding ten years. (Decision at 86-92.) We have reviewed the objections to Judge Sweitzer's recommended decision filed by the parties and we find no reason to alter his findings and conclusions with [**43] which we agree.

The court will now have the benefit of our analysis of the legal issues presented by the parties and Judge Sweitzer's recommended decision on the eligibility of Woody Island.

All motions or requests not expressly addressed have been considered and are, hereby, denied.

Accordingly, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 CFR 4.1, we conclude that we do not have subject matter jurisdiction in this matter and we return the case to the District Court. n16

n16 The regulations at 43 CFR 2651.2(a)(5) provide that "decisions of the Board [of Land Appeals] on village eligibility appeals are not final until personally approved by the Secretary." We do not believe it is necessary to seek Secretarial approval for this decision because we are not issuing a decision on a village eligibility appeal. The Secretary approved the Department's final decision on the eligibility of Woody Island in September 1974.

Bruce R. Harris

Deputy Chief Administrative Judge

CONCURBY: BURSKI

I concur:

James L. Burski
Administrative Judge