EXHIBIT 1

1  following occurred:)

2          THE COURT:  Okay, we're in order, Mr.

3  Fitzgerald.

4          MR. FITZGERALD:  Call Mr. Stratman to

5  the Stand.

6  O M A R   S T R A T M A N,   called as a witness by

7          the Respondent, having been first duly

8          sworn, was examined and testified as

9          follows:

10  DIRECT EXAMINATION

11  BY MR. FITZGERALD:

12          Q.  Good evening, Mr. Stratman.  I believe

13  you know who I am.

14          A.  Good evening.  I think we've met.

15          Q.  I called you to the Stand in some other

16  proceedings.  Mr. Stratman, did you at one time

17  acquire 159.99 acres on Kodiak Island?

18          MR. SCHNEIDER:  Objection, Your Honor.

19  If the Court would refer to the Order of IBLA of

20  November 21, 1997, it makes it strictly clear that

21  the matter of standing was raised at the time, and

22  that's exactly where Mr. Fitzgerald's going.

23          This, Your Honor's job description as

24  you've pointed out, appears in general, but certainly

25  at Footnote 9 on Page 7, and this is an effort to get

1   into standing questions, which the Board had

2   addressed it.

3                MR. FITZGERALD:  Can I see what you're

4   referring to?

5                MR. SCHNEIDER:  Well, I'm referring to

6   Footnote 9, Jack.  Right, and on Page 7 first it

7   asserts that Stratman has no standing to maintain an

8   administrative action because he has no longer a

9   Federal Grazing Lease, la, la, la, la, la, la.

10               That's, that's the third paragraph on

11  Page 7.  The Board recognizes that that assertion is

12  being put forth by Leisnoi, and shoots it down.

13               THE COURT:  And to, to add --

14               MR. SCHNEIDER:  After, after careful --

15  On Page 10, "After careful investigation, ... Board

16  believes proper course of action in this case ...

17  defer ruling on any possible controlling legal issues

18  ... the case to a hearing decision.... ALJ's [for

19  the, are the, the,]... to convene a hearing for the

20  purpose of determining whether Woody Island meets the

21  legal criteria for eligibility for certification as a

22  Native village."

23               So, the directions on Footnote 10, or

24  Footnote 9, Page 7, are repeated on Page 10.  Again,

25  the Board points out at Note 13 on Page 10 that, "...

1   Rulings on these matters at this time would largely

2   be a waste of time," and so the very matter that Mr.

3   Fitzgerald wishes to go into has been precluded.

4           THE COURT:  I, I, I want to hear from

5   you, Mr. Fitzgerald, but let me tell you

6   preliminarily I, I, I think Mr. Schneider's point

7   here is pretty convincing.  And when, at, at the

8   outset of the hearing I made the statement that, that

9   the Board deferred ruling on other questions of law

10  and referred the matter to an Administrative Law

11  Judge to hold a hearing on issued recommended

12  decision on just one issue, and then I stated it.

13          And it's just a paraphrasing of what

14  this Board Order says.  The way I stated is:  Does

15  the Native village of Woody Island, that is, Leisnoi,

16  meet the eligibility criteria for receiving benefits

17  under the Alaska Native Claims Settlement Act?

18          And I think that's the restricted

19  purpose for my conducting this hearing.

20          MR. FITZGERALD:  Your Honor, I'm not

21  expecting you at this time to make a decision as to

22  whether or not this actually lacks standing.  I

23  simply want to have some testimony put into the

24  Record that he has no property interest that will be

25  affected by the Decision that will ultimately be

1   made; therefore, I will be able to argue to the IBLA

2   that he lacks standing.

3              I'm not trying, I'm not asking you

4   right now to dismiss this case.  Merely asking you to

5   allow me to establish that this individual has no

6   property that will be affected by the Decision that

7   will ultimately be made in this case.

8              It's merely a small piece of evidence

9   so that the I-, it will be in the Record before the

10  IBLA so I can make my legal arguments at a later

11  time.  I understand it's not within the scope of your

12  mandate to make the Decision.

