EXHIBIT 5

LEXSEE 68 IBLA 325, AT 334

IN RE PACIFIC COAST MOLYBDENUM CO.

IBLA 81-1027

Interior Board of Land Appeals

*68 IBLA 325; 1982 IBLA LEXIS 147*

November 22, 1982, Decided

**ACTION:**
[**1]

[*325] Motion to dismiss an appeal taken from a decision of the Alaska State Office, Bureau of Land Management, dismissing contests/protests to the issuance of mineral patent for certain claims. AA-11319.

Motion granted in part and denied in part.

**HEADNOTES:**

1. Mining Claims: Patent -- Rules of Practice: Appeals: Standing to Appeal

The provisions of 30 U.S.C. §§ 29 and 30 (1976) relating to "adverse claims" refers only to adverse mineral claims, and nothing in these sections purports to limit the rights of third parties to appeal from a denial of a protest of a patent application where they can show a cognizable interest which has been adversely affected.

2. Rules of Practice: Appeals: Standing to Appeal -- Rules of Practice: Protests

Where an individual or organization files a protest to a mineral patent application, which protest is denied, and timely appeals from that denial, such individual or organization is "a party to the case" within the meaning of 43 CFR 4.410. In order to maintain the appeal, however, such a party must also show an interest which has been adversely affected by the decision appealed.

3. Rules of Practice: Appeals: Standing to Appeal

Where an individual [**2] or organization fails to protest action proposed to be taken by BLM, such an entity has no standing to appeal the denial of a protest filed by some other individual or organization.

[*326] 4. Rules of Practice: Private Contests

Only an individual claiming "an interest in the land" embraced by a patent application has standing to initiate a private contest under 43 CFR 4.450-1. Such an "interest in the land" must be grounded in a specific statutory grant.

APPEARANCES:

Durwood J. Zaelke, Esq., Juneau, Alaska, for appellants;

F. O. Eastaugh, Esq., Juneau, Alaska, and Brian T. Donlan, Esq., and Charles L. Kaiser, Esq., Denver, Colorado, for appellee Pacific Coast Molybdenum;

Dennis J. Hopewell, Esq., Office of the Regional Solicitor, Anchorage, Alaska, for the Bureau of Land Management.

**OPINIONBY:** BURSKI

OPINION BY ADMINISTRATIVE JUDGE BURSKI

This decision is solely concerned with the question of the standing of the Sierra Club (Alaska Chapter), the United Southeast Alaska Gillnetters (USAG), and the Southeast Alaska Conservation Council (SEACC), to appeal from a denial of protests rejecting to Pacific Coast Molybdenum Company's mineral patent application, AA-11319, or to independently [**3] initiate a private contest, under the provisions of 43 CFR 4.450-1, to determine the validity of various mining claims. In order to put these questions in perspective, it is necessary to set forth some of the procedural history which has transpired to date.

On April 19, 1979, Pacific Coast Molybdenum Company (PCM), a wholly-owned subsidiary of Quartz Hill Holding Company, which, in turn, was a wholly-owned subsidiary of Pacific Coast Mines, Inc., filed mineral patent application AA-11319. This patent application embraced 32 claims, specifically the JES 34-41, JES 55-62, JES 76-83, and JES 97-104, located in unsurveyed secs. 34 and 35, T. 74 S., R. 98 E., and secs. 2 and 3, T. 75 S., R. 98 E., Copper River meridian, Alaska, and within the exterior boundaries of the Tongass National Forest. The claims had been located variously on October 24, 25, 28, and 30, 1974, by United States Borax & Chemical Corp., and were conveyed by deed on November 26, 1975, to Pacific Coast Mines, Inc. The application alleged a significant discovery of molybdenum had been made within the 647.118 acres claimed. The lands within the application had been surveyed under order of May 3, 1976, and mineral [**4] survey No. 2267 had been approved by the Chief, Division of Cadastral Survey on January 19, 1978.

