EXHIBIT 5

JAMES R. MOTHERSHEAD
Assistant Regional Solicitor
Office of the Regional Solicitor
Alaska Region
U.S. Department of the Interior
4230 University Drive, Suite 300
Anchorage, Alaska 99508-4626
Telephone: (907) 271-4131/FAX: (907) 271-4143

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF LAND APPEALS
4015 Wilson Boulevard
Arlington, Virginia 22203

| | | |
|---|---|---|
| OMAR STRATMAN, | ) | IBLA 96-152 |
| | ) | |
| Protestant, | ) | No. A76-0132 CV (JKS) |
| | ) | |
| v. | ) | Challenge to the eligibility of Woody |
| | ) | Island as a Native village under |
| LEISNOI, INC., | ) | Section 11(b)(3) of the Alaska Native |
| | ) | Claims Settlement Act, 43 U.S.C. |
| Respondent, | ) | §1610(B)(3) (1994) |
| | ) | |
| KONIAG, INC., | ) | |
| BUREAU OF INDIAN AFFAIRS | ) | |
| | ) | |
| Intervenors. | ) | |

OBJECTIONS TO RECOMMENDED DECISION
OF ADMINISTRATIVE LAW JUDGE

The Bureau of Indian Affairs (BIA), U.S. Department of the Interior, joins Leisnoi, Inc.,

Respondent, and Koniag, Inc., Intervenor, in their objections to the Administrative Law Judge's

recommended decision of October 13, 1999, and the underlying legal and factual analysis

supporting such objections, as well as their positions on legal issues not addressed by such

Stratman, IBLA 96-152: Objections to Recommended
Decision of Administrative Law Judge        Page 1

decision. BIA's position on the legal and factual issues involved in this case has been basically the same as those of Leisnoi and Koniag. However, BIA wishes to bring to the attention of the Board a matter not previously mentioned in the post-hearing briefs but does have bearing on whether the "alleged Village" was an established "Native village" [i.e., a "tribe, band, clan, group, village, community, or association", 43 U.S.C. §1602(c)] having an identifiable physical location.

In 1993, the Department of the Interior confirmed the pre-existing status of "Leisnoi Village (aka Woody Island)" as a federally recognized tribe by including such village in the published list of "Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs" ("Tribal Entities List"). 58 F.R. 54364, 54369 (Oct. 21, 1993). The effect of such publication was described in the United States' amicus curiae brief submitted to the Alaska State Supreme Court in an appeal in the child custody case of Anita John v. John Baker, No. S-08099, which was recently decided (982 P.2d 738, Sept. 8, 1999) in a manner consistent with the United States position in such brief that the Tribal Entities List confirmed the status of 226 Alaska Native Villages as historically sovereign Tribes. In discussing the effect of the List insofar as Northway Village is concerned, the amicus curiae brief stated:

> 1. In 1993, the Department of the Interior confirmed the Native Village of Northway's pre-existing status as a federally-recognized Tribe. – When this Court decided Native Village of Stevens in 1988, it perceived great uncertainty in whether the federal government had recognized Alaska Native Villages as sovereign Tribes, concluding that "Congress intended that most Alaska Native groups not be treated as sovereigns." 757 P.2d at 34. But see Native Village of Venetie I.R.A. Council v. State of Alaska, 944 F.2d 548, 558-559 & n.14 (9th Cir. 1991) (disagreeing with Stevens and recognizing that there are Tribes in Alaska with the same sovereign status as Tribes in the contiguous 48 States); accord Native Village of Tyonek v. Puckett, 957 F.2d 631, 635 (9th Cir. 1992). While we

believe that <u>Stevens</u> reached the wrong result, any perceived uncertainty over the Native Village of Northway's historical status as a sovereign Tribe has since been resolved.

