EXHIBIT 3

Case 3:02-cv-00290-JKS    Document 118-4    Filed 02/26/2007    Page 1 of 6

LEXSEE 125 IBLA 346

KEITH RUSH d/b/a RUSH'S LAKEVIEW RANCH KEVIN RUSH

IBLA 91-53

Interior Board of Land Appeals

*125 IBLA 346; 1993 IBLA LEXIS 39*

March 29, 1993, Decided

**ACTION:**
[**1]

[*346] Three appeals from decisions of the Dillon, Montana, Resource Area Manager, Bureau of Land Management, relating to the issuance of special recreation use (outfitter and guide-commercial) permits. MT 8372.

Two appeals dismissed; remaining decision affirmed.

**HEADNOTES:**

1. Administrative Procedure: Administrative Review -- Public Lands: Special Use Permits -- Res Judicata -- Rules of Practice: Appeals: Generally -- Special Use Permits

   Where, in an appeal of a decision to issue an outfitter and guide permit to a third party for the 1990 season, the appellant seeks to raise issues relating to the original issuance in 1987 of such a permit to the third party in 1987, such a challenge is barred by the doctrine of administrative finality.

2. Public Lands: Special Use Permits -- Special Use Permits

   The issuance of a special recreation use permit to conduct commercial outfitter and guide services on public land is discretionary, and the Department may accept or reject a permit application in furtherance of the objectives, responsibilities, and programs for management of the public lands involved. In light of this discretionary authority, BLM may use such restrictions as deemed necessary, [**2] including the imposition of a moratorium on the issuance of such permits while it is developing a management plan for outfitter and guide services.

**APPEARANCES:**

W. D. Murray, Jr., Esq., Butte, Montana, for appellants Keith Rush (d.b.a. Rush's Lakeview Ranch) and Kevin Rush; John C. Chaffin, Esq., U.S. Department of the Interior, Office of the Field Solicitor, Billings, Montana, for the Bureau of Land Management;

Thomas R. Scott, Esq., Dillon, Montana, for Mel Montgomery, d.b.a. Centennial Outfitters.

**OPINIONBY:** HARRIS

OPINION BY DEPUTY CHIEF ADMINISTRATIVE JUDGE HARRIS

On October 29, 1990, counsel for Keith Rush, d.b.a. Rush's Lakeview Ranch, and Kevin Rush filed three separate notices of appeal with the Dillon, Montana, Resource Area Manager, Bureau of Land Management (BLM), concerning the issuance of special recreation use permits for commercial guide and outfitter activities in the Centennial Mountains. Each notice of appeal dealt with a separate allegation.

The first notice of appeal asserted that BLM's September 28, 1990, approval of the 5-year outfitter and guide permit for Keith Rush, d.b.a. Rush's Lakeview Ranch, improperly omitted one of Keith Rush's historical spike camps, i.e.,

[\*\*3] Hell Roaring Spike Camp. The second challenged a September 28, 1990, decision informing Keith Rush of BLM's determination to issue a BLM outfitter and guide permit to Mel Montgomery for the Centennial Valley area for the 1990 hunting season. The third questioned the denial by BLM of a request made in June 1988 by Keith Rush that a BLM outfitter and guide permit be granted to his son, Kevin Rush. n1 The Board assigned one docket number to the appeals because of the interconnected nature of the facts and issues in question. n2

> n1 The record indicates that this request was orally made at a meeting with BLM on June 15, 1988, and that it was denied at that time. In an Aug. 9, 1988, letter BLM explained to Keith Rush:
>
> "Due to the moratorium on the issuance of guide and outfitter permits in the Dillon Resource Area, we cannot consider issuance of a permit to Kevin at this time. The moratorium will remain in effect until a guide and outfitter management plan is complete for the Dillon Resource Area. Upon completion of the plan, we will consider Kevin's request for a permit.
>
> "Mr. Montgomery's permit was issued prior to the moratorium as a one-year, temporary permit, and it must be reviewed annually to determine if it should be reissued."
>
> n2 In the notices of appeal, counsel indicated that he was representing Keith Rush, d.b.a. Rush's Lakeview Ranch, in the first two and Keith Rush and Kevin Rush in the third.

