EXHIBIT 5

LEXSEE 127 IBLA 291

CCCO.

IBLA 91-415

Interior Board of Land Appeals

*127 IBLA 291; 1993 IBLA LEXIS 110*

October 7, 1993, Decided

**ACTION:**
[**1]

[*291] Appeal from a decision of the Chief, Minerals Adjudication Section, Utah State Office, Bureau of Land Management, determining the operator of oil and gas leases U-16962-A, U-16965, U-16965-A and U-17623, to be in default of terms and conditions of those leases and demanding payment of delinquent assessments.

Affirmed.

**HEADNOTES:**

1. Appeals: Generally -- Oil and Gas Leases: Civil Assessments and Penalties -- Oil and Gas Leases: Incidents of Noncompliance -- Rules of Practice: Appeals: Failure to Appeal

Failure of the operator to appeal assessment decisions for incidents of noncompliance issued for violations of the oil and gas operations regulations renders those decisions and the findings contained therein final for the Department and precludes the operator from challenging the merits of the violations or the amounts assessed in a subsequent appeal of a decision demanding payment.

2. Administrative Authority: Generally -- Oil and Gas Leases -- Civil Assessments and Penalties

A statute establishing time limitations for commencement of judicial actions for damages on behalf of the United States does not limit administrative proceedings within the Department of the Interior [**2] to recover indebtedness from an oil and gas operator.

**APPEARANCES:**

Dean H. Christensen, Salt Lake City, Utah, for CCCo.

**OPINIONBY:** HARRIS

OPINION BY DEPUTY CHIEF ADMINISTRATIVE JUDGE HARRIS

CCCo. has appealed from a June 3, 1991, decision of the of the Chief, Minerals Adjudication Section, Utah State Office, Bureau of Land Management (BLM), finding CCCo. in default of the terms and conditions of oil and gas leases U-16962-A, U-16965, U-16965-A, and U-17623; demanding payment of $ 2,450 plus interest and administrative costs from CCCo. for delinquent [*292] assessments; and notifying United Pacific Insurance Company, surety under CCCo.'s statewide oil and gas bond (No. UT0084), of the decision. n1

n1 BLM's decision did not constitute a demand for payment from the surety on the bond. See July 15, 1991, letter from United Pacific Insurance Co. to BLM confirming a July 12, 1991, telephone conversation to that ef-

fect. In addition, BLM stated in its decision: "If we are forced to collect under the bond, [CCCo.] would then be required to restore the bond to its original amount or post a new bond as required by 43 CFR 3104.7(b)".

[\*\*3]

BLM's decision explained that the Moab District Office had informed the Utah State Office, by memoranda dated April 4, 1990, October 1, 1990, and February 15, 1991, about difficulties it had experienced "in collecting delinquent assessments which had been levied against several leases covered by [Bond No. UT0084]" (Decision at 1). The first two of those referenced memoranda identify the basis for the sum demanded in BLM's decision, the third merely iterates the difficulty experienced in attempting to collect the assessments and renews a request to proceed against the bond.

The Moab District Office included with the April 4, 1990, memorandum information identifying certain past due unpaid assessments totaling $ 1,950, arising from incidents of noncompliance (INC's) issued to appellant in 1985. See Appendix A. The memorandum recommended collection against the bond.

The record shows that in 1985 the Moab District Office had recommended to the State Office that these assessments be referred to a debt collection agency. By memorandum dated December 22, 1988, the Chief, Division of Finance, BLM, Denver Service Center, informed the Moab District Manager, that certain delinquent [\*\*4] accounts, including the bill for collection numbers covering the assessments listed in Appendix A to this opinion, had been "returned from the second Debt Collection Agency and written off as uncollectible." That memorandum further stated: "The accounts are no longer on your Accounts Receivable Report and your Accnts Technician needs only to close out your files."

The October 1, 1990, memorandum detailed BLM's efforts to collect a total assessment of $ 500 for two INC's (Nos. 8865-032 and 8865-033), dated March 14, 1988, issued to appellant for failure to file monthly reports of operations for leases U-16965 and U-17623. The total assessment had been reduced from $ 750 to $ 500 during State Director Review (SDR) of three INC's, in which the State Director determined that appellant was not the operator of lease U-16962-A (SDR 88-6). The memorandum related that appellant was billed three times for the assessment; that the bills were sent certified mail and regular mail; and that the certified mailings were each returned as unclaimed. The Moab District Office requested that the State Office proceed against appellant's statewide bond.

Appellant's principal argument on appeal is [\*\*5] that BLM is barred from collecting the assessments in this case by the 6-year statute of limitations. Although appellant provides no citation to a statute of [\*293] limitations, presumably it is referring to *28 U.S.C. § 2415*(a) (1988). n2 Appellant believes that the entire matter of collection of these old assessments has been resurrected by the Moab District Office for the purpose of harassing and discriminating against the owner of CCCo., Dean Christensen. n3

---

n2 That statute provides in pertinent part that: "[E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues \* \* \*."

n3 The Appellant's arguments are all directed to the 1985 assessments. In fact, at one point, appellant contends that even if it did owe something, it "can only determine from the record that $ 1,950.00 would be the maximum amount due, not the claimed $ 2,450.00" (SOR at 4). For some reason, appellant seeks to ignore the 1988 assessment noted in the Oct. 1, 1990, memorandum, even though that memorandum is included as an exhibit to its SOR.

---

[\*\*6]

In support of it statute of limitations argument, appellant points to the December 22, 1988, memorandum (discussed supra) writing off the debts as uncollectible. It asserts that it and the surety were led to believe from that memorandum that the accounts had been terminated. Appellant asserts that "[n]o additional effort whatsoever was ever made directly to CCCo or to the surety after September 1985, for the amounts that may have accrued in February 1985, which is the time that the tolling of the statute of limitations begins" (Statement of Reasons (SOR) at 4).

