BRUCE M. LANDON
DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone: 907-271-5452
Facsimile: 907-271-5827
Email: bruce.landon@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| OMAR STRATMAN, | ) | |
| | ) | CASE NO. 3:02-cv-0290 (JKS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEISNOI, INC., KONIAG, INC., | ) | |
| and DIRK KEMPTHORNE, | ) | |
| Secretary of the Interior, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

FEDERAL DEFENDANT KEMPTHORNE'S MEMORANDUM ON THE MERITS OF
THE SECRETARY'S DECISION THAT CONGRESS HAS RATIFIED LEISNOI'S
ELIGIBILITY AS A NATIVE VILLAGE UNDER THE
ALASKA NATIVE CLAIMS SETTLEMENT ACT

Stratman v. Leisnoi, 3:02-cv-0290 (JKS)
US Merits Brief

# TABLE OF CONTENTS

INTRODUCTION AND PROCEDURAL POSTURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ANCSA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Difficulties with implementation of ANCSA in the Kodiak Island area . . . . . . . . . . . . . . . . . . . 7

Amendment of ANCSA in Section 1427 of ANILCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.  THE SECRETARY'S INTERPRETATIONS ARE ENTITLED TO *CHEVRON* DEFERENCE
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.  IN THE ALTERNATIVE, THE SECRETARY'S INTERPRETATIONS ARE ENTITLED
TO DEFERENCE UNDER *SKIDMORE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  THE SECRETARY PROPERLY DETERMINED THAT THE DEPARTMENT OF
INTERIOR HAD JURISDICTION OVER THE DETERMINATION OF LEISNOI'S
ELIGIBILITY AND THAT THE SECRETARY'S PERSONAL ACTION WAS
REQUIRED FOR FINAL ACTION ON THAT ELIGIBILITY DETERMINATION . . 12

A.  The IBLA's decision that it lacked jurisdiction was based upon a factual error . . . . 12

B.  The IBLA Also Erred In Concluding That Its Decision Was Not Subject To 43 CFR §
2651.2(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  CONGRESS RATIFIED LEISNOI'S ELIGIBILITY BY ENACTING SECTION 1427 OF
ANILCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A.  Congress Had The Power To Ratify Leisnoi's Eligibility . . . . . . . . . . . . . . . . . . . . . 16

B.  Ratification Does Not Require Particular Words . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C.  Section 1427 Reflects A Clear Intent By Congress To Ratify The Determination That
Leisnoi Is Eligible For ANCSA Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1.  The Secretary properly based his interpretation of section 1427 on the section
as a whole . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2. <u>The legislative history supports the Secretary's interpretation</u> . . . . . . . . . . <u>22</u>

3. <u>The Secretary carefully considered, and properly rejected the reasoning of the IBLA</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>23</u>

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>25</u>

TABLE OF AUTHORITIES

FEDERAL CASES

Alaska Wildlife Alliance v. Jensen, 108 F.3d 1065 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 10

Aleknagik Natives Ltd. v. United States, 806 F.2d 924 (9th Cir. 1986) . . . . . . . . . . . . . . . 10, 12

Bushmann v. Schweiker, 676 F.2d 352 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Chevron USA v. Natural Resources Defense Council, 467 U.S. 837 (1984) . . . . . . . . . . . . . 9, 10

Chugach Alaska Corp. v. Lujan, 915 F.2d 454 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 10, 12

Eichelberger v. N.L.R.B., 765 F.2d 851 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Haynes v. United States, 891 F.2d 235 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

Holden v. Joy, 17 Wall. 211 (1872) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Koniag, Inc. v. Andrus, 580 F.2d 601 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Kunaknana v. Clark, 742 F.2d 1145 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Norfolk Energy, Inc. v. Hodel, 898 F.2d 1435 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Personal Watercraft Industry Ass'n v. Department of Commerce, 48 F.3d 540 (D.C. Cir. 1995) 1

Seldovia Native Ass'n, Inc. v. Lujan, 904 F.2d 1335 (9th Cir. 1990) . . . . . . . . . . . . . . . . . 10, 12

Skidmore v. Swift & Co., 323 U.S. 134 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Southwest Sunsites, Inc. v. Federal Trade Commission, 785 F.2d 1431 (9th Cir. 1986) . . . . . . 11

Stamper v. Secretary of Agriculture, 722 F.2d 1483 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 11

Stratman v. Watt, 656 F.2d 1321 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 23, 24

Thomas Jefferson University v. Shalala, 512 U.S. 504 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Alaska (Alaska), 521 U.S. 1 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

United States v. Henri, 828 F.2d 526 (9th Cir. 1987) ................................. 2, 3

United States v. Mead Corporation, 533 U.S. 218 (2001) ............................... 9

Washington State Department of Social and Health Services v. Keffler, 537 U.S. 371 (2003) . 21

Western Pioneer, Inc. v. United States, 709 F.2d 1331 (9th Cir. 1983) ................... 10


FEDERAL STATUTES

5 U.S.C. § 701 ...................................................................... 9

5 U.S.C. § 706 ...................................................................... 1

5 U.S.C. § 706(2)(A) ................................................................ 9

16 U.S.C. § 1610 .................................................................... 9

16 U.S.C. § 1624 .................................................................... 9

16 U.S.C. § 3197 ................................................................... 13

25 U.S.C. § 479(a) .................................................................. 3

43 U.S.C. § 1166 ................................................................... 13

43 U.S.C. § 1601 ................................................................. 1, 23

43 U.S.C. § 1601(a) ................................................................. 7

43 U.S.C. § 1601(b) ................................................................. 7

43 U.S.C. § 1602(e) ................................................................. 6

43 U.S.C. § 1606 .................................................................... 4

43 U.S.C. § 1607 .................................................................... 4

43 U.S.C. § 1610 .................................................................... 4

43 U.S.C. § 1610(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1610(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1610(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1610(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1610(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1611(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1611(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1611(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 U.S.C. § 1613(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

43 U.S.C. § 1621(j)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

43 U.S.C. § 1624 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Note prec. 48 U.S.C. § 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Alaska National Interest Lands Conservation Act (ANILCA) Pub. L. 96-487 (Dec. 2, 1980) 94
Stat. 2372 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FEDERAL REGULATIONS

43 CFR § 2651.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

43 CFR § 2651.2(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 CFR § 2651.2(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 14, 15

43 CFR § 2651.2(a)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 CFR § 2651.2(a)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 CFR § 4.1(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## INTRODUCTION AND PROCEDURAL POSTURE

Defendant Kempthorne (hereafter "federal defendant") submits this memorandum pursuant to this Court's Order of April 2, 2007 (Docket # 139) encouraging the parties to brief the merits of Secretary Kempthorne's determination that Congress in section 1427 of the Alaska National Interest Lands Conservation Act (ANILCA) Pub. L. 96-487 (Dec. 2, 1980) 94 Stat. 2372, ratified the eligibility of defendant Leisnoi, Inc. for benefits as a Native village under the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. § 1601 *et seq.*  In this memorandum, we demonstrate that the Secretary's ruling must be upheld and that his ruling moots the remaining issues in this action.

