for recreation purposes including hunting, fishing, camping, hiking, picnicking, boating, berry picking, bird watching and nature observation and photography. The lands selected for patent to the Village Corporations of Anton Larsen, Inc. and Bells Flats Natives, Inc. are either used for said recreational purposes or must be used for access to such areas. Patent of these lands to the Village Corporations in violation of 43 U.S.C.A. §1610(b)(3) will terminate the plaintiff's rights of access and enjoyment of Federal lands in the public domain. Such termination of rights of access and enjoyment will constitute grave and irreparable injury to the plaintiffs, and plaintiffs will be damaged in an amount exceeding $10,000.00.

IX.

Jurisdiction and venue in this Court are provided by 28 U.S.C.A. §1331 and 28 U.S.C.A. §1391.

WHEREFORE: Plaintiffs pray as follows:

(1) That the Secretary be permanently enjoined from issuing any patents to or other interest in real property in the Federal domain to the Village Corporations.

(2) That any conveyances of any interest in real property which might have been made to said Village Corporations by the Secretary be declared null and void.

(3) That plaintiffs be awarded their costs and attorney's fees.

(4) Such other relief as the Court deems just.

DATED this 5th day of January, 1977.

HOUSTON & HENDERSON
Attorneys for Plaintiffs

By _Roger E. Henderson_
Roger E. Henderson

HOUSTON & HENDERSON
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
805 WEST THIRD AVENUE
ANCHORAGE, AK. 99501
TELEPHONE 272-1527

-4-

Omar STRATMAN, et al.,
Plaintiffs-Appellants,

v.

James G. WATT, Secretary of the Interior, et al., Defendants-Appellees.

No. 79–4480.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided Sept. 8, 1981.

Rehearing Denied Nov. 27, 1981.

Action was brought to enjoin granting of land patents to native village pursuant to Alaska Native Claims Settlement Act. The United States District Court for the District of Alaska, James A. von der Heydt, Chief Judge, dismissed plaintiffs' claims, and appeal was taken. The Court of Appeals, Schroeder, Circuit Judge, held that: (1) notice by publication did not deny due process to those whose only connection with the land was as recreational users and, therefore, in challenging the granting of the patents such recreational users were not relieved of the prerequisite of exhaustion of administrative remedies by virtue of lack of the actual notice, and (2) plaintiffs, who held grazing leases on land within the area subject to patent pursuant to the Act, were entitled to actual notice of the proposed certification of village as a native village under the Act, and, since they did not receive such notice, they should not have been barred from challenging the certification by their failure to exhaust administrative remedies.

Affirmed in part; reversed and remanded in part.

1. Federal Courts ⇐13

Any injury to plaintiffs' economic interests with respect to their leaseholds within area subject to patent under the Alaska Native Claims Settlement Act that might result from other land selections by native village was too speculative to create a case or controversy to enjoin the selection. Alaska Native Claims Settlement Act, § 11(b)(3), 43 U.S.C.A. § 1610(b)(3); U.S.C.A.Const. Art. 3, § 2, cl. 1.

2. Federal Courts ⇐13

To satisfy the constitutional requirement that a case or controversy has been made out, the plaintiff must allege that he has suffered injury resulting from the defendant's allegedly illegal action. U.S.C.A. Const. Art. 3, § 2, cl. 1.

3. Federal Civil Procedure ⇐103

Recreational users of land subject to patent pursuant to the Alaska Native Claims Settlement Act had standing to protest village's certification as a native village. Alaska Native Claims Settlement Act, § 11(b)(3), 43 U.S.C.A. § 1610(b)(3).

4. Constitutional Law ⇐318(1)
United States ⇐105

Neither the government nor the native village was required to give actual notice to all potential recreational users of land subject to patents pursuant to Alaska Native Claims Settlement Act; notice by publication did not deny due process to those whose only connection with the land was as recreational users; therefore, in challenging the granting of the patents, such recreational users were not relieved of the prerequisite of exhaustion of administrative remedies by virtue of lack of actual notice. Alaska Native Claims Settlement Act, § 2 et seq., 43 U.S.C.A. § 1601 et seq.; U.S.C.A. Const. Amends. 5, 14.

