whether the government had improvidently certified a figment of a developer's imagination

as a Native village entitled to benefits under the Alaska Native Claims Settlement Act--was a

matter best addressed in the first instance by the certifying agency, the Interior Board of

Land Appeals ("Agency"). Consequently, the Court "remanded" the case to the Agency to

allow the parties an evidentiary hearing to determine once, for all, and forever, whether

Lesnois is real or imaginary, and if imaginary, whether Lesnois is improvidently-allocated

land from the federal government.

     Had this decision been made twenty years ago when I was on the Alaska Superior

Court, I would have stayed further proceedings and retained jurisdiction. In those days many

of my cases were inactive, benefiting or suffering from indefinite postponements stipulated to

by the attorneys, if not always the parties. The enactment of the federal Civil Justice Reform

Act of 1990[2] heralded a new policy in federal courts. Today, in this Court, no case is

allowed inactivity. Every case should be expeditiously moving toward settlement,

involuntary dismissal, or trial. As a result, it is not my practice to exercise discretion in

favor of postponements, stays, continuances, or extensions, unless other alternatives are

unavailable. Where the parties indicate that some action by some other body is necessary to

bring a case to completion, it is my practice to dismiss without prejudice to refiling when the

---

(...continued)
money from needy Alaskans. Stratman sees himself as Robin Hood, the defendants see him
as Blackbeard. The government defendants have chosen to emulate Jane Austen's
Mr. Bennett.

    [2] Pub. L. No. 101-650, 104 Stat. 5089 (1990), codified as amended as 28 U.S.C.
§§ 471-482.

ORDER                         2

F:\HOME\JUDGES\DOCS\SHARED\CIV\A76-0132.001

other action is completed.  The only obstacle, intervening statutes of limitation, is assumed

subject to equitable tolling while all i's are dotted and t's crossed.

It was never my expectation that this case would finally be resolved at the

administrative level.  Once an agency decision was reached, I assumed that the parties would

file a new action and return to federal court.  Nor have I ever expected that some other judge

would ultimately resolve this case.  In the Court's practice, when old dogs bark anew they

are returned, even if bearing a new pedigree, to the kennel from which they escaped.

Finally, not wishing to prejudice the Agency, I decline to make any findings of fact

or conclusions of law regarding the issues that most divide the parties.  It appears that

Stratman has a good, but by no means conclusive, case that the Agency initially erred.

Whether the Agency erred or not is an issue I prefer to decide at a later time after I have the

benefit of the Agency's decision.  By the same token, what remedy is appropriate in 1996 for

errors committed in 1976 is an issue not easily resolved.  It is not clear that equity would

require the same response to conclusions reached in 1996 that it would have required had

those conclusions been reached in 1976.

In conclusion, the dismissal in this case was without prejudice to a new action after

the Agency reaches a decision.  It was, nonetheless, a dismissal.[3]  Consequently, the Court

has no action pending before it which would support a motion for a preliminary injunction.

In fear, given the history of this case, that this comment might be viewed as an invitation to

---

[3] The whole case was remanded to the Agency to permit exhaustion of all available
administrative remedies and the exercise of primary jurisdiction on any question about which
the Agency's expertise would be helpful.

ORDER                                              3
F:\HOME\JUDGES\DOCS\SHARED\CV\A76-0132.001

file a new action before the Agency acts, and that someone might view that invitation as fortified by the Court's comments on equitable tolling, it should be pointed out that if the Court had jurisdiction to grant a preliminary injunction it would not do so. Applying the Ninth Circuit's sliding scale, I find that there are significant issues in dispute, and I am not satisfied that the balancing of the hardships tilts in either party's favor. Thus, no action is the preferred action at this time. In part, this decision turns on my conclusion that Stratman has not proved his right to assert the public interest. At this stage, it appears that the United States should be permitted to speak for the public interest in the present, even if the Agency misjudged Lesnois' claims in the past. Further, while the Court has dismissed the parties' assertions of bad faith against each other as so much background noise, it is not prepared to find on this record, which is voluminous, that any party's hands are so clean that equity should intervene on his or her behalf. While the Court is prepared to consider each party's claims anew after the Agency acts, for the present they will be left where the Court found them.[4]

---

[4] Given Congress' enthusiasm for "private attorneys general," much litigation ensues in which greed, not the public interest, motivates the plaintiff and the ultimate settlement, nominal damages and large attorney's fees, might lead an objective third party to see scandal. For a judge to intervene in such cases to chill what Congress might desire could undermine congressional intent and violate the separation of powers. This case is more problematical than the typical "strike suit" and the issue of "clean hands" more ambiguous.

