an interest in the Termination Point lands for purposes of Stratman's decertification action. In fact, the United States has an even greater interest at stake in Leisnoi's action than Stratman. Stratman's decertification action makes no claim Termination Point for himself, only on behalf of the United States. It is the United States' interest in Termination Point that Leisnoi's action seeks to terminate, not Stratman's.

The United States should have therefore been joined as a defendant in Leisnoi's action as a person who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . .". Civil Rule 19(a)(2)(i). Absence of the United States would necessarily "impair or impede" its ability to protect its interest because its interest in Termination Point exists only in Stratman's decertification action, and its title to Termination Point can only be restored as relief in Stratman's action. Adjudication of Stratman's decertification claim in Leisnoi's action would effectively terminate the Government's interest in Termination Point. This renders the United States not only a proper party for joinder under Rule 19(a), but also an indispensable party under Rule 19(b).

The United States is also an indispensable party to Leisnoi's action because it seeks to adjudicate Stratman's APA claim against the Secretary of Interior. It is an obvious corollary that the Secretary is an indispensable party to the adjudication of an APA claim against him. As noted above, Stratman's decertification action is actually an action against the Secretary under the APA. Leisnoi was joined in the action as a defendant

33

its participation.

The trial court also failed to consider that, by adjudicating Stratman's decertification claim, it was adjudicating the merits of Stratman's APA challenge against the Secretary of Interior without the Secretary's own participation.

The trial court should have either limited Leisnoi's action to quieting title against Stratman's own personal claims to Termination Point, or dismissed its action on the ground that the United States was an indispensable party over which the court had no jurisdiction.

C.    The trial court should have dismissed or stayed Leisnoi's action because it presents the same claim and issues as Stratman's prior decertification action

Even if the trial court did have jurisdiction over Leisnoi's action, it should have still dismissed or stayed it because it presents the same claim and issues as Stratman's prior decertification action. Leisnoi's action should have either been dismissed, as a matter of right, under the law of abatement, or stayed pending the determination of the decertification action, as a matter of the proper exercise of the trial court's discretion.[19]

---

[19] Abatement is a matter of right when the grounds exist, while a stay is granted in the court's discretion. 1 Am.Jur.2d Abatement, Survival, and Revival, § 3 at 63. Whether the trial court should have dismissed an action under the rule of abatement presents a question of law, which this Court reviews de novo. Coughlan v. Coughlan, 423 P.2d 1010 (Alaska 1967). Whether the trial court should have stayed an action is reviewed for abuse of discretion. Ehredt v. DeHavilland Aircraft Co. of Canada, 705 P.2d 446, 450 (Alaska 1985).

1.    Leisnoi's action should have been dismissed under the rule of abatement

In Theodore v. State, 407 P.2d 182 (Alaska 1965), this Court recognized the rule "that the court of competent jurisdiction which first assumes control of an action which could be heard in separate courts of concurrent jurisdiction, retains exclusive control of the action, subject only to appellate authority." Id. at 184.  The Court explained:

> The doctrine first appears in early decisions of the United States Supreme Court in civil cases involving conflicts between federal and state courts where goods, chattels and lands were under attachment.   In Peck v. Jenness, one of the earliest pronouncements is found, with the court saying:
>
>> It is a doctrine of law too long established to require a citation of authorities . . . that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court.

Id. at 184-85, quoting Peck v. Jenness, 7 How. 612, 624, 48 U.S. 612, 624, 12 L.Ed. 841, 846 (1849).   Although the Court declined to apply the rule in the context of a criminal action in Theodore, it has applied the rule in other cases.   See Harding v. Harding, 366 P.2d 128, 129 (Alaska 1961) (remanding with instructions to dismiss if the trial court finds that "the complaint . . . is between the same parties, is based on the same subject matter and requests essentially the same relief as the complaint [in the pending action] . . ."); Briggs v. Estate of Briggs, 500 P.2d 550, 554 (Alaska 1972) (holding that the trial court should have dismissed a claim that was also the subject of pending probate proceedings, and noting that the rule serves the purposes of comity, courtesy, and

37

efficient judicial administration).[20]

In <u>Coughlan v. Coughlan</u>, 423 P.2d 1010 (Alaska 1967), the Court held that the trial court should have dismissed the action, under the rule of abatement, because it had been brought on the same claim by the defendant in a prior pending action.  The Court described the rule as follows:

