would be almost or quite without use.'

State, Dept. of Transportation v. First National Bank of Anchorage, 689 P.2d 483, 486 n.12 (Alaska 1984).

Since neither the patentor nor a party with a claim of title to Termination Point sued Leisnoi within six years of issuance of the patent, Leisnoi's patent has been "validated" and becomes "unassailable." Stratman cannot affect Leisnoi's title, so this Court should affirm the lower court's ruling.

### G.  THE LOWER COURT HAD SUBJECT MATTER JURISDICTION

Stratman argues that there is federal rather than state jurisdiction over this quiet title suit.  The federal district court already rejected this argument and remanded this suit to state court [Exc. 125-126].  Stratman now asks that this Court find that the lower court and the federal district court and the Ninth Circuit were wrong; he argues that the federal district court, which determined it had no federal jurisdiction, in fact did.  His arguments in his brief are as specious as the losing arguments he made to the federal district court, the Ninth Circuit, and the court below.

Jurisdiction over this action properly lies in state court.  Unlike federal courts, which have limited jurisdiction, an Alaska Superior Court is one of general jurisdiction.  This Court has ruled that suits involving Native Corporations can be brought in superior court. Calista Corp. v. DeYoung, 562 P.2d 338, 341 (Alaska 1977):

13

> [W]e hold that the superior court has
> jurisdictional authority over the subject action
> ... Our decision is supported by a reading of the
> entire Alaska Native Claims Settlement Act. The
> Act provides in §1606(d) and §1607(a), that the
> regional and village corporations organize or
> incorporate under the laws of the State of Alaska.
> The legislative history of the Act indicates that
> Congress intended state jurisdiction over Naive
> corporate affairs, except as otherwise limited in
> the Act.

Calista Corp. v. DeYoung, 562 P.2d at 341.

Title 28 United States Code §1360(a) expressly authorizes this type of suit to be brought in state court. Section 1360(a) operates as an affirmative grant of jurisdiction for state courts to adjudicate suits to which Indians are parties, and not as a prohibition on exercising jurisdiction a state court would otherwise possess. South Naknek v. Bristol Bay Borough, 466 F.Supp 870, 879 (D.Alaska 1979). This Court, in Calista, supra, at 340, observed that section 1360(a) is a "grant of general jurisdiction".

The only exclusion to the general jurisdictional grant is those "property rights delineated in 28 U.S.C. section 1360(b)." Calista Corp. v. Mann, 564 P.2d 53, 58 (Alaska 1977). The only exclusion from state court jurisdiction is property held in trust by the United States or subject to restrictions on alienation imposed by the United States.

Neither of these conditions is present. The property is not held in trust. It was patented to Leisnoi. The property is not subject to any restrictions against alienation. Termination Point is not section 1360(b) property. See

14

Alaska v. Venetie, U.S. Supreme Court Case No. 96-1577, February 25, 1998 decision.

The legislative history of ANCSA also demonstrates that Native Village Corporations are not restricted from alienating land patented to them from the United States:

> The assets granted to Alaska Natives under the terms of this settlement will be managed and disposed of by them... through statewide, regional and local corporations controlled by them... The settlement of Alaska native land claims is to be final and complete and the present legislation intends to avoid prolonged legal or property distinctions or implications of wardship based upon race. Accordingly, the assets granted in settlement of the claims will be, or will rapidly become, ordinary and unrestricted forms of property.

S. Rep. No. 92-405, 92nd Cong., 1st Sess. 80 (1971).

Termination Point is neither restricted lands nor lands held in trust. 28 U.S.C. §1360(b) did not divest the lower court of jurisdiction over this suit.

**H. THE UNITED STATES DOES NOT CLAIM ANY INTEREST IN LEISNOI'S LAND AND IS NOT AN INDISPENSABLE OR NECESSARY PARTY TO THIS LITIGATION**

Termination Point was patented to Leisnoi on November 21, 1985 by Patent Number 85-8067 [Exc. 173-175]. The land patent made to Leisnoi constitutes a complete disclaimer of interest by the United States in the land.

> The district court possessed no jurisdiction under the Quiet Title Act to hear the claims against the United States. **The United States disclaimed all interest in the disputed lands in 1979, when it patented the lands to Eklutna, Inc. and Cook Inlet Region, Inc."**

Lee, supra, at 1409 (emphasis added).

