stay of the quiet title suit pending the outcome of the IBLA, the same argument Stratman tries to resurrect before this Court when he argues that quieting title would be a dangerous infringement by this Court on the prerogatives of the Federal Judiciary. It must be again emphasized that there are no issues before the federal judiciary on this point. Stratman was thrown out of federal court and sent to an administrative agency that lacks jurisdiction over lands such as Termination Point that were already patented to Leisnoi. The Ninth Circuit made it clear to Stratman that he is no longer a litigant in federal court, when it threw out his appeal from the denial of preliminary injunction on the grounds that a Final Judgment has already been entered. As set out above, there is no case or controversy pending in federal court. Stratman is still trying to sell this Court an argument that has been expressly rejected by the district court, and the Ninth Circuit, as well as the lower court.

Stratman's proposition that quieting title is an infringement by this Court on the prerogatives of the federal judiciary also overlooks the fact that Judge Singleton elected to remand this case from the federal judiciary back to state court. The federal court plainly ruled that "In short, this is an action to quiet title under state law which does not present a federal question." [Exc. 125]

Stratman simply does not want to come to grips with the facts that the most he can do in federal court is challenge

38

Leisnoi's certification to continue transacting business as an Alaska Native Corporation or challenge Leisnoi's entitlement to additional land; he cannot challenge patents already issued to Leisnoi. Stratman not only lacks standing to do so, and lacks a cause of action to challenge the patents, but the time in which to do so has lapsed. Stratman cannot avoid the statute of limitations.

Stratman did not present any material issue of fact to the lower court that could prevent the granting of summary judgment. Whether Stratman wins or loses at the IBLA is not material to this suit. A ruling quieting title means that no matter what type of suit Stratman may file, he cannot challenge the patent, or obtain a remedy nullifying the patent since (i) he lacks standing to sue to annul a patent; (ii) he lacks a private cause of action to challenge the patent; and (iii) the patent has been affirmatively "validated" and is "unassailable" by virtue of the lapsing of both the state and federal statutes of limitations. Stratman still fails to recognize that the lapsing of the statute of limitations not merely extinguishes causes of action, but also affirmatively validates the patent.

The argument the lower court must wait until the IBLA case is over before title may be quieted is simply a rehash of Stratman's motion for a stay of this quiet title suit pending the resolution of the IBLA suit. Judge Singleton denied this motion, and Stratman lost again when he

39

reasserted the same motion in state court. Stratman has now repackaged the same flawed argument to present to this Court. The rationale that led the lower court and the federal court to reject the motion for stay pending resolution of the IBLA case militates in favor of rejecting Stratman's argument that whether he will win or lose at IBLA is a factual issue preventing quieting of the title and requiring a stay. Stratman's success or defeat at the IBLA will not alter the legal standing requirements, nor will it cause the statute of limitations for suits to annul patents to disappear, nor will it vest him with a private cause of action to sue to annul a patent to land in which he claims no personal interest.

### P. THE UNDERLYING FEDERAL SUIT OF WHICH STRATMAN GAVE NOTICE THROUGH HIS LIS PENDENS HAS ENDED WITHOUT AFFECTING TITLE TO TERMINATION POINT

This principle of law entitling Leisnoi to summary judgment in this quiet title action, as the lower court so found, applies whether Stratman were to file a new suit or somehow revive his old decertification suit. Stratman simply cannot affect title to Termination Point. While the Ninth Circuit recognized Stratman's standing to bring his decertification action, it never held the Stratman had standing to sue to annul a land patent.[13] Any recreational

---

[13] Stratman was found to have judicial standing to challenge the Department of the Interior's certification of Leisnoi as a Native Village corporation, Stratman v. Watt, 656 F.2d 1321, 1324 (9th Cir.1981); he was never found to have standing to sue to annul a land patent, since only the patentor or a party claiming title to the land has such

40

user would have standing to sue to challenge the certification of a Native Village Corporation. A much stricter rule applies with respect to challenges to a land patent issued by the United States of America. Only the patentor or a party claiming title to the land has standing to challenge an official land patent. <u>Northern Plains Resource Council v. Lujan</u>, 874 F.2d 661, 667 (9th Cir.1989); <u>Kale</u>, <u>supra</u>, at 454 (9th Cir.1973); <u>Lee</u>, <u>supra</u>, at 1410-11; <u>Donnelly</u>, <u>supra</u>, at 1320.

