**Exhibit E**

**Alaska Supreme Court's decision in Stratman v. Leisnoi,
969 P.2d 1139 (Alaska 1998)**

Omar STRATMAN, Appellant,

v.

LEISNOI, INC., Appellee.

No. S-8103.

Supreme Court of Alaska.

Dec. 18, 1998.

Native village brought quiet title action against holder of grazing lease, who also claimed recreational use rights, relating to parcel for which native village held land patent. The Superior Court, Third Judicial District, Anchorage, Stephanie E. Joannides, J. pro tem., granted summary judgment for native village. Holder of grazing lease appealed. The Supreme Court, Compton, J., held that it was appropriate to stay quiet title action, as pending action before Interior Board of Land Appeals (IBLA) challenging village's certification under Alaska Native Claims Settlement Act (ANCSA) could affect village's title to the parcel.

Vacated and remanded with instructions.

1. Courts ⚖489(1)

Federal court, rather than state court, had jurisdiction to determine merits of action by holder of grazing lease to decertify native village that was established under Alaska Native Claims Settlement Act (ANCSA) and that had received disputed land patents.

2. Indians ⚖12

Equitable remedy of undoing transaction in which native village received land patents would be available if village lost its certification as native village under Alaska Native Claims Settlement Act (ANCSA), since village would then be unable to claim ANCSA's preemption of common law remedies.

3. Lis Pendens ⚖7

Administrative proceeding, before Interior Board of Land Appeals (IBLA), to decertify native village previously established under Alaska Native Claims Settlement Act (ANCSA) was "pending" for purposes of lis pendens statute, though IBLA itself did not have jurisdiction over the disputed land patent grants to village, as IBLA decision decertifying village would be step in course of action that could affect interests of subsequent purchasers and encumbrancers. AS 09.45.940.

See publication Words and Phrases for other judicial constructions and definitions.

4. Action ⚖69(7)

It was appropriate to stay native village's state court quiet title action relating to parcel for which village had received land patent, as pending action before Interior Board of Land Appeals (IBLA) challenging village's certification under Alaska Native Claims Settlement Act (ANCSA) could affect village's title to the parcel.

Michael J. Schneider and Eric R. Cossman, Law Offices of Michael J. Schneider, P.C., Anchorage, for Appellant.

Edgar Paul Boyko and Robert L. Breckberg, Edgar Paul Boyko and Associates, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, FABE, and BRYNER, JJ.

*OPINION*

COMPTON, Justice.

I. *INTRODUCTION*

Leisnoi, Inc. sued Omar Stratman to quiet title to a parcel of property referred to hereafter as "Termination Point." The superior court granted summary judgment and awarded attorney's fees to Leisnoi. We vacate those decisions and remand with an order to enter a stay, as explained below.

II. *FACTS AND PROCEEDINGS*

In 1974 the Secretary of the Interior certified Leisnoi, under the Alaska Native Claims Settlement Act (ANCSA), as the village corporation for Woody Island. This certification entitled Leisnoi to select lands to be patented to it by the United States. The lands Leisnoi selected included parcels on which Stratman held federal or state grazing leases and parcels that Stratman allegedly used for re-

creational purposes. In 1976 Stratman, and others, commenced an action in federal district court against the Secretary of the Interior seeking to decertify Leisnoi, to enjoin the United States from patenting to Leisnoi any of the lands that Leisnoi had selected, and to void any conveyances already made to Leisnoi. The district court dismissed the case as to most plaintiffs for failure to exhaust administrative remedies, but permitted Stratman and one other plaintiff to amend their complaint. The court determined that they were entitled to actual (as opposed to merely constructive) notice of Leisnoi's pending certification due to their record interests in grazing leases. They had not received such notice. Leisnoi then quitclaimed any interest in lands subject to the above mentioned leaseholds. The district court then dismissed Stratman's action, finding that there was no longer any "case or controversy." Stratman appealed, arguing that, as a recreational user of the land in question, he had an interest sufficient to entitle him to pursue the decertification action against the Secretary of the Interior.

