Michael J. Schneider
Law Offices of Michael J. Schneider, P.C.
880 "N" Street, Suite 202
Anchorage, AK 99501
(907) 277-9306 - phone
(907) 274-8201 - fax

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| OMAR STRATMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LEISNOI, INC., KONIAG, INC., and ) | |
| DIRK KEMPTHORNE, Secretary of the ) | |
| Interior, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| _____) | |
| ) | |
| KONIAG, INC., ) | |
| ) | |
| Counter-claimant, ) | Case No.: 3:02-cv-0290 (JKS) |
| ) | |
| v. ) | |
| ) | |
| OMAR STRATMAN, ) | |
| ) | |
| Counter-claimed ) | |
| Defendant. ) | |
| _____) | |

**OMAR STRATMAN'S OPPOSITION TO MOTIONS TO DISMISS HIS APA CLAIM
BASED UPON THE FEDERALLY RECOGNIZED INDIAN TRIBE LIST ACT OF 1994[1]**

---

[1]The Act is attached as Exhibit 1.

# **TABLE OF CONTENTS**

I.    Introduction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   Leisnoi's status as an eligible Native Village was not ratified
      by its inclusion in the list of Federally Recognized Tribes  . . . . . . . . . . . . . . . .  2

III.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

# **EXHIBITS**

Exhibit 1    Federally Recognized Indian Tribe List Act of 1994

Exhibit 2    IBLA Decision dealing with FRITLA, pp. 315-320

Exhibit 3    House Report No. 103-781

## I.    Introduction

Leisnoi has filed a motion to dismiss Mr. Stratman's APA claim relying upon Federal Rule of Civil Procedure 12(b)(1) and contending that Mr. Stratman's APA challenge is moot because Congress, through the Federally Recognized Indian Tribe List Act of 1994 (hereinafter "FRITLA"), ratified Leisnoi's status as an ANCSA village corporation.[2]

Koniag joins this effort through its "Motion to Dismiss for Mootness Under the Federally Recognized Indian Tribe List Act"[3] which relies, by reference, on Leisnoi's filings.

Thus far, in briefing before the ALJ and before IBLA, the Federal Defendant has done no more than argue that Leisnoi's inclusion on the Tribal Entities List caused it to qualify as a "traditional village" within the meaning of 43 C.F.R. §2651.2(b)(2), which provides that no traditional village shall be disqualified for certification "by reason of having been temporarily unoccupied in 1970 because of act of God or governmental authority occurring within the preceding ten years."[4]

As IBLA has found, and as Mr. Stratman will explain more fully below, Leisnoi's inclusion in the list of Federally Recognized Tribes did not amount to Congressional ratification of its status as an eligible Native Village under ANCSA.

---

[2]Leisnoi's motion and attachments can be found at Docket No. 111.  Leisnoi's related memorandum can be found at Docket No. 112.

[3]Docket No. 144.

[4]The portion of IBLA's decision dealing with the FRITLA issue is found at AR, Tab D, 157 IBLA 315-320 and is attached hereto as Exhibit 2.  The point last made is addressed at the top of 157 IBLA 317.

II.    **Leisnoi's status as an eligible Native Village was not ratified by its inclusion in the list of Federally Recognized Tribes**.

Koniag and Leisnoi argue that Leisnoi's status as an eligible ANCSA Native Village was ratified by its inclusion in the list of Federally Recognized Tribes under FRITLA.  They argue that this recognition as a "tribe" under FRITLA establishes Leisnoi as an eligible "Native village" within the meaning of ANCSA and that Section 103(4) of FRITLA which provides that a "tribe which has been recognized . . . may not be terminated except by an act of Congress[,]" bars Mr. Stratman's APA claim.  Koniag and Leisnoi argue that Leisnoi may not now be undone, except by another act of Congress.

There are many reasons why Koniag and Leisnoi are wrong in their analysis.

