# Exhibit 2

# IBLA Decision dealing with FRITLA, pp. 315-320

IBLA 2000-16

    Other facts support a conclusion that passage of section 1427 was not a ratification of the eligibility of Woody Island's status as an ANCSA Native village. In issuing its September 22, 1995, order, the district court noted at page 1 that "new light" might be shed on the case with enactment of the "Stratman Bill." Id. at 1. The court was alluding to the fact that, at that time, Congress had passed section 109 of H.R. 402, 104th Cong., 1st Sess. (1995), which specifically "confirmed [Leisnoi] as an eligible Alaska Native Village, pursuant to Section 11(b)(3) of [ANCSA]." See 141 Cong. Rec. S11342, S11343, S11347 (daily ed. Aug. 3, 1995); 141 Cong. Rec. H9068, H9069, H9074 (daily ed. Sept. 18, 1995); 141 Cong. Rec. H9150-51 (daily ed. Sept. 19, 1995). However, Congress later resolved to strike section 109 from H.R. 402. See 141 Cong. Rec. H9710-11 (daily ed. Sept. 29, 1995); 141 Cong. Rec. S15199 (daily ed. Oct. 17, 1995). In agreeing to the resolution, Congressman Miller, who had worked on the overall legislation, stated:

> [Section 109] was added by the other body without public hearings and was intended to intervene in pending litigation. But the Senate did not do their homework. This provision generated significant controversy, especially amongst the affected citizens of Kodiak, AK. Moreover, this technical amendments bill was an inappropriate vehicle for controversy. The gentleman from Alaska and I had worked over two Congresses to develop a consensus on this legislation only to be undercut, in my view, by the other body.

141 Cong. Rec. H9710 (daily ed. Sept. 29, 1995). Legislative confirmation did not occur, and it would not have been needed if, in fact, passage of section 1427 in 1980 had acted as ratification of Woody Island's eligibility.

### Federally-recognized Tribal Entity

    In its objections to Judge Sweitzer's recommended decision, BIA raises a legal issue not discussed in the post-hearing briefs. BIA argues that in 1993 the Department of the Interior confirmed the pre-existing status of "Leisnoi Village (aka Woody Island)" as a federally-recognized tribe by including such village in the published list of "Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs" (Tribal Entities List). 58 FR 54364, 54369 (Oct. 21, 1993). According to BIA, this action by Congress essentially confirmed the status of Woody Island as "a historical (and traditional) sovereign tribe having an identifiable location on Woody Island." (BIA Objections to Recommended Decision at 5.) BIA asserts that "[s]uch status as a recognized tribe cannot be terminated (or decertified) except by Act of Congress." Id.

    The preamble to the Tribal Entities List indicates that the Department intended the list to clarify which Native entities in Alaska were operating as Federally-recognized Tribes and also to clarify that tribes in Alaska enjoyed the same status as tribes in the contiguous 48 states:

> The purpose of the current publication is to publish an Alaska list of entities conforming to the intent of 25 C.F.R. 83.6(b) and to eliminate any doubt as to the Department's intention by expressly and unequivocally acknowledging that the Department has determined that the villages and regional tribes listed below are distinctly Native communities and have the same status as tribes in the contiguous 48 states. * * * This list is published to clarify that the villages and regional tribes listed below are not simply eligible for services, or recognized as tribes for certain narrow purposes. Rather, they have the governmental status as other federally acknowledged Indian tribes by virtue of their status as Indian tribes with a government-to-government relationship with the United States; are entitled to the same protection, immunities, privileges as other acknowledged tribes; have the right, subject to general principles of Federal Indian law, to exercise the same inherent and delegated authorities available to other tribes; and are subject to the same limitations imposed by law on other tribes.

58 FR 54366-67 (Oct. 21, 1993).

Thereafter, Congress passed the Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C. §§ 479a and note, 479a-1 (1994), which recognized the Tribal Entities List, confirmed the responsibility and authority of the Secretary to recognize tribes, took notice of the sovereign status of such tribes, and affirmed the obligation of the United States, as part of its trust responsibility, to maintain a government-to-government relationship with those tribes. The act also provided that "a tribe which has been recognized * * * may not be terminated except by Act of Congress." 25 U.S.C. § 479a note (1994). 14/ In discussing the Act, the Alaska Supreme Court stated:

> And for those who may have doubted the power of the Department of the Interior to recognize sovereign political bodies, a 1994 act of Congress appears to lay such doubts to rest. In the Federally Recognized Tribe List Act of 1994, Congress specifically directed the Department to publish annually a list of all Indian tribes which the Secretary recognizes to be eligible * * *.

