Michael J. Schneider
Law Offices of Michael J. Schneider, P.C.
880 "N" Street, Suite 202
Anchorage, AK 99501
(907) 277-9306 - phone
(907) 274-8201 - fax

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| OMAR STRATMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LEISNOI, INC., KONIAG, INC., and ) | |
| DIRK KEMPTHORNE, Secretary of the ) | |
| Interior, ) | |
| ) | |
| Defendants, ) | |
| _____) | |
| ) | |
| KONIAG, INC., ) | |
| ) | |
| Counter-claimant, ) | Case No.: 3:02-cv-0290 (JKS) |
| ) | |
| v. ) | |
| ) | |
| OMAR STRATMAN, ) | |
| ) | |
| Counter-claimed ) | |
| Defendant. ) | |
| _____) | |

**STRATMAN'S OPPOSITION TO LEISNOI'S MOTION TO DISMISS AT DOCKET NO. 118-1 (ADMINISTRATIVE FINALITY, COLLATERAL ESTOPPEL)**

# TABLE OF CONTENTS

A.  Stratman's action is not barred by the doctrine of administrative finality as a consequence of the dismissal of his ANCAB appeal challenging the BIA's determination of the amount of Leisnoi's land entitlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.  Stratman is not collaterally estopped from litigating his APA challenge to Leisnoi's eligibility claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1.  The administrative proceedings regarding Leisnoi's application for eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.  Collateral estoppel does not apply because the issues in question were not "fully litigated" in the prior eligibility appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    3.  Collateral estoppel does not apply because Stratman was not a party or in privity with any of the parties in the prior eligibility appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

This opposition responds to Leisnoi's "12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction re: Doctrines of Administrative Finality and Collateral Estoppel." Leisnoi's motion and supporting memorandum appear, respectively, at Docket Nos. 118-1 & 119.

Leisnoi raises two principal arguments in support of its motion.[1]  First, it argues that Stratman's action is barred under the doctrine of administrative finality, based on Stratman's failure to appeal the decision and order of dismissal issued in <u>Appeal of Omar Stratman</u>, ANCAB No. LS77-4C, 2 ANCAB 329 (March 24, 1978); Docket No. 119, pp. 1-6. Second, it argues that Stratman is collaterally estopped from litigating his challenge to Leisnoi's eligibility, on the ground that the same arguments and challenges to Leisnoi's eligibility were made by other persons in the Department's eligibility proceedings, which were rejected by ANCAB.  Docket No. 119, pp. 6-11.

As discussed below, both contentions must be rejected.

**A.  Stratman's action is not barred by the doctrine of administrative finality as a consequence of the dismissal of his ANCAB appeal challenging the BIA's determination of the amount of Leisnoi's land entitlement.**

Leisnoi argues that Stratman's failure to appeal a March 24, 1978 decision and order of dismissal in <u>Appeal of Omar Stratman</u>, ANCAB No. LS 77-4C, bars Stratman's APA claim in this action, under the doctrine of "administrative finality."  Docket No. 119, pp. 1-6.

---

[1] To the extent that Leisnoi contends that Stratman's action is barred for Stratman's failure to challenge Leisnoi's eligibility or to participate in the Department's original proceedings regarding Leisnoi's eligibility, this contention is addressed, pp. 22-41, in Stratman's combined Opposition to Leisnoi's Motion to Dismiss at Docket No. 109 (Lack of Subject Matter Jurisdiction, Statute of Limitations), and Opposition in Part to Leisnoi's Motion to Dismiss at Docket No. 107 (Standing) and Motion to Dismiss at Docket No. 118-1 (Administrative Finality), which has been filed at Docket 162.

Leisnoi's contention must be rejected, for several reasons.

Stratman's ANCAB appeal relates to an appeal of the BIA's "Finding of Entitlement Pursuant to Section 14(a) of the Alaska Native Claims Settlement Act," which determined the amount of lands to which Leisnoi was entitled under ANCSA Section 14(a), based on the number of its Native residents.[2] On January 25, 1977, the Commissioner of Indian Affairs approved and published in the *Federal Register* (Ex. 1) a decision by the BIA Acting Area Director entitled "Finding of Entitlement Pursuant to Section 14(a) of the Alaska Native Claims Settlement Act," which determined that Leisnoi was entitled to 115,200 acres of land under ANCSA, 43 U.S.C. § 1613 (a), based on its finding that Leisnoi had a Native population of 309 persons on April 1, 1970. Ex. 1, 42 FR 6419-20, 6425-26. On March 3, 1977, Stratman appealed its determination to the Alaska Native Claims Appeal Board (ANCAB). See, Stratman I, Docket No. 268, Ex. J, attached hereto employing the same exhibit designation. Stratman challenged the BIA's finding that Leisnoi had 309 Native

