(f) All conveyances made by reason of this section shall be subject to the terms and conditions of the Alaska Native Claims Settlement Act as if such conveyances (including patents) had been made or issued pursuant to that Act. The

Id.

As noted above, ANCSA Section 14(a) expressly conditions the issuance of a patent to a Village Corporation on the Secretary's determination that the Native village represented by the corporation is "qualified for land benefits under the Act." Section 14(a) provides:

> **(a) Native villages listed in section 1610 and qualified for land benefits; patents for surface estate; issuance; acreage.** Immediately after selection by a Village Corporation for a Native village listed in section 11 [43 USCS § 1610] *which the Secretary finds is qualified for land benefits under the Act*, the Secretary shall issue to the Village Corporation a patent to the surface estate in the number of acres shown in the following table . . . .
>
> The lands patented shall be those selected by the Village Corporation pursuant to subsection 12(a) [43 USCS § 1611(a)]. In addition, the Secretary shall issue to the Village Corporation a patent to the surface estate in the lands selected pursuant to subsection 12(b) [43 USCS § 1611(b)].

43 U.S.C. § 1613(a) (emphasis added).

The "qualifications for land benefits under the Act" referenced in Section 14(a) consist of the village eligibility requirements provided in Section 11(b). Subsection (b)(2) provides the requirements for eligibility for "land benefits" for listed villages, while subsection (b)(3) provides the requirements for eligibility of "land and benefits" for unlisted villages. 43 U.S.C. § 1610(b).

Thus, Section 1427(f) expressly retained the condition that the Koniag villages satisfy the village eligibility requirements provided in Section 11(b)(3) as a condition to the conveyance and patent of the lands to be conveyed under the amended land selection and entitlement provisions.

In addition, the definitions of "Koniag village" and "Koniag Village Corporation" provided in subsections (a)(7) and (a)(8) of Section 1427 indicate an affirmative congressional

intent that the Koniag villages and village corporations were to remain subject to the village

eligibility requirements provided in Section 11(b), except for the seven uncertified villages listed

in subsection (e)(2). "Koniag village" is defined in subsection (a)(7) as "a *Native village under*

*the Alaska Native Claims Settlement Act* which is within the Koniag region." Id. (emphasis

added). "Native village" is defined in ANCSA Section 3(c) as any tribe, band, clan, village,

community, or association in Alaska that is listed in sections 11 and 16 of the Act, "or which

meets the requirements of this Act, and which the Secretary determines, was, on the 1970 census

enumeration date (as shown by the census or other evidence satisfactory to the Secretary, who

shall make findings of fact in each instance), composed of twenty-five or more Natives." 43

U.S.C. § 1602(c). Section 1427(a)(8) defines "Koniag Village Corporation" as a "corporation

formed under section 8 of the Alaska Native Claims Settlement Act to represent the Natives of a

Koniag village and any Village Corporation listed in subsection (e)(2) of this section which has

filed a release as provided in subsection (e)(1) of this section." Id. ANCSA Section 8(a)

provides:

> **(a) Organization of Corporation as prerequisite to receipt of patent to lands
> or benefits under chapter.** The Native residents of each Native village *entitled to
> receive lands and benefits under this Act* shall organize as a business for profit or
> nonprofit corporation under the laws of the State before the Native village may
> receive patent to lands or benefits under this Act, except as otherwise provided.

43 U.S.C. § 1607(a) (emphasis added).

Therefore, the definitions of "Koniag village" and "Koniag Village Corporation" provided

in Section 1427 thus incorporated the village eligibility requirements provided in ANCSA Section

11(b) with regard to all of the Koniag villages, except for the seven uncertified Koniag villages

listed in subsection (e)(2). These definitions demonstrate that Congress did not intend to repeal

59

the village eligibility requirements as to Leisnoi or any other of the Koniag-region villages, with

the express exception of the seven uncertified villages.

