(i), water quality and necessary water quantity within the refuge.

16 USC 668dd note.

(3) INNOKO NATIONAL WILDLIFE REFUGE.—(A) The Innoko National Wildlife Refuge shall consist of the approximately three million eight hundred and fifty thousand acres of public lands generally depicted on the map entitled "Innoko National Wildlife Refuge", dated October 1978.

(B) The purposes for which the Innoko National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, waterfowl, peregrine falcons, other migratory birds, black bear, moose, furbearers, and other mammals and salmon;

(ii) to fulfill international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

16 USC 668dd note.

(4) KANUTI NATIONAL WILDLIFE REFUGE.—(A) The Kanuti National Wildlife Refuge shall consist of the approximately one million four hundred and thirty thousand acres of public lands generally depicted on the map entitled "Kanuti National Wildlife Refuge", dated July 1980.

(B) The purposes for which the Kanuti National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, white-fronted geese and other waterfowl and migratory birds, moose, caribou (including participation in coordinated ecological studies and management of the Western Arctic caribou herd), and furbearers;

(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

16 USC 668dd note.

(5) KOYUKUK NATIONAL WILDLIFE REFUGE.—(A) The Koyukuk National Wildlife Refuge shall consist of the approximately three million five hundred and fifty thousand acres of public lands generally depicted on the map entitled "Koyukuk National Wildlife Refuge", dated July 1980.

(B) The purposes for which the Koyukuk National Wildlife Refuge is established and shall be managed include—

(i) to conserve the fish and wildlife populations and habitats in their natural diversity including, but not limited to, waterfowl and other migratory birds, moose, caribou (including participation in coordinated ecological studies and management of the Western Arctic caribou herd), furbearers, and salmon;

Case 3:02-cv-00290-JKS Document 172-6 Filed 06/11/2007 Page 2 of 10



(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

16 USC 668dd note.

(6) NOWITNA NATIONAL WILDLIFE REFUGE.—(A) The Nowitna National Wildlife Refuge shall consist of the approximately one million five hundred and sixty thousand acres of public lands generally depicted on a map entitled "Nowitna National Wildlife Refuge", dated July 1980.

(B) The purposes for which the Nowitna National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, trumpeter swans, white-fronted geese, canvasbacks and other waterfowl and migratory birds, moose, caribou, martens, wolverines and other furbearers, salmon, sheefish, and northern pike;

(ii) to fulfill international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

16 USC 668dd note.

(7) SELAWIK NATIONAL WILDLIFE REFUGE.—(A) The Selawik National Wildlife Refuge shall consist of the approximately two million one hundred and fifty thousand acres of public land generally depicted on the map entitled "Selawik National Wildlife Refuge", dated July 1980. No lands conveyed to any Native Corporation shall be considered to be within the boundaries of the refuge; except that if any such corporation desires to convey any such lands, the Secretary may acquire such lands with the consent of the owner and any such acquired lands shall become public lands of the refuge.

(B) The purposes for which the Selawik National Wildlife Refuge is established and shall be managed include—

(i) to conserve the fish and wildlife populations and habitats in their natural diversity including, but not limited to, the Western Arctic caribou herd (including participation in coordinated ecological studies and management of these caribou), waterfowl, shorebirds and other migratory birds, and salmon and sheefish;

(ii) to fulfill international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph

(i), water quality and necessary water quantity within the refuge.

(C) The Secretary shall administer the refuge in such a manner as will permit reindeer grazing uses, including the construction and maintenance of necessary facilities and equipment within the areas, which on January 1, 1976, were subject to reindeer grazing permits.

16 USC 668dd note.

(8) TETLIN NATIONAL WILDLIFE REFUGE.—(A) The Tetlin National Wildlife Refuge shall consist of the approximately seven hundred thousand acres of public land as generally depicted on a map entitled "Tetlin National Wildlife Refuge", dated July 1980. The northern boundary of the refuge shall be a line parallel to, and three hundred feet south, of the centerline of the Alaska Highway.

