**APPENDIX D**

1214

STATEMENT OF EDWARD WEINBERG,
COUNSEL FOR KONIAG, INC.
BEFORE THE HOUSE COMMITTEE ON INTERIOR
AND INSULAR AFFAIRS
AT HEARINGS ON H. R. 39
FEBRUARY 6-8, 1979

My name is Edward Weinberg. I am a member of the law firm of Duncan, Brown, Weinberg and Palmer, P.C., with offices in Washington, D.C. and Anchorage, Alaska. I am national counsel for Koniag, Inc., the regional Native corporation created under the Alaska Native Claims Settlement Act which covers the area of Kodiak Island and a portion of the western side of the Alaska Peninsula lying roughly between Lake Becharof and the western boundary of the Aniakchak National Monument. I also represent the Koniag villages in connection with the resolution of their land problems under the Alaska Native Claims Settlement Act.

With me today are Karl Armstrong, Executive Vice President of Koniag, Inc. and President of one of the Koniag villages, Leisnoi, Inc., and Mr. Gene Sundberg, Vice President for Lands of Koniag Inc. and a member of the Board of Directors of Afognak Natives, Inc., another of the Koniag villages.

Most of Kodiak Island is within the Kodiak National Wildlife Refuge. Of the land on Kodiak Island outside the wildlife refuge, most was selected by the state of Alaska under the Alaska Statehood Act prior to the enactment of ANCSA and a large portion of the state selected lands were tentatively approved by the Secretary of the Interior for

conveyance to the state prior to the passage of ANCSA. To the north of Kodiak Island is an island of almost 500,000 acres known as Afognak Island. All of Afognak Island is within the Chugach National Forest. And, of course, the City of Kodiak is also located on Kodiak Island, as is the Kodiak Island Coast Guard Base.

Because of these federal reservations and the presence of the City of Kodiak, the land selection opportunities of the Koniag villages on Kodiak Island and Afognak Island were severely restricted. As a result, both those Koniag villages whose entitlement exceeded the limited amount of land available on Kodiak and Afognak Islands, and Koniag, Inc. whose subsurface estate entitlements were severely limited on Kodiak Island by reason of the existence of the Kodiak National Wildlife Refuge, were required under ANCSA to make what is known as deficiency selections elsewhere. The land withdrawn by the Secretary of the Interior for deficiency selection is located on the Alaska Peninsula in the area from Becharof Lake southward to the area included in the Aniakchak National Monument recently established by Presidential Proclamation.

The Alaska Peninsula is separated from Kodiak Island by the Shelikof Strait, over 90 miles wide and comprising some of the roughest waters in the world. While the deficiency area on the mainland includes what is considered to be some of the finest wildlife habitat in the world, it has

1216

little, known economic value to Koniag and the Koniag villages. Further, the Alaska Peninsula is not an area with which the Koniag Natives have a cultural affinity. The Koniag Natives do not inhabit or frequent the Alaska Peninsula.

A second element of Koniag's land problem is the village eligibility litigation. Seven Koniag villages are involved.

The uncertain eligibility status of the seven uncertified villages complicates and delays the completion of ANCSA land selections and conveyances throughout Alaska. Until the eligibility status of these seven villages is determined, it is impossible to ascertain the total number of acres available under section 12(b) of ANCSA, which provides that the difference between 22,000,000 acres of the land entitlements of eligbible village corporations is to be allocated among the eleven Alaska regional corporations (exclusive of Sealaska) on a relative population basis, and which provides further for a reallocation by each regional corporation of its share of the 12(b) acreage among eligible village corporations within its boundaries. Likewise, it is impossible to complete the determination of regional corporation land entitlements under section 12(c) of ANCSA, which provides for allocations totalling 16,000,000 acres determined on a formula which includes as a factor the number of acres within each region which is selected pursuant to sections 12(a) and 12(b).

1217

The seven village eligibility cases have been remanded by the United States Circuit Court of Appeals for the District of Columbia to the Secretary of the Interior for further administrative proceedings. Should it be necessary to resort to these further administrative proceedings in order to resolve the eligibility of the seven villages, further extensive time delays will be encountered, thus delaying further final land determinations and conveyances under ANCSA.

