*Caminetti v. United States*, 242 U.S. 470 (1916) that "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms." *Cominetti*, 242 U.S. at 485. The Court went on to observe that "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are aid to doubtful meanings need no discussion." *Id.*

Leisnoi, Inc. merely asks this Court to give effect to the plain meaning of the ANILCA statute. The Protestant, on the other hand, goes through a variety of machinations, twisted readings of the legislative history, distorted interpretations of the statute, and reliance upon a recharacterization of issues in order to reach the false conclusion that Leisnoi, Inc. does not have a right to conveyances under ANCSA although Congress has enacted legislation declaring that Leisnoi does have a right to conveyances under ANCSA.

There is no need to rely upon comments made by legislators, or committee reports, in order to effectuate the plain meaning of ANILCA. There is no doubtful meaning of the statute that necessitates inquiry into the legislative history.[8] As the United States Supreme Court observed, the meaning of a statute must be sought "in the language in which the act is framed", rather than through an interpretation of the legislative history.

---

[8]To the extent the Court deems it pertinent to explore the legislative history of ANILCA, Leisnoi joins in Koniag's analysis of the legislative history of the statute as set forth in its Briefs.

21

Stratman's attempt to weaken ANILCA by reference to subsequent bills that were never enacted into law is another sign of the weakness of the Protestant's analysis of ANILCA itself. A bill recertifying the Native Village of Woody Island had been proposed to Congress by Leisnoi, Inc. and Koniag, Inc. in 1995. Protestant convinced the Kodiak Island Borough to pass a resolution asking for a three-year legislative moratorium in order to give the courts an opportunity to resolve the certification dispute. Yielding to local political pressure, the Alaska congressional delegation amended the draft recertification bill to include the language requested by the Kodiak Island Borough. Leisnoi, Inc. objected, because the amended version of the bill was inconsistent with ANILCA that had already confirmed the certification of the Native Village of Woody Island. Since Congress had already confirmed the certification of the Native Village of Woody Island in ANILCA, passage of legislation implying that the certification of the Native Village of Woody Island was still at issue would have been inconsistent with ANILCA. Accordingly, Leisnoi, Inc. withdrew its support for the amended draft legislation. The bill was never enacted into law in any form.

Stratman erroneously contends that since Congress had considered passing a bill including the language that Stratman convinced the Kodiak Island Borough to request, therefore this Court should construe ANILCA as having been weakened, or not meaning what it says. This proposition is false. ANILCA still means what it said, and no act of Congress has been passed amending it. Moreover, "[C]aution must be exercised in using the action of the Legislature on proposed amendments as an interpretive aid. Action on a proposed amendment is not a significant aid to interpretation of an act that was passed years before. Committee reports on amendatory or supplemental legislation are not relevant for the purpose of

22

interpreting the original legislation." *Cicoria v. Maryland*, 598 Atl. 2d 771, 776 (Md. App. 1991); *2A Sutherland, Statutes and Statutory Construction (by N. J. Singer)* § 48.18 at 341 (Sands 4th Ed. 1984 Rev.). As applied to the issue raised in Leisnoi, Inc.'s motion, action by Congress in 1995 on an amendment to a proposed bill is not an aid to interpretation of the ANILCA legislation that was passed years before. The draft bill in 1995 that was never adopted into law is "not relevant for the purpose of interpreting the original legislation."

Congress' decision not to enact into law the proposed amendment that would have called into question the certification of the Native Village of Woody Island supports Leisnoi's position in this matter. Obviously, if Congress had passed a law stating that Woody Island's certification is confirmed only in the event that a court does not declare otherwise, then Stratman would have argued herein that ANILCA could not have congressionally confirmed Leisnoi's certification since Congress later passed a law calling that certification into question. This sequence of events did not play out in Stratman's favor, however, since Congress did not enact into law the language Stratman persuaded the Kodiak Island Borough to request be included in the proposed 1995 legislation.

