# EXHIBIT 6

# REPLY BRIEF OF KONIAG

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS
139 East South Temple, Suite 600
Salt Lake City, Utah 84111
Phone: 801-524-5344

| | |
|---|---|
| OMAR STRATMAN, ) <br> ) <br> Protestant ) <br> v. ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> LEISNOI, INC., ) <br> ) <br> Respondent ) <br> ----------------------------------) <br> KONIAG, INC., ) <br> BUREAU OF INDIAN AFFAIRS, ) <br> ) <br> Intervenors ) <br> ) | IBLA 96-152 <br> No. A76-0132 CV (JKS) <br><br> Challenge to the eligibility of Woody Island as a Native Village under Section 11 (b)(3) of the Alaska Native Claims Settlement Act, 43 U.S.C. §1610(b)(3) (1994) |

## REPLY BRIEF OF KONIAG, INC.
Intervenor

R. Collin Middleton
Brennan Cain
MIDDLETON & TIMME, P.C.
421 West First Ave., Ste. 250
Ph: (907) 276-3390
Fax: (907) 276-8238

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| ARGUMENT | | |
| I. | Stratman Fails To Address The First Two Sections of Koniag's Post-Hearing Brief | 3 |
| | A. Stratman's Assertions | 4 |
| | B. Other Issues Raised By Koniag And Ignored By Stratman | 18 |
| II. | In Section 1427 of ANILCA, Congress Ratified The Secretary's Secretary's Certification Of Woody Island As An Eligible Village. | 19 |
| | A. The Plain Language Of Section 1427 Ratifies Leisnoi as An Eligible ANCSA Village Corporation | 21 |
| | B. The Legislative History Of Section 1427 Suggests A Congressional Intent to Ratify Leisnoi As An Eligible Village Corporation | 23 |
| |    1. Title XIV of ANILCA was designed to resolve village eligibility disputes and to facilitate land exchanges. | 24 |
| |    2. Other sections of ANILCA similarly ratified village eligibility | 27 |
| |    3. Stratman's assertion that Koniag's Exhibits are not a part of legislative history is premised upon a misreading of the relevant class | 28 |
| |    4. Stratman fails to differentiate between "post hoc" legislative history and "contemporaneous" legislative history. | 34 |
| |    5. Congress was aware that section 1427 could be construed as a congressional ratification of Leisnoi's eligibility | 39 |
| |    6. Contemporaneous events to the passage of ANILCA Section 1427 demonstrate that Congress was aware of the controversy surrounding Leisnoi and chose to ratify the village | 41 |

      7. Congress was aware of Jack Anderson's vitriolic editorials .................................................. 42

      8. Congress was aware of Omar Stratman's lawsuit .......... 44

  C. The Issue, Properly Phrased, Is Not Whether Congress Intended To Impliedly Repeal ANCSA Section 11(b)(3). . 46

      1. ANILCA Section 1427 did not expressly repeal ANCSA Section 11(b)(3) as to the seven (e)(2) villages .................................................. 46

      2. ANILCA Section 1427 did not impliedly repeal ANCSA § 11(b)(3) ........................................ 47

      3. Congress has frequently granted extensions to ANCSA's and ANILCA's statutory deadlines ..... 50

      4. Congress has frequently authorized land exchanges for the purpose of terminating litigation ......... 51

      5. Congress has the power to ratify ............... 52

CONCLUSION ...................................................... 53

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

established that the plain language of section 1427 of ANILCA ratifies Leisnoi as an ANCSA village corporation. *Id.* at 86-87. Finally, Koniag established that the legislative history of section 1427 supports this plain meaning. Koniag's discussion of the legislative history may be summarized as follows:

> 1) Congress was aware of the dispute over Leisnoi's eligibility and considered the issue, and it chose not to do so.
>
> 2) One of the main purposes of section 1427 was to resolve village eligibility in the Koniag region.
>
> 3) Congress could have explicitly left open the issue of Leisnoi's eligibility if it had desired, and it chose not to do so.

*Id.* at 87-90. Therefore, Koniag concluded that section 1427 precludes further judicial inquiry into Leisnoi's status as an eligible village corporation. *Id.* at 91.

In response, Stratman argues that the issue is not whether Congress, through ANILCA, ratified Leisnoi. Rather, asserts Stratman, the "real issue, properly framed, is whether or not Section 1427 repealed the village eligibility requirements provided in ANCSA Section 11(b)(3) with regard to Leisnoi, thereby exempting it from having to satisfy those requirements as a condition to its receipt of ANCSA land benefits." Stratman Response Br. at 12; *see also id.* at 13, 43, 44, 45, 46, 59, 61 (wherein Stratman repeatedly asserts that implied repeal is the "real issue").

