C.    <u>The Issue, Properly Phrased, Is Not Whether Congress Intended to Impliedly Repeal ANCSA Section 11 (b)(3).</u>

Stratman's novel argument that the "real issue" is whether Congress intended to impliedly repeal ANCSA § 11(b)(3), although clever, cannot withstand analysis.

First, by re-characterizing the issue as one of implied repeal, Stratman creates a straw man. Indeed, neither Koniag nor Leisnoi has ever argued that Congress impliedly repealed ANCSA § 11(b)(3).

Second, Congress frequently amends both ANCSA and ANILCA. Indeed, Congress has amended ANCSA ten times and has amended ANILCA on eight occasions.[18] An examination of these amendments demonstrates that Congress has not intended to "impliedly repeal" specific provisions of either statute. However, before addressing Stratman's implied repeal argument in detail, Koniag must first dispatch Stratman's contention that ANILCA § 1427 expressly repealed ANCSA § (11)(b)(3).

    1.    <u>ANILCA Section 1427 did not expressly repeal ANCSA Section 11 (b)(3) as to the seven (e)(2) villages.</u>

Stratman argues that ANILCA § 1427 "expressly repealed" ANCSA §11(b)(3)'s village eligibility requirements as to the seven Koniag (e)(2) villages. Stratman Response Br. at 12-13.

Black's Law Dictionary defines "express repeal" as the "[a]brogation or annulment of previously existing law by enactment of subsequent statute

---

[18] PL 101-378, August 17, 1990, 104 Stat 468; PL 101-626, November 28, 1990, 104 Stat 4426; PL 100-395, August 16, 1988, 102 Stat 979; PL 99-258, March 19, 1986, 100 Stat 42; PL 99-644, November 10, 1986, 100 Stat 3581; PL 99-664, November 17, 1986, 100 Stat 4303; PL 99-235, January 9, 1986, 99 Stat 1761; PL 97-394, December 30, 1982, 96 Stat 1966; PL 104-10, May 18, 1995, 109 Stat 155; PL 104-42, November 2, 1995, 109 Stat 353; PL 102-415, October 14, 1992, 106 Stat 2112; PL 101-378, August 17, 1990; 104 Stat 468; PL 100-241, February 3, 1988, 101 Stat 1788; PL 98-366, July 17, 1984, 99 Stat 468; PL 95-178, November 15, 1977, 91 Stat 1369; PL 94-456, October 4, 1976, 90 Stat. 1934; PL 94-204, January 2, 1976, 89 Stat 1145; PL 93-153, November 16, 1973, 87 Stat 591.

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

declaring that former law shall be revoked or abrogated." Black's Law Dictionary at 581. Of course, a revoked statute can not later return to life without further Congressional action. Thus, if Congress "expressly repealed" § 11(b)(3), as Stratman contends, then the Secretary would no longer have the duty or authority to determine if 25 Natives were residents of a challenged village on April 1, 1970. Consequently, to the extent that the ALJ agrees with Stratman's assertion that ANILCA § 1427 "expressly repealed" § 11(b)(3)'s village eligibility requirements, than Leisnoi need not comply with the revoked § 11(b)(3) provision.

Stratman's express repeal argument is also inconsistent with § 1416, which kept Tanalian's selection rights conditional upon certification, presumably using ANCSA § 11(b)(3)'s standards.

And though Stratman's contention that § 1427 expressly repealed § 11(b)(3) would be great for Koniag, this argument will likely be rejected for one simple reason. Section 1427 fails to even mention, much less "expressly repeal" § 11(b)(3). *See* ANILCA § 1427. And though Stratman asserts "Section 1427 *did* expressly repeal the village eligibility requirements provided in ANCSA Section 11(b)(3)" (Stratman Response Br. at 12-13), he fails to provide any citation to ANILCA § 1427 to support this assertion.

For the above reasons, Stratman's argument that ANILCA § 1427 "expressly repealed" ANCSA § 11(b)(3) compels one of two conclusions. Either: (1) Congress revoked § 11(b)(3) and Leisnoi need not comply with the provision; or (2) Congress did not expressly repeal § 11(b)(3) and therefore the underlying premise for Stratman's implied repeal argument is wrong.

