# EXHIBIT 8

## LEISNOI, INC.'S OBJECTIONS TO RECOMMENDED DECISION OF ALJ HARVEY SWEITZER

49346 0380-5535

UNITED STATES DEPARTMENT OF THE INTERIOR

OFFICE OF HEARINGS AND APPEALS
Interior Board of Land Appeals
4015 Wilson Boulevard
Arlington, VA 22203

| | |
|---|---|
| OMAR STRATMAN, Protestant v. LEISNOI, INC., Respondent | IBLA 96-152<br>No. A76-0132 CV (JKS)<br><br>Challenge to the eligibility of Woody Island as a Native village under Section 11(b)(3) of the Alaska Native Claims Settlement Act, 43 U.S.C. §1610(b)(3) (1994) |
| KONIAG, INC. BUREAU OF INDIAN AFFAIRS, Intervenors. | |

**LEISNOI, INC.'S OBJECTIONS TO RECOMMENDED DECISION OF ADMINISTRATIVE LAW JUDGE HARVEY SWEITZER**

Respectfully submitted,

John Richard Fitzgerald
McALPINE, PEULER & COZAD
701 South Peters Street Suite 300
New Orleans, Louisiana 70130
Telephone (504) 561-0323
Facsimile (504) 528-9442
Attorneys for Leisnoi, Inc.

# INDEX

Page


I. INTRODUCTION . . . 1

II. THE RD FAILS TO ADDRESS A NUMBER OF CRUCIAL LEGAL ISSUES . . 3

A. Congressional action has validated the eligibility of the Native Village of Woody Island . . . 3

(i) Adopting the RD, notwithstanding ANILCA, would create a conflict with subsequently enacted regulations that recognize the Native Village of Woody Island as an Alaska Native Village that has a government-to-government relationship with the United States, and would constitute an end-run around the Federally Recognized Indian Tribe List Act of 1994 . . . 10

(ii) The formula for ANCSA land distributions throughout the State of Alaska would have to be recalculated and additional acreage would have to be conveyed by the federal government if this Board were to adopt the RD notwithstanding ANILCA . . . 13

B. The doctrine of Administrative Finality precludes adoption of the RD . . . 17

C. The protestant is collaterally estopped from relitigating issues already decided in favor of Leisnoi, Inc. by the Alaska Native Claims Appeal Board . . . 22

D. The protestant's delay has deprived this Board of jurisdiction to consider his untimely challenge . . . 30

E. The protestant lacks administrative standing . . . 30

III. THE NATIVE VILLAGE OF WOODY ISLAND IS AN HISTORIC NATIVE VILLAGE THAT MEETS THE REQUIREMENTS FOR ELIGIBILITY UNDER THE ALASKA NATIVE CLAIMS SETTLEMENT ACT . . . 37

A. The RD improperly relies upon recommended decisions in cases that were overturned in *Koniag, Inc. v. Kleppe* . . . 37

## II. THE RD FAILS TO ADDRESS A NUMBER OF CRUCIAL LEGAL ISSUES.

Before considering the objectionable portions of the RD, this Board should first address the key legal issues that the RD did not even address and explicitly reserved for determination by the IBLA. See, RD at pages 16-17.

The most significant issue the RD defers to this Board without any analysis or suggested resolution is whether Congress has already ratified the status of the Native Village of Woody Island as an eligible Native village by enactment of section 1427 of the Alaska National Interest lands Conservation Act. Another unresolved and potentially dispositive issue is whether the doctrine of administrative finality precludes protestant's present challenge, since the Alaska Native Claims Appeal Board already ruled against Omar Stratman's challenge to the eligibility of the Native Village of Woody Island in *Appeal of Omar Stratman*, and that decision became final when he did not appeal it. This Board also needs to determine whether protestant has administrative standing to pursue his challenge to the certification of the Native Village of Woody Island. Additionally, this Board must consider whether jurisdiction is lacking because the protestant failed timely to appeal the eligibility determination of the Area Director within 30 days after he acquired actual knowledge that the village had been certified as eligible.

