# EXHIBIT 10

# ANCSA 1976 AMENDMENTS, LEGISLATIVE HISTORY, AND HEARINGS

# ANCSA
# 1976 AMENDMENTS

# LEGISLATIVE
# HISTORY

# HEARINGS

4



KFA
1705.6
C57
A452
v.4

ALASKA NATIVE CLAIMS SETTLEMENT ACT
1976 AMENDMENTS

LEGISLATIVE HISTORY

# HEARINGS

VOLUME 4

ANCHORAGE LAW LIBRARY

94th CONGRESS
1st Session

# S. 1824

## IN THE SENATE OF THE UNITED STATES

MAY 22, 1975

Mr. STEVENS introduced the following bill; which was read twice and referred to the Committee on Interior and Insular Affairs

# A BILL

To authorize the Secretary of the Interior to enroll certain Alaskan Natives for benefits under the Alaska Native Claims Settlement Act, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    SECTION 1. (a) The Secretary of the Interior (herein-

4    after referred to as the "Secretary") is authorized to review

5    those applications submitted within one year from the date

6    of enactment of this Act by applicants who failed to meet

7    the March 30, 1973, deadline for enrollment established by

8    subsection (a) of section 5 of the Alaska Native Claims

9    Settlement Act, 85 Stat. 688 (hereinafter referred to as the

10    "Settlement Act"), and to enroll those Natives under the

II

228

1    provisions of that Act who would have been qualified if the

2    March 30, 1973, deadline had been met: *Provided, That*

3    Natives enrolled under this Act shall be issued stock under

4    the Settlement Act together with distributions from corpo-

5    rations adjusted so as to make distributions to such Natives

6    equal to distributions to Natives originally enrolled under

7    the Settlement Act: *Provided further,* That land entitle-

8    ment of any Native village, Native group, Village Corpo-

9    ration, Regional Corporation, or Corporation organized by

10    Natives residing in Sitka, Kenai, Juneau, or Kodiak, all as

11    defined in said Act, shall not be affected by any enrollment

12    pursuant to this Act, and that no tribe, band, clan, group,

13    village, community, or association not otherwise eligible for

14    land or other benefits as a "Native village" as defined in

15    said Act, shall become eligible for land or other benefits as

16    a Native village because of any enrollment pursuant to this

17    Act: *Provided further,* That no tribe, band, clan, village,

18    community, or village association not otherwise eligible for

19    land or other benefits as a "Native group" as defined in

20    said Act, shall become eligible for land or other benefits as a

21    Native group because of any enrollment pursuant to this Act:

22    *And, provided further,* That any "Native group" as defined

23    in said Act, shall not lose its status as a Native group be-

24    cause of any enrollment pursuant to this Act.

