John Richard Fitzgerald
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
Phone: (617) 737-8858
Fax: (617) 342-4848
Email: jfitzgerald@morrisonmahoney.com
Attorneys for Defendant Leisnoi, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| OMAR STRATMAN,<br><br>Plaintiff,<br><br>versus<br><br>LEISNOI, INC., KONIAG, INC., and DIRK KEMPTHORNE, SECRETARY OF THE INTERIOR,<br><br>Defendants. | Case No. A02-0290 CV (JKS)<br><br>**LEISNOI, INC.'S REPLY TO OPPOSITION (DOCKET 168) TO RULE 12(b)(1) MOTION TO DISMISS RE: DOCTRINES OF ADMINISTRATIVE FINALITY AND COLLATERAL ESTOPPEL (DOCKET #118-1)** |

## I. INTRODUCTION

The doctrine of administrative finality precludes Omar Stratman from bringing claims challenging Woody Island's eligibility in this case, because he brought such claims in his failed administrative challenge at the Alaska Native Claims Appeal Board, then failed to appeal therefrom to this Court. See *Appeal of Omar Stratman*, ANCAB No. LS 77-4C (March 24, 1978).[1]

[1] Exhibit 1 at docket #118.

The doctrine of collateral estoppel precludes Omar Stratman from re-litigating village eligibility issues decided on the merits in favor of Leisnoi by the Department of the Interior, Bureau of Indian Affairs, Area Director on February 8, 1974 in the *Final Administrative Determination Concerning the Eligibility of Woody Island as a Native Village for Purposes of ANCSA,*[2] published in the Federal Register on February 21, 1974,[3] affirmed on appeal by the Alaska Native Claims Appeal Board, *In re Woody Island*, ANCAB No. VE74-46 (August 28, 1974),[4] and personally approved by Secretary of the Interior Rogers C.B. Morton on September 9, 1974.[5]

## II. ADMINISTRATIVE FINALITY ATTACHES TO THE ANCAB'S FINAL DECISION IN FAVOR OF LEISNOI, INC. AND AGAINST OMAR STRATMAN

Omar Stratman mistakenly postulates that he can litigate an administrative challenge against Leisnoi all the way through to a final decision by the Alaska Native Claims Appeal Board,[6] lose, and fail to appeal, without there being any consequences whatsoever. His bland observation at pages 3-4 of his opposition, that "by the time the Board dismissed it for lack of standing on March 24, 1978, Stratman had already filed his APA action challenging the Secretary's determination," does not excuse his failure to have appealed from the administrative ruling against him. The pendency of the 1976 suit in federal court at the time the ANCAB ruled

---

[2] Exhibit 1 at docket #109.

[3] Id.

[4] Exhibit 2 at docket #118.

[5] Id.

[6] *In re Appeal of Omar Stratman*, ANCAB # LS 778-4C, Decision and Order of Dismissal dated March 23, 1978, Exhibit 1 at docket #118.

against Stratman was not a magic wand that somehow eliminates administrative finality from attaching to the 1978 ANCAB decision.[7] In fact, just the opposite is true. Stratman could quite easily have appealed to this Court from the March 24, 1978 ANCAB ruling entered against him, and then moved to consolidate that appeal with his A76-132 civil action then pending in this Court. Mr. Stratman would thereby have preserved whatever ability he may once have had to challenge the eligibility of the Native Village of Woody Island for benefits under ANCSA.

Stratman's failure to appeal to this Court from the March 24, 1978 ANCAB Final Decision and Order of Dismissal in *In Re Appeal of Omar Stratman*, ANCAB # LS 778-4C[8] therefore gives rise to application of the doctrine of administrative finality. That doctrine prevents Stratman from pursuing claims in this Court that he raised in his 1978 ANCAB case against Leisnoi.

