# EXHIBIT "3"

Chabitnoy.  The information was incorporated into the Fadaoff Family Genealogy, L-Chart 5.

420.  L-Doc 179 is an April 13, 1966 <u>Anchorage Daily News</u> article entitled "Man Pleads Guilty in Girl's Death."  The article recounts how "James Fadaoff, a Woody Island man accused of killing Rosemary Challiak on December 26 at Woody Island, has pleaded guilty to a charge of manslaughter...Ms. Challiak was found dead by residents of the village after Fadaoff told friends of her death.  Investigation revealed that Fadaoff and the victim following a drinking bout had become involved in an argument that resulted in her death."  The article is relevant in that it corroborates testimony by witnesses at the hearings describing how James Fadaoff had committed manslaughter upon Rosemary Challiak.  The article is also relevant in that it quotes "residents of the village", thereby corroborating the fact that there was a Village on Woody Island in April of 1966.

421.  L-Doc 180 is a June 4, 1966 <u>Anchorage Daily News</u> article describing how "James A. Fadaoff, 34, of Woody Island, has been sentenced to seven years imprisonment for the manslaughter slaying in December of Rosemary Challiak."  The article is further corroborating evidence of the fact that James Fadaoff had been a resident of Woody Island, and confirms the testimony given by witnesses describing the incident and the resulting imprisonment of James Fadaoff.

422.  L-Doc 181 is a March 24, 1998 interview of Leisnoi shareholder Nettie Carol Chya Matthews.  She describes how she and her many siblings would frequently go to Woody Island during the summertime after her parents had moved to Kodiak.  She

276

describes how her parents, John Shaya, Sr. and Mary Shuravloff had lived on Woody Island. She described how when her father "was growing up, and he was in the Mission, and he was there during the flu epidemic and they had to take part in that and it wasn't a happy time, you know, but he -- it was hard for him to talk about it sometimes." Nettie Carol Chya Matthews did not testify live at the proceedings, so she was not subjected to cross examination. Nonetheless, since she does not claim to have lived for a period of time on Woody Island in 1970, the Court finds no prejudice in making use of her unsworn interview as background material pertinent to the longstanding ties of the Chya family to Woody Island, and further corroborating the genealogical information contained in the Chya Family Genealogy, L-Chart 4.

423.   L-Doc 182 is an affidavit of Joanna McFarlin, who is employed at the Kodiak Island Mental Health Center and has been the caseworker for Rudy Sundberg, Jr. Ms. McFarlin states that Mr. Sundberg "is developmentally disabled" but that "he speaks fluently and has a good memory of past events." Ms. McFarlin recounts that she has spoken with Mr. Sundberg about his recollection of living on Woody Island and learned that he was born on Woody Island in 1934, and lived there with his family until 1941 when he was sent to reside at an institution in Oregon because of his disability. He returned to Alaska in 1960 and from that point forward he lived on Kodiak and Woody Island until he became enrolled in the community support program in the early 1970s. During this time he and other family members alternated staying at their home on Woody Island and their home in Kodiak spending a week or more at a time at each residence. Mr. Sundberg confirmed that during the 1960s, the

277

Chabitnoys, Maliknaks, and Simeonoff families were living on Woody Island. L-Doc 182 is relevant to provide some of the background information and description of the close ties that Leisnoi shareholder Rudy Sundberg, Jr. has to Woody Island.

424.    L-Doc 183 is a 1978 <u>Kadiak Times</u> article entitled "Farewell to the FedAir IV." The document describes how the *FedAir IV* is a 48-foot converted Purse seiner that was transferred from Sitka to Woody Island in 1948. The article notes that "Woody Island, located just two and a half miles southeast of Kodiak, is believed to have been a Russian agricultural colony as early as 1792. The tiny two-by-four mile island was also the home base for the Russian-American Ice Company from 1852 to 1872...The Kodiak Baptist Mission Orphanage was also established on Woody Island in 1893, but eventually moved to Kodiak in 1939." The article notes that "The FedAir IV was the vital mode of transportation that connected the Woody Island community with the outside world of Kodiak Island...The FedAir IV was also used as the local school bus for the Woody Island children attending school in Kodiak. She was the ferry used for the weekly shopping sprees to Kodiak and of course the ambulance in case of emergency." The article noted that "The FAA community started moving off of Woody in 1970." Document 183 is relevant in that the *FedAir IV* played an important role as a means of transportation for the Native Woody Islanders, and when the *FedAir IV* was restricted to governmental personnel only in the 1960s, its function as a "school bus", "ferry", and vessel used "to haul supplies" was lost to the Native Woody Islanders.

425.  L-Doc 184 is a letter from the Bureau of Indian Affairs to Karl Armstrong acknowledging his request for a Village Land Withdrawal for Woody Island. The document is relevant to show Karl Armstrong's efforts to obtain land for the Native Woody Islanders who ultimately succeeded in obtaining certification of their Village and obtaining land patents from the United States.