13             However, I have a right, I believe, I

14  respectfully contend, to ask this Witness whether or

15  not he has any property that will be affected by the

16  Decision.

17             THE COURT:  Okay, what you're saying

18  is, then, even though this is not an issue that I am

19  called upon to determine, this is your chance, as you

20  view it, to get this evidence --

21             MR. FITZGERALD:  That's, that's --

22             THE COURT:  -- so it can be later

23  considered by IBLA or whatever?

24             MR. FITZGERALD:  Exactly.  Exactly.

25             MR. SCHNEIDER:  If, if I may, Your

1    Honor, in that regard, this ground has been plowed.

2    The very arguments that he wishes to make are

3    documented in the Record.

4              Facts have been attained.  And, again,

5    and just as, as these gentlemen, these guys have met

6    each other before, this isn't their first party.

7              There's lots of facts.  This is a third

8    or fourth or fifth bite of the apple in a forum that

9    Judge Singleton made clear was not for this purpose,

10   that IBLA made clear was not for this purpose.

11             He's already got whatever he thinks he

12   needs, and he can, he's got that reported.  He can

13   use it at the appropriate time.

14             This is like me showing up and trying

15   to challenge the Regulation.  I'd love to do it.

16   IBLA told me I can't do it.

17             THE COURT:  Well, I understand what

18   both of you are saying.  Out of an abundance of

19   caution, perhaps an overabundance of caution, I'm

20   going to permit the questioning to go on for a couple

21   of reasons:

22             One, the, the assurance by Counsel that

23   we're not going to take a whole lot of time with

24   this.  But secondly, it's easier to have the evidence

25   in and then for IBLA or whomever to determine that

1    it's not probative to any issue that they're going to

2    determine, than it would be for them to state that I

3    should have let it in and then another remand

4    perhaps, or whatever.

5              So, with that comment, the objection's

6    overruled.

7              MR. FITZGERALD:  Thank you, Your Honor.

8    BY MR. FITZGERALD (Resuming):

9         Q.  Mr. Stratman, at one time did you

10   acquire 159.99 acres on Kodiak from the United States

11   of America?

12        A.  Yes.

13        Q.  And did you sell or transfer that to a

14   corporation known as Northland Ranches, Inc.?

15        A.  Yes, I have a corporation named

16   Northland Ranches, Inc., that I transferred that

17   property to.  It's a closely-held corporation.  My

18   accountant asked, has documented that.

19             MR. FITZGERALD:  Excuse me, Your Honor.

20   If you would, please restrict the Witness to

21   answering my questions.

22             It was a simple question:  Did he

23   transfer this property to a corporation?  I didn't

24   ask about what his accountant said or anything like

25   that.

Stratman - Direct          720

1          THE COURT:  Okay.  Well, I, I think

2    the -- Okay, I think he's answered the question now,

3    so move on to the next.

4    BY MR. FITZGERALD (Resuming):

5          Q.  Okay, please refrain from giving

6    narratives and just answer the question, sir, and we

7    can move right along.

8          THE COURT:  Well, I'm not going to

9    restrict him in that way.  If he feels a question

10   calls for more than a yes-or-no answer, he, he can do

11   it.

12         So, go ahead and answer your next, ask

13   your next question, please.

14   BY MR. FITZGERALD (Resuming):

15         Q.  And did you at one time acquire a

16   grazing lease on property on Woody Island?

17         A.  No, I never acquired a grazing lease on

18   Woody Island.

19         Q.  Did you ever acquire a grazing lease on

20   Kodiak Island?

21         A.  Yes.

22         Q.  And did you transfer that Grazing Lease

23   to the same corporation?

24         A.  I have two Grazing Leases on, on Kodiak

25   Island.

1          Q.  Did you transfer those Grazing Leases

2     to Northland Ranches, Inc.?