While the lands embraced by PCM's claims had been open to mineral entry at the time PCM's claims were located, the lands were set apart and reserved as part of the Misty Fiords National Monument on December 1, 1978, by Presidential Proclamation No. 4623 (93 Stat. 1466), pursuant to section 2 of the Antiquities Act, Act of June 8, 1906, 34 Stat. 225, *16 U.S.C. § 431* (1976). On December 5, 1978, notice was published in the Federal Register of an application, AA-23139, filed by the United States Department of Agriculture, on November 28, 1978, seeking a withdrawal of various lands, including those embraced by PCM's claims, from location and entry under the general mining laws. *43 FR 57134* (Dec. 5, 1978). Under the provisions of section 204(b)(1) [*327] of the Federal Land Policy and Management Act of 1976 (FLPMA), 90 Stat. 2751, *43 U.S.C. § 1714*(b)(1) (1976), the publication of this notice served to segregate the lands involved for a period of 2 years or until such time as the application was either approved or disapproved, whichever came first. See generally *James R. Robinson,* [**5] *68 IBLA 84 (1982).*

Notice of PCM's mineral patent application was duly published, as required by *30 U.S.C. § 29* (1976), on October 19, 1979. Subsequent thereto, various groups filed "protests" or "protest-contests" alleging an adverse interest in the lands embraced by the claims and further arguing that the claims were invalid and that the patent application was deficient for numerous reasons. Of importance herein, the USAG filed a notice of intent to protest on December 7, 1979, and a formal protest on January 2, 1980. SEACC filed both a contest and a protest on December 10, 1979. Sierra Club (Alaska Chapter) filed neither a protest nor a contest.

By various orders dated April 11, 1980, BLM informed the protestants, including USAG, that the protests were being held in abeyance pending a field examination by the United States Forest Service. In addition, SEACC was informed by BLM that its contest complaint was deemed to be a protest and was further notified that its protest was being held in abeyance pending the Forest Service field examination. On September 9, 1980, SEACC submitted a memorandum in support of its patent contest and protest, incorporating by reference a memorandum [**6] of points and authorities filed by the National Marine Fisheries Service on August 6, 1980.

The report of the Forest Service field examination was submitted on November 28, 1980. The mineral examiners concluded that "each of the previously listed 49 lode mining claims of the U.S. Borax and Chemical Corporation contain a valuable mineral deposit within its boundaries." n1

---

n1 The mineral examination included 17 claims which are not part of the patent application and which are thus not before us. These claims are the JES 14-17, 33, 54, 62, 75, 84, 119-124, 141, and 142.

---

On August 3, 1981, the Chief, Branch of Lands and Mineral Operations, Alaska State Office, denied the various protests. On September 4, 1981, an attorney for the Sierra Club Legal Defense Fund filed a notice of appeal on behalf of USAG, SEACC, and the Sierra Club (Alaska Chapter). On November 3, 1981, a statement of reasons in support of the appeal was filed with the Board. The next day, however, counsel for PCM filed a motion to dismiss the appeal [**7] alleging that the appellants lacked standing to prosecute the appeal. On December 2, 1981, PCM filed an answer to

appellant's statement of reasons for appeal; on December 3, 1981, appellants filed a memorandum in opposition to the motion to dismiss the appeal, and on December 29, 1981, filed a request for a fact-finding hearing.

Subsequently, PCM filed a reply brief reiterating its request that the appeal be dismissed. On January 18, 1982, the Office of the Regional Solicitor filed a memorandum opposing a fact-finding hearing. On January 25, 1982, PCM also objected to granting appellants a fact-finding hearing. On February 1, 1982, the Office of the Regional Solicitor filed an answer.