In October 1993, the Department of the Interior published a definitive list of 226 Alaska Native villages that have historically been recognized by the federal government as Indian Tribes. See 58 Fed. Reg. 54, 364 (1993) ("Tribal Entities List"). The tribal Entities List includes the Native Village of Northway. <u>Id.</u> at 54, 369. The Department of the Interior intended the list not only to clarify <u>which</u> Native entities in Alaska are operating as federally-recognized Tribes, but also to clarify that Tribes in Alaska enjoy the <u>same</u> status as Tribes in the contiguous 48 states, notwithstanding the unique history of the federal government's involvement in Alaska Native affairs. The preamble to the Tribal Entities List explains in no uncertain terms that:

> The purpose of the current publication is to publish an Alaska list of entities conforming to the intent of 25 C.F.R. 83.6(b) and <u>to eliminate any doubt as to the Department's intention by expressly and unequivocally acknowledging that the Department has determined that the villages and regional tribes listed below are distinctly Native communities and have the same status as tribes in the contiguous 48 states.</u>   *   *   *   *   This list is published to clarify that the villages and regional tribes listed below are not simply eligible for services, or recognized as tribes for certain narrow purposes. Rather, they have <u>the same governmental status as other federally acknowledged Indian tribes by virtue of their status as Indian tribes with a government-to-government relationship with the United States; are entitled to the same protection, immunities, privileges as other acknowledged tribes; have the right, subject to general principles of Federal Indian law, to exercise the same inherent and delegated authorities available to other tribes; and are subject to the same limitations imposed by law on other tribes.</u>

<u>Id.</u> at 54, 366-54, 367 (emphasis added). Importantly, the Tribal Entities List was not intended prospectively to confer "Indian tribe" status on Alaska Native villages. To the contrary, the Tribal Entities List was intended to identify and confirm the status of those Native villages which, in the Secretary's determination, have historically been considered sovereign political entities and thus had no need to go through the formal petition process in 25 C.F.R. Part 83 (establishing procedures by which groups may petition the Secretary for recognition as an Indian Tribe). See "Order: Tribal Status/Sovereign Immunity,"

Native Village of Tyonek v. Puckett, et al., No. A82-0369-CV (D. Alaska Oct. 29, 1996) (Holland, J.) (holding that Tribal Entities List served to confirm the Native Village of Tyonek's historical status as a sovereign Tribe).

As this Court has observed, the judiciary will defer to tribal status determinations made by Congress and the executive branch. See Stevens, 757 P.2d at 34-35; id. at 47 (Rabinowitz, C.J., dissenting); cf. also Atkinson v. Haldane, 569 P.2d 151, 163 (Alaska 1977) ("Once the executive branch has determined that the Metlakatla Indian Community is an Indian tribe, which is a nonjusticiable political question, the Community is entitled to all of the benefits of tribal status"). Indeed, the Supreme Court concluded as long ago as 1865 that:

> In reference to all matters of this kind [tribal status], it is the rule of this court to follow the action of the executive and other political departments of the government, whose more special duty is to determine such affairs. If by them those Indians are recognized as a tribe, this court must do the same.

United States v. Holliday, 70 U.S. (3 Wall.) 407, 419 (1865); see also United States v. Sandoval, 231 U.S. 28, 46-47 (1913); Baker v. Carr, 369 U.S. 186, 215-217 (1962); Cherokee Nation of Oklahoma v. Babbitt, 117 F.3d 1489, 1498 (D.C. Cir. 1997); Cayuga Indian Nation of New York v. Cuomo, 667 F. Supp. 938, 942 (N.D. N.Y. (1987)).