[\*\*4]
The factual background regarding these appeals is as follows. Keith Rush has operated an outfitting and hunting guide service under a BLM permit in the Centennial Mountains (Beaverhead County, Montana) since 1978. A 5-year outfitter and guide permit (for day-use only) was renewed in 1985 for "Rush's Lakeview Ranch, Keith or Kevin Rush." n3 Citing an increase in the number of applications for special recreation use permits and an increase in disputes and arguments over the use of the public lands for such activities, BLM announced on June 11, 1987, a moratorium on the issuance of new commercial outfitter and guide permits pending the formulation of an outfitter and guide management plan. BLM, however, issued a 1-year outfitting permit for the Centennial Mountains area to Montgomery in November 1987 pursuant to an application filed on July 6, 1987.

> n3 In 1988, pursuant to a request from the Rushes, BLM changed the permit to eliminate Kevin Rush as a named individual on the permit.

Prior to 1990, both Rush and Montgomery [\*\*5] used not only BLM lands but adjacent lands administered by the U.S. Department of Agriculture, Agricultural Research Service-Sheep Station (headquartered in nearby Dubose, Idaho) for their outfitting activities. In 1990, BLM entered into a Memorandum of Understanding with the Department of Agriculture giving BLM the authority to manage public recreation resources on Sheep Station lands with consideration given to historical use.

Keith Rush applied for renewal of his 5-year permit on March 16, 1990. On September 27, 1990, BLM completed an environmental analysis which recommended renewing Rush's 5-year permit as proposed. A copy of the permit with attached stipulations was sent to Rush on September 28, 1990. On October 18, 1990, BLM responded to a telephone inquiry from Rush complaining about the omission from his 5-year permit documents of authority to maintain a spike camp in the Hell Roaring Creek area. BLM, after adverting to the problems associated with managing the Sheep Station lands in accordance with past uses, informed Rush that it would consider his complaint about the omission as a request for a spike camp and instructed him to submit specific information depicting [\*\*6] the precise location of the camp and an estimated use itinerary.

Earlier, by letter dated March 22, 1990, BLM informed Keith Rush that it had reviewed his request made at a March 2, 1990, meeting that the 1-year permit annually issued to Montgomery not be reissued in 1990. BLM advised Rush that, after reviewing Montgomery's past activities from 1987 through 1989, it determined that Montgomery had not violated the terms of the permit and that no cause existed to deny Montgomery a permit for 1990. By letter dated September 28, 1990, BLM reiterated its decision to issue a permit to Montgomery for the 1990 season and advised Rush of its intent to resolve proximity problems between Rush and Montgomery in the Odell Creek area after the hunting season.

Finally, the record shows that Keith Rush met with BLM on October 4, 1990, to raise questions regarding the permits. An October 17, 1990, letter from BLM to Keith Rush responding to those questions indicates that at the meeting Rush revived his concerns regarding the denial of a request to issue an outfitter and guide permit to his son and his complaint about the issuance of a permit to Montgomery. In that letter, BLM again explained [**7] its reasons for denying that request and issuing a permit to Montgomery. n4

> n4 BLM stated in that letter:
>
> "Your request that your son, Kevin, be issued a permit was made at a meeting with Dillon Resource Area Manager Jim Lewis on June 15, 1988. As stated at that meeting, and in a subsequent August 9, 1988, letter to you, due to the moratorium on the issuance of guide and outfitter permits on the Dillon Resource Area the previous summer (1987), we could not consider issuance of a permit to Kevin at that time. You were informed the moratorium will remain in effect until a guide and outfitter management plan is completed for the Dillon Resource Area."

On October 29, 1990, the Rushes appealed as outlined above. On December 14, 1992, the Board received a document from counsel for Keith Rush withdrawing the appeal relating to the 5-year operating permit and indicating that the parties had resolved the issue raised by that appeal. Accordingly, that appeal is dismissed.