Appellant also disputes the specifics of the assessments for lease U-16965-A, asserting that the lease was terminated in 1983, and, thus, any requirement for filing reports thereafter was misdirected. n4 It also charges that the as-

sessment for lease U-16962-A was the result of a "personality conflict between CCCo and Ms Aubrey [the BLM official who signed the INC]" (SOR at 2).

> n4 The assertion that lease U-16965-A was terminated in 1983 is not borne out by the record. The record contains a BLM decision dated Mar. 15, 1985, terminating U-16965-A because of a failure to show that the Petro XF-1 well on the lease was capable of producing leasehold substances in paying quantities.

[**7]

[1] Whether the violations cited in the various INC's existed and the propriety of the resulting assessments are not issues in this case, and any attempt by appellant to present them as such in the context of this appeal must be rejected on the basis of administrative finality. Each 1985 assessment issued as an appealable decision with an explanation of the available appeal rights. There is no evidence that appellant sought SDR of any of those assessments. As for the 1988 assessment, appellant did seek SDR and the assessment was reduced from $ 750 to $ 500. There is no evidence of further appeal to this Board.

The law is well settled that failure to appeal a BLM decision renders that decision and the findings contained therein final for the Department [*294] and precludes a party from later challenging it in an appeal of a subsequent decision. *San Juan County Commission, 123 IBLA 68, 71 (1992); Melvin Helit, 110 IBLA 144, 150 (1989); George A. Haddad, 109 IBLA 394, 397 (1989); U. A. Small, 108 IBLA 102, 105 (1989).* Thus, all the assessments involved in this case were the subject of final Departmental decisions.

Appellant does not maintain that the assessments [**8] were paid; rather, it contends that the 6-year statute of limitation is a bar to BLM's recovery against appellant or its surety.

The record indicates that BLM sought, on its own and through the action of debt collection agencies, to secure the payment by appellant of the 1985 assessments. Appellant's assertion that it and the surety relied on the 1988 memorandum determining the 1985 assessments to be uncollectible is meritless. First, that memorandum was not directed to appellant or the surety. Second, the 1988 uncollectability determination does not preclude further action to obtain payment. Furthermore, the 6-year statute of limitations does not bar BLM's action in this case.

[2] This Board has had the opportunity to address the applicability of *28 U.S.C. § 2415*(a) (1988) on several occasions, and in each instance we have held that, while that statute might constitute a defense to a judicial action in certain circumstances, it does not limit administrative proceedings within the Department of the Interior. *BHP Petroleum (Americas) Inc., 124 IBLA 185, 189 (1992); Benson-Montin Greer Drilling Corp., 123 IBLA 341, 352, 99 I.D. 115, 121 (1992); Anadarko Petroleum Corp.,* [**9] *122 IBLA 141, 147 (1992).* Therefore, appellant's assertion that the statute of limitations prohibits BLM's action in this case must be rejected.

Finally, to the extent appellant seeks to escape liability in this case based upon assertions of harassment or discrimination by BLM, we note that such assertions by appellant or its owner are not uncommon and have been previously dismissed by the Board. In *C.C. Co., 116 IBLA 384, 387 (1990),* this Board rejected as unfounded a charge of discrimination in BLM's selection of CCCo. for a product verification inspection. Also, in *Petro-X Corp., 127 IBLA 111, 114 (1993),* an INC case concerning review of two SDR decisions in which Christensen charged selective enforcement amounting to harassment, we stated that selective enforcement was not the issue, and held that the question was whether or not the violations in question existed. Such a conclusion is consistent with this Board's approach in other areas of the law in which we have rejected arguments that selective enforcement or improper agency motive in pursuing enforcement action constitute a denial of due process or excuses a party's failure to comply with regulatory requirements. [**10] E.g., *United States v. Page, 119 IBLA 12, 23 (1991)* (motivation of government agency in seeking initiation of a mining contest is irrelevant); *Donaldson Creek Mining Co. v. OSM, 111 IBLA 289, 298 n. 11 (1989),* aff'd, Donaldson Creek Mining Co. v. OSM, No. 89-0314-P(CS) (W.D.D.Ky. July 18, 1991) (selective enforcement, even if established, is not an excuse for noncompliance with regulatory requirements). Likewise, the issue in this case is whether BLM properly issued the decision [*295] in question, not whether BLM has discriminated against appellant. We conclude that BLM properly issued the decision, and that appellant has failed to establish any error therein.

Therefore, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 CFR 4.1, the decision appealed from is affirmed.

**CONCURBY:** MULLEN

I concur:

R. W. Mullen, Administrative Judge

**ATTACHMENTS:**

[*296] APPENDIX A

BLM assessed the following amounts by decision on these dates based on INC's issued to appellant:

| Lease | Date | Amount | Reason |
|---|---|---|---|
| U-17623 | 03/11/85 | $ 100 | No monthly reports of operations since 04/85 |
|  | 04/25/85 | $ 250 | No response to notice requesting monthly reports of operations, 04/84-04/85 |
|  |  | $ 250 | No response to order for sundry notice with future plans |
| U-16965 | 03/11/85 | $ 100 | No monthly reports of operations |
|  | 04/25/85 | $ 250 | No response to order requesting monthly reports of operations, 08/84-1/85 |
| U-16962-A | 06/11/85 | $ 500 | Failure to correct violations: increase dike around oil tanks; paint operator name on sign |
| U-16965-A | 04/25/85 | $ 250 | No response to order requesting completion report |
|  |  | $ 250 | No response to request for monthly reports of operations, 04/84-04/85 |

[**11]