This action is the most recent in a series of cases relating to the eligibility of defendant Leisnoi, Inc. for benefits as a Native Village under ANCSA.  In 1995, this Court remanded to the Department of the Interior for a determination Leisnoi's eligibility.  *Stratman v. Babbitt,* A76-132 CV (JKS) (D. Alaska, Order from Chambers filed Sept. 13. 1995), AR 46-48.[1]  Plaintiff filed the instant action after the Interior Board of Land Appeals (IBLA) issued a decision opining that Leisnoi was not eligible for benefits under ANCSA.  Plaintiff's complaint prayed for a judgment (1) "that Leisnoi is stripped of its 'village' status," (2) recovery to the United States of lands previously conveyed to Leisnoi, and (3) certain other relief.

---

[1]    All "AR" cites are to the consecutive pagination of the Administrative Record lodged with the Court in a single three-ring binder.  Federal defendant has lodged the administrative record for the Secretary's decision interpreting section 1427, which is the only question currently before the Court.  The voluminous administrative record relating to whether Leisnoi would have been eligible in the absence of ratification in section 1427 has not been lodged.  Lodging only the record relating to the issues before the Court is consistent with the Administrative Procedure Act, 5 U.S.C. § 706.  *Personal Watercraft Industry Ass'n v. Department of Commerce,* 48 F.3d 540, 546 n.4 (D.C. Cir. 1995).

On May 2, 2003, federal defendants moved for a stay of proceedings.  Docket # 24; see also, Opposition to Motion for Leave to File Second Amended Complaint and Memorandum in Support of Federal Defendants' Motion for Stay, Docket # 25.  The thrust of the motion for stay was that although decisions of the IBLA normally constitute final agency action, "[d]ecisions of the Board [of Land Appeals] on village eligibility appeals are not final until personally approved by the Secretary." 43 CFR § 2651.2(a)(5).  As the Secretary had not personally approved the IBLA decision, the matter remained pending before the agency until the Secretary issued his personal decision.  Where a matter is pending before an agency with primary jurisdiction, the proper course for the courts is to stay the action until the agency has completed its deliberations. *United States v. Henri,* 828 F.2d 526 (9th Cir. 1987).  On June 3, 2003, the Court granted the stay pending the issuance of the Secretary's decision.  Docket # 34.

The Secretary issued his decision on December 28, 2006.  AR 1-15.  He concluded that IBLA had erred in three respects.  First, he concluded that IBLA did indeed have jurisdiction over the issue of the Leisnoi's eligibility.  Second, he concluded that IBLA's decision was not final action for the Department until personally approved by the Secretary.  Third, he concluded that Congress in section 1427 of ANILCA[2] ratified Leisnoi's eligibility in 1980, thereby mooting the question of whether Secretary Morton's 1975 certification of Leisnoi had been correct.

Thereafter, Stratman moved for a status conference to set a briefing schedule and to address certain other issues.  Docket # 97.  The Court, by Order filed January 18, 2007 (Docket # 103) denied the motion for status conference.  Instead the Court gave Stratman until February 20,

---

[2]      For the convenience of the Court, the complete text of section 1427 is attached hereto as Fed. Def. Exh. 1.

2007, to amend his complaint, and gave defendants until 30 days thereafter to file "motions to dismiss on jurisdictional grounds."

Defendant Leisnoi filed five separate motions to dismiss on jurisdictional grounds. Docket # 107, 109, 111, 118, 120.  Stratman then filed a motion (Docket #124) to strike all but one of the those motions and also for clarification of the Order at Docket # 103.  The Court (Order filed April 2, 2007, Docket # 139), denied the motion to strike, and clarified that the Court did not in Docket #103 "intend to limit the issues that could be debated."  The Court continued: "Certainly the parties would be free to argue jurisdiction and statutes of limitations, but given the likelihood of success, the ultimate resolution of this case would be advanced if the parties briefed the merits [of the Secretary's decision] at the same time."  *Id.*

Federal defendants had previously intended to brief the merits after the resolution of the motions to dismiss.  However, in accordance with the language of Docket # 139, federal defendants submit this brief on the merits of the Secretary's decision.  We demonstrate that the Secretary's decision is entitled to deference and is, in any event, clearly correct.  The Secretary's decision that Congress ratified Leisnoi's eligibility in section 1427 moots all of the other issues in this action.[3]  Accordingly, the Court should affirm the Secretary's decision and dismiss this action.

---

[3]    Specifically, the Secretary did not reach the questions of whether the Federally Recognized Tribal List Act, 25 U.S.C. § 479(a), also ratified Leisnoi's eligibility or whether Leisnoi would be eligible in the absence of congressional ratification. We do not discuss those issues in this brief.  Nor do we discuss the availability of the remedies sought in Stratman's prayer for relief.   Federal defendants reserve those issues for further proceedings, if the Court does not affirm the Secretary's decision.

# BACKGROUND

**ANCSA** :

In 1971, Congress settled the aboriginal land claims of Alaska Natives by passing ANCSA.  As part of that settlement, Congress provided for the establishment of village and regional corporations to receive land and other benefits under the Act.  43 U.S.C. § 1606 (regional corporations); 43 U.S.C. § 1607 (village corporations).