5. United States ⇐105

Plaintiffs, who held grazing leases on land within area subject to patent pursuant to Alaska Native Claims Settlement Act, were entitled to actual notice of proposed certification of village as native village under the Act and, since they did not receive such notice, they should not have been

barred from challenging the certification by their failure to exhaust administrative remedies. Alaska Native Claims Settlement Act, § 11(b)(3), 43 U.S.C.A. § 1610(b)(3).

**6. Administrative Law and Procedure**
⇐229

Judicially developed exhaustion requirements, which are necessarily susceptible to judicial refinement and modification, must be tailored to fit the peculiarities of an administrative system and the particular facts of each case.

**7. Administrative Law and Procedure**
⇐229

Balancing analysis used in determining whether to apply exhaustion of administrative remedies doctrine considers both the interests of the agency in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances.

---

Roger E. Henderson, Anchorage, Alaska; Frederick L. Miller, Duncan, Weinberg & Miller, Washington, D. C., argued, for plaintiffs-appellants; Roger E. Henderson, Houston & Henderson, Anchorage, Alaska, on brief.

Peter Steenland, Washington, D. C., argued, for defendants-appellees; Dan A. Hensley, Anchorage, Alaska, on brief.

Appeal from the United States District Court for the District of Alaska.

Before WALLACE, HUG and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an action by various individuals to enjoin the granting of land patents to a Native corporation pursuant to the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601 et seq. Plaintiffs seek to demonstrate that the village corporation, Leisnoi, Inc. (Leisnoi), comprising the village of Woody Island, was not qualified as a Native village under the requirements of 43 U.S.C. § 1610(b)(3).[1] Defendants include the Secretary of the Interior and Leisnoi. A series of district court rulings resulted in the dismissal of all the plaintiffs' claims, and we partially remand.

At the time suit was filed, these plaintiffs could have been grouped into two categories. The first group of plaintiffs were individuals who occasionally used the land subject to patent for recreational purposes. The other plaintiffs, Stratman and Burton, held long-term federal grazing leases on land within the area subject to patent, and were also recreational users. We affirm the district court's dismissal of the claims of the first category of plaintiffs, and reverse and remand the dismissal of the remaining recreational claims of Stratman and Burton.

The Alaska Native Claims Settlement Act (ANCSA), enacted in 1971, is intended to settle all aboriginal land claims by Natives and Native groups of Alaska. 43 U.S.C. § 1601; *Doyon, Ltd. v. Bristol Bay Native Corp.*, 569 F.2d 491, 493 (9th Cir.), cert. denied, 439 U.S. 954, 99 S.Ct. 352, 58 L.Ed.2d 345 (1978). ANCSA provides for accomplishment of that settlement through distribution of 40 million acres of land and payment of $962,500,000 to Native villages and regional corporations established pursuant to the Act's provisions. The Act lists many Native villages which are eligible for benefits, provided the Secretary determines

---

1. The action originally challenged two other Native villages, but those claims were separately litigated in another action, see *Koniag, Inc. v. Kleppe*, 405 F.Supp. 1360 (D.D.C.1975), aff'd in part and rev'd in part, 580 F.2d 601 (D.C.Cir.), cert. denied, 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978); those villages have subsequently been found by the Secretary to be ineligible.

they meet specified qualifications. 43 U.S.C. § 1610(b)(1) & (2). ANCSA also provides that villages other than villages specifically enumerated in the Act can qualify as recipient Native villages under certain conditions. 43 U.S.C. § 1610(b)(3).[2] Regulations promulgated by the Secretary of Interior provide for particular kinds of notice and a hearing to determine the validity of each unlisted village's application. 43 C.F.R. § 2651.2(a)(8)–(10).

Woody Island is not listed in the Act as an eligible Native village. Application was made, however, for Woody Island to be declared an eligible village. After an investigation in 1973, Woody Island was found eligible to form a village corporation and determination of that eligibility was published in the Federal Register and several Alaska newspapers in accordance with Department of Interior regulations. None of the plaintiffs received actual notice of the Woody Island village application, however, and none filed objections or participated in any hearings held on the application, which was approved by the Secretary of Interior on March 18, 1975.