ORDER                                4

F:\HOME\JUDGES\DOCS\SHARED\CV\A76-0132.001

**IT IS THEREFORE ORDERED:**

The motion for a preliminary injunction at **Docket No. 317** is **DENIED** for lack of

jurisdiction.   There is no action currently pending between these parties in this Court.

The motions to strike at **Docket Nos. 319, 321, and 324** are **MOOT** and are

therefore **DENIED**.  The motions to stay briefing at **Docket Nos. 320, 322, and 323 are**

**MOOT** and are therefore **DENIED.**[5]

Dated at Anchorage, Alaska, this _24_ day of September, 1996.

JAMES K. SINGLETON, JR.
United States District Judge

---

[5] The Court has examined Stratman's claim that the Court's treatment of this case
coupled with the Ninth Circuit's holding on appeal effectively denies him the right
guaranteed by 28 U.S.C. § 1292(a)(1) to an immediate appeal of an order denying a
preliminary injunction.  Consequently, the Court has considered whether to grant a partial
reconsideration, pursuant to Rule 60 of the Federal Rules of Civil Procedure, to reinstate the
judgment dismissing this case to permit an immediate appeal.  No such order will be entered.
It is the considered view of this Court that the Agency should act before equity intervenes
and that until the Agency acts any intervention would be unwise.  Stratman's argument that if
action is withheld trees will die unmourned and the beauty of Kodiak Island will be subjected
to aesthetic blight until the end of time, has been carefully evaluated, but given uncertainty
about Stratman's clean hands, the Court declines to intervene.

ORDER                          B. LANDON (AUSA)              5
A/b-0132--CV (JKS)             T. BURTON
--------------------------------
E. BOYKO (BOYKO)
R. MIDDLETON (MIDDLETON)
K. SCHNEIDER

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

LEISNOI, INC.,                    )
                                  )
               Plaintiff,         )
                                  )
     vs.                          )
                                  )
OMAR STRATMAN,                    )
                                  )
               Defendant.         )
_____ )

Case No. 3AN 96-00502 CI

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO DISMISS

This matter is before the court on Plaintiff's Motion for Summary Judgment seeking to quiet title in Plaintiff in land it received under the Alaska Native Claims Settlement Act ("ANCSA"). Defendant has opposed Plaintiff's Motion, and has filed a cross-motion seeking to dismiss Plaintiff's suit, or in the alternative to stay proceedings pending a decision by the Interior Board of Land Appeals in an action involving these same parties. The parties have filed pleading after pleading in this court. The parties have also filed numerous pleadings before other judges in state court and the federal courts over the last twenty years on related issues. Numerous decision have been issued by the state and federal courts. The pleadings filed in support of the motions addressed in this order were numerous, inches thick, and never ending. After nine months worth of pleadings[1], with the most

---

[1]  Plaintiff's Motion for Summary Judgment, filed March 22, 1996; Defendant's Motion to Dismiss , or in the Alternative,Stay proceedings (and Opposition to Motion for Summary Judgment, filed April 5, 1996; Reply to Opposition to Motion for Summary Judgment,

recent "supplemental pleading" having been filed December 16, 1996, this court hereby issues the following order.

## I.    FACTS

### Background

Plaintiff Leisnoi was certified in 1974 under the Alaska Native Claims Settlement Act as a village corporation for the village of Woody Island.[2] Under ANCSA, Leisnoi was eligible to select over 115,000 acres of public land as an entitlement. A portion of the land Leisnoi selected overlapped land subject to Stratman's grazing leases. Leisnoi's selection rights were subordinated to Stratman's grazing leases.