> The general rule is well stated in <u>Martin v. Graybar Elec. Co.</u> where the court said:
>
>> Two simultaneous pending lawsuits involving identical issues and between the same parties, the parties being transposed and each prosecuting the other independently, is certainly anything but conducive to the orderly administration of justice.  We believe it to be important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter, and an injunction should issue enjoining the prosecution of the second suit to prevent the economic waste involved in duplicating litigation which would have an adverse effect on the prompt and efficient administration of justice unless unusual circumstances warrant.  As none such appears in this record, we agree with what would seem to

---

[20] In <u>Miller v. Johnson</u>, 370 P.2d 171 (Alaska 1962), the Court applied a variation of the rule in upholding the dismissal of a second action brought by the same plaintiff on the same claim.  The Court relied on "the rule which forbids one to bring more than one action upon a single claim," and noted that the rule dovetails with the "one form of action" prescribed by the rules of civil procedure.  <u>Id.</u> at 173.  The Court stated that rule "is based upon the policy of the law to protect a defendant against harassment by a multiplicity of suits, and to require parties to settle their controversies in a single action, if practicable."  <u>Id.</u> at 173.   by the rules of civil procedure.  <u>Id.</u>

In the trial court proceedings, the parties and the court referred to abatement as the "single action rule."  Although the single action rule may be a component of the law of abatement, this brief will instead refer to the "rule of abatement" in order to differentiate its application from cases such as <u>Miller v. Johnson</u>, where both actions are brought by the same plaintiff.

38

> be the established general rule that the party filing later in time
> should be enjoined from further prosecution of his suit.

Id. at 1012-13, quoting Martin v. Graybar Elec. Co., 266 F.2d 202, 204 (7th Cir. 1959)

(internal citations omitted).

Leisnoi's action should have been abated because it involved the same claim as

Stratman's pending decertification action.  The test for abatement of a second action

brought by the defendant in the first action is:  1) whether the plaintiff in the second

action can obtain the same relief by affirmative defense, counterclaim, or cross demand

in the prior action pending against him; and 2) whether a judgment on the merits in favor

of the opposing party in the prior action will operate as a bar to the plaintiff's prosecution

of the subsequent action:

> In order to abate a second suit brought by the defendant in the first suit, it
> must appear that the matters pleaded in the second suit could be set out as
> affirmative defense, counterclaim, or setoff, and could be litigated in the
> first suit.  Where a party can have adequate relief by an order in a pending
> cause in the same court, the party should not be allowed to seek his or her
> remedy in a separate suit.  Generally, where there is a reversal of parties,
> the pendency of the prior action abates the subsequent action when, and
> only when, these two conditions concur:  (1)  the plaintiff in the second
> action can obtain the same relief by counterclaim or cross demand in the
> prior action pending against him or her; and (2) a judgment on the merits
> in favor of the opposing party in the prior action will operate as a bar to the
> plaintiff's prosecution of the subsequent action.

1 Am.Jur.2d Abatement, Survival, and Revival, § 24 at 84.  See also 1 C.J.S.,

Abatement and Revival, § 32 at 71-72 (for abatement purposes, the causes of action are

the same where the relief sought in the second action may be fully obtained in the prior

action).

The state courts are not in agreement as to whether the pendency of a suit in federal court between the same parties and concerning the same subject matter is a ground for abatement of a subsequent suit in a court of the state in which the federal court is sitting. Most courts have taken the negative, but some courts the affirmative, view.

Irrespective of whether the pendency of an action in a federal court is or is not a ground for abatement of an action in a court of the state in which the federal court is sitting, and also irrespective of whether the prerequisites of a strict plea in abatement are met, the state courts, with only a few exceptions, have recognized the power to stay a proceeding until determination of a pending federal action.

The exercise of this power is not a matter of right, but a matter of comity and discretion. In the exercise of this discretion the courts have taken into consideration whether the action in the federal court was commenced prior to the state court proceeding; whether the federal adjudication affects the outcome of the state court action; whether the parties, causes of action, and issues in the two actions are the same; whether it is more convenient for the parties to conduct the litigation in one forum rather than in the other; whether the question was one of federal law, as to which the federal courts have special knowledge and expertise, whether the federal court was likely to entertain the action; and whether the federal action was brought in good faith.

56 A.L.R.2d at 338-39 (footnotes omitted). The cases collected in the annotation illustrate that stays are generally to be granted in such circumstances, and that it is an abuse of the trial court's discretion to deny them.