15

Simply because the property was owned by the United States, or because it was patented to a Native Village corporation does not mean that there is no state court jurisdiction over an action to quiet title:

> "[A] controversy in respect of lands has never been regarded as presenting a Federal question merely because one of the parties to it has derived his title under an act of Congress." Shulthis v. McDougal, 225 U.S. 561, 570, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912). As the Supreme Court recently explained, "[o]nce patent issues, the incidents of ownership are, for the most part, matters of local property law to be vindicated in local courts, and in such situations it is normally insufficient for 'arising under' jurisdiction merely to allege that ownership or possession is claimed under a United States patent." Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 676-677, 94 S.Ct. 772, 781-82, 39 L.Ed.2d 73 (1974) (citation omitted).

Hunter v. United Van Lines, 746 F.2d 635, 647 (9th Cir. 1984).

The grants of jurisdiction of 28 U.S.C. §1360(a) and AS 22.10.020(a) vested the court below with full authority to resolve this case. Stratman argues that abatement prevented the lower court from exercising jurisdiction. That rule was described in Theodore v. State, 407 P.2d 182 (Alaska 1985) as being "the rule that the court of competent jurisdiction which first assumes control of an action which could be heard in separate courts of concurrent jurisdiction, retains exclusive control of the action, subject only to appellate authority... Id. at 184.

There is no concurrent federal-state jurisdiction here. The federal court never acquired jurisdiction. This action was brought in state court, and remanded to state court due to a lack of federal jurisdiction [Exc. 125-126].

Nor did the federal court acquire jurisdiction over this suit in Stratman's failed decertification case. A federal court as a matter of law lacks jurisdiction over a quiet title action involving land already patented, such as Termination Point as set out below.

The federal court is not a "court of competent jurisdiction" to hear an AS 09.45.010 claim to quiet title to lands privately owned in which the United States has disclaimed all interest. The quiet title claim against Stratman could only be filed in state court. Thus, the necessary elements for application of the "single action" (or abatement) rule are not present. The rule that the court of competent jurisdiction which first assumes control of an action which could be heard in separate courts of concurrent jurisdiction, retains exclusive control of the action does not apply. Thus, this quiet title action can be heard only in state court, not federal court. There is no concurrent jurisdiction over the quiet title claim raised herein. There is no validity to any claim of abatement.

Stratman erroneously contends that Leisnoi cannot quiet title against Stratman unless it also names the United States of America as a party to the suit. [Stratman's Brief at 29-

36]   There is no need to join any other party to this suit.
Leisnoi can obtain complete relief as against Stratman in
this suit without naming any other defendants.

Issuance of a final land patent, even to Natives
pursuant to a federal statute, vests the state courts with
jurisdiction over suits to quiet title thereto without any
requirement that the United States be named a party.  See,
Shulthis v. McDougal, 225 U.S. 561, 570 (1912); Joy v. City
of St. Louis, 201 U.S. 332, 341 (1906); De Lamar's Nevada
Gold Mining Co. v. Nesbitt, 177 U.S. 523, 527 (1900);
Shoshone Mining Co. v. Ruttler, 177 U.S. 505, 507 (1900).

The federal government has disclaimed any interest in
Termination Point, both through issuance of the patent and in
its Disclaimer of Interest of August 18, 1997, to all Leisnoi
lands in Leisnoi, Inc. v. U.S., District Court Case No. A97-
261 CIV (JWS), where the District Court dismissed Leisnoi's
complaint to quiet title against the United States for lack
of subject matter jurisdiction on October 8, 1997.   The
statute of limitations in which to bring suit has lapsed.
The United States is not an indispensable party.

The United States, familiar with Stratman's arguments,
filed formal pleadings in federal court acknowledging that
even if Stratman were to succeed in decertifying Leisnoi,
Inc. as a Native village corporation, Leisnoi would continue
to own the real property that was patented to it more than
six years ago (such as Termination Point) [Exc. 182-185, 219-

225].

The United States is not an indispensable party to this litigation.  Under Alaska Civil Rule 19(a) (persons to be joined if feasible), which requires that the party shall be joined if ... (2) "the person claims an interest relating to the subject to the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest..."

The United States claims no interest in Termination Point.  Failure to join the United States will not "as a practical matter impair or impede the person's ability to protect that interest."  The United States no longer has an interest in the property, having disclaimed any interest.

## I.   THE DECERTIFICATION CASE HAS BEEN DECIDED AGAINST STRATMAN

Stratman is attempting to mislead this Court.  As the federal courts made clear, the federal decertification case is dead [Exc. 104, 131-135, 228-249].