Stratman is trying to block the sale of the land to the EVOS Trustees so he can perpetuate his efforts to extort land and money from Leisnoi. This Court should put an end to his extortion by quieting title to the land in which Stratman admits he has no claim of title.

### Q. **OMAR STRATMAN IS NO PUBLIC INTEREST LITIGANT**

Stratman seeks to portray himself as some sort of a public interest litigant. He is not. He is a selfish litigant who is trying to profit personally from his years-long harassment of Leisnoi. Leisnoi has successfully fended off Stratman's extortion efforts for over twenty years.

It was Stratman's demand that Leisnoi convey Termination Point to him, personally, and Stratman's recording a <u>lis pendens</u> that led to the filing of this suit. As set forth in

---

standing. <u>See</u>, <u>Lee v. United States</u>, 809 F.2d 1406, 1410-11 (9th Cir.1987). No court has ever ruled Stratman has standing to sue to annul land patents.

41

the Affidavit of Edgar Paul Boyko, [Exc. 215-217] Stratman and his attorney came to the law offices of Leisnoi's counsel and demanded, among other things, conveyance to Stratman of Termination Point and thousands of acres of other Leisnoi land, plus $50,000 in cash, as the price for his dropping the decertification challenge and his motion for a preliminary injunction, trying to shut down all of Leisnoi's timber operations and freeze all its bank accounts.[14]

The history of Stratman's behavior reveals the greed and profit motive behind Stratman's litigations against Leisnoi. In 1982, he entered into a settlement agreement with Koniag, Inc., the Regional Native Corporation in the decertification case. The settlement provided not for the Native Corporation lands to be put in trust for the public, but for over 17,000 acres of land to be conveyed to him. [Exc. 172].

When Stratman realized that Koniag acquired only subsurface rights to the land, he sued Leisnoi to try to obtain the surface estate. He did not seek to have lands returned to the United States, or dedicated to the public, or put in some kind of a benevolent trust. He wanted the lands for himself, for his cattle operation, for his commercial guided horseback operation, for his commercial gravel extraction operation, for his self-interest. This Court rejected his efforts. See, Leisnoi, Inc. v. Stratman,

---

[14] The land Stratman demanded be conveyed is worth in excess of 25 million dollars [Exc. 213-214].

835 P.2d 1202 (Alaska 1992).

Stratman next attempted to obtain title to Leisnoi's land in Case No. 3KO-93-356 [Exc. 191-193]. Again, Stratman sought to have the land placed in his name, not returned to the public at large or placed in the name of the United States. This individual's litigations against Leisnoi reflect his economic interest in this case, as in all cases between Stratman and Leisnoi.

Vesting title to Termination Point in the name of Stratman or his designees as Stratman demanded as the price to settle his decertification challenge, would only have privately benefitted Stratman and his lawyer. Stratman also filed a suit for over ten million dollars against his former attorneys claiming that is the amount by which he would have personally profited from the decertification case but for alleged attorney malpractice. [Exc. 194-199]. Stratman did not sue to have any money paid to the United States, or to fund public good works, or to buy parklands. He sued to line his pockets with money.

Even if Stratman were a public interest litigant in his decertification case, a proposition that is obviously incorrect, that would not make him a public interest litigant in this suit. The decertification case has nothing directly to do with this state court suit to quiet title.

The two suit are not interchangeable. Judge Singleton remanded two separate suits that came to be on his docket.

He "remanded"[15] the 1976 decertification case to the Interior Board of Land Appeals and he properly remanded this quiet title case to state court. He did not consolidate the two separate suits, or stay one pending the outcome of the other. Stratman's efforts to extort Termination Point from Leisnoi, under threat of Stratman trying to decertify Leisnoi, does not establish Stratman as being a public interest litigant in this suit so as to excuse him from liability for Rule 82 attorneys fees.