On appeal, the United States Court of Appeals for the Ninth Circuit determined that Stratman's previous use of the land for "hunting, camping, picnicking, and photography" was sufficient to show an injury particular to Stratman resulting from Leisnoi's removal of this land from the public domain. The court determined that this injury would be redressable "by enjoining the defendant's removal of the land from the public domain." The court further concluded that, even though it was only Stratman's record interest that had entitled him to actual notice (and thus excused him from exhausting his administrative remedies) in the first place, Leisnoi's quitclaim could not retroactively extinguish his right to that notice. The court remanded Stratman's case to the district court for further proceedings. The year was 1981.

In 1980 Leisnoi had merged with Koniag, Inc., the regional corporation for the area. In 1981 a Leisnoi shareholder filed a derivative action seeking to undo the merger (hereinafter the "demerger litigation"). In 1982 Stratman and the merged Leisnoi/Koniag entered into a settlement agreement whereby Stratman agreed to dismiss his decertification suit and Leisnoi/Koniag agreed to sell certain lands to Stratman, to be conveyed by quitclaim deed. After the execution of the settlement agreement in March 1982, Stratman dismissed the decertification litigation. In 1983 Leisnoi and Koniag settled the demerger litigation, with court approval, by rendering the merger *void ab initio*.

In 1985 Leisnoi received a patent to the surface rights of the land at issue in the decertification-litigation settlement agreement. Stratman sought to enforce the settlement agreement, but Leisnoi refused to honor it. In 1988 Stratman successfully pursued an action in superior court to enforce the settlement agreement, and Leisnoi appealed. In 1992 this court ruled that Leisnoi was not bound by the decertification-litigation settlement agreement—no enforceable contract existed between Stratman and Leisnoi.

Stratman recorded a lis pendens against the lands that had been patented to Leisnoi in 1985 and moved the federal district court to reopen his decertification suit. The court denied this motion and Stratman appealed. During the pendency of this appeal, Leisnoi moved the court to expunge the lis pendens. The court denied this motion without prejudice. On appeal, the United States Court of Appeals for the Ninth Circuit concluded that the district court had abused its discretion in denying the decertification motion, and reversed. In 1995 the federal district court entered the order reopening Stratman's decertification suit. Leisnoi again moved to expunge the lis pendens. The court denied this motion. Soon thereafter, it entered an order "remanding" the case to the Interior Board of Land Appeals (IBLA) for it to determine in the first instance whether Leisnoi had been properly certified. IBLA has yet to make this determination.

In 1996 Leisnoi filed this action in superior court to quiet title to a parcel of land known as Termination Point, which is part of the land patented to Leisnoi in 1985. Stratman removed this action to federal district court. Stratman also filed a partial release of his lis pendens, which would permit Leisnoi to con-

vey Termination Point to the Exxon Valdez Oil Spill Trustees (EVOS). Such a conveyance was Leisnoi's asserted reason for bringing the quiet-title action. The federal district court remanded the action back to the state court, explaining that this was "an action to quiet title under state law which does not present a federal question. Whether the state court has jurisdiction is a matter to be decided in that court." Following this remand, Leisnoi moved for summary judgment, arguing that, even if Stratman's decertification action succeeded, it could not affect Leisnoi's title to Termination Point. Stratman filed a cross-motion to dismiss, or to stay pending determination of the federal action. The superior court found that Stratman has no interest in title to Termination Point and that he lacks standing to sue to challenge the patent from the United States. The final judgment quieted title to Termination Point in Leisnoi and barred Stratman "from asserting, individually or on behalf of others, any claim in Termination Point adverse to Leisnoi, Inc." The superior court also awarded attorney's fees to Leisnoi, finding that Stratman is not a public-interest litigant.

Stratman appeals.

III. STANDARD OF REVIEW

We review a grant of summary judgment de novo. We will affirm when the record presents no genuine issues of material fact and one party is entitled to judgment as a matter of law. We draw all reasonable inferences in favor of the non-moving party. See *Arctic Tug & Barge v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1200 (Alaska 1998).

IV. DISCUSSION

*Can the Superior Court Resolve the Quiet–Title Action at this Time?*

Stratman's principal argument is essentially that a state court has no jurisdiction to adjudicate the merits of his decertification action. He maintains that, in order to quiet title to Termination Point, it is necessary to adjudicate the merits of the decertification action.[1] As explained above, Leisnoi does not directly contest this point. Rather, Leisnoi argues that the state court has jurisdiction to quiet title to the lands in question, and that there is nothing Stratman can do to affect Leisnoi's title.