First, FRITLA does not expressly provide that the inclusion of an entity in the list of federally recognized tribes establishes that the entity constitutes an eligible Native Village under ANCSA.  It only provides that an entity listed in the list of federally recognized tribes constitutes a "tribe."  A "tribe" is not the same as an eligible "Native Village."  An entity can constitute a "tribe" and still not constitute a "Native Village" under ANCSA.  This is demonstrated by ANCSA's definition of "Native village."  Section 3(c) of ANCSA defines "Native village" as "any *tribe*, band, clan, group, village, community or association in Alaska . . . which meets the requirements of this Act":

> (c) "Native village" means any *tribe*, band, clan, group, village, community or association in Alaska . . . which meets the requirements of this Act, and which the Secretary determine was, on the 1970 census enumeration date (as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instances), composed of twenty-five or more Natives;"

43 U.S.C. § 1602(c) (emphasis added).

-2-

Consequently, a "tribe" must still satisfy ANCSA's statutory and regulatory criteria for village eligibility in order to constitute a Native Village under ANCSA. That a "tribe" does not itself constitute a Native Village is underscored by ANCSA's definition of "Native group," which provides that a "Native group" means "any *tribe*, band, clan, group, village, community or village association in Alaska composed of less than twenty-five Natives, who comprise a majority of the residents of the locality." 43 U.S.C. § 1602(d).

Because neither FRITLA nor ANCSA provide that a federally recognized "tribe" constitutes an eligible Native village under ANCSA, Leisnoi's inclusion in the list of federally recognized tribes does not establish that it is an eligible Native village.

Nor does FRITLA expressly modify or repeal ANCSA's village eligibility requirements as to the tribes listed in the list of federally recognized tribes.[5] As is the case with the issue of whether Leisnoi's status as an eligible Native Village was legislatively ratified by Section 1427 of ANILCA, the real issue is whether the Federally Recognized Indian Tribe List Act of 1994 "impliedly repealed" ANCSA's village eligibility requirements as to the entities listed in the list of federally recognized tribes. Determination of this issue is governed by several well-established canons of statutory construction, including:

    1) that repeals by implication are not favored, and that the proponent of a request

---

[5] Every "Tribal Entity's List" is significantly longer than the list of currently recognized ANCSA "Native Villages." We are unable to find any tribal entity that argues, as Leisnoi and Koniag now argue, that their inclusion on the Tribal Entities List entitle them to ANCSA benefits and established the tribal entity as an ANCSA "Native Village." Nor have we been able to locate any evidence that the Secretary has, heretofore, acknowledged, treated, and rewarded tribal entities that have not been recognized as ANCSA "Native Villages" in a manner consistent with village status. This may explain the Federal Defendant's failure, thus far, to join Koniag and Leisnoi in asserting this most creative argument.

for a determination of repeal by implication "bears a heavy burden of persuasion;"

2)  that when two statutes are capable of co-existence, it is the duty of the courts to regard each as effective, absent a clearly expressed congressional intention to the contrary;

3) that a congressional intent to repeal must be "clear and manifest;" and

4) that in the absence of a clear and manifest intent to repeal, the provisions of both statutes must be given effect unless they are in "irreconcilable conflict" in the sense that there is a "positive repugnancy" between them.

In Posadas v. National City Bank of New York, 296 U.S. 497, 56 S.Ct. 349 (1936), the Supreme Court summarized the application of these maxims as follows:

> The amending act just described contains no words of repeal; and if it effected a repeal of section 25 of the 1913 act, it did so by implication only.  The cardinal rule is that repeals by implication are not favored.  Where there are two acts upon the same subject, effect should be given to both if possible.  There are two well-settled categories of repeals by implication; (1) Where provision in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.  But, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the later act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment . . ..
>
> The implication of which the cases speak must be a necessary implication.  Wood v. United States, 16 Pet. 342, 362, 363, 10 L.Ed 987.  It is not sufficient, as was said by Mr. Justice Story in that case, "to establish, that subsequent laws cover some or even all of the cases provided for by [the prior act]; for they may be merely affirmative, or cumulative or auxiliary."  The question whether a statute is repealed by a later one

-4-

> containing no repealing clause, on the ground of repugnancy
> or substitution, is a question of legislative intent to be
> ascertained by the application of the accepted rules for
> ascertaining that intention.