---

14/ In discussing that provision, the Committee stated:
  "While the Department clearly has a role in extending recognition to previously unrecognized tribes, it does not have the authority to "derecognize" a tribe * * *. The Committee cannot stress enough its conclusion that the Department may not terminate the federally-recognized status of an Indian tribe absent an Act of Congress."
H.R. No. 781, 103rd Cong., 2nd Sess. 1994, 1994 U.S. Code Cong. & Ad. News 3768.

IBLA 2000-16

Through the 1993 tribal list and the 1994 Tribe List Act, the federal government has recognized the historical tribal status of Alaska Native villages * * *.

John v. Baker, 982 P.2d 738 (Alaska 1999).

BIA argues that the inclusion of "Leisnoi Village (aka Woody Island)" on the Tribal Entities List "confirmed the status of the Village as a historical (and traditional) sovereign tribe having an identifiable location on Woody Island." (BIA Objections to Recommended Decision at 5.) It added that, as an historical tribe, the village can truly be said to be a "traditional village" within the meaning of 43 CFR 2651.2(b)(2), which provides that no traditional village shall be disqualified for certification "by reason of having been temporarily unoccupied in 1970 because of an act of God or governmental authority occurring within the preceding 10 years." Id.

Leisnoi's position is that the Tribal Entity List and the passage of the Federally Recognized Indian Tribe List Act are but the latest factors which "have eliminated the ability of the Department of the Interior and the courts to declare Woody Island not to be an Alaska Native village." (Leisnoi Objections to Recommended Decision at 12.)

The Department of the Interior first published a list of Indian Tribal Entities on February 6, 1979, noting therein that a list of "eligible Alaskan entities" would be published at a later date. 44 FR 7325 (Feb. 9, 1979). Thereafter, it published a "preliminary list" of "Alaskan Native Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs." 47 FR 53133 (Nov. 24, 1982). In 1988, the Department, in publishing an updated list, stated:

> The purpose of this updated list is: (1) To comply with the regulatory requirement of annual publication pursuant to 25 CFR Part 83, (2) to reflect the Alaska entities which are statutorily eligible for funding and services from the Bureau of Indian Affairs, (3) to make it easier for previously unlisted, but statutorily eligible, entities to receive funding and services, and in so doing, (4) to describe the criteria used for inclusion on the list and for making additions.

53 FR 52832 (Dec. 29, 1988). The Department stated that the

> list includes all of the Alaska entities meeting any of the following criteria which are used in one or more Federal statutes for the benefit of Alaska Natives:
>
> 1. Tribes as defined or established under the Indian Reorganization Act as supplemented by the Alaska Native Act.

> 2. Alaska Native Villages defined in or established pursuant to the Alaska Native Claims Settlement Act (ANCSA).
>
> 3. Village Corporations defined in or established pursuant to ANCSA. * * *

Id. at 52833. The list included "Leisnoi, Inc. (Woody Island)." Id. at 52834.

In 1993, the Department published a new list of Alaskan Native entities stating that the 1988 publication had raised a number of questions regarding the Department's intent and the effect of the list. 58 FR 54365 (Oct. 21, 1993). The Department stated:

> The purpose of the current publication is to publish an Alaska list of entities conforming to the intent of 25 CFR 83.6(b) and to eliminate any doubt as to the Department's intention by expressly and unequivocally acknowledging that the Department has determined that the villages and regional tribes listed below are distinctly Native communities and have the same status as tribes in the contiguous 48 states.

Id. It also clarified that the 1993 list was limited to entities found to be tribes and did not include non-tribal Alaska Native entities, such as ANCSA village and regional corporations. Id. Leisnoi claims that the village continues to be recognized as a tribe, citing 63 FR 71945 (Dec. 30, 1998).

The question presented is whether Congressional recognition of the Department's listing of Woody Island on the Tribal Entities List constitutes ratification of the status of Woody Island as an Alaska Native village, such that the Department is barred from engaging in further proceedings investigating the eligibility of that village to receive ANCSA benefits.

In the Federally Recognized Indian Tribe List Act of 1994, Congress found that tribes could be recognized in any of three ways: (1) by act of Congress, (2) by the administrative procedures in 25 CFR Part 83, or (3) by a decision of a United States court. 25 U.S.C. § 479a note (1994). As stated above, the 1993 preamble to the publication of the Tribal Entities List states that the tribes on that list "conform[ed] to the intent of 25 CFR 83.6(b)." Thus, to the extent tribes on the list had not been recognized by an act of Congress or by a decision of a United States court, their inclusion on the list indicated that they had been recognized by the administrative procedures in 25 CFR Part 83. The appearance of "Leisnoi Village (aka Woody Island)" on the list indicates that it "conform[ed] to the intent of 25 CFR 83.6(b)." Congress also found, as set out above, that "a tribe which has been recognized in one of these manners may not be terminated except by Act of Congress." 25 U.S.C. § 479a note (1994).