---

[2] Section 14 (a) (43 U.S.C. § 1613 (a)) provides for the conveyance to eligible Native villages of the following amounts of lands, based on the number of the Natives enrolled to the village:

**(a) Native villages listed in section 1610 and qualified for land benefits; patents for surface state; issuance; acreage**. Immediately after election by a Village Corporation for a Native village listed in section 11 [43 USCS § 1610] which the Secretary finds is qualified for land benefits under the Act, the Secretary shall issue to the Village Corporation a patent to the surface estate in the number of acres shown in the following table

| If the village had on the 1970 census enumeration date a Native population between– | It shall be entitled to a patent to an area of public lands equal to– |
|---|---|
| 25 and 99 | 69,120 acres |
| 100 and 199 | 92,160 acres |
| 200 and 399 | 115,200 acres |
| 400 and 599 | 138,240 acres |
| 600 or more | 161,280 acres |

residents, and offered evidence that Leisnoi was not qualified for any land entitlement. Ex. J at 4-5.  On March 24, 1978, ANCAB dismissed Stratman's appeal, holding that the Department's previous determination of Leisnoi's eligibility could not be challenged in the proceedings.  Ex. J at 6-12.  The Board issued the same ruling in another appeal of Leisnoi's land entitlement by the Kodiak-Aleutian Chapter of the Alaska Conservation Society, one of the original plaintiffs in Stratman I.  Exhibit J at 13-18.

The Board concluded that, even though Stratman had made a "claim of property interest in land," he had not demonstrated that redetermination of Leisnoi's entitlement would "affect" his property interest, and that he therefore lacked standing to pursue his appeal.  Appeal of Omar Stratman, ANCAB No. LS 77-4C, p. 6; Ex. J at p. 11; Docket No. 119, Ex. 1 at 6.

The doctrine of administrative finality bars consideration of a new appeal arising from a later proceeding "involving the same claim and issues."[3]  Village of South Naknek, 85 IBLA 74, 76 (February 11, 1985).  Because the claims and issues in Stratman's previous ANCAB appeal, which challenged the Department's determination of the amount of Leisnoi's land entitlement, did not involve the same claims and issues as Stratman's APA claim, which challenges the Department's determination of Leisnoi's eligibility, the doctrine of administrative finality does not bar Stratman's action.  Further, by the time that Stratman filed his ANCAB appeal challenging the amount of Leisnoi's land entitlement, and by the

---

[3] The Ninth Circuit has observed that "[a]dministrative finality is the administrative version of res judicata." UOP v. United States, 99 F.3d 344, 347 (9th Cir. 1996).  As the Ninth Circuit has observed many times, the technical elements of res judicata are that the decision in question is a final judgment, on the merits, involving the same claims, and the same parties, as the action in which res judicata is asserted as a bar.  See e.g., Valencia–Alvarez v. Gonzalez, 469 F.3d 1319, 1324 (9th Cir. 2006).

time the Board dismissed it for lack of standing on March 24, 1978, Stratman had already filed his APA action challenging the Secretary's determination of Leisnoi's eligibility in Stratman I.

**B.    Stratman is not collaterally estopped from litigating his APA challenge to Leisnoi's eligibility claim.**

Leisnoi argues that Stratman is collaterally estopped from challenging Leisnoi's eligibility because the same arguments and challenges to its eligibility were already litigated, and rejected by ANCAB, in an appeal of Leisnoi's eligibility brought by the Sierra Club and the Alaska Wildlife Federation, Sportsmen's Alaska Wildlife Federation, Sportsmen's Council, and Philip Holdsworth.  Docket No. 119, pp. 6-11.  Leisnoi argues that Stratman is precluded from relitigating any of these issues or challenges, even though he was not a party to the appeal, on the ground that the Alaska Wildlife Federation, Sportsmen's Council, and Philip Holdsworth constituted his "virtual representative." Docket No. 119, pp. 8-11.