This is reinforced by the definitions provided in the general provisions for ANILCA in

Article I. Section 102 sets forth the definition of terms used in ANILCA as follows:

> SEC. 102. As used in this Act (except that in titles IX and XIV the following
> terms shall have the same meaning as they have in the Alaska Native Claims
> Settlement Act, and the Alaska Statehood Act) –
>
> . . .
>
> (6) The term "Native Corporation" means any Regional Corporation, any
> Village Corporation, any Urban Corporation, and any Native Group.
>
> (7) The term "Regional Corporation" has the same meaning as such term
> has under section 3(g) of the Alaska Native Claims Settlement Act.
>
> (8) The terms "Village Corporation" has the same meaning as such term
> has under section 3(j) of the Alaska Native Claims Settlement Act.
>
> . . .
>
> (10) The term "Native Group" has the same meaning as such term has
> under sections 3(d) and 14(h)(2) of the Alaska Native Claims Settlement Act.
>
> (11) The term "Native land" means any land owned by a Native
> Corporation or any Native Group and includes land which, as of the date of
> enactment of this Act, had been selected under the Alaska Native Claims
> Settlement Act by a Native Corporation or Native Group and had not been
> conveyed by the Secretary (except to the extent that such selection is determined to
> be invalid or has been relinquished) and land referred to in section 19(b) of the
> Alaska Native Claims Settlement Act.
>
> . . .
>
> (16) The term "Alaska Native" or "Native" has the same meaning as the
> term "Native" has in section 3(b) of the Alaska Native Claims Settlement Act.

Id.

These definitions incorporate the definitions provided in ANCSA, including the definition

of "Village Corporation." In addition, the precatory sentence in Section 102 expressly provides

that, for purposes of Title XIV, which contains Section 1427, these terms are to have the same

meaning as they have in ANCSA. These provisions demonstrate that Congress did not intend the amendments to ANCSA provided in Title XIV and Section 1427 to modify or repeal ANCSA's eligibility requirements for Native villages and village corporations provided in Section 11(b).

Another strong indication that Congress did not intend to repeal Section 11(b)(3)'s village eligibility requirements as to Leisnoi is the fact that Section 1427 expressly repealed these requirements with regard to the seven uncertified Koniag-region villages pursuant to subsection (e), but did not do so with regard to Leisnoi. If Congress had intended to repeal the village eligibility requirements with regard to Leisnoi, it would have expressly so provided, either by including Leisnoi in the provisions in subsection (e) or by including a similar provision expressly exempting Leisnoi from ANCSA's village eligibility requirements. This is underscored by the fact that, in addition to exempting the seven uncertified Koniag-region villages in Section 1427(e), ANILCA also expressly exempted the two other uncertified village corporations that had brought suit against the Secretary in Koniag v. Kleppe, 405 F.Supp. 1360 (D.D.C.1975), aff'd in part and rev'd in part, 580 F.2d 601 (D.C.Cir. 1978). Section 1432 of ANILCA expressly exempted the Village of Salamatof from ANCSA's village eligibility requirements, pursuant to the terms of a settlement agreement entered into between the Secretary of Interior and the Salamatof Native Association and the Cook Inlet regional corporation. Section 1432 also resolved the dispute regarding the eligibility of the Village of Alexander Creek, by providing for its certification as a Native Group corporation rather than as a Native Village Corporation. Section 1432, entitled "Cook Inlet Village Settlement," provides, in part:

SEC. 1432. The Secretary is directed to:

(a) Terminate the review of the eligibility of Salamatof Native Association,

Incorporated and withdraw any determination that said village corporation is not eligible for benefits under section 14(a) of this Act.

(b) Implement the agreement among the Secretary, Cook Inlet Region, Incorporated and Salamatof Native Association, Incorporated, which agreement dated August 17, 1979 had been filed with the Committee on Energy and Natural Resources of the Senate and the Committee on Interior and Insular Affairs in the House of Representatives, the terms of which are hereby authorized.

(c) Remove from the Kenai National Moose Range the surface estate of any land, therein to be conveyed to Cook Inlet Region, Incorporated, pursuant to the agreement authorized to be implemented under subparagraph (ii) of this paragraph.

(d) Implement an agreement among Cook Inlet Region, Incorporated, the corporation representing the Village of Alexander Creek, the corporation representing the group of Alexander Creek and the United States, if such agreement is filed with the Committee on Energy and Natural Resources of the Senate and the Committee on Interior and Insular Affairs of the House of Representatives prior to December 18, 1979, the terms of which are hereby authorized, and upon performance of the conditions precedent set forth in said agreement, certify Alexander Creek, Incorporated, as a group corporation, eligible for land and other benefits under the Alaska Native Claims Settlement Act and this Act.

(e) Treat lands conveyed to Alexander Creek as lands conveyed to Village Corporations for the limited purpose of calculating the acreage to be charged against the entitlement of Cook Inlet Region under section 4 of Public Law 94-456.