(B) The purposes for which the Tetlin National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, waterfowl, raptors and other migratory birds, furbearers, moose, caribou (including participation in coordinated ecological studies and management of the Chisana caribou herd), salmon and Dolly Varden;

(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents;

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge; and

(v) to provide, in a manner consistent with subparagraphs (i) and (ii), opportunities for interpretation and environmental education, particularly in conjunction with any adjacent State visitor facilities.

16 USC 668dd note.

(9) YUKON FLATS NATIONAL WILDLIFE REFUGE.—(A) The Yukon Flats National Wildlife Refuge shall consist of approximately eight million six hundred and thirty thousand acres of public lands as generally depicted on the map entitled "Yukon Flats National Wildlife Refuge", dated July 1980.

(B) The purposes for which the Yukon Flats National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, canvasbacks and other migratory birds, Dall sheep, bears, moose, wolves, wolverines and other furbearers, caribou (including participation in coordinated ecological studies and management of the Porcupine and Fortymile caribou herds) and salmon;

(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph

(i), water quality and necessary water quantity within the refuge.

ADDITIONS TO EXISTING REFUGES

SEC. 303. The following areas, consisting of existing refuges and the additions made thereto, are established or redesignated as units of the National Wildlife Refuge System:

16 USC 668dd note.

(1) ALASKA MARITIME NATIONAL WILDLIFE REFUGE.—(A) The Alaska Maritime National Wildlife Refuge shall consist of eleven existing refuges, including all lands (including submerged lands), waters and interests therein which were a part of such refuges and are hereby redesignated as subunits of the Alaska Maritime National Wildlife Refuge; approximately four hundred and sixty thousand acres of additional public lands on islands, islets, rocks, reefs, spires and designated capes and headlands in the coastal areas and adjacent seas of Alaska, and an undetermined quantity of submerged lands, if any, retained in Federal ownership at the time of statehood around Kodiak and Afognak Islands, as generally depicted on the map entitled "Alaska Maritime National Wildlife Refuge", dated October 1979, including the—

Chukchi Sea Unit.

(i) Chukchi Sea Unit—including Cape Lisburne, Cape Thompson, the existing Chamisso National Wildlife Refuge, and all other public lands on islands, islets, rocks, reefs, spires, and designated capes and headlands in the Chukchi Sea, but excluding such other offshore public lands within the Bering Land Bridge National Preserve. That portion of the public lands on Cape Lisburne shall be named and appropriately identified as the "Ann Stevens-Cape Lisburne" subunit of the Chukchi Sea Unit;

Bering Sea Unit

(ii) Bering Sea Unit—including the existing Bering Sea and Pribilof (Walrus and Otter Islands) National Wildlife Refuges, Hagemeister Island, Fairway Rock, Sledge Island, Bluff Unit, Besboro Island, Punuk Islands, Egg Island, King Island, and all other public lands on islands, islets, rocks, reefs, spires and designated capes and headlands in the Bering Sea;

Aleutian Islands Unit.

(iii) Aleutian Islands Unit—including the existing Aleutian Islands and Bogoslof National Wildlife Refuges, and all other public lands in the Aleutian Islands;

Alaska Peninsula Unit.

(iv) Alaska Peninsula Unit—including the existing Simeonof and Semidi National Wildlife Refuges, the Shumagin Islands, Sutwik Island, the islands and headlands of Puale Bay, and all other public lands on islands, islets, rocks, reefs, spires and designated capes and headlands south of the Alaska Peninsula from Katmai National Park to False Pass including such offshore lands incorporated in this unit under section 1427; and

Gulf of Alaska Unit.

(v) Gulf of Alaska Unit—including the existing Forrester Island, Hazy Islands, Saint Lazaria and Tuxedni National Wildlife Refuges, the Barren Islands, Latax Rocks, Harbor Island, Pye and Chiswell Islands, Ragged, Natoa, Chat, Chevel, Granite and Middleton Islands, the Trinity Islands, all named and unnamed islands, islets, rocks, reefs, spires, and whatever submerged lands, if any, were retained in Federal ownership at the time of statehood surrounding Kodiak and Afognak Islands and all other such public lands on islands, islets, rocks, reefs, spires and designated capes and headlands within the Gulf of Alaska, but excluding such

lands within existing units of the National Park System, Nuka Island and lands within the National Forest System except as provided in section 1427 of this Act.