A third factor complicates Koniag land entitlements. There are some unresolved disputes over land entitlements between the Kodiak Island Borough and certain of the Koniag villages. One involves lands which the Borough considers essential to its watershed for water supply purposes. Another concerns some very valuable land near the city of Kodiak which the Borough disposed of to third parties as homesites and for residential development purposes subsequent to the enactment of ANCSA. A third concerns other lands on Kodiak Island which were TA'd to the state and which the Borough, in turn, seeks to obtain from the state.

In sum, to a very considerable extent, unless the Congress remedies the situation, Koniag and the Koniag villages will not realize a fundamental objective of the settlement envisioned by Congress when it enacted ANCSA, that the Alaska Natives in each region be provided an economically viable land base.

1218

The Koniag Amendment responds to these problems. The Koniag people are realists. They have understood early and well that no matter how unfair the operatiokn of ANCSA has been in their case by reason of circumstances over which they have had no control, springing largely from decisions taken in Washington as long ago as the turn of the century without their knowledge or consultation, no proposal to rectify their situation is going to be viable unless it dealt with the interests of others who are affected in a manner in which those others regard as fair and reasonable.

Realizing that, Koniag over a period of almost eight months painstakingly negotiated with the Department of the Interior, the Alaska Coalition, the Alaska state government and the Kodiak Island Borough. In each instance, as examination of details revealed specific problems, they were resolved in a mutually satisfactory fashion. In the end, Koniag was able to present to the Congress, before the Senate Committee completed its work on last year's version of H.R. 39, a legislative proposal which was supported by the Alaska Coalition, the Alaska state government, the Kodiak Island Borough and the Department of the Interior, in addition to Koniag, the Koniag villages and the Alaska Natives themselves through the Alaska Federation of Natives.

The Koniag Amendment is a finely tooled, delicately balanced resolution of a number of complex problems.

1219

Central to the resolution of Koniag's land problem is an exchange of land on the Alaska Peninsula to which Koniag and certain of the Koniag villages are entitled because of the deficiency of land in and around Kodiak Island to satisfy their entitlements, for land on Afognak Island. As for the acreages, Koniag and the Koniag villages give up more acreage than they will receive.

While the Koniag Amendment had not evolved when this Committee concluded its hearings last year and took action upon H.R. 39, we kept this Committee's staff currently and completely informed and have had the benefit of numerous discussions with the staff as the Amendment evolved.

Finally, we are grateful that the Chairman of the full Committee, the Chairman of the Subcommittee and Representative Young of Alaska support the Koniag Amendment.

Unlike the Alaska Peninsula, Afognak Island is a part of the homeland of the Koniag people. Afognak Island has traditionally played a special role in the history and culture of the Koniag people. They were not consulted in what amounted to the expropriation of much of their homeland through the inclusion of Afognak Island in the Chugach National Forest and the establishment of the Kodiak National Wildlife Refuge. In reacquiring land on Afognak Island through the Konaig Amendment, the Koniag people will be returning home.

In summary, the Koniag Amendment would:

1220

1.  Exchange selection rights on the part of Koniag and Koniag villages to almost 300,000 acres of surface and underlying subsurface estate and an additional approximately 40,000 acres of surface estate on the Alaska Peninsula between Becharof Lake and the area that would be encompassed by the Aniakchak-Caldera National Monument, for some 280,000 acres of surface and underlying subsurface estate on Afognak Island now within the Chugach National Forest. The Alaska Peninsula lands that Koniag and its villages would surrender are described by the Alaska Coalition as "some of the very finest wildlife habitat in the world," and part of "the finest wildlife area in Alaska."

2.  Assure public access for sports hunting, fishing and other recreational purposes to the Afognak Island land that would be transferred to Koniag and its villages, pursuant to cooperative management agreements with appropriate federal, state and local agencies.

3.  Restrict Koniag's retained subsurface rights on the mainland to oil and gas under regulations designed to minimize interference with the surface values. Koniag would, therefore, give up all hardrock mineral values.

4.  Guarantee the retention in federal ownership, through addition to the Kodiak National Wildlife Refuge, of both islands offshore of Afognak Island and the "Red Peaks" area of over 46,000 acres, the latter being an area having unusual scenic and recreational value.