Finally, Stratman's strained reading of ANILCA is inconsistent with the "settled principle that, in Indian law, all ambiguities must be resolved in favor of the Indians." Matter of *City of Nome, Alaska*, 780 P.2d 363, 367 (Alaska 1989). See also, *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655, 660 (9th Cir. 1975) ("[A]mbiguities in federal treaties or statutes dealing with Indians must be resolved favorably to the Indians."; *Parker Drilling Co. v. Metlakatla Indian Community*, 451 F.Supp. 1127, 1140 (D. Alaska 1978), observing that there is a "general tenet of Indian law that all ambiguities must be resolved in favor of the

Indians...." While Leisnoi, Inc. contends that the meaning of ANILCA is plain and unambiguous, to the extent that the Protestant alleges there is some ambiguity where none actually exists, any such ambiguity must be resolved in favor of the Native Woody Islanders.

As the above analysis makes clear, principles of statutory construction compel a conclusion that by directing land patents to be issued to the Afognak Joint Venture in satisfaction of Leisnoi's rights under ANCSA to select lands on the Alaska Peninsula, Congress has ratified the status of Leisnoi, Inc. as a Native Village Corporation for the Native Village of Woody Island and confirmed the certification of the Native Village of Woody Island. Any challenge to the eligibility of the Native Village of Woody Island is now moot.

### *Protestant Attempts to Draw a Distinction without a Difference*

At pages 43-44 of his Answering Brief, the Protestant attempts to escape from the legal principle that Congress has the power to ratify acts which it might have authorized by drawing a distinction between what Stratman refers to as "unauthorized" conduct and "incorrect" conduct, a distinction without a difference. Stratman argues "There is no suggestion that the Secretary did not have the authority to certify Leisnoi as an eligible native village ... Stratman's challenge to the Secretary's decision to certify Leisnoi is not based on a contention that his decision was unauthorized. It is based on the contention that it was *incorrect*, in that Leisnoi was not qualified as an eligible native village under the criteria provided in ANCSA Section 11(b)(3)." Stratman's Answering Brief at pp. 43-44. (Emphasis in original.)

24

The proposed distinction between "unauthorized" and "incorrect" is meaningless.[9] If the Native Village of Woody Island were not qualified for village eligibility status under the Alaska Native Claims Settlement Act, then the Secretary of the Interior was not authorized by ANCSA to convey land to Leisnoi, Inc., the Native Village Corporation for Woody Island. Stratman's theory that the Secretary was somehow authorized by ANCSA to issue land patents to a Native Village Corporation if its village were not eligible for benefits is absurd.

ANCSA specifically conditioned conveyances to a Native Village Corporation upon a determination that the Native Village qualified for benefits under ANCSA. Thus, the Secretary would not merely have been "incorrect" in issuing land patents where a Native Village is ineligible; the Secretary would have had no authority to do so under ANCSA. ANILCA, on the other hand, specifically directed the Secretary of the Interior to patent land on Afognak Island in satisfaction of Congressionally recognized ANCSA rights of the four Koniag Deficiency Village Corporations listed in Section 1427(a)(4) of the Act to select acreage on the Alaska Peninsula. In so doing, Congress ratified the action of the Secretary of the Interior in having certified the Native Village of Woody Island as being eligible for benefits under the Alaska Native Claims Settlement Act. It is now a moot issue whether or not the Secretary of the Interior was "authorized" to certify the Native Village of Woody Island as being eligible for benefits, or whether he was "correct" in certifying the Native Village of Woody Island as

---

[9]Moreover, by focusing his analysis upon the power of the Secretary of the Interior instead of upon the power of Congress, Stratman also overlooks the congressional power to "ratify... acts which it might have authorized". See, Swayne & Hoyt v. United States, 300 U.S. 297, 301-302 (1936). (Emphasis added.)

being eligible for benefits. Congress has officially recognized Leisnoi, Inc. as a Native Village Corporation that has a right to conveyances under ANCSA. See, ANILCA §1427(b)(1).

Whether or not the Secretary of the Interior was initially correct or authorized in making his eligibility determination is irrelevant, since Congress has plenary authority under the property clause of the United States Constitution to dispose of public lands as it sees fit. See, *Van Brocklin vs. Anderson*, 117 U.S. 151, 165 (1886); *Maxwell Land Grant Case*, 121 U.S. 325 (1887); *Kleppe v. New Mexico*, 426 U.S. 529 (1976). If the Secretary of the Interior had erroneously certified the Native Village of Woody Island, as Stratman contends, then Congress still had the authority to ratify the action of the government official even if his act was unauthorized at the time it was made. See, *Swayne & Hoyt v. United States*, 300 U.S. 297 (1936); *Isbrandtsen-Moller Co. v. United States*, 300 U.S. 139 (1936).