Stratman's attempt to re-characterize the issue is creative but unconvincing. Koniag explains why the ANILCA's plain language compels the conclusion that Congress ratified Leisnoi's eligibility in Part A of this reply brief.

Next, Stratman argues that: (1) the documents relied upon by Koniag are not legislative history and therefore deserve little weight; (2) Congress was unaware of the raging controversy surrounding Leisnoi's certification; and (3) Congress did not intend to resolve Leisnoi's eligibility. Stratman's arguments rely

20

on a misreading of the cases. The legislative history and relevant case law are discussed in Part B of this reply brief.

The majority of Stratman's response brief addresses his contention that the "real issue" is whether Congress intended to impliedly repeal ANCSA § 11(b)(3). In Part C of this reply, Koniag explains why Stratman's attempt to re-characterize the issue as implied repeal lacks merit.

### A. The Plain Language Of Section 1427 Ratifies Leisnoi As An Eligible ANCSA Village Corporation.

In its opening brief, Koniag established that the plain language of section 1427 of ANILCA ratifies Leisnoi's status as an eligible village. Koniag Post-Hearing Br. at 86-87. Summarizing that argument here, subsection 1427(a)(4) lists Leisnoi as a "Koniag deficiency corporation." Subsection 1427(b)(1) then recognizes the rights of Koniag deficiency village corporations and Koniag 12(b) village corporations to benefits under ANCSA and describes the land that will be conveyed to the Koniag villages in exchange for such rights. Section 1427 does not condition the right of any Koniag village to receive these benefits except for those villages listed in subsection(e)(2). Thus, the plain language of section 1427 unambiguously states that Leisnoi is both a Koniag deficiency corporation and a Koniag 12(b) village corporation and, thereby, ratifies and confirms Leisnoi's status as an eligible village corporation.[9]

---

[9] The plain language of other subsections and of ANCSA, itself, supports this interpretation. Leisnoi is a Koniag village corporation. See ANILCA Section 1427(a)(4), (a)(5). Section 1427 contemplates two distinct types of Koniag village corporations. Section 1427(a)(8) states:

> "Koniag Village Corporation" means a corporation formed under section 8 of the Alaska Native Claims Settlement Act to represent the Natives of a Koniag village and any Village Corporation listed in subsection (e)(2) of this section which has filed a release as provided in subsection (e)(1) of this section.

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

Stratman makes one final observation of the language used in § 1427. Section 1427(f) makes "[a]ll conveyances . . . subject to the terms and conditions of the Alaska Native Claims Settlement Act." Thus, argues Stratman, section 1427 is subject to the eligibility requirements set forth in 43 U.S.C. Section 1610(b)(3).[10] Stratman Response Br. at 57-58.

Stratman's reading of section 1427(f) is overbroad. Village eligibility and terms and conditions of conveyance are two distinct requirements under ANCSA. Section 11(b)(3) of ANCSA sets forth the eligibility requirements for unlisted villages such as Leisnoi. 43 U.S.C. Section 1610(b)(3). If a village corporation is determined to be eligible it may select lands in accordance with section 12. *Id.* at Section 1611. Those lands selected by an eligible village are then

---

Thus, a Koniag Village Corporation is either a Koniag village or a village corporation listed in subsection (e)(2). Leisnoi is not a village listed in subsection (e)(2) and, therefore, it must be a "Koniag village." Section 1427(a)(7) then defines a "Koniag village."

> "Koniag village" means a *Native village* under the Alaska Native Claims Settlement Act which is within the Koniag region.

(emphasis added). A "Native village" under the Alaska Native Claims Settlement Act is

> any . . . village . . . listed in section 1610 and 1615 of this title, or which meets the requirements of this chapter, and which the Secretary determines was, on the 1970 census enumeration date (as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instance), composed of twenty-five or more Natives.

43 U.S.C. Section 1602(c). In other words, a "Native village" is an eligible village. See 43 U.S.C. Section 1610(b). *Cf. id.* at Section 1602(d) (defining "Native group"). Thus, even a literal reading of section 1427(a) leads to the unavoidable conclusion that Leisnoi is an eligible ANCSA village.

[10]   On the contrary, as previously discussed, *supra*, note 9, a "Koniag village" has by definition met the requirements of section 1610.