2.  <u>ANILCA Section 1427 did not impliedly repeal ANCSA § 11(b)(3).</u>

Throughout his response, Stratman repeatedly asserts that the issue is implied repeal. Black's Law Dictionary states that an implied repeal occurs

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

47

where a subsequent statute "contains provisions so contrary to or irreconcilable with those of the earlier law that only one of the two statutes can stand in force." Black's Law Dictionary at 1299. An implied repeal, like an express repeal, "permanently" revokes the inconsistent language in the prior Act. *Sutherland on Statutory Construction* at § 22.22.

Stratman cuts and pastes from seven United States Supreme Court decisions for the statutory canon that "implied repeal is not favored." Stratman Response Br. at 43-54. Koniag agrees that implied repeal is not favored. Koniag similarly agrees with the contention, stated repeatedly in the cases relied upon by Stratman, that whenever possible statutes should be read together.

Koniag further agrees with the Supreme Court's conclusion that Congress often creates "preferences" for Indians, and when it does, such an action is not an implied repeal. *Morton v. Mancari*, 417 U.S. 535, 541-51 (1974). In *Mancari*, cited by Stratman, non-Indian employees of the BIA brought a class action challenging the employment preference for Indians in the Indian Reorganization Act. *Id*. at 539. The Non-Indian employees argued that Title VII of the Equal Employment Opportunities Act, which prohibited racial discrimination, "impliedly repealed" the contrary provisions in the Indian Reorganization Act. *Id*. at 547. The United States District Court for the District of New Mexico agreed with the Non-Indians that Title VII impliedly repealed the Indian Reorganization Act. *Id*.

The United States Supreme Court reversed, unanimously. Writing for the Court, Justice Blackmun stated that Indian preferences are "exceptions" to Title VII. *Id*. at 549. Thus, the Court concluded that Title VII did not impliedly repeal the Indian Reorganization Act. Instead, the two statutes could be read together:

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

> [a] provision aimed at furthering Indian self-government by according an employment preference within the BIA for qualified members of the governed group can readily co-exist with a general rule prohibiting employment discrimination on the basis of race. Any other conclusion can be reached only by formalistic reasoning that ignores both the history and purposes of the preference and the unique legal relationship between the Federal Government and tribal Indians."

*Id.* at 550.

Thus, the Court concluded that although both statutes were valid, the Indian preference was an "exception" to the more general provisions of Title VII. Indeed, the *Mancari* Court noted that the "preference directly at issue here was enacted as an important part of the sweeping Indian Reorganization Act of 1934. The overriding purpose of that particular Act was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically." *Id.* at 542.

The principles enunciated in *Mancari* are clearly applicable to the present matter. Just as the Indian hiring preference is a Congressionally recognized "exception" to Title VII, so too is Leisnoi a Congressionally recognized "exception" to ANCSA § 11(b)(3).[19] Indeed, by defining Leisnoi as both a Koniag Deficiency Village Corporation and a Koniag 12(b) Village Corporation, the plain language demonstrates Congress's intent to "except" Leisnoi from satisfying § 11(b)(3)'s requirements.

Further, the "overriding purpose" of ANILCA was to facilitate land conveyances to Native villages and to resolve village eligibility disputes. That Congress would resolve the eligibility of seven Koniag villages and at the same time ignore the issue of Leisnoi's eligibility defies common sense. Indeed, Congress knew how to leave the issue of eligibility open, as seen in ANILCA §

---

[19]  Salamatof is another congressionally recognized "exception" to ANCSA § 11(b)(3). *See* ANILCA § 1432, Stratman Response Br., App. B at 2543-44 (confirming the eligibility of Salamatof and Alexander Creek).

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

1416 (stating that Tanalian's selection rights were expressly conditioned upon its certification as an eligible group).

Because the six other Supreme Court cases relied upon by Stratman do little more than state that implied repeal is not favored, a detailed analysis of these cases is unwarranted. Nonetheless, two of these decisions deserve brief mention.

In both *Amell v. United States,* 384 U.S. 158 (1966) and *Watt v. Alaska*, 451 U.S. 259 (1981), the Supreme Court concluded that if Congress intends to make a tremendous change in the law, then it should say so.

Of course, by ratifying the Secretary's decision that Leisnoi was an eligible village Congress was not making a "tremendous change" in the law. Rather, Congress was merely affirming the Secretary's previous decision.

Congress's numerous amendments to ANCSA and ANILCA have similarly not brought about a "tremendous change" in the law. Rather, these amendments, discussed below, have granted certain villages "exceptions" from specific statutory provisions without "repealing" these provisions.