### A. Congressional action has validated the eligibility of the Native Village of Woody Island.

Congress enacted into law Section 1427 of the Alaska National Interest Lands Conservation Act (ANILCA), Public Law 96-487, 94 Stat. 2371 at 2518-2528 (1980). Leisnoi, Inc. was specifically listed in that law as being a village corporation eligible to receive the surface estate of lands pursuant to the Alaska Native Claims Settlement Act. Congress thereby

rejected the theory espoused in the RD that Leisnoi, Inc.is ineligible to receive lands pursuant to the Alaska Native Claims Settlement Act.

Protestant's administrative challenge to the eligibility decision whereby Leisnoi, Inc. received land as the Native Village Corporation for the Native Village of Woody Island must therefore be dismissed, since Congress has already spoken on this issue, and Congress has determined that, notwithstanding Stratman's contentions, Leisnoi, Inc. is a Native Village Corporation entitled to land conveyances under ANCSA.

The certification of the Native Village of Woody Island has been statutorily confirmed in Section 1427 of the Alaska National Interest Lands Conservation Act, 94 Stat. 2371 at 2518-2528 (1980). Congress listed and recognized Leisnoi, Inc., by name, as a village corporation eligible to receive the surface estate of lands pursuant to the Alaska Native Claims Settlement Act.

Congress necessarily rejected protestant's theory that Leisnoi, Inc. was improperly certified and therefore ineligible to receive ANCSA lands, since four years after Stratman filed his suit, Congress declared Leisnoi, Inc. to be an eligible Village Corporation:

> "Koniag deficiency village corporation" means any or all of the following:
>
> Afognak Native Corporation;
> Nu-Nachk-Pit, Incorporated;
> Ouzinkie Native Corporation; and
> **Leisnoi, Incorporated.** (emphasis added)

Section 1427(4) of ANILCA.[2]

[2]The statute declares that Leisnoi, Inc. is a particular type of Native Village Corporation, a Koniag Deficiency Village Corporation. "Village Corporations" as used within that term of

Congress defined "Deficiency village acreage on the Alaska Peninsula" to mean:

> "the aggregate number of acres of public land **to which 'Koniag deficiency Village Corporations' are entitled, under section 14(a) of the Alaska Native Claims Settlement Act, to a conveyance of the surface estate** on account of deficiencies in available lands on Kodiak Island, and to which Koniag, Incorporated is entitled under section 14(f) of that Act to conveyance of the subsurface estate." (emphasis added)

Section 1427(2) of ANILCA.

In ANILCA, Congress authorized conveyance of land on Afognak Island in lieu of deficiency village acreage on the Alaska Peninsula to which the Koniag deficiency village corporations were entitled:

> (b)(1) In full satisfaction (A) of the right of Koniag, Incorporated, Regional Native Corporation to conveyance of Koniag 14(h)(8) lands on the Alaska Peninsula under the Alaska Native Claims Settlement Act; (B) **the right of each Koniag Deficiency Village Corporation to conveyance under that Act [ANCSA] of the surface estate of deficiency village acreage on the Alaska Peninsula...** and in lieu of conveyances thereof otherwise, the Secretary of the Interior shall, under the terms and conditions set forth in this section, convey as

---

art, are defined as having the same meaning as under Section 3(j) of the Alaska Native Claims Settlement Act. ANCSA, in turn, defines Village Corporations as being Alaska Native Village Corporations organized to hold or distribute lands and property on behalf of a Native Village. If there is no Native Village, then there obviously can be no Native Village Corporation. See, 43 USC §1602(c) and (j). By declaring Leisnoi, Inc. to be a Koniag Village Deficiency Corporation, a specific type of Native Village Corporation, and by enacting a law statutorily recognizing the Koniag Village Deficiency Corporations as having a right to conveyances under ANCSA, Congress necessarily recognized the Native Village of Woody Island as being eligible for benefits. Therefore, this Board should not adopt the recommended decision declaring the Native Village of Woody Island ineligible for benefits.