25    (b) In those instances where, on the roll prepared under

1   Section 5 of the Settlement Act, there were enrolled as resi-

2   dents of a place on April 1, 1970, the minimum number of

3   Natives required for a "Native village" or a "Native

4   group", as the case may be, and it is subsequently and

5   finally determined that such place is not eligible for land

6   benefits under the Act on grounds which include a lack of

7   sufficient number of residents, the Secretary shall, in accord-

8   ance with the criteria for residence applied in the final deter-

9   mination of eligibility, redetermine the place of residence on

10  April 1, 1970, of each Native enrolled to such place, and

11  the place of residence as so redetermined shall be such Na-

12  tive's place of residence on April 1, 1970, for all pur-

13  poses under the Settlement Act: *Provided*, That each Native

14  whose place of residence on April 1, 1970, is changed by rea-

15  son of this subsection shall be issued stock in the Native cor-

16  poration or corporations in which such redetermination

17  entitles him to membership and all stock issued to such

18  Native by any Native corporation in which he is no longer

19  eligible for membership shall be deemed canceled: *Provided*

20  *further*, That no distribution of funds made by any Native

21  corporation on the basis of prior places of residence shall

22  be affected: *Provided further*, That land entitlements of any

23  Native village, Native group, Village Corporation, Regional

24  Corporation or Corporations organized by Natives residing in

25  Sitka, Kenai, Juneau, or Kodiak, all as defined in said Act,

1  shall not be affected by any redetermination of residence
2  made pursuant to this subsection, and no tribe, band,
3  clan, group, village, community, or association not other-
4  wise eligible for land or other benefits as a "Native village"
5  as defined in said Act, shall become eligible for land or other
6  benefits as a Native village because of any redetermination
7  of residence pursuant to this subsection: *Provided further*,
8  That no tribe, band, clan, village, community, or village as-
9  sociation not otherwise eligible for land or other benefits as
10  a "Native group" as defined in said Act, shall become eligi-
11  ble for land or other benefits as a Native group because of any
12  redetermination of residence pursuant to this subsection:
13  *And provided further*, That any distribution of funds from
14  the Alaska Native Fund pursuant to subsection (c) of sec-
15  tion 6 of the Settlement Act made by the Secretary or his
16  delegate prior to any redetermination of residency shall not
17  be affected by the provisions of this subsection. Each Native
18  whose place of residence is subject to redetermination as pro-
19  vided in this subsection shall be given notice and an oppor-
20  tunity for hearing in connection with such reexamination
21  as shall any Native Corporation which it appears may gain
22  or lose stockholders by reason of such redetermination of
23  residence.
24      SEC. 2. (a) Any and all proceeds received by an agency
25  or instrumentality of the Federal Government derived from

231

1  contracts, leases, permits, rights-of-way, or easements per-
2  taining to lands or resources of lands withdrawn for Native
3  selection pursuant to the Settlement Act on and after the
4  date of its enactment shall be deposited in an escrow account
5  which shall be held by the Secretary until land selected pur-
6  suant to that Act have been conveyed to the selecting cor-
7  poration or individual entitled to receive benefits under
8  said Act. As such withdrawn or formely reserved lands are
9  conveyed, the Secretary shall pay from such account the
10  proceeds which derive from contracts, leases, permits, rights-
11  of-way, or easements, pertaining to the lands or resources of
12  such lands, to the appropriate corporation or individual en-
13  titled to receive benefits under the Settlement Act together
14  with interest. The proceeds derived from contracts, leases,
15  permits, rights-of-way, or easements, pertaining to lands
16  withdrawn or reserved, but not selected or elected pursuant
17  to said Act shall, upon the expiration of the selection or elec-
18  tion rights of the corporations and individuals for whose
19  benefit such lands were withdrawn or reserved, be deposited
20  in the Treasury of the United States or paid as required by
21  law were it not for the provisions of this Act.
22      (b) The Secretary is authorized to deposit in the Treas-
23  ury of the United States such escrow account proceeds re-
24  ferred to in subsection (a) of this section and the United
25  States shall pay interest thereon semiannually, from the date

1    of deposit to bear simple interest at the rate as may be
2    determined by the Secretary of the Treasury: *Provided,*
3    *however,* That the Secretary in his discretion may withdraw
4    from the United States Treasury such proceeds received by
5    him under this Act and reinvest such proceeds in the same
6    manner provided for by section 1 of the Act of June 24,
7    1938 (25 U.S.C. 162a) : *Provided further,* That this sec-
8    tion shall not be construed to create any trust relationship
9    between the United States and any corporation or individual
10   entitled to receive benefits under the Settlement Act.

11       (c) The United States shall pay interest, on a quarterly
12   basis, on all moneys in the Alaska Native Fund from and
13   after the date of the enactment of this Act. Such moneys
14   shall bear simple interest at such rate as may be determined
15   by the Secretary of the Treasury.

16       SEC. 3. Any and all proceeds from public easements
17   reserved pursuant to paragraph (3) of subsection 17(b)
18   of the Settlement Act shall be paid to the holder of the land
19   with respect to which such conveyance is made in accordance
20   with such holder's proportionate share.

21       SEC. 4. Any and all income on all earnings from con-
22   tracts, leases, permits, rights-of-way, or easements issued for
23   the surface or minerals covered under a conveyance prior to
24   the issuance of such conveyance under the Settlement Act,
25   shall be paid to the grantee of such conveyance on that portion

233

1  of the lands conveyed pro-rated from the date of enactment

2  of the Settlement Act, or from the date of conveyance under

3  the Settlement Act, whichever occurs first.