In his opposition brief, Stratman engages in "historical revisionism", trying to rewrite history to suit his present needs. He now contends that he never challenged Woody Island's eligibility in the ANCAB case: "Because the claims and issues in Stratman's previous ANCAB appeal, which challenged the Department's determination of the amount of Leisnoi's land **entitlement**, **did not involve** the same claims and issues as Stratman's APA claim, which challenges the Department's determination of Leisnoi's **eligibility**, the doctrine of administrative finality does not bar Stratman's action." Opposition at page 3 (emphasis added).

But Stratman's own exhibits to his opposition belie his artificially narrow interpretation of the broad claims against Leisnoi he was pursuing in that case. They show Stratman used his

[7] Exhibit 1 to docket #118.

[8] Exhibit 1 at docket #118.

ANCAB case to challenge both eligibility and entitlements. Indeed, in his April 26, 1977 Statement of Reasons for Appeal to the ANCAB,[9] Stratman argued that "the **number of Native residents** for Leisnoi, Inc. shown to be **eligible** for the purposes of computing entitlements to Federal lands **is erroneous**. Information and evidence in the possession of the appellants indicate that **the number of natives** residing in the village upon the date specified in the Alaska Native Claims Settlement Act **was zero**." (emphasis added) By contending there were "zero" residents in the village, Stratman was arguing that the Native Village of Woody Island was not eligible for ANCSA benefits.[10] This alleged lack of a sufficient number of eligible Natives on Woody Island is the same argument Mr. Stratman is repeating in his 2002 suit.

But having lost on his earlier challenge, Mr. Stratman cannot pursue the same claims once more herein. The doctrine of administrative finality bars re-litigation in a subsequent case of claims brought in an earlier action which could have been subjected to appellate review. *Keith Rush d/b/a Rush's Lakeview Ranch*, 125 IBLA 346 (1993); *Village of South Naknek*, 85 IBLA 74 (February 11, 1985); *CCCo*, 127 IBLA 291 (October 7, 1993). Mr. Stratman could have sought

---

[9] Docket # 168-3.

[10] Omar Stratman was not the only one who used a land entitlement case as a vehicle to mount a village eligibility challenge against Leisnoi. The Kodiak-Aleutian Chapter, Alaska Conservation Society used the same tactic, and also failed. See *In the Matter of Leisnoi, Inc., In re: Appeal of Kodiak*-Aleutian *Chapter, Alaska Conservation Society*, ANCAB # LS 77-11, Order of Dismissal dated March 31, 1978 (Docket # 168-3). That case was decided just one week after the ANCAB ruled against Omar Stratman. The ANCAB therein agreed with Leisnoi and the Bureau of Indian Affairs that, although labeled as a land selection challenge, the challenge in fact went to village eligibility:

> "In addition, the Board agrees with contentions of Leisnoi and the BIA that the present appeal constitutes an attack on the eligibility of Leisnoi, Inc. for land benefits under ANCSA… under the guise of an entitlement appeal under the theory that the village is not entitled to land under the Act because it is not in fact eligible for benefits as a village."

judicial appellate review by this Court of the ANCAB's ruling in favor of Leisnoi, Inc., but he neglected or chose not to do so.

Stratman's failure to appeal from the administrative decision "renders that decision **and the findings contained therein final** for the Department and precludes a party from later challenging it..." *CCCo.,* 127 IBLA 291, 293-94 (1993). (Emphasis added.) The ANCAB, rejecting Stratman's arguments, wrote that "Leisnoi has been **found to be eligible** as a village under §11 of ANCSA… [A] determination of **eligibility** is a finding that such village had at least a minimum Native population of 25 on the 1970 census enumeration date."[11] That finding of eligibility is final, and precludes Stratman from later challenging it in this 2002 case.

## III. STRATMAN IS COLLATERALLY ESTOPPED FROM CHALLENGING WOODY ISLAND'S VILLAGE ELIGIBILITY

Just as the doctrine of administrative finality precludes Stratman from bringing a claim challenging village eligibility because he already did so thirty years ago and lost, *In re Appeal of Omar Stratman*, ANCAB # LS 778-4C,[12] so too, the doctrine of collateral estoppel precludes Stratman from re-litigating the issue of whether Woody Island is eligible for ANCSA benefits. The village eligibility issue was already decided in Woody Island's favor, over the objection of Philip Holdsworth and the Sportsmen's Council, by Department of the Interior, Bureau of Indian Affairs, Area Director on February 8, 1974 in the *Final Administrative Determination Concerning the Eligibility of Woody Island as a Native Village for Purposes of ANCSA*,[13]

[11] *In re Appeal of Omar Stratman*, ANCAB # LS 778-4C, Decision and Order of Dismissal dated March 23, 1978 at page 5 (Exhibit 1 at docket #118).