426.  L-Doc 185 is a memorandum from the Bureau of Indian Affairs dated February 16, 1973. The memorandum notes that the Bureau of Indian Affairs "cannot certify to the eligibility of this village until after the enrollment of the Alaska natives has been completed and certified by the Secretary of the Interior." The document has the same relevance as does L-Doc 184.

427.  L-Doc 186 is a <u>Kodiak Mirror</u> article dated August 7, 1964 entitled "More Than 200 Attend Summer Camp." The article notes that "More than 200 boys and girls of various ages attended the summer camps on Woody Island, with the last group breaking camp and returning last week." The article notes that Mary Ann Frump (a Leisnoi shareholder and sister of Harold Frump King, who testified at the hearings in Anchorage) was one of those who was on Woody Island in 1964.

428.  L-Doc 187 is a December 3, 1979 letter by the Citizens Action Group referring to Woody Island as being a "fraudulent village". Having reviewed the testimony and the documentary evidence, the Court rejects the proposition that the Native Village of Woody Island was a fraudulent village, and instead finds that the Native Village of Woody Island met all the requirements under the Alaska Native Claims Settlement Act and was properly certified.

429. L-Doc 188 is a July 17, 1971 Kodiak Island Times newspaper article entitled "News from Camp Woody." The article notes that "All enjoyed exploring the low tide pools, late blooming spring flowers, and animal life on beautiful Woody Island." The document corroborates testimony by Tim Smith that Camp Woody was being operated in the early 1970s on Woody Island.

430. L-Docs 189-276 are newsletters from the Kodiak Baptist Orphanage on Woody Island from 1907 through 1922. The documents provide important source information corroborating the presence of a number of the ancestors of present day Leisnoi shareholders on Woody Island. For example, the October, 1903 orphanage newsletter states "We have just added Willie, Agnes, and Flora Robertson to the orphanage family. These individuals are depicted in the Robertson Family Genealogy, L-Chart 8, and are the ancestors of William C. Robertson and William Bruce Robertson, both of whom testified at the hearings in Anchorage. Likewise, the December, 1906 orphanage newsletter states that Ella Fallamootoff (later known as Ella Chabitnoy), Nikolai Fadaoff, and Willie Robertson had participated in a school drama play. The newsletters contain descriptions of life on Woody Island, the history of Woody Island, structures on Woody Island, church services performed on Woody Island, persons who were born and died on Woody Island, and a great deal of detail that was used in preparing the history of Woody Island set forth in Frank Feichtinger's Investigative Case Report, L-Doc 108. The Court finds that the orphanage newsletters are excellent firsthand primary source material pertinent to the history of Woody Island and the Native inhabitants thereof.

431.  L-Doc 277 is an April 14, 1977 letter from William Nome to Frank Feichtinger. He notes that he had been placed in the Baptist Mission at Woody Island in the mid-1920s, and describes how he later worked for the FAA operating the *FedAir IV* between Kodiak and Woody Island. William Nome, a Leisnoi shareholder who was on the original enrollment list to the Native Village, has longstanding ties to Woody Island. Although Mr. Nome did not testify live at the proceedings in this case, and therefore was not subjected to cross examination, he did not claim to have lived on Woody Island during 1970, so the Court finds no prejudice in reviewing his unsworn statement about his connections to Woody Island. The document is relevant in that it corroborates another Leisnoi shareholder has longstanding ties to Woody Island.

432.  L-Doc 278 is an April 5, 1973 <u>Kodiak Mirror</u> article entitled "No Need to Enroll out of Kodiak Region." The article states "Kodiak vicinity Natives who wish to change their enrollments to get out of the 'Kodiak vicinity' (non-Village) status and into Village status, need not enroll back to Villages which are not in the Kodiak region, according to Karl Armstrong of Woody Island Native Association." Karl Armstrong is quoted as having stated "We hope to reach these people because we feel most of them are eligible to enroll to Woody Island - which is a village right here in our own Kodiak region and close to home." The document is relevant to show that Karl Armstrong was active in attempting to have Native Woody Islanders enroll to the Native Village of Woody Island rather than some other village outside of the Kodiak area.

433.   L-Doc 279 is the April 1, 1998 obituary of Anita Hartman.  The obituary recites that Ms. Hartman "was born September 19, 1937, to Rudy and Jennie (Pestrikoff) Sundberg.  Her early life was spent between Woody Island, Kodiak and Seward." The article notes that she was preceded in death by her brothers Herman and Lawrence Sundberg and by her two sisters, Mary Sundberg and Janet Grant.  L-Doc 279 is relevant in that it corroborates the longstanding ties of Anita Elizabeth Sundberg Hartman to Woody Island, and also contains genealogical information that was used in preparing the Sundberg Family Genealogy, L-Chart 30.