3          A.  Not both of them, no.  Only one.

4          Q.  And the Grazing Lease that was not

5     transferred, is that covering any property owned by

6     Leisnoi, Inc.?

7          A.  Say that question again?

8          Q.  You said you transferred one of two

9     Grazing Leases.

10         A.  Yes.

11         Q.  Which one?

12         A.  I'm not real sure which -- I'm trying

13    to answer the question, but I'm not real sure which

14    Grazing Lease was transferred at, at this time,

15    because they, one of those Grazing Leases were later

16    reissued in my name.

17         Q.  At the present time do you, Omar

18    Stratman, as an individual, hold a grazing lease on

19    property surrounding your homestead?

20              MR. SCHNEIDER:  Irrelevant; immaterial.

21              THE COURT:  What, what do you say to

22    the objection?

23              MR. FITZGERALD:  Well, if he's saying

24    that's irrelevant whether or not he owns a grazing

25    lease, we're certainly, if he's going to concede to

Stratman - Direct                722

1    the point, we can move along.

2              MR. SCHNEIDER:  I made an objection to

3    the question.  I'm not stipulating to anything.

4              THE COURT:  Okay, the objection is

5    overruled.

6              THE WITNESS:  Okay, what was the

7    question?

8    BY MR. FITZGERALD (Resuming):

9         Q.  Do you personally at this time own a

10   Grazing Lease covering property surrounding your

11   homestead on Kodiak Island, or has that Grazing Lease

12   been transferred to Northland Ranches, Inc?

13        A.  I believe it's owned by Northland

14   Ranches, Inc.

15        Q.  Thank you.  Do you, sir, own any

16   property that would be affected by a Decision as to

17   the eligibility of the, the Native village of Woody

18   Island, Inc., for benefits under the Alaska Native

19   Claims Settlement Act?

20        A.  I own 99 percent, 99.6 or -7 percent of

21   Northland Ranches, Inc.

22        Q.  You are a shareholder in a corporation,

23   and that is your only claim of a property interest in

24   this case; is that correct?

25              MR. SCHNEIDER:  He doesn't have a claim

1   of a property interest in this case.

2   BY MR. FITZGERALD (Resuming):

3           Q.  You have no property that, in your name

4   that would be affected by a Decision --

5                   MR. SCHNEIDER:  Irrelevant, immaterial.

6                   MR. FITZGERALD:  Your Honor, it's not

7   irrelevant or immaterial.  It goes to the man's lack

8   of standing.

9                   He has to have a standing that's

10  affected by the eligibility; otherwise he can't

11  challenge our certification.

12                  THE COURT:  The objection's overruled.

13                  THE WITNESS:  You know, I'm not sure.

14  I, I, when I get my, my Assessments from the Bureau,

15  I get about seven of them, so I can't really say for

16  sure.

17  BY MR. FITZGERALD (Resuming):

18          Q.  And those Assessments are in the name

19  of Northland Ranches, Inc., aren't they?

20          A.  No, they aren't.  Some of them are in

21  the name of Omar Stratman.

22          Q.  Cattle, cattle are in the name of

23  Northland Ranches, Inc., right?

24          A.  I believe so.

25          Q.  Okay.

Stratman - Direct                    724

1          A.  But the machinery isn't.

2          Q.  You don't claim a property interest in

3     any of the land that was conveyed to Leisnoi, Inc.,

4     under the Alaska Native Claims Settlement Act, do

5     you?

6          A.  I don't believe I have a property

7     interest in it, no.

8          Q.  Have you ever attempted to acquire any

9     of the land that was patented to Leisnoi, Inc.,

10    either for your own benefit or for the benefit of

11    your attorney or for the benefit of any of your

12    friends?

13         A.  What's the question again?

14         Q.  Have you ever attempted to personally

15    acquire any of the land that was patented to Leisnoi,

16    Inc., either for your own benefit, for the benefit of

17    your contingency-fee attorney, or for any of the,

18    your friends?

19         A.  Well, I had an agreement with Koniag in

20    1992, before I, my attorney dismissed this lawsuit,

21    for, to acquire land, yes.