[*328] On February 22, 1982, this Board notified the parties that it would issue a separate decision on the motion to dismiss filed by PCM, and afforded all parties the opportunity to file additional briefs on the standing question. On April 1, 1982, appellants filed an additional brief supporting thier standing both to appeal from the denial of the protest and to initiate a private contest. While the Solicitor's Office had not earlier taken a position on whether appellants had standing to [**8] appeal from a denial of their protests, n2 by a document submitted on April 6, 1982, the Solicitor joined in PCM's motion to dismiss.

> n2 The answer filed by the Office of the Regional Solicitor had argued that appellants had no authority to initiate a private contest. See Answer of the Bureau of Land Management at 2-5.

[1] PCM's motion to dismiss is grounded on the following analysis. First, it notes that:

The Mining Law of 1872 articulates a comprehensive scheme for processing mineral patents. An essential component of that scheme is a carefully crafted process for resolving any conflict raised by third parties. Holders of conflicting interests in the land, if any, are required to initiate an adverse claim proceeding during a 60-day publication period or their interests are deemed to be waived. *30 U.S.C. § 29* (1976), * * *.

Motion to Dismiss at 6 (citation omitted). PCM then cites the last portion of section 29, "[T]hereafter no objection from third parties to the issuance of a patent shall be heard, except [**9] it be shown that the applicant has failed to comply with the terms of this chapter," and argues that this provides the sole statutory basis for even entertaining protests.

PCM places particular emphasis on early Departmental and judicial pronouncements examining the status of protestants as amici curiae. See, e.g., *Wight v. Dubois, 21 F. 693 (C.C. Colo. 1884); Bright v. Elkhorn Mining Co., 8 L.D. 122 (1889)*. Thus, Secretary Vilas noted in Elkhorn Mining:

A person protesting against the issuance of patent upon a mineral claim, who stands solely in the relation of amicus curiae, and who alleges no interest in the result of the application, can not question the judgment of the land office in passing upon said application and protest, and is not entitled to the right of appeal from such decision. And this is so whether the mineral claimant has or has not complied with the terms of the statute, because if the protestant claims no interest in the suit, the right of the mineral claimant will be considered solely as between the claimant and the government.

*Id. at 122-23.* PCM argues that only an individual claiming an interest in the subject lands is authorized [**10] to appeal from a denial of a protest to a patent application, that appellants claim no such interest in the land, and, thus, appellants have no standing to appeal herein. While these statements may be generally correct, we disagree that appellants USAG and SEACC lack the necessary interest to prosecute this appeal.

[*329] Initially, we note that PCM puts more store on the "comprehensive nature" of section 29 than is warranted. First, the "adverse claim" language found in section 29, as well as in section 30, applies only to "adverse claims" by mining claimants. See, e.g., *John R. Meadows, 43 IBLA 35, 37 (1979)*. Thus, in *Wright v. Town of Hartville, 81 P. 649 (Wyo. 1905)*, rehearing denied *82 P. 450 (1905)*, the Supreme Court of Wyoming expressly held that an individual, or, as in Wright, a town, claiming a right to the land under the public land laws, could not file an adverse claim under *30 U.S.C. §§ 29* and *30 (1976)*.

It will be observed that * * * [*30 U.S.C. § 30* (1976)] provides a method by which a court of competent jurisdiction is to determine the right of possession between two or more mining claimants, and not to determine the character of the lands [**11] involved as to whether they are mineral or nonmineral. This statute only gives the court jurisdiction of suits when the parties are all mining claimants and when the land embraced in the claim is unpatented government land. It follows, therefore, that the court would not have jurisdiction in a suit in support of an adverse claim, where the parties

were all mining claimants, and a patent had already been issued to one of the claimants; or where one of the parties is a mining claimant and the other a town site claimant, whether patent had been issued or not; or, stating the proposition more generally, where one of the parties is an applicant for a patent to mineral land and the other party claims the same or any part of the land embraced in the mining claim under any of the laws providing for the disposal of nonmineral lands. In other words, the court has jurisdiction only where the suit is between adverse mining claimants to the same unpatented mineral land. [Emphasis supplied.]