In any event, Congress expressly acknowledged the Tribal Entities List and, in effect, ratified it in the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108 Stat. 4791 (25 U.S.C. 479a & note, 479a-1). The Tribe List Act confirms the Secretary's responsibility and authority to recognize Tribes, see 25 U.S.C. 479a note (§103(3)), takes notice of the sovereign status of such Tribes, and affirms the United States' obligation, as part of its "trust responsibility," to maintain a government-to-government (relationship) with them, see ibid. (§103(2)).[16] The Act requires the Secretary to keep a regularly updated list of all recognized Tribes and to publish that list on an annual basis. 25 U.S.C. 479a-1. Finally, the Act provides that "a tribe which has been recognized in [this manner] may not be terminated except by an Act of Congress." 25 U.S.C. 479a note (§103(4)).[17]

In light of the above, the status of Northway and similar Native villages as sovereign Indian tribes is no longer open to question.

---

[16] The legal significance of the Tribal Entities List is highlighted in the House Report accompanying the Tribe List Act. The Report notes that "'[r]ecognized' is more than a simple adjective; it is a legal term of art." It explains further that: federal "recognition" confirms that the Tribe is a "'domestic dependent nation'"

capable of a "government-to-government relationship" with the United States; "institutionalizes the tribe's quasi-sovereign status, along with all the powers accompanying that status such as the power to tax, and to establish a separate judiciary"; and "establishes tribal status for all federal purposes." H.R. Rep. No. 103-781, at 2-3 (1994) (1994 U.S. Code Cong. & Admin. News 3768-69).

17 In a separate title to the same legislation, Congress enacted the "Tlingit and Haida Status Clarification Act." 108 Stat. 4792 (25 U.S.C. 1212 et seq.). The Clarification Act mandated the addition of one particular Alaska Tribe (the Central Council of Tlingit and Haida Indian Tribes of Alaska) to the Tribal Entities List. 25 U.S.C. 1212. No Tribes were deleted from that list. See also 25 U.S.C. 1214(a) ("Nothing in this title shall be interpreted to diminish or interfere with the government-to-government relationship between the United States and other federally-recognized Alaska Native tribes").

Likewise, the inclusion of "Leisnoi Village (aka Woody Island)" on the Tribal Entities List confirmed the status of the Village as a historical (and traditional) sovereign tribe having an identifiable location on Woody Island.[1] Such status as a recognized tribe cannot be terminated (or decertified) except by an Act of Congress. As a historical tribe, the Village can truly be said to be a "traditional village" within the meaning of 43 C.F.R. 2651.2(b)(2) which provides that no traditional village shall be disqualified for certification "by reason of having been temporarily unoccupied in 1970 because of an act of God or governmental authority occurring within the preceding 10 years."

DATED this 31st day of January 2000, at Anchorage, Alaska.

UNITED STATES OF AMERICA
DEPARTMENT OF THE INTERIOR

By: *James R. Mothershead*
JAMES R. MOTHERSHEAD
Department Counsel for the Bureau of
Indian Affairs

---

[1] Attached to these Objections are copies of the following documents mentioned above in the amicus curiae brief: (1) 1993 Tribal Entities List (58 F.R. 54, 364, Oct. 21, 1993); (2) Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108 Stat. 4791 (25 U.S.C. §§479a & note, 479a-1); (3) H.R. Rep., No. 103-781 (1994), reprinted in 1994 U.S. Code Cong. & Admin. News 3768-3772; and (4) "Order: Tribal Status/Sovereign Immunity," Native Village of Tyonek v. Puckett, et al., No. A82-0369-CV (D. Alaska Oct. 29, 1996) (Holland, J.).

Stratman, IBLA 96-152: Objections to Recommended
Decision of Administrative Law Judge        Page 5

Office of the Regional Solicitor, Alaska Region
United States Department of the Interior
4230 University Drive, Suite 300
Anchorage, Alaska 99508-4626
Telephone: (907) 271-4131 / FAX (907) 271-4143

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF LAND APPEALS
4015 Wilson Boulevard
Arlington, Virginia 22203

| | |
|---|---|
| OMAR STRATMAN ) | IBLA 96-152 |
| Protestant ) | |
| ) | No. A76-0132 CV (JKS) |
| v. ) | |
| ) | Challenge to the eligibility of Woody Island |
| LEISNOI, INC., ) | as a Native village under Section 11(b)(3) |
| ) | of the Alaska Native Claims Settlement Act, |
| Respondent ) | 43 U.S.C. §1610(b)(3) (1994) |
| KONIAG, INC., ) | |
| BUREAU OF INDIAN AFFAIRS ) | |
| Intervenors ) | |