We next consider the appeal relating to the refusal [**8] of BLM to consider issuance of a permit to Kevin Rush. The proper time to have challenged such action was in August 1988 when BLM explained its rationale for not issuing such a permit. In its August 8, 1988, letter, BLM stated that it had established a moratorium on the issuance of guide and outfitter permits; that the moratorium would remain in effect until a guide and outfitter management plan was completed; and that "[u]pon completion of the plan, we will consider Kevin's request for a permit." It also stated, however, "[i]f Kevin wishes to establish protest rights in regard to my decision not to issue him a permit at this time, he must first submit a written application for the permit." Thus, BLM indicated that Kevin Rush should await the completion of a plan before applying for a permit, but it advised him that to establish "protest rights," it would be necessary to file a permit application. While inartfully phrased, this advice was proper. n5

> n5 Under the regulations, a protest is any objection raised by any person to any action proposed to be taken in any proceeding before BLM. 43 CFR 4.450-2. Accordingly, to the extent BLM would require the filing of an application by Kevin Rush to "establish protest rights," it was incorrect. However, Kevin Rush, by filing an application, would establish the right to appeal the denial of that application. 43 CFR 4.410(a).

[**9]

Any attempt in 1990 to challenge the August 1988 letter was untimely. Moreover, that letter, which was precipitated by a request by Keith Rush to drop Montgomery's permit and reissue the permit to Kevin Rush, was directed to Keith Rush, and while Keith Rush was adversely affected by the refusal to drop Montgomery's permit, and, thus, could have appealed that action, he had no standing to challenge the refusal to consider issuance of a permit to his son. n6 The right to dispute refusal to grant a permit to Kevin Rush was personal to Kevin and, as correctly explained by BLM, the filing of an application for a permit by Kevin would be the first step in the process to challenge a denial of such an application.

> n6 At the time of the August 1988 letter, Keith Rush had requested that Kevin be dropped as a co-permittee on the 5-year permit. Although Keith Rush might be able to represent his son in an appeal before this Board (43 CFR 1.3), he had no personal interest that was adversely affected by the refusal to consider issuance of a permit to Kevin in August 1988.

[**10]

Therefore, we conclude as to this appeal that present review of the August 8, 1988, letter is barred because of the lack of a timely appeal thereof and, in the absence of an application by Kevin for the 1990 season, there is no justiciable issue before the Board. Accordingly, the appeal is dismissed.

The only appeal remaining is Keith Rush's challenge to the issuance of a permit to Montgomery for the 1990 hunting season. He contends that BLM improperly issued Montgomery's permit in 1987 during the BLM-imposed moratorium, and at a time when Montgomery was not a licensed outfitter, in violation of regulations requiring an applicant for a commercial permit to be a licensed outfitter. He notes, in this respect, that the application was not dated until after the moratorium had been imposed. He also asserts that BLM erroneously expanded use under the 1990 permit from day-use to overnight camping despite the moratorium against increased use. He complains that BLM, knowing that Montgomery establishes his camp sites in close proximity to Rush sites, should not have issued a permit to Montgomery in 1990 until this issue was resolved.

BLM contends that the appeal in this matter is untimely. [**11] BLM argues that Rush cannot use the 1990 permit issuance as an opportunity to raise issues which relate back to issuance of a permit in 1987. Even if he could, BLM asserts that, before issuing the subject moratorium, it considered pending applications and concluded it would issue permits in those instances. BLM states that Montgomery's oral request for a permit prior to the moratorium was considered a pending application. BLM admits that Montgomery did not possess a state license when he applied for a permit, but that such a license was secured before the permit was issued. BLM explains that Montgomery was caught in a dilemma where the State of Montana would not issue a license to Montgomery unless he had proof of authorization to use Federal lands. BLM states that Montgomery used his BLM application to obtain the State license. BLM also claims that Departmental policy does require the permittee, but not an applicant, to possess a state license and that Montgomery met this requirement prior to issuance of the permit.