In ANCSA, Congress delegated to the Secretary of the Interior the task of determining which Native entities are entitled to benefits as a Native village under the Act.  43 U.S.C. § 1610. ANCSA established two different tests for village eligibility depending on whether the locality is listed in 43 U.S.C. § 1610(b)(1).  Leisnoi, is the Native village corporation organized to represent the village of Woody Island.  AR 3 n.1.  Woody Island is not listed in 43 U.S.C. § 1610(b)(3). The test for the eligibility of "unlisted villages" such as Woody Island/Leisnoi is set forth in 43 U.S.C. § 1610(b)(3), which provides:

> (3) Native villages not listed in subsection (b)(1) hereof shall be eligible for land and benefits under this Act and lands shall be withdrawn pursuant to this section if the Secretary within two and one-half years from the date of enactment of this Act, determines that –
>> (A) twenty-five or more Natives were residents of an established village on the 1970 census enumeration date as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instance; and
>> (B) the village is not of a modern and urban character.

In addition to this delegation of the authority to determine the eligibility of villages, Congress delegated to the Secretary the general authority to promulgate "such regulations as may be necessary to carry out the purposes of this Act."  43 U.S.C. § 1624.

The Secretary promulgated regulations on village eligibility at 43 CFR § 2651.2. Pursuant to that regulation, the Juneau Area Office of the Bureau of Indian Affairs performs an investigation of the applications of unlisted villages. 43 CFR § 2651.2(a)(8). The BIA Juneau Area Director then makes an initial determination of eligibility. *Id.* That determination of eligibility becomes final unless a protest is filed within 30 days. 43 CFR § 2651.2(a)(9). If a protest is received, the Area Director examines and evaluates the protest and issues a decision thereon within 30 days. *Id.* That decision becomes final, unless appealed to the IBLA.[4] 43 CFR § 2651.2(a)(4) and (10). Decisions of the IBLA on village eligibility "are not final until personally approved by the Secretary." 43 CFR § 2651.2(a)(5).

After conducting the required investigation in 1973, the BIA determined that Woody Island/Leisnoi was an eligible village. *Stratman v. Watt,* 656 F.2d 1321, 1323 (9th Cir. 1981). Stratman neither filed an objection to nor participated in any hearings held on the application,[5] which was approved by the Secretary of the Interior on March 18, 1975. *Id.*

Pursuant to 43 U.S.C. § 1613(a), an eligible village corporation is entitled to a fixed number of acres of land based on the Native population of the village on the 1970 census enumeration date. 43 U.S.C. § 1613(a). The acres are selected pursuant to 43 U.S.C. § 1611(a). Villages may also receive additional acreage by reallocation from a regional corporation under

---

[4]     Originally village eligibility appeals were addressed to the Alaska Native Claims Appeals Board (ANCAB). *See,* 47 Fed. Reg. 26392 (June 18, 1982). The function was transferred to the IBLA when ANCAB was abolished. *Id.*

[5]     As explained in part III C 3 below, the Ninth Circuit held that the requirement of exhaustion of administrative remedies would not be mechanically applied to Stratman's subsequent challenge. *Stratman v. Watt,* 656 F.2d at 1326.

43 U.S.C. § 1611(b).

ANCSA not only establishes village acreage entitlements, it also designates the lands from which selections are to be made.  Village corporations must select all of the available land in the township or townships in which the village is located ("the core township").  43 U.S.C. § 1611(a)(1).  Thereafter, the village corporation selects land from two rings of townships surrounding the core township and withdrawn pursuant to 43 U.S.C. § 1610(a).  43 U.S.C. § 1611(a)(1).

Not all lands within such withdrawals are available for village selection.  National parks, military withdrawals and lands which have been patented to the State of Alaska or private parties cannot be selected.  43 U.S.C. §§ 1602(e), 1610(a).  Further, only a limited amount of acres that have been tentatively approved for conveyance to the State of Alaska may be selected.  43 U.S.C. §§ 1610(a)(2), 1611(a)(1).  For coastal villages such as Leisnoi/Woody Island, many of the townships within the rings surrounding the village are below the sea and thus unavailable.

Because of the possibility that the core and rings of townships might contain insufficient available land to satisfy the entitlement of a village corporation, 43 U.S.C. § 1610(a)(3), provides for deficiency withdrawals:

> If the Secretary determines that the lands withdrawn by subsections (a)(1) and (2) hereof are insufficient to permit a Village or Regional Corporation to select the acreage it is entitled to select, the Secretary shall withdraw three times the deficiency from the nearest unreserved, vacant and unappropriated public lands.  In making this withdrawal the Secretary shall, insofar as possible, withdraw public lands of a character similar to those on which the village is located and in order of their proximity to the center of the Native village.

The Secretary made deficiency withdrawals on the Alaska Peninsula for Leisnoi and other villages in the Kodiak region.  See, ANILCA section 1427(a)(2) and (3).

## Difficulties with implementation of ANCSA in the Kodiak Island area

_____ANCSA was intended to provide "a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims." 43 U.S.C. § 1601(a).  It was to accomplish that purpose "rapidly' and "with certainty."  43 U.S.C. § 1601(b).

As ANCSA was implemented, two problems cropped up in the Koniag (Kodiak) region that were preventing a rapid and certain settlement.  First, the deficiency withdrawals on the Alaska Peninsula were unsatisfactory to the Koniag villages.  AR 9.  Conversely, the federal government was anxious to add the withdrawn lands on the Alaska Peninsula to the proposed Alaska Peninsula National Wildlife Refuge.  *Id.*

Second, considerable uncertainty existed regarding the eligibility of some villages in the Koniag Region.  In 1978, the District of Columbia Circuit overturned the Secretary's determination that seven of the villages in the Koniag region were ineligible for ANCSA benefits, and remanded the determinations to the Department for further proceedings.  *Koniag, Inc. v. Andrus,* 580 F.2d 601 (D.C. Cir. 1978).  That decision had the effect of leaving uncertain until the conclusion of those remand proceedings the ultimate land entitlement of the Koniag Native villages and of Koniag itself.

## Amendment of ANCSA in Section 1427 of ANILCA

To address the problems being experienced in the Koniag and other regions, Congress included in ANILCA Title XIV "Amendments to the Alaska Native Claims Settlement Act and Related Provisions." Within that title, section 1427 specifically addressed "Koniag Village and

Regional Corporation Lands."