After learning of Woody Island's certification and the subsequent incorporation of Leisnoi to select lands for patent, plaintiffs filed this action pursuant to 28 U.S.C. § 1331 in July 1976, claiming that the government's investigation of the application, as required by 43 U.S.C. § 1610(b)(3) and 43 C.F.R. §§ 2651.2(a)(8) & 2651.2(b), had been insufficient and that the village did not qualify as a Native village. In a published opinion, the district court initially dismissed the claims of the recreational users, other than Stratman and Burton, for their failure to exhaust administrative remedies. However it permitted Stratman and Burton, because they had property interests in the land, to amend their complaint and to proceed, notwithstanding their failure to participate in any administrative proceedings. The court determined Stratman's and Burton's record interests entitled them to actual, rather than constructive notice of the certification application when administrative proceedings were pending. *Kodiak-Aleutian Chapter of Alaska Conservation Soc'y v. Kleppe*, 423 F.Supp. 544 (D.Alaska 1976).

[1] At that point, faced with a full-scale trial of the Stratman-Burton claims, Leisnoi quitclaimed any interest in all land subject to Stratman's and Burton's leaseholds, thus mooting any claims based upon economic injury. Upon application of the defendants, the district court withdrew its prior ruling in favor of Stratman and Burton and dismissed their claims on the ground that there no longer existed any "case or controversy" within the meaning of article III of the United States Constitution.[3] The district court, significantly in our view, did not expressly consider the claims of Stratman and Burton as recreational users, apparently agreeing with the defendants that the quitclaim deed eliminated Stratman's and Burton's standing to challenge the certification.

Plaintiffs in this appeal ask us to review both the dismissal of the Stratman-Burton

---

2. 43 U.S.C. § 1610(b)(3) provides:
   Native villages ... shall be eligible for land and benefits under this Act ... if the Secretary ... determines that—
   (A) twenty-five or more Natives were residents of an established village on the 1970 census enumeration date as shown by the census of other evidence satisfactory to the secretary, who shall make findings of fact in each instance; and
   (B) the village is not of a modern and urban character, and a majority of the residents are Natives.

3. Stratman and Burton argue that their economic claims are not moot because other land selections by Leisnoi may threaten harm to their future economic interests in the area. We agree with the district court's ruling that any injury to these generalized economic interests is too speculative to create a case or controversy under article III. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979); *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). See also *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 42–44, 96 S.Ct. 1917, 1926–27, 48 L.Ed.2d 450 (1976).

claims for lack of a case or controversy and the dismissal of the recreational users' claims for failure to exhaust administrative remedies.

With respect to Stratman and Burton, the issue is whether their claims were properly dismissed following the relinquishment by Leisnoi of any claim to the land in which they had economic interests. Its ruling was based upon the defendants' argument that the plaintiffs lacked standing to pursue any claim of damage other than damage to economic interests, and thus could not pursue any remaining claim based on recreational interests.

[2] A threshold question for all the plaintiffs is therefore one of standing. In determining standing, we must consider both constitutional and prudential concerns. To satisfy the constitutional requirement that a "case or controversy" has been made out, the plaintiff must allege that he has suffered injury resulting from the defendant's allegedly illegal action. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). We have concluded that to satisfy this requirement "the plaintiffs must have alleged (a) a particularized injury (b) concretely and demonstrably resulting from defendants' action (c) which injury will be redressed by the remedy sought." *Bowker v. Morton*, 541 F.2d 1347, 1349 (9th Cir. 1976) (footnote omitted). *See also Sierra Club v. Andrus*, 610 F.2d 581, 592 (9th Cir. 1979).

[3] In dealing with standing to assert recreational interests, the Supreme Court in *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972) rejected the argument that only economic interests could provide standing, pointing out that "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society ...." The plaintiffs allege they use the land subject to patent for a multitude of recreational purposes, including hunting, camping, picnicking and photography. This injury is sufficiently particularized; it is clear that the injury results from the defendants' action in removing the land from the public domain; the injury will be redressed by the enjoining of the defendants' removal of the land from the public domain. Thus, we conclude that the plaintiffs have satisfied the constitutional requirements of standing.