---

filed April 15, 1996; Plaintiff's Opposition to Motion for Stay of Quiet Title Action, filed April 19, 1996; Opposition to Motion to Dismiss, filed April 23, 1996; Defendant Stratman's Reply to Leisnoi's Opposition to Stratman's Motion to dismiss, filed April 26, 1996; Plaintiff's Surrebuttal Memorandum, filed May 22, 1996; Non-Opposition to Leisnoi's Motion to File Surrebuttal Memorandum and Reply to Same, filed May 23, 1996; Notice of Supplemental Authorities Leisnoi May Discuss at Oral Argument, filed May 29, 1996; Supplemental Memorandum Regarding Issues Set for Oral Argument on August 7, 1996, filed July 23, 1996; Plaintiff's Response to Omar Stratman's Supplemental Memorandum, filed July 29, 1996; Oral Argument held on August 7, 1996; Notice of Leisnoi Having Obtained Another Final Judgment Against Omar Stratman in State Court, filed August 7, 1996; Notice of Filing Corrected Exhibit "L", filed August 19, 1996, Notice of Federal Court Order (filed by Defendant), filed October 3, 1996; Response to Stratman's Unauthorized Supplemental Brief, filed October 3, 1996; Defendant Stratman's Reply to Leisnoi's "Response to Stratman's Unauthorized Supplemental Brief, filed October 14, 1996; Defendant's Notice to Court that Leisnoi Now Concedes that it is the Owner of "Indian Lands", filed October 28, 1996; Plaintiff's Response to Stratman's Notice to Court, filed November 6, 1996; Stratman's Second Notice of Supplemental Authority, filed December 4, 1996; Leisnoi's Response to Stratman's Second Notice of Supplemental Authority, filed December 16, 1996.

[2] Woody Island is adjacent to Kodiak Island.

- 2 -

In 1976, Stratman and others brought an action in federal court against the Secretary of the Interior seeking an injunction preventing the transfer of any land patents from the United States to Leisnoi and several other ANCSA village corporations. The plaintiffs alleged that injury to their recreational use of public lands could result from any such transfer, and that they would incur a direct economic injury from any transfer as federal grazing leaseholders.

In 1978, the claims based on recreational losses were dismissed for failure to exhaust administrative remedies. The claims based on economic injury were dismissed after Leisnoi relinquished its claims which overlapped Stratman's grazing land. In 1981, the 9th Circuit reinstated the claims based on recreational injury. As part of this litigation, Stratman apparently sought "decertification" of Leisnoi as a village corporation.

In 1980, Leisnoi merged with a native regional corporation, Koniag, Inc. After the 9th Circuit reinstated the decertification case, Koniag worked out a settlement with Stratman. Under the terms of the settlement, Koniag agreed to quitclaim 17,000 acres of land to Stratman. Stratman agreed to pay Koniag $233,000 and agreed to drop the decertification suit. The settlement collapsed after a Leisnoi shareholder brought a successful derivative action which "de-merged" Leisnoi and Koniag. Stratman continued to pursue his federal decertification litigation against Leisnoi. Recently, federal district court judge James K.

- 3 -

Singleton remanded Stratman's suit to the Interior Board of Land Appeals ("IBLA")[3] to allow it to consider the propriety of Leisnoi's certification.

### The Current Action

As part of their allotment under ANCSA, Leisnoi received a piece of land on Kodiak known as Termination Point.[4] Leisnoi wishes to sell the land to the Exxon Valdez Oil Spill Trustees ("EVOS"). While EVOS is apparently interested in the land, it is reluctant to complete the purchase because Stratman had filed a lis pendens in federal court on Termination Point during the pendency of the federal suit. Although the lis pendens has since been removed when the federal court case was dismissed by the Ninth Circuit, Stratman's attorney has written to EVOS suggesting that if Stratman's decertification suit is successful, any title EVOS receives to property from Leisnoi will be questionable.[5] Because of the cloud this pending litigation casts on Leisnoi's title, EVOS

---

[3] The IBLA "is part of the Office of Hearings and Appeals which is a component of the Office of the Secretary of the Interior. It is authorized to hear, consider, and determine matters within the jurisdiction of the Department of the Interior ... ." Harrison v. Hickel, 6 F.3d 1347, 1353 n.3 (9th Cir. 1993) (citation omitted).

[4] "Termination Point" is more particularly described as Tract C in Township 27 South, Range 19 West, Kodiak Recording District, Third Judicial District, State of Alaska. Plaintiff's Opposition to Defendant's Motion for Stay of Quiet Title Action at page 1.