Here, there were even stronger reasons for staying Leisnoi's action than in the usual case of duplicative state and federal actions.

Comity with the federal court is a paramount consideration in this case. Stratman's decertification action is wholly a matter of federal law, and relates to matters of unique federal concern, including: 1) the administration of the federal government's

42

policy for Indian affairs, embodied in ANCSA;  2) the adjudication of a federal APA claim against the Secretary of Interior; and   3) the adjudication of the federal government's interest in the Termination Point lands.   These are all matters of unique federal concern, as evidenced by the jurisdictional limitations imposed by Congress on adjudicating such matters in state court.  The federal court should be allowed to decide these matters.

A stay would also serve the interests of judicial economy.   The decertification action has already been pending in federal court for over 20 years.  The proceedings have been involved and complex.  There has already been over 300 district court filings, two Ninth Circuit appeals, and an agency remand to IBLA.  A large number of rulings have already been made.  Judicial economy would be best served by allowing the federal court, which is already familiar with this case, to complete its adjudication of Stratman's claim.

A stay would also extend comity to the orders already entered by the district court. The district court has already ruled that the issue of whether Stratman can restore the Government's title to the Termination Point lands under his claim for relief in the decertification action should not be determined until after the completion of the remanded agency proceedings.  [Exc. 79].  The district court has also ruled that Leisnoi is not entitled to expungement of Stratman's lis pendens, and that Stratman is entitled to maintain a cloud on Leisnoi's title, until final determination of the decertification

43

[Exc. 148-149] (emphasis added).

The trial court apparently accepted Leisnoi's argument that the judgment of remand entered by the district court constituted a judgment of dismissal of Stratman's decertification action. [R. 4-8]. Leisnoi argued that the judgment of remand constituted a "Final Judgment" which "declined to grant the relief Stratman had sought, divestiture of Leisnoi's land." [R. 4 n. 2]. Leisnoi argued that, because Stratman "neglected to appeal from [the] Final Judgment," the court's remand to IBLA for determination of Leisnoi's eligibility constituted Stratman's sole and final relief in his decertification action. [R. 7-8].

The district court's orders of September 13, 1995 and November 21, 1995 make clear that Stratman's decertification action was not dismissed, and that the case was remanded to IBLA for the purposes of satisfying the doctrines of exhaustion of remedies and primary jurisdiction. [Exc. 100-103]. In its order of September 13, 1995, the district court denied Leisnoi's motion to dismiss the action for Stratman's failure to exhaust his administrative remedies. [Exc. 101-102]. Instead, the court ordered the action remanded to the Department of Interior in order to satisfy exhaustion requirements, as well as to satisfy the doctrine of primary jurisdiction. [Exc. 101-102]. The court's order of November 21, 1995 simply directed the clerk to enter judgment remanding the case to the IBLA in accordance with the court's previous order of September 13, 1995:

> There are two pending motions, the pendency of which prevent remand of this case in conformity with the Orders at Docket Nos. 292 and 298. . . . At Docket No. 300, Koniag, Inc. seeks a certification for immediate appeal.

48

See e.g., 28 U.S.C. § 1292. Stratman requests a status conference but actually wishes to reargue its position that this Court should not remand certain issues to the agency, but rather, should resolve them here. Docket No. 295. It is unfortunate that a case with a 1976 docket number is still pending. Stratman fears that agency action, like a tree to be grown from a seed, takes much time. The Court agrees. We had best plant the seed so that the tree can begin to grow. An interlocutory appeal would not speed the termination of this litigation. The parties have already been to the circuit and back. The agency should address the statutes and regulations in the first instance.

IT IS THEREFORE ORDERED:

The motions at Docket Nos. 295 and 300 are DENIED. The Clerk shall enter judgment remanding this case to the IBLA to determine once and for all if Leisnoi is a phantom village. See Order at Docket No. 292.

[Exc. 103].