Leisnoi has successfully fended off two federal court suits by Stratman that sought to divest Leisnoi of title to its land.  The first Final Judgment was entered in favor of Leisnoi and against Stratman in the 1979 decertification case, A79-116 CIV.  The Final Judgment did not declare null or void any of the real property conveyed to Leisnoi, as sought by Stratman and dismissed the case [Exc. 171].

19

In the other decertification case, A76-132, Stratman also sought to have any conveyances of any interest of real property which might have been made to be declared null and void. A Final Judgment was entered that did not grant this relief. [Exc. 104]

Leisnoi did not sue to quiet title in federal cases, so Stratman cannot now contend that Leisnoi is somehow precluded from suing now to quiet title. Judge Singleton, in remanding this case, ruled that "this action in state court to quiet title to certain lands ... is the appropriate procedural device to remove a cloud on the plaintiff's title." [Exc. 125-126]. Leisnoi had not filed claims against Stratman in federal court; Leisnoi was a defendant. The doctrine of claim preclusion does not come into play against Leisnoi.

Nor does the doctrine of collateral estoppel preclude Leisnoi from litigating Stratman's lack of an interest in or ability to affect title to Termination Point. Two interlocutory orders denying motions to expunge lis pendens were entered in federal court [Exc. 56-59, 92] because Stratman claimed that his suit would affect title to the land. The issue on a motion to expunge lis pendens is not whether the plaintiff actually has an interest in the land, but whether the allegations in the complaint assert an interest in the land such that the plaintiff may file a

notice of the action.[4]  Stratman's complaint did, in fact, make such allegations, so the motions to expunge were denied.[5]  The interlocutory order was then mooted by the Final Judgment [Exc. 104] declining Stratman's prayer for an order that Leisnoi return its land to the government.  While Stratman contended his suit would affect title, in fact, the Final Judgment did not upset Leisnoi's title.

Stratman claims his federal decertification case seeks the recovery of public lands, on behalf of the Government and the public.  The Final Judgment entered in the decertification case did not cause Leisnoi to lose any of its assets, including its land; did not order the recovery of lands owned by Leisnoi; did not impose a constructive trust on Leisnoi's land as Stratman had sought in the litigation.  If Res Judicata or collateral estoppel apply, the doctrines preclude Stratman from raising these same claims and issues

---

[4]The issue on a mere motion to expunge lis pendens is simply whether a complaint makes allegations purporting to affect title to property.  Blake v. Gilbert, 702 P.2d 631, 643 (Alaska 1985).  The issue in a quiet title action, n the other hand, is whether an individual purporting to have an interest in land actually has such an interest, or has merely asserted "unfounded claims".  Davis v. Tant, 361 P.2d 763, 766 (Alaska 1961).  The two issues are not "identical to" each other as required for collateral estoppel.  Murray v. Feight, 741 P.2d 1148, 1153 (Alaska 1987).  Collateral estoppel thus does not bar this action to quiet title.

[5]This Court can readily see that those orders denying the motions to expunge Lis Pendens were merely interlocutory orders, and were not final judgments.  The two interlocutory orders were not "final judgments" as required for application of collateral estoppel.

21

that were rejected in two Final Judgments in suits between the same parties. Despite over twenty years of litigation, Stratman failed to affect title to Leisnoi's land. For him now to contend that Leisnoi is somehow precluded from quieting title to its land in state court is absurd. There is no longer a pending federal action either in the U.S. District Court or at the Ninth Circuit. His <u>lis</u> <u>pendens</u> is now extinguished. As this Court has observed, "when no appeal is taken a dismissal terminates the operation of a lis pendens with respect to that action." <u>Blake, supra</u>, at 642.

**J. <u>THERE IS NO BASIS FOR A STAY, IBLA CANNOT AFFECT TITLE</u>**

Nothing the Department of the Interior does will affect title to Leisnoi's land. Upon issuance of a patent, the "authority [of the Department of the Interior] in the matter ceases [because] the legal title has passed from the government, and the power of these officers to deal with it has also passed away." <u>United States v. Schurz</u>, 102 U.S. 378, 402 (1880). "[W]hen the patent has been executed ... all power of the Executive Department over it has ceased.... It divested the title of the United States....". <u>Bicknell v. Comstock</u>, 113 U.S. 149, 151 (1885). "[T]he Government, after conveyance of the lands, [has] 'no jurisdiction to intermeddle with them' ..." <u>United States v. State Investment Company</u>, 264 U.S. 206 (1924). (citations omitted). <u>See also</u>, <u>UOP v. U.S.</u>, 99 F.3d 344, 350 (9th Cir. 1996). There is no basis to stay a quiet title suit pending

22

the outcome of an administrative action that cannot have any affect upon Leisnoi's title to Termination Point.