It is apparent that Stratman has a personal economic interest in the outcome of both this case and the decertification case. He has invested thousands of dollars in an effort to force Leisnoi to convey to him land and money. He obtained personal rights to sand and gravel from Koniag under threat of decertification, and proceeded to sell portions thereof to a contractor, without notice to Leisnoi, the owner of the surface estate, and to pocket the proceeds [Exc. 250-264]. Stratman has not given the sales proceeds to the United States, although he contends that the patents were

---

[15]Technically, the order sending Stratman to the Interior Board of Land Appeals was not a "remand", since Stratman had not started there in the first place. A remand has been defined by the Ninth Circuit as meaning to send back to where the case originated for purposes of having some further action taken on it there. See, United States v. Lee, 786 F.2d 951, 955 (9th Cir. 1986). Stratman should have, but failed, to exhaust administrative remedies before filing suit. He has now been sent to the agency to do that, although technically the order sending him the agency is not a "remand".

improperly issued such that, according to Stratman, the property must be returned to the United States. He keeps the money he got from selling the gravel, just as he intends to keep the remaining gravel that he got from Koniag. That is personal interest, not public interest.

Leisnoi, faced with Stratman's threat to wreak economic devastation upon the corporation by freezing its bank accounts and enjoining its timber operations, responded to Stratman's outrageous demands with a letter containing a single word: "Nuts!" [Exc. 200][16]

While Stratman tries to hide under the fig leaf of public interest litigant status, his own conduct belies his assertion. Stratman is in this for the money. He fought this suit to try to preserve a method by which he could extort Termination Point from Leisnoi. Stratman plainly had an economic motive in fighting this suit:

> Where the sums at stake in the controversy are sufficiently large to prompt suit regardless of the public interest, an award of attorney's fees against the losing party has been found reasonable... Similarly, questions which primarily affect the private rights of the parties before the court lack the requisite public character to

---

[16]Stratman's lawyer responded to the one word letter with a letter threatening Leisnoi's attorneys and directors that they would be sued by shareholders if Leisnoi did not settle with Stratman [Exc. 201-206]. The letter described how Stratman had first wanted 6,200 acres of land plus cash, but claimed that now "we would want more". The letter, like the other evidence discussed herein, demonstrates that Stratman is acting for personal profit, not for the public interest, so he is not excused from liability for the prevailing party's Rule 82 attorneys fees.

45

>     prohibit an award, even if some public or
>     constitutional issues are involved.

Thomas v. Bailey, 611 P.2d 536, 539 n.9 (Alaska 1980) (citation omitted).

Stratman had an economic motive in fighting this suit. He does not meet the fourth part of the public interest test. He cannot qualify as a public interest litigant. Anchorage Daily News v. Anchorage School District, 803 P.2d 402, 404 (Alaska 1990); Murphy v. City of Wrangell, 763 P.2d 229, 233 (Alaska 1988).[17] The settlement demands he made are blatantly inconsistent with his claim of public interest litigant status.

Before Judge Von der Heydt, Stratman's contingency fee lawyer, Michael Schneider, stated "We just want to get all their land and all their money. And, yes, it's true, we want to shut them down, we want to take them off the map. That's the object of our endeavor." [Exc. 208] The context of the remarks in no way indicates that Schneider was referring to "we" meaning the United States, who was represented by its own counsel; the "we" referred to Mr. Schneider and his

---

[17]Public interest litigants normally bring suits, rather than defend them, as Stratman did in this case. As a defendant, Stratman lacks standing to claim public interest litigants status. As Stratman himself noted at page 1 of his motion for reconsideration, "Mr. Stratman is the defendant. He did not 'file suit.'" He therefore fails to meet the fourth prong of the public interest litigant test: "Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance?" Anchorage Daily News, 803 P.2d at 404.

client, Stratman. Having admitted the above, Stratman cannot now contend that he has not been trying to get land and money.

Stratman is no public interest litigant. Stratman wrongfully polluted and clouded Leisnoi's title to Termination Point, with frivolous claims, necessitating this suit to quiet title. Stratman needlessly increased the cost of this litigation by removing this case to federal court, then continuing to raise baseless jurisdictional theories. Stratman lost. He should now pay Rule 82 attorneys fees.

### VII. CONCLUSION

For the foregoing reasons, the Superior Court's decision should be affirmed in its entirety.

DATED at Anchorage, Alaska, this 12th day of March, 1998.

EDGAR PAUL BOYKO and ASSOCIATES
Attorneys for Appellee Leisnoi, Inc.

By: _____
    Edgar Paul Boyko

By: _____
    Robert L. Breekberg