They are both correct, to a degree. Stratman makes no credible argument that the state does not have jurisdiction to quiet title to the land, standing alone. Leisnoi makes no argument that the state does have jurisdiction to determine the merits of Stratman's decertification action. The superior court did not see itself as determining the merits of the decertification action. The question it purportedly resolved was whether the decertification suit, even if successful, could cast a cloud over Leisnoi's title to Termination Point.

[1] The essential question on appeal is whether the superior court must, in fact, determine the merits of the decertification action in order to quiet title to Termination Point. If it would have to do so, then, although the state court will, at some point, be able to quiet title to the lands in question, it must wait until the necessary issue has been finally resolved, either by settlement or in federal court—the only court with jurisdiction to finally determine the merits of the decertification action.

A. *If Stratman Succeeds in His Decertification Action, Would the Federal District Court Have the Power To Grant a Remedy Affecting Leisnoi's Title to Termination Point?*

[2] Leisnoi contends that Stratman's decertification action cannot affect Leisnoi's title to Termination Point. Stratman does not contest the superior court's determination

---

1. Leisnoi mischaracterizes Stratman's principal argument when it suggests that "Stratman argues that there is federal rather than state jurisdiction over this quiet title suit.... Stratman now asks that this Court find that the [federal courts] were wrong; he argues that the federal district court [did, in fact, have] jurisdiction."

   Stratman's principal argument is not that the state court has no jurisdiction over the quiet-title action, but that the state court has no jurisdiction to adjudicate an *issue* essential to the resolution of that action—i.e. whether Leisnoi was properly certified under ANCSA.

that he cannot directly challenge the patent conveying Termination Point to Leisnoi. He argues, instead, that the federal district court may, as a remedy in his decertification action, equitably undo the transaction whereby Leisnoi received that patent.

The superior court concluded that the federal district court would not be able to equitably "undo" that transaction. It observed that, in *Lee v. United States*, 629 F.Supp. 721, 729 (D.Alaska 1985), the court addressed the question of equitable remedies within the framework of ANCSA. In *Lee*, the court held that ANCSA preempted common-law remedies:

> Congress intended ANCSA to "occupy the field" in this area and to preempt any common-law theories or other statutory claims that individuals might assert. Given the extensive set of provisions in ANCSA delineating the rights of individual claimants to ANCSA-conveyance lands, any attempt to supplement these provisions with common-law remedies, such as the constructive-trust theory advanced by plaintiffs, would represent an attempt to *alter* the comprehensive legislative scheme adopted by Congress in ANCSA, rather than to "*fill a gap*" that Congress has not occupied, and would therefore be an impermissible application of federal common law.

*Id.* (citing *City of Milwaukee v. States of Illinois & Michigan*, 451 U.S. 304, 314, 319, 324 & n. 8, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981)). The Ninth Circuit adopted that reasoning in *Donnelly v. United States*, 850 F.2d 1313, 1321 (9th Cir.1988).

There is a critical difference, however, between *Lee/Donnelly* and the instant case. *Lee* and *Donnelly* involved claims that land had been improperly conveyed to certain native villages. *See Lee*, 629 F.Supp. at 728; *Donnelly*, 850 F.2d at 1321. Neither case involved a claim that the native village to which the land had been conveyed had been improperly certified. It is axiomatic that, if it is determined that Leisnoi was not properly certified under ANCSA, then the provisions of ANCSA no longer apply, and never should have applied, to transactions involving Leisnoi. Put simply—if Leisnoi is decertified, it can no longer argue that ANCSA preempts all common-law remedies that could be imposed, because ANCSA would no longer apply at all. It would be ironic if Leisnoi (assuming that Stratman is ultimately victorious in the decertification action) could perpetrate a fraud on the public, obtaining title to land under the guise of a legitimate ANCSA corporation, and then avoid making restitution on the grounds that ANCSA provides no explicit remedy for such an occurrence.

We conclude that if Stratman is successful in his decertification litigation, the federal district court would have the power to grant a remedy affecting Leisnoi's title to Termination Point.

### B. Is Stratman's Decertification Action Still "Pending" for Purposes of the Lis Pendens Recorded against Termination Point?