296 U.S. at 503-504, 56 S.Ct. at 352 (citations omitted).

In <u>Amell v. United States</u>, 384 U.S. 158, 86 S. Ct. 1384 (1966), the Supreme Court

held that the proponent of a request for a determination of repeal by implication "bears a

heavy burden of persuasion." 384 U.S. at 165-66, 86 S.Ct. at 1388.

In <u>Morton v. Mancari</u>, 417 U.S. 535, 94 S. Ct. 2474 (1974), the Supreme Court held

that a statutory employment preference for the hiring of Indians by the Bureau of Indian

Affairs was not impliedly repealed by the enactment of the Equal Employment Opportunities

Act of 1972. The Court held that the courts "are not at liberty to pick and choose among

congressional enactments," and when two statutes are capable of coexistence, it is the duty

of the courts to regard each as effective, absent a "clear and manifest" congressional

intention to the contrary:

> Appellees encounter head-on the "cardinal rule . . . that repeals
> by implication are not favored." <u>Posadas v. National City Bank</u>,
> 296 U.S. 497, 56 S. Ct. 349, 352, 80 L.Ed. 351 (1936); <u>Wood
> v. United States</u>, 16 Pet. 342-343, 363, 10 L.Ed. 987 (1842);
> <u>Universal Interpretative Shuttle Corp., v. Washington
> Metropolitan Area Transit Comm'n</u>, 393 U.S. 186, 193, 89 S.
> Ct. 354, 358, 21 L. Ed. 2d 334 (1968). They and the District
> Court read the congressional silence as effectuating a repeal
> by implication. There is nothing in the legislative history,
> however, that indicates affirmatively any congressional intent
> to repeal the 1934 preference. Indeed, as explained above,
> there is ample independent evidence that the legislative intent
> was to the contrary.
>
> This is a prototypical case where an adjudication of repeal by
> implication is not appropriate. The preference is a
> longstanding, important component of the Government's Indian

program. The anti-discrimination provision, aimed at alleviating minority discrimination in employment, obviously is designed to deal with an entirely different problem. Any perceived conflict is thus more apparent than real.

In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable. Georgia V. Pennsylvania R. Co., 324 U.S. 439, 456-457, 65 S.Ct. 716, 725-726, 89 L.Ed. 1051 (1945). Clearly, this is not the case here. A provision aimed at furthering Indian self-government by according an employment preference within the BIA for qualified members of the governed group can readily co-exist with a general rule prohibiting employment discrimination on the basis of race. Any other conclusion can be reached only by formalistic reasoning that ignores both the history and purposes of the preference and the unique legal relationship between the Federal Government and tribal Indians . . ..

The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. "When there are two acts upon the same subject, the rule is to give effect to both if possible . . .. The intention of the legislature to repeal 'must be clear and manifest.'" United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939). In light of the factors indicating no repeal, we simply cannot conclude that Congress consciously abandoned its policy of furthering Indian self-government when ti passed the 1972 amendments.

417 U.S. at 549-51, 94 S. Ct. at 2482-83.

In Radzanower v. Touche Ross & Co., 426 U.S. 148, 96 S.Ct. 1989 (1976), the Supreme Court held that the enactment of venue provisions in the Securities Exchange Act did not impliedly repeal the venue provision in the National Bank Act:

The issue thus boils down to whether a "clear intention otherwise" can be discovered–whether, in short, it can be fairly concluded that the venue provision of the Securities Exchange

Act operated as a *pro tanto* repeal of §94. "It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored." <u>United States v. United Continental Tuna Corp.</u>, 425 U.S. 164, 168, 96 S.Ct. 1319, 1323, 47 L.Ed. 2d 653, 658. There are, however,

> "two well-settled categories of repeals by implication–(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest . . .." <u>Posadas v. National City Bank</u>, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351, 355.