IBLA 2000-16

   Stratman asserts that inclusion of Woody Island on the Tribal Entities List does not establish that Woody Island constitutes an eligible ANCSA Native village, but only that it constitutes a "tribe." Stratman is correct. While a tribe may be a Native village and vice versa (43 U.S.C. § 1602(d) (1994)), in order to constitute an ANCSA Native village a tribe must satisfy the ANCSA criteria for eligibility. There is no evidence that Congress either expressly or impliedly modified the village eligibility requirements of ANCSA in enacting the Federally Recognized Indian Tribe List Act of 1994. The fact that Woody Island appears on the Tribal Entity List means that it has been recognized as a tribe. That recognition is related to its status as an ANCSA Native village, but whether or not it is entitled to that status is a separate question, one that was decided with administrative finality by the Secretary in September 1974. Moreover, as with the arguments concerning the effect of section 1427 of ANILCA, if Woody Island's status as an ANCSA Native village had been confirmed by the Federally Recognized Tribe List Act of 1994, there would not have been any need for the "Stratman Bill" in 1995, discussed <u>supra</u>.

   Issues such as standing and timeliness raised by Leisnoi are not relevant given the posture of this case and our lack of subject matter jurisdiction. 15/ To the extent the parties have raised other legal issues, they have been considered and rejected.

Recommended Decision

   Judge Sweitzer's 100-page recommended decision in this case represents a comprehensive and exhaustive analysis of the evidence presented in the case consisting of over 3,600 pages of transcript of the testimony of over 40 witnesses; depositions, affidavits, and interviews from over 50 witnesses; over 600 exhibits, totaling thousands of pages, and over a thousand pages of post-hearing briefing. In conclusion, he found that Woody Island did not have 25 or more Native residents on April 1, 1970; was not an established Native village and did not have an identifiable physical location evidenced by occupancy consistent with the

---

15/ We note that at the hearing, counsel for Stratman, in cross-examination of Fred Frank Zharoff, a Leisnoi shareholder and Alaska State Legislator, regarding Stratman's Exhibit 30-G, a full page notice in the Apr. 4, 1973, <u>Kodiak Daily Mirror</u>, prepared by Karl Armstrong, a Leisnoi shareholder, showing a comparison of benefits under ANCSA and the land and monetary benefits of enrollment to Woody Island, stated: "The point I'm trying to get you to concede, Senator, is it would be hard for people in a community to not be aware in a community this size with a publication that prominent at that point in time." (Tr. 3110.) Thus, Stratman's point was that virtually everyone on Kodiak Island would have been aware of efforts to enroll Natives to Woody Island. It is certainly conceivable, then, that Stratman himself, as a member of that community, had actual knowledge of such efforts and the subsequent filing of the application and eligibility decision and failed to bring any timely administrative challenge thereof.

IBLA 2000-16

Natives' own cultural patterns and life-style; and was used during 1970 by less than 13 enrollees to Woody Island as a place where they actually lived for a period of time. (Decision at 99-100.) He also determined that Woody Island was not unoccupied in 1970 due to one or more acts of God or governmental authority occurring within the preceding ten years. (Decision at 86-92.) We have reviewed the objections to Judge Sweitzer's recommended decision filed by the parties and we find no reason to alter his findings and conclusions with which we agree.

The court will now have the benefit of our analysis of the legal issues presented by the parties and Judge Sweitzer's recommended decision on the eligibility of Woody Island.

All motions or requests not expressly addressed have been considered and are, hereby, denied.

Accordingly, pursuant to the authority delegated to the Board of Land Appeals by the Secretary of the Interior, 43 CFR 4.1, we conclude that we do not have subject matter jurisdiction in this matter and we return the case to the District Court. 16/

_____
Bruce R. Harris
Deputy Chief Administrative Judge

I concur:

_____
James L. Burski
Administrative Judge

---

16/ The regulations at 43 CFR 2651.2(a)(5) provide that "[d]ecisions of the Board [of Land Appeals] on village eligibility appeals are not final until personally approved by the Secretary." We do not believe it is necessary to seek Secretarial approval for this decision because we are not issuing a decision on a village eligibility appeal. The Secretary approved the Department's final decision on the eligibility of Woody Island in September 1974.