As discussed below, Leisnoi's contention must be rejected for several reasons. But it would first be helpful to briefly summarize the administrative proceedings regarding Leisnoi's application for eligibility, and the protests and appeals that were filed by the above-named parties.

*1.    **The administrative proceedings regarding Leisnoi's application for eligibility**.*

Leisnoi was certified pursuant to the administrative procedures set forth in 43 CFR §2651.2.  This regulation provides that applications for eligibility of unlisted villages were to be referred to the BIA Area Director for the Area of Juneau for investigation and

determination. The Area Director was to "review the statements contained in the application" and "investigate and examine available records and evidence that may have a bearing on the character of the village and its eligibility . . . ". 43 CFR § 2651.2(a)(8). He was to then "make findings of fact as to the character of the village, and make a determination as to the eligibility of the village as a Native village for land benefits under the act . . .". Id. His decision was to be published in the Federal Register and one or more newspapers. "Interested parties" could then protest his decision within 30 days of the date of publication. § 2651(a)(9). Upon receipt of a protest, the Area Director was required to "examine and evaluate the protest and supporting evidence required herein, together with his record of findings of fact and proposed decision," and "render a decision on the eligibility of the Native village . . .". § 2651.2(a)(4). His decision was to become final unless appealed to the Secretary within 30 days of publication in the Federal Register. Id.

In accordance with this procedure, Leisnoi's application for village eligibility was initially referred to the BIA Area Director for investigation and determination. It was, in turn, assigned to BIA employee Gail Fitzpatrick, who conducted a field investigation and prepared a written report and recommendation. Stratman I, Docket No. 268, Ex. L. Fitzpatrick's report recommended certification of Woody Island based on the determination that it was an "established village", that it had more than 25 "enrolled" Natives on April 1, 1970, and that 13 enrollees actually lived there in 1970. Id., Ex. L at 1-3. The BIA Area Director adopted Fitzpatrick's recommendation and findings, and issued a decision that the Village of Woody Island was an eligible Native Village. (Ex. BIA-1A at 71-69).[4] In

---

[4] "BIA" exhibit designations are contained in the Agency's record developed before the ALJ. Should the Court deny Mr. Stratman's pending motion that seeks filing

accordance with the procedure set forth in 43 CFR § 2651.2(a)(8), his decision was published in the Federal Register on December 21, 1973.[5] (Ex. BIA-1A at 79-78).

The BIA Area Director's decision was subsequently protested by four "interested parties," the Sierra Club, the Alaska Wildlife Federation, the Sportsman Council, and an individual, Philip Holdsworth. (Ex. BIA-1A at 83, 110). The Sierra Club filed a collective protest that included 11 other unlisted Native villages the BIA Area Director had determined to be eligible. The Alaska Wildlife Federation, the Sportsman Council, and Philip Holdsworth were all represented by the same attorney, and filed a combined protest that also included all 18 of the other unlisted Native villages that the BIA Area Director had determined to be eligible. All four protestants alleged that Leisnoi (Woody Island) did not have 25 or more Native residents on April 1, 1970, and that the BIA's own records showed that only two Natives actually resided on the island. Id. The Sierra Club also challenged the validity of the provisions in 43 CFR § 2651(b) under which Native enrollees were "deemed" to be residents of the village, and which required that only 13 of these enrollees actually used the village in 1970 as a place where they lived. Stratman I, Docket No. 268, Ex. M at 4.

On February 8, 1974, the BIA Area Director issued a "Final Decision" rejecting their protests and upholding his determination of Leisnoi's eligibility. (Ex. BIA-1A at 121-118). He held that certification was proper based on the number of Natives enrolled to

---

of that record with this Court, he can, upon request, provide copies of these exhibits to the Court and the parties.

[5] The BIA Area Director's decision also included a determination of eligibility of 18 other unlisted villages. Id.

Leisnoi, in accordance with 43 CFR §2651(b).  Id.  He also upheld the finding that 13 Native enrollees used the village as a place where they actually lived in 1970.  Id.  His decision was published in the Federal Register on February 21, 1974.  39 Fed.Reg. 6627–28.

The BIA Director's decision was subsequently appealed to ANCAB by the Sierra Club and the Alaska Wildlife Federation, the Sportsman Council, and Philip Holdsworth.  Ex. BIA-1A at 127, 128.  Their appeal briefs generally repeated the same arguments raised in their protests, that the BIA Area Director had improperly relied on the Native roll in determining that Woody Island had 25 or more Native residents, and that the Native roll had been improperly prepared, without investigation or findings of fact, and did not reflect the true permanent residence of the Native enrollees.  Ex. BIA-1A at 176-129; 200- 186.