. . .

Id.

If Congress had intended to repeal the village eligibility requirements with regard to Leisnoi, it would have expressly so provided, either by including Leisnoi in the provisions in subsection (e) or by providing a similar provision expressly exempting Leisnoi from ANCSA's village eligibility requirements.

The fact that Section 1427 expressly exempted the seven uncertified Koniag-region village from ANCSA's village eligibility requirements also negates any inference that Section 1427 impliedly repealed the village eligibility requirements pursuant to the definitions of "Koniag

62

deficiency village corporation" and "Koniag 12(b) Village Corporation" under subsection (a). The definitions provided in subsection (a) were not the mechanism employed by Section 1427 to effectuate the repeal of the village eligibility requirements as to the seven uncertified Koniag village corporations. These villages were included in the definition of "Koniag 12(b) Village Corporation." If Congress had intended the definition of "Koniag 12(b) Village Corporation" to repeal ANCSA's village eligibility requirements as to the villages identified in the definition, it would not have included a separate provision to this effect with regard to the seven uncertified villages in subsection (e).

In addition, the mechanism employed in subsection (e) for effectuating the repeal of the village eligibility requirements with regard to the seven uncertified Koniag villages was not self-executing. Subsection (e) required the seven villages to file a release with the Secretary of Interior, releasing the United States from any further claims for benefits under ANCSA, in order to effectuate the exemption from ANCSA's village eligibility requirements. In fact, none of the provisions in Section 1427 were self-executing. Section 1427's land exchange provisions required the Koniag village corporations and Koniag, Inc. to file resolutions with the Secretary of Interior accepting the land exchange as being in full satisfaction of their respective entitlements under ANCSA. The fact that none of the provisions in Section 1427 were self-executing indicates that the definitions provided in subsection (a) were not intended to operate as a self-executing repeal of ANCSA's village eligibility requirements with regard to the villages identified therein.

3.    The legislative history of Section 1427 does not evidence a "clear and manifest" intent to repeal ANCSA's village eligibility requirements as to Leisnoi

Koniag argues that the "legislative history" of Section 1427 demonstrates that Congress

63

was aware of Stratman's lawsuit against Leisnoi when it enacted Section 1427. It argues this awareness of Stratman's lawsuit demonstrates that Congress intended to "ratify" Leisnoi's status as a certified Native village, i.e., that Congress intended to exempt or repeal ANCSA's village eligibility requirements as to Leisnoi.

Koniag's argument must be rejected for several reasons.

First, the fundamental assumption underlying Koniag's argument is flawed. It assumes that Congress' awareness of Stratman's lawsuit at the time it enacted Section 1427 means that it must have intended to exempt or repeal ANCSA's village eligibility requirements with regard to Leisnoi. However, repeal by implication requires "clear and manifest" evidence of an affirmative congressional intent to repeal, either in the language or the legislative history of the subsequent enactment. As set forth above, there is nothing in the language or the legislative history of Section 1427 that demonstrates a "clear and manifest" congressional intent to repeal ANCSA's village eligibility requirements as to Leisnoi. Mere knowledge of Stratman's lawsuit does not mean that Congress intended to repeal the village eligibility requirements as to Leisnoi. Congress might just as well have acted on its knowledge of Stratman's lawsuit by <u>not</u> repealing the village eligibility requirements as to Leisnoi, and leaving the matter for subsequent determination by the courts. In effect, Koniag argues that Congress' silence on this matter should be regarded as an intent to repeal. As set forth above, the Supreme Court has expressly rejected such a contention. See Morton v. Mancari, supra, 417 U.S. at 549-51, 94 S.Ct. at 2482-83.

Second, the documents relied on by Koniag do not themselves constitute part of the "legislative history" of Section 1427, and cannot be relied on in construing Section 1427 or ascertaining Congress' intent.

Third, even if the documents relied on by Koniag are considered, they do not indicate that Congress, as a whole, was aware of Stratman's lawsuit, or that it had deliberated the issue of Leisnoi's certification when it enacted Section 1427.