(B) The purposes for which the Alaska Maritime National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to marine mammals, marine birds and other migratory birds, the marine resources upon which they rely, bears, caribou and other mammals;

(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents;

(iv) to provide, in a manner consistent with subparagraphs (i) and (ii), a program of national and international scientific research on marine resources; and

(v) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

(C) Any lands acquired pursuant to section 1417 of this Act shall be included as public lands of the Alaska Maritime National Wildlife Refuge.

16 USC 668dd note.

(2) ARCTIC NATIONAL WILDLIFE REFUGE.—(A) The Arctic National Wildlife Refuge shall consist of the existing Arctic National Wildlife Range including lands, waters, interests, and whatever submerged lands, if any, were retained in Federal ownership at the time of statehood and an addition of approximately nine million one hundred and sixty thousand acres of public lands, as generally depicted on a map entitled "Arctic National Wildlife Refuge", dated August 1980.

(B) The purposes for which the Arctic National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, the Porcupine caribou herd (including participation in coordinated ecological studies and management of this herd and the Western Arctic caribou herd), polar bears, grizzly bears, muskox, Dall sheep, wolves, wolverines, snow geese, peregrine falcons and other migratory birds and Arctic char and grayling;

(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

16 USC 668dd note.

(3) IZEMBEK NATIONAL WILDLIFE REFUGE.—(A) The existing Izembek National Wildlife Range including the lands, waters and interests of that unit which shall be redesignated as the Izembek National Wildlife Refuge.

Case 3:02-cv-00290-JKS Document 172-6 Filed 06/11/2007 Page 6 of 10



(B) The purposes for which the Izembek National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, waterfowl, shorebirds and other migratory birds, brown bears and salmonoids;

(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

(4) KENAI NATIONAL WILDLIFE REFUGE.—(A) The Kenai National Wildlife Refuge shall consist of the existing Kenai National Moose Range, including lands, waters, interests, and whatever submerged lands, if any, were retained in Federal ownership at the time of statehood, which shall be redesignated as the Kenai National Wildlife Refuge, and an addition of approximately two hundred and forty thousand acres of public lands as generally depicted on the map entitled "Kenai National Wildlife Refuge", dated October 1978, excluding lands described in P.L.O. 3953, March 21, 1966, and P.L.O. 4056, July 22, 1966, withdrawing lands for the Bradley Lake Hydroelectric Project.

16 USC 668dd note.

(B) The purposes for which the Kenai National Wildlife Refuge is established and shall be managed, include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, moose, bears, mountain goats, Dall sheep, wolves and other furbearers, salmonoids and other fish, waterfowl and other migratory and nonmigratory birds;

(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge;

(iv) to provide in a manner consistent with subparagraphs (i) and (ii), opportunities for scientific research, interpretation, environmental education, and land management training; and

(v) to provide, in a manner compatible with these purposes, opportunities for fish and wildlife-oriented recreation.

(5) KODIAK NATIONAL WILDLIFE REFUGE.—(A) The Kodiak National Wildlife Refuge shall consist of the existing Kodiak National Wildlife Refuge, including lands, waters, interests, and whatever submerged lands, if any, were retained in Federal ownership at the time of statehood, which is redesignated as the Kodiak Island Unit of the Kodiak National Wildlife Refuge, and the addition of all public lands on Afognak and Ban Islands of approximately fifty thousand acres as generally depicted on the map entitled "Kodiak National Wildlife Refuge", dated October 1978. The described public lands on Afognak Island are those incorporated in this refuge from section 1427 of this Act.