5.  Preserve within the Aniakchak National Monument almost 50,000 acres of land which, absent the Koniag proposal, would be conveyed under ANCSA to Koniag villages, with conveyance of underlying subsurface estate to Koniag, Inc.

6.  Preserve state selection rights to some 4,000 acres of land on Afognak Island heretofore selected by the State of Alaska under section 6 of the Alaska Statehood Act.

7.  Resolve, in a mutually satisfactory manner, a long standing dispute concerning the eligibility of seven Koniag villages for benefits under the Alaska Native Claims Settlement Act in a manner which imposes no substantial additional land burden upon the United States, thus bringing to an end extensive administrative and judicial proceedings which otherwise may delay for several additional years the final determination of the respective entitlements of all twelve Alaska regional corporations and their eligible villages to almost 500,000 acres of land.

1221

    8.  Resolve, in a mutually satisfactory manner, disputes between the affected Native corporations and the Kodiak Island Borough involving conflicting selection claims.

    9.  Assure management of the Afognak Island elk herd by either federal or state game managing agencies.

    10.  Assure protection of Afognak Island denning areas of the world renowned Kodiak brown bear.

    11.  Without the Koniag proposal about one quarter of the 458,000 acres of land on Afognak Island will in any event be conveyed to Native corporations.  Thus, regardless of the Koniag proposal the Forest Service will lose its present land monopoly on Afognak Island.  The Red Peaks area which (with the large offshore Ban Island) totals approximately 46,000 acres, is not forested, but has substantial scenic and recreational value.  These 46,000 acres, therefore, should not be regarded as a loss to the primary mission of the Forest Service, which is the management of federally owned timber lands.  They will remain in federal ownership and be managed for their true values, which are recreation and wildlife.

Appended to this statement for the use of the Committee and its staff are the following documents which we also request be included in the record:

    1.  The Koniag Amendment.

    2.  A section-by-section analysis of the Koniag Amendment.

    3.  A table dated January 25, 1979, entitled "Koniag Proposal," showing the acreages to be exchanged under the Koniag proposal.

    4.  Letter from Acting Secretary of Agriculture Weddington to Senator Jackson dated September 11, 1978.

    5.  Letter from Edward Weinberg to Senator Jackson dated September 13, 1978, commenting on the Agriculture

1222

letter of September 11, 1978.

    6. Letter of September 11, 1978 from the Alaska Coalition to Senator Jackson and Alaska Coalition's press release.

    7. Excerpts from S. Rep. 95-1300, 95th Cong., 2d Sess. (the Report of the Senate Committee on Energy and Natural Resources on H.R. 39, 95th Cong., 2d Sess.) regarding the Koniag Amendment.

    Thank you for the opportunity to present this statement.

1223

KONIAG AMENDMENT TO H.R. 39

SECTION BY SECTION ANALYSIS

    <u>Subsection (a)</u> defines pertinent terms.

    <u>Subsection (b)(1)</u> identifies the Native corporations to receive title to the lands on Afognak Island to be conveyed pursuant to the section, and provides that such conveyances shall be in full satisfaction of the rights of each of such corporations to conveyance under the Alaska Native Claims Settlement Act of lands and interests therein on the Alaska Peninsula.

    <u>Subsection (b)(2)</u> identifies exceptions to the conveyances provided for in subsection (b)(1).

    <u>Subsections (b)(3) and (b)(4)</u> provide the mechanics of effectuating the extinguishment of certain Koniag Native corporation deficiency selection rights on the Alaska Peninsula in exchange for which the conveyances of land on Afognak Island are to be made.

    <u>Subsection (b)(5)</u> provides for cooperative management agreements between the appropriate Koniag Native corporations and the Department of the Interior, appropriate state agencies and appropriate local political subdivisions (to the extent that the Department and such state and local agencies wish to enter into such agreements), under and pursuant to which lands on Afognak Island to be conveyed to

1224

the Native corporations under subsection (b)(1) will be open to hunting, fishing and other recreational uses. The cooperative management agreements will define the lands to be so opened, the conditions under which they will be opened, and will establish appropriate limits and conditions upon the recreational uses.