It makes no difference whether the Native Village of Woody Island was or was not originally eligible for benefits under ANCSA because Congress has ratified the certification of the Native Village of Woody Island by expressly declaring that Leisnoi had a right to conveyances under ANCSA, and directing the Secretary of the Interior to convey public lands to the Afognak Joint Venture in satisfaction of the ANCSA selection rights of Leisnoi, Inc., the Native Village Corporation for the Village of Woody Island. Congress has plenary authority over public lands, and it has exercised its authority by directing the Secretary of the Interior to issue the patents to lands on Afognak in satisfaction of Leisnoi, Inc.'s rights under ANCSA to select lands on the Alaska Peninsula. It no longer matters whether the Native Village of Woody Island met the regulatory test for benefits under ANCSA, since Congress has passed ANILCA

into law, declaring Leisnoi, Inc. to be a Koniag Village Deficiency Corporation that has a "right to conveyance" under ANCSA. See, ANILCA §1427(b)(1).

*The Congressional directive in ANILCA that land be patented to or on behalf of the Koniag Village Deficiency Corporations was absolute, not conditional.*

ANILCA §1427(b)(1) directed that the Secretary of the Interior shall convey to the Afognak Joint Venture the public lands on Afognak Island in full satisfaction of the right of each Koniag Deficiency Village Corporation to conveyance under ANCSA of the surface estate of deficiency village acreage on the Alaska Peninsula. This was an absolute directive, rather than a conditional one. Congress did not instruct the Secretary of the Interior to convey the Afognak land only if the Secretary determined that the Native Village of Woody Island was eligible for benefits under ANCSA. The directive was not conditioned upon any findings being made or hearings being held by the Secretary of the Interior.

Despite this clear Congressional directive having been signed into law, the Protestant still labors under the misconception that land patents should not have been issued unless the Interior Board of Land Appeals determines that the Native Village of Woody Island is eligible for benefits under ANCSA. If Congress had been of the view that Leisnoi, Inc. should not share in the Afognak Joint Venture unless and until the court challenge brought by the Protestant was resolved, then it could have conditioned the land conveyances upon a finding by the IBLA or the Secretary of the Interior that the Native Village of Woody Island was eligible for benefits. Congress did not do so. Instead, it declared that the Koniag Deficiency Village Corporations have a right to conveyances under ANCSA, and it unconditionally directed the Secretary of the Interior to convey the lands on Afognak Island.

27

The Protestant no doubt wishes that Congress had never enacted ANILCA into law, so that the Protestant could continue in his effort to try to obtain for himself land and money from Leisnoi, Inc. in settlement of claims he purports to have asserted as some sort of a public interest litigant through his contingency fee lawyer. Unfortunately for the Protestant, Leisnoi, Inc. was included by name in the Alaska National Interest Lands Conservation Act as "having a right...to conveyance" under ANCSA. See, ANILCA §1427(b)(1). Unlike the Native Villages listed in subsection (e) of Section 1427, whose ability to obtain some limited land patents was conditioned upon the signing of releases waiving claims to all other benefits under ANCSA, Leisnoi, Inc. was entitled to its conveyances without having to jump through any additional hoops or satisfy any other additional legal hurdles other than simply accepting the Afognak lands in lieu of acreage on the Alaska Peninsula. The Protestant, in a desperate effort to avoid the consequences of the ANILCA legislation, and in violation of the principles of law set forth in *Koniag, Inc. v. Kleppe*, has effectively asked this Court to rewrite ANILCA so as to impose regulatory conditions upon the unconditional land grants that Congress directed be made.

Stratman's theory is that even though Congress said the Afognak land should be patented to the Afognak Joint Venture in satisfaction of Leisnoi's right to conveyance of lands on the Alaska Peninsula, the land patents should never have been issued. Stratman obviously seeks to eviscerate ANILCA. This Court should decline his request to do so.