22

conveyed to the village pursuant to section 14. *Id.* at Section 1613. Such conveyances are subject to certain terms and conditions. For example, all conveyances are "subject to valid existing rights." *Id.* at Section 1613(g). Section 1427(f) of ANILCA makes it clear that these terms and conditions which ANCSA imposes on all conveyances still apply, but it does not speak to the issue of eligibility.[11]

For Stratman to prevail in his contention that Congress did not intend Leisnoi to be a village corporation, Stratman must provide legislative history contrary to the plain language in § 1427. As discussed next, the legislative history does not include any such language. Rather, the legislative history demonstrates that Congress intended to ratify the Secretary's decision that Leisnoi was an eligible ANCSA village.

    B.    <u>The Legislative History of Section 1427 Suggests A Congressional Intent To Ratify Leisnoi As An Eligible Village Corporation.</u>

Leisnoi is not one of the village corporations listed in ANILCA section 1427(e)(2). These (e)(2) villages are deemed to be eligible, but receive limited benefits under ANCSA. ANILCA Section 1427(e). Rather, Leisnoi is specifically listed in section 1427(a)(4) as a Koniag deficiency village corporation and is specifically, by reference, in section 1427(a)(5) as a Koniag 12(b) village corporation. Section 1427(e) is, nevertheless, significant to Leisnoi because the enactment of section 1427(e) shows that one of Congress's main purposes for enacting section 1427 was to resolve the eligibility of villages in the Koniag region. Koniag Post-Hearing Br. at 88-90. Indeed, subsection (e) was designed to "resolve in favor of the Native villages listed therein, all disputes concerning their

---

[11] The legislative history with regard to subsection (f) supports this interpretation. *See* Stratman Response Br., App. C. at 5268 (stating that "the intent of this subsection" is to insure that the terms ANCSA imposes on all conveyances still applies).

eligibility for ANCSA benefits and prescribes limits upon the ANCSA land benefits to which these villages should be entitled." Stratman Response Br., App. C at 5268.

Thus, it can be inferred that Congress also considered the eligibility of Leisnoi and intentionally chose to treat Leisnoi as an eligible village corporation when it designated Leisnoi as a deficiency village corporation and as a 12(b) village corporation entitled to participate fully in the Afognak Island Joint Venture (AJV).[12]

### 1. Title XIV of ANILCA was designed to resolve village eligibility disputes and to facilitate land exchanges

As noted above, in passing Title XIV of ANILCA, Congress sought to put an end to the various legal disputes over village eligibility and land ownership. This Congressional intent is best demonstrated by Senate Report 96-413: "[t]hese Native land selection exchange amendments were adopted in order to further and fulfill the purposes of the Settlement Act; in addition the exchanges would ... resolve or obviate the need for litigation." Stratman Response Br., App. C at 5199-5200.

Congress also made it abundantly clear that an immediate and final resolution to these ANCSA disputes was critical: "H.R. 39 will virtually complete the public land allocation process.... Alaska's greatest problem now is uncertainty, concerning the status of its vast lands and related natural resources.... This legislation is in the best interest of Alaska and her people." *Id.* at 5073-74.

---

[12] The land exchange prescribed in section 1427 is referred to as the "Afognak Island Joint Venture."

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

Congress stated the following about ANILCA § 1427: "[t]he Committee agreed to a land exchange proposal by Koniag." *Id.* at 5205. And though Koniag was undoubtedly the driving force behind the proposed land exchange, many other entities were also supportive. Indeed, in testimony before the Committee, Mr. Weinberg stated that the Koniag Amendment was the culmination of eight months of extensive negotiations amongst Koniag, the Interior Department, the Alaska Coalition, the State of Alaska, and the Kodiak Island Borough. Stratman Response Br., App. D. at 1218. Congress, of course, looked with favor upon agreements supported by the various interested parties. *Id.* at 5200. As noted below, Committee Chairman Udall applauded Mr. Weinberg for his diligent handling of the agreement.

Congress's ratification of Mr. Weinberg's "Koniag Amendment" is perhaps best illustrated by comparing Congress's ANILCA §1427 section by section analysis with the sectional analysis proposed by Mr. Weinberg. *Compare* Stratman Response Br., App. D at 1223-28 *to* Stratman Response Br., App. C at 5267-70. Indeed, these sectional analyses are identical: Congress did not change as much as a single word of Mr. Weinberg's "proposed" analysis.