3. <u>Congress has frequently granted extensions to ANCSA's and ANILCA's statutory deadlines</u>.

Congress has granted Cook Inlet village corporations additional time to select land, despite ANCSA's explicit statutory deadlines. Specifically, P.L. 94-204, § 12(h), states that village corporations within Cook Inlet have until December 18, 1976, to file selections under ANCSA 12(b), "notwithstanding any provision of that Act to the contrary." 89 Stat. 1145, 1154 (1976).

P.L. 96-311 also "provided an extension of the time frame" for the regional corporation and the Secretary to choose land under the Cook Inlet Land Exchange. 94 Stat. 947 (1980).

50

Similarly, in 1992, Congress stated that certain Ahtna shareholders can "request conveyance of up to 160 acres as if an application for primary residence under ANCSA 14(h)(5) (43 U.S.C. 1613(h)(5))." P.L. 102-415; 106 Stat. 2112, 2125-26 (1992). ANCSA § 14(h)(5) states that such conveyances were only permissible until December 18, 1973. Thus, in 1992, Congress granted Ahtna villages, twenty years later, an exemption from a specific ANCSA provision.

4. <u>Congress has frequently authorized land exchanges for the purpose of terminating litigation.</u>

One of Congress's stated goals in passing ANCSA was to provide for the transfer of land to Alaska Natives without protracted litigation. ANCSA § 2(b). In furtherance of this goal, Congress has authorized land exchanges to resolve litigation. In P.L. 94-204, Congress authorized a land exchange among the United States, CIRI, and Alaska, which was expressly conditioned on CIRI's withdrawal from *Cook Inlet v. Kleppe*, 89 Stat. 1145, 1150-51 (1976).

Congress similarly made "an offer of settlement" to shareholders in certain Ahtna group corporations. P.L. 102-415 (1992). 106 Stat. 2112, 2125-26. In return for withdrawal from "such corporation's actions before the United States District Court for Alaska, Div. No. A86-035," these shareholders were each permitted to seek 160-acre allotments. *Id.* at 2126.

Congress also authorized land exchanges between the United States and Kootznoowoo Village Corporation, on the condition precedent that the corporation dismiss pending litigation against the United States. P.L. 101-378. 104 Stat. 468 (1990).

In sum, Congress in its many amendments to ANCSA and ANILCA has created "exceptions" rather than "repeals." Congress has the power to make exceptions, just as it has the power to "ratify."

51

5. <u>Congress has the power to ratify</u>.

Stratman concedes that Congress has the power to ratify unauthorized acts of government officials. Stratman Response Br. at 43. Stratman then argues that his belated challenge to the Secretary's decision to certify Leisnoi as an eligible village is based on the contention that the Secretary's decision is incorrect. Stratman provides no support for the argument that Congress lacks the power to ratify "incorrect" decisions by government officials. Of course, whether the Secretary's decision was "correct" is irrelevant to Congress's power to ratify that decision. Indeed, Congress, under principles of law laid down by the United States Supreme Court has "plenary powers" over Indian affairs. David S. Case, *Alaska Natives and American Laws* at 4 (1984).

Further, as Koniag established in its opening brief, and Stratman conceded in response, Congress has the power under the Constitution's property clause to dispose of public lands "as it sees fit." Stratman Response Br. at 44.

In short, Congress has a tremendous amount of power in the realm of Indian affairs. Stratman concedes that Congress has this power. The plain language and the legislative history indicate that Congress used this power to resolve the eligibility of all of the Koniag villages. Stratman fails to produce sufficient evidence to the contrary.

Congress had the power to ratify the Secretary's decision that Leisnoi was an ANCSA village. In ANILCA § 1427, Congress stated that Leisnoi was an ANILCA village. Furthermore, Congress knew how to leave open the question of certification if it desired. In ANILCA § 1416, Congress stated that the Native group Tanalian's land selection rights were expressly conditioned upon its certification as an eligible group. ANILCA § 1416(c), (d)(1).

Finally, Senator Stevens requested an amendment that would preserve the issue of Leisnoi's eligibility. Congress rejected this amendment.

Thus, Congress had two doors by which it could keep Leisnoi's eligibility open. Congress chose to shut both.