> provided in subsection (c)[3] of this section the surface estate of all the public lands on Afognak Island except those lands referred to in subparagraphs 2 (A), (B), (C), and (D) of this subsection, and simultaneously therewith, the Secretary shall, under the terms and conditions set forth in this section, convey the subsurface estate of such lands to Koniag, Incorporated.

Section 1427(b)(1) of ANILCA.

As this Board can see by examining the above-quoted language from the statute, section 1427(b)(1) of ANILCA explicitly recognized "the **right** of each Koniag Deficiency Village Corporation to conveyance under that Act [ANCSA]..." (Emphasis added.)[4] Likewise, in Section 1427(a)(1) of ANILCA, Congress recognized that the Koniag Deficiency Village Corporations "**are entitled**, under Section 14(a) of the Alaska Native Claims Settlement Act, **to conveyance...**" (Emphasis added.) Although the RD suggests this Board rule that Leisnoi, Inc. does not have a right to conveyance under ANCSA and is not entitled to benefits, allegedly because the Native Village did not meet the eligibility requirements as the (mis)construed them, Congress has enacted the ANILCA legislation expressly recognizing that Leisnoi, Inc. does have a "right ... to conveyance" and is "entitled ... to conveyance" under ANCSA. This Board should report to the district court that by statutorily recognizing Leisnoi's right to

---

[3]Subsection (c) of the statute provided that the land on Afognak Island would be conveyed to a joint venture consisting of the Koniag Deficiency Village Corporations, the Koniag 12(b) Village Corporations and Koniag, Incorporated (or wholly owned subsidiaries thereof). 94 Stat 2523.

[4]Stratman's thesis, that Leisnoi does not have a right to conveyance under ANCSA, is thus inconsistent with the Alaska National Interests Lands Conservation Act.

conveyances under ANCSA, Congress has effectively ratified the Department of the Interior's earlier certification of the Native Village of Woody Island.

Stratman's administrative challenge to Leisnoi's eligibility to receive land under ANCSA should therefore be dismissed, since Congress has already spoken on this issue. Congress has determined that, notwithstanding Stratman's contentions which the RD suggests this Board adopt, Leisnoi, Inc. is a Native village corporation entitled to land conveyances under ANCSA.

Congress says that Leisnoi is eligible to receive ANCSA land, but the RD suggests the IBLA to declare otherwise. Congress specifically listed Leisnoi, Inc. as being eligible to participate in the Afognak Joint Venture and receive ANCSA benefits, so the IBLA should not attempt to override the Congressional statute that was signed into law by the President of the United States. Protestant's administrative challenge should be denied.

The United States Supreme Court has observed that "[W]e must adopt the plain meaning of a statute, however severe the consequences." *Jay v. Boyd*, 351 U.S. 345, 357 (1956). The meaning of ANILCA is plain. It directs that lands on Afognak be patented to the Afognak Joint Venture in satisfaction of the right of each Koniag Deficiency Village Corporation to select lands on the Alaska Peninsula. Leisnoi, Inc. is recognized by Congress as being a Koniag Deficiency Corporation. This moots any challenge to Leisnoi, Inc.'s status as an Alaska Native Village Corporation. The United States Supreme Court observed in *Caminetti v. United States*, 242 U.S. 470 (1916) that "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole

function of the courts is to enforce it according to its terms." *Caminetti*, 242 U.S. at 485. The Court went on to observe that "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are aid to doubtful meanings need no discussion." *Id.* Leisnoi, Inc. merely asks this Board to give effect to the plain meaning of the ANILCA statute.[5]

It is now a moot issue whether or not the Secretary of the Interior was correct in certifying the Native Village of Woody Island as being eligible for benefits. Congress has officially recognized Leisnoi, Inc. as a Native Village Corporation that has a right to conveyances under ANCSA. See, ANILCA §1427(b)(1).