4    SEC. 5. Any distribution of funds from the Alaska Native

5  Fund pursuant to subsection (c) of section 6 of the Settle-

6  ment Act made by the Secretary or his delegate prior to

7  enactment of this Act on the basis of the final roll certified

8  on December 18, 1973, shall not be affected by the provisions

9  of this Act. Immediately upon certification of the amended

10  final roll pursuant to this Act, the Secretary shall make any

11  necessary adjustments in future distributions of funds pursu-

12  ant to subsection (c) of section 6 of the Settlement Act to

13  accommodate the changes in the final roll made by the

14  amended final roll: *Provided*, That such adjustments shall

15  not take effect until the next regularly scheduled distribution

16  period following certification of the amended final roll.

17    SEC. 6. The Settlement Act is amended by adding a new

18  section 28, to read as follows:

19    "SEC. 28. Any corporation organized pursuant to this

20  Act shall through December 31, 1991, be exempt from the

21  provisions of the Investment Company Act of 1940 (54

22  Stat. 789), as amended. Nothing in this section shall, how-

23  ever, be construed to mean that any such corporation shall

24  or shall not after such date be subject to the provisions of the

25  Investment Company Act of 1940."

1    SEC. 7. The Settlement Act is further amended by

2    adding a new section 29 to read as follows:

3    "SEC. 29. (a) The payments and grants authorized

4    under this Act constitute compensation for the extinguish-

5    ment of claims and interest described in section 4 hereof, and

6    shall not be deemed to substitute for any governmental pro-

7    grams otherwise available to the Native people of Alaska as

8    citizens of the United States and the State of Alaska.

9    "(b) Notwithstanding subsection 5(a) and any other

10   provision of the Food Stamp Act of 1964 (78 Stat. 703)

11   as amended, in determining the eligibility of any household

12   to participate in the food stamp program, any compensation,

13   remuneration, revenue, or other benefit received by any

14   member of such household under the Settlement Act in

15   connection with an aboriginal land claim of such person,

16   shall be disregarded.".

17   SEC. 8. Except as specifically provided in this Act (i)

18   the provisions of the Settlement Act are fully applicable

19   to this Act, and (ii) nothing in this Act shall be construed

20   to alter or amend any of such provisions.

21   SEC. 9. (a) Notwithstanding any provision of the Alaska

22   Native Claims Settlement Act (85 Stat. 688), any corpora-

23   tion created pursuant to section 7(d) or 8(a) of such Act

24   within any of the twelve regions of Alaska, as established

25   by section 7(a) of such Act, may, at any time, merge or

1  consolidate, pursuant to the applicable provisions of the laws

2  of the State of Alaska, with any other of such corporation

3  or corporations created for the same region.

4    (b)  Any corporations resulting from said mergers or

5  consolidations further may merge or consolidate with other

6  such merged or consolidated corporations within the same

7  region or with other of the corporations created in said

8  region pursuant to section 7 (d) or 8 (a) of the Alaska Na-

9  tive Claims Settlement Act. Such mergers or consolidations

10  shall be on such terms and conditions as are approved by

11  vote of the shareholders of the corporations participating

12  therein, and may take place pursuant to votes of sharehold-

13  ers held either before or after the enactment of this Act.

14  Upon the effectiveness of any such mergers or consolidations

15  the corporations resulting therefrom and the shareholders

16  thereof shall succeed and be entitled to all the rights, priv-

17  ileges, and benefits of the Alaska Native Claims Settlement

18  Act, including but not limited to the receipt of lands and

19  moneys and exemptions from various forms of Federal

20  State, and local taxation, and shall be subject to all the re-

21  strictions and obligations of such Act, as are applicable to the

22  corporations and shareholders which participated in said

23  mergers or consolidations or as would have been applicable

24  if the mergers or consolidations and transfers of rights and

25  titles thereto had not taken place.

1    (c) Notwithstanding the provisions of section 7(m)
2 of the Alaska Native Claims Settlement Act, in any merger
3 or consolidation in which the class of stockholders of a
4 regional corporation who are not residents of any of the
5 villages in the region are entitled under Alaska law to vote
6 as a class, the terms of the merger or consolidation may
7 provide for the elimination of the right of said class to re-
8 ceive dividends pursuant to said section 7(m).

9    (d) Notwithstanding any other provision of this sec-
10 tion or of any other law, no such corporation referred to
11 in this section may so merge or consolidate unless that cor-
12 poration's shareholders have approved such merger or con-
13 solidation of that corporation with any other such corporation
14 or corporations.