[12] Exhibit 1 at docket #118.

[13] Exhibit 1 at docket #109.

affirmed on appeal by the Alaska Native Claims Appeal Board, *In re Woody Island*, ANCAB No. VE74-46 (August 28, 1974)[14] and approved by Secretary of the Interior Rogers C.B. Morton on September 9, 1974.[15]

Stratman raises just three arguments against application of collateral estoppel. First, he mistakenly contends that the ANCAB did not consider the merits of the eligibility challenge in *In re Woody Island* such that the issue was not fully litigated and collateral estoppel could not attach. Secondly, he erroneously contends that he was not in privity with the litigants to that case who, like Stratman in this case, sought a ruling that Woody Island is not eligible for ANCSA benefits. Finally, he wrongly asserts that protestants Philip Holdsworth and Sportsmen's Council's filing of a notice of inability to file further briefing somehow strips Leisnoi of all collateral estoppel benefits flowing from its successful defense of the certification challenge.

**1. The ANCAB found no merit to the arguments against Woody Island's eligibility.**

The Court need look no further than the August 28, 1974 ANCAB ruling itself[16] to see that the Board considered the merits of the challenge to Woody Island's eligibility in certifying the village as eligible. Indeed, the ruling expressly states that "The Board has considered the briefs previously filed by the Alaska Wildlife Federation and Sportsmen's Council and Phil R. Holdsworth, and finds the legal arguments advanced therein to be **without** sufficient **merit** to justify the continuance of these proceedings." It determined there is no merit to the arguments

[14] Exhibit 2 at docket #118.

[15] Id.

[16] Exhibit 2 at docket #118.

that Woody Island is purportedly ineligible for ANCSA benefits. The Board therefore ruled that "the Area Director is directed to certify the Native Village of Woody Island as eligible for benefits under the Alaska Native Claims Settlement Act…" Had there been merit to the arguments against village eligibility, the ANCAB would not have declared the legal arguments to be without merit.

Stratman is mistaken in his assertion that the village eligibility issue was not litigated in *In re Woody Island*. The issue was litigated, and decided in favor of Woody Island.

**2. Privity exists between Stratman and the earlier protestants.**

Stratman was in privity with the parties who challenged village eligibility in *In re Woody Island*. His opposition misstates the law that applies here in the Ninth Circuit. Stratman erroneously contends at page 11 of his opposition that the doctrine of privity through virtual representation applies "only if there was an 'express or implied legal relationship by which parties to the first suit are accountable to non-parties of file a subsequent suit with identical issues.'" This is not the law in this Circuit.[17] In the Ninth Circuit, a commonality of interests and adequate representation are all that is required for privity. *Bayone v. Baca,* 2005 U.S.App. LEXIS 7950 (9th Cir.2005); *Shaw v. Hahn*, 56 F.3d 1128 (9th Cir.1995); *Schoenleber v. Harrah's Laughlin, Inc.*, 423 F.Supp. 2d 1109 (D.Nevada 2006).

**(a) Commonality of interests**

Although Omar Stratman was not personally a party to the earlier challenges to the certification of the Native Village of Woody Island brought by Phillip Holdsworth and the

[17] "[A] legal relationship is not required for a finding of virtual representation in the Ninth Circuit as it is in some other jurisdictions." *Nygaard v. United Parcel Service*, 1 F.Supp.2d 1173, 1182 (D.Oregon 1998).