434.   L-Doc 280 is the August 20, 1997 obituary of Earl J. Komm.  The article notes that "his wife, Julia Ann [Fadaoff] died in 1980, a son, August, died in 1995, and a daugther, Justine Fadaoff, died in 1996.  L-Doc 280 is relevant in that it contains genealogical information that was used in compiling the Fadaoff Family Genealogy, L-Chart 5, and further corroborates testimony given by Mitch Komm Gregoroff, who had testified he was initially raised by Earl and Julia Komm before his natural mother, Anastasia Fadaoff, took him back into her household.

435.   L-Doc 281 is the December 29, 1965 obituary of Rosemary Challiak.  The obituary states that she was a resident of Woody Island.  L-Doc 281 corroborates testimony given at the proceedings about the death of Native Woody Islander Rosemary Challiak in 1965.

436.   L-Docs 282 and 283 were withdrawn.

437.   L-Docs 284-298 are additional orphanage newsletters from 1903 to 1907.  These documents have the same relevance as L-Docs 189-276.

438.   L-Doc 299 is a January 23, 1971 article in the <u>Island Times</u> entitled "Ours to Preserve." The article describes how the FAA's flight service station on Woody Island will be physically moved to Kodiak, and that in anticipation of the move, the FAA began moving families from Woody Island to Kodiak in 1970. The winding up of the FAA operations on Woody Island foreclosed employment opportunities to Native Woody Islanders.

439.   L-Doc 300 is the land patent signed by Franklin D. Roosevelt in 1942 conveying 562 acres of land on Woody Island to the Woman's American Baptist Home Mission Society. The document is relevant to show how the Baptist Mission acquired the majority of land on Woody Island, although the Natives had been using the land for thousands of years.

440.   L-Doc 301 is a March 3, 1964 land patent of property embraced within U. S. Survey 3630 to Ella Chabitnoy. Ella Chabitnoy and her offspring played an important role in the history of the Native Village of Woody Island, and the 1964 land patent rebuts Stratman's contention that the Native Village had been abandoned. Obtaining private landholdings on Woody Island is evidence that contradicts Stratman's contention that the Natives had no intent to reside on Woody Island.

441.   L-Doc 302 was withdrawn.

442.   L-Doc 303 is an April 12, 1918 affidavit of posting notice of school election. The document is signed by Nicholas W. Pavloff, who states under oath that he is a resident of Wood Island, Alaska, and that he posted notices of a school election for the Longwood School. The document is relevant to show the long historical ties of

the Pavloff family to Woody Island, and the involvement of the Pavloff family in the community affairs of Woody Island.

443.    L-Doc 304 is a June 8, 1903 letter from Nicholas W. Pavloff to Ms. Olga W. Campbell. In it, Mr. Pavloff responds to a request by his niece for a biography of his family. He describes William E. Pavloff's first trip to Alaska in 1839, his subsequent employment with the Russian-American Fur Company, names the offspring of William E. Pavloff, and describes the various activities in Alaska in which his family has participated. L-Doc 304 is relevant to show the Pavloff family is, indeed, one of the oldest families in Alaska with an interesting and colorful history with ties back to Woody Island dating back many generations.

444.    L-Docs 305-311 are a series of letters written by Roy Peratrovich, the Superintendent of the Anchorage Agency of the Bureau of Indian Affairs. The documents all concern efforts by Karl Armstrong to acquire the FAA facilities on Woody Island. The documents are relevant to show the hard work and concerted effort that Karl Armstrong and other Woody Island Natives made to acquire the property on Woody Island.

445.    L-Doc 312 is a February 17, 1978 Kodiak Daily Mirror article entitled "Borough Contests Allocation under Land Entitlement Act." The article notes that Leisnoi, Inc. "filed on the State lands in question..." The article is relevant to show the competing efforts by Leisnoi, Inc. and the Borough to acquire land on Woody Island.

446.    L-Doc 313 is a March 13, 1978 Kodiak Daily Mirror article entitled "Residents Plan Strategy to Stop Native Village Claim." The article recounts how the so-called

"Citizens Action Group" was organizing efforts contesting what they charged to be "illegitimate native village claims." The document is pertinent to show some of the history of the challenge to Leisnoi, Inc. that ultimately led to the hearings conducted in Kodiak and Anchorage in August of 1998.

447.    L-Doc 314 is a March 6, 1879 San Francisco publication of The Alaska Appeal that notes "The American-Russian Commercial Company, familiarly known as the Ice Company, still continues to put up a quantity of ice every winter at Wood Island, near Kadiak, employing a number of natives, and obtaining about an equal share with other firms of the fur trade of that section. A sawmill - now the only one in operation in the Territory - is also connected with the establishment, which is as complete, neat, and comfortable as good management can make it." L-Doc 314 confirms the existence of a Native community on Woody Island in 1879, and corroborates testimony about the history of Woody Island in shipping ice to San Francisco. The document also shows that Woody Island has another "first"; it was home to the first sawmill in the Territory of Alaska.