22         Q.  And subsequent to that didn't you, in

23    fact, attempt to acquire Termination Point, all of

24    Long Island, and other portions of land that were

25    patented to Leisnoi, Inc.?  Isn't that a fact?

1          A.   I think there was a, there was some

2    kind of a, supposed to be a confidential, -- What is

3    the word I'm searching for? -- a confidential offer

4    made to Mr. Boyko.

5          MR. SCHNEIDER:  Your Honor, let me, let

6    me object at this point.  Even if we were operating

7    under the Rules of Evidence you would never let in

8    evidence of settlement discussions.

9          THE COURT:  That's, that's quite so.  I

10   sure recognize that.

11         MR. SCHNEIDER:  And settlement

12   discussions went on in this case.  That's exactly

13   what my brother, Mr. Fitzgerald, is referring to.

14         There was an existing written Agreement

15   with Mr. Fitzgerald's firm about confidentiality in

16   those proceedings for a variety of reasons.  One, of

17   course, we thought they would be misused like this.

18   Not a lot of trust between these parties.

19         And secondly, we were concerned that

20   the nature of those negotiations would be

21   misrepresented.  And the very reason that Courts

22   don't go into those matters is so you don't have to

23   listen to this, two sides of a coin that should never

24   be inquired into in court in any event.

25         The, the Regula-, the Board's

1   Regulations, and there, there are cases, ANCAB cases

2   where settlements are possibilities in this case.

3   This case has never settled.

4            These discussions, I can't recall the

5   date of them, but, boy, they're old now.  And this

6   has got nothing to do with anything remotely before

7   the Court.

8            It certainly doesn't have anything to

9   do with the standing issue that Your Honor, out of an

10  abundance of caution, is letting him pursue.

11           MR. FITZGERALD:  May I respond, Your

12  Honor?

13           THE COURT:  Yes.  Let me just ask you:

14  Haven't you already -- And then you can say whatever

15  else you want, sir, but haven't you already

16  established what your intent was here?

17           MR. FITZGERALD:  No, Your Honor.  I

18  need to negate his claim of public interest status by

19  showing that he has hired Mr. Schneider on a

20  contingency fee; that he has marked up a map in his

21  own pink pen that we kept in our office safe all of

22  these years showing the areas that he demanded

23  Leisnoi convey to him.

24           And this is pertinent to an agreement

25  that Mr. Schneider introduced to the Ninth Circuit

Stratman - Direct                    727

 1   after having signed a Confidentiality Agreement and

 2   now, after having introduced it into evidence in the

 3   Ninth Circuit, he now seeks to preclude by

 4   establishing that he's not a public-interest

 5   litigant, and that maybe his claim of standing to be

 6   a public interest litigant.

 7                THE COURT:  Well, if this has been

 8   introduced before the Ninth Circuit, why do you --

 9                MR. FITZGERALD:  I simply want to make

10   my Record here, Your Honor.  I'm really trying to

11   show this man has no standing either as a

12   public-interest litigant or having no property

13   interest.

14                He's already conceded he has no

15   property that would be affected.  I merely want to

16   show he's not a public interest, because he's trying

17   to line his own pocket and those of a contingency-fee

18   lawyer with lands that he contends should never have

19   been patented.

20                So, it undercuts his standing as a

21   Protestant, and that's a base of relevancy.

22                THE COURT:  I think you're getting into

23   settlement discussions.  You, you recognize you can't

24   properly do that?

25                MR. FITZGERALD:  Your Honor, he has

Stratman - Direct                728

1    claimed to be a public-interest litigant.  He's tried

2    to strangle this corporation.

3                He's sought an Injunction seeking to

4    freeze all their bank accounts; trying to shut down

5    all their timber harvesting on this fictitious claim

6    of being some sort of public-interest litigant.  And,

7    in fact, he has merely been trying to get land and

8    money from this corporation.

9                And it goes to his bias and lack of

10   standing.  So, I'm almost done with this line of

11   questioning.