*81 P. at 650.* See also *Iron Silver Mining Co. v. Campbell, 135 U.S. 286 1890.*

These judicial determinations were in accord with Departmental decisions. Thus, in *Ryan v. Granite Hill* [**12] *Mining and Development Co., 29 L.D. 522 (1900),* then Assistant Attorney-General Van Devanter, writing for Secretary Hitchcock, expressly held "the provisions of [*30 U.S.C. §§ 29* and 30 (1976)] relative to adverse claims contemplate proceedings to determine only the right of possession as between claimants of the same unpatented mineral lands; and not to decide controversies respecting the character of the public lands, that is, whether they are mineral or nonmineral lands." *Id. at 524.* n3 Under this analysis, the Department held that a millsite claimant [*330] was not required to adverse a rival mining claimant. *Helena etc. Co. v. Dailey, 36 L.D. 144 (1907).* n4 Similarly, an agricultural claimant did not hold an adverse claim within the meaning of section 29. See *Powell v. Ferguson, 23 L.D. 173 (1896).*

> n3 It should be noted that while the interpretation of sections 29 and 30 set forth in Granite Hill is now universally accepted (see, e.g., American Law of Mining § 9.13A), a few early judicial and Departmental decisions did not follow the analysis and permitted nonmineral claimants to utilize the "adverse claim" procedures. See *Young v. Goldstein, 97 F. 303 (D. Alaska 1899); Bonnie v. Meikle 82 F. 697 (C.C. Nev. 1897); Northern Pacific R. Co. v. Cannon, 54 F. 252, 257 (1893); McGarrahan v. New Idria Mining Co., 3 L.D. 422 (1885).* A number of these decisions were adverted to in *Grand Canyon Ry. Co. v. Cameron, 35 L.D. 495 (1907),* and expressly rejected.
>
> n4 Paradoxically, it has also been held that where a millsite claimant has a claim conflicting with a patent application for another millsite claim, the adverse procedures of *30 U.S.C. §§ 29* and 30 (1976) are mandatory, since in such a case it is the right of possession rather than the character of the land that is at issue. See *Ebner Gold Mining Co. v. T. C. Hallum, 47 L.D. 32 (1919).*

[**13]

The language of section 29 which PCM cites relating to objections by third parties merely has the effect of prohibiting anyone who may adverse, but fails to timely do so, from asserting priority of possession as a bar to the patent application. It does not serve to limit the rights of those whose claim or interest is not premised on a mineral entry from objecting to the patent application on the grounds that the applicant has not complied with the general mining laws.

The distinction made in cases such as *Bright v. Elkhorn Mining Co., supra,* between the rights of protestants who have an "interest" in the subject of the patent application and the rights of a protestant who does not have such an "interest" is not based on either section 29 or 30. Rather, it proceeds on the simple analysis that anyone can protest, but only one who has an interest adversely affected by the denial of a protest has standing to appeal. n5 It is, indeed, the exact standard which the Board presently applies in reviewing appeals from denials of any protest. Compare 43 CFR 4.450-2 with 43 CFR 4.410. The questions to be decided by this Board under 43 CFR 4.410 are whether appellants [**14] are parties to a case whose interests were adversely affected by the denial of their protests. Assuming the answer is in the affirmative, the question then becomes, under 43 CFR 4.450-1, whether appellants possess the necessary interest "in the land" to permit them to initiate a private contest.

> n5 In this regard, Judge Brewer's oft-quoted statement in *Wight v. Dubois, supra,* relating to the rights of protestants is relevant only to those protestants who do not have an "interest" in the subject of the patent application. This is obvious when one remembers that a townsite or agricultural entryman who, indeed, was attempting to acquire title adverse to a mining claimant was denominated a "protestant." See, e.g., *Powell v. Ferguson, supra.* There was never any question that such a protestant could appeal to Federal court, though the deference then given to determinations of the Land Department as to the character of the land made the likelihood of success minimal.