CERTIFICATE OF SERVICE/MAILING

I certify that I am an employee in the Office of the Regional Solicitor, Alaska Region, and I am a person of such age and discretion as to be competent to serve papers. I further certify that on January 31 2000, I caused the foregoing original **Objections to Recommended Decision of Administrative Law Judge** to be served by certified mail, return receipt requested, postage prepaid to the Interior Board of Land Appeals in Arlington, Virginia, with a copy of the same, postage prepaid, to the following:

Certified (RRR)

Michael J. Schneider
880 N Street, Suite 202
Anchorage, Alaska 99501

R. Collin Middleton, Esq.
Brennan P. Cain, Esq.
Middleton & Timme
421 West 1st Ave, Ste 250
Anchorage, Alaska 99501

John R. Fitzgerald
McAlpine, Peuler & Cozad
701 South Peters St, Suite 300
New Orleans, Louisiana 70130

DATED: January 31, 2000

_____
Robert H. Booth, Jr., Legal Technician

Public Law 103–454
103d Congress

## An Act

To provide for the annual publication of a list of federally recognized Indian tribes, and for other purposes.

Nov. 2, 1994
[H.R. 4180]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

# TITLE I—WITHDRAWAL OF ACKNOWLEDGEMENT OR RECOGNITION

Federally Recognized Indian Tribe List Act of 1994.

**SEC. 101. SHORT TITLE.**

This title may be cited as the "Federally Recognized Indian Tribe List Act of 1994".

25 USC 479a note.

**SEC. 102. DEFINITIONS.**

25 USC 479a.

For the purposes of this title:

(1) The term "Secretary" means the Secretary of the Interior.

(2) The term "Indian tribe" means any Indian or Alaska Native tribe, band, nation, pueblo, village or community that the Secretary of the Interior acknowledges to exist as an Indian tribe.

(3) The term "list" means the list of recognized tribes published by the Secretary pursuant to section 104 of this title.

**SEC. 103. FINDINGS.**

25 USC 479a note.

The Congress finds that—

(1) the Constitution, as interpreted by Federal case law, invests Congress with plenary authority over Indian Affairs;

(2) ancillary to that authority, the United States has a trust responsibility to recognized Indian tribes, maintains a government-to-government relationship with those tribes, and recognizes the sovereignty of those tribes;

(3) Indian tribes presently may be recognized by Act of Congress; by the administrative procedures set forth in part 83 of the Code of Federal Regulations denominated "Procedures for Establishing that an American Indian Group Exists as an Indian Tribe;" or by a decision of a United States court;

(4) a tribe which has been recognized in one of these manners may not be terminated except by an Act of Congress;

(5) Congress has expressly repudiated the policy of terminating recognized Indian tribes, and has actively sought to restore recognition to tribes that previously have been terminated;

ATCH 2

(6) the Secretary of the Interior is charged with the responsibility of keeping a list of all federally recognized tribes;

(7) the list published by the Secretary should be accurate, regularly updated, and regularly published, since it is used by the various departments and agencies of the United States to determine the eligibility of certain groups to receive services from the United States; and

(8) the list of federally recognized tribes which the Secretary publishes should reflect all of the federally recognized Indian tribes in the United States which are eligible for the special programs and services provided by the United States to Indians because of their status as Indians.

25 USC 479a-1.
Federal Register, publication.

### SEC. 104. PUBLICATION OF LIST OF RECOGNIZED TRIBES.

(a) PUBLICATION OF THE LIST.—The Secretary shall publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians.