With respect to the issue of expanded use, BLM explains that all permits issued in 1990, including both Montgomery's and Keith Rush's, reflected BLM's newly acquired [**12] authority to manage Sheep Station lands by delineating those historical uses in the permit operation plans. BLM asserts that such action was not an enlargement of previous permitted use in violation of the moratorium, but recognition of existing uses not previously subject to BLM regulation. Finally, BLM asserts that its decisions were reasonable and that there has been no showing that it acted contrary to the record.

Montgomery also filed an answer to the statement of reasons as it relates to this issue. Montgomery presents many of the same arguments as BLM: the appeal is untimely under Departmental regulations; the permit was not issued in violation of the moratorium; he did not need to have an outfitter's license to apply for a permit; and the permit was not expanded in 1990 but merely identified prior use on Sheep Station land. Montgomery also addresses Rush's conflicting use assertions, arguing that this issue is barred as untimely because Montgomery used the lands at issue in conjunction with the permits in 1987 through 1989.

The decision appealed from in this instance was issued by the Area Manager on September 28, 1990, and informed Rush that a permit for the 1990 season [**13] would be issued to Montgomery. While Keith Rush raises concerns related strictly to that permit, i.e. expanded use and conflict of use, the thrust of his appeal is that Montgomery should never have been approved for a permit in the first place in 1987. While the appeal of the September 28, 1990, decision to issue a permit for the 1990 season to Montgomery is timely, Keith Rush's attempt to revisit the questions relating to the original issuance of the permit to Montgomery in 1987 is clearly barred by considerations of administrative finality.

[1] The doctrine of administrative finality, like its judicial counterpart res judicata, bars reconsideration of prior actions which were or could have been subject to direct review, in subsequent or collateral proceedings, except upon a showing of compelling legal or equitable reasons. *Melvin Helit v. Gold Fields Mining Corp., 113 IBLA 299, 308-09, 97 I.D. 109, 114 (1990); see State of California, 121 IBLA 73, 129-35, 98 I.D. 321, 351-54 (1991).* To allow the challenge here to the initial issuance of the 1-year permit to Montgomery in 1987 under the guise of an appeal from the issuance of another permit in 1990 would [**14] be to entertain a collateral attack on BLM's actions which we would be required to dismiss as untimely if attempted directly. See 43 CFR 4.411. If Keith Rush wanted to dispute the initial issuance of the 1987 permit to Montgomery, he was required to do so within 30 days of receipt of notice thereof. Failure to have done so precludes raising the issue in this appeal.

[2] As for BLM's determination to issue a permit to Montgomery for the 1990 season, we find that no error has been demonstrated by Rush. The issuance of a special use permit is discretionary, and the Department may accept or reject a permit application in furtherance of the objectives, responsibilities, and programs for management of the public lands involved. *Patrick G. Blumm, 121 IBLA 169, 171 (1991),* and case cited. In light of this discretionary authority, BLM may restrict use where necessary, including the imposition of a moratorium on the issuance of new permits, while it is developing its management plan. See *Duranglers, 105 IBLA 156 (1988).* As BLM had previously explained to

Rush, Montgomery's violation of the terms of the permit or conflicts of the permitted use with BLM management objectives [\*\*15] would constitute reasons for denying permit reissuance. Neither has been evidenced here.

Contrary to Rush's assertions, the record does not show that new uses were allowed under the 1990 Montgomery permit. Rather, the 1990 permit merely recognized prior historical use of those Sheep Station lands which BLM was authorized to manage under the Memorandum of Understanding executed in the fall of 1990. In this regard, Keith Rush is in the same position as Montgomery, i.e., the area embraced by his permit has been enlarged to included uses on Sheep Station lands. Thus, BLM did not violate the moratorium in issuing the 1990 permit to Montgomery.

Accordingly, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 CFR 4.1, the appeal relating to Keith Rush's 5-year permit is dismissed; the appeal regarding denial of the request to issue a permit to Kevin Rush is dismissed; and the decision notifying Keith Rush of the approval of Montgomery's 1990 permit is affirmed.

**CONCURBY:** BURSKI


I concur: James L. Burski, Administrative Judge