A number of sections in Title XIV provide for the resolution of outstanding eligibility issues so that they would not present an obstacle to land consolidation schemes contained in the Title. Congress did so by specifically resolving the status of putative villages that the *Secretary had determined were ineligible* so that those entities could participate in various agreements. For example, in the Cook Inlet region, the Secretary had determined that Salamatof and Alexander Creek were not eligible villages. In ANILCA section 1432, Congress directed the Secretary to withdraw any determination that Salamatof was not an eligible village. In the same section, Congress provided for the treatment of Alexander Creek as a Native group. Congress then provided for the conveyance of lands in accordance with certain agreements between the United States, Cook Inlet Region, Inc., and Salamatof and Alexander Creek. *Id.*

In the same way, section 1427 involves a large land consolidation agreement requiring certainty as to the status of villages in the Koniag Region. As explained in detail below, the agreement provides that the Natives would give up their rights to deficiency lands on the Alaska Peninsula in return for conveyance of lands on Afognak Island. The conveyance would not be made to individual corporations, but to a joint venture consisting of the Koniag villages and Koniag region. The percentage share in the joint venture of the various corporations is calculated using a complicated formula based upon their entitlements under ANCSA.

**ARGUMENT**

**THE SECRETARY'S DETERMINATION MUST BE UPHELD
AND THE ACTION DISMISSED**

**I.  THE SECRETARY'S INTERPRETATIONS ARE ENTITLED TO *CHEVRON*
DEFERENCE**

Stratman seeks review of the action of the Secretary of the Interior determining that Leisnoi is

eligible as a Native village by virtue of Congress's ratification of Leisnoi's status in section 1427 of

ANILCA.  Review of agency action is governed by the Administrative Procedure Act (APA), 5

U.S.C. § 701 *et seq.*  The Secretary's determination may be set aside only if "arbitrary and capricious,

an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

In this case, the Secretary's decision consists primarily of an interpretation of a statute (section

1427 of ANILCA) and of departmental regulations.  In reviewing an agency's interpretation of a

statute the agency administers, the courts first look to whether "Congress has directly spoken on the

precise question."  *Chevron USA v. Natural Resources Defense Council*, 467 U.S. 837, 842  (1984).[6/]

If Congress has not addressed the specific issue, or if the statute is ambiguous, the question is whether

---

[6/]      The Supreme Court has more recently clarified that *Chevron* deference is owing to
interpretations where "Congress would expect the agency to be able to speak with the force of
law when it addresses ambiguity in the statute or fills in the space in the enacted law even in one
about which the Congress did not actually have an intent as to a particular result."  *United States
v. Mead Corporation,* 533 U.S. 218, 229 (2001).  Good indicators of a delegation to "speak with
the force of law" include authorization to engage in rulemaking, or instances where there is a
"relatively formal administrative procedure tending to foster the fairness and deliberation that
should underlie a pronouncement of such force."  *Id.* at 229-230.  As shown in the Background
portion of this brief, Congress made both types of delegations to the Secretary of the Interior in
ANCSA. In 16 U.S.C. § 1624 Congress granted the Secretary the authority to issue regulations
necessary for the implementation of ANCSA.  In 16 U.S.C. § 1610 Congress delegated to the
Secretary the task of adjudicating the eligibility of Native villages.  Such determinations are
made in a formal procedure insuring input (including multiple rounds of briefing) from all
parties.  43 CFR § 2651.2.

the agency's interpretation is "permissible". *Id.* at 843. The courts accord great deference to the interpretation of the statute by the agency or agencies entrusted with its implementation, and will uphold the agency interpretation so long as it is reasonable. *Kunaknana v. Clark*, 742 F.2d 1145, 1150 (9th Cir. 1984); *Western Pioneer, Inc. v. United States*, 709 F.2d 1331, 1335 (9th Cir. 1983). To satisfy the reasonableness standard it is not necessary for the court to find that the agency's construction of the statute is the only reasonable one or even the reading the court would have reached if the question initially had arisen in a judicial proceeding. *Id*. Rather, the agency interpretation must merely be "within the range of reasonable meanings which the words of the statute permit." *Kunaknana v. Clark*, 742 F.2d at 1152. A court will hold an agency interpretation reasonable "unless there are compelling indications that it is wrong." *Alaska Wildlife Alliance v. Jensen*, 108 F.3d 1065, 1070 (9th Cir. 1997). In *Kunaknana*, the Ninth Circuit held that the agency's interpretation of ANILCA is entitled to great deference. 742 F.2d. at 1150.

The Court's have repeatedly accorded great deference to the Department of the Interior's interpretation of ANCSA. *Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 (9th Cir. 1990) (according deference to agency's interpretation of ANCSA eligibility requirements for Native groups); *Seldovia Native Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1342 (9th Cir. 1990); *Haynes v. United States*, 891 F.2d 235, 238-39 (9th Cir. 1989); *Aleknagik Natives Ltd. v. United States*, 806 F.2d 924 (9th Cir. 1986).

When the issue is the interpretation of a regulation issued by an agency, the scope of review is even more limited. An agency's interpretation of its own regulations is controlling unless it is plainly erroneous or inconsistent with the regulation. *Thomas Jefferson University v. Shalala,* 512 U.S. 504,

512 (1994); *accord, Norfolk Energy, Inc. v. Hodel,* 898 F.2d 1435, 1439 (9th Cir. 1990); *Bushmann v. Schweiker,* 676 F.2d 352, 355 (9th Cir. 1982).

The deference owed to the Secretary's interpretations is not affected by the fact that the Secretary disagreed with the interpretations made by the IBLA.  The courts owe deference to the final decision of the agency.  *Stamper v. Secretary of Agriculture,* 722 F.2d 1483, 1486 (9th Cir. 1984).  When the final decision-maker – in this case the Secretary – disagrees with intermediate decision-makers such as an administrative law judge or administrative tribunal, the deference standard does not change -- the intermediate decisions are merely part of the administrative record to be weighed against other evidence supporting the agency's final decision.  *Eichelberger v. N.L.R.B.,* 765 F.2d 851, 853 (9th Cir. 1985); *Southwest Sunsites, Inc. v. Federal Trade Commission,* 785 F.2d 1431, 1437 (9th Cir. 1986).

As shown below, the Secretary carefully considered, and responded to the reasoning of the IBLA, which he rejected.  The Secretary's reasoning demonstrates that his decision was not arbitrary and capricious, nor contrary to law.

## II.  IN THE ALTERNATIVE, THE SECRETARY'S INTERPRETATIONS ARE ENTITLED TO DEFERENCE UNDER *SKIDMORE*

Even when an agency's interpretation is not entitled to *Chevron* deference, it is entitled to deference under *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944).  Under *Skidmore*, the amount of deference varies in accordance with a number of factors including "the degree of the agency's care, its consistency, formality, and relative expertness, and the persuasiveness of the agency's position." These factors all weigh in favor of according substantial *Skidmore* deference in this case.