Plaintiffs have also satisfied our prudential standing concerns. Plaintiffs' claims are not merely claims of generalized import, but seek to vindicate individual rights. In addition, plaintiffs are raising their own legal interests, rather than the interests of third parties. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979).

Finally, we are satisfied that plaintiffs' claim is within the zone of interests to be protected by the statute pursuant to which the claim arises. *Id.* at 100 n.6, 99 S.Ct. 1607–08 n.6, citing *Association of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1969). In considering whether that claim is within this zone of interests, we look to both the statute and the regulations promulgated under it. *See* B. Mezines, J. Stein & J. Gruff, 5 *Administrative Law* § 50.03 at 50–29 & 30 (1981) (look to statute to determine purpose and class to be protected); B. Schwartz, *Administrative Law* § 153 at 455 (1976). The regulations do not restrict the nature of protests which may be filed but rather provide that "any interested party" may protest the village certification. 43 C.F.R. § 2651.2(a)(9). The Act itself indicates that Congress was well aware of the recreational interests of users of public land, and specifically provided for retention of public access easements in the lands selected by Native villages in order to preserve and protect recreational interests in the remaining federal lands. 43 U.S.C. § 1616(b). We are thus persuaded that recreational interests are within the zone protected by the statute and we reject the defendants' argument that the recreational

claims should have been dismissed for lack of standing.

[4] We now turn to the district court's original determination that those plaintiffs (other than Stratman and Burton) whose interests were never more than recreational should have exhausted administrative remedies. The plaintiffs argue against imposition of such a requirement on the ground that they did not have actual notice of the village's application and thus could not have utilized administrative remedies. There are, however, a vast number of occasional users of this land and actual notice to all would have been impossible. Notice was provided by publication in the Federal Register and several Alaska newspapers. The district court correctly held that neither the government nor the village was required to give actual notice to all potential recreational users, and that the publication and other notice requirements set forth in the regulations, 43 C.F.R. § 2651.2(a)(8), did not deny due process to those whose only connection with the land was, at the time of published notice, simply that of recreational users. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317, 70 S.Ct. 652, 658, 94 L.Ed. 865 (1950); North Am. Pharmacal, Inc. v. HEW, 491 F.2d 546, 551-52 (8th Cir. 1973); 44 U.S.C. § 1508. Thus, while those with recreational interests have standing to challenge the agency action in question, they may not be relieved of the prerequisite of exhaustion of administrative remedies by virtue of lack of actual notice.

[5] Stratman and Burton, however, were not merely recreational users at the time of Woody Island's application. They had record interests in land which was subject to allotment and thus were potentially affected by the village certification at the time of the application. Given the ease with which such record interests could have been ascertained, we agree with the district court's original determination, 423 F.Supp. at 547, that Stratman and Burton were entitled to actual notice of the proposed certification. Schroeder v. City of New York, 371 U.S. 208, 212-13, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962); Walker v. City of Hutchison, 352 U.S. 112, 116, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956); Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S. at 314, 70 S.Ct. at 657. Since they did not receive such notice, they should not be barred by exhaustion requirements.[4] Wills v. United States, 384 F.2d 943 (9th Cir. 1967), cert. denied, 392 U.S. 908, 88 S.Ct. 2052, 20 L.Ed.2d 1366 (1968).

The difficult remaining question is the effect to be given Leisnoi's subsequent disclaimer of any interest in the property encompassed by Stratman's and Burton's leases. Had such a disclaimer occurred prior to the application for certification, their interests probably would not have differed from those of any other recreational user. However, the disclaimer did not occur until after the administrative proceedings had concluded and hence after the opportunity to participate in the original determination had been lost. Since the administrative proceedings were not limited to the consideration of economic interests, a strong argument can be made that parties like Stratman and Burton, who were originally entitled to notice of the application and an opportunity to participate in the administrative hearings, and who were not given such notice, should be permitted to air all of their grievances, not merely economic grievances, in a judicial forum.