[5] In addition, Stratman argues that the land will be returned to the public if he is successful. Consequently, it will be unnecessary for EVOS to purchase it; it will be protected from development by the federal government.

- 4 -

is reluctant to purchase Termination Point.   EVOS has offered to put the purchase money in escrow, an option which is unacceptable to Leisnoi.   Because Leisnoi is unwilling to put the money in escrow, it initiated this Alaska State court action to:

- quiet title in Termination Point in Leisnoi,

- remove any clouds from their title,

- hold that any claimed adverse interests of Stratman are naught and

- bar any future claim of Stratman to Termination Point.

Stratman answered Leisnoi's Complaint and removed the action to federal district court.   He alleged that the controversy arose under federal law, and therefore jurisdiction lay with the district court.   Federal district court Judge James Singleton remanded the case to the Alaska superior court, noting that "this is an action to quiet title under state law which does not present a federal question."

     Leisnoi has moved for summary judgment arguing that Stratman has no standing to directly challenge Leisnoi's title in Termination Point, and that he cannot affect it indirectly through the IBLA administrative proceeding.  Leisnoi claims that even if the IBLA were to decide that Leisnoi was a "phantom" village, the patents of land from the federal government have -- through time -- become unassailable.  Stratman has moved to have Leisnoi's claim dismissed under a number of theories including lack of subject matter jurisdiction and failure to join an indispensable party. Stratman requests in the alternative that this court stay

- 5 -

proceedings in this action pending the IBLA's decision.

## II. __STANDARDS OF REVIEW__

Defendant has filed a motion to dismiss pursuant to Alaska Civil Rule 12(b)(6). Plaintiff has moved for summary judgment pursuant to Alaska Rule 56. If the court considers materials outside of the pleadings, the motion to dismiss is automatically converted to a motion for summary judgment. __McAdoo v. Diaz__, 884 P.2d 1385, 1387 n.2 (Alaska 1994). In order to justify summary judgment, not only must it be shown that there is no genuine issue of fact to be litigated, but also that the moving party is entitled to judgment as a matter of law. __Whaley v. State__, 438 P.2d 718 (Alaska 1968). The party opposing a motion for summary judgment need not establish that it will prevail at trial, but merely that there exists a genuine issue of fact to be litigated. __Alaska Rent-a-Car, Inc. v. Ford Motor Co.__, 526 P.2d 1136 (Alaska 1974). All inferences of fact from proffered proofs must be drawn in favor of the non-moving party. __Id__.

## III. __STRATMAN'S MOTION TO DISMISS__

### Alaska State Court Subject Matter Jurisdiction

As an initial matter, this court must determine whether it has jurisdiction over the subject matter of this dispute. Based on the briefs submitted by both parties, it is clear that the dispute involves questions of federal law. Leisnoi was certified by the federal government as a native village corporation and was

- 6 -

00141

patented the land at issue pursuant to ANCSA.  Stratman disputes
the propriety of the certification and of the conveyance of the
land.  Consequently, Leisnoi's claim to the land, and Stratman's
dispute of that claim will depend on interpretation and application
of federal statutes.  Where Congress has not specifically withdrawn
jurisdiction over a federal claim from state courts, or granted
exclusive jurisdiction to the federal courts, a state court must
exercise jurisdiction over a federal claim.    See, Claflin v.
Houseman, 93 U.S. 130, 136 , 23 L.Ed. 933 (1876); Mondou v. New
York, N.H. & H.R. Co., 223 U.S. 1, 32 S. Ct. 169, 56 L.Ed. 327
(1912).    But, the federal government has reserved to itself
"plenary and exclusive power to regulate Indian affairs. The state
courts acquire jurisdiction over such disputes only to the extent
that Congress explicitly provides." State of Alaska v. Aqli, 472
F.Supp. 70, 72 (D.Alaska 1979) (citations omitted).   Therefore,
before this court may exercise jurisdiction over this dispute, it
must "find a jurisdictional basis in the federal acts giving
Alaska's courts the power to adjudicate rights under the Alaska
Native Claims Settlement Act." Calista Corp. v. DeYoung, 562 P.2d
338, 340 (Alaska, 1977).