The district court's order of remand was not a "final judgment," notwithstanding its entry as a formal "judgment." The label used by a district court cannot determine whether a disposition is an interlocutory order or a final judgment.[24] The district court

---

[24] See Sullivan v. Finkelstein, 496 U.S. 617, 628 n. 7, 110 S.Ct. 2658, 2665 n. 7, 110 L.Ed.2d 563 (1990) ("The label used by the District Court of course cannot control the order's appealability in this case, any more than it could when a district court labeled a nonappealable interlocutory order as a 'final judgment.'"); Zucker v. Maxicare Health Plans, Inc., 14 F.3d 477, 483 (9th Cir. 1994) (denomination and entry of order as "final judgment" did not render interlocutory order a final judgment); United States v. Lee, 768 F.2d 951, 955 (9th Cir. 1986) (for purposes of determining appealability of an order, the trial judge's classification of his own action cannot control the classification of the action; the court should instead focus on the effect of the ruling rather than the label placed on it); In re Slimick, 928 F.2d 304, 308 (9th Cir. 1990) (it is irrelevant whether the court designates its disposition as an order or "judgment;" appealability turns on the effect of the ruling, not the label assigned to it by the trial court); Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 744-45, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976) (dismissing appeal of interlocutory order for lack of jurisdiction even though it had been certified by the district court as a "final judgment" under Fed.R.Civ.P. 54(b)); Arizona St. Carpenters

49

did not even purport to designate the judgment of remand as a "Final Judgment." As such, the judgment can be regarded as simply an "interlocutory judgment," entered as a means to effectuate the court's order of remand. See 6 Moore, Federal Practice, ¶ 54.02 at 54-22.3 to 54-22.4 (distinguishing "final judgments" from interlocutory orders entered as "interlocutory judgments").

A remand order to an administrative agency is generally not a final appealable decision under 28 U.S.C. § 1291. Bish v. Brady-Hamilton Stevedore Co., 880 F.2d 1135, 1137 (9th Cir. 1989); U.S. v. Louisiana-Pacific Corp., 846 F.2d 43, 44 (9th Cir. 1988). This is true even where the remand order is entered as a formal judgment. See Eluska v. Andrus, 587 F.2d 996, 999 (9th Cir. 1978) (agency remand order that was entered as a formal judgment was not a final appealable judgment, and did not divest the district court of jurisdiction over the case).

Specifically, where issues are referred to an agency for determination under the doctrine of primary jurisdiction, the remand order is not a final decision, and the district court retains jurisdiction over the case. See U.S. v. Henri, 828 F.2d 526, 528-29 (9th Cir. 1987) (district court erred in dismissing the action pending the conclusion of agency proceedings; the doctrine of primary jurisdiction does not divest the district court of jurisdiction, and where the court suspends proceedings in order to give preliminary deference to an agency, jurisdiction should be retained by a stay of proceedings, not

---

Pension Tr. Fund v. Miller, 938 F.2d 1038 (9th Cir. 1991) (same).

50

relinquished by a dismissal).  See also II K. Davis, Administrative Law Treatise, § 14.1 (3d ed.).

The same is true where remand is ordered for purposes of the doctrine of exhaustion of administrative remedies.  In Eluska v. Andrus, 587 F.2d 996 (9th Cir. 1978), the Ninth Circuit held that a formal "Judgment" entered by the district court remanding the case to the IBLA for the purpose of exhausting administrative remedies was not a final decision under § 1291, and that the district court retained jurisdiction over the case pending the completion of the agency proceedings, despite the absence in the judgment of any express reservation of jurisdiction.  Id. at 999-1000 (citations omitted). See also Medina v. Castillo, 627 F.2d 972, 975 (9th Cir. 1980) (district court erred in dismissing action rather than retaining jurisdiction pending exhaustion of administrative remedies); Morrison-Knudsen Co., Inc. v. CHG Intern., Inc., 811 F.2d 1209, 1223 (9th Cir. 1987) (district courts should retain jurisdiction pending exhaustion of administrative remedies, rather than dismissing action, where a statute of limitations problem might develop).

Here, as in Eluska, the district court's judgment of remand was only an interlocutory, unappealable order, and was not tantamount to a dismissal in view of the court's reasons for ordering the remand, i.e., to satisfy exhaustion requirements.  That the judgment was not tantamount to a dismissal is even more clear in the decertification action than in Eluska.  The district court specifically denied Leisnoi's motion to dismiss for failure to exhaust.  It instead chose to remand the case to the agency in order to

51

satisfy exhaustion requirements, which was the very result Stratman had sought in his opposition to Leisnoi's motion to dismiss. Had the district court intended to terminate the action, it would have granted Leisnoi's motion to dismiss and entered a final judgment dismissing the action. Stratman could have then appealed that judgment. But that is not what happened, and Stratman was not required-- or even legally entitled, to appeal the judgment of remand, which did not terminate the case, or give him notice of the outcome now urged by Leisnoi.