Nor should the quiet title action be delayed pending Stratman's threat that he may someday, after losing before the IBLA, file a new, third federal lawsuit again challenging Leisnoi's title to Termination Point. Only a person who claims an interest in title to the land, or the patentor (the United States) would have standing to sue to annul an official land patent of the United States. Stratman admits he has no claim of title to Termination Point [Exc. 128, Stratman's Brief at 35, fn. 18]. He lacks standing to challenge the patent.

Stratman would also be barred from bringing a new suit challenging the patent by virtue of AS 09.10.230, which provides that "a person may not bring an action to set aside, cancel, annul, or otherwise affect a patent to land issued by this state or the United States... unless the action is commenced within 10 years from the date of the patent."

The statute of limitations having expired to file suit to challenge Leisnoi's patent to Termination Point, the patent has therefore become unassailable. United States v. Chandler-Dunbar Water Power Co., supra, at 450; State, Dept. of Transportation, supra, at 486 n.12.

An action to clear title should not be held in limbo while Stratman pursues litigations that cannot, as a matter

of law, affect title to Termination Point.[6]   This Court should reject Stratman's stalling tactics, just as the lower court, and federal courts have done.

## K.   THERE IS NO REASON FOR A STAY

Stratman is asking this Court to enjoin itself from considering a quiet title action that falls within its jurisdiction, by granting a stay, pending the outcome of an administrative action that will not have any affect on Leisnoi's title.   Stratman has made no showing of the elements necessary for injunctive relief.[7]

There would be no federal jurisdiction to stay a state court proceeding pending outcome of an administrative proceeding.   See, 28 U.S.C. section 2283: "A court of the

---

[6]The Court should also note that the United States District Court denied Stratman's motion to consolidate this quiet title with Stratman's decertification case. [Exc. 125-126]

[7]The last two times Stratman sought injunctive relief against Leisnoi, he lost.   Judge Von der Heydt found that it is "highly unlikely" that Stratman will prevail in his efforts to decertify Leisnoi, Inc. [Exc. 211], and the Ninth Circuit did not disturb his denial of Stratman's motion for injunction.   [Exc. 228-249]   Moreover, if Stratman were to seek an injunction against quieting title to Termination Point so as to thwart the sale to the EVOS Trustees, the Court should require him to post at least a fifteen million dollar bond.   "Termination Point is a portion of Kodiak Island, the surface estate of which is owned by Leisnoi, Inc., that Leisnoi has valued at being in excess of fifteen million dollars."   [Exc. 213]   Alaska Civil Rule 65(c) provides that "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Judge Singleton, in denying Stratman's motion for a stay of this quiet title action and remanding this case to state court, found that allowing the state court to decide this case "would not undermine the jurisdiction of this Court." [Exc. 125].

Leisnoi is entitled to a proceeding now to quiet its title. Granting a stay of this quiet title suit will effectively kill the sale of the parcel to the EVOS Trustees. The EVOS Trustees who will not spend millions of dollars on a parcel whose title has not yet been quieted. This Court should act expeditiously to quiet title so that the wilderness parcel can be sold to the EVOS Trustees.

**L.** **THE NINTH CIRCUIT HAS ALREADY REJECTED STRATMAN'S ARGUMENT THAT THE FINAL JUDGMENT DID NOT SEND THE CASE IN ITS ENTIRETY TO THE IBLA**

The federal suit (A76-132) that Stratman claimed would affect title to Leisnoi's land has ended. There is no pending "action affecting the title or right of possession" to Termination Point.[8] The Lis Pendens has expired.

_____

[8]Alaska law requires that in order for a Lis Pendens to be maintained in the property records, there must be an action pending that may affect title or the right to possession of the land:

"In an action affecting the title to or the right of possession of real property, the plaintiff at the time of filing the complaint, or afterwards

This court has ruled that "when no appeal is taken a dismissal terminates the operation of a lis pendens with respect to that action." Blake, supra, at 642. A Final Judgment was entered on November 21, 1995 that did not disturb Leisnoi's title to Termination Point or to any of its land. [Exc. 104] Stratman took no appeal from the dismissal. Title should now be quieted in favor of Leisnoi.

Stratman is trying to sell to this Court used wares that the Ninth Circuit would not buy, Stratman again argues that the district court somehow reserved jurisdiction over issues and parties, and did not send this action in its entirety to the IBLA. This is the same argument the Ninth Circuit panel rejected at oral argument [Exc. 228-246][9].