[3] The superior court found that Stratman's decertification case had been remanded to IBLA and that IBLA lacks jurisdiction over the patented lands:

> Although the IBLA has the authority to hear Stratman's decertification action, it has no authority to impose a constructive trust on the lands patented regardless of the outcome.... Were Stratman successful in decertifying Leisnoi, he would still be required to bring an action in federal court to impose the remedy of a constructive trust.

Leisnoi further explains that "[t]he Ninth Circuit has already rejected Stratman's argument that the final judgment did not send the case in its entirety to the IBLA," and notes that "this court has ruled that 'when no appeal is taken a dismissal terminates the operation of a lis pendens with respect to that action.'" In fact, the quote is "*Generally*, when no appeal is taken...." *Blake v. Gilbert*, 702 P.2d 631, 642 (Alaska 1985) (emphasis added) (*overruled on other grounds by Bibo v. Jeffrey's Restaurant*, 770 P.2d 290, 296 n. 9 (Alaska 1989)).

We have held that AS 09.45.940, the lis pendens statute, simply provides "a convenient method for giving constructive notice to subsequent purchasers and encumbrancers

that their interests may be affected by a pending action." *Leisnoi v. Stratman*, 835 P.2d 1202, 1210 n. 17 (Alaska 1992) (referring to statute's former numbering, AS 09.45.790). Because Stratman currently pursues a course (albeit currently before an administrative body) that may affect the interests of "subsequent purchasers and encumbrancers," it would best serve the purpose of the lis pendens statute to determine that Stratman's action is still "pending" for purposes of the lis pendens.

From a technical standpoint, argues Leisnoi, the federal district court dismissed, in a final judgment, Stratman's decertification claim, albeit without prejudice to his filing another action after IBLA renders its decision. Leisnoi suggests that, because Stratman has no case currently pending in federal court that could affect Leisnoi's title to Termination Point, title should be quieted in Leisnoi.[2]

We conclude that this attempt to elevate form over substance has no merit. Even assuming, as Leisnoi does, that the federal district court did not retain jurisdiction over the case when it remanded the case to IBLA, the court's comments make absolutely clear that it viewed the remand to IBLA as but another step in the ongoing overall action, and not as a final resolution. The court simply wished to have the agency use its expertise to determine, in the first instance, whether Leisnoi had been properly certified.[3] We conclude that Stratman's decertification action is still pending for purposes of the lis pendens filed against Termination Point. Stratman should, at the earliest opportunity, reform the lis pendens to reflect the current state of the ongoing litigation.

### C. *Resolution*

[4] Because the superior court has jurisdiction over the quiet-title action, but may not determine the merits of Stratman's decertification action, and because Stratman's decertification action may yet affect Leisnoi's title to Termination Point, the appropriate resolution would have been to stay the quiet-title action pending the final resolution of Stratman's decertification action. We conclude that the superior court abused its discretion in failing to issue such a stay.

### D. *Attorney's Fees*

Because there is, at this time, no prevailing party, we vacate the award of attorney's fees. The superior court may award attorney's fees after the decertification litigation is finally resolved, and it then resolves this quiet-title action.

### V. *CONCLUSION*

We VACATE the decisions quieting title to Termination Point in favor of Leisnoi and awarding attorney's fees to Leisnoi. We REMAND the case with instructions to enter a stay pending the final resolution of the decertification litigation.

EASTAUGH, Justice, not participating.



---

2. Leisnoi's argument that Stratman cannot sue to annul the patent is irrelevant. Nothing appears to bar Stratman from filing an action in federal court, if and after he succeeds before IBLA, to impose a constructive trust on the lands patented to Leisnoi. For the same reason, Leisnoi's argument that the statute of limitations has elapsed on any suit that the United States might bring is equally irrelevant. Stratman's original case was filed well before the six-year limitations period expired. It was, in fact, filed prior to the issuance of the patent and sought prospective injunctive relief.

3. The court noted that "[t]hat course [remanding to IBLA] will permit exhaustion of administrative remedies, albeit belated, and give the Court the benefit of the agency's expertise" and that "[i]t was never my expectation that this case would finally be resolved at the administrative level. Once an agency decision was reached, I assumed that the parties would file a new action and return to federal court.... Whether the Agency erred or not is an issue I prefer to decide at a later time after I have the benefit of the Agency's decision."