It is evidence that the "two acts" in this case fall into neither of those categories. The statutory provisions at issue here cannot be said to be in "irreconcilable conflict" in the sense that there is a positive repugnancy between them or that they cannot mutually coexist. It is not enough to show that the two statutes produce different results when applied to the same factual situation, for that no more than states the problem. Rather, "when two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." <u>Morton v. Mancari</u>, <u>supra</u>, 417 U.S., at 551, 94 S.Ct. at 2483, 41 L. Ed. 2d at 301. As the Court put the matter in discussing the interrelationship of the anti-trust laws and the securities laws: "Repeal is to be regarded as implied only if necessary to make the [later enacted law] work, and even then only to the minimum extent necessary. This is the guiding principle to reconciliation of the two statutory schemes." <u>Silver v. New York Stock Exchange</u>, 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed. 2d 389, 400.

426 U.S. at 155-56, 96 S. Ct. at 1993-94 (footnotes omitted). In determining that the statutes were not in irreconcilable conflict, the Court emphasized that both statutes had been enacted for different purposes, and that implied repeal of the venue provisions in the

National Bank Act was not "necessary" in order "to make the Securities Exchange Act work."  426 U.S. at 156-57, 96 S.Ct. 1994.

In Watt v. Alaska, 451 U.S. 259, 101 S.Ct. 1673 (1981), the Supreme Court held that an amendment to the Wildlife Refuge Revenue Sharing Act did not impliedly repeal an inconsistent provision in the Mineral Leasing Act of 1920.  The Court concluded that the language and legislative history of the amendment did not evidence a "clear and manifest" congressional intent to repeal the provisions of the Mineral Leasing Act:

> These cases involve two statutes, each of which by its literal terms applies to the facts before us.  Restatement of the terms of § 401(a) cannot answer which statute Congress intended to control.  Recognizing this, the Secretary invokes the maxim of construction that the more recent of two irreconcilably conflicting statutes governs.  2A C. Sands, Sutherland on Statutes and Statutory Construction § 51.02 (4th ed. 1973). Without depreciating this general rule, we decline to read the statutes as being in irreconcilable conflict without seeking to ascertain the actual intent of Congress. Our examination of the legislative history is guided by another maxim: "'repeals by implication are not favored,'" Morton v. Mancari, 417 U.S., at 549, 94 S.Ct., at 2482, quoting Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). "The intention of the legislature to repeal must be 'clear and manifest.'" United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939), quoting Red Rock v. Henry, 106 U.S. 596, 602, 27 L.Ed. 251 (1883).  We must read the statutes to give effect to each if we can do so while preserving their sense and purpose. Mancari, supra, 417 U.S., at 551, 94 S.Ct., at 2483; see Haggar Co. v. Helvering, 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940).

101 S.Ct. at 1678.

In Blanchette v. Connecticut General Insurance Corps., 419 U.S. 102, 95 S.Ct. 335 (1974), the Supreme Court held that the Regional Rail Reorganization Act did not impliedly repeal an inconsistent remedy provided in the Tucker Act.  The Court concluded that the

legislative history of the Rail Act was ambiguous as to whether Congress intended to repeal

the Tucker Act remedy, and that, absent a clearly expressed congressional intent to the

contrary, the Rail Act cold not be construed as repealing the provisions of the earlier Tucker

Act:

> In sum, we cannot find that the legislative history supports the argument that the Rail Act should be construed to withdraw the Tucker Act remedy.  The most that can be said is the Rail Act is ambiguous on the question.  In that circumstance, applicable canons of statutory construction require us to conclude that the Rail Act is not to be read to withdraw the remedy under the Tucker Act.
>
> One canon of construction is that repeals by implication are disfavored.  Rather, since the Tucker Act and the Rail Act are "capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed. 2d 290 (1974).  Moreover, the Rail Act is the later of the two statutes and we agree with the Special Court:
>
> "A new statute will not be read as wholly or even partially amending a prior one unless there exists a 'positive repugnancy' between the provisions of the new and those of the old that cannot be reconciled . . ..  This principle rests on a sound foundation.  Presumably Congress had given serious thought to the earlier statute, here the broadly based jurisdiction of the Court of Claims.  Before holding that the result of an earlier consideration has been repealed or qualified, it is reasonable for a court to insist on the legislature's using language showing that it has made a considered determination to that end . . .." 384 F. Supp., at 943.