Koniag and Leisnoi moved to dismiss their appeals on the ground that they lacked standing to challenge the BIA Area Director's decision, and that ANCAB lacked jurisdiction to adjudicate their challenge to the Native roll.  Ex. BIA-1A at 264-224.

On May 16, 1974, the Alaska Wildlife Federation, Sportsmen's Council, Inc., and Phil R. Holdsworth filed a "Notice of Inability to Continue in Appeals Proceedings."  Ex. BIA-1A at 429.  The Notice stated that they were "unable to continue in the appeals proceedings . . . due to lack of available personal representation, and insufficient funds to support continued legal counsel."  Id.  The Notice requested that the Board "continue to consider the various legal points presented by Appellants in the material already before them in their deliberations on these matters."  Id.

On May 24, 1974, ANCAB issued a Notice and Order acknowledging receipt

of the appellants' Notice of Inability to Continue in Appeals Proceedings.  Ex. BIA-1A at 433.  The Board, noting that Koniag and Leisnoi had moved to dismiss their appeals for lack of standing, concluded that "it appears that an accommodation of the interests of all parties can be achieved by according Alaska Wildlife Federation and Sportsmen's Council and Philip R. Holdsworth the status of amici curiae before the Board in the above-designated matters."  The Order dismissed them as parties, and stated that their previously filed briefs and arguments on legal issues would be considered filed as amici curiae.  Id.

On May 31, 1974, ANCAB issued a Notice and Order directing that a hearing be conducted by an ALJ with regard to the Sierra Club's remaining appeal.  Ex. BIA-1A at 437.  On June 21, 1974, the Chief ALJ issued a Notice of Hearing and Pre-Hearing Conference setting the matter for hearing on July 29, 1974, in Kodiak.  Ex. BIA-1A at 441.

On July 13, 1974, the Sierra Club filed a notice with ANCAB stating that it "hereby withdraws its protest of the eligibility of the village of Woody Island."  Ex. BIA-1A at 445.

On September 9, 1974, ANCAB issued a "Final Order Dismissing the Appeals of Sierra Club, Alaska Wildlife Federation, and Phil Holdsworth, and Certifying Village."  Ex. BIA-1A at 451.  The Order noted that the Sierra Club had filed a withdrawal of their appeal, that the Alaska Wildlife Federation, Sportsmen's Council, and Philip Holdsworth had filed a Notice of Inability to Continue in Appeals Proceedings, and that there were no other parties of record adverse to the eligibility of Woody Island.  The Order stated that "[t]he Board has considered the briefs previously filed by the Alaska Wildlife Federation and Sportsmen's Council and Phil R. Holdsworth, and finds the legal arguments advanced

therein to be without sufficient merit to justify the continuance of these proceedings." The Order dismissed the appeals, and directed the BIA Area Director to certify Woody Island as eligible for benefits under ANCSA. Id.

On September 9, 1974, the BIA Area Director issued a Certificate of Eligibility, certifying Woody Island as an eligible Native Village. Ex. BIA-1A at 452.

### 2. *Collateral estoppel does not apply because the issues in question were not "fully litigated" in the prior eligibility appeals*.

As noted in the cases cited by Leisnoi in support of its motion, the test for the application of collateral estoppel includes the following requirements:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

Trevino v. Gates, 99 F.3d 911, 923 (9th Cir. 1996) (emphasis added). See also Shawn v. Hahn, 56 F.3d 1128, 1131 (9th Cir. 1995) (the issue in question must have been "fully and fairly litigated" in the prior litigation).

In this case, collateral estoppel does not apply because the issues at stake were not "fully and fairly litigated" in the prior eligibility appeals, and because the determination of these issues was not "a critical and necessary part of the judgment" issued by ANCAB dismissing these appeals. As set forth above, after the Alaska Wildlife Federation, Sportsmen's Council, and Philip Holdsworth filed a "Notice of Inability to Continue in Appeals Proceedings," the Board issued an order *dismissing their appeals*.