In support of its argument, Koniag relies on the following documents:

1) syndicated newspaper columns written by Jack Anderson, which attacked Leisnoi's qualifications as an eligible Native village (Ex. K-E);

2) a letter from Koniag's counsel to Rep. Morris K. Udall, Chairman of the House Committee on Interior and Insular Affairs, dated February 23, 1979, which explained the basis and procedural history of Stratman's lawsuit against Leisnoi (Ex. K-H);

3) a newspaper article published in the Anchorage Daily News, dated April 21, 1979, which noted that Senator Henry Jackson, Chairman of the Senate Energy Committee, had requested a report from the Department of Interior regarding the Kodiak land dispute (not attached);

4) a letter from Koniag's counsel to Senator Ted Stevens, dated July 13, 1979, which proposed draft language to the effect that it was not the intent of ANILCA to affect the eligibility status of any Alaska Native corporation (Ex. K-I).

None of these documents can be regarded as part of the "legislative history"of Section 1427. Only documents prepared by Congress, and available to the lawmakers, are considered legislative history. See Gustafson v. Alloyd Co., Inc., __ U.S. __, 115 S.Ct. 1061, 1071-72 (1995). Nor are statements made by persons who are not members of Congress, or that are not included in the official Senate or House Reports, regarded as legislative history. See Kelly v. Robinson, 479 U.S. 36, 50 n. 13, 107 S.Ct. 353, 361 n. 13 (1986).

None of the documents relied on by Koniag were prepared by members of Congress. Nor is there any indication that they were submitted to, or considered by, Congress during its deliberations on ANILCA. They are not contained in the documents submitted during the public hearings held by the House Committee on Interior and Insular Affairs or the Senate Committee on

65

Energy and Natural Resources.  Nor are they contained or referenced in the official Senate and House Reports.

This is obviously the case regarding the newspaper columns written by Jack Anderson, and the newspaper article published by the Anchorage Daily News.  There is nothing to indicate that these articles were ever submitted to, or considered by, Congress during its deliberations on ANILCA.  Nor can it be presumed that Congress had knowledge of these articles, or their contents, or that Congress otherwise had knowledge of Stratman's lawsuit.  A lawsuit is not like a statute, of which Congress is presumed to have been aware when enacting legislation regarding the same subject-matter.  This is especially true regarding a lawsuit that had been dismissed, as was Stratman's suit at the time ANILCA was enacted.  Even if members of Congress had read the Anderson columns, or had otherwise been aware of Stratman's lawsuit against Leisnoi, there is nothing in the legislative history of Section 1427 that indicates that they had considered the issue of Stratman's challenge to Leisnoi's eligibility during their deliberations on ANILCA.  Nor is there anything in either the language or the official Senate or House Reports that would have led them to believe that they were determining the issue of Leisnoi's eligibility by repealing ANCSA's village eligibility requirements as to Leisnoi.

This is equally true regarding the letters written by Koniag's counsel to Representative Morris Udall and Senator Ted Stevens.  These letters were not submitted to the House or Senate Committees during their public hearings on ANILCA.  Nor were they included, or referenced, in the official Senate and House Reports.  These letters were produced by Koniag *from its own files*, and not from any official Congressional reports or legislative history on ANILCA.  As such, they merely constitute Koniag's own *private correspondence* with Rep. Udall and Senator Stevens.

66

There is no indication that these letters were ever disseminated to other members of Congress, either by Koniag or by Rep. Udall or Senator Stevens, or were considered by Congress during its deliberations on ANILCA. As such, they cannot be regarded as part of the legislative history of Section 1427, and cannot be relied on in construing Section 1427 or ascertaining Congress' intent. Koniag cannot "create" legislative history by the introduction of its own self-serving statements. See Western Air Lines v. Board of Equalization of South Dakota, 480 U.S. 123, 130 n.*, 107 S.Ct. 1038, 1042 n.* (1987) (the statements of interested onlookers who participated in the legislative process do not constitute legislative history, and are entitled to no weight). Here, there is no way of knowing what other letters or private correspondence with members of Congress Koniag has chosen not to submit. Koniag did not even submit the letters from Rep. Udall or Senator Stevens to which the letters from its counsel responded. As noted by the Ninth Circuit in its recent decision in Leisnoi, Inc. v. Stratman, 154 F.3d 1062 (9th Cir. 1998), the use of legislative history is analogous to "entering a crowded cocktail party and looking over the heads of the guests for one's friends." Id. at 1070, quoting Conroy v. Aniskoff, 507 U.S. 511, 519, 113 S.Ct. 1562 (1993) (Scalia, J., concurring in judgment). Here, the letters relied on by Koniag were not even at the cocktail party.