16 USC 668dd note.

(B) The purposes for which the Kodiak National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations habitats in their natural diversity including, but not limited to, Kodiak brown bears, salmonoids, sea otters, sea lions and other marine mammals and migratory birds;

(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

16 USC 668dd note.

(6) TOGIAK NATIONAL WILDLIFE REFUGE.—(A) The Togiak National Wildlife Refuge shall consist of the existing Cape Newenham National Wildlife Refuge, including lands, waters, and interests therein, which shall be redesignated as a unit of the Togiak National Wildlife Refuge, and an addition of approximately three million eight hundred and forty thousand acres of public lands, as generally depicted on the map entitled "Togiak National Wildlife Refuge", dated April 1980.

(B) The purposes for which the Togiak National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, salmonoids, marine birds and mammals, migratory birds and large mammals (including their restoration to historic levels);

(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

16 USC 668dd note.

(7) YUKON DELTA NATIONAL WILDLIFE REFUGE.—(A) The Yukon Delta National Wildlife Refuge shall consist of the existing Clarence Rhode National Wildlife Range, Hazen Bay National Wildlife Refuge, and Nunivak National Wildlife Refuge, including lands, waters, interests, and whatever submerged lands, if any, were retained in Federal ownership at the time of statehood, which shall be redesignated as units of the Yukon Delta National Wildlife Refuge and the addition of approximately thirteen million four hundred thousand acres of public lands, as generally depicted on the map entitled "Yukon Delta National Wildlife Refuge", dated April 1980.

(B) The purposes for which the Yukon Delta National Wildlife Refuge is established and shall be managed include—

(i) to conserve fish and wildlife populations and habitats in their natural diversity including, but not limited to, shorebirds, seabirds, whistling swans, emperor, white-fronted and Canada geese, black brant and other migratory birds, salmon, muskox, and marine mammals;

Case 3:02-cv-00290-JKS Document 172-6 Filed 06/11/2007 Page 8 of 10



(ii) to fulfill the international treaty obligations of the United States with respect to fish and wildlife and their habitats;

(iii) to provide, in a manner consistent with the purposes set forth in subparagraphs (i) and (ii), the opportunity for continued subsistence uses by local residents; and

(iv) to ensure, to the maximum extent practicable and in a manner consistent with the purposes set forth in paragraph (i), water quality and necessary water quantity within the refuge.

(C) Subject to such reasonable regulations as the Secretary may prescribe, reindeer grazing, including necessary facilities and equipment, shall be permitted within areas where such use is, and in a manner which is, compatible with the purposes of this refuge.

(D) Subject to reasonable regulation, the Secretary shall administer the refuge so as to not impede the passage of navigation and access by boat on the Yukon and Kuskokwim Rivers.

ADMINISTRATION OF REFUGES

SEC. 304. (a) Each refuge shall be administered by the Secretary, subject to valid existing rights, in accordance with the laws governing the administration of units of the National Wildlife Refuge System, and this Act.

Refuge use or easements.

(b) In applying section 4(d) of the National Wildlife Refuge System Administration Act of 1966 (16 U.S.C. 668dd) with respect to each refuge, the Secretary may not permit any use, or grant easements for any purpose described in such section 4(d) unless such use (including but not limited to any oil and gas leasing permitted under paragraph (2)) or purpose is compatible with the purposes of the refuge. The Secretary shall prescribe such regulations and impose such terms and conditions as may be necessary and appropriate to ensure that activities carried out under any use or easement granted under any authority are so compatible.

Regulations.

(c) All public lands (including whatever submerged lands, if any, beneath navigable waters of the United States (as that term is defined in section 1301(a) of title 43, United States Code) were retained in Federal ownership at the time of statehood) in each National Wildlife Refuge and any other National Wildlife Refuge System unit in Alaska are hereby withdrawn, subject to valid existing rights, from future selections by the State of Alaska and Native Corporations, from all forms of appropriation or disposal under the public land laws, including location, entry and patent under the mining laws but not from operation of mineral leasing laws.

Commercial fishing rights or privileges.