<u>Subsection (c)</u> provides that the surface estate on Afognak Island to be conveyed under subsection (b)(1) is to be conveyed to a joint venture consisting of Koniag deficiency village corporations, Koniag 12(b) village corporations and Koniag, Inc. Provision is made, at the election of any of the Koniag Native corporations involved, to be represented in the joint venture by a wholly owned subsidiary corporation. The subsection prescribes the share each of the participants is to have in the joint venture. Simultaneously with the conveyance of the surface estate to the joint venture, the subsurface estate in the lands conveyed is to be conveyed to Koniag, Inc. Finally, the joint venture and the Native corporations involved are prohibited from taking or permitting actions inimical to bear denning activity on the Tonki Cape Peninsula on Afognak Island.

<u>Subsection (d)</u> provides the means of resolving a dispute between Ouzinkie Native Corporation and Koniag, Inc. on the one hand and the Kodiak Island Borough on the

1225

other, over rights to the land on Kodiak Island described in the subsection. The dispute would be resolved by requiring the Secretary of the Interior to convey the surface and subsurface estate of the lands on Afognak Island described in the subsection to Ouzinkie Native Corporation and Koniag, Inc. respectively, in the event Ouzinkie Native Corporation and Koniag, Inc. enter into an agreement to convey to the Kodiak Island Borough their interests in the described Kodiak Island land which the Kodiak Island Borough desires as watershed.

Subsection (e) will, when implemented, resolve in favor of the Native villages listed therein, all disputes concerning their eligibility for ANCSA benefits and prescribes limits upon the ANCSA land benefits to which these villages shall be entitled. The time limits stated in this and other subsections are intended to be directory rather than mandatory.

Subsection (f). The intent of the subsection is to assure the applicability of the provisions of the Alaska Native Claims Settlement Act to conveyances to Native corporations made under this section to the extent that such provisions would have been applicable were the conveyances made pursuant to ANCSA. As one example, the applicability of otherwise applicable provisions of ANCSA are not to be affected by the fact that the conveyance provided for in subsection (c) is to be made to a joint venture rather than

1226

directly to the Alaska Native corporations that are the joint venturers.

Subsection (g) is a savings clause designed to preserve the rights of Koniag, Inc. to surface and subsurface estate on the Alaska Peninsula as therein provided.

Subsection (h) withdraws, subject to valid existing rights, public lands on Afognak Island to be conveyed to Native corporations within the Koniag region under this section, and provides for the opening of such lands, in the event any are not conveyed, to the extent the Secretary of the Interior deems appropriate.

Subsection (i). The rights of access and use of surface estate preserved for Koniag, Inc. under this subsection are restricted to the purposes of prospecting for, extraction and removal of subsurface resources retained under the section by Koniag, Inc. on the Alaska Peninsula. The rights of access and use preserved are those now provided for in existing regulations of the United States Fish and Wildlife Service (50 C.F.R. §29.32) dealing with the rights of persons holding mineral interests in lands conveyed to the United States for wildlife refuge purposes. These regulations do not provide for permits but set forth standards designed to minimize, so far as practicable, adverse impact on other surface values.

1227

<u>Subsection (j)</u> deals with one of the incidents of the settlement of the village eligibility dispute which is the subject of subsection (e). Its effect is, with the minor exception therein provided for amounting at the most to 1920 acres, to preclude diminution of land allocations to other Alaska regional corporations under subsection 12(b) of ANCSA because of resolution of the village eligibility dispute.

<u>Subsection (k)</u> is a corollary of subsection (f). The first sentence of subsection (k) makes it clear that Koniag, Inc.'s interest in the timber resources of the joint venture is to be deemed Koniag's timber resources for purposes of applicability of the revenue sharing provisions of ANCSA section 7(i). Subsection (k) also sets out the rules for determining the portion of Koniag's share of the proceeds from the timber resources of the joint venture which is to be distributed under section 7(i).

<u>Subsection (l)</u>. By subsection (l) Koniag, Inc. surrenders all of its subsurface mineral rights on the Alaska mainland other than for oil and gas (which is to be understood as including minerals, for example, sulfur, found in solution or mixed with oil or gas) and sand and gravel used in prospecting for, extracting, storing and removing oil and gas in the event sand and gravel is judicially