The plain language of the statute defines Leisnoi, Inc. as a Koniag Deficiency Village Corporation. As noted above, Village Corporations are defined as having the same meaning as under Section 3(j) of the Alaska Native Claims Settlement Act. ANCSA, in turn, defines

28

Village Corporations as being Alaska Native Village Corporations organized to hold or distribute lands and property on behalf of a Native Village. If there is no Native Village, then there is no Native Village Corporation. See, 43 USC §1602(c) and (j). By declaring Leisnoi, Inc. to be a Koniag Village Deficiency Corporation, a specific type of Native Village Corporation, and by declaring that the Koniag Village Deficiency Corporation have a right to conveyances under ANCSA, Congress necessarily recognized the Native Village of Woody Island as being eligible for benefits. Congress had the right and authority to direct that the land patents be issued on behalf of Leisnoi, Inc., and the fact that the Protestant wishes he could still challenge the certification of the Native Village of Woody Island does not alter this outcome. Congress has ratified the certification of the Native Village of Woody Island by enacting legislation recognizing Leisnoi, Inc.'s "right to… conveyance" under ANCSA, and by allowing it to participate in the Afognak Joint Venture.

*The formula for ANCSA land distributions throughout the State of Alaska would have to be recalculated and additional acreage would have to be conveyed by the federal government if this Court were to accept Stratman's theory.*

If this Court were to accept Stratman's reading of ANILCA and his proposition that the Native Village of Woody Island should not have been certified, then this will necessitate a recalculation of ANCSA distributions throughout the state of Alaska. Moreover, it would then become necessary for the United States of America to allocate another 115,200 acres among the regional corporations on the basis of the number of Natives enrolled to each region. Rejection of the proposition that ANILCA confirmed the certification of the Native Village of Woody Island, and acceptance of Stratman's theory that the Native Village of Woody Island should be decertified, would have a harmful ripple effect throughout the state of Alaska, and

would upset the distribution of lands that have already been made. Adoption of the Protestant's theory would frustrate the congressional policy of finality and repose in ANCSA matters, as was made apparent in 43 USC §1601(b), that called for the settlement to be accomplished rapidly, with certainty, and without litigation.

A decision that ANILCA did not ratify the certification of the Native Village of Woody Island, and decertification of the Native Village of Woody Island, would require a reallocation of acreage to be received by regional corporations pursuant to Section 12(c) of the Alaska Native Claims Settlement Act, 43 USC §1611(c), as well as a reallocation of the acreage to be reconveyed from Koniag to Village Corporations pursuant to ANCSA §12(b), 43 USC §1611(b).

The difference between thirty-eight million acres and the 22 million acres selected by Village Corporations pursuant to 43 USC §1611(a) and (b) was to be allocated among the 11 regional corporations according to the formula set forth in 43 USC §1611(c)(1-4). If this Court were to conclude that ANILCA did not confirm the certification of the Native Village of Woody Island, and this Court were to decertify Woody Island, then that would mean that the approximately 115,200 acres that were patented to Leisnoi, Inc. would not have been patented to a Native Village Corporation, since if Woody Island were determined not to be a Native Village, then Leisnoi, Inc. would simply become a private corporation incorporated under the laws of the State of Alaska. Leisnoi, Inc. would cease to be an Alaska Native Village Corporation as that term is defined at 43 USC §1602(j) of ANCSA. Leisnoi, Inc., of course, would continue to exist as a corporation, since it is duly incorporated under the laws of the State of Alaska, and it would continue to own the real property that was patented to it, since

the patents have become validated by virtue of the expiration of the statute of limitations in which the patents could have been challenged. See, 43 USC §1166. Land that was patented to Leisnoi, Inc. would not count towards fulfillment of the government's obligation to convey land to Native Village Corporations if Stratman's theories were adopted by this Court. It would then become necessary for the United States Government to patent an additional 115,200 acres in satisfaction of its obligations under ANCSA.