In passing ANILCA § 1427, Congress ratified a unique settlement among not only the parties mentioned above, but numerous Native villages as well. Congress treated some Koniag villages differently than other Koniag villages. A number of Koniag villages, including Leisnoi, were defined as both "Koniag deficiency village corporations" and "Koniag 12(b) village corporation." Congress directed the Secretary to grant these villages, including Leisnoi, full ANCSA conveyances. Koniag Post-Hearing Br. at 87; *see also* ANILCA § 1427. In 1974, the Interior Secretary had concluded that all of these villages satisfied ANCSA's eligibility requirements.

Congress treated the seven "phantom villages" differently than it treated Leisnoi. Koniag Post-Hearing Br. at 76-77. Indeed, Congress defined all of the "phantom villages" in § (e)(2) while it defined Leisnoi in § 1427 (a)(4). The (e)(2) villages were granted different rights and responsibilities than the other Koniag villages. For example, they were granted little, if any, land. Specifically, the "phantom villages" of Ayakulik, Uganik, and Uyak received one square mile of land (§ 1427 (e)(3)(A)); others received no land at all. Further, Congress required the (e)(2) villages sign a release. ANILCA § 1427(e)(1). Leisnoi was not required to sign such a release. *Id.* at (a)(2). All seven of these "phantom villages" were provided with an interest in the Afognak Joint Venture. Koniag Post-Hearing Br. at 77.

Of course, Congress had persuasive evidence that these "phantom villages" were not in fact villages. First, the ANCAB had determined them to be ineligible. Second, the Interior Secretary had approved the ANCAB's decisions. Nonetheless, Congress chose to grant these villages limited eligibility, and to provide them with a portion of the Afognak Joint Venture. Such an action shows Congress's willingness to "ratify" settlements.

Congress' willingness to grant the "phantom villages" limited eligibility status is also significant in that it demonstrates Congress's preference for prompt resolution rather than protracted litigation. By granting these villages limited eligibility status, Congress effectively resolved the *Koniag v. Kleppe* lawsuit.

In sum, ANILCA § 1427 was a compromise reached among Koniag, the Interior Department, the State of Alaska, and the Alaska Coalition. And though Stratman was not a part of this agreement, the participation of the Alaska Coalition insured that the public interest was promoted. Indeed, Koniag gave up

26

more land than it received under the agreement, a fact Congress deemed significant:

> The Committee agreed to a land exchange proposal by Koniag, Region, Inc. which provides for the relinquishment of native selection rights to almost 300,000 acres of surface and subsurface estates and to an additional approximately 40,000 acres of surface estate on the Alaska Peninsula ... in exchange for some 280,000 acres ... on Afognak Island.... The Committee believes that this exchange will be beneficial to state and national interests as well as to the natives....

Stratman Response Br., App. C at 5205-06.

Stratman asks the ALJ to disregard this solemn agreement among these many parties and Congress, so Stratman can get an agreement of his own: a settlement agreement much sweeter to him. *See* Tr. 2868 (testimony of Judge Roy Madsen that Omar Stratman approached him and offered to sell Leisnoi his holdings for $750,000).

### 2.   Other sections of ANILCA similarly ratified village eligibility

Other sections of ANILCA similarly ratified the eligibility of Native villages, notwithstanding ANCSA's § 11(b)(3) requirements. Specifically, in ANILCA § 1432, Congress also ratified the eligibility of Salamatof. The ANCAB had previously found this village to be ineligible, a decision affirmed by the Interior Secretary. Nonetheless, Congress directed the Secretary to "[t]erminate the review of the eligibility of Salamatof Native Association, Incorporated and withdraw any determination that said village corporation is not eligible for benefits under section 14(a) of this Act." ANILCA § 1432(a).

Congress then directed the Secretary to implement an agreement among the Secretary, Cook Inlet Region Incorporated, and Salamatof. *Id.* at (b). Thus, as with Leisnoi, Congress implemented an agreement between interested parties to resolve village eligibility. In so doing, Congress was also resolving litigation, because Salamatof was one of the plaintiff villages in *Koniag v. Kleppe*.

27

Of course, Congress knew how to keep the issue of eligibility open. In § 1416, Congress stated that Tanalian's selection rights were expressly conditioned upon its certification as an eligible Native group.[13] That Congress chose not to include such conditional language in ANILCA § 1427 is strong evidence that Congress did not intend to keep the issue of Leisnoi's eligibility in limbo.