## CONCLUSION

This is the final brief of a lengthy and extensive briefing process following a lengthy hearing, following almost a quarter century of litigation. But, if there is history to this litigation, so, too, the Alaska Native Claims Settlement Act followed and was a product of history, a history of the United States that can only be described even in the most charitable fashion as unkind to Native Americans. But, the words of then-young William Hensley, an Eskimo leader and member of the Alaska State Senate, were heard in the halls of Congress:

> We are testing the American political system . . . . We know the history of our country in dealing with the American Indian and we want to see a final chapter not written in blood or in deception or in injustice. If there is no settlement or a poor one, we will have a generation of leaders who fought for years to protect their land and lost.

Cong. Rec. S1468 (daily ed. Feb. 17, 1971)(statement by Senator Harris). Those same words were repeatedly quoted as the Act was debated and then passed. Cong. Rec. S17291 (daily ed. Nov. 1, 1971) (statement of Senator Kennedy); Cong. Rec. H9924 (daily ed. Oct. 21, 1971) (statement of Rep. Begich). And, indeed, those words are echoed in the Act itself.

> Congress finds and declares that -
>
> (a)   there is an immediate need for a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims.
>
> (b)   the settlement should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation, with

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

> maximum participation by Natives in decisions affecting their rights and property . . . .

43 U.S.C.A. 1601.

Congress heeded the words of Mr. Hensley and his warning. Remarkably, it rose to the occasion in passing ANCSA; remarkably because the history of Congressional Native American relations before ANCSA had been so dismal.

While the Congress of the United States rose to find fairness and justice in its settlement of the Alaska Native peoples' claims, so Omar Stratman, the rancher from Kodiak, and his diminishing band, have not.

Just as Larry Amox could give the genuinely surprising testimony that redress for the Alaska Native people must be only with Russia and not the Congress of the United States, so Omar Stratman argues that the Native people of Leisnoi deserve no settlement and no land. He urges that giving ANCSA land to these Natives is a rip-off of land, and an affront to him.

> There is a certain irony in a charge that a group of Native American people are trying to cheat the United States government out of some land.

Gordon Pullar, "No Phantoms in Koniag Villages," Koniag, Exh. D. Doctor Pullar, an anthropologist, is a Leisnoi shareholder. *Id.*. Doctor Pullar is understated, for what Mr. Stratman really asks is that this Board and this judge return his ranch, and his Island of Kodiak, to a time when the cowboys forever win and the Indians forever lose. He urges this with arguments to this Board and this judge which were explicitly rejected by ANCAB in 1974. These very arguments were made there, were rejected, and Leisnoi was certified. The people of Leisnoi were given their land. Mr. Stratman urges this return with arguments to this Board and this judge which were explicitly made by Jack Anderson in 1980 to the United States Congress, and these very same arguments were rejected

again when the Congress in ANILCA confirmed the validity of Leisnoi as a certified village corporation.

And, Mr. Stratman makes these arguments, so often rejected, now to save the hundred or so thousand-acres of land selected by Leisnoi for the United States. But the United States has said it cannot benefit from the lands patented to Leisnoi so long ago. Its position has been in favor of certification in this litigation. Indeed, even if the land were to be taken from Leisnoi as Mr. Stratman so ardently urges, it would go to the other regional corporations and in turn their villages under sections 43 U.S.C.A. 1611(a) and (b) of ANCSA.

Significantly, with some two hundred Native village corporations and twelve Native regional corporations, with all these entities that Mr. Stratman wishes to benefit, only one corporation has entered this litigation. That corporation, of course, is Koniag. And, Koniag urges the Interior Board of Land Appeals and this administrative law judge to affirm what ANCAB found, what Congress ratified, and what the 285 people of Leisnoi all know: that Leisnoi is a Native village corporation. It urges that Leisnoi's enrollees, including an anthropologist, a judge, a legislator, and fishermen, and people just living their lives, many of whom testified, are entitled to the rights of ANCSA. It urges that Mr. Stratman is just plain wrong.

RESPECTFULLY SUBMITTED this ____ day of March, 1999.

MIDDLETON & TIMME, P.C.
Attorneys for Koniag, Inc.

By _____
For R. Collin Middleton
ABA# 680315

By _____
Brennan P. Cain
ABA# 9806008

MIDDLETON & TIMME, P.C.
LAW OFFICES
SUITE 250
421 WEST FIRST AVENUE
ANCHORAGE, ALASKA 99501
(907) 276-3390

55