Congress has plenary authority under the property clause of the United States Constitution to dispose of public lands as it sees fit. See, *Van Brocklin vs. Anderson*, 117 U.S. 151, 165 (1886); *Maxwell Land Grant Case*, 121 U.S. 325 (1887); *Kleppe v. New Mexico*, 426 U.S. 529 (1976). If the Secretary of the Interior had erroneously certified the Native Village of Woody Island, as the RD recommends this Board declare, then Congress still had the authority to ratify the act even if it should not have originally been made (which is not the case). See, *Swayne & Hoyt v. United States*, 300 U.S. 297 (1936); *Isbrandtsen-Moller Co. v.*

---

[5]While Leisnoi, Inc. contends that the meaning of ANILCA is plain and unambiguous, to the extent that the protestant alleges there is some ambiguity where none actually exists, any such ambiguity must be resolved in favor of the Native Woody Islanders because there is a "settled principle that, in Indian law, all ambiguities must be resolved in favor of the Indians." Matter of *City of Nome, Alaska*, 780 P.2d 363, 367 (Alaska 1989). See also, *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655, 660 (9th Cir. 1975) ("[A]mbiguities in federal treaties or statutes dealing with Indians must be resolved favorably to the Indians."; *Parker Drilling Co. v. Metlakatla Indian Community*, 451 F.Supp. 1127, 1140 (D. Alaska 1978), observing that there is a "general tenet of Indian law that all ambiguities must be resolved in favor of the Indians...."

*United States*, 300 U.S. 139 (1936). Congress has plenary authority over public lands, and it has exercised its authority by directing the Secretary of the Interior to issue the patents to lands on Afognak in satisfaction of Leisnoi, Inc.'s rights under ANCSA to select lands on the Alaska Peninsula. It no longer matters whether the Native Village of Woody Island met the regulatory test for benefits under ANCSA, since Congress has passed ANILCA into law, declaring Leisnoi, Inc. to be a Koniag Village Deficiency Corporation that has a "right to conveyance" under ANCSA. See, ANILCA §1427(b)(1).

Congress had the right and authority to direct that the land patents be issued on behalf of Leisnoi, Inc., and the fact that the protestant wishes he could still challenge the certification of the Native Village of Woody Island does not alter this outcome. Congress has ratified the certification of the Native Village of Woody Island by enacting legislation recognizing Leisnoi, Inc.'s "right to... conveyance" under ANCSA, allowing it to participate in the Afognak Joint Venture, and directing the Secretary of the Interior to convey public lands in satisfaction of certain ANCSA selection rights of Leisnoi, Inc., the Native Village Corporation for the Village of Woody Island.

United States District Judge Singleton directed this Board to consider the impact of ANILCA on the certification of the Native Village of Woody Island. This Board should report that the impact was congressionally to ratify the village's eligibility for ANCSA benefits.

*Adopting the RD, notwithstanding ANILCA, would create a conflict with subsequently enacted regulations that recognize the Native Village of Woody Island as an Alaska Native Village that has a government-to-government relationship with the United States, and would constitute an end-run around the Federally Recognized Indian Tribe List Act of 1994.*

A detrimental consequence that would flow from adopting the RD notwithstanding ANILCA would be the inherent conflict with regulations published by the United States Department of the Interior recognizing the Native Village of Woody Island as having a government-to-government relationship with the United States government. Subsequent to the adoption of ANILCA, the Bureau of Indian Affairs published "the list" of Indian tribal entities, including Alaska Native Villages, that have been officially recognized as Indian tribes by the United States Bureau of Indian Affairs.[6] See, 63 FR 71941 (December 30, 1998). Included within that list is "Lesnoi Village (aka Woody Island)."