15    (e) The issuance of stock in any merger or consolidation
16 pursuant to this section shall be exempt from the registration
17 requirement of the Securities Act of 1933 until December
18 31, 1991.

19 SEC. 10. Section 17(a)(10) of the Alaska Native Claims
20 Settlement Act (85 Stat. 688, 708) is amended to read as
21 follows:

22 "(10) The Planning Commission shall submit, in ac-
23 cordance with this paragraph, comprehensive reports to the
24 President of the United States, the Congress, and the Gov-

237

1    error and legislature of the State with respect to its planning

2    and other activities under this Act, together with its recom-

3    mendations for programs or other actions which it determines

4    should be taken or carried out by the United States and the

5    State. A comprehensive report covering the above matter

6    shall be so submitted on or before May 30, 1970. A final

7    and comprehensive report covering the above matter shall

8    be so submitted on or before May 30, 1976. The Commission

9    shall cease to exist effective June 30, 1979.".

10    SEC. 11. The Secretary of the Interior is authorized

11    and directed to pay, by grant, to each of the following vil-

12    lage corporations $250,000 to enable such corporations to

13    carry out their duties under the Settlement Act:

14        (1) Kodiak;

15        (2) Kenai;

16        (3) Juneau; and

17        (4) Sitka.

18    SEC. 12. Section 16(b) of the Settlement Act is

19    amended by adding at the end thereof the following: "Such

20    allocation as the Regional Corporation for the southeastern

21    Alaska region shall receive under section 14(h)(8) shall

22    be selected and conveyed from lands not selected by such

23    village corporations that were withdrawn by subsection (a)

24    of this section: *Provided*, That, if such lands are not suf-

236

ficient to satisfy the entitlement of such corporation under
section 14 (h) (8), it may select the deficiency from any
other public lands."

SEC. 13. Notwithstanding any provision of the Settle-
ment Act, any village which elected not to receive the bene-
fits of such Act may conduct another election. Any such
election shall be held within one year from the date of the
enactment of this Act, shall be held in the same manner and
subject to the same conditions as an original election under
the Settlement Act, and a vote to receive the benefits of such
Act shall have the same force and effect as an original elec-
tion under such Act.

SEC. 14. The Secretary shall convey to Koniag, Incor-
porated Regional Native Corporation, under sections 12 (a)
(1) and 14 (f) of the Settlement Act such of the subsurface
estate as is selected by said corporation from lands with-
drawn by Public Land Order 5397 for identification for selec-
tion by it located in township 35 south, range 52 west;
township 37 south, ranges 51–54 west; township 38 south,
range 54 west; township 39 south, ranges 51–54 west, and
township 40 south, ranges 51–54 west, Seward meridian,
Alaska, notwithstanding the withdrawal of such lands by
Public Land Order 5179 as amended, pursuant to section
17 (d) (2) of the Settlement Act: *Provided*, That notwith-
standing the future inclusion in any national monument or

other national land system referred to in section 17 (d) (2)
(A) of the Settlement Act of the surface estate overlying
any subsurface estate conveyed as provided in this section,
Koniag, Incorporated may use the surface estate, and shall
have such right of access thereto, as is reasonably necessary
to prospect for and to mine and remove minerals from said
subsurface estate, subject to such reasonable regulations by
the Secretary for the protection of surface values as is com-
patible with economically feasible utilization of such sub-
surface estate.

SEC. 15. (a) Congress finds and declares that—

(1) the intent and purpose of the Settlement Act
were to resolve and to avoid all disputes and litigation
related to claims of aboriginal rights and to provide a
comprehensive, complete, and broad legislative settle-
ment of Alaska Native claims;

(2) the amendment of the Settlement Act effected
by subsection (b) of this section represents the intent
and meaning of section 4 (c) of the Settlement Act as
originally enacted; and

(3) if and to the extent that any of the extinguish-
ments of claims effected by section 4 of the Settlement
Act (including the extinguishments which are reaffirmed
and clarified by this section) constituted takings of prop-
erty for a public purpose within the meaning of the fifth

1  amendment of the Constitution, then the grants, privi-
2  leges, and benefits awarded to Alaskan Natives by that
3  Act and by this Act (whether from the United States
4  or from the State of Alaska) and by this Act were and
5  are to be deemed compensation for any such extinguish-
6  ments.