Alaska Wildlife and Sportsmen's Council, Inc., he shares a commonality of interests with those protestants such that he can be deemed to have been in privity with them. Both the earlier protestants and the protestant in the instant case had the same objective: to block the certification of the Native Village of Woody Island. Both sets of protestants vigorously opposed Woody Island being deemed eligible for benefits under the Alaska Native Claims Settlement Act. Both sets of protestants raised similar arguments in seeking to achieve their common interest.

Leisnoi, Inc. has already successfully litigated the village eligibility issue raised by the earlier protestants, and is entitled to collaterally estop Omar Stratman from re-litigating that same issue herein some thirty years later. That Omar Stratman did not personally participate in Mr. Holdsworth and Sportsmen's Council's challenge to Woody Island's eligibility does not block application of the doctrine of collateral estoppel, because Stratman was in privity with those earlier protestants with whom he was "closely aligned in interests" and with whom "there is sufficient commonality of interests." See, *Shaw v. Hahn*, 56 F.3d at 1131.

**(b) Adequacy of representation.**

Protestants Phillip R. Holdsworth, and the Alaska Wildlife Federation & Sportsmen's Council, Inc. were adequately represented by attorney James F. Clark of the well-respected Alaska firm then-known as Robertson, Monagle, Eastaugh & Bradley. He filed a protest to the eligibility of Woody Island on January 21, 1974;[18] appealed to the Alaska Native Claims Appeal Board[19] from the February 8, 1974 final administrative determination that Woody Island

---

[18] Exhibit 1 hereto.

[19] Exhibit 3 hereto.

qualified for ANCSA benefits.[20] Some examples of his briefing, discovery, and appellate work product culled from the BIA exhibits are attached hereto as Exhibits 1, 3-6. The Court can readily see that attorney Clark provided quality legal representation to Mr. Holdsworth and to the Alaska Wildlife Federation & Sportsmen's Council, Inc. Indeed, the adequacy of his representation is amply demonstrated by Omar Stratman having adopted many of Mr. Clark's legal arguments.

At the IBLA, Stratman filed briefs that "borrowed" quite a few legal arguments that had been crafted by attorney James Clark, counsel for Phillip Holdsworth. Mr. Clark had first asserted these arguments at the Department of the Interior, Bureau of Indian Affairs in his clients' challenge to Woody Island's eligibility.[21] Then, after losing the initial challenge,[22] he raised them again to the Alaska Native Claims Appeal Board in his appeal[23] and briefing filed with the ANCAB.[24]

For example, Omar Stratman's argument at the IBLA that purported conflicts between the answers to Column 16 of the enrollment form with answers in Columns 17-21 somehow form a doubt as to the permanent residence status of individual Native enrollees as of April 1, 1970 such that the burden of proof is shifted to the Native Village, was crafted and raised by counsel for the Alaska Wildlife Federation and Sportsman's Council, Inc. and Mr. Philip

---

[20] Exhibit 1 at docket #109.

[21] Exhibit 1 hereto.

[22] Exhibit 1 at docket #109.

[23] Exhibit 3 hereto.

[24] Exhibits 5 and 6 hereto.

Holdsworth in their challenge to the eligibility of the Native Village of Woody Island for benefits under the Alaska Native Claims Settlement Act. See, BIA 1A at pp. 398-397.[25]

Likewise, Stratman's argument about how the term "residence" should be construed was originally developed and asserted by attorney James Clark.[26]

Stratman's argument that showing certain Natives voted in places other than Woody Island, coupled with an alleged conflict between Column 18 and Column 16 on the enrollment form somehow shifts the burden of proof, was originally crafted and asserted by James F. Clark, counsel for protestant Philip Holdsworth and the Alaska Wildlife Federation and Sportsmen's Council, Inc.[27]

Stratman's theory that the instructions accompanying the enrollment application that informed Natives they could enroll to the Native Village of Woody Island if they had "some ties back to that place" somehow tainted the official roll of the Natives of Woody Island was already raised by attorney James F. Clark.[28]

Stratman's argument about incorrect information having been given to Natives by enumerators who were not properly trained was already raised in front of the BIA and the ANCAB by attorney James F. Clark.[29]

---

[25] Exhibit 5 hereto. One of the oddities of this case is that certain BIA exhibits were bates-stamped in reverse order, so that, for example, pages 1-2 of attorney Clark's Reply to Motion for Preliminary Ruling (Exhibit 5 herein) appear as BIA Exhibit 1A pages 398 to 397.