448.    L-Doc 315, "Ivan Petroff's Journal of a Trip to Alaska in 1878" describes a Russian-American who worked for the Russian-American Company in the mid-1860s, and later published a San Francisco newspaper entitled The Alaska Appeal that had news about Alaska. The document contains background information about the history of Alaska in the 1800s.

449.    L-Doc 316 is the January 15, 1880 edition of The Alaska Appeal. The article notes that on Woody Island, "Trees of large dimensions are common." The article further

comments on the fact that "the fur bearing animals are gradually diminishing in numbers, and that, owing to the reckless violation of the laws made for the protection of this, one of the most valuable productions of the Territory, the time is not far distant which will see them utterly extinct, and it invites our serious attention to devise means to prevent this result." The hunting of sea otters from Woody Island, and the use of timber in constructing vessels, are examples of Woody Island playing out the history of Alaska in a microcosm.

450.    L-Doc 317, like L-Docs 314-316, is authored by Ivan Petroff, and is entitled "Report on the Population, Industries, and Resources of Alaska." He notes that "Kadiak Island was discovered by the Russian traders as early as 1762, but was abandoned, owing to the hostile disposition of the natives, who were then quite numerous, and it was not until twenty years later that a permanent foothole was gained by Shelikohof, the founder and organizer of the Russian-American Company. He notes that on Wood Island, "farming operations are extending every year." The article recounts some of the history of the Russian activities in the Kodiak and Woody Island areas, and describes "scenes of piracy and bloodshed." The document is relevant to show that there was a thriving Native population in the Woody Island area prior to contact by the Russians, and also to demonstrate the impact of the discovery of Alaska by the Russians.

451.    L-Doc 318 is a March 1, 1963 Kodiak Mirror article entitled "Pilots to Meet on FAA Move to City Airport." The article announced a meeting of all commercial and private pilots in an effort "to gain support for relocating the Federal Aviation Agency

flight service station at the city airport. The present location is on Woody Island." The document is relevant to the relocation of the FAA flight service station from Woody Island to Kodiak, an event that constitutes an act of governmental authority occurring within the 10 years predating April 1, 1970 that caused a loss of employment opportunities for Natives on Woody Island.

452.    L-Doc 319 is an article pertaining to the Woody Island net and magnetic loop station, dated March 20, 1944. The article is pertinent to the role Woody Island played during World War II.

453.    L-Doc 320 is an April 20, 1966 <u>Kodiak Mirror</u> article noting that James Fadaoff pled guilty to the manslaughter of Rosemary Challiak. The document corroborates testimony given at the hearings about the manslaughter.

454.    L-Doc 321 is a July 9, 1969 <u>Kodiak Mirror</u> article entitled "Press Women Receive Awards." The article notes that Yule Chaffin won an award for an historical piece entitled "Woody Island" which also appeared in the <u>Anchorage Daily News</u>. Yule Chaffin's historical writings about Woody Island provided background information that was incorporated into the Frank Feichtinger Investigative Report, L-Doc 108.

455.    L-Doc 322 is the transcript of a March 19, 1998 interview of Joanna Purcell Chya. Ms. Purcell is the daughter of John and Mary Chya and she informed Kathleen Putman that she had not lived on Woody Island between 1960 and 1968. L-Doc 322 is relevant in that it shows Frank Feichtinger was conservative as to whom he included on his list of Natives who had lived for a period of time on Woody Island in 1970. Although there was contrary information to the effect that Joanna Purcell

had lived for a period of time on Woody Island in 1970, the interview with Joanna Purcell by Kathleen Putman persuaded Mr. Feichtinger not to include Ms. Purcell on the list.

456.    L-Docs 323, 324, and 325 were withdrawn.

457.    L-Doc 326 is a May 2, 1997 memorandum to Frank Feichtinger from Kathleen Putman regarding the identity of victims of the 1918 Spanish flu epidemic on Woody Island. The document states the research techniques and modes of analysis utilized by Kathleen Putman in attempting to discern who had been buried in the mass grave on Woody Island after the terrible outbreak of the Spanish flu epidemic. The 26 Native Villagers who died in a two-week period from October to November of 1918 are another example of natural disasters that plagued Woody Island throughout its history.

458.    L-Doc 327 was withdrawn.

459.    L-Doc 328 is a listing of the names of children from Woody Island Village who had lived at the Mission on Woody Island at some period of time, or had gone to the Longwood School, during the period 1903 through 1922. The document is best viewed in conjunction with a study of the orphanage newsletters, L-Docs 284 through 298 and L-Doc 189 through 276.