12               I simply want to show he's not a

13   public-interest litigant and be done with it.

14               THE COURT:  Well, let's start over with

15   your question. Re-ask it.  Let's see if there's an

16   objection to it.

17               MR. FITZGERALD:  Okay.  Well, there

18   will be an objection to it.

19   BY MR. FITZGERALD (Resuming):

20          Q.  Sir, have you, in fact, attempted to

21   obtain land that was patented to Leisnoi, Inc., for

22   your own benefit or for the benefit of Michael J.

23   Schneider, Esquire, or other friends of yours?

24               MR. SCHNEIDER:  Same objection.  Gets

25   into settlement, settlement specifically approved by

1    Regulation in these matters.

2              It's expressly irrelevant, immaterial.

3    This, it is, it goes to absolutely no issue before

4    this Court.

5              It doesn't go to, to standing issue.  I

6    mean, remember how we got here, Your Honor.

7              Doesn't go to the standing issue put

8    forward by Mr. Fitzgerald as a pretext to get into

9    this line of questioning.

10             MR. FITZGERALD:  Your Honor, if they're

11   willing to stipulate, if they're willing to stipulate

12   he's not a public-interest litigant, we'll -- Public

13   interest did not hire lawyers on contingency, and

14   they do not ask for billions of dollars of property

15   to be conveyed to them personally.

16             THE COURT:  These are a lot of

17   allegations that don't have to do with anything that

18   I'm involved with.  The objection is sustained.

19             MR. FITZGERALD:  Well, to make a

20   proffer at this time, Your Honor.

21             THE COURT:  All right, you may.

22             THE WITNESS:  No.

23             THE COURT:  Well, now what is it you

24   want to say?  I don't know that your counsel wants

25   you to.

1          THE WITNESS:  Well, I want to.  I think

2     that I answered one of his previous questions

3     incorrectly after thinking about it.  And that's --

4          THE COURT:  Oh.  Well, you can

5     certainly clarify or correct anything.

6          THE WITNESS:  And that's the property,

7     having to do with property that Leisnoi now owns.

8     It's my contention that I had a Federal Grazing Lease

9     on this property before the Leisnoi owned it at one

10    time.

11          And it's my contention that when it

12    reverts back to the Federal Government I will again

13    be offered a, a Federal Grazing Lease on that land.

14          THE COURT:  I see.

15          Okay, go ahead and make, make your

16    offer, Mr. Fitzgerald.

17          MR. FITZGERALD:  Okay, I make a proffer

18    at this time, Your Honor, that Mr. Stratman appeared

19    in my law office with Mr. Schneider and marked up

20    this map with this pink highlighter showing the areas

21    that he commanded.

22          MR. SCHNEIDER:  Move to strike.  I move

23    to strike this.

24          MR. FITZGERALD:  I'm making a proffer

25    to preserve this.

1          THE COURT:  Well, see, I've sustained

2    your objection, Mr. Schneider, and what he's doing,

3    which I believe he has an entitlement to do, is

4    making an offer or proffer of proof which will then

5    be in the Record, which IBLA or any appellate

6    authority can rule on whether or not I erred, whether

7    or not I erred in sustaining your objection.  So,

8    it's proper what he's doing.

9          MR. FITZGERALD:  The proffer is as

10   follows:  That in April of 1995, Omar Stratman and

11   his contingency-fee attorney, Mike Schneider, entered

12   the office of Michael, of Edward Paul Boyko &

13   Associates and offered to drop the challenge to the

14   certification of the Native Village of Woody Island,

15   Inc., if $150,000 cash would be paid to Omar Stratman

16   or his designees, and all of Long Island would be

17   patented to Mr. Stratman or his designees, and all of

18   Termination Point would be patent-, would, would be

19   conveyed to Omar Stratman or his designees; and that,

20   that he further marked additional areas with a pink

21   highlighter that he demanded be conveyed to him in

22   exchange for him dropping his challenge to Leisnoi

23   Inc.'s, certification.

24          And so I would ask that this document,

25   which is marked as Leisnoi L Chart 36, be submitted

1   as a proffer.  I understand you're not admitting it.