PCM contends that appellants are not parties [**15] to a case nor were they adversely affected by the decision denying their protests since they lacked an "interest" in the subject matter of the action. Insofar as USAG and SEACC are concerned, we disagree.

[2] The leading Board decision on what constitutes a "party to the case" is *California Association of Four Wheel Drive Clubs, 30 IBLA 383 (1977)*. Therein, we quoted from an order of Judge Conti rendered in Citizens' Committee to Save Our Public Lands v. Kleppe, C 76-32 SC (Jan. 23, 1976):

[*331] [W]here an individual or group such as the Citizens' Committee uses the Federal land in question and is recognized by the Federal Land Management as a bona fide representative of the community and is provided with notice of all proceedings and actions by the Bureau of Land Management regarding the land in question, and actively and extensively participates in formulating land use plans for the land in question, and takes the position in a dispute concerning the use of the land in question contrary to another individual or group, that individual or group is a party within the meaning of 43 C.F.R. 4.410.

*30 IBLA at 386.*

In the instant case both USAG and SEACC filed [**16] protests alleging that PCM's patent application should be denied for various reasons relating to compliance with the general mining laws. These protests were duly denied. We think it clear that both USAG and SEACC are parties to the case.

[3] The same, however, cannot be said of Sierra Club (Alaska Chapter). Sierra Club filed no protest. In the absence of a protest, Sierra Club was not a party to the decisions relating to the patent application. See *Elaine Mikels, 41 IBLA 305 (1979)*. Nor could it become a party to the case by appealing from the denial of a protest filed by someone else. *Conoco, Inc., 61 IBLA 23, 25, n.1 (1981); C&K Petroleum Co., 59 IBLA 301, 302, n.1 (1981)*. Thus, insofar as Sierra Club (Alaska Chapter) is concerned, the purported appeal must be dismissed.

PCM suggests that USAG and SEACC are not parties to the case since they lack any interest which is adversely affected. This argument, however, obscures the fact that there are two separate and discrete prerequisites to prosecution of the appeal: (1) that the appellant be a "party to the case"; and (2) that the appellant be "adversely affected" by the decision below. As we have indicated above, [**17] denial of a protest makes an individual a party to a case. Such a denial, however, does not necessarily establish that an individual is adversely affected. See *Elaine Mikels, supra at 307, n.1; United States v. United States Pumice Corp., 37 IBLA 153, 158-59 (1977)*. Rather, an unsuccessful protestant must show that a legally recognizable "interest" has been adversely affected by denial of the protest. We turn, therefore, to the question whether appellants USAG and SEACC have alleged a sufficient interest, adversely affected, to maintain this appeal.

As we read PCM's arguments, the basic thrust of the motion to dismiss is that only someone who claims a legal interest in the specific land involved has standing to appeal from denial of a protest. So restrictive an interpretation is impossible to sustain.

We note, initially, that there is no necessary congruity between the standing requirements which control the availability of judicial review and those which animate the arena of administrative practice. *Koniag, Inc. v. Andrus, 580 F.2d 601, 606 (D.C. Cir. 1978)*. As Judge Bazelon has shown in his concurring opinion in Koniag, the underpinnings of judicial [**18] standing are functionally discrete from those which buttress standing requirements in an administrative agency. Rather than being based on other constitutional or [*332] prudential factors, administrative standing is more properly determined by an analysis embracing "the nature of the asserted interest, the relationship of his interest to the functions of the agency, and whether an award of standing would contribute to the attainment of these functions." *Id. at 615* (Bazelon, J., concurring).

This is not, of course, to say that determinations of judicial standing are irrelevant. On the contrary, they provide a useful guide as to the types of interests which have been deemed relevant and the concerns which are properly considered in adjudicating administrative appeals. We will, to that extent, be guided by judicial determinations on such matters.