(b) FREQUENCY OF PUBLICATION.—The list shall be published within 60 days of enactment of this Act, and annually on or before every January 30 thereafter.

Tlingit and Haida Status Clarification Act.

# TITLE II—CENTRAL COUNCIL OF TLINGIT AND HAIDA INDIAN TRIBES OF ALASKA

25 USC 1212 note.

### SEC. 201. SHORT TITLE.

This title may be cited as the "Tlingit and Haida Status Clarification Act".

25 USC 1212.

### SEC. 202. FINDINGS.

The Congress finds and declares that—

(1) the United States has acknowledged the Central Council of Tlingit and Haida Indian Tribes of Alaska pursuant to the Act of June 19, 1935 (49 Stat. 388, as amended, commonly referred to as the "Jurisdiction Act"), as a federally recognized Indian tribe;

(2) on October 21, 1993, the Secretary of the Interior published a list of federally recognized Indian tribes pursuant to part 83 of title 25 of the Code of Federal Regulations which omitted the Central Council of Tlingit and Haida Indian Tribes of Alaska;

(3) the Secretary does not have the authority to terminate the federally recognized status of an Indian tribe as determined by Congress;

(4) the Secretary may not administratively diminish the privileges and immunities of federally recognized Indian tribes without the consent of Congress; and

(5) the Central Council of Tlingit and Haida Indian Tribes of Alaska continues to be a federally recognized Indian tribe.

25 USC 1213.

### SEC. 203. REAFFIRMATION OF TRIBAL STATUS.

The Congress reaffirms and acknowledges that the Central Council of Tlingit and Haida Indian Tribes of Alaska is a federally recognized Indian tribe.

# FEDERALLY RECOGNIZED INDIAN TRIBE LIST ACT OF 1994

P.L. 103-454, see page 108 Stat. 4791

DATES OF CONSIDERATION AND PASSAGE

House: October 3, 1994

Senate: October 8, 1994

Cong. Record Vol. 140 (1994)

House Report (Natural Resources Committee)
No. 103-781. Oct. 3, 1994
[To accompany H.R. 4180]

*No Senate Report was submitted with this legislation.*

## HOUSE REPORT NO. 103-781

[page 1]

The Committee on Natural Resources, to whom was referred the bill (H.R. 4180) to prohibit the withdrawal of acknowledgement or recognition of an Indian tribe or Alaska Native group or of the leaders of an Indian tribe or Alaska Native group, absent an Act of Congress, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

\* \* \* \* \*

[page 2]

\* \* \* \* \*

### PURPOSE

The purpose of H.R. 4180 is to require the Secretary of the Interior to publish an annual list of all Indian tribes eligible for the special programs and services provided by the United States to Indians because of their status as Indians.

### BACKGROUND

The question of whether a Native American Group constitutes an Indian tribe is one of immense significance in federal Indian law. Because Congress' power to legislate for the benefit of Indians is limited by the Constitution to Indian tribes,[1] for most federal purposes it is not enough that an individual simply be an Indian to receive the protections, services, and benefits offered to Indians; rather, the individual must also be a member of an Indian tribe.[2] "Recognized" is more than a simple adjective; it is a legal term of art. It means that the government acknowledges as a matter of law

3768

[partial right column, cut off:]

RECO

that a particular Native
specific legal status on
gress' legislative powers
A formal political act, it
government relationship
nized tribe as a "domest
government a fiduciary
bers. Concomitantly, it