As set forth in detail below, the Secretary's interpretation is unquestionably the result of a

careful analysis of the complex language and scheme of section 1427 as a whole, as well as the

legislative history.  It is also the result of a formal process in which the Secretary received and

considered briefing by the parties on the subject.  The Secretary carefully considered, but ultimately

rejected the interpretations of IBLA. The Courts have repeatedly recognized the expertise of the

Department of the Interior on the intricacies of ANCSA.  *Seldovia Native Ass'n, Inc. v. Lujan*, 904

F.2d at 1342 ; *Haynes v. United States*, 891 F.2d at 238-39; *Aleknagik Natives Ltd. v. United States*,

806 F.2d 924; *Chugach Alaska Corp. v. Lujan*, 915 F.2d at 457.  Finally, the Secretary's

interpretation of section 1427 is persuasive.  As shown below, Congress's carefully constructed

scheme for a rapid settlement of the Koniag claims in section 1427 makes no sense unless Leisnoi's

eligibility was ratified.

## III.  THE SECRETARY PROPERLY DETERMINED THAT THE DEPARTMENT OF INTERIOR HAD JURISDICTION OVER THE DETERMINATION OF LEISNOI'S ELIGIBILITY AND THAT THE SECRETARY'S PERSONAL ACTION WAS REQUIRED FOR FINAL ACTION ON THAT ELIGIBILITY DETERMINATION

Prior to addressing the interpretation of ANILCA section 1427, the Secretary addressed two

threshold questions.  The IBLA had determined that it lacked jurisdiction over the issue of Leisnoi's

eligibility.  IBLA had also determined that no action by the Secretary was necessary to create final

agency action with regard to Leisnoi's eligibility.  The Secretary correctly concluded that IBLA erred

on both issues.

### A.  The IBLA's decision that it lacked jurisdiction was based upon a factual error

In concluding that it lacked jurisdiction over the issue of Leisnoi's eligibility, the  IBLA

reasoned: (1) Following certification as an ANCSA village, Leisnoi selected the acreage to which it

was entitled under ANCSA.  The agency then conveyed the selected lands to Leisnoi by patent and

interim conveyance[7] in 1986.  **(**2) The effect of the issuance of a patent by the United States is to

transfer the legal title from the United States and to remove the land from the jurisdiction of the

Department.  (3) The IBLA also noted that the six-year statute of limitations in 43 U.S.C. § 1166 for a

suit to cancel a patent has long run. The IBLA, therefore, concluded that it had "no authority to

entertain Stratman's challenge to [Leisnoi's] eligibility" to select lands under ANCSA.  AR 38.

IBLA's reasoning was premised on a factual error.  As explained in the background section,

under ANCSA each eligible village is entitled to select and to receive conveyance to a certain number

of acres based on population and a number of other factors.  43 U.S.C. § 1613(a); 1611(b).  Leisnoi

did indeed select and receive conveyance to the bulk of its entitlement under ANCSA in 1986, but it

has not yet received all of its entitlement.  As the Secretary stated (AR 6):

> BLM has informed me, however, that Leisnoi has not received all of the acreage for
> which it is eligible under ANCSA.  Leisnoi has the right to select approximately 3,000
> additional acres.  Because Leisnoi may be eligible for additional acres, jurisdiction to
> address the underlying question of Leisnoi's eligibility has not "been removed from
> the Department," and the statute of limitations, at least as to those lands, does not "bar
> Department involvement."

Because of the outstanding entitlement, the Secretary correctly reversed the IBLA's conclusion that it

lacked jurisdiction to determine Leisnoi's eligibility.[8]

---

[7]       An "interim conveyance" is a conveyance to a Native corporation of land that has not yet been
surveyed.  43 U.S.C. § 1621(j)(1).  The force and effect of an interim conveyance is to
convey to and vest in the recipient exactly the same right, title, and interest in and to the lands as
the recipient would have received had he been issued a patent by the United States.  *Id.*

[8]       Because the outstanding entitlement provides a clear basis for jurisdiction, it is
unnecessary to determine whether IBLA would have had jurisdiction even if Leisnoi had
completely exhausted its acreage entitlement.  Native village status has legal implications beyond
the right to receive land benefits under ANCSA.  *See, e.g.,* 16 U.S.C. § 3197 according Native
Corporations a preference for contracts for the provision of certain visitor services in
conservation system units.  Whether those other legal impacts of village status would be

**B.  The IBLA Also Erred In Concluding That Its Decision Was Not Subject To 43 CFR § 2651.2(a)(5)**

Normally, a decision by the IBLA constitutes final agency action by the Department of the Interior.  43 CFR § 4.1(b)(3).  However, the Interior Department regulations make an exception with regard to decisions about village eligibility decisions.

> (5) *Action on appeals.*  Appeals shall be made to the Board of Land Appeals in accordance with subpart E of part 4 of this title.  Decisions of the Board on village eligibility appeals are not final until personally approved by the Secretary.

43 CFR § 2651.2(a)(5).

Despite this clear language, the IBLA determined that 43 CFR § 2651.2(a)(5) did not apply to its decision.  The IBLA reasoned as follows: The IBLA typically decides appeals of parties adversely affected "by a decision of an agency official" other than the Secretary.  AR 37.  The IBLA believed that there was "no agency decision for direct review" here because "all the agency decisions in this case issued over 25 years ago." and were decided "with administrative finality in 1974."  *Id.*  IBLA thought that it was not issuing a decision on a "village eligibility appeal" because the matter had come to it on a referral from this Court.  AR 37, 43 n.16.

The Secretary properly rejected the IBLA's analysis, noting that this Court in *Stratman v. Babbitt,* A76-132 CV (JKS) (D. Alaska, Order from Chambers filed Sept. 13. 1995 at 3) (AR 31) had explicitly remanded the case to IBLA "for consideration of Stratman's challenge to Leisnoi," and to "permit exhaustion of administrative remedies, albeit belated."  AR 6.  The only remedy available to Stratman in 1974 was a review by the IBLA's predecessor tribunal of the BIA's eligibility

---

sufficient to establish IBLA jurisdiction is an issue on which the Secretary did not pass, and we do not take a position on it.

determination. The Secretary concluded that this Court, in effect, suspended the Secretary's 1975 certification of the BIA's eligibility determination pending the outcome of the IBLA's review. AR 6-7. The Secretary determined that the IBLA's decision constituted a decision on a "village eligibility appeal" for purposes of 43 CFR § 2651.2(a)(5). AR 7. As explained above, the Secretary's interpretation of his own regulations is entitled to great deference and is controlling unless clearly erroneous or inconsistent with the regulation. The Secretary's interpretation is well reasoned and consistent with the regulation, while the IBLA's interpretation is not.