[6, 7] Application of the doctrine of exhaustion of administrative remedies to the Stratman-Burton claims requires a balancing of factors, however. Judicially developed exhaustion requirements, which are necessarily susceptible to judicial refine-

---

4. Defendants argue that because the statute provides that the allotment of land to the Native village shall be subject to any valid existing rights, 43 U.S.C. § 1613(g), there need be no notice. We disagree, for those with leasehold interests should receive notice in order to protect the rights intended to be preserved by the statute.

ment and modification, must be tailored to fit the peculiarities of an administrative system and the particular facts of each case. *Montgomery v. Rumsfeld*, 572 F.2d 250, 253 (9th Cir. 1978). A balancing analysis considers "both the interests of the agency in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances." *Id. See also McKart v. United States*, 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *SEC v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). In this case, Stratman and Burton, who were originally entitled to notice and an opportunity to participate in the administrative proceedings, did not deliberately flout or seek a premature interruption of the administrative process. Contrast *McGee v. United States*, 402 U.S. 479, 488, 91 S.Ct. 1565, 1571, 29 L.Ed.2d 47 (1971) (deliberately side-stepped administrative proceedings); *Pattillo v. Schlesinger*, 625 F.2d 262, 266 (9th Cir. 1980) (complete relief available through existing administrative procedures). The agency, on the other hand, undoubtedly had an interest and expertise in this basically factual dispute.

The district court, in finally disposing of this case on jurisdictional grounds, did not consider Stratman's and Burton's remaining recreational interests and therefore did not weigh the various alternatives which might be open to it in this regard. The judicial requirement of exhaustion of administrative remedies is not mechanically applied and we believe the question should be considered initially by the district court; we remand for such consideration. *SEC v. G.C. George Sec., Inc., supra*, 637 F.2d at 688 n.3; *Montgomery v. Rumsfeld, supra*, 572 F.2d at 254.

A remand is particularly appropriate here because the government, after the judgment was entered, represented to this Court that it intended to conduct further administrative inquiries into the qualifications of Woody Island. If such proceedings have occurred, plaintiffs may well have been given some opportunity to present administratively the matters which they sought to litigate in a judicial forum.[5] Any pending or intervening administrative action should be taken into account by the district court in determining what, if any, further judicial proceedings in connection with Stratman's and Burton's claims are warranted.

Affirmed in part; reversed and remanded in part.



---

UNITED STATES of America, Plaintiff-Appellee,

v.

Wayne Franklin TRAYLOR, Ardis May Traylor, and John Horace Andrews, Defendants-Appellants.

Nos. 80-1616, 80-1617.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1981.

Decided Sept. 21, 1981.

Defendants were convicted in the United States District Court for the Western

---

5. Although plaintiffs' brief contains extensive discussion of claimed irregularities in the application, neither this Court nor the district court has considered the merits of their challenges. Defendants' motion to strike that portion of plaintiffs' brief is denied as moot.

[21] The denial of a motion for new trial rests in the sound discretion of the trial court and this court will not disturb the trial court's decision except in exceptional circumstances to prevent a miscarriage of justice. *Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 442 (Alaska 1989). We conclude that the grounds asserted by Shanks in her motion for new trial did not amount to attorney misconduct, nor did the superior court's decision to deny the motion result in a miscarriage of justice.

V. Conclusion

The superior court erred in dismissing Shanks' strict liability design defect claim. The superior court also erred in failing to present Shanks' strict liability failure to warn claim to the jury. However, it acted properly in declining to instruct the jury on Shanks' negligence *per se* claim and in denying her motion for new trial based on attorney misconduct.

The judgment of the superior court is REVERSED and REMANDED for further proceedings consistent with this opinion. The award of attorney's fees is VACATED.



LEISNOI, INC., Appellant,

v.

Omar N. STRATMAN; Mabel Marie Rice; Antoinette Burton and James Burton, Appellees.

Nos. 5–3774 to 5–3776, 5–3781.

Supreme Court of Alaska.

June 26, 1992.

Rehearing Granted in part, Denied in part and Opinion Modified, July 24, 1992.*

Cattle ranchers sued to specifically enforce settlement agreement negotiated with surviving native village corporation against demerged village corporation reconstituted after successful demerger litigation. The Superior Court, Third Judicial District, Anchorage, Karen L. Hunt, J., ordered specific performance and defendant appealed. The Supreme Court, Compton, J., held that defendant was not bound by settlement.