        28 U.S.C. Section 1306(a)[6] ("1306(a)") provides state

------------------------------------------------------------

[6] 28 U.S.C. Sec. 1360 reads in relevant part:
(a) Each of the States listed in the following table shall have
jurisdiction over civil causes of action between Indians or to
which Indians are parties which arise in the areas of Indian
country listed opposite the name of the State to the same extent
that such State has jurisdiction over other civil causes of action,
and those civil laws of such State that are of general application
to private persons or private property shall have the same force
and effect within such Indian country as they have elsewhere within

- 7 -

courts with jurisdiction; it is a broad Congressional grant of jurisdiction to state courts over disputes involving Indians. In this instance, Stratman maintains that there is an exception to 1360(a)'s broad jurisdictional grant which is found in 28 USC Sec. 1360(b) ("1306(b)").[7]

1360(b) limits the general grant of jurisdiction contained in 1360(a).   Under 1360(b), state courts have no jurisdiction to adjudicate the ownership or right to possession of land "belonging to any Indian[8] ... that is held in trust[9] ... or is subject to a restriction against alienation imposed by the United States."   28 USC Sec. 1306(b).   Stratman claims two federal statutes, 43 USC Sec. 1621(a) and 28 USC Sec. 1636(d)(1)(A), place restrictions against alienation on Leisnoi's lands, and therefore this court lacks jurisdiction to adjudicate ownership or right to

---

the State ... .

The table which follows lists Alaska and the Indian country affected as "All Indian Country within the Territory."

[7] 28 USC Sec. 1360(b) reads in relevant part:
Nothing in this section shall authorize the alienation, ... of any real ... property, ... belonging to any Indian or Indian tribe, band or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; ... or shall confer jurisdiction upon the State to adjudicate, ... the ownership or right to possession of such property or any interest therein.

[8] The parties disagree over whether Leisnoi is an "Indian" or "Indian Band" for purposes of this statute.   Leisnoi says that it isn't, therefore the statute does not apply.   The court need not reach that issue in light of its interpretation of the "restrictions against alienation" phrase.

[9] Defendant concedes that the land Leisnoi received under ANCSA is not trust land.   Defendant's Reply to Opposition to Motion to Dismiss at page 2, n.1.

- 8 -

possession of those lands.  Under 43 USC Sec. 1621(a), "none of the
lands granted [under ANCSA to a] Village Corporation ... shall be
subject to any contract which is based on a percentage fee of the
value of all or some portion of the settlement granted by this
chapter ... ."  In other words, Stratman explains, 1621(a)
prohibits Leisnoi from conveying its lands in exchange for
services.  In addition 28 USC Sec. 1636(d)(1)(A) exempts lands
conveyed pursuant to ANCSA from various forms of "involuntary
alienation" such as adverse possession.  Stratman argues that these
two sections of the U.S. Code are restrictions on alienation
imposed by the United States.  Stratman concludes that because of
these restrictions, 1360(b) precludes state court jurisdiction over
any action involving real property patented to Leisnoi under ANCSA.

      Because the provisions of the United States Code which
Stratman interprets as restrictions against alienation apply to all
land patented to native corporations pursuant to ANCSA, Stratman's
interpretation of the law would mean that Alaska State Courts lack
jurisdiction over all ANCSA land.  Such an expansive interpretation
of the law hardly squares with the drafter's intent.  The purpose
of ANCSA was to settle all native claims "rapidly, with certainty,
... without creating a reservation system or lengthy wardship or
trusteeship ... ."   43 USC Sec. 1601(b).  There is further
legislative history which bolsters the conclusion that Congress
intended ANCSA lands to be freely alienable, no different from
other land in the state.  See, S. Rep. No. 92-405, 92nd Cong., 1st
Sess. 80 (1971) ("The settlement of Alaska native claims is to be

- 9 -

00144

final and complete and the present legislation intends to avoid prolonged legal or property distinctions or implications of wardship based upon race.   Accordingly, the assets granted in settlement of the claims will be, or will rapidly become, ordinary and unrestricted forms of property.").   In light of ANCSA's legislative history, it appears that Stratman's expansive interpretation of the law is flawed.