Stratman's decertification action is therefore still "pending" in district court for purposes of abatement and/or stay of Leisnoi's action, and his claim will still be determined after the completion of the remanded agency proceedings. This comports with the meaning of "pending" under the law of abatement: "Entry of an order or judgment of dismissal is generally necessary in order to preclude abatement of the subsequent action, and where a court order of dismissal is required, the prior action, in the absence of such an order, will be deemed still pending." 1 Am.Jur.2d, Abatement, Survival, and Revival, § 13 at 73 (emphasis added). It also comports with this Court's definition of "pending" in In re Mackay, 416 P.2d 823 (Alaska 1964). In Mackay, the Court held that whether an action or proceeding is "pending" under a rule or statute depends upon the purpose of the rule or statute and the results which pendency would have in a specific case, and that "pending" should be construed to achieve a sensible and practical result:

52

> While the word "pending" has no fixed meaning and its construction depends on the legal context, it may usually be read as synonymous with or connoting "depending, remaining undecided, not terminated." . . .

> We are of the opinion that whether an action or proceeding is pending under a rule or statute depends on the purpose of the rule or statute and upon the results which pendency would have in a specific case. But general orientation is provided by the polestar principle that an action is pending until a determination has been made.

> We notice that in the construction of "pending" in regard to an action, even under a statute, the paramount consideration is to a achieve a sensible and practical result. . . .

Id. at 848-49 (footnotes omitted). The Court in Mackay cited Kase v. Kase, 18 N.J.Super. 12, 86 A.2d 587 (Super.Ct.1952) as an example of the practical construction to be accorded "pending," noting that Kase "recognizes that a court may retain limited jurisdiction, i.e. for alimony in a divorce case and that to such limited extent an action may still be pending." Id. at 849 n. 22.

Because a judgment of dismissal was not entered in the decertification action, and because the district will still determine Stratman's claim after the completion of the remanded agency proceedings, his action must still be regarded as "pending" in district court for purposes of abatement and/or stay of Leisnoi's action.

The trial court therefore erred in ruling that the district court's judgment of remand constituted a "dismissal" of Stratman's action for purposes of abatement and/or stay of Leisnoi's action.

The trial court committed an even more fundamental error by deciding this matter at all. If the trial court had any doubt as to whether the judgment of remand constituted

a dismissal, it should have stayed Leisnoi's action for the purpose of allowing the district court to decide this issue. If the operation and effect of the district court's judgment of remand is at issue, then it is yet another issue, and another of Leisnoi's defenses, that should be determined by the district court itself in the decertification action. The interest of comity in allowing the district court to decide this issue is even greater than the other issues involved in Stratman's decertification action. Allowing the district court to determine the operation and effect of <u>its own judgments and orders</u> is a fundamental matter of comity-- especially in a case that is still before it, or at least will again be before it. A determination in this case that the district court's judgment of remand constituted a dismissal of Stratman's action would unnecessarily interfere with the district court's own proceedings, and could undermine its jurisdiction to adjudicate Stratman's action after the completion of the agency proceedings.

D.    <u>The District Court can order the reconveyance of the Termination Point lands to the Government as relief in Stratman's decertification action</u>

Leisnoi's central contention in this action-- and its central defense in the decertification action-- is that Stratman's decertification action cannot affect Leisnoi's title to Termination Point because a patent for it has already been issued. It alleges that Stratman lacks standing to vacate the patent because he does not claim title to the land for himself.

The trial court accepted Leisnoi's argument, and held that Stratman cannot affect Leisnoi's title to Termination Point either through a direct challenge to the patent or

54

indirectly through his decertification action because he lacks standing to sue for its vacation:

> "A United States patent is protected from easy third-party attack.  [] It is not sufficient for one challenging a patent to show that the patentee should not have received the patent; he must also show that he (the challenger) is entitled to it."  Kale v. United States, 489 F.2d 449, 454 (9th Cir. 1973) (citations omitted).  A third party, with no claim of title "simply stated ... has no cause of action" to challenge the patent.  Raypath, Inc. v. City of Anchorage, 544 F.2d 1019, 1021 (9th Cir. 1976).  In this instance, Stratman has admitted that he has no personal claim of title to Termination Point.  It follows, therefore, that he has no cause of action to challenge the Termination Point patent.
>
> Stratman argues that the Ninth Circuit has already held that he has standing to proceed with his decertification suit.  This is true, and germane to this action, but it is not germane to the current issue.  Stratman does have standing to pursue his decertification suit, but pursuant to federal law he does not have a cause of action to directly challenge the Termination Point patent. . . .
>
> Stratman argues that he is entitled to the title-clouding benefit of his decertification claim.  If he is successful in his decertification action, he claims that Leisnoi will be forced to reconvey Termination Point to the United States.  Leisnoi maintains that even if successful, Stratman will be unable to obtain such a remedy.  Leisnoi argues that the only party with standing to sue to annul the Termination Point patent is the United States; Stratman has no standing to sue to annul the patent. . . .

[Exc. 153-157].

Neither Leisnoi nor the trial court addressed the controlling issue of whether Stratman can restore the Government's title to Termination Point as a remedy under his claim for relief in the decertification action.  Because the decertification action was filed prior to the patent of Termination Point to Leisnoi, its vacation falls within the complaint's prayer for prospective injunctive relief to enjoin the government from issuing

the Termination Point patent to Leisnoi. As discussed below, the district court has the power to "undo" the transaction, and order the reconveyance of the Termination Point lands to the government, because the parties to the transaction that the action sought to enjoin were also parties to the action. Consequently, Stratman need not bring a new action, or establish any additional standing, for the district court to vacate the Termination Point patent.

Stratman filed his decertification action in 1976-- when the Government still held title to the Termination Point lands. [Exc. 24]. The complaint sought three types of relief:  1) vacation of the Secretary's decision to certify Leisnoi as an eligible ANCSA Native Village ("decertification" of Leisnoi);  2) an injunction enjoining the Government from issuing any future land patents to Leisnoi; and  3) the vacation of any patents that may have already been issued to Leisnoi. [Exc. 27].

It is unnecessary to decide whether Stratman would be required to establish the type of standing necessary to vacate a patent in order to restore the Government's title to Termination Point under his third claim for relief, because Stratman can obtain a judgment rescinding the Termination Point patent as a remedy under his second claim for relief-- to enjoin the then-future issuance of the Termination Point patent.

The Termination Point patent was not issued to Leisnoi until 1985-- during the period that the decertification action was dismissed pursuant to the parties' settlement. Upon the reopening of the action in 1995, the action was restored to the status quo that existed on the date of dismissal in 1982-- when the Government still held title to the

56

Termination Point lands.  <u>Arnold v. U.S.</u>, 816 F.2d 1306, 1309 n. 3 (9th Cir. 1987);

<u>Fairfax Countywide Citizens v. Fairfax County</u>, 571 F.2d 1299, 1305-06 (4th Cir. 1978).

It is clear that, had the Termination Point patent not yet been issued, Stratman

would have been able to obtain a judgment in the decertification action enjoining the

Government from issuing it under his claim for prospective injunctive relief.  Even

Leisnoi concedes that the district court can enter judgment enjoining the issuance of any

future patents to it should Stratman prevail in the decertification action.  [R. 275].

The real issue, properly framed, is whether Stratman's original claim for relief to

enjoin the Termination Point patent is now moot because the patent was already issued

during the pendency of the decertification action.  It is not.  Because Leisnoi and the

Government, as parties to the Termination Point patent, were already parties to the

decertification action, which sought to enjoin the patent, the district court has the power

to "undo" the transaction and order the reconveyance of the Termination Point lands as

a remedy under Stratman's original claim for relief.

This issue was decided by the Ninth Circuit in <u>Burbank v. Anti-Noise Group v.</u>

<u>Goldschmidt</u>, 623 F.2d 115 (9th Cir.1980).  <u>Goldschmidt</u> involved an action by a citizens

group brought under the National Environmental Policy Act (NEPA) to require the

preparation of an environmental impact statement (EIS) before an airport could be

purchased with the aid of federal financial assistance.  The district court entered summary

judgment for the defendants, and the citizens group appealed.  However, while the case

was on appeal, the transaction was completed and title to the airport was transferred.