_____

    ... may record in the office of the recorder of the recording district on which the property is situated a notice of the pendency of the action..." AS 09.45.940.

[9]The intent of the district court is crucial to determining whether an order sending a case to an agency is appealable. If the district court did not intend to retain jurisdiction over any portion of a case, the order sending the case to an agency is the equivalent of an order of dismissal, and is therefore appealable. The Ninth Circuit observed this rule of law in Eluska v. Andrus, 587 F.2d 996 (9th Cir. 1978): "In order to conclude that the judgment was final, we must first find that it was equivalent to an order of dismissal ... [T]he district court judge ... apparently wished to retain jurisdiction ... His intention not to dismiss can be inferred ..." Id. at 999. **Unlike the district court judge in Eluska who intended to retain jurisdiction over the case, Judge Singleton did not intend to retain jurisdiction; instead, Judge Singleton sent the entire case to the IBLA.** The panel hearing Stratman's interlocutory appeal thus focused on the correct issue, having concluded by a review of the Final Judgment on November 21, 1995 that the federal district court intended to send the entire case to

26

The Ninth Circuit's written decision that followed oral arguments also made it clear that there was no remaining jurisdiction in the district court:

> "After this appeal was filed, the district court, on November 21, 1995 entered judgment and remanded this action in its entirety, to the Interior Board of Land Appeals. We, therefore, dismiss this appeal as moot." (emphasis in original) [Exc. 247-248].

Stratman now thumbs his nose at the Ninth Circuit, claiming that the federal court still retains jurisdiction over the case, (Appellant's Brief at pages 47-54). Stratman is trying to present to this Court the same theory that the Ninth Circuit refused to follow. [Exc. 228-249].

The Ninth Circuit resolved the jurisdiction issue. This Court should not allow Stratman to relitigate here an issue already decided by the Ninth Circuit. The Ninth Circuit concluded that the district court had not retained jurisdiction over anything. There is nothing pending in federal district court. The absence of present jurisdiction in this former 1976 suit is a settled matter of law[10]. The

---

the IBLA, and having confirmed the accuracy of this interpretation by speaking with Judge Singleton, the panel properly concluded that (1) the Final Judgment sending the entire case to the IBLA was an appealable final decision; and (2) Stratman's failure to appeal from the Final Judgment rendered moot the issue of preliminary injunctive relief.

[10]The doctrine of collateral estoppel bars Stratman from relitigating the same issue involved in his dispute with the same parties. The argument that Stratman presents to this Court was made in Stratman's petition for rehearing and suggestion for rehearing en banc, which petition was denied. [Exc. 249] Stratman repeats the same argument that the Ninth

Ninth Circuit dismissed Stratman's appeal because no jurisdiction exists; it did not remand the appeal for consideration of any issue.

### M.   IT IS NOT THE FUNCTION OF THE ALASKA SUPREME COURT TO HOLD THAT A FEDERAL APPELLATE DECISION WAS CLEARLY ERRONEOUS

Stratman effectively requests this Court to hold that the Ninth Circuit's decision was clearly erroneous and that the federal courts have jurisdiction. It is not the function of a State Supreme Court to overrule a federal appellate court on a determination of federal jurisdiction. If Stratman is of the view that the Ninth Circuit erred in dismissing his appeal, then he should have petitioned the United States Supreme Court for a writ of certiorari. He did not avail himself of this remedy.

Stratman asks this Court to find federal jurisdiction where the federal courts ruled none exists. He seeks to

---

Circuit considered and rejected. He is barred from relitigating this issue by virtue of the doctrine of collateral estoppel. Municipality of Anchorage v. Hitachi Cable, Ltd., 547 F.Supp. 633, 641 (D.Alaska 1982); Montana v. United States, 440 U.S. 147, 153 (1978). Stratman attempts to avoid collateral estoppel by claiming the 1976 case is somehow still alive. It is not. He is barred from relitigating the same issue already decided against him in the former 1976 suit. The issue of lack of subject matter jurisdiction was "actually and necessarily determined" in the suit between the same parties, and the resolution of the issue was a necessary part of the Judgment issued by the Ninth Circuit. The Ninth Circuit determined there was no remaining federal subject matter jurisdiction. [Exc. 228-249] Stratman has failed to file a petition for certiorari seeking United States Supreme Court review of the Ninth Circuit's Judgment.