419 U.S. at 133-34, 95 S.Ct. at 353-54 (citations omitted).

In Rodriguez v. U.S., 480 U.S. 522, 107 S.Ct. 1391 (1987), the Supreme Court held

that a new statute imposing an additional sentence on persons who commit a felony while

on release pending judicial proceedings, did not impliedly repeal the provisions of a prior statute authorizing federal judges to suspend the execution of sentences.  The Court held that the legislative history of the new statute did not contain the type of "clear and manifest" evidence of congressional intent necessary to establish repeal by implication, even though it contained references to such intent:

> Since § 3147 does not explicitly divest sentencing judges of their authority under § 3651, the Court of Appeals' judgment amounts to the conclusion that § 3147 is an implicit partial repeal of § 3651.  It is well settled, however, that repeals by implication are not favored, see, e.g., TVA v. Hill, 347 U.S. 153, 189, 98 S.Ct. 2279, 2299, 57 L.Ed. 2d 117 (1978), and will not be found unless an intent to repeal is "clear and manifest." United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939) (quoting Red Rock v. Henry, 106 U.S. 596, 602, 1 S.Ct. 434, 439, 27 L.Ed. 251 (1883)).  Nothing in the language of these two provisions suggests the existence of the ""irreconcilable conflict,""Kremer v. Chemical Construction Corp., 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed. 2d 262 (1982) (citations omitted), from which an intent to repeal may be inferred.  To the contrary, the provisions fit together quite sensibly . . ..
>
> The Court of Appeals rested its conclusion in part on the legislative history of the CCCA, noting that various Senate and House Reports referred to § 3147 as establishing a "mandatory" sentence, as prescribing a "term of imprisonment of at least two years and not more than ten, " and as "requiring[ing] that the individual be imprisoned for an additional period of time." See 794 F.2d, at 26-29.  Even if unrebutted, these passing references would not constitute the "clear and manifest" evidence of congressional intent necessary to establish repeal by implication.  In fact, however, the totality of the legislative history of the Act demonstrates with unusual clarity that no repeal was intended . . ..

107 S.Ct. at 1392-93.

The Interior Board of Land Appeals has also recognized, and applied, these maxims

in construing whether a statute was impliedly repealed by a subsequent legislative enactment. In Appeal of Kenneth F. Cummings, 62 IBLA 206 (March 10, 1982), the Board held that the Mineral Leasing Act of 1920 did not impliedly repeal a prior statutory withdrawal of specified lands from entry under the mineral laws of the United States:

> We are unable to construe the Mineral Leasing Act of February 25, 1920, as having repealed the 1914 Act by implication, nor has appellant pointed out any language or rationale by which such a conclusion might reasonably be supported. Moreover, repeal of a statute by implication is not favored in law, and there is a presumption against the implied repeal or amendment of any statutory provision. 1A Sutherland Statutory Construction, §§ 22.30, 23.10 (4th ed. 1972). Rebuttal of that presumption generally requires that there be an irreconcilable conflict between an earlier and a later statute. Peabody Coal Co., 4 IBLA 303 (1972).

62 IBLA at 209.

In City of Phoenix v. Alvin B. Reeves et al., 14 IBLA 315, 81 I.D. 65 (February 1, 1974), the board held a withdrawal of lands, by executive order, was not impliedly repealed by a subsequent legislative enactment:

> The withdrawal was by executive order. Executive orders have the force and effect of law, and rules of statutory construction apply to them. Repeal of an executive order or statute may be either express or implied. However, there is a strong presumption against implied repeal. One statement of this policy is that if two statutes cover the same area and are not absolutely irreconcilable, effect is given to both. United States v. Borden Co., 308 U.S. 188, 198 (1938). Another expression is that a law will not be construed as impliedly repealing another law "unless no other reasonable construction can be applied." United States v Jackson, 302 U.S. 628, 631 (1938); See Ely v. Velde, 451 F.2d 1130, 1134-35 (4th Cir. 1971); Feliciano, supra, at 1359 . . ..