-9-

Docket No. 118, Ex. 2. In response to their request that the Board continue to consider the arguments presented in their briefs, the order stated that the Board would regard their briefs as filed as <u>amici</u> <u>curiae</u> in the Sierra Club's remaining appeal. <u>Id.</u> After the Sierra Club subsequently withdrew its appeal, the Board dismissed the proceedings based on the lack of any "parties of record before the Board adverse to the eligibility of Woody Island." Docket 118, Ex. 2, p. 2. Contrary to Leisnoi's assertion, in dismissing the appeal, the Board did not determine the merits of the arguments raised by the Alaska Wildlife Federation and Sportsmen's Council. The Board's order states only that it "has considered the briefs previously filed by the Alaska Wildlife Federation and Sportsmen's Council and Philip R. Holdsworth, and finds the legal arguments advanced therein to be without sufficient merit *to justify the continuance of these proceedings.*" <u>Id.</u> (emphasis added). The Board did not adjudicate their challenge to the BIA Area Director's decision, which became final because it remained unchallenged. <u>Id.</u>

The arguments raised by the Alaska Wildlife Federation and Sportsmen's Council were therefore not "actually litigated and necessarily decided, after a full and fair opportunity for litigation," as was asserted by Leisnoi. Docket No. 119, p. 8, <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 322 (9th Cir. 1988). <u>See also</u> <u>In Re Reynoso</u>, 477 F.3d 1117, 1123 (9th Cir. 2007) (any reasonable doubt as to what was decided by a prior judgment should be resolved against giving that prior judgment collateral estoppel effect).

> **3.    *Collateral estoppel does not apply because Stratman was not a party or in privity with any of the parties in the prior eligibility appeals.***

Collateral estoppel also does not apply in this case because Stratman was

not a party, or in privity with any of the parties, in the prior eligibility appeals:

> Issue preclusion, or collateral estoppel, . . . bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met:
> * * *
> (3) The party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding.[6]

Leisnoi relies on the doctrine of "virtual representation" to satisfy this requirement, and argues that the parties to the prior eligibility appeals were Stratman's "virtual representatives," based on their "commonality of interests" with Stratman. Docket No. 119, pp. 10-11. However, the doctrine of "virtual representation" applies only if there was an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues." Triple R. Coal Co. v. Office of Surface Mining Reclamation and Enforcement, 126 IBLA 310, 318 n. 5 (June 16, 1993), quoting United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980); Adams v. State of California Dept. Of Health Ser., No. 04-56880 ___ F.3d ___, 5100-5101 (9th Cir. 2007) (pointing out that virtual representation requires "an identity of interests" and further includes the additional features of "a close relationship, substantial participation, and tactical maneuvering."); see also 18 Moore, Moore's Federal Practice § 132.04[1][b][iv] at p. 132-153. Here, there was no "express or implied legal relationship" between Stratman and the Alaska Wildlife Federation, Sportsmen's Council, or Philip Holdsworth, nor were they "accountable" to Stratman. Even if there had been such a relationship, Stratman would still not be bound under the doctrine of collateral estoppel

---

[6]In Re Reynoso, 477 F.3d 1117, 1122 (9th Cir. 2007).

because his interests were not "adequately represented" by the Alaska Wildlife Federation and Sportsmen's Council, in that they terminated their participation in the appeal proceedings prior to the adjudication of their challenge. See Adams, supra, at 5101 ("The necessary elements of virtual representation [even under the Ninth Circuit's broadest interpretation] are an identity of interests and adequate representation." Emphasis added.) See also 18 Moore, supra, § 132.04[1][b][iv] at p. 132-149.

### C. Conclusion.

For the foregoing reasons, the Court should deny Leisnoi's motion to dismiss at Docket Nos. 118-1 and 119.

RESPECTFULLY submitted this 11th day of June, 2007.

    s/Michael J. Schneider
    s/Eric R. Cossman
    Law Offices of Michael J. Schneider, P.C.
    880 "N" Street, Suite 202
    Anchorage, AK 99501
    Phone: (907) 277-9306
    Fax: (907) 274-8201
    E-mail: mjspc@gci.net
    Alaska Bar No. 7510088

**CERTIFICATE OF SERVICE**
I hereby certify that **STRATMAN'S OPPOSITION TO LEISNOI'S MOTION TO DISMISS AT DOCKET NO. 118-1 (ADMINISTRATIVE FINALITY, COLLATERAL ESTOPPEL)** was served electronically on the 11th day of June,

2007, on Bruce M. Landon, R. Collin Middleton,
and John R. Fitzgerald.
s/Michael J. Schneider