Notwithstanding the foregoing, the letters submitted from Koniag's counsel do not evidence an intent to exempt or repeal ANCSA's village eligibility requirements on the part of Rep. Udall or Senator Stevens. If anything, they show just the opposite.

As set forth in Koniag's brief, in his letter to Rep. Udall, Koniag's counsel asserted that Stratman's lawsuit against Leisnoi was groundless, that it had already been dismissed by the District Court, and that it was unlikely that the Ninth Circuit was going to reverse the dismissal

67

pursuant to Stratman's appeal, which was described by Koniag's counsel as a "sham and frivolous." Ex. K-H at 8. Koniag's counsel also emphasized that Leisnoi had already been determined by the Secretary to be an eligible Native village, and that no order vacating the Secretary's decision had ever been sought or granted by the District Court. If anything, Koniag's letter to Rep. Udall would have indicated that there was no need to repeal ANCSA's village eligibility requirements as to Leisnoi, and that no such repeal was intended by the Koniag amendment. In any event, there is no indication that Rep. Udall took any action on Koniag's letter one way or the other, or that he considered or disseminated the letter to other members of Congress for consideration during their deliberations on ANILCA.

The letter from Koniag's counsel to Senator Stevens is even less persuasive. If anything, it indicates that Senator Stevens did <u>not</u> intend Section 1427 to repeal ANCSA's village eligibility requirements as to Leisnoi. The letter, addressed to Senator Stevens' Legislative Assistant, states:

> You have requested that I prepare general language to the effect that it is not the intent of S. 9 to effect the eligibility status of any Alaska Native corporation. You have requested that this language be drafted so that it would be included in a general provision of the bill rather than in any particular provision dealing with land exchanges or making other references to particular village corporations.

> As I discussed with you, S. 9 would grant a limited form of eligibility to the so-called Koniag uncertified villages (<u>see</u> section 1427(e)), and in H.R. 39 as passed by the House there is a provision for Congressional ratification of an agreement between the Cook Inlet Regional Corporation and the Secretary of the Interior which settles a dispute as to the eligibility of the village of Salamatof by making Salamatof eligible. I refer to section 930 of H.R. 39 as passed by the House. This also envisions some clarification of the status of Alexander Creek, another uncertified village in the Cook Inlet Region. *Neither of the provisions referred to in any way involve Leisnoi.*

> Any provision drafted in accordance with your request should, therefore, except Native corporations referred to in section 1427(e) of S. 9 and section 930 of H.R. 39.

In reviewing S. 9, the most logical place to include a provision along the lines that you have requested appears to be in the definition of the term "Native corporation" which is section 102(6) at page 8, line 17. The following language would comply with your request while preserving the eligibility treatment for the Koniag uncertified villages and the Cook Inlet uncertified villages referred to above:

> In S. 9, at page 8, line 19, strike the period and add:

> "but nothing in this Act shall affirm or deny any claim of eligibility of any Native Corporation for benefits under the Alaska Native Claims Settlement Act except as provided in section[s] 1427(e) [and the section number of the section comparable to section 930 of the House passed H.R. 39, if included in S.9] of this Act."

I would hope that Senator Stevens will not feel impelled to offer such an amendment unless it appears that this matter will actually become an issue in the consideration of S. 9.

Ex. K-I (emphasis added).

The letter notes that it was written in response to Senator Stevens' request that Koniag "prepare general language to the effect that it is not the intent of S. 9 to effect the eligibility status of any Alaska Native corporation."[10] Ex K-I. Koniag's counsel responded with a draft provision stating that "nothing in this Act shall affirm or deny any claim of eligibility of any Native Corporation for benefits under the Alaska Native Claims Settlement Act except as provided in section 1427(e) and [section 1432]." In the letter, Koniag's counsel suggested that the draft provision was unnecessary insofar as it was targeted at Leisnoi, because Leisnoi was not included in the villages that were to be accorded eligibility pursuant to Section 1427(e). The letter concluded by stating that it was Koniag's counsel's hope that Senator Stevens would not feel impelled to offer the amendment, unless the matter actually became an issue in the consideration of the bill.

---

[10] Koniag did not submit any of the letters or correspondence from Senator Stevens.