(d) The Secretary shall permit within units of the National Wildlife Refuge System designated, established, or enlarged by this Act, the exercise of valid commercial fishing rights or privileges obtained pursuant to existing law and the use of Federal lands, subject to reasonable regulation, for campsites, cabins, motorized vehicles, and aircraft landings directly incident to the exercise of such rights or privileges: *Provided,* That nothing in this section shall require the Secretary to permit the exercise of rights or privileges or uses of the Federal lands directly incident to such exercise, which he determines, after conducting a public hearing in the affected locality, to be inconsistent with the purposes of a unit of the National Wildlife Refuge System as described in this section and to be a significant

Case 3:02-cv-00290-JKS Document 172-6 Filed 06/11/2007 Page 9 of 10



(h) In the event that Eklutna, Incorporated, receives a conveyance from the United States of the surface estate in lands withdrawn by subsection (b) pursuant to the agreement authorized in that subsection, and if a reconveyance from Eklutna, Incorporated, of the surface estate in land to the State from those subject to section 907 of this Act is thereby occasioned, a conveyance of the subsurface estate in the lands conveyed to Eklutna, Incorporated, shall be withheld until the Secretary ascertains to whom the subsurface estate is to be conveyed under this subsection. The entity owning the subsurface estate in those reconveyed lands shall retain that interest, unless it in the agreement or separately consents to convey the same to the State. In the event such entity so consents to convey the subsurface to the State, the Secretary shall convey the subsurface estate in the lands conveyed to Eklutna, Incorporated, to that entity; if such entity does not so consent, the subsurface estate in the lands conveyed to Eklutna, Incorporated, shall be conveyed to the State.

*Ante*, p. 3444.

EKLUTNA-STATE ANCHORAGE AGREEMENT

Claims and litigation, settlement.

SEC. 1426. (a) The purpose of this section is to provide for the settlement of certain claims and litigation, and in so doing to implement section 14 of the Settlement Act under the unique circumstances of the Native Village of Eklutna, with respect to the municipality of Anchorage.

(b) The terms, conditions, procedures, covenants, reservations, and other restrictions set forth in the document entitled "Agreement of Compromise and Settlement" submitted to the Senate Committee on Energy and Natural Resources and the House Committee on Interior and Insular Affairs, executed by Eklutna, Incorporated, and the municipality of Anchorage, acting by its mayor, and to be executed by the State of Alaska, acting by the commissioner of the department of community and regional affairs, are hereby ratified as to the rights, duties, and obligations of the State of Alaska, the municipality of Anchorage, and Eklutna, Incorporated, which arise among them under section 14(c) (2) and (3) of the Settlement Act, and Eklutna, Incorporated, is discharged accordingly from section 14(c)(3) thereof as to all lands heretofore selected by it.

(c) If, for any reason, the foregoing agreement is not executed by the State of Alaska this section shall be of no force and effect.

KONIAG VILLAGE AND REGIONAL CORPORATION LANDS

Definitions.

SEC. 1427. (a) As used in this section, the term—

(1) "Afognak Island" means Afognak Island, and Bear, Teck, Hogg, and Murphy Islands, above the line of mean high tide within the exterior boundaries of the Chugach National Forest. Murphy Island is that unnamed island shown on USGS Topographical Map, Scale 1:63360 entitled "Afognak B-2, 1952, Rev. 1967", lying in Seward Meridian, Alaska, Township 21 south, Range 19 west, that shares the common corner of sections 27, 28, 33, and 34.

(2) "Deficiency village acreage on the Alaska Peninsula" means the aggregate number of acres of public land to which "Koniag deficiency Village Corporations" are entitled, under section 14(a) of the Alaska Native Claims Settlement Act, to a conveyance of the surface estate on account of deficiencies in available lands on Kodiak Island, and to which Koniag, Incorporated is entitled under section 14(f) of that Act to conveyance of the subsurface estate.