If Leisnoi, Inc. were decertified, then lands that had been patented to Leisnoi, Inc. would not qualify as ANCSA land distributions. Leisnoi, Inc. would cease to be deemed a Native Village Corporation, so the calculation of the number of acres that Koniag, Inc. was entitled to receive under the formula set forth in 43 USC §1611(c) would have to be recalculated. Recalculation would be necessary since the difference between thirty-eight million acres and the acreage selected by village corporations would become altered once Leisnoi, Inc. were determined not to be a village corporation based upon decertification of the Native Village of Woody Island. The ripple effect would extend to other regional corporations, since the formula set forth in 43 USC §1611 governed acreage conveyed not merely to Koniag, Inc., but also to the other regional corporations throughout the state of Alaska. The entire formula for land distributions throughout the state of Alaska would have to be recalculated, public lands would have to be withdrawn for selection, and new patents issued to the various regional corporations. Issues such as what lands could be selected at this late date, what public lands in Alaska have to be withdrawn by the Department of the Interior for possible selection by Native Corporations, and problems of regional corporations having been patented more land

than they would be entitled under the revised calculations would give rise to a host of legal problems that could cloud title to lands owned by ANCSA corporations in Alaska.

Rejection of the proposition that ANILCA confirmed the certification of the Native Village of Woody Island, and acceptance of Stratman's theory that the Native Village should be decertified would also affect the allocation of lands under 43 USC §1611(b). Under that section, the difference between 22 million acres and the total acreage selected by village corporations pursuant to subsection (a) of 43 USC §1611 is to be allocated by the Secretary of the Interior among the 11 regional corporations on the basis of the number of Natives enrolled in each region. Obviously, if the 290 Natives who originally enrolled to the Native Village of Woody Island were deemed not to have enrolled to a Native Village in the Koniag region, then the Leisnoi shareholders would not be deemed enrolled to the Koniag region. Therefore, acreage that was allocated among the 11 regional corporations based upon figures in the formula that included the enrolled Woody Islanders would have to be reallocated based upon a recomputation of the formula excluding Leisnoi shareholders from the Koniag region. If the Native Village of Woody Island were decertified, some of its shareholders may elect to enroll to villages in other regions to which they may have ties or from which they may have ancestral connections. This would alter the number of Natives enrolled in each region, and would therefore upset the allocation of lands already made pursuant to 43 USC §1611(b).

Another ripple effect that would flow from a rejection of the proposition that ANILCA ratified the certification of the Native Village of Woody Island would be the distributions made under ANCSA §7(i), 43 USC §1606(i). That provision of ANCSA mandates that 70% of all revenues received by each regional corporation from timber resources and subsurface estate

32

shall be divided annually by each regional corporation among all 12 regional corporations "according to the number of Natives enrolled in each region..." 43 USC §1606(i). If the Native Village of Woody Island were to be decertified, and its original 290 enrollees effectively de-enrolled from the Koniag region, some of those enrollees could choose to enroll to other Koniag villages, but others may choose to enroll to non-Koniag villages to which they may have ancestral or other ties. By changing the number of Natives enrolled to each region, the formula for distribution of 7(i) funds would thereby be altered. This would give rise to a donnybrook of potential litigations on such issues as whether the 7(i) distributions already made should be recalculated, whether funds already received would have to returned for a redistribution, and a host of other potential problems that would result from a change in the distribution formula more than 20 years after the distribution formula was set.

Another detrimental effect that would flow from accepting Stratman's reading of ANILCA would involve the distribution of funds pursuant to ANCSA § 7(j), 43 USC §1606(j). That section mandates that during the five year period following December 18, 1971, not less than 10% of all corporate funds received by each of the 12 regional corporations under Section 1605 of ANCSA and under subsection 7(i), and all other net income, shall be distributed among the stockholders of the 12 regional corporations. Not less than 45% of funds from such sources during the first five year period, and 50% thereafter, must be distributed among the village corporations in the region. If the Native Village of Woody Island were decertified, such that Leisnoi, Inc. were determined not to be a Native Village Corporation, then funds distributed pursuant to ANCSA §7(j) would have to be recalculated. Woody Islanders would then have to re-enroll to other villages, perhaps in other regions, and would have a potential right to funds

that they should have received from the regional corporations pursuant to ANCSA §7(j). This would also give rise to potential litigation on a host of thorny legal issues such as whether it would be fair to deny these cash distributions to persons who had originally opted to enroll to the Native Village of Woody Island. Cash distributions might have to be made to the estates of various deceased shareholders, thereby possibly necessitating the reopening of estates that might already been probated.