Thus, the above plain language and legislative history demonstrate that in passing ANILCA § 1427, Congress ratified Leisnoi's eligibility. Unable to refute the plain language that Leisnoi is an eligible village, Stratman tries to keep pertinent legislative history out. For the reasons presented below, Stratman's attempts fail.

   3. <u>Stratman's assertion that Koniag's exhibits are not a part of legislative history is premised upon a misreading of the relevant cases</u>

Koniag established that the legislative history of Section 1427 shows a Congressional intent to ratify Leisnoi as an eligible village corporation. Koniag Post-Hearing Br. at 88-91. Stratman counters that Supreme Court cases have very narrowly defined legislative history. Stratman Response at 64-65. Stratman then argues that Koniag's exhibits fall outside these narrow legislative history confines. *Id.*

---

[13]
>  *(c) If Tanalian Incorporated is certified as a group* under the Alaska Native Claims Settlement Act, Tanalian Incorporated shall be entitled to make selections in accordance with subsection (d) hereof.
>
>  (d)(1) Tanalian Incorporated *if certified* shall be entitled to make selections of the surface estate of public lands . . . .

ANILCA, section 1416(c), (d)(1), 94 Stat. 2490 (emphasis added).

However, an analysis of the very cases relied upon by Stratman refutes his narrow definition of legislative history. Indeed Stratman's conclusion that the Court has narrowly defined legislative history is premised upon a mis-characteriztion of multiple Supreme Court decisions. Because Stratman relies upon this mis-characterization of Supreme Court decisions, the conclusions he reaches are wrong.

First, Stratman states that "[o]nly documents prepared by Congress, and available to the lawmakers, are considered legislative history." Stratman Response Br. at 65. Stratman cites *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995), to support this contention. It is worth comparing Stratman's assertion that "only documents prepared by Congress" are considered legislative history, with the *Gustafson* Court's language. In *Gustafson*, the Court stated "[m]aterial not available to the lawmakers is not considered, in the normal course, to be 'legislative history.'" 513 U.S. at 579.

Thus, the critical issue is not whether Congress "prepared" the material in question, as Stratman claims. Rather, the issue is whether the material was made available to Congress. As discussed below, Mr. Weinberg's testimony and letters, as well as the relevant newspaper articles, were all "made available to Congress" during the ANILCA deliberations. Because these documents were made available to Congress, they are properly considered legislative history. *Gustafson,* 513 U.S. at 579.

Stratman next contends that "statements made by persons who are not members of Congress, or that are not included in the official Senate or House reports" are not considered legislative history. Stratman Response Br. at 65.

Stratman supports this broad and far-reaching conclusion with a single Supreme Court footnote. *Id.*; *see also Kelly v. Robinson*, 479 U.S. 36, 50

29

n. 13 (1986). Examination of this footnote reveals that Stratman again takes liberties with the Supreme Court's language:

> We acknowledge that a few comments on the hearings and Bankruptcy Laws Commission Report may suggest that the language bears the interpretation adopted by the Second Circuit. But none of those statements was made by a Member of Congress, nor were they included in the official Senate and House Reports. We decline to accord any significance to these statements. *See McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493-494, 51 S.Ct. 510, 512, 75 L.Ed. 1183 (1931);[14] 2A N. *Singer, Sutherland on Statutory Construction* § 48.10, pp. 319 and 321, n. 11 (4th ed. 1984).

*Id.*

Thus, in *Kelly*, the Supreme Court chose to place little weight on hearing testimony based upon the facts in that case. The Court did not, however, rule that "statements made by persons who are not members of Congress, or that are included in the official Senate or House reports" are not legislative history, as Stratman asserts. Indeed in countless other cases, the Supreme Court has placed "great weight" on hearing testimony. *See, e.g., Chicago and North Western Railway Company v. United Transportation Union*, 402 U.S. 570 (1971) (discussed below). Consequently, Stratman's reliance on one case in which the Court placed little weight on hearing testimony for the proposition that such testimony is not legislative history is unavailing.

Indeed the very Supreme Court footnote relied upon by Stratman cites to *Singer, Sutherland on Statutory Construction* § 48.10, pp. 319 and 321, n. 11 (4th ed. 1984) (hereafter *Sutherland on Statutory Construction*). Section 48.10 states that congressmen are provided with verbatim records of the hearing testimony,

---

[14]   In *McCaughn*, the Supreme Court ruled that statements by senators who were not in charge of the bill need not be given any weight in interpreting a statute. 283 U.S. at 493-94.