6 The Indian Self-Determination Act that provides for benefits to recognized Indian tribes, defines the term "Indian tribe" as meaning "any Indian tribe, band, nation, or other organized group or community, **including any Alaska native village** or regional or village corporation **as defined in** or established pursuant to **the Alaska Native Claims Settlement Act** (85 Stat. 688)...." 25 USC §450b(e) (emphasis added). Inclusion of "Lesnoi Village (aka Woody Island)" in the approved list of federally acknowledged tribes, 63 FR 71941 (1998), means that the United States of America recognizes Woody Island is an Alaska Native Village as that term is defined in the Alaska Native Claims Settlement Act. The Bureau of Indian Affairs published the list of federally acknowledged tribes and native villages that "have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes." Thus, not only has Congress, in ANILCA, confirmed that Leisnoi, Inc. is an Alaska Native Village Corporation with a right to conveyances under ANCSA, but the Secretary of the Interior, in implementing the Indian Self-Determination Act, has recognized Woody Island as an Alaska Native Village that has a government-to-government relationship with the United States.

The suggestion in the RD that Woody Island be declared not to be an Alaska Native Village is in contravention of inclusion of Woody Island in the list of tribes and Alaska Native Villages officially recognized by the Bureau of Indian Affairs. See, 63 FR 71941 (1998). Leisnoi, Inc. is specifically listed by name in ANILCA as being eligible for ANCSA benefits, and its tribal entity has been recognized by the Department of the Interior as an Alaska Native Village that enjoys a government-to-government relationship with the United States.

In order to accept theories espoused in the RD that Woody Island is not an Alaska Native Village as defined in ANCSA, and that Leisnoi, Inc. does not have a right to conveyances under ANCSA, this Board would have to somehow disagree with or attempt to nullify a Congressional statutory finding in ANILCA that Leisnoi, Inc. is a Koniag Deficiency Village Corporation with a right to conveyances under ANCSA, and set aside the finding of the Secretary of the Interior that Woody Island is an Alaska Native Village that enjoys a government-to-government relationship with the United States.[7]

The Department of the Interior lacks jurisdiction to "de-list" the Native Village of Woody Island as the ALJ's recommended decision essentially asks it to do.[8] The inclusion of

---

[7]The Interior Board of Land Appeals has no jurisdiction even to consider setting aside the listing of Woody Island as a recognized tribal entity. Such a challenge would have to have been brought by Stratman before the Interior Board of Indian Appeals pursuant to 25 CFR section 83.11; Stratman has not timely commenced any such challenge within the required 90 days after publication of the list of recognized tribes. Even if Stratman were to try to challenge Woody Island's inclusion on the list at the Bureau of Indian Affairs, his challenge would be subject to summary dismissal since "The Board shall dismiss a request for reconsideration that is not filed by the [90 day] deadline specified in paragraph (a) of this section."

[8]"While the Department clearly has a role in extending recognition to previously unrecognized tribes, it does not have the authority to 'derecognize' a tribe... **The Committee cannot stress enough its conclusion that the Department may not terminate the federally-**

Woody Island in the list of federally recognized tribes has been statutorily recognized by the United States Congress. The Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C. section 479a provides that "a tribe which has been recognized ... may not be terminated except by an Act of Congress."[9] Thus, in order to prevail, Stratman must persuade Congress to pass an Act of Congress de-recognizing Woody Island as an Alaska Native village; the Department of the Interior no longer has jurisdiction to do that which the RD recommends that it do.

This Board should not adopt the conclusions espoused in the RD since doing so would require this Board to invalidate the BIA's original certification of the Native Village of Woody Island, eviscerate the Congressional declaration that Leisnoi, Inc., is a Koniag Deficiency Village Corporation with a right to conveyances under ANCSA, and nullify the Bureau of Indian Affairs' inclusion of Woody Island as a recognized Alaska Native Village that enjoys a government-to-government relationship with the United States. The statutes passed subsequent to ANCSA, namely, ANILCA, the Indian Self-Determination Act, and the Federally Recognized Indian Tribe List Act of 1994, and the inclusion of Woody Island on the list of federally recognized tribes and Alaska Native villages, have eliminated the ability of the Department of the Interior and the courts to declare Woody Island not to be an Alaska Native

---

**recognized status of an Indian tribe absent an Act of Congress.**" House Report No. 781, 103rd Cong., 2nd Sess. 1994, 1994 U.S.C.C.A.N. 3768.