7     (b) (1) Section 4 (c) of the Act of December 18,
8  1971 (85 Stat. 688), is amended by adding after the
9  words "Indian Claims Commission," the words "includ-
10  ing claims accruing before the enactment of this Act,".

11     (2) Section 4 of the Settlement Act is further amended
12  by adding at the end thereof the following new subsection:

13     "(d) The claims extinguished by subsection (c) of
14  this section include, but are not limited to, those arising
15  from any trespassory conduct, but only to the extent that
16  any such claims are based on claims of aboriginal right,
17  title, use, or occupancy of land or water areas in Alaska, or
18  are based on any statute or treaty of the United States
19  relating to Native use and occupancy, or are based on the
20  laws of any other nation, including any such claims that
21  are pending before any Federal or State court or the Indian
22  Claims Commission.".

23     (c) Notwithstanding any other provision of law, any
24  action now pending or hereafter brought in any district
25  court other than the District Court for the District of Alaska

1    shall be transferred to that court immediately upon a deter-

2    mination that the action involves the construction, applica-

3    tion, or constitutionality of the amendment made by

4    subsection (b) of this section. The District Court for the

5    District of Alaska, and any reviewing court, shall have the

6    duty to expedite to the greatest extent possible the disposi-

7    tion of the issue of such construction, application, or con-

8    stitutionality, and a decision of the district court on the

9    issue shall be deemed to be a final order for purposes of

10   review.

11        (d) If this section or any portion thereof or any partic-

12   ular application thereof is held invalid, the remainder of the

13   Settlement Act and of this Act, and any application of this

14   section not held invalid, shall not be affected thereby.

Mr. JOSEPHSON. We appreciate that, Senator. The only thing I would add is because of the formulas in the act, as you know them to which turn upon the size of the State, the pendency of litigation and the uncertainty of that litigation will injure the administration of the act for all reasons by the Secretary and I think it is in the interests of sound administration of the act that this should be resolved.

Senator STEVENS. We should eliminate the uncertainties, and that is one of the uncertainties. I believe the record has been fairly presented and Mr. Borbridge should be commended for his presentation here. We will ask the committee to adopt his suggestion.

Mr. BARNES. With regard to subsistence, for use on neighboring lands, many people do not understand the Native philosophy with regard to the selectivity of Native usage on private lands. We certainly do not intend to put up signs of private ownership.

Senator STEVENS. I think the suggestion that this can be worked out between the two villages has great merit. The chairman has had to go to the floor. We will continue to 12:30 and reconvene slightly after 2 o'clock. Mr. Hession will be the last witness this morning and we will proceed.

Mr. Hession?

## STATEMENT OF JACK HESSION, ALASKA REPRESENTATIVE THE SIERRA CLUB

Mr. HESSION. I will be very brief, Senator Stevens. My name is Jack Hession. I am an Alaska representative of the Sierra Club. I will submit my statement for the record and summarize it.

Senator STEVENS. I appreciate that very much.

Mr. HESSION. In addition, the Conservation Society, Koniag Chapter, has asked me to submit into the record, their very brief statement on S. 1824. I would appreciate the opportunity to read into the record their very brief statement on S. 1824.

[The prepared statements referred to above follow:]



# SIERRA CLUB

324 C Street, S.E.
Washington, D.C. 20003
(202) 547-1144

STATEMENT OF JACK HESSION
ALASKA REPRESENTATIVE OF THE SIERRA CLUB
ON S. 1824
TO AMEND THE ALASKA NATIVE CLAIMS SETTLEMENT ACT
SENATE COMMITTEE ON INTERIOR AND INSULAR AFFAIRS
SEPTEMBER 24, 1975

Mr. Chairman and Members of the Committee, my name is Jack Hession.
I am the Alaska Representative of the Sierra Club, a national conserva-
tion organization of 153,000 members in 46 chapters. My home is in
Anchorage, Alaska.  I appreciate the opportunity to offer testimony here
today.