[26] See, BIA Exhibit 1A at pp. 396-395, Exhibit 5 hereto.

[27] Id.

[28] See, BIA Exhibit 1A at pp. 176-175, Exhibit 3 hereto.

[29] Id.

Stratman's theory that there were only two persons enrolled to Woody Island who lived on the Island at the time the Native rolls were prepared, such that there was allegedly an insufficient number of permanent residents to qualify for benefits under the Alaska Native Claims Settlement Act, was created by counsel for the Alaska Wildlife Federation and Sportsman's Council, Inc. and Mr. Philip Holdsworth.[30]

These examples demonstrate that, inasmuch as Omar Stratman has made extensive use of, copied and asserted the very same legal arguments that were crafted by attorney James Clark, there is no merit to Stratman's claim that the representation of Holdsworth and the Sportsmen's Council's was allegedly inadequate.

## IV. LACK OF FUNDING HAVING PREVENTED FURTHER BRIEFING DOES NOT PREVENT OPERATION OF COLLATERAL ESTOPPEL.

The Department of the Interior, Bureau of Indian Affairs considered attorney Clark's arguments against Woody Island's eligibility, and rejected them on the merits. See, February 8, 1974 *Final Administrative Determination Concerning the Eligibility of Woody Island as a Native Village for Purposes of ANCSA*.[31]

After having litigated the village eligibility issue before the Bureau of Indian Affairs, lost, then taken an appeal to the ANCAB, Philip R. Holdsworth and the Sportsmen's Council ran out of money to pay Mr. Clark to file even more briefs, and therefore filed with the Board on May 16, 1974 a Notice of Inability to Continue in the Appeals Proceedings.[32] These protestants had not abandoned their challenge to the certification of the Native Village of Woody Island;

[30] See, BIA Exhibit 1A at p. 161, Exhibit 3 hereto.

[31] BIA Exhibit 1A at pp. 121-118, Exhibit 1 at docket #109.

[32] BIA Exhibit 1A at p. 429, Exhibit 7 hereto.

rather, after having submitted extensive briefing on the legal issues, they notified the ANCAB that due to "insufficient funds to support continued legal counsel" they would be unable to continue to submit briefing in the appeals proceedings before the Alaska Native Claims Appeal Board. The protestants did not drop their challenge; indeed, they specifically requested that "the Alaska Native Claims Appeal Board continue to consider the various legal points presented by appellants in the material already before them in their deliberation on these matters." In essence, these protestants stated that they had filed as much briefing as they could, and that although they could no longer afford to file additional briefs, their protests were not withdrawn.

Stratman contends that because the Board elected to treat Holdsworth and the Sportsmen's Council as *amicus curiae* in light of their inability to fund further active litigation,[33] the eligibility ruling in favor of Leisnoi by the ANCAB, and the earlier one by the BIA Acting Director, somehow lack collateral estoppel effect. He is mistaken.

The situation herein is akin to that in *In re Gottheiner*, 703 F.2d 1136 (9th Cir.1983), where collateral estoppel applied even though the party to the first action was unable to continue with additional briefing after having already participated extensively in the litigation. The Ninth Circuit held that collateral estoppel would nonetheless preclude relitigation of issues that were decided in that case.

> For sixteen months, Gottheiner, represented by counsel, defended himself and the corporation against the government's lawsuit. Extensive discovery ensued, some of which was initiated by Gottheiner himself. Eventually the government moved for summary judgment against CCHCS. At this point, Gottheiner's attorney asked to withdraw from the case. The district court refused to permit the attorney to withdraw. Still, Gottheiner

[33] BIA Exhibit 1-A at pages 433-432, Exhibit 8 hereto.