460.    L-Doc 329 is the transcript of the March 19, 1998 interview by Kathleen Putman with Leisnoi shareholder David Redick, the son of Marie Redick-Unger. In it, Mr. Redick states that he recalls having been on Woody Island in 1970. He states that he had gone picnicking and berry picking on Woody Island and informed Ms. Putman that

his mother, but not his father had accompanied him to Woody Island. Mr. Redick informed Ms. Putman that his grandmother had been one of the children in the orphanage on Woody Island, and that her name was Polly Inga Swenson. The transcript reveals that Mr. Redick lives out-of-state, and the Court notes that he did not testify live at the hearings, so he therefore was not subjective to cross examination. Nonetheless, the document was made available to Mr. Stratman prior to the hearings, and the Protestant failed to introduce any evidence disputing David Redick's statement that he had been on Woody Island in 1970. Thus, while the Court gives the transcript less weight than it would sworn testimony, the absence of any countervailing evidence by the Protestant leads the Court to accept as true Mr. Redick's statement that he had been on Woody Island in 1970. The Court notes that the Protestant had the burden of proof at the proceedings, so if he had evidence disputing Mr. Redick's presence on Woody Island in 1970, the Protestant should have, but did not, introduce any such evidence.

461. L-Doc 330 is a March 26, 1998 interview of Leisnoi shareholder Larry Redick by Kathleen Putman. Larry Redick, the son of Marie Swenson Redick-Unger, and brother of Leisnoi shareholder David Redick, lives in Texas, and did not testify live at the hearings in Alaska. He informed Ms. Putman that during the period 1960 to 1970 he went over to Woody Island and engaged in camping, fishing, beachcombing, and "just walked around there and enjoyed the land." He stated he was accompanied by his mother, father, and brothers. As was the situation with David Redick, Larry Redick was not subjected to cross examination, so his assertion that he was on Woody

289

Island in 1970 was not subjected to cross examination. Nonetheless, since countervailing evidence was not introduced by the Protestant, the Court finds no reason to reject the statement by Larry Redick that he had been on Woody Island in 1970.

462.    L-Doc 331 are the minutes of a March 23, 1973 meeting of Woody Island Village attended by Karl Amstrong, Tina Hoen, Martha Shuravloff, Mary Chya, Joanna Purcell, Marie Redick, and others. The minutes state "It was stressed to contact people for Woody Island, who have ties and can be enrolled there. ...The certification of Woody Island as a corporation was stressed along with the possibility of getting families to live there." The document is pertinent to show the involvement of Karl Armstrong, Tina Hoen, Martha Shuravloff, Mary Chya, and Marie Redick in the affairs of the Native Village, as well as the continuing desire of the Native Woody Islanders to get more Native families to live on Woody Island.

463.    L-Doc 332 is the March 21, 1998 transcript of an interview of Leisnoi shareholder William Redick by Kathleen Putman. Mr. Redick states that he was on Woody Island in 1970, that he spent the night there, that he would have been 18 years old in 1970, that he had been rabbit hunting and duck hunting on Woody Island, and that he views Woody Island as a part of his ancestry, his history. The Court has the same concerns with respect to L-Doc 322 as it did with respect to the interviews of David Redick and Larry Redick, L-Docs 329 and 330, namely, that these individuals were not subjected to cross examination. Nonetheless, since the Protestant did not offer any evidence

290

whatsoever negating the presence of the Redicks on Woody Island in 1970, the Court finds no basis to disregard the recorded interview.

464.   L-Doc 333 was withdrawn.

465.   L-Doc 334 are the documents pertaining to the Robertson homestead application for land on Woody Island.  These documents show that John R. Robertson had applied for a homestead on Woody Island, but that he had disappeared shortly prior to signing the final papers that would have perfected the homestead application, so the homestead was never patented to the Robertson family.  The document was discussed both by William C. Robertson and his son Bruce Robertson at the hearings in Anchorage. The documents corroborate the testimony by Bruce Robertson and William C. Robertson that they have longstanding family ties to the Native Village of Woody Island.

466.   L-Docs 335 and 336 were withdrawn.

467.   L-Doc 337 is the transcript of a September 25, 1996 interview by Kathleen Putman of Billy and Merle Rousculp.  These individuals lived on Woody Island from 1957 to 1962.  Merle Rousculp worked for the FAA as an air traffic specialist.  He recalls the Fadaoff family on Woody Island, describes Ella Chabitnoy as being "a dear person", verifies that Phyllis Carlson worked for the FAA on Woody Island, and describes how when the Island sunk in the earthquake, saltwater had gotten into the freshwater lake "where we had gotten our water supply for quite a few years."  He describes a number of the FAA employees and mentioned they all worked together well on Woody Island.  He knew the Pavloffs, the Fadaoffs, the Gregoroffs, and a number

291

of other Natives that had been on Woody Island, thereby corroborating testimony presented at the hearings about the Native families that had lived on Woody Island.