2   I just want to preserve it for appeal purposes.

3              THE COURT:  All right, sure.

4              MR. FITZGERALD:  Or in front of the

5   IBLA.

6              THE COURT:  That, that, that is done

7   then.

8   BY MR. FITZGERALD (Resuming):

9         Q.  Mr. Stratman, when did you first file

10  an administrative challenge to the certification of

11  the Native village of Woody Island, Inc.?

12             MR. SCHNEIDER:  What's the question

13  again, Counsel?

14             MR. FITZGERALD:  When did he first file

15  an administrative challenge to the certification of

16  the Native village, Inc., of the Native village of

17  Woody Island, excuse me, not Inc.

18             MR. SCHNEIDER:  It's a matter of

19  record.

20             THE COURT:  Yeah.

21             Well, answer it if you know, sir.

22             THE WITNESS:  I don't know.  My

23  attorneys would have that information.

24             THE COURT:  All right.

25             THE WITNESS:  I really don't know,

1    Judge.

2    BY MR. FITZGERALD (Resuming):

3         Q.   Now, you did -- Do you remember taking

4    an Appeal from an Order of Dismissal that was decided

5    then by Judith Brady (phonetic), Chairman of the

6    Alaska Native Claims Appeal Board?  Do you remember

7    taking an Appeal up to the ANCAB, sir?

8         A.   There have been lots of, of Appeals

9    over the 22-year history of this case.

10         THE COURT:  We want -- Well, if he did,

11    he did.

12         MR. FITZGERALD:  Okay.

13         THE COURT:  This, again, is a matter of

14    record, what --

15         MR. FITZGERALD:  Let me just move on

16    then.

17         THE COURT:  Yeah, okay.

18    BY MR. FITZGERALD (Resuming):

19         Q.   What, you never filed an Appeal from

20    the Decision in the matter of dismissal, ANCAB L

21    slash 77 dash 4-C; is that, is that correct?

22         MR. SCHNEIDER:  Is that a question, or

23    an argument?

24         MR. FITZGERALD:  That is a question,

25    sir.

1          THE WITNESS: Again, I don't know. My

2    attorneys would know that.

3          MR. FITZGERALD: No further questions,

4    Your Honor. Thank you.

5          THE COURT: All right. Does anyone

6    else have any questions of this Witness?

7          MR. MIDDLETON: I have no questions.

8          THE COURT: Okay.

9          MR. MOTHERSHEAD: I have no questions.

10          THE COURT: All right.

11          MR. SCHNEIDER: Your Honor, we would

12    make, I guess, a counter-proffer or offer of proof.

13    We don't think --

14          MR. FITZGERALD: Excuse me, Your Honor.

15    That's improper.

16          If he wants to solicit testimony, we're

17    not going to object to it. But to submit a proffer

18    is only proper if you sustain.

19          So, if he wants to develop testimony,

20    let him, and I will cross-examine. But a proffer is

21    only made when there's been an objection that's

22    sustained.

23          MR. SCHNEIDER: Well, an objection was

24    sustained. My objection, Your Honor sustained it.

25          Mr. Fitzgerald then places before his

1    video audience and on this Record his position about

2    what the evidence would show.

3              THE COURT:  Yeah, okay.  And that's his

4    proffer.

5              And what you want to do, as I

6    understand, is, is put something in contra to that

7    proffer.

8              MR. SCHNEIDER:  In case --

9              MR. FITZGERALD:  And we would --

10             MR. SCHNEIDER:  And we would --

11             MR. FITZGERALD:  Excuse me.  We would

12    respectfully like to cross-examine if he's going to

13    be introducing evidence.

14             We, we're not objecting to, to

15    introduction of evidence, so we should have a right

16    to cross-examine.