In its initial protest, USAG stated that its members fish for salmon stock bound for Keta and Wilson-Blossom rivers and that important tributaries of those rivers are located in the patent area. They contended that mining the deposit as proposed "could have significant adverse environmental impact to the fishery resource and habitat." [**19] For its part, SEACC, in its protest complaint, alleged that it was an organization designed to promote the conservation and ap-

preciation of the scenic, wilderness, fish, wildlife, recreation, and other natural resources of southeast Alaska. It specifically alleged that individual members of SEACC have used the areas within the Misty Fiords Monument for a variety of purposes and further claimed that "many members make a substantial portion of their livelihood from the commercial fishery and wilderness values which may be impaired by the proposed mining activities of [PCM]."

It is clear to us that the nature of the asserted interest is such as has been recognized in a number of judicial pronouncements as sufficient to confer standing in a general sense, that is, when such a showing is coupled with a showing of causality between the objected action and the complained injury in a specific case, standing will lie. See *United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669 (1973); Save the Bay, Inc. v. United States Corps of Engineers, 610 F.2d 322 (5th Cir. 1980)*, cert. denied, *444 U.S. 900 (1980); Animal Welfare League v.* [**20] *Kreps, 561 F.2d 1002 (D.C. Cir. 1977)*, cert. denied, *434 U.S. 1013 (1978)*. We will discuss the causality aspect below.

PCM also suggests that appellants lack standing to appeal from a denial of their protest because of the nature of the patent application process. Thus, it argues, "where transfer of title is required by law, the subject matter at issue is limited to rights in land determinable in statutory adverse proceedings, and qualifications of patentees determinable by BLM adjudicators by provisions and limitations of law." We reject this contention for a number of reasons.

In the first place, the premise of the argument, namely, "where transfer of title is required by law," falsely assumes the ultimate conclusion -- that transfer of title is required by law. Appellants' basic contention on appeal is that the mining claims in issue are not now, and were not on December 1, 1978, supported by a discovery. If appellants could prove their allegations, not only would transfer of title not be required by law, it would be prohibited.

[*333] Second, as we have shown above, the statutory "adverse claims" language relates only to adverse mineral claims. PCM's argument [**21] would, in effect, prohibit those claiming an interest in the land under the agricultural laws from even appealing within the Department. Such has never been the practice of the Department.

Third, it implicitly assumes that only an interest "in the land" is sufficient to grant a protestant status of a "party aggrieved." While such a standard is, indeed, relevant in determining the standing of a party to initiate a private contest (see discussion infra), it is not relevant to determining standing to appeal. See, e.g., *Elaine Mikels, supra; Alaska v. Sarakovikoff, 50 IBLA 284, 288 (1980); Crooks Creek Commune, 10 IBLA 243 (1973)*.

We recognize, of course, that ultimately it is the Department's responsibility to determine whether a patent applicant has complied with the mining laws. In this sense, it could be argued that any protest or even private contest of a patent application is made as an amicus curiae, since the ultimate purpose is to assist the Department in its affirmative obligation to safeguard the public domain "to the end that valid claims may be recognized, invalid ones eliminated, and the rights of the public preserved." *Cameron v. United* [**22] *States, 252 U.S. 450, 460 (1920)*. This fact, however, does not serve to deprive a protestant, who possesses a cognizable interest adverse to the mineral claimant, from appealing the denial of its protest within the Department.

It is true, as we have recognized in various contexts, that a patent is not necessary to afford a mineral claimant the right to extract and dispose of the locatable minerals until they are exhausted. See, e.g., *United States v. Kosanke Sand Corp. (On Reconsideration), 12 IBLA 282, 80 I.D. 538 (1973)*. See also *South Dakota v. Andrus, 614 F.2d 1190, 1194 (8th Cir. 1980)*, aff'g *462 F. Supp. 905, 907 (D.S.D. 1978)*. Thus, it is certainly arguable that the real injury of which appellants complain is unrelated to the patent proceeding, since its cause is the mining of the deposit which could be accomplished in the absence of any patent application. It could be further contended that, in order to be consistent, the Board must either permit protests in the absence of a patent application or deny them when a patent application is involved since in both circumstances it is the actual mining and not the patent proceedings which cause the alleged [**23] injury.