---
[1] U.S. CONST., art. I, §8, cl. 3; c
[2] See, e.g., *Epps v. Andrus*, 611
[3] *Cherokee Nation v. Georgia*, 30

status,[4] along with all
as the power to tax,[5] an
it imposes upon the Sec
provide a panoply of ber
bers.[7] In other words, u
tus is a prerequisite to
partment of the Interio
tablishes tribal status f
25 C.F.R. §83.5 requ
eral Register, not less
tribes entitled to recei
status of Indians.[9] Ap
condition to receipt of f
federal agencies which
determine eligibility.
While the Departmer
to previously unrecogn
to "derecognize" a tribe
turbing tendency in thi
of Indian Affairs (BIA)
federal recognition fron
First, the BIA unilat
leader of the Oneida N
ing, notifying or discus
its leaders, or with th
members of the House,
in October, the Bureau
the Tlingit and Haida
BIA undertook this ac
cursory post facto notif
the Council was expli
1975, and has appeare
year since 1982. Cong
half of the recognized g
Finally, in a recent
indicated that it inten
nized tribes as being "c
position that "created"
ereign tribal governme
or tax. It had applied

ATCH 3

## RECOGNIZED INDIAN TRIBES
P.L. 103–454

that a particular Native American group is a tribe by conferring a specific legal status on that group, thus bringing it within Congress' legislative powers. This federal recognition is no minor step. A formal political act, it permanently establishes a government-to-government relationship between the United States and the recognized tribe as a "domestic dependent nation,"[3] and imposes on the government a fiduciary trust relationship to the tribe and its members. Concomitantly, it institutionalizes the tribe's quasi-sovereign

---

[1] U.S. CONST., art. I, §8, cl. 3; cf. U.S. CONST., art. II, §2, cl. 2.
[2] See, e.g., *Epps v. Andrus*, 611 F.2d 915, 918 (1st Cir. 1979)(per curiam).
[3] *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 14 (1831).

[page 3]

status,[4] along with all the powers accompanying that status such as the power to tax,[5] and to establish a separate judiciary.[6] Finally, it imposes upon the Secretary of the Interior specific obligations to provide a panoply of benefits and services to the tribe and its members.[7] In other words, unequivocal federal recognition of tribal status is a prerequisite to receiving the services provided by the Department of the Interior's Bureau of Indian Affairs (BIA),[8] and establishes tribal status for all federal purposes.

25 C.F.R. §83.5 requires the Department to publish in the Federal Register, not less than every three years, a list of all Indian tribes entitled to receive services from the BIA by virtue of their status of Indians.[9] Appearing on that list is a functional precondition to receipt of those services. In addition to the BIA, other federal agencies which provide services to the tribes use the list to determine eligibility.

While the Department clearly has a role in extending recognition to previously unrecognized tribes,[10] it does not have the authority to "derecognize" a tribe. However, the Department has shown a disturbing tendency in this direction. Twice this Congress, the Bureau of Indian Affairs (BIA) has capriciously and improperly withdrawn federal recognition from a native group or leader.

First, the BIA unilaterally withdrew recognition from the chosen leader of the Oneida Nation of New York last year without consulting, notifying or discussing the decision with the Oneida Nation or its leaders, or with this Committee. After active intercession by members of the House, the Department reversed its decision. Then in October, the Bureau unilaterally removed the Central Council of the Tlingit and Haida tribes from its list of recognized tribes. The BIA undertook this action precipitously, and with no more than a cursory post facto notification to the Council. This, despite the fact the Council was explicitly recognized as a tribal organization in 1975, and has appeared on the BIA's list of recognized tribes every year since 1982. Congress was again required to intervene on behalf of the recognized group to restore federal recognition.[11]

Finally, in a recent letter to the Committee Chairman, the BIA indicated that it intended to differentiate between federally recognized tribes as being "created" or "historic." The BIA had taken the position that "created" bribes do not possess all the powers of a sovereign tribal government: they cannot zone, regulate law and order, or tax. It had applied the distinction to one group—that Pascua

3769

## LEGISLATIVE HISTORY
### HOUSE REPORT NO. 103-781

Yaqui of Arizona—and was prepared to apply it to others. Because this dichotomy ran so clearly counter to the intent of Congress and