It is clear from the language of 43 CFR § 2651.2(a)(5) that the Secretary of Interior considered the issue of village eligibility to be of sufficient importance that it should be decided finally for the Department by the Secretary personally. That section, therefore, creates a rare exception to the general delegation to the IBLA to decide matters within its jurisdiction with finality. Few village eligibility determinations have been as controversial and subject to litigation as that of Leisnoi. It begs credulity to interpret the regulation to reserve the final word on eligibility to the Secretary for all villages except for Leisnoi.

IBLA's interpretation is likewise inconsistent with this Court's Order from Chambers filed June 3, 2003 (Docket # 34) granting federal defendant's motion for stay. Stratman had opposed the motion for stay, arguing that 43 CFR § 2651(a)(5) was inapplicable to the IBLA's decision. Docket # 30 at 3-4. The Court granted the stay stating:

> This Court remanded an earlier version of this case to the Interior Board of Land Appeals to permit exhaustion of administrative remedies. To honor the doctrine of primary jurisdiction, the Court is convinced by the Government's argument that a stay is proper so as to allow completion of agency review and fully exhaust administrative remedies.

Docket # 34.

In sum, the Department of Interior had jurisdiction to determine the eligibility of Leisnoi, first before the IBLA, and then finally for the Department before the Secretary.

## III.  CONGRESS RATIFIED LEISNOI'S ELIGIBILITY BY ENACTING SECTION 1427 OF ANILCA

### A.  <u>Congress Had The Power To Ratify Leisnoi's Eligibility</u>

There can be no doubt of Congress's power to ratify actions of the Executive Branch that had previously been unauthorized.  For example, the Supreme Court held in *United States v. Alaska (Alaska),* 521 U.S. 1, 44-45 (1997) that Congress ratified in the Alaska Statehood Act (ASA), note prec. 48 U.S.C. § 21, the inclusion of submerged lands in the National Petroleum Reserve Alaska (NPRA) even if the Executive had lacked authority to include them at the time of the Executive Order creating the Reserve.  *See also, Holden v. Joy,* 17 Wall. 211, 247 (1872) (rejecting Property Clause challenge to President's treaty with the Cherokee Nation; although terms of treaty exceeded express delegation of authority by Congress to the President, Congress had repeatedly recognized the validity of the treaty by enacting appropriation statutes).

### B.  <u>Ratification Does Not Require Particular Words</u>

No particular words are required for Congressional ratification.  Ratification will often be found in instances where Congress was on notice of the disputed matter, and the ratification is important to the successful implementation of the scheme and goal of the statute involved.

In  *Alaska,* 521 U.S. at 41-45, the Supreme Court found a congressional ratification of a disputed withdrawal order after engaging in a complicated analysis of the ASA and concluding that Congress's intent under that act would not be effectuated without the ratification.   The Court noted

that Section 11(b) of the ASA provides that the United States would have the  the power of exclusive

legislation under the Enclave Clause over all lands in Alaska that immediately prior to the admission

of Alaska "are owned by the United States and held for military ... purposes," including the NPRA.

As the Enclave Clause does not apply to lands after they leave federal ownership, the Court reasoned

that 11(b) manifested a clear congressional intent to retain title to all lands (whether upland or

submerged) reserved for military purposes..

Section 11(b) specifically listed the NPRA as a reserve for military purposes.  The language of

the withdrawal order creating the NPRA included submerged lands as part of that reserve.  Alaska

objected that the statute pursuant to which the NPRA had been created did not authorize the

Executive to withdraw submerged lands.  The Court found that the language of the 1923 Executive

Order creating the NPRA placed Congress on notice that the Executive had construed its reservation

authority to extend to submerged lands.  The Court concluded that by acknowledging the United

States' ownership of and jurisdiction over the Reserve in § 11(b), Congress must have ratified the

Executive Order's inclusion of submerged lands within the Reserve, whether or not it had previously

intended the President's reservation authority to extend to submerged lands.  *Alaska,*. 521 U.S. at 45.

The Supreme Court reached its conclusion on ratification in a case involving whether the

United States had retained title to submerged lands at Alaska statehood.  A Court considering that

issue must "begin with a strong presumption" against federal retention of title to the submerged lands.

There is no comparable presumption against changes to ANCSA and Congress has stepped in to

decide a number of ANCSA eligibility disputes.  *See, e.g.* ANILCA §§ 1427(e)(1), 1432(a).  The rule

that ratification need not need not use specific words applies *a fortiori* to this action.

As shown below, the parallels between the congressional ratification of Leisnoi's eligibility in section 1427 and the congressional ratification of the reservation of submerged lands found by the Supreme Court in *Alaska,* are striking.  First, in both cases the ratification was expressed by a statement of Congress's understanding of a legal situation – in *Alaska* that the lands in the NPRA belonged to and would continue to belong to the United States, here that the section would be "in full satisfaction" of the "right of each Koniag Deficiency Village Corporation [including Leisnoi] to conveyance under [ANCSA]" and that Koniag Deficiency Village Corporations are "entitled, under section 14(a) of [ANCSA] to a conveyance...."  Second, in both cases, Congress was on notice of a potentially questionable action by the Executive – in *Alaska* the Executive's use of the Picket Act to reserve submerged lands, here the challenges to the Secretary's certification of Leisnoi.  Finally, in both cases the ratification was important to the smooth implementation of a complex provision of the statute.  The Secretary's interpretation of section 1427 is, thus, consistent with Supreme Court's analysis of ratification and should be upheld.