Reversed.

Moore, J., dissented and filed opinion.

1. Specific Performance ⚖=133

While Supreme Court will generally defer to trial court's balancing of equitable principles, in reviewing decision to specifically enforce contract, Supreme Court will review de novo the legal foundations of trial court's decision.

2. Indians ⚖=32(1)

When state issued certificate of merger, surviving native village corporation received all rights, powers, interests and obligations of merged village corporations and had actual authority to convey rights to land and settle claims. AS 10.05.405 (1957).

3. Lis Pendens ⚖=25

Under doctrine of lis pendens, native village corporation was not bound by settlement reached with ranchers concerning surface rights while corporation was merged with another corporation, where ranchers were aware of pending demerger litigation and possibility that former corporation would be reconstituted and its land selection rights returned.

4. Lis Pendens ⚖=25

Under ancient doctrine of lis pendens, persons acquiring interest in property that is subject of litigation are bound by, or entitled to the benefit of, subsequent judgment.

5. Lis Pendens ⚖=25

Successor in interest of property, that is the subject of a pending action to which transferor is a party, is bound by and enti-

---

* Justice Moore, dissents. He would grant the petitions for rehearing.

tled to the benefits of the rules of res judicata to same extent as the transferor.

### 6. Indians ⚖=32(1)
Surviving native village corporation, involved in demerger litigation, had no authority to agree to future conveyance, of assets of merged corporation to ranchers who had knowledge of the demerger litigation.

### 7. Lis Pendens ⚖=1
Party's erroneous forecast of future result of litigation does not affect operation of lis pendens doctrine.

### 8. Lis Pendens ⚖=24(1)
Purchaser of land who has notice of litigation affecting the land and notice of the relief claimed in the litigation is bound by the litigation irrespective of likelihood of adverse outcome.

### 9. Corporations ⚖=583
Proper relief for materially misleading solicitation which results in corporate merger may include setting aside the merger.

---

Edward A. Merdes, Law Offices of Merdes & Merdes, P.C., Fairbanks, for appellant.

Roger E. Henderson, Houston & Henderson, Anchorage, for appellee Omar N. Stratman.

William Grant Stewart, McCarrey & McCarrey, Inc., Anchorage, for appellee Mabel Marie Rice.

Alan L. Scmitt, Jamin, Ebell, Bolger & Gentry, Kodiak, for appellees Antoinette Burton and James Burton.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

In late 1985 and early 1986, Kodiak Island residents Omar Stratman, Mabel Marie Rice, Antoinette Burton and James Burton (Plaintiffs) instituted separate actions against Leisnoi, Inc. (Leisnoi) and Koniag, Inc. (Koniag) seeking specific performance of a settlement agreement which they had negotiated with Koniag. At the time of negotiation and signing of the settlement, Leisnoi had merged with Koniag and did not exist as a separate corporate entity. Later, the merger was set aside. Leisnoi claimed it was not bound by Koniag's settlement agreement with the Plaintiffs. The superior court ruled summarily that Leisnoi was bound by the settlement as a matter of law. After a trial on the merits, it awarded the Plaintiffs specific performance of the agreement. Leisnoi appeals. We conclude that the settlement agreement cannot be enforced against Leisnoi, and therefore reverse.

### I. FACTS AND PROCEEDINGS [1]

Omar Stratman,[2] Antoinette Burton and James Burton were cattle ranchers on Kodiak Island. Stratman held federal grazing leases encompassing roughly 45,400 acres. The Burtons were 50% shareholders in the Kodiak Cattle Co., which held a federal grazing lease to 21,005 acres.[3] Pursuant to the Alaska Statehood Act the State of Alaska selected the lands subject to the leases. Administration of the three leases was eventually transferred to the state. Later, Congress passed the Alaska Native Claims Settlement Act (Act or ANCSA), 43 U.S.C.A. §§ 1601–42 (West 1986 & Supp. 1992).

In 1974 Leisnoi was certified under ANSCA as a village corporation for the village

---

1. Because of the factual complexity of this case, a schedule showing the sequence of relevant events has been added as an Appendix.