Section 1360(b) refers to "restrictions against alienation." The code provisions cited by Stratman are protections from involuntary alienation, and are not restrictions against Leisnoi's ability to convey its lands.  Compare, Ollestead v. Native Village of Tyonek, 560 P.2d 31, 34 (Alaska 1977)(provision in land set aside stating that "no authority shall be granted to sell mortgage or lease for a period exceeding ten years" qualifies as a restriction against alienation).  43 USC Sec. 1621(a) does not restrict Leisnoi's ability to enter into a contract with a percentage fee based on the value of its land, but it does prohibit anyone from placing a lien on Leisnoi's land based on such a contract.  28 USC Sec. 1636(d)(1)(A) exempts Leisnoi's land from a variety of legal processes, but does not restrict its ability to alienate its land.   Neither of these provisions qualify as restrictions against alienation.  Because Leisnoi's land is freely alienable and is not land held in trust, Section 1360(b) is not applicable, and the Termination Point property falls within the more general grant of jurisdiction found in 1360(a).  Consequently, this court finds that it has jurisdiction to hear this quiet title

- 10 -

00145

action.

<u>Collateral Estoppel, Res Judicata, Law of the Case,</u>
<u>the "Single Action Rule"</u>

1.    Collateral Estoppel, Res Judicata

        Stratman filed a lis pendens on the Termination Point property prior to bringing his action in federal court.  While that action was in federal court, Leisnoi filed a motion to expunge Stratman's lis pendens.   In an interlocutory order, the federal judge denied Leisnoi's motion to expunge.  Stratman asserts that the federal district court, by its denial of Leisnoi's motion, upheld the validity of his "title clouding ... lis pendens [and] pending decertification litigation," and therefore res judicata bars Leisnoi's action to quiet title.

        Under the doctrine of res judicata and collateral estoppel, in certain circumstances a court will decline to revisit an issue which has already been litigated.

        The following circumstances must exist before
        a court can properly apply the doctrine [of
        collateral estoppel]:

        1.    The plea of collateral estoppel must be
              asserted against a party or one in privity with
              a party to the first action;

        2.    The issue to be precluded from relitigation by
              operation of the doctrine must be identical to
              that decided in the first action;

        3.    The issue in the first action must have been
              resolved by a final judgment on the merits.

<u>Murray v. Feight</u>, 741 P.2d 1148, 1153 (Alaska 1987) (citations omitted).  The first element of the test is met; the parties in

- 11 -

00146

this action are identical to the parties in the prior federal court action.  The second and third elements of the test, however, are not met.

The prior federal action which Stratman refers to involved the propriety of Leisnoi's certification as a Village Corporation under ANCSA.  This court has been asked to determine whether Stratman's decertification suit casts a cloud over Leisnoi's title to Termination Point; it has not been asked to determine whether Leisnoi was validly certified.  Because this case concerns Leisnoi's title to the land regardless of the propriety of its certification as a Village Corporation, the issues are clearly not <u>identical</u> to those in the prior federal cases.

Under the third element of the test, the prior action must have been resolved by a final judgment on the merits. Stratman asserts that the federal court's interlocutory orders denying Leisnoi's motion to expunge Stratman's lis pendens qualify as "final judgments."  By definition, an interlocutory order is an interim order, not a final judgment.  <u>See</u>, <u>Black's Law Dictionary</u> 731 (5th ed. 1979) (Interlocutory: "Provisional; interim; temporary; not final.").  Consequently, the interlocutory orders in the federal litigation do not qualify as "final" and are insufficient to support Stratman's res judicata and collateral estoppel arguments.  Because Stratman has failed to support the second and third elements of the test, Leisnoi is not precluded from proceeding with this action.

- 12 -

00147

2.    Law of the Case

         Defendant asserts that the "law of the case" doctrine
precludes this court from "re-examin[ing] issues previously
decided by the court before which the issue is being raised ... ."
Defendant's Motion to Dismiss at page 11.    Defendant fails to
indicate the issues this court has "previously decided" which it
is being asked to re-examine.    It appears that Stratman is
referring generally to issues which were raised in federal court.[10]
The Law of the Case doctrine is a matter of judicial policy which
identifies the practice of courts to generally refuse to reopen
what has been previously decided in the same case.    Luedtke v.
Nabors Alaska Drilling, 834 P. 2d 1220, 1228 (Alaska 1992); Bell
Helicopter v. United States, 755 F. Supp. 269, 272 (D. Alaska
1990); Stepanov v. Gavrilovich, 594 P. 2d 30, 36 (Alaska 1979).
This court is not being asked to re-examine issues it has already
decided, consequently the doctrine does not act as a "bar" in this
action.