57

The defendants then argued the appeal was moot because the transaction sought to be enjoined had already taken place. The Ninth Circuit rejected this contention, and held that the district court had the power to "undo" the transaction and order the re-transfer of the airport title because the parties to the transaction were also parties to the action:

> The appellees contend that the case is moot because the federal funds have already been distributed and title to the Airport transferred, and note that appellants did not seek an injunction pending appeal. They urge us to follow <u>Friends of the Earth, Inc. v. Bergland</u>, 576 F.2d 1377, 1379 (9th Cir. 1978), in which this Court held:
>
> > "Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot. <u>In Matter of Combined Metals Reduction Co.</u>, 557 F.2d 179 (9th Cir. 1977). This is especially so where, as here, no stay on appeal has been sought. <u>Id.</u> at 189."
>
> <u>Friends of the Earth</u> does not govern this case, however, because the actions here can be undone. Unlike <u>Combined Metals Reduction Co.</u>, all parties to the transactions are before the Court. If appellants were to prevail on the merits of this appeal, this Court could remand with instructions to the District Court to order a transfer of the Airport title back to Lockheed and a return of the money to the FAA. <u>See</u> <u>Gonzales v. Costle</u>, 463 F.Supp. 335, 338 (N.D.Cal.1978). Nothing has transpired that has deprived this Court of the power to affect the rights of the litigants in this case. <u>Rosenfeld</u>, 444 F.2d at 1221. The issues on appeal are not moot.

<u>Id.</u> at 116.

The same is true with regard to the Government's conveyance of the Termination Point patent to Leisnoi. Nothing has transpired that has deprived the district court of the power to grant Stratman's original claim for relief. Both of the parties to the Termination Point transaction were also parties to the decertification action, and both were on notice

that the action sought to enjoin the patent. The only difference between Stratman's action and Goldschmidt is that the transaction occurred during the pendency of the district court action itself, not during an appeal. However, the district court has no less power to "undo" the transaction than the Court of Appeals. In fact, the case for "undoing" the Termination Point transaction is even stronger than in Goldschmidt. Here, the patent was issued during the period that the decertification action was dismissed pursuant to the parties' settlement. Unlike a transaction pending appeal, Stratman had no opportunity to enjoin the patent during the time period his action was dismissed-- and had no reason to do so. In addition, it was Leisnoi's own wrongful conduct in repudiating the settlement agreement-- after the patent was issued to it-- that was the basis for reopening the action. As noted above, upon reopening, the action was restored to the status quo that existed on the date of dismissal. "Undoing" the transaction would simply restore the status quo that existed on the date of dismissal.

The APA also grants the district court the power to rescind the Termination Point patent as relief in the decertification action. § 706(2) of the APA (5 U.S.C. § 706(2)) authorizes the district court to "hold unlawful and set aside agency action . . .". Id.

In National Wildlife Federation v. Espy, 45 F.3d 1337 (9th Cir. 1995), the Ninth Circuit held that this provision authorizes the district court to void a property transaction and order a transfer of title back to the federal government where necessary. Espy involved an action brought under the APA against the Farmers Home Administration (FmHA). The action sought to rescind the FmHA's conveyance of a ranch it had

59

previously acquired from a delinquent borrower. The ranch had been subject to a mortgage held by a bank. After making payments to the bank for a number of years, the FmHA subsequently quitclaimed the ranch to the bank in satisfaction of the debt. The bank, in turn, sold the ranch to a third-party purchaser. Two environmental groups brought an action against the FmHA under the APA, alleging that the FmHA's conveyance of title without reserving easements to protect wetlands violated the Food, Agriculture, Conservation and Trade Act, and that the FmHA's failure to draft an environmental impact statement (EIS) before conveying the property violated the National Environmental Policy Act (NEPA). The action sought judgment rescinding the FmHA's conveyance of the property, restoring title to the FmHA, and enjoining the FmHA from disposing of the property without imposing the required wetland conservation easements.[25]

The district court held that it did not have the power to grant the requested relief. The Ninth Circuit reversed, holding that § 706 of the APA authorized the district court to void the property transaction and order a transfer of title:

> Plaintiffs seeks an order rescinding FmHA's conveyance of the Ranch, restoring title to the Ranch to FmHA, and forbidding FmHA from disposing

---

[25] In addition to the FmHA, the action also named the bank and the third-party purchasers as defendants. The Ninth Circuit held that the bank and third-party purchasers were properly joined as defendants in the action, even though the APA provided no direct cause of action against them. The Court held that their joinder was proper under the test for joinder under Fed.R.Civ.P. 19, because their absence would impair their ability to defend their interests, and in their absence the plaintiffs could not obtain complete relief and the agency would face a substantial risk of inconsistent obligations. Id. at 1344.