28

ignore and eviscerate the ruling of the Ninth Circuit.  The district court owed obedience to the mandate of the court of appeals.  <u>United States v. United States District Court</u>, 334 U.S. 258, 264 (1948); <u>City Public Service Board v. General Electric Corp.</u>, 935 F.2d 78, 82 (5th Cir. 1991).  The mandate declared that there is no jurisdiction.

The mandate did not remand the case to the federal district court for further proceedings, so the law of the case doctrine (or abatement) does not come into play.[11] Stratman's law of the case (or abatement) argument (Stratman's Brief at 37-41) begs the question that he seeks to prove.  As Professor Moore notes in his treaties, the law of the case doctrine is a rule that "A court that makes a decision has the power to reconsider it, **so long as the case**

---

[11]The Ninth Circuit's decision in <u>Thomas v. Bible</u>, 983 F.2d 152 (9th Cir. 1993) makes it clear that, following an appellate decision, the law of the case doctrine applies only where a case has been remanded, not where, as here, the appellate court's decision leaves nothing to be decided by the district court.  <u>See</u>, <u>Bible</u>, 983 F.2d at 155, item #3, allowing deviation from appellate ruling where "the evidence on remand is substantially different."  The panel here determined that the issue of whether a preliminary injunction could or should be issued is moot, since no appeal was taken from the November 21, 1995 Final Judgment; the panel did not remand any issues.  The law of the case doctrine (or abatement) does not apply.  Rather, collateral estoppel precludes relitigation of the subject matter jurisdiction issue that was already litigated between Stratman and Leisnoi.  The doctrine of <u>res judicata</u> bars Stratman from again seeking the injunctive relief already considered and rejected by the federal court.  Stratman cannot keep bringing the same claim for relief over and over again, or keep relitigating the same issues already decided by the federal district court and the Ninth Circuit.

is within its jurisdiction." 1B Moore, Federal Practice at section 0.404[1], II-2 (italics in original; emphasis added). Here, the 1976 case is no longer within the jurisdiction of the federal court. The entire case has been sent to the IBLA for initial determination and exhaustion of administrative remedies, and the federal district and appellate courts have so found. [Exc. 104, 131-135, 228-249] The federal court lacks the power to reconsider any rulings.

Stratman cannot use the law of the case doctrine to make an argument that the federal courts have jurisdiction when both the district court and the Ninth Circuit have found there is no jurisdiction. Stratman engages in the logical fallacy of using an argument to attempt to prove the premise upon which his argument is based.

Professor Moore, in the section of his Treatise dealing with the law of the case doctrine, describes the effect of a party failing to appeal from a final judgment is to trigger application of the more restrictive doctrine of res judicata:

> "If an order or judgment is final and is not appealed, it is conclusive upon the parties and those in privity with them under the principles of res judicata, unless the judgment is void (and thus subject to collateral attack), or the judgment is set aside by a proper and timely motion made in the district court."

1B Moore, Federal Practice, Section 0.404[9], II-55, 56.

**N.   STRATMAN FAILED TO APPEAL FROM THE FINAL JUDGMENT OF NOVEMBER 21, 1985; STRATMAN CANNOT USE THIS COURT AS A SUBSTITUTE FOR A TIMELY APPEAL**

In lieu of a timely appeal, Stratman seeks to have this

court find federal jurisdiction where the federal courts have found none. This creative slight of hand by Stratman does not suffice as a substitute for a timely and proper appeal.

If Judge Singleton erred, Stratman should have appealed from the Final Judgment, but Stratman did not.[12] The federal suit, the pendency of which Stratman gave notice, has ended without affecting title to Leisnoi's land. Thus, Leisnoi is entitled to quiet title to its land.

When dealing with a vexatious litigant like Stratman, this Court should jealously guard the finality of a court's judgments. Leisnoi has obtained Final Judgments against Stratman in the 1976 and 1979 decertification cases. No appeals were taken from either Final Judgment. Leisnoi also obtained a Judgment in its favor from the Ninth Circuit Court