81 I.D. at 69 (citations omitted).

-11-

As discussed above, the language of the Federally Recognized Indian Tribe List Act of 1994 does not evidence a "clear and manifest" intent to repeal ANCSA's village eligibility requirements as to tribes listed in the list of federally recognized tribes.  Nor is there an "irreconcilable conflict" or "positive repugnancy" between FRITLA and ANCSA's village eligibility requirements that would require the repeal of ANCSA's village eligibility requirements in order to make FRITLA "work."  As discussed above, ANCSA specifically provides that "tribes" must satisfy the village eligibility criteria in order to qualify as an eligible Native village.  Consequently, effect can be given to both FRITLA's provisions recognizing listed entities as "tribes" and ANCSA's village eligibility requirements.

Nor does the legislative history of FRITLA evidence a "clear and manifest" intent to repeal ANCSA's village eligibility requirements as to listed tribes.  House Report No. 103-781, attached as Exhibit 3, says that Congress enacted FRITLA for the express purpose of prohibiting the Department of Interior from "de-recognizing" previously recognized Indian tribes without prior Congressional approval, as it had done in the past.  Cong. Record Vol. 140 at 3769-70.  As noted in the Report, "recognition" of an Indian tribe is a legal term of art, and is a necessary prerequisite in order to trigger Congress' constitutional power to establish policy and confer protections, services, and benefits to the tribe and its members, and to establish a government-to-government relationship between the United States and the tribe.  Id. at 3768-69.  FRITLA was intended to prohibit the Department of Interior from terminating such status without prior Congressional approval.

Neither of these concerns relate to ANCSA or to the determination of whether a village satisfies the criteria for eligibility as a Native Village.  Unlike other Indian policies,

-12-

which require the recognition of tribal status as a condition for the receipt of government benefits, ANCSA provides for the comprehensive settlement of all Alaska Native claims, and provides its own specified criteria for the eligibility and receipt of settlement benefits by Native villages and Native groups.  FRITLA simply does not relate to the "recognition" or "de-recognition" of their eligibility under ANCSA.  Congress established separate standards and procedures for determining their eligibility for benefits under ANCSA, and specifically charged the Secretary with determining whether they satisfied these criteria.  A determination by the Secretary that a village does not satisfy the criteria for village eligibility is not a decision "de-recognizing" a tribe or village for which prior Congressional approval is required.  Congress has already provided its authorization and approval for the Secretary to make such determinations under ANCSA.  There is nothing in the language or legislative history of FRITLA that evidences an intent to modify or repeal these provisions.  On the contrary, the preamble to the 1993 list of federally recognized tribes specifically notes that ANCSA regional, village, and urban corporations were included in the list based on the fact that they been found to be eligible for benefits under ANCSA.[6]

III.   **Conclusion**

For the reasons stated above, and by IBLA, arguments raised by Leisnoi and Koniag, to the effect that Congressional adoption of FRITA impliedly repealed ANCSA's village eligibility requirements, must be rejected.

---

[6]See 58 Fed. Reg. 54,364 attached to Docket 111 as Exhibit 2, pp. 2-8.

RESPECTFULLY submitted this 11th day of June, 2007.


s/Michael J. Schneider
s/Eric R. Cossman
Law Offices of Michael J. Schneider, P.C.
880 "N" Street, Suite 202
Anchorage, AK 99501
Phone: (907) 277-9306
Fax: (907) 274-8201
E-mail: mjspc@gci.net
Alaska Bar No. 7510088


**CERTIFICATE OF SERVICE**
I hereby certify that **OMAR STRATMAN'S
OPPOSITION TO MOTIONS TO DISMISS
HIS APA CLAIM BASED UPON THE FEDERALLY
RECOGNIZED INDIAN TRIBE LIST ACT OF 1994**
was served electronically on the 11th day of June,
2007, on Bruce M. Landon, R. Collin Middleton,
and John R. Fitzgerald.
s/Michael J. Schneider

-14-