69

Koniag infers from that the fact that the proposed amendment was never introduced or included in the final bill indicates that Section 1427 *was* intended to confirm Leisnoi's status as an eligible Native village. Koniag's Brief at 82, 88. However, the letter supports just the opposite inference. The fact that Senator Stevens requested the amendment indicates that it was never his intent to exempt Leisnoi from ANCSA's village eligibility requirements, and that he sought the amendment in order to clarify this intent. The fact that he did not introduce the amendment does not indicate that he changed his mind. He could very well have regarded the amendment as unnecessary in order to clarify this intent, just as stated by Koniag's counsel. In any event, because the amendment was never introduced to Congress for deliberation, its omission from the final bill does not reflect any affirmative congressional intent, one way or the other. And it certainly does not constitute a "clear and manifest" intent to repeal ANCSA's village eligibility requirements as to Leisnoi.

If resort is to be made to documents that are not part of the official legislative history of Section 1427, then reference should also be made to other documents that contradict Koniag's contention, and indicate that Congress did not intend to repeal ANCSA's village eligibility requirements as to Leisnoi.

Among these is a column written by Jack Anderson, entitled "Phantom Villages Grab for Woodland," dated February 22, 1979.[11] The article reports that an aide to Senator Stevens had explained that Section 1427 would not affect Stratman's lawsuit against Leisnoi, and that the court would still be able to rescind the lands conveyed to Leisnoi under Section 1427 if it were

---

[11] This article was introduced into evidence at the hearing on Leisnoi's eligibility as Ex. S-30(B).

70

determined that Leisnoi was not qualified as an eligible Native village.  The article states, in part:

> Sen. Stevens explained to us that the land grants to Koniag were the result of a
> negotiated settlement that took months to complete.  The agreement stipulated that
> Koniag Inc. would give up its claim to mainland acreage that environmentalists
> wanted to keep as a wildlife refuge in return for Leisnoi's grant of 115,000 acres.
> The senator stressed that the legislation was supported by the Interior Department,
> as well as the state and local governments.
>
> A Stevens aide told us that if pending litigation shows Leisnoi to have been
> illegally set up, the court could revoke the congressionally authorized land grant.
> Meanwhile, Koniag Inc. has already made plans to harvest millions of dollars
> worth of timber on the 115,000 acres.

Ex. S-30(C).

This article, dated February 22, 1979, preceded the letter from Koniag's counsel to Senator

Stevens, dated July 13, 1979.  Consequently, it demonstrates that Section 1427 was never

intended to repeal ANCSA's village eligibility requirements as to Leisnoi, even before Senator

Stevens requested the clarifying amendment from Koniag.

Another indication that Section 1427 was not intended to exempt or repeal ANCSA's

village eligibility requirements as to Leisnoi includes a memorandum filed by counsel for the

Secretary of Interior in Stratman's federal court action.  As set forth in Stratman's Post-Hearing

Brief, on November 23, 1979, the Secretary, through his counsel, filed a motion with the District

Court in "Stratman II" seeking a stay and remand to the Department of Interior for additional

administrative proceedings regarding Leisnoi's eligibility.  See Stratman's Post-Hearing Brief at

103-105.  The memorandum filed in support of the Secretary's motion noted that Section 1427

was currently pending before Congress, and stated that "the legislation will not affect this case or

the underlying question of Leisnoi['s] certification."  The memorandum states, in part:

Proposed legislation is now pending before the Congress (both in HR 39 and in S.

9) which addresses the need to preserve the natural values of lands on the Alaska Peninsula and to resolve the remanded administrative proceedings. Generally, the proposed legislation would associate named certified villages (including Leisnoi, Inc.) with seven Koniag villages whose certifications are involved in the remand. Under the auspices of that association all of the "other villages" would participate in a joint venture management of the surface estate of certain lands on Afognak Island. Legislation itself would convey the Afognak land to the joint venture in exchange for certain releases and the surrender of village selections on the Alaska Peninsula. Since the Leisnoi selections involved in this suit are not located on the Peninsula, the legislation will not be directly affected by the proposed stay and remand. Moreover, *the legislation will not affect this case or the underlying question of Leisnoi certification.*

Ex. S-13 at 16 n. 4 (emphasis added).

This memorandum, dated November 23, 1979, is particularly significant, because the Secretary was one of the parties with whom the settlement embodied in Section 1427 was negotiated and approved. The memorandum demonstrates that the settlement embodied in Section 1427, and approved by Congress, was never intended to exempt or repeal ANCSA's village eligibility requirements as to Leisnoi, or to affect Stratman's lawsuit.