43 USC 1613.



Dec. 2

(3) "12(b) number of Corporatio Claims Se conveyanc under sect subsurface Island as conveyanc thousand a

(4) "Kon following:

Afo Nu- Ouz Lei

(5) "Kor tions liste effective d adopted b and all of Native Co each of t which file

(6) "Ko rated, unc

(7) "Ko Native C

(8) "Ko under se represent listed in provided

(9) "Ko aggregat rated Reg the Alasl withdraw Numbere

(10) A Claims S

(11) " islands a 11(a)(3) Village limited t Channel ant to se

(b)(1) Regiona on the A Act; (B) conveya acreage Village Settlem Peninsu Native (

Case 3:02-cv-00290-JKS Document 172-6 Filed 06/11/2007 Page 10 of 10



(3) "12(b) acreage on the Alaska Peninsula" means the aggregate number of acres of public lands to which "Koniag 12(b) Village Corporations" are entitled under section 14(a) of the Alaska Native Claims Settlement Act by reason of section 12(b) of that Act, to conveyance of the surface estate and to which Koniag, Incorporated, under section 14(f) of that Act, is entitled to conveyance of the subsurface estate, less the aggregate acreage of 12(b) lands on Kodiak Island as to which Koniag 12(b) Village Corporations will receive conveyances, the latter being estimated to be approximately fifteen thousand acres.

43 USC 1613, 1611.

(4) "Koniag deficiency village corporation" means any or all of the following:

Afognak Native Corporation;
Nu-Nachk-Pit, Incorporated;
Ouzinkie Native Corporation; and
Leisnoi, Incorporated.

(5) "Koniag 12(b) Village Corporation" means the village corporations listed in subparagraph (4) above, if within sixty days of the effective date of this Act, Koniag, Incorporated, by a resolution duly adopted by its Board of Directors, designates them as such as a class, and all of the following: Natives of Akhiok, Incorporated, Old Harbor Native Corporation, Kaguyak, Inc., Karluk Native Corporation and each of the corporations listed in subsection (e)(2) of this section which files a release as provided for in subsection (e)(1) of this section.

(6) "Koniag region" means the geographic area of Koniag, Incorporated, under the Alaska Native Claims Settlement Act.

43 USC 1601 note.

(7) "Koniag village" means a Native village under the Alaska Native Claims Settlement Act which is within the Koniag region.

(8) "Koniag Village Corporation" means a corporation formed under section 8 of the Alaska Native Claims Settlement Act to represent the Natives of a Koniag village and any Village Corporation listed in subsection (e)(2) of this section which has filed a release as provided in subsection (e)(1) of this section.

43 USC 1607.

(9) "Koniag 14(h)(8) lands on the Alaska Peninsula" means the aggregate number of acres of public lands to which Koniag, Incorporated Regional Native Corporation is entitled under section 14(h)(8) of the Alaska Native Claims Settlement Act, less the acreage of lands withdrawn for conveyance to that corporation by Public Land Order Numbered 5627 (42 F.R. 63170) and conveyed to that corporation.

43 USC 1613.

(10) Any term defined in subsection 3(e) of the Alaska Native Claims Settlement Act has the meaning therein defined.

43 USC 1602.

(11) "Alaska Peninsula" means the Alaska Peninsula and all islands adjacent thereto which are withdrawn pursuant to section 11(a)(3) of the Alaska Native Claims Settlement Act for Koniag Village Corporations and Koniag, Incorporated, including but not limited to Sutwik, Hartman, Terrace, Nakchamik, and West and East Channel Islands, except those islands selected by Koniag, Inc. pursuant to section 15 of Public Law 94-204.

43 USC 1610.

43 USC 1611 notes. Land conveyances.

(b)(1) In full satisfaction of (A) the right of Koniag, Incorporated, Regional Native Corporation to conveyance of Koniag 14(h)(8) lands on the Alaska Peninsula under the Alaska Native Claims Settlement Act; (B) the right of each Koniag Deficiency Village Corporation to conveyance under that Act of the surface estate of deficiency village acreage on the Alaska Peninsula; (C) the right of each Koniag 12(b) Village Corporation to conveyance under the Alaska Native Claims Settlement Act of surface estate of 12(b) acreage on the Alaska Peninsula; (D) the right of Koniag, Incorporated under the Alaska Native Claims Settlement Act to conveyances of the subsurface estate

43 USC 1601 note.