As this Court can readily see, accepting Stratman's theory that ANILCA did not confirm the certification of the Native Village of Woody Island would open up a Pandora's Box. Complex formulas involving the distribution of millions of acres of land throughout the state of Alaska would have to be recalculated, and when the results varied from the prior computations, new distributions and new allocations of land would have to be made not just in the Koniag region, but throughout the state of Alaska. Such reallocations and redistributions at this late date would run contrary to the Congressional policies enacted into law in ANCSA that the settlement should be accomplished rapidly, with certainty, and without litigation. See, 43 U.S.C. § 1601(b).

### *Stratman's proposed interpretation of ANILCA would create a conflict with subsequently enacted regulations that recognize the Native Village of Woody Island as an Alaska Native Village with a government-to-government relationship with the United States.*

Another detrimental consequence that would flow from accepting the Protestant's interpretation of ANILCA would be the inherent conflict with subsequently adopted regulations published by the United States Department of the Interior recognizing the Native Village of Woody Island as having a government-to-government relationship with the United States

34

government. Subsequent to the adoption of ANILCA, the Bureau of Indian Affairs published a list of Indian tribal entities, including Alaska Native Villages, that have been officially recognized as Indian tribes by the United States Bureau of Indian Affairs. Pursuant to the Indian Self-Determination Act, 25 USC §458aa, the Bureau of Indian Affairs published a list of federally acknowledged tribes and native villages that "have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes." See, 63 FR 71941 (December 30, 1998). Included within that list is "Lesnoi Village (aka Woody Island)."

The Indian Self-Determination Act defines the term "Indian tribe" as meaning "any Indian tribe, band, nation, or other organized group or community, **including any Alaska native village** or regional or village corporation **as defined in** or established pursuant to **the Alaska Native Claims Settlement Act** (85 Stat. 688)...." 25 USC §450b(e) (emphasis added). Inclusion of "Lesnoi Village (aka Woody Island)" in the approved list of federally acknowledged tribes, 63 FR 71941 (1998), therefore means that the United States of America recognizes Woody Island is an Alaska Native Village as that term is defined in the Alaska Native Claims Settlement Act. Thus, not only has Congress, in ANILCA, confirmed that Leisnoi, Inc. is an Alaska Native Village Corporation with a right to conveyances under ANCSA, but the Secretary of the Interior, in implementing the Indian Self-Determination Act, has recognized Woody Island as an Alaska Native Village that has a government-to-government relationship with the United States. In order to accept Stratman's argument that Woody Island is not an Alaska Native Village as defined in ANCSA, and that Leisnoi, Inc. does not have a

right to conveyances under ANCSA, therefore, the IBLA would have to somehow disagree with or attempt to nullify a Congressional statutory finding in ANILCA that Leisnoi, Inc. is a Koniag Deficiency Village Corporation with a right to conveyances under ANCSA, and set aside the finding of the Secretary of the Interior, made pursuant to the Indian Self-Determination Act, that Woody Island is an Alaska Native Village as defined under the Alaska Native Claims Settlement Act that enjoys a government-to-government relationship with the United States.[10]

If this Court were to decertify the Native Village of Woody Island, such a ruling would create a conflict with the inclusion of Leisnoi, Inc. in the list of Indian tribes and Alaska Native Villages recognized by the United States as having a special government-to-government relationship with the United States government. In other words, while the Protestant contends that Woody Island is not a Native Village, the United States government has expressly recognized Woody Island as a Native Village that enjoys a government-to-government relationship with the United States. Stratman's reading of ANILCA would effectively challenge the Bureau of Indian Affairs' inclusion of Woody Island in the list of Alaska Native Villages that have a government-to-government relationship with the United States, since if there were no such native village, then the native village obviously could not have a government-to-government relationship with the United States.

---

[10]Leisnoi, Inc. questions whether the Interior Board of Land Appeals would have jurisdiction to consider setting aside the listing of Woody Island as a recognized tribal entity. Such a challenge would likely have to be brought by Stratman before the Interior Board of Indian Appeals; Stratman has not timely commenced any such challenge.