[9]"And for those who may have doubted the power of the Department of the Interior to recognize sovereign political bodies, a 1994 act of Congress appears to lay such doubts to rest. In the Federally Recognized Tribe List Act of 1994, Congress specifically directed the Department to publish annually 'a list of all Indian tribes which the Secretary recognizes to be eligible...' Through the 1993 tribal list and the 1994 Tribe List Act, the federal government has recognized the historical tribal status of Alaska Native villages..." *John v. Baker,* 982 P.2d 738 (Alaska 1999).

village. The only branch of government that could grant the drastic relief Stratman wants is the United States Congress. Rather than de-listing Woody Island, as Stratman has asked, Congress has instead enacted ANILCA that specifically recognizes Leisnoi as an Alaska Native Village Corporation with a federal right to ANCSA benefits.

***The formula for ANCSA land distributions throughout the State of Alaska would have to be recalculated and additional acreage would have to be conveyed by the federal government if this Board were to adopt the RD notwithstanding ANILCA.***

If this Board were to adopt the RD's suggestion the Native Village of Woody Island be decertified notwithstanding ANILCA, then this will necessitate that the Board recalculate ANCSA distributions throughout the state of Alaska. Moreover, it would then become necessary for the United States of America to allocate another 115,200 acres of public lands in Alaska among the regional corporations on the basis of the number of Natives enrolled to each region. Rejection of the proposition that ANILCA confirmed the certification of the Native Village of Woody Island, and acceptance of the RD that the Native Village of Woody Island be decertified, would have a harmful ripple effect throughout the state of Alaska, and would upset the distribution of lands that have already been made. Adoption of the course of action suggested in the RD some 25 years after the Department of the Interior certified the Native Village of Woody Island as eligible for ANCSA benefits would frustrate the congressional policy of finality and repose in ANCSA matters, as was made apparent in 43 USC §1601(b), that called for the settlement to be accomplished rapidly, with certainty, and without litigation.

If the Native Village of Woody Island were decertified, then lands that had been patented to Leisnoi, Inc. would not qualify as ANCSA land distributions. Leisnoi, Inc. would cease to be deemed a Native Village Corporation, so this Board would then have to recalculate the number of acres that Koniag, Inc. is entitled to receive under the formula set forth in 43 USC §1611(c). Recalculation would be necessary since the difference between thirty-eight million acres and the acreage selected by village corporations would become altered once Leisnoi, Inc. were determined not to be a village corporation based upon decertification of the Native Village of Woody Island. The ripple effect would extend to other regional corporations, since the formula set forth in 43 USC §1611 governed acreage conveyed not merely to Koniag, Inc., but also to the other regional corporations throughout the state of Alaska. This Board would have to recalculate the entire formula for land distributions throughout the state of Alaska. Public lands would have to be withdrawn for selection, and new patents would have to be issued to the various regional corporations. Issues such as what lands could be selected at this late date, what public lands in Alaska have to be withdrawn by the Department of the Interior for possible selection by Native Corporations, and problems of regional corporations having been patented more land than they would be entitled under the revised calculations would give rise to a host of legal problems that could cloud title to lands owned by ANCSA corporations in Alaska.

Rejection of the proposition that ANILCA confirmed the certification of the Native Village of Woody Island, through acceptance of the RD that the Native Village be decertified, would also affect the allocation of lands under 43 USC §1611(b). Under that section, the difference between 22 million acres and the total acreage selected by village corporations

pursuant to subsection (a) of 43 USC §1611 is to be allocated by the Secretary of the Interior among the 11 regional corporations on the basis of the number of Natives enrolled in each region. Obviously, if the 290 Natives who originally enrolled to the Native Village of Woody Island were deemed not to have enrolled to a Native Village in the Koniag region, then the Leisnoi shareholders would not be deemed enrolled to the Koniag region. Therefore, acreage that was allocated among the 11 regional corporations based upon figures in the formula that included the enrolled Woody Islanders would have to be reallocated by this Board based upon its recomputation of the formula excluding Leisnoi shareholders from the Koniag region. If the Native Village of Woody Island were decertified as the RD recommends, its shareholders may elect to enroll to villages in Koniag or other regions to which they may have ties or from which they may have ancestral connections. This could alter the number of Natives enrolled in each region, and would therefore upset the allocation of lands already made pursuant to 43 USC §1611(b).