My comments refer to amendments proposed by the Sealaska, Koniag
and Cook Inlet regional corporations.  Sealaska proposes to select its
14(h)(8) entitlement from national forest lands in lieu of the unreserved
public lands provided by the Settlement Act.  These selections would come
from the nine-township village withdrawals.  However, Sealaska has agreed
not to select lands within the Angoon village withdrawal in recognition
of critical habitat necessary to sustain subsistence hunting and fishing
resources, and also in recognition of the nationally significant scenic,
wildlife and recreation values present.

In addition, certain areas of interest to the State of Alaska within
the Yakutat and Saxman withdrawals would not be selected by the corporation.

The amendment satisfies our earlier concern that Admiralty Island
acreage remain in public ownership.  We have no objection to its enactment.

-2-

Koniag Inc. seeks authorization to make selections from approximately 221,000 acres of public land currently withdrawn both for national interest (d-2) purposes and for village and regional corporation deficiency selections. The acreage identified by Koniag lies within the boundary of the proposed Aniakchak Caldera National Monument. Legislation to establish the monument is pending before the Interior Committees.

We oppose the Koniag amendment because it would circumvent the procedure set forth in Section 17(d)(2)(e) of the Settlement Act for the resolution of "dual withdrawals" for both d-2 and deficiency selection purposes. Under that section, regional corporations (or the State) may identify any d-2 lands they wish to select. The Interior Committees then resolve the conflicts. If the Committee now accepts the Koniag amendment, it will do so without giving equal consideration to the National monument proposal.

The Koniag amendment is also premature because of the uncertainty surrounding the amount of subsurface estate Koniag is entitled to. Its entitlement is based in part on the certification by Interior of Woody Island, Kaguyak and Afognak as eligible villages despite clear Congressional intent to the contrary. Woody Island is a former FAA installation, while Kaguyak and Afognak are abandoned villages. Accordingly, we recommend that the Committee defer consideration of the Koniag amendment pending a Committee investigation of the certification of the three "villages," and a final determination of subsurface entitlement.

The Koniag amendment does raise the important issue of the timing of Congressional deliberation of d-2 proposals with dual withdrawals.

-3-

Dual withdrawals are also present in the Lake Clark, Gates of the Arctic, and Wrangell-St. Elias national park proposals.  By December of this year any regional corporation identification of d-2 lands will have been made.  We suggest that the Committee, as it takes up the national interest legislation, consider first only d-2 areas in which Native regional corporation selections have been identified.

With respect to the amendment by Cook Inlet regional corporation, we understand that an agreement may soon be reached between the Interior Department, State of Alaska and the corporation.

We support the major features of the agreement as outlined to us by Cook Inlet and the State.  The agreement would have several advantages. Cook Inlet Region Inc. would select economically valuable lands within its region.  Cook Inlet's selections of Kenai National Moose Range acreage would have a minimal impact on the Range since the amount of surface acreage involved is small and there would be no conflict with critical habitat or pending wilderness proposals.

Public lands currently withdrawn for deficiency purposes in the Lake Clark area would become available for Congressional consideration for addition to the proposed Lake Clark unit of the National Park System.

And the State would assume the role of dominant landowner in the Iliamna region, an area of major state interest, particularly in connection with rehabilitation of the Bristol Bay fishery.

While we support the basic features of the emerging agreement, there are a number of relatively minor aspects which concern us.  For example, it should be made clear that the 14 townships of subsurface estate in the

-4-

Moose Range which would be conveyed to Cook Inlet would be for oil and gas only, and would not include sand and gravel rights.

We would prefer that the three townships of subsurface estate in the Lake Clark area which are retained by Cook Inlet under the tentative agreement not be part of the final agreement.

We would like to see the State, as part of the legislative history, indicate its support for a Lake Clark unit of the national park system, and its commitment to manage the Iliamna lands for protection of fish and wildlife habitat.

We would also hope the State would agree to perfect the boundaries separating the Iliamna area from the Katmai and Lake Clark withdrawals as suggested by the Interior Department's areas of ecological concern or conservationist proposals pending in Congress.

In summary, the agreement as outlined to us by the State and the Cook Inlet corporation presents us all with the opportunity to realize Native, State and national goals. We hope that the Interior Department will participate in the agreement. In any case, we urge the committee to endorse the efforts of the State and Cook Inlet, subject to changes the Committee may wish to suggest along the lines recommended above.