> presented no opposition to the government's summary judgment motion….
>
> In ruling on the motion for summary judgment the district court said that it did not consider the fact that the motion went unopposed. Instead it reviewed the record on its own, and finding no genuine issues of material fact, granted the government's motion….
>
> Gottheiner contends that the lower courts erred in giving collateral estoppel effect to the judgment against CCHCS because the judgment was based on an uncontested motion for summary judgment… [But] Gottheiner did not simply give up from the outset. For sixteen months he actively participated in litigation on behalf of himself and CCHCS. That after many months of discovery Gottheiner decided his case was no longer worth the effort does not alter the fact that he had his day in court. Under the circumstances we hold that the lower court did not abuse its discretion in giving collateral estoppel effect to the prior judgment, and we agree, upon *de novo* review, that collateral estoppel properly was available to the government.

*In re Gottheiner*, 703 F.2d 1136, 1138 -40 (9th Cir.1983).

Like Gottheiner, Holdsworth and the Alaska Wildlife Federation & Sportsmen's Council, Inc. litigated extensively, but then were eventually unable to file additional briefs. As in *In re Gottheiner*, the trier of fact considered the merits of the issues raised, rather than deciding the case based upon an inability of a litigant to file more briefs. Just as the ruling in *In re Gottheiner* gave rise to application of collateral estoppel, so too, the ruling by the ANCAB in *In re Woody Island*, ANCAB VE #74-65 gives rise to application of collateral estoppel.

To the extent that the ANCAB dismissed Philip Holdsworth and the Alaska Wildlife Federation & Sportsmen's Council, Inc.[34] despite their request that that "the Alaska Native Claims Appeal Board continue to consider the various legal points presented by appellants in the

[34] May 24, 1974 Notice and Order, Exhibit 8 hereto.

material already before them in their deliberation on these matters.",[35] the dismissal was involuntary. Involuntary dismissals are given preclusive effect, so collateral estoppel still applies to the August 28, 1974 Final Order Dismissing the Appeals of Alaska Wildlife Federation & Sportsmen's Council, Inc., and Phil R. Holdsworth and Certifying Village, *In re Woody Island*, ANCAB No. VE74-46.[36]

Of course, collateral estoppel effect must still be given to the February 8, 1974 Administrative Decision of the BIA Acting Director, *Final Administrative Determination Concerning the Eligibility of Woody Island as a Native Village for Purposes of ANCSA*, which was published in the Federal Register on February 21, 1974.[37] That published ruling against Holdsworth and the Sportsmen's Council was made while those protestants were still actively represented by counsel, who had aggressively pursued the administrative challenge to Woody Island's eligibility. In other words, even if Stratman could escape the collateral estoppel consequences of the August 28, 1974 appellate ruling by the ANCAB,[38] which was personally approved by Secretary of the Interior C.B. Morton on September 9, 1974,[39] on the technicality that Holdsworth and the Sportsmen's Council had by then been involuntarily dismissed as

---

[35] Notice of Inability to Continue in Appeals Proceedings, BIA Exhibit 1A at p. 429, Exhibit 7 hereto.

[36] Exhibit 2 at docket # 118. <u>See</u>, *Pedrina v. Chun*, 97 F.3d 1296 (9th Cir.1996) (involuntary dismissal for want of prosecution operates as an adjudication upon the merits, thus "we must give that decision preclusive effect."); *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128 (10th Cir.1991) (involuntary dismissal "constituted an adjudication on the merits for the purpose of claim preclusion in a later federal court action."). <u>See also</u>, *Xu v. McLaughlin Research Institute for Biomedical Science, Inc.*, 119 P.3d 100, 106 (Montana 2005) (involuntary dismissal with prejudice "constitutes an adjudication upon the merits" and therefore "the elements of both *res judicata* and collateral estoppel are met…"); and Federal Rule of Civil Procedure 41(b).

[37] Exhibit 1 at docket #109.

[38] Exhibit 2 at docket #118.