468. L-Doc 338 is a January 31, 1996 <u>Kodiak Daily Mirror</u> newspaper article entitled "Totem Fascination Takes Researcher Down Many Paths." The article describes that a researcher fascinated with totem poles was "led to interesting discoveries about turn-of-the-century natives on Woody Island." The document notes how Native Woody Islanders went to the 1904 World's Fair in St. Louis, Missouri, and brought with them a totem pole from Southeast Alaska. The document corroborates testimony by Frank Feichtinger about Native Woody Islanders having participated in the 1904 World's Fair in Missouri.

469. L-Doc 339 is the 1909 Certificate of Marriage of Nickolai Fadaoff and Fekla Balamutoff, who later become known as Ella Chabitnoy. The document notes that their residency is on Woody Island. L-Doc 339 is relevant to show the longstanding ties of the Fadaoff clan to Woody Island. Additionally, the genealogical information was incorporated into L-Chart 5.

470. L-Doc 340 is the transcript of a March 23, 1998 interview by Kathleen Putman with Neil Sargent. Mr. Sargent describes how his earliest recollection of Woody Island was when he was five years old in 1925 and his mother took him to the Russian Orthodox church on Woody Island. He learned from his mother about the terrible consequences of the 1918 Spanish flu epidemic. He confirms that the dock on Woody Island was wiped out in 1964 by the tidal wave. He corroborates that in the 1960s Wilfred Pavloff, Nick Pavloff, Edson Fadaoff, Kelly Simeonoff, Natalie Fadaoff

292

Simeonoff, Ella Chabitnoy, Mike Chabitnoy, Jenny Pestrikoff, Rudy Sundberg, Sr., Angeline Pananarioff Maliknak, Giorgi Nekeferoff, and a number of Sundberg children lived on Woody Island. Although Mr. Sargent did not testify live at the hearings, interview with Kathleen Putman was merely corroborating evidence rather than a statement as to the presence of a particular Native on the Island in 1970, so the Court sees no prejudice from reviewing this evidence. The Court notes that the Protestant did not introduce any evidence disputing the unsworn statements of Neil Sargent, although the Protestant had the burden of proof at the hearing.

471. L-Doc 341 is a February 27, 1998 letter to the editor by counsel for the Protestant, Michael J. Schneider. In it, he contends that "The Secretary of Interior certified a ghost town as a 'village'..." The Court finds that after having heard the testimony and reviewed the evidence, the Native Village of Woody Island was not a ghost town, but was fully entitled to the benefits under the Alaska Native Claims Settlement Act. In the letter to the editor, Mr. Schneider asks for witnesses who may have personal knowledge about who lived on Woody Island during the period 1960 to 1970. Since counsel for the Protestant made a publicized effort to obtain witnesses with knowledge as to who lived on Woody Island during that period of time, the failure of the Protestant to produce witnesses who could dispute the presence of particular Natives on Woody Island in 1970 indicates that the Protestant was unable to gather such evidence notwithstanding well-publicized efforts. Accordingly, the Court finds that Protestant's failure to carry his burden of proof was due to the facts establishing that there was a proper village entitled to benefits under the Alaska Native Claims

293

Settlement Act, rather than this being the situation of an underfunded Protestant who lacked the ability to gather evidence.

472.    L-Doc 342 is a February 7, 1998 <u>Anchorage Daily News</u> article entitled "Alaska Graves May Yield Clues to 1918's Deadly Flu." The article notes that the scientists have begun mapping the strange virus' genetic blueprint. The 1918 Spanish flu epidemic decimated the population of Woody Island, and was another example of natural disaster that plagued the Woody Islanders.

473.    L-Doc 343 is an 1868 publication of <u>Lippincott's Magazine</u>, with an article entitled "Scientific Expedition to Alaska." The article notes that "On Wood Island, opposite St. Paul, is the dammed-up lake which supplies the Pacific coast with its ice..." The publication corroborates the importance of Woody Island in supplying ice to the Lower 48.

474.    L-Doc 344 is the transcript of a June 24, 1997 interview of Marty Shuravloff by Frank Feichtinger. Mr. Shuravloff testified live at the hearings in Kodiak, so counsel for Protestant was given an opportunity to cross examine him about the transcript. Accordingly, the Court finds no prejudice in making use of the interview transcript in addition to the live testimony Mr. Shuravloff presented at the hearings. In the interview, Mr. Shuravloff stated that he was the son of Nicholas Shuravloff, Sr. and Martha Pestrikoff Shuravloff, and informed Mr. Feichtinger that his mother had been brought up in the Mission. He further advised Mr. Feichtinger that his mother at one time had a home on Woody Island. (L-Doc 344 at p. 8.) Mr. Shuravloff, in the interview, gave a full description of the type of work he was performing in

294

refurbishing the FAA housing units on Woody Island in the 1970s. He also described the problem of no hidden shelter for a safe anchorage on Woody Island. (L-Doc 344 at p. 7.)  The interview of Mr. Shuravloff confirms this Leisnoi shareholder's longstanding ties to Woody Island and also evidences the magnitude of the effort put into the refurbishing project by Leisnoi when trying to repopulate Woody Island Village.