17             There is no basis for counter-proffer.

18    A counter-proffer is only after objection when his

19    offer of evidence has been sustained, and he hasn't

20    offered any evidence.

21             If, he's trying to, he's trying to get

22    in testimony without allowing me to cross-examine his

23    witness.

24             THE COURT:  No, it's not going to be

25    evidence, any more than your proffer is evidence.  It

1    is not.

2              And what he's putting in assertively in

3    contravention to your proffer is not evidence anymore

4    before me.  I'm not considering evidence anymore than

5    your proffered evidence.  So, I'm going to permit it,

6    but it's not evidence.

7              MR. SCHNEIDER:  If this line of

8    questioning was followed, we would offer to show that

9    Mister, at the time of these settlement discussions,

10   first of all, there was an express confidentiality

11   agreement with regard to them; secondly, that prior

12   to the settlement discussions we had obtained a list

13   of properties of interest to the Kodiak Island

14   Borough for public purposes, rather long laundry list

15   that Leisnoi had seen in years past, and were aware

16   of the properties that the Kodiak Island Borough was

17   interested in; thirdly, that we had made contact with

18   individuals in the State of Alaska Department of

19   Parks and Recreation with regard to their interest in

20   these properties that we sought; fourthly, that we

21   believed that there was strong public interest and,

22   and, and since that interest has, indeed, been shown

23   and reflected in Termination Point by the Exxon

24   Valdez Oil spill, spill Trustees; fourthly, that at

25   the time of that offer, Mr. Stratman had himself

1   received, had himself expended more than twice the

2   cash sought in the settlement offer described by

3   Counsel just staying alive in this litigation;

4   fourthly, that there was in those discussions no

5   representation, no demand for a representation as to

6   where the demanded lands would be allocated, to whom

7   they would be given or conveyed, whether there would

8   be any consideration flowing to or from any party,

9   and indeed, whether Mr. Stratman or his

10  contingency-fee lawyer would receive anything

11  whatsoever of any of those funds.

12          We would further offer to show that Mr.

13  Stratman had, before that Settlement Agreement -- And

14  this is all in the Record so thick you wouldn't want

15  to think about it, -- but a long fight with Leisnoi

16  where they made a promise to him, breached the

17  promise about conveying 17,000 acres of land.

18          He went up to trial court.  He lost at

19  the State Supreme Court.

20          He lost his claim in the Ninth Circuit

21  for actual economic claims, and consequently, as a

22  matter of definition, all we can obtain in this case

23  is a decertification of Leisnoi and a return of its

24  land and assets to the Federal Government, whether

25  Mr. Stratman likes it, or whether his contingency-fee

1    lawyer likes it or not.  And that would be our offer,

2    Your Honor.

3              THE COURT:  Okay, that completes the

4    offer and a counteroffer approved.  We'll be in

5    adjournment until 9:00 a.m. tomorrow.  Nine, we'll

6    start promptly at 9:00.

7              MR. SCHNEIDER:  Thank you.  Thank you,

8    Your Honor.

9              MR. MOTHERSHEAD:  Thank you.

10             (Whereupon, at 5:34 p.m. AT the above

11   hearing was adjourned.)

12                        I certify the foregoing to be a

13                        true transcript from my notes.

14                                /s/

15                        ───────────────────────────────

                          CSR,   CP,   RPR

16

17                    CERTIFICATION

18         I, Dorothy I. Bunn, a Registered

19   Professional Reporter, Certified Conference Reporter,

20   and Notary Public, do hereby certify that the

21   foregoing testimony was duly taken and reduced to

22   writing before me at the place and time therein

23   mentioned.  I further certify that I am neither

24   related to any of the parties by blood or marriage,

25   nor do I have any interest in the outcome of the

Stratman - Direct                    739

1    above matter.

2              In witness whereof, I have hereunto set

3    my hand and affixed my official seal, at Glenrock,

4    Wyoming, USA, this 8th day of August, 1998.

5                              /s/
                         _____

6                              Notary Public

7    My Commission expires November 17, 1999.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25