While there is a certain logic to the above argument, it ignores the fact that absent a patent application there is no "action" by BLM which can be subject to a protest under 43 CFR 4.450-2. A mining claim is located and operated solely by the claimant without any affirmative action by BLM whatsoever. Nor does the location or mining of a claim in anyway initiate a "proceeding" before BLM. A patent, however, can only be granted in furtherance of the Department's expressed duty to recognize valid claims, under procedures duly established by statute and regulation. Such recognition is clearly "action proposed to be taken in a proceeding before the Bureau," and, as such, is properly the subject of a protest and, where an adverse interest is shown, appeal. We hold, therefore, that appellants SEACC and USAG have established that they are parties to the case and have alleged interests which [*334] were adversely affected by the denial of their protests within the meaning of 43 CFR 4.410, and, thus, can maintain the instant appeal.

[4] The last question to be examined is the contention of appellants that they possess the requisite interests to initiate a private contest [**24] under 43 CFR 4.450-1. That regulation reads:

> Any person who claims title to or an interest in land adverse to any other person claiming title to or an interest in such land * * * may initiate proceedings to have the claim of title or interest adverse to this claim invalidated for any reason not shown by the records of the Bureau of Land Management. Such a proceeding will constitute a private contest and will be governed by the regulations herein.

This provision was extensively analyzed in *United States v. United States Pumice Corp., supra.* In that decision we quoted the Ninth Circuit's decision in *Duquid v. Best, 291 F.2d 235 (9th Cir. 1961),* cert. denied, *372 U.S. 906 (1963),* which had held that the purpose of the private contest regulation is:

> To assist the Secretary of the Interior in carrying out his duties to protect the interest of the government and the public in public lands, in that by such method there may be called to the attention of the Bureau of Land Management invalid claims to title or interest in public lands, the invalidity of which does not appear on the records of the Bureau of Land Management and of which the Bureau may be without [**25] knowledge. [Emphasis supplied.]

*Id. at 241-42.* In Pumice, while noting that the effect of this regulation was to broaden the rights of certain individuals "as an administrative mechanism to supplement Departmental activities," we pointed out that only those who could show "an interest in the land" could avail themselves of this provision. And we expressly held that "the 'interest in the land' to which the regulation refers is an interest which must be grounded on a specific statutory grant." *United States v. United States Pumice Corp., supra, at 159, n.4.* Accord, *Alaska v. Sarakovikoff, supra at 287.*

We reject appellants' attempt to fit their "interest" under this standard. Appellants do not purport to be seeking title to the land under any statute. Contrary to their argument, no property rights to Federal land can be acquired by the mere use of the land. Nor are we aware of anything in either the Alaska National Interest Lands Conservation Act, 94 Stat. 2371, *16 U.S.C. § 3101* (Supp. 1980) or the Alaska Constitution that provides them with such a property right. Lacking such an "interest in the land" appellants may not initiate a private contest [**26] of the patent application. We affirm the State Office's determination in this regard.

Appellants SEACC and USAG are hereby afforded a period of 60 days in which to file a reply to the answers filed by PCM and the Office of the Solicitor, on the substance of their appeal. Should any party wish to file additional pleadings, such party should first seek permission of this Board.

[*335] Therefore, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 CFR 4.1, the motion to dismiss is granted as to Sierra Club (Alaska Chapter) and denied as to SEACC and USAG.

James L. Burski
Administrative Judge

**CONCURBY:** HARRIS; HENRIQUES


We concur: Bruce R. Harris, Administrative Judge
Douglas E. Henriques, Administrative Judge.