---

[4] Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 557-62 (1832).
[5] See Warren Trading Post v. Arizona Tax Commission, 380 U.S. 685 (1965); The Kansas Indians, 72 U.S. (5 Wall.) 737 (1866); Buster v. Wright, 135 F.2d 947 (8th Cir. 1905).
[6] See Ex parte Crow Dog, 109 U.S. 556 (1883); Iron Crow v. Oglala Sioux Tribe, 231 F.2d 89 (8th Cir. 1956).
[7] See, e.g., 43 U.S.C. §1457 (1988); 25 U.S.C. §2 (1988).
[8] See, e.g., 25 CFR §20 (1990) (Financial Assistance and Social Services Program); 25 CFR §101 (1990) (Loans to Indians Program); 25 C.F.R. §256 (1990) (Housing Improvement Program).
[9] CFR §83.5 (1994).
[10] See 25 CFR §§83 et seq. (1994).
[11] See S. 1784, 103d Cong., 1st Sess. (1993).

[page 4]

was outside the Department's authority, Congress quickly enacted legislation prohibiting the distinction.[12]

This growing and disturbing trend prompted the introduction of H.R. 4180.

### THE FEDERALLY RECOGNIZED INDIAN TRIBE LIST ACT OF 1994

On April 12, 1994, Congressman Thomas of Wyoming introduced H.R. 4180, the Federally Recognized Indian Tribe List Act of 1994. As introduced, the bill prohibit the BIA from withdrawing recognition from an Indian tribe or Alaska Native group, or from the duly-elected leadership of such tribe or group, except by an Act of Congress. It made an exception for changes in tribal leadership that occur as a result of tribal elections. If the BIA wished to withdraw Federal recognition from a group, it was required to submit a petition to that effect to the two congressional committees of jurisdiction and to each of the Senators and Members of Congress in whose districts the effected tribe may reside. It was then left to Congress to make the final determination.

The Subcommittee held a hearing on H.R. 4180 on August 4, 1994, and at that time adopted an amendment in the nature of a substitute.

### COMMITTEE AMENDMENT

The Committee adopted an amendment in the nature of a substitute which made several modifications to H.R. 4180 as introduced. The Committee Amendment requires the Secretary to publish in the Federal Register an annual list of all federally recognized tribes. The findings section of the substitute notes that Congress has plenary power over Indian affairs; and that while a tribe may be recognized by the BIA pursuant to 25 C.F.R. §83, by Congress, or by the Federal courts, only Congress may terminate recognition.

The Committee cannot stress enough its conclusion that the Department may not terminate the federally-recognized status of an Indian tribe absent an Act of Congress. Congress has never delegated that authority to the Department, or acquiesced in such a termination. Any attempt to the contrary by the Department will surely result in a more concrete and compelling assertion of Congressional primacy.