### C.  <u>Section 1427 Reflects A Clear Intent By Congress To Ratify The Determination That Leisnoi Is Eligible For ANCSA Benefits.</u>

ANILCA section 1427 is a complex section stretching over almost eleven pages.  The key provision pertinent to this case is a directive to the Secretary to convey "the surface estate of all of the lands on Afognak Island" with certain exceptions, to a joint venture consisting of "the Koniag Deficiency Village Corporations, the Koniag 12(b) Village Corporations and Koniag."  The conveyance was to be made, among other things, "in full satisfaction" of "the right of each Koniag Deficiency village corporation to conveyance" under ANCSA "of the surface estate of deficiency village acreage on the Alaska Peninsula."  Section 1427(b)(1).  Leisnoi is listed as one of the Koniag

Deficiency Villages that would be part of the joint venture.  The Secretary's determination that section 1427 ratified Leisnoi's eligibility is consistent with the smooth operation of Congress's scheme set forth in the section.

       1.  <u>The Secretary properly based his interpretation of section 1427 on the section as a whole</u>

In reversing the IBLA's interpretation of section 1427, the Secretary found that the principal defect in the IBLA's analysis was its failure to examine closely all of the relevant language in the section.  The Secretary engaged in that close examination of the section (AR 9-14) and determined that section 1427 constructs an elaborate scheme for the resolution of the Koniag land claims, not just of Leisnoi, but of a sizable number of other entities.  In that scheme, in which Leisnoi's eligibility is clearly assumed, certainty about the eligibility of Leisnoi was a necessary predicate to final and timely settlement of the claims of Leisnoi, the other Koniag villages, and Koniag (Region), Inc.  The Secretary concluded that viewing the scheme as a whole, "it is reasonable to conclude that Congress intended to resolve all of the uncertainties and did not intend to leave the parties at risk of having their entitlements upset by a judicial resolution of Stratman's challenge to Leisnoi's eligibility."

The most salient provisions of section 1427 considered by the Secretary are found in subsections (a), (b) and (c).  Subsection (a) defines various terms used in the section.  Subsection (b) directs the Secretary to convey "the surface estate of all of the [specified] public land on Afognak Island" "in full satisfaction of the right of [each corporation defined in subsection (a)] to conveyance" under various provisions of ANCSA.  Subsection (c) provides that the conveyance shall be made to a joint venture of the corporations defined in subsection (a), and provides a complicated formula for determining how the costs and revenues shall be shared among the corporations participating in the

joint venture.

Subsection (a)(4) lists "Leisnoi, Incorporated" as a "Koniag deficiency village corporation." In defining "Deficiency village acreage on the Alaska Peninsula," Congress spoke of the "aggregate number of acres of public land to which 'Koniag deficiency Village Corporations' are entitled.." Section 1427(a)(2).

Subsection (a)(5) defines "Koniag 12(b) Village Corporation" to include "the village corporations listed in subsection (a)(4) (including Leisnoi) if "within sixty days of the effective date of this Act, Koniag, Incorporated, by a resolution duly adopted by its Board designates them as such as a class."

Subsection (b)(1) speaks of the Afognak conveyance being in  "full satisfaction" of the "right. . . to conveyance" held by Koniag Deficiency Village Corporations and Koniag 12(b) Village Corporations.  Leisnoi is a member of both those classes.

_____Subsection (c) directs that the corporations making up the joint venture to which the lands on Afognak Island shall be conveyed shall share in the costs and revenues of the joint venture on the basis of complex calculations based on the entitlements of the various villages.  Congress directed that the conveyance "be made as soon as practicable after there has been filed with the Secretary of the Interior a duly executed joint venture agreement with provisions for sharing of and entitlements in costs and revenues of such venture as provided in this subsection."  Pursuant to subsection (b)(3), the lands sought by the United States on the Alaska Peninsula for inclusion in the Alaska Peninsula National Wildlife Refuge would not be so included until the Afognak Island conveyance was completed.

Because Congress wished the settlement to occur rapidly, it provided deadlines throughout Section 1427. Koniag's board had only 60 days in which to designate as "Koniag 12(b) Village Corporations" the four corporations listed in subsection (a)(5). The villages listed in subsection (e) had sixty day to file a release with the Secretary if they wished to be deemed an eligible village. Additional acreage was to be conveyed to Ouzinkie Native Corporation and Koniag, Incorporated pursuant to section 1427(d), if within 90 days they entered into an agreement with the Kodiak Island Borough.

The Secretary in interpreting these provisions relied on one of the cardinal canons of statutory construction: a statute is to be read as a whole. *Washington State Department of Social and Health Services v. Keffler*, 537 U.S. 371, 384 n. 7 (2003). The Secretary found that "[w]hen read as a whole, it is clear that section 1427 was intended to settle with finality and "as soon as practicable" the land entitlements of Koniag, Inc. and its villages.

Certainty about the status of Leisnoi was a necessary predicate to achieving that finality. Without such certainty, the full entitlements of all of the parties affected by the settlement would either be incapable of calculation or, if conveyances and other distributions of benefits were made on the assumption that Leisnoi was an eligible village, they would run the risk of having to be amended or corrected at some indeterminate date depending on the outcome of Stratman's challenge. For example, Leisnoi's status was key to: (1) the amount of subsurface acreage to which Koniag Regional Corporation was entitled; (2) the sharing of costs and revenues by Afognak Island joint venture partners, and (3) the 12(b) land entitlements of not just Koniag and its villages, but the land entitlements of all eleven of the regional corporations and their villages. It would be incongruous for

Congress to set very short deadlines elsewhere in the section while allowing Leisnoi's eligibility to remain unresolved indefinitely.

In sum, any interpretation of section 1427 that did not ratify (accept as final) Leisnoi's eligibility is antithetical to the careful and complex scheme established by Congress for the rapid and certain settlement of the Koniag land claims and the addition of lands to the Alaska Peninsula Wildlife Refuge.

2.  <u>The legislative history supports the Secretary's interpretation</u>

The Secretary also examined the legislative history of section 1427.  When Congress first began consideration of how to resolve the Koniag land claims, it was put on notice that Leisnoi's eligibility was under challenge.  AR 13.  The Sierra Club testified that the Koniag amendment was premature and suggested that the "Committee defer consideration of the Koniag amendment pending a Committee investigation of the certification of Leisnoi.  *Amendments to Alaska Native Claims Settlement Act: Hearing Before the Comm. On Interior and Insular Affairs U.S. Senate,* 94th Cong., 1st Sess. at 392 (1975) (AR 241).  The President of the Kodiak-Aleutian Chapter of the Alaska Conservation Society requested that the "Interior Committee direct a full and open investigation of the circumstances of the improper certification" of Leisnoi. AR 246.