2. Mabel Marie Rice is Omar Stratman's former spouse. Her interest in this litigation derives solely from Stratman's interest.

3. In 1979, the Burtons transferred their interest in the Kodiak Cattle Co. They then purchased the 35 acre tract on which they presently reside. Their interest in the present litigation concerns land surrounding the 35 acre tract which falls outside of the grazing leases and which is described by the agreement which became known as the Stratman Agreement.

of Woody Island. Leisnoi was eligible to select over 115,000 acres of public land as its entitlement under the Act. *See* 43 U.S.C.A. § 1613(a), (f) (West 1986). Under ANCSA, however, title to the surface estate would be severed from the subsurface estate. Leisnoi would receive title to the surface estate it selected; Koniag, the ANCSA regional corporation for the Kodiak Island region, would receive title to the subsurface estate as long as the lands were not part of a National Wildlife Refuge.[4] 43 U.S.C.A. § 1613(f) (West 1986).

Pursuant to its ANCSA entitlement, Leisnoi selected some land which partly overlapped the land subject to Stratman's and the Burtons' grazing leases.[5]

*The Decertification Litigation*

In 1975 Antoinette Burton and others, in an association which eventually became known as the Citizens Action Group, met to discuss native land selections in the Kodiak area. The group learned that Woody Island and several other villages which were not originally named in ANCSA had claimed ANCSA village status. The group also learned that, upon certification, these villages could claim up to 800,000 acres of land on Kodiak Island.

In 1976 Omar Stratman, Antoinette Burton and others in the Citizens Action Group filed suit in federal district court against the Secretary of the United States Department of the Interior, seeking a permanent injunction preventing the transfer of any land patents from the United States to Leisnoi and several other ANCSA village corporations. The group alleged that injury to its recreational use of public lands would result from any such transfer. Stratman and Burton also alleged that they would incur a direct economic injury from any transfer as federal grazing leaseholders. The Plaintiffs amended their complaint in 1977 and joined as defendants Koniag, Leisnoi and other corporations which had claimed ANCSA village status. Although the Plaintiffs did not specifically request decertification of Leisnoi as an ANCSA-recognized corporation, this litigation became known as the decertification litigation.

In 1978 the federal district court dismissed for failure to exhaust administrative remedies claims based on injury to recreational use of public lands. Stratman's and the Burtons' remaining claims based on economic injury to their leaseholds were later dismissed for lack of a "case or controversy" after Leisnoi relinquished its ANCSA claims to the lands overlapping the grazing leases.

In 1981, however, the United States Court of Appeals for the Ninth Circuit ruled that allegations of potential injury to recreational uses were sufficient to satisfy constitutional requirements for standing to protest the land transfers. It therefore reinstated the decertification litigation as to Stratman and the Burtons.[6] *Stratman v. Watt*, 656 F.2d 1321 (9th Cir.1981).

*The Demerger Litigation*[7]

Following the federal district court's dismissal of the decertification litigation, but prior to the federal circuit court's decision, the shareholders of Leisnoi and five other ANCSA villages in the region voted to merge their village corporations with Koniag, the regional corporation. On December 2, 1980, prior to the mergers, a member of the Afognak Native Corporation (Afog-

---

4. None of the lands actually selected by Leisnoi were wildlife refuge lands.

5. Leisnoi's selections rights, however, were subordinated to the pre-existing grazing leases, and any conveyance of the lands to Leisnoi would be subject to the terms of those leases. Koniag's right to the subsurface estate was similarly subject to the pre-existing grazing leases. *See* 43 U.S.C.A. § 1613(g) (West 1986).

6. After this ruling, the Citizens Action Group met for a last time. The group had achieved most of its goals, and only Stratman and the Burtons were willing to continue the litigation. Stratman and the Burtons personally guaranteed payment of all past and future fees and costs, and the group agreed that Stratman and the Burtons could seek to settle the case on their own if possible.

7. For convenience, we adopt the convention of the parties in referring to the derivative suit brought by Nicholas Shuravloff against Koniag, Leisnoi and others as the "demerger litigation."