3.    The Single-Action Rule

         Under the "single action" rule, "a court of competent
jurisdiction which assumes control of an action which could be
heard in separate courts of concurrent jurisdiction, retains
exclusive control of the action ... ."    Theodore v. State, 407
P.2d 182 (Alaska 1985).    In this case, Stratman argues that this

-------------------

         [10] Stratman states that "Leisnoi has lost this fight a couple
times in federal court.    This isn't baseball. [] [I]t's time to
tell Leisnoi that it's 'out'."

- 13 -

00148

court should decline jurisdiction because the federal court has already exercised jurisdiction.

Stratman's argument appears to have several flaws. In the first place, the federal court was given the opportunity to exercise jurisdiction over this quiet title action when Stratman removed the case to federal court. The federal court declined to accept the case finding that it should properly be heard in state court. Stratman also makes reference to his pending decertification action. Apparently he feels that the decertification suit and this quiet title action are duplicative. The decertification action, having been dismissed by the district court, is before the IBLA. The IBLA is not a "separate court of concurrent jurisdiction." Both parties are in agreement that the agency has jurisdiction to examine the question of whether Leisnoi was properly certified, but does not have jurisdiction to determine ownership of the land. In light of the fact that there is no similar action pending before a separate court of concurrent jurisdiction, the single action rule does not preclude this court's exercise of jurisdiction over this action.

## Failure to Join Indispensable Parties

Alaska Civil Rule 19(a), provides for "joinder of persons needed for just adjudication." Under Rule 19(a), a person shall be joined if "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so

- 14 -

situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest ... ."  Stratman contends that both Koniag Inc., the Native Regional Corporation which owns the subsurface estate to Termination Point, and the United States are indispensable parties to this action.

1.  Koniag

Leisnoi has brought this action seeking to remove the cloud from its title to the surface estate of Termination Point. Stratman claims that Koniag is an indispensable party in this quiet title action.  Stratman appears to base his assertion on the fact that Koniag was deemed an indispensable party in previous federal cases involving Stratman and Leisnoi.  In the prior actions, Stratman sought to set aside various land patents to both Village Corporations and Native Regional Corporations.  The facts of this case are substantially different.  Leisnoi has made no claims to the subsurface estate.  The title to the subsurface estate is not implicated in this action in any way.  Stratman has provided no authority for the proposition that the owner of a subsurface estate is an indispensable party in an action by the owner of the surface estate.

2.  The United States

Stratman claims that the United States is an indispensable party to this action because "Stratman's decertification litigation seeks to prevent future transfers of

- 15 -

00150

land to Leisnoi and seeks to ... return [all benefits received] to the United States." Defendant's Memorandum in Support of Motion to Dismiss at page 15. Stratman claims that a decision by this court in Leisnoi's favor "could potentially divest the United States of hundreds of millions of dollars of land ... ."[11] Therefore, the United States is an indispensable party to this action.

Leisnoi has brought this matter before this court as an action to quiet title pursuant to AS 09.45.010. This statutory provision specifically states that it is designed to quiet title between the parties who claim an interest in the property at issue. It is well-settled that in a quiet title action, "the court determines the rights of the parties under the pleadings and evidence, grants proper relief, and determines the better title as between <u>the parties to the proceeding</u> ... ." (emphasis added) 65 Am Jur 2d <u>Quieting Title</u> Sec. 44 (1972). "One cannot defeat a quiet title bill by showing that the complainant's claim or interest ... is subject to superior rights in third persons who are not parties to the suit." <u>Id.</u> This quiet title action involves Leisnoi and Stratman. As a result, the court need not, may not and does not address any rights which the United States may have in Leisnoi's land.

<u>Leisnoi Brings this Action in Violation of Federal Court Orders</u>

Defendant claims that various federal court orders preclude Leisnoi from bringing the instant action. The orders

---

[11] Defendant's "Non-opposition to Leisnoi's Motion to File Surrebuttal Memorandum any [sic] Reply to Same" p. 8.