---

[12]For example, in U.S. v. Henri, 828 F.2d 526 (9th Cir 1987), the district court dismissed because claims were pending before the BLM over which the agency had primary jurisdiction. An appeal was taken, and the Ninth Circuit held that the district court should have stayed rather than dismissed the federal suit. Id. at 529. Stratman, however, failed to follow this procedure because he neglected to appeal from the district court's Final Judgment of November 21, 1995. Moreover, in Eluska v. Andrus, 587 F.2d 996, 999 (9th Cir. 1978), the Ninth Circuit observed that, where, as here, exhaustion is statutorily mandated [see, 43 U.S.C. section 1632(a)], the exhaustion requirement is jurisdictional and the district court must dismiss the action rather than remand retaining jurisdiction. A dismissal of any type of order that effectively sends a party out of court is a final, appealable order. United States v. Lee, 786 F.2d 951, 956 (9th Cir. 1986); Herrington v. County of Sonoma, 706 F.2d 938,939 (9th Cir. 1983). Also, a ruling denying a prayer for injunctive relief, such as the Final Judgment of November 21, 1995, could be appealable under 28 U.S.C. section 1292. Thus, Stratman had the ability to appeal the Final Judgment, but he failed to do so.

of Appeals in the interlocutory appeal from the denial of preliminary injunction in 1976 decertification case. None of the Final Judgments granted injunctive relief to Stratman. For this court to support Stratman's claim the 1976 case is still alive, to relitigate issues decided therein, and to refile claims already rejected would greatly undermine the policies supporting finality of judgments that the Ninth Circuit discussed in Plotkin v. Pacific Telephone and Telegraph Co., 688 F.2d 1291, 1293 (9th Cir. 1982).

If this Court were to entertain Stratman's theory, it would signal that there is no end to litigation, and that the parties can continue to battle ad infinitum, even after the entire case has been disposed of by dismissal from the federal court.

O.    STRATMAN HAS UNCONSCIONABLY SWITCHED HIS POSITION REGARDING THE JURISDICTION OF THE ALASKA STATE COURT OVER SUITS INVOLVING TITLE TO LAND OWNED BY LEISNOI

Stratman, under a purported breach of contract theory, previously sought to gain title to over 17,000 acres of Leisnoi's land. **He filed suit in state court to gain title to Leisnoi's land, and he affirmatively alleged that the state court has jurisdiction:**

> Defendants are Alaska corporations, created pursuant to the Alaska Native Claims Settlement Act (ANCSA), **and are subject to the jurisdiction of this court.** (emphasis added) [Exc. 176-179].

When Stratman was dissatisfied with the ruling of the Superior Court, he took an appeal to this Court. In his

brief, Stratman affirmatively stated that "Jurisdiction and authority for this cross-appeal are provided under A.S. 22.05.010(a) and Appellate Rule 202(a)." [Exc. 181]  This Court ruled in favor of Leisnoi and held that Leisnoi was not required to convey to Stratman title to any of its land. Leisnoi, Inc. v. Stratman, 835 P.2d 1202 (Alaska 1992).

Leisnoi in this case sued to quiet title. Stratman, who had previously alleged that state courts have jurisdiction over suits involving title to land owned by Alaska Native corporations, now unconscionably switches positions, and argues that state courts now mysteriously lack jurisdiction over such suits. Stratman would have this Court hold that he can sue in state court to try to obtain title to a Native Corporation's land and to try to obtain an injunction against the Native Corporation selling its land, but, after he loses that suit, the Native Corporation cannot sue in state court to quiet title to its land he continues to cloud.

Stratman also made use of the jurisdiction of state courts, contending that he had acquired title to Leisnoi's land pursuant to the doctrine of adverse possession. [Exc. 191-193]. It is only now, after he has lost in his efforts to obtain title to Leisnoi's land, that he seeks to block Leisnoi's quieting title to its land by changing his position 180 degrees, and arguing that there is no jurisdiction where he previously alleged that there was jurisdiction. This unconscionable changing of positions is barred by the

doctrine of quasi-estoppel.  <u>Alaska Statebank v. Kirschbaum</u>, 662 P.2d 939, 942-943 (Alaska 1983).

This Court previously exercised jurisdiction in reaching the merits of Stratman's case challenging Leisnoi's title. It necessarily follows that there exists state court jurisdiction over this suit.

For Stratman to contend that <u>Calista v. DeYoung</u>, 562 P.2d 338 (Alaska 1977) supports a conclusion that there is no state court jurisdiction over suits involving Alaska Native Corporations is preposterous.  This court held in <u>Calista</u>, <u>supra</u>, at 341 that "The legislative history of the Act [ANCSA] indicates that Congress intended state jurisdiction over Native corporate affairs, except as otherwise limited in the Act."  ANCSA imposed no limitations upon the ability of the Native Corporations to alienate real property.