Yet another indication that Section 1427 was not intended to repeal ANCSA's village eligibility requirements as to Leisnoi is the fact that legislation that would have expressly exempted Leisnoi from ANCSA's village eligibility requirements, for the specific purpose of mooting Stratman's lawsuit, was subsequently introduced– and passed– by Congress, in 1995. P.L. 104-42, 109 Stat. 353, Alaska Native Claims Settlement Act, Amendments--Hawaiian Home Lands Recovery Act, began as H.R. 402. It was considered and passed by the House of Representatives on March 14, 1995. H.R. REP. NO. 402, 104th Cong., 1st Sess. (1995). The purpose of H.R. 402 was to make technical changes in ANCSA and ANILCA that would resolve issues not envisioned at the time of passage of these Acts and (as to Title II only) to provide for

administration of the Hawaiian Homes Commission Act. Id. The Act was considered and passed

by the House on March 14, 1995. The legislation contained no mention of the village of Woody

Island or Leisnoi when passed by the House. CONG. REC. H3096-98 (March 14, 1995). Senator

Murkowski, at the urging of Koniag and Leisnoi, altered the bill in the Senate Energy and Natural

Resources Committee to include a new section, Section 109:

### Section 109.  Confirmation of Woody Island as Eligible Native Village.

> The Native village of Woody Island, located on
> Woody Island, Alaska, in the Koniag Region, is
> hereby confirmed as an eligible Alaska Native
> Village pursuant to Section 11 (b) (3) of the Alaska
> Native Claims Settlement Act ("ANCSA"). It is
> further confirmed that Leisnoi, Inc., is the Village
> Corporation, as that term is defined in Section 3 (j)
> of ANCSA, for the village of Woody Island.

H.R. 402, with the language quoted above, passed the Senate August 3, 1995. CONG.

REC. S11342-11347 (August 3, 1995). Section 109 was but a small part of this important

measure. The House took up H.R. 402, as amended by the Senate, on the 18th and 19th of

September, 1995, and passed the bill, including Section 109, the Leisnoi eligibility provision.

CONG. REC. H9068-9074 (September 18th, 1995); H9150-51 (September 20, 1995).

The fight was not over. The next day, September 20, 1995, Senate Concurrent Resolution

27 was introduced and adopted. CONG. REC. S13990 (September 20, 1995). The Concurrent

Resolution provided that Section 109 "shall become effective on October 1, 1998, unless the

United States Judicial System determines that this village was fraudulently established under

ANSCA prior to October 1, 1998." Id.

Predicting that these proceedings might not be over by October 1, 1998, and recognizing

that Leisnoi/Woody Island might thus escape judicial scrutiny under the wording of Section 109

as changed by Senate Concurrent Resolution 27, the House, on September 29, 1995, altered

Senate Concurrent Resolution 27 to simply delete Section 109 from the bill as passed by

Congress. CONG. REC. H9710-11 (September 29, 1995). The Senate agreed to strike Section

109 from the bill on October 17, 1995--CONG. REC. S15199 (October 17, 1995). H.R. 402,

shed of the Leisnoi eligibility provision, was signed by the Speaker of the House, October 24,

1995. CONG. REC. H10725 (October 24, 1995). It was transmitted to the President on October

26, 1995. CONG. REC. H10993 (October 26, 1995). The bill was signed into law by the

President, November 2, 1995. 109 Stat. 365.

The legislative history generated in the Senate Energy and Natural Resources Committee

specifically dealt with whether ANILCA Section 1427 recognized Leisnoi:

> "Congress recognized Leisnoi, Inc. as a village corporation, in
> Section 1427 of ANILCA."

The legislative history went on to say:

> "The Committee believes the public interest will be served
> by confirming that Woody Island is an eligible village
> under ANSCA and Leisnoi, Inc., a valid ANCSA
> corporation."

H.R. REP. NO. 402, 104th Cong., 1st Sess. (1995). By the time the President signed this bill into

law, Congress had expressly reconsidered both of these positions and rejected them. Mr.

Stratman contends that this history expresses specific Congressional rejection of the notions that

ANILCA Section 1427 ratified Leisnoi's existence, that the litigation process should be thwarted

by political fixes, or that the public interest will be served by anything other than an examination

of Leisnoi's eligibility on its merits.