Stratman's argument raised herein that Woody Island is not an Alaska Native Village is at odds with the inclusion of Woody Island in the list of tribes and Alaska Native Villages officially recognized by the Bureau of Indian Affairs.[11] Stratman's misreading of ANILCA would thus create yet another conflict. Leisnoi, Inc. has been specifically mentioned by name in ANILCA as being eligible for ANCSA benefits, and pursuant to the Indian Self-Determination Act, Woody Island has been recognized as an Alaska Native Village that has a government-to-government relationship with the United States.[12]

The interpretation of ANILCA suggested by Leisnoi, Inc., gives effect to the plain meaning of the statute that recognizes Leisnoi, Inc. as having a right to conveyances under ANCSA, and harmonizes the original finding by the BIA that Woody Island is eligible for benefits under ANCSA with the "right to conveyance" language employed in ANILCA section 1427(b), as well as the subsequent inclusion of "Lesnoi Village (aka Woody Island)" in the list of Indian tribes and Alaska Native Villages officially recognized by the Bureau of Indian

---

[11]The Protestant apparently considers it pertinent to his decertification challenge whether Woody Island has a tribal government, as has officially been recognized by virtue of Woody Island's inclusion in the list of Alaska Native Villages enjoying a "government-to-government relationship with the United States", 63 FR 71941, since his attorney questioned a number of witnesses at the hearings on the tribal government issue. See, e.g., Tr. at pages 1079, 1606, 2265. One of the present leaders of Woody Island's Tribal Council is Mitch Gregoroff, who grew up on Woody Island, then later served as a director of Leisnoi, Inc., and spearheaded the effort to repopulate Woody Island in the 1990's. Tr. at 975.

[12]Regulations promulgated by the Secretary of the Interior, such as the ANCSA eligibility regulations, 43 CFR Section 2651.2, and the list of tribes and Alaska Native Villages recognized by the Secretary of the Interior, 63 FR 71941, are binding upon the Interior Board of Land Appeals and cannot be challenged in this administrative proceeding. See, *Conoco, Inc.*, IBLA 87-102 (1990); *Coastal States Energy Co.*, 110 IBLA 179 (1989); *Alpine Construction Co. v. Office of Surface Mining Reclamation & Enforcement*, IBLA 88-527 (1990).

Affairs, 63 FR 71941 (December 30, 1998) pursuant to the Indian Self-Determination Act. The Protestant's strained interpretation of ANILCA would require this Court to invalidate the BIA's original certification of the Native Village of Woody Island, eviscerate the Congressional declaration that Leisnoi, Inc., is a Koniag Deficiency Village Corporation with a right to conveyances under ANCSA, and nullify the Bureau of Indian Affairs' inclusion of Woody Island as a recognized Alaska Native Village that enjoys a government-to-government relationship with the United States.[13]

### III.   Omar Stratman lacks administrative standing to challenge the certification of the Native Village of Woody Island.

As a matter of law, the Protestant lacks administrative standing to pursue his challenge to the certification of the Native Village of Woody Island.

Protestant concedes that he lacks a property interest in any lands that would be affected by a decision on the certification of the Native Village of Woody Island. See, Tr. of August 4, 1998 proceedings at pp. 722-723. A protestant challenging a village eligibility decision is required to show that he has a property interest that would be affected by the decision. See, 43 CFR §4.410(b), as well as former 43 CFR §4.902 (40 FR 33173, August 6, 1975).

---

[13] Protestant failed to address ANILCA at all in his Opening Brief, although the ANILCA ratification issue was specifically referred to the IBLA by U. S. District Judge Singleton, and the Protestant knew this issue needed to be briefed. Leisnoi, Inc. therefore was deprived of the opportunity of responding to Stratman's ANILCA analysis when it filed its Answering Brief. Had Stratman addressed the ANILCA issue in his Opening Brief, Leisnoi could have responded with the above arguments in its Answering Brief, and Stratman could have replied in his Reply Brief. Leisnoi objects in advance to any attempt by Stratman to file a fourth brief, since he purposefully failed to address ANILCA in his first brief.