Another ripple effect that would flow from a rejection of the proposition that ANILCA ratified the certification of the Native Village of Woody Island would be the distributions made under ANCSA §7(i), 43 USC §1606(i). That provision of ANCSA mandates that 70% of all revenues received by each regional corporation from timber resources and subsurface estate shall be divided annually by each regional corporation among all 12 regional corporations "according to the number of Natives enrolled in each region..." 43 USC §1606(i). If the Native Village of Woody Island were to be decertified, and its original 290 enrollees effectively de-enrolled from the Koniag region, some of those enrollees could choose to enroll to non-Koniag villages to which they may have ancestral or other ties. By changing the number of

Natives enrolled to each region, the formula for distribution of 7(i) funds would thereby be altered. This would give rise to an administrative nightmare of incredible proportions and would perpetuate the 25 years of misuse of the legal system. The Native Alaskans are entitled to a prompt settlement of their aboriginal claims; issues that should have been resolved in the 1970's should not fester into the next millenium. Litigations involving numerous regional and village corporations would likely result from a change in the distribution formula more than 20 years after the distribution formula was set.

Another detrimental effect that would flow from adopting the recommendation of decertification notwithstanding ANILCA would involve the distribution of funds pursuant to ANCSA § 7(j), 43 USC §1606(j). That section mandates that during the five year period following December 18, 1971, not less than 10% of all corporate funds received by each of the 12 regional corporations under Section 1605 of ANCSA and under subsection 7(i), and all other net income, shall be distributed among the stockholders of the 12 regional corporations. Not less than 45% of funds from such sources during the first five year period, and 50% thereafter, must be distributed among the village corporations in the region. If this Board were to decertify the Native Village of Woody Island, such that Leisnoi, Inc. were determined not to be a Native Village Corporation, then this Board would have to recalculate how those funds should be distributed pursuant to ANCSA §7(j). Woody Islanders would have to re-enroll to other villages, perhaps in other regions, and would have a right to claim funds that they should have received from the regional corporations pursuant to ANCSA §7(j). This would also give rise to a host of virtually intractable legal issues such as whether it would be fair to deny distributions to persons who had originally opted to enroll to the Native Village of Woody

Island. Cash distributions might have to be made to the estates of various deceased shareholders, thereby possibly necessitating the reopening of estates that might already been probated.

As this Board can readily see, if it were to adopt the ALJ's recommended decision notwithstanding the congressional enactment of ANILCA and Woody Island's listing on the Federally Recognized Indian Tribe List Act of 1994, this Board would open up a Pandora's Box. It would exascerbate the agony the 300 shareholders of this village corporation have endured so far, and further place into question whether justice and equity will ever be achieved for these Native peoples who deserve settlement of their aboriginal claims. The Board would have to recalculate complex formulas involving the distribution of millions of acres of land throughout the state of Alaska. When the results varied from the prior computations, new distributions and new allocations of land would have to be made not just in the Koniag region, but throughout the state of Alaska. Such reallocations and redistributions at this late date would run contrary to the Congressional policies enacted into law in ANCSA that the settlement should be accomplished "rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation..." See, 43 U.S.C. § 1601(b).

**B. The doctrine of Administrative Finality precludes adoption of the RD.**

The doctrine of administrative finality precludes adoption of the RD that the Native Village of Woody Island be decertified pursuant to the challenge brought by protestant Omar Stratman. Mr. Stratman already brought his objections before the Alaska Native Claims Appeal Board, and he lost. *Appeal of Omar Stratman*, ANCAB No. LS77-4C (March 24, 1978.) He failed to take an appeal from the dismissal by the ANCAB. Accordingly, the