[39] <u>Id</u>.

appellants,[40] he is still bound by the collateral estoppel consequences flowing from the *Final Administrative Determination Concerning the Eligibility of Woody Island as a Native Village for Purposes of ANCSA,*[41] which gave rise to their appeal.[42] Stratman's virtual representatives fully participated in that administrative challenge to Woody Island's eligibility. They did so with adequate legal representation. Their pleadings reveal that they shared common interests with those of Omar Stratman in that they aggressively sought to block Woody Island from being found eligible for ANCSA benefits.

The doctrine of issue preclusion prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). Leisnoi's eligibility for ANCSA benefits was actually litigated and necessarily decided, after a full and fair opportunity for litigation in prior proceedings both at the BIA and then on appeal at the ANCAB.

Leisnoi, Inc. is entitled to rely upon the village eligibility issues already decided in its favor by the BIA Area Director on February 8, 1974,[43] published in the Federal Register on February 21, 1974,[44] affirmed on appeal by Alaska Native Claims Appeal Board on August 28, 1974,[45] and personally approved by Secretary of the Interior Rogers C.B. Morton on September

---

[40] Exhibit 8 hereto.

[41] Exhibit 1 at docket #109.

[42] Exhibit 3 hereto.

[43] Exhibit 1 at docket #109.

[44] Id.

[45] Exhibit 2 at docket #118.

9, 1974.[46] Omar Stratman is collaterally estopped from attempting to re-litigate village eligibility herein. Although Omar Stratman was not a party to Holdsworth and Sportsmen's Council's above-described administrative protest[47] and appeal,[48] his interests are the same as those of the earlier protestants who likewise sought to prevent public lands from being transferred to the Native Village of Woody Island.

WHEREFORE, the Court should GRANT Leisnoi, Inc.'s Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction Re: Doctrines of Administrative Finality and Collateral Estoppel (Docket #118).

DATED this 29th day of June, 2007.

RESPECTFULLY SUBMITTED,

/s/ John Richard Fitzgerald

Alaska Bar No. 8711084
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
Phone (617) 737-8858
Fax (617) 342-4848
Email: jfitzgerald@morrisonmahoney.com
Attorneys for Leisnoi, Inc.

---

[46] Id.

[47] Exhibit 1 hereto.

[48] Exhibit 3 hereto.

**EXHIBITS TO LEISNOI, INC.'S REPLY TO OPPOSITION (DOCKET 168) TO RULE 12(b)(1) MOTION TO DISMISS RE: DOCTRINES OF ADMINISTRATIVE FINALITY AND COLLATERAL ESTOPPEL (DOCKET #118)**

**1.** January 21, 1974 Protest of eligibility of unlisted village, filed by attorney James F. Clark of Robertson, Monangle, Eastaugh & Bradley on behalf of Philip Holdsworth and the Alaska Wildlife Federation and Sportsmen's Council, Inc.

**2.** Not used.

**3.** March 29, 1974 Appeal of Alaska Wildlife Federation and Sportsmen's Council, Inc. and Philip Holdsworth to the Alaska Native Claims Appeal Board from the final determination of eligibility of Woody Island.

**4.** April 3, 1974 Request for Production propounded by Philip Holdsworth and the Alaska Wildlife Federation and Sportsmen's Council, Inc.

**5.** April 15, 1974 Reply by Alaska Wildlife Federation and Sportsmen's Council, Inc. and Philip Holdsworth to Motion for Preliminary Ruling.

**6.** April 19, 1974 Opposition of Alaska Wildlife Federation and Sportsmen's Council, Inc. and Philip Holdsworth to Koniag and Leisnoi, Inc.'s Motion for Order Dismissing Appeals.

**7.** May 16, 1974 Notice of Inability to Continue in Appeals Proceedings filed by Alaska Wildlife Federation and Sportsmen's Council, Inc. and Philip Holdsworth.

**8.** May 24, 1974 Notice and Order by the Alaska Native Claims Appeal Board.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of June, 2007 a copy of the foregoing was served electronically upon Collin Middleton, Esq., Bruce Landon, Esq., and Michael Schneider, Esq.

/s/ John Richard Fitzgerald