475.   L-Doc 345 is a Discovery Channel on-line article about the history of the Koniag culture around the Kodiak area. It describes how "During the late prehistoric period, A.D. 1400-1700, the Koniag (Eskimo) culture held sway over Kodiak Island. Native populations were at their peak...In 1784, the Native people of Old Harbor were attacked by the Russian Army. The soldiers killed and imprisoned hundreds, breaking the back of Kodiak Native resistance to Russian domination. During the following decades, the Alutiiq population of Kodiak dropped from 10,000 to 1,500 as executions, enslavement, disease, and starvation took their toll." The document is relevant to the anthropologic history of the area in which Woody Island is situated.

476.   L-Docs 346 and 347 are an April 28, 1995 affidavit of Kelly Simeonoff, Jr., and a March 21, 1996 interview of Kelly Simeonoff, Jr. by Frank Feichtinger. Since Mr. Simeonoff testified live at the hearings in Kodiak, the Protestant had a full and fair opportunity to cross examine him about the affidavit and interview transcript, so the Court finds no prejudice in reviewing these documents in addition to his live testimony. In his affidavit, Mr. Simeonoff identifies his parents and six brothers and sisters. He describes the subsistence lifestyle his family led on Woody Island; he

describes visits to Ella Chabitnoy's home; identifies the Edson Fadaoff house, Simeonoff house, Fadaoff/Chabitnoy house, Nettie Harmon house, and the two Pavloff houses, and also indicates that the Peter Tunahun and Nicholas Maliknak houses were not depicted in the photographs he was shown; identifies a number of Natives who resided at various times in one or more of the family homes on Woody Island, including Angeline Maliknak; Ella Chabitnoy; Nettie Harmon and her children; Agnes Frump; Mary Pavloff; Natalie Ponchene; Johnny Maliknak; Michael Tunahun; Nickolai Maliknak; various members of the Sundberg family; his uncle, Buddy Fadaoff; and Angeline Maliknak.  Mr. Simeonoff describes in his affidavit how the cessation of ferry service had a major impact on Woody Island residents and other Woody Islanders who desired to return because "Without reliable transportation it was impossible for persons to live on Woody Island and work on Kodiak."  He confirms that he considers "my home to be Woody Island Village.  It is where my roots are and it is where I grew it and it is where a significant part of my family life and cultural ties come from."  In the interview with Frank Feichtinger, L-Doc 347, Mr. Simeonoff provides even more detail about life on Woody Island.  Taken as a whole, the live testimony of Kelly Simeonoff, Jr., his affidavit, and transcript of his interview by Frank Feichtinger reveal that Woody Island was no "ghost village" or "phantom village" as Omar Stratman has alleged.  Rather, Leisnoi, Inc. is the modern representative of an ancient people who have occupied and used Woody Island for centuries.

477.    L-Doc 348 was withdrawn.

478.   L-Doc 349 was withdrawn.

479.   L-Doc 350 is the transcript of a June 5, 1991 interview of Natalie Fadaoff Simeonoff
       and Kelly Simeonoff, Sr.  Since both of these individuals have died subsequent to the
       interview, it was impossible for Leisnoi, Inc. to present their live testimony at the
       hearings, and they were never subjected to cross examination.  Nonetheless, the Court
       finds that the interview transcript contains information pertinent to this suit that the
       Court can consider while cognizant that the testimony was neither sworn nor subjected
       to cross examination.  Natalie Fadaoff Simeonoff described how her mother and father
       had been married at the Mission on Woody Island and then lived in a home near
       Lower Lake.  She provides genealogoical information that was used in preparation of
       the Fadaoff Family Genealogy, L-Chart 5.  She describes some of the teasing by
       people at the Mission of the Native children who practiced the Russian orthodox
       religion.  Her husband Kelly, on the other hand, had more of a Russian influence
       when he was being raised by his parents.  L-Doc 350 is relevant to show background
       information on Woody Island, and the influence of the Baptist missionaries.   The
       document also contained information that was used in preparing the Fadaoff Family
       Genealogy, L-Chart 5.  Finally, the interview corroborates testimony given by their
       son, Kelly Simeonoff, Jr.