3770

| | |
|---|---|
| to others. Because<br>it of Congress and<br><br>5 (1965); *The Kansas Indi-*<br>Cir. 1905).<br>*Sioux Tribe*, 231 F.2d 89<br><br>ervices Program); 25 CFR<br>Iousing Improvement Pro-<br><br><br>ess quickly enacted<br><br>the introduction of<br><br>IST ACT OF 1994<br>Wyoming introduced<br>be List Act of 1994.<br>ithdrawing recogni-<br>p, or from the duly-<br>t by an Act of Con-<br>ibal leadership that<br>wished to withdraw<br>ed to submit a peti-<br>nmittees of jurisdic-<br>ers of Congress in<br>It was then left to<br><br>4180 on August 4,<br>t in the nature of a<br><br><br>the nature of a sub-<br>H.R. 4180 as intro-<br>he Secretary to pub-<br>f all federally recog-<br>itute notes that Con-<br>nd that while a tribe<br>C.F.R. § 83, by Con-<br>s may terminate rec-<br><br>nclusion that the De-<br>cognized status of an<br>gress has never dele-<br>acquiesced in such a<br>the Department will<br>ing assertion of Con- | **RECOGNIZED INDIAN TRIBES**<br>P.L. 103-454<br><br>The Committee is aware that in January 1993 the Solicitor of the Department of the Interior issued an opinion which concluded that Congress has restricted the sovereign powers of Alaska Native tribes. As the BIA stated in the October 21, 1993 Federal Register Notice of Alaska Native Entities Recognized and Eligible to Receive Services, "[the Solicitor] concluded, construing general principles of Federal Indian law and ANSCA, that 'notwithstanding the potential that Indian country exists in Alaska in certain limited cases, Congress has left little or no room for tribes in Alaska to exercise governmental authority over land or nonmembers.' M-36, 975 at 108. That portion of the opinion is subject to review, but has not been withdrawn or modified."<br><br>---<br><br>[12] See H.R. 734, 103d Cong., 1st Sess. (1993); S. 1654, 103d Cong., 1st Sess. (1993) (incorporating H.R. 4231, 103d Cong., 2d Sess. (1994)) (enacted as Pub. L. No. 103-263).<br><br>[page 5]<br><br>The Committee notes that the Solicitor's opinion has generated controversy and that there is extensive litigation on the subject of the precise sovereign powers of Alaska Native tribes. While these issues deserve further review by Congress, nothing in this Act should be construed as enhancing, diminishing or changing in any way the status of Alaska Native tribes. It is the intent of the Committee that its previous position taken in the 1987 amendments to the Alaska Native Land Claims Settlement Act be maintained and that nothing in this Act shall "confer on, or deny to, any Native organization any degree of sovereign governmental authority over lands (including management or regulation of the taking of fish and wildlife) or persons in Alaska." P.L. 100-241, Section 2(8)(B). The Act merely requires that the Secretary continue the current policy of including Alaska Native entities on the list of Federally recognized Indian tribes which are eligible to receive services.<br><br>SECTION-BY-SECTION ANALYSIS<br><br>*Section 1. Short title*<br><br>Section 1 provides that the Act may be cited as the "Federally Recognized Indian Tribe List Act of 1994."<br><br>*Section 2. Definitions*<br><br>Section 2 sets out the definitions of three terms used in the Act.<br><br>*Section 3. Findings*<br><br>Section 3 sets out the findings of the Congress.<br><br>*Section 4. Publication of list of recognized tribes*<br><br>Section 4(a) requires the Secretary of the Interior to publish a list of all federally recognized Indian tribes eligible for the special programs and services provided by the United States to Indians because of their status as Indians.<br><br>Section 4(b) requires that the list be published within sixty days of enactment, and annually on or before every January 30 thereafter. |

# LEGISLATIVE HISTORY
HOUSE REPORT NO. 103-781

## LEGISLATIVE HISTORY

On April 12, 1994, Congressman Thomas of Wyoming introduced H.R. 4180, the Federally Recognized Indian Tribe List Act of 1994; the bill is cosponsored by Congressmen Richardson, Young of Alaska, and Boehlert. The Subcommittee on Native American Affairs considered H.R. 4180 on August 4, 1994, and unanimously passed a substitute amendment to H.R. 4180, which was reported to the Committee on Natural Resources. On September 28, 1994, the Committee on Natural Resources considered H.R. 4180 and ordered it to be reported to the House with an amendment in the nature of a substitute and recommends its enactment by the House.

## COMMITTEE RECOMMENDATIONS

The Committee on Natural Resources, by voice vote, approved the bill with an amendment and recommends its enactment by the House.

[page 6]

* * * * *

## OVERSIGHT STATEMENT

The Committee on Natural Resources will have continuing responsibility for oversight of the implementation of H.R. 4180 after enactment. No reports or recommendations were received pursuant to rule X, clause 2 of the rules of the House of Representatives.

## INFLATIONARY IMPACT STATEMENT

Enactment of H.R. 4180 will have no inflationary impact.

## COST AND BUDGET ACT COMPLIANCE

The Committee has received no analysis from the Congressional Budget Office prior to the filing of this report.