Despite being put on notice of the controversy regarding Leisnoi's eligibility, Congress pressed ahead with the Koniag amendment – an amendment that assumed and was dependent on Leisnoi's eligibility.  The Secretary, therefore, reasonably interpreted the section as congressional acceptance of the Secretary Morton's 1975 determination that Leisnoi met the eligibility requirements of ANCSA.

3.   The Secretary carefully considered, and properly rejected the reasoning of the IBLA

The Secretary considered and rejected the three reasons the IBLA relied upon for its

interpretation that section 1427 did not ratify Leisnoi's eligibility.  First, the IBLA had noted that

when section 1427 was passed in 1980, "Stratman's decertification litigation had been dismissed by

the district court," and "was on appeal to the circuit court on procedural grounds."  AR 56.  IBLA

then inexplicably concluded that because the appeal was "on procedural grounds," there was no

"immediate judicial challenge" to Leisnoi's eligibility when 1427 was passed, and that Congress,

therefore, could not have intended to moot the challenge.  AR 56-57.  This is a *non sequitur*.

Whether one characterizes the appeal to the Ninth Circuit as "procedural" or not, that appeal

constituted an immediate judicial challenge to Leisnoi's eligibility.

The challenge pending in 1980 resulted in the Ninth Circuit's decision in *Stratman v. Watt,*

656 F.2d 1321 (9th Cir. 1981).  The Ninth Circuit began its decision with a description of the nature of

the case before it:

> This is an action by various individuals to enjoin the granting of land patents to a
> Native corporation pursuant to the Alaska Native Claims Settlement Act, 43 U.S.C. §§
> 1601 *et seq.*  Plaintiffs seek to demonstrate that the village corporation, Leisnoi, Inc.,
> comprising the village of Woody Island, was not qualified as a Native village.

This Court had dismissed that action for failure to exhaust administrative remedies because Stratman

had not filed a timely administrative appeal.  Stratman argued that the case should not have been

dismissed for failure to exhaust because he had a right to, but had not received actual notice of

Leisnoi's certification.  The Ninth Circuit agreed that Stratman was entitled to actual notice, and that

exhaustion need not be applied mechanically, and remanded to this Court to consider whether to

impose the exhaustion requirement in light of Stratman's recreational interests.  *Stratman v. Watt,* 656

F.2d at 1325-26.

Thus, at the time section 1427 was enacted, a challenge to Leisnoi's eligibility was before the courts. Without a mooting of that challenge through legislative ratification, the careful and complex settlement reflected in section 1427 would be undermined and delayed. Such delay is antithetical to the evident desire of Congress that the settlement be implemented rapidly so that the Alaska Peninsula lands could be added to the Alaska Peninsula Wildlife Refuge. The fact that *Stratman v. Watt,* was before the Ninth Circuit in 1980 on the threshold exhaustion issue, if anything, increased the need to ratify Leisnoi's status. If Stratman were successful before the Ninth Circuit on the threshold issue, Leisnoi's status would remain unresolved for a long period of time indeed.

Second, the IBLA stated that its conclusion about Congress's intent is "reinforced by the fact that in the same section, Congress expressly provided for the resolution of disputes concerning the status of seven unlisted villages by declaring each to be 'deemed an eligible village' under" ANCSA. AR 57. According to IBLA, Congress "could have done the same for Leisnoi, but it did not," and must therefore not have intended to moot Stratman's challenge. *Id*. IBLA ignored the fact that Leisnoi's situation was different than that of the seven unlisted villages, and therefore did not required the same treatment. At the time that 1427 was passed, Leisnoi had been certified as an eligible Native village, while the status of the seven unlisted villages was uncertain – they had initially been determined ineligible, but that determination had been overturned by a court and was back before the Department on remand. To enable the Koniag settlement to go forward in a timely manner, the uncertainty about the status of the seven unlisted villages had to be resolved. Congress therefore adopted a compromise in which the villages would be deemed eligible, but would forfeit

some of their rights under ANCSA to receive land.  No such compromise was necessary in the case of Leisnoi.  To enable the Koniag settlement to go forward, Congress needed simply to accept the Secretary's eligibility determination with respect to Leisnoi as final.

The IBLA's reasoning also left unanswered a significant question: Why would Congress take such pains to resolve the status of the seven unlisted villages, so that the Koniag settlement could proceed, and yet leave unresolved the question that had been raised about Leisnoi – thereby seriously disrupting the implementation of many of the interconnected provisions of section 1427?

IBLA's third argument against ratification is that in 1995 the Senate passed a bill that would have expressly "confirmed [Leisnoi] as an eligible Alaska Native Village, pursuant to Section 11(b)(3)" of ANCSA.   IBLA reasoned that this bill (which ultimately did not become law) would not have been necessary if 1427 had already confirmed Leisnoi's eligibility.  AR 57.  The Secretary found the 1995 bill non-probative because legislation proposed to a Congress in 1995 that does not pass, is not a reliable indicator of what another Congress sitting 15 years earlier in 1980 may or may not have intended.  AR 15.  Indeed, IBLA's assumption that the 1995 bill would be unnecessary if ANILCA had already ratified Leisnoi's eligibility is questionable.  Even though the Secretary has interpreted section 1427 as ratifying Leisnoi's eligibility, the matter remains in litigation 27 years later.  At the very least, the more straightforward language of the 1995 bill could have contributed to a quicker end to this litigation.

## CONCLUSION

For the foregoing reasons, the Court should affirm the decision of Secretary Kempthorne that section 1427 ratified Leisnoi's eligibility.  That ratification disposes of all of the issues in the third

amended complaint, which should be dismissed.

Respectfully submitted this 27th day April, 2007 .

_____    S/ Bruce M. Landon
                                 BRUCE M. LANDON
                                 DEPARTMENT OF JUSTICE
                                 Environment & Natural Resources Division
                                 801 B Street, Suite 504
                                 Anchorage, Alaska 99501-3657
                                 Telephone: 907-271-5452
                                 Facsimile: 907-271-5827
                                 Email: bruce.landon@usdoj.gov

                                 Attorney for Federal Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of April, 2007, a copy of the foregoing Memorandum on the Merits and exhibit were served electronically, to the following:

John R. Fitzgerald
Michael J. Schneider
Collin Middleton

s. Bruce M. Landon
BRUCE M. LANDON