As demonstrated in <u>Alaska Statebank</u>, <u>supra</u>, at 943, "The essence of the doctrine of quasi-estoppel is the existence of facts and circumstances making the assertion of an inconsistent position unconscionable."  Stratman filed affidavits [Exc. 253-264] in federal and state courts in which Stratman swears he holds rights to the sand and gravel that lies beneath Leisnoi's surface estate, and he sold some of it.  A review of ANCSA shows Stratman is quasi-estopped from opposing Leisnoi's suit to quiet title.

Under 43 U.S.C. section 1613(f), "When the Secretary issues a patent to a Village Corporation for the surface

34

estate in lands pursuant to subsections (a) and (b), he shall issue to the Regional Corporation for the region in which the lands are located a patent to the subsurface estate in such lands..."  Koniag acquired its subsurface interest beneath Leisnoi's land, because the Secretary had issued a patent to Leisnoi.  By first acquiring from Koniag, and then selling to third parties, gravel from beneath Leisnoi's surface estate, and now swearing that he has the rights to the gravel, Stratman has ratified the validity of Koniag's interest therein, which, in turn, was derived from and was issued to Koniag due to the surface estate having validly been patented to Leisnoi.  Stratman thus created intervening third party rights that are inconsistent with his purported challenge to Leisnoi's patents.  Stratman is thus quasi-estopped from challenging Leisnoi's patents.

The sweeping ruling that Stratman seeks, a declaration that state courts lack jurisdiction over suits involving Alaska Native Corporations, is also contrary to a substantial body of precedent from this Court.  The following cases rebut Stratman's contention that the lower court lacked jurisdiction: <u>Hakala v. Atxam Corporation</u>, 753 P.2d 1144 (Alaska 1988); <u>Kenai Peninsula Borough v. Cook Inlet Region, Inc.</u>, 807 P.2d 487 (Alaska 1991); <u>Kenai Peninsula Borough v. Tyonek Native Corporation</u>, 807 P.2d 502 (Alaska 1991); <u>Tetlin Native Corporation v. State</u>, 759 P.2d 528 (Alaska 1988); <u>T.T. Ferguson Construction, Inc. v. Sealaska Corporation</u>, 820 P.2d

35

1058 (Alaska 1991).

The lower court had jurisdiction over this suit. Stratman lacked standing to sue to annul land patents because he has no claim of title to the surface estate. Leisnoi's patents have been validated and are unassailable, such that Stratman cannot cloud Leisnoi's good title to its land.

The federal courts agreed with Leisnoi that they now lack subject matter jurisdiction, so they rejected Stratman's argument that there is ongoing federal jurisdiction that could support injunctive relief. The federal court orders are fully consistent with Leisnoi's position that there is no ongoing federal court litigation. Judge Singleton stated that Stratman would have to file "a new action" to get back into federal court. [Exc. 133] There is presently no suit by Stratman affecting title to Leisnoi's land. The failure of Stratman to appeal from the Final Judgment "terminates the operation of a lis pendens with respect to that action." Blake v. Gilbert, 702 P.2d 631, 641 (Alaska 1985).

Judge Singleton rejected Stratman's argument that the Final Judgment of November 21, 1995 was something other than a dismissal of the federal suit. Judge Singleton held that the Final Judgment of November 21, 1995 "was, nonetheless, a dismissal. [Exc. 133]

Stratman fails to understand the difference between a motion to remove a lis pendens and a suit to quiet title. We dealt in this suit not merely with the issue of whether a lis

36

pendens should be removed; the issue litigated was whether Leisnoi has good and clean title such that nothing Stratman says or does can divest Leisnoi's title.

Stratman overlooks the legal ramification of a successful action to quiet title. The lower court's order did not merely expunge a lis pendens. Nor did the court merely rule that Stratman does not own or have a claim of personal title to Termination Point. The lower court ruled that Stratman not only has no personal interest in Termination Point, but also that Stratman cannot affect or annul Leisnoi's patent or sue to obtain such a remedy. [Exc. 154-156, 159] The issue litigated was whether Stratman could somehow divest Leisnoi of title, not simply whether Stratman has a personal claim of title to the property.

As a result of the lower court's ruling quieting title, Stratman will not be able to sue for the remedy of divesting Leisnoi of title to Termination Point. Upon recordation of the Final Judgment, the matter will be Res Judicata. That was the purpose of bringing suit, to remove the issue of Leisnoi's title to its land from any future litigation that Stratman may choose to bring as a part of his campaign to extort land and money from Leisnoi.

Judge Singleton never ruled that Stratman can sue to annul Leisnoi's title to Termination Point. Judge Singleton never ruled that Stratman has standing to sue to annul any of Leisnoi's patents. Judge Singleton also declined to grant a

37