74

As a final matter, Koniag argues that the legislative history of Section 1427 makes it clear that "one of the purposes of section 1427 was to resolve the eligibility disputes involving the Koniag villages." Koniag's Brief at 88. It argues that ratification of Leisnoi's status as an eligible Native village, i.e., repeal of the village eligibility requirements, would be consistent with this purpose. Koniag's Brief at 88-89. However, as noted in Koniag's own brief, this stated purpose relates only to the resolution of the eligibility disputes regarding the seven uncertified Koniag villages under subsection (e). Id. The fact that repeal of ANCSA's village eligibility requirements as to Leisnoi would also serve this purpose does not mean that Congress chose to do so. Leaving the village eligibility requirements intact as to Leisnoi served the competing purpose, embodied in Section 11(b)(3), of insuring that only qualified Native villages received ANCSA land benefits. As noted by the Supreme Court in Rodriguez v. U.S., 480 U.S. 523, 107 S.Ct. 1391 (1987), it is not the function of the courts to choose between competing legislative purposes, or to determine that the purpose of a subsequent enactment will best be served by repealing the provisions of a prior statute:

> Since § 3147 does not explicitly divest sentencing judges of their authority under § 3651, the Court of Appeals' judgment amounts to the conclusion that § 3147 is an implicit partial repeal of § 3651. It is well settled, however, that repeals by implication are not favored, will not be found unless an intent to repeal is "'clear and manifest.'" Nothing in the language of these two provisions suggests the existence of the ""'irreconcilable conflict,'"" from which an intent to repeal may be inferred. . . .

> The Court of Appeals rested its conclusion in part on the legislative history of the CCCA, noting that various Senate and House Reports referred to § 3147 as establishing a "mandatory" sentence, as prescribing a "term of imprisonment of at least two years and not more than ten," and as "requir[ing] that the individual be imprisoned for an additional period of time." See 794 F.2d, at 26-29. Even if unrebutted, these passing references would not constitute the "clear and manifest" evidence of congressional intent necessary to establish repeal by implication. . . .

75

Additionally, and most impermissibly, the Court of Appeals relied on its understanding of the broad purposes of the CCCA, which included decreasing the frequency with which persons on pretrial release commit crimes and diminishing the sentencing discretion of judges. But no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice– and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law. Where, as here, "the language of a provision . . . is sufficiently clear in its context and is not at odds with the legislative history, . . . '[there is no occasion] to examine the additional considerations of "policy" . . . that may have influenced the lawmakers in their formulation of the statute.'"

480 U.S. at 523-26, 107 S.Ct. at 1392-93(citations omitted, emphasis in original).

Here, Congress chose to repeal the village eligibility requirements with regard to the seven Koniag villages, in furtherance of the purpose of resolving village eligibility disputes, but in derogation of the competing purpose of insuring that only qualified Native villages receive ANCSA land benefits. At the same time, Congress chose to require compliance with ANCSA's village eligibility requirements with regard to the other Koniag villages, including Leisnoi, in derogation of the purpose of resolving village eligibility disputes, but in furtherance of the competing purpose of insuring that only qualified Native villages receive ANCSA land benefits. The reasons for these differing choices by Congress are apparent. As noted repeatedly in the legislative history and in Weinberg's statement, repeal of the village eligibility requirements with regard to the seven uncertified Koniag villages did not result in the conveyance of any additional lands by the Government. They received but a fraction of the lands to which they would otherwise have been entitled under ANCSA, and came from the lands that the Government was already obligated to convey to the other Koniag-region villages. Consequently, Congress' choice to repeal the village eligibility requirements as to them was not in material derogation of the

76

purpose of insuring that only qualified Native villages receive ANCSA land benefits. The same, however, was not true for Leisnoi and the other Koniag villages, which stood to receive full ANCSA benefits. Consequently, Congress chose to require compliance with ANCSA's village eligibility requirements, in order to serve the paramount purpose of insuring that only qualified villages receive ANCSA land benefits.

VI.    Conclusion

For the foregoing reasons, Omar Stratman respectfully requests that the ALJ deny Respondents' motions, and enter findings of fact and conclusions of law as set forth in his post-hearing brief.

Respectfully submitted this 8th day of February, 1999.

LAW OFFICES OF
MICHAEL J. SCHNEIDER, P.C.
Attorneys for Omar Stratman

By _____
Michael J. Schneider

By _____
Eric R. Cossman