480.   L-Doc 351 is a November 28, 1991 interview of Natalie Simeonoff by Paula Brogdon.
       As noted with respect to L-Doc 350, Natalie Simeonoff died in 1992, so she was not
       available to testify at the hearings in this case, and therefore was not subjected to
       cross examination.  Nonetheless, the Court finds no basis completely to disregard the

297

information contained in the 1991 interview. In the interview, she describes how both of her parents were raised in the Mission on Woody Island; that they lived a subsistence fashion; that when she was born shortly after the Mount Katmai eruption, the ash had clogged up salmon streams and killed off the salmon; that they planted gardens on the Island in sunny locations; that a curfew was imposed after four o'clock p.m. during World War II; that Native families give children to one another ("Native families give children to one another. If somebody doesn't have children, or doesn't - can't have children...They say when I have my next one I'll let you have it. And they treasure these children."); that the Natives were family oriented; describes the impact of the king crab boom; and describes the Great Earthquake of 1964. L-Doc 351 provides background information corroborating that the Simeonoff family has longstanding historical ties to Woody Island.

481.    L-Doc 352 is an untitled article written by Natalie Simeonoff describing life on Woody Island. She describes the "bath of volcanic ash" that resulted from the Katmai eruption. Attached to the article is the birth certificate of Natalie "Fadeiff", daughter of Nickolai J. Fadeiff and Fekla Balamutoff, whose residence was Wood Island.

482.    L-Doc 353 is the April 9, 1995 affidavit of Arlene Simpler. Ms. Simpler testified live at the hearings in Kodiak. She is the granddaughter of Phyllis Carlson. In her affidavit, she references a number of Natives whom she knew were living on Woody Island in the early 1960s. At the hearings, she testified that the listing was not meant to be exhaustive, but was merely names of individuals whom she was certain had been on Woody Island in the early 1960s.

298

483.  L-Doc 354 is a 1905 publication of <u>Alaska's Magazine</u> containing an article entitled "Alaska at St. Louis."  The document describes the Alaska exhibit at the 1904 World's Fair in St. Louis, Missouri and notes that "Alaska was a decided success at the Louisiana Purchase Exposition."  The document corroborates testimony by Frank Feichtinger on this subject.

484.  L-Doc 355 is a January 28, 1977 <u>Kodiak Daily Mirror</u> article entitled "Native Appeal Answered."  The document shows Karl Armstrong's involvement in defense of a challenge brought to the certification of Shuyak Village.

485.  L-Doc 356 is a January, 1956 publication of the <u>Alaska Sportsman</u> containing an article entitled "Alaska's Wackiest Enterprise."  In the early 1850s, when the artificial ice machine was invented, few people would buy them, as long as they were assured a supply of Alaska ice at a cheaper price.  The representatives of the ice machine manufacturers therefore approached the Russian-American Company on Woody Island with a proposition that they would pay the company a set sum each year not to ship the ice.  The Russian-American Company maintained its plant intact and cut ice each winter just in case the California artifical ice machine company failed to make payment on time.  The article also notes that the very first road in Alaska was built on Woody Island for the purpose of exercising the company's stable of horses all the way around the Island.  The article is relevant to show the colorful and unqiue role Woody Island has played in the history of Alaska.

486.  L-Docs 357, 358, and 359 are the docket, indictment, and judgment and commitment all pertaining to James O. Fadaoff and the manslaughter he committed upon Rosemary

Challiak. The document corroborates this incident that was the subject of testimony at the hearings and which constituted another tragedy that affected the Native Woody Islanders.

487.   L-Doc 360 is an August 5, 1996 publication by Amy Stefan, the curator of the Alutiiq Museum in Kodiak entitled "Archaeological Observations of an Historic Coffin Burial on Woody Island, Alaska." Amy Stefan investigated the discovery of human remains in a sand dune on Woody Island. Her paper describes how "Woody Island has been occupied for thousands of years. The Alaska Heritage Resource Survey (AHRS); Alaska Office of History and Archaeology 1989, an inventory of archaeological sites, lists six known sites on the island. A seventh site was recently identified by Alutiiq Museum director Rick Knecht...These sites range in age from about 3000 to 100 years old and represent at least four distinct cultural traditions." She identifies the cultural traditions as being the Katchamek period (1800 B.C. to A.D. 1400); the Koniag period (A.D. 1400 to A.D. 1763); the Russian period (A.D. 1763 to A.D. 1867); and the American period (1867 to the present). She notes that the "Alutiiq occupation of Woody Island continued through both the Russian and American periods." Ms. Stefan describes how Davydov, a Russian naval officer who sailed into St. Paul Harbor in 1802, "reported that his vessel was met by men in bidarka's from a Woody Island Village and he provides a detailed description of a traditional ceremony that he attended at the Alutiiq chief's house on Woody Island." Further describing the anthropological history of Woody Island, Amy Stefan observed that "During the early contact period, the Russians maintained both an agricultural station and artel on

300