# EXHIBIT "4"

Woody Island." She also describes how in the mid-1800s, an ice processing station was built on Woody Island and Alutiiq people were transported to the Island to work in the ice industry. She notes that during the Nineteenth Century, the population of Woody Island was larger than the population of Kodiak. Amy Stefan describes how following the American purchase of Alaska in 1867, missionaries began to settle in Alaska and they founded an orphanage on Woody Island. With respect to the skeletal remains that Ms. Stefan investigated on Woody Island, she concluded that "The feature observed south of Ice House Point on Woody Island appears to be an historic era coffin burial. This is suggested by the use of a wooden plank coffin for burial as well as the use of square nails to manufacture the box...This find has been reported to the State Historic Preservation Office and assigned Alaska Site No. KOD-603." Amy Stefan's article corroborates historical information about Woody Island presented both by Frank Feichtinger in his investigative report, as well as by Chris Wooley in his archaeological report.

488.   L-Doc 361 is an October 9, 1986 Kadiak Times article entitled "Woody Island Ice Company." It describes how the extra $200,000 in the price for the purchase of Alaska "was to cover the outstanding contract the Russian-America Company had with the American-Russian Commercial Company of San Francisco to deliver ice." The article contains an 1888 photograph of the Native Village of Woody Island. The article noted that "Horses on Woody Island are the first reported in Alaska. It was their job to pull the giant saws that cut the ice into blocks and to pull the ice into the storage shed. Nicholas W. Pavloff was a longtime resident of Woody Island. He

served for many years as the clerk of the Russian-American Company..." The article also notes that Woody Island had "the first road built in Alaska." The article corroborates information contained in Frank Feichtinger's investigative report and shows that the Native Village of Woody Island has played an important role in the history of Alaska.

489.    L-Docs 362 and 363 are letters by United States Senator Ted Stevens to Karl Armtrong written in 1973 responding to Karl Armstrong's request for use of the former FAA housing units on Woody Island. These letters have the same relevance as do other exhibits on this same subject, such as L-Docs 30 through 35.

490.    L-Doc 364 are drawings of places of graves in the Woody Island baptist cemetery by Zelma Stone, who testified live at the hearings in Anchorage. While Ms. Stone showed an interest in the location of Baptist gravesites, she was ignorant about the location of Native Russian orthodox gravesites on Woody Island, so L-Doc 364 evidences or reflects to some degree a cultural or religious bias on the part of Zelma Stone.

491.    L-Doc 365 is the transcript of a June 20, 1997 interview of Leisnoi shareholder Betty Jean Chya Stowers. She informed Mr. Feichtinger that she is the daughter of John and Mary Chya, and that her father had been born and raised on Woody Island. She supplied Mr. Feichingter with genealogical information about the Chya family that was incorporated into L-Chart 4. Since the interview provided only essentially genealogical information, and Ms. Stowers did not claim to have been on Woody Island in 1970, the Court finds no prejudice in making use of the unsworn interview.

The Court notes that counsel for Protestant did not challenge any of the genealogical information contained in L-Chart 4.

492.     L-Chart 366 is the February 11, 1963 Anchorage Daily News article entitled "Survivor Tells of Sea Tragedy at Kodiak Shore." It describes how Agnes Frump was washed overboard from the vessel *Baracuda* and died. The document corroborates testimony by Dr. Nancy Yaw Davis about this tragedy that orphaned Leisnoi shareholder Harold King, who testified at the hearings in Anchorage, as well as his siblings.

493.     L-Doc 367 is a March 21, 1997 publication in the on-line magazine <u>Science</u> entitled "Initial Genetic Characterization of the 1918 Spanish Influenza Virus." The article notes that the influenza pandemic of 1918 "swept not only North America and Europe but spread as far as the Alaskan wilderness..." The article explains how "RNA from a victim of the 1918 pandemic was isolated from a formalin-fixed paraffin-embedded, lung tissue sample." From this sample, the scientists who wrote the article were able to "confirm that the 1918 strain was an H1N1 virus, distinct from all subsequently characterized strains."

494.     L-Doc 368 is an agenda for the March 29, 1978 Leisnoi, Inc. Board of Directors meeting. The Woody Island housing project was on the agenda for that meeting. The document is additional evidence showing Leisnoi, Inc.'s ongoing concern about repopulating Woody Island.

495.     L-Docs 369 and 370 are two newspaper articles both describing the Kodiak Baptist Orphanage, but written almost a century apart. L-Doc 370, the 1896 article about the

303

Kodiak Baptist Orphanage describes how the Baptist church built on Woody Island was "the first baptist church in Alaska", corroborating another "first" for Woody Island in the history of Alaska. It notes that "The greater portion of the Wood Island families have gone to the mainland for winter hunting", thereby evidencing the transient Native lifestyle and frequent moves between Kodiak and Woody Island that have continued to the present day. The later newspaper article, published in December of 1970 in the Kodiak Daily Mirror, describes the Kodiak Baptist Mission as having been "first established on historical Woody Island in 1893." The Court agrees with this characterization of Woody Island and finds that the Native Village of Woody Island is an historic Village. The article notes that the Mission on Woody Island was burned in 1937 and then moved to Kodiak.

496.    L-Docs 371 through 378 are the Woody Islander Newsletters published by Leisnoi, Inc. The documents contain information about Omar Stratman having broken his public promise to remove his *lis pendens* on Termination Point. It describes how Stratman was remanded to the Interior Board of Land Appeals without having obtained any orders stripping Leisnoi of title to its land as Stratman had sought; and contains a number of articles about the history of Woody Island Village.

497.    L-Doc 379 is the transcript of a June 28, 1991 interview of Mike Tunahun by Debra Robinson. Mr. Tunahun grew up on Woody Island before serving in the military in World War II. He confirmed the presence of the Pavloff and Maliknak families on Woody Island and described drawing fish and picking berries during the summer months on Woody Island. He described how his brother Pete Tunahun lived his

whole life on Woody Island. He describes how he used to hunt for seals off of Woody Island. He was familiar with the Simeonoff and Chabitnoy families from Woody Island. L-Doc 379 is relevant in that it shows another Native family with historic ties to Woody Island.

498.    L-Doc 380 is an October 7, 1899 article published in <u>The Alaskan</u> entitled "Two Members of the Baptist Mission Drowned." The article described a drowning accident that occurred "a short distance off the Wood Island beach." Events on Woody Island were in the news even in the 1800s.

499.    L-Doc 381 is the index to the Virgil Partch collection of cartoon art, and also contains the biography of this famous American cartoonist born on Woody Island, as well as several photographs of the cartoonist whose cartoons were featured in such magazines as The Saturday Evening Post, The New Yorker, Esquire, True, Good Housekeeping, Cosmopolitan, Playboy, and a syndicated comic feature entitled "Big George". Native Woody Islanders have led distinguished careers and made contributions to society, such as cartoonist Virgil Partch; Alaska State Senator Fred Zharoff; anthropologist Gordon Pullar; Superior Court Judge Roy Madsen; as well as numerous shareholders who served their country with honor such as Mike Chabitnoy in World War I; Edson Fadaoff in World War II; Frank Pagano in the Korean War; and Danny Harmon and Freddie Simeonoff, Jr. in Vietnam.

500.    L-Doc 382 was withdrawn.

501.    L-Docs 383 and 384 are the official Native rolls for the Village of Woody Island taken in December of 1971 and April of 1974, respectively. These documents reveal

that 285 Alaskan Natives were properly enrolled to the Native Village of Woody Island. The Court finds that the Protestant failed to carry his burden of proof in overcoming the presumption that these enrollees were permanent residents of the Native Village of Woody Island. Accordingly, the Court concludes that the Native Village of Woody Island was properly certified as being eligible for benefits under the Alaska Native Claims Settlement Act, and further finds that there were more than 13 Alaska Natives who actually lived on the Island for a period of time in 1970.

502. L-Doc 385 is the 1981 United States Bureau of Indian Affairs Alaska Native Enrollment Family List for Woody Island. The document has the same relevancy as do documents 383 and 384, although since it was compiled in 1981 it is of less relevance to these proceedings than the 1971 Native roll contained in L-Doc 383.

503. L-Docs 386 through contain primary source census data utilized by Frank Feichtinger in his investigative case report describing the population of Woody Island. The documents also contain the names of individual Natives, the size of their family, and the language spoken. For example, in the 1910 census, Paul Chya, Sr. and his wife Mary Brown, together with their children John, George, and Paul, Jr. are recorded in the census as having lived on Woody Island. Likewise, Nickolai and Anna Pavloff, and their children Peter, Mary, Alexandria, and Annie are listed in the 1910 census of Woody Island. L-Docs 386 through 392 corroborate the longstanding historical ties of Native Woody Islanders to the Island, and establish that Leisnoi shareholders in these Native clans have had ancestors on Woody Island for many generations.

504. L-Doc 393 was withdrawn.

505.   L-Doc 394 is the March 19, 1973 application for enrollment of Mitch Komm. It reflects that his mother is Anastasia Fadaoff. Mitch Komm testified live at the hearings in Anchorage, and this information merely corroborates his testimony and was used in preparation of the Fadaoff Family Genealogy, L-Chart 5.

506.   L-Doc 395 is a Bureau of Indian Affairs Family Tree Chart for Simeon "Buddy" Fadaoff. It confirms that his father was Nicholas Fadeef and that his mother was Fekla Kornilov. L-Doc 395 contains genealogical information that was incorporated into the Fadaof Family Genealogy, L-Chart 5.

507.   L-Doc 396 is the Bureau of Indian Affairs Family Tree Chart for Karl Armstrong. It reflects that his parents were Karl Armstrong, Sr. and Afanasia Rysev. It identifies Karl Armstrong's grandfather as having been Vassili Rysev and his grandmother was Sophia Pestrikoff. Information contained in L-Doc 396 was incorporated into the Armstrong/Pullar Family Genealogy, L-Chart 7.

508.   L-Docs 397 through 400 are the U. S. Department of the Interior, Office of Indian Affairs School Census Data of Indian children at the Longwood School on Woody Island during the years 1941 through 1944. A number of the by now familiar Alaska Native families on Woody Island are shown to have had children attending the school during that time period, including members of the Fadaoff family, Pavloff family, Sundberg family, Tunahun family, Simeonoff family, Maliknak family, Chabitnoy family, and the Lowell family. These documents are important primary source information that confirm the historical ties and use occupancy of Woody Island by a

307

number of Alaska Native families whose descendants and members are now Leisnoi shareholders.

509.    L-Doc 401 is a 1919 letter to the Secretary of the Treasurer regarding an estimate of appropriation for relief of influenza sufferers of Alaska.   It notes that as of January 31, 1919, the epidemic had resulted in the death of more than 1,600 Natives, and that as a result, numerous orphans must be cared for and fed.  Additional funding for medical treatment, burial costs, transportation, and payment of doctors and nurses was requested.  The document confirms the devastating impact the 1918 Spanish flu epidemic had in Alaska, an epidemic that did not spare Woody Island.

510.    L-Docs 402-406 are letters from the Reference Department of the United States Library of Congress in 1972 and 1973 pertaining to the genealogy of Leisnoi shareholder Dorothy Bactad.  Information contained in these documents was used to compile the genealogical data contained in L-Chart 33.

511.    L-Doc 407 is a February 13, 1920 communication from the Secretary of the Interior seeking reimbursement for expenditures in Alaska occasioned as a result of the influenza epidemic.  The document has the same relevancy as does the 1919 letter on the same subject contained in L-Doc 401.

512.    L-Doc 408 is the Final Decision Concerning the Eligibility of Woody Island as a Native Village for Purposes of the Alaska Native Claims Settlement Act.  In it, the Department of the Interior found that "As of January 21, 1974, 279 Natives had been approved for enrollment in the Native Village of Woody Island.  On July 18, 1973, a field investigation was completed of Woody Island and at that time 18 Natives who

used the Village for a period of time in 1970 were subsequently approved for enrollment on December 17, 1973. The 279 Natives who have been approved for enrollment to Woody Island, represent a majority of the residents of the Village in 1970. It had on April 1, 1970, an identifiable physical location evidenced by occupancy consistent with the Natives' own cultural patterns and lifestyle and more than thirteen Natives enrolled thereto have used the Village as a place where they actually lived for a period of time as required by Subpart 2651.2(b) of Title 43 of CFR." The document concludes that "The Native Village of Woody Island is eligible for land benefits under said Act." After having reviewed the evidence in this case, and heard the testimony, the Court finds that this earlier administrative determination that Woody Island was eligible as a Native Village for purposes of the Alaska Native Claims Settlement Act was correct and this Court hereby reaffirms it.

513. L-Doc 409 is the text of a February 17, 1868 report by Secretary of State William H. Seward, and the text of a speech of the Honorable Charles Sumner of Massachussettes on the Cession of Russian American to the United States. The document notes that "The sum of seven millions was originally agreed upon; but when it was understood that there was a fur company and also an ice company enjoying monopolies under the existing government, it was thought best that these should be extinguished in consideration of which our government added two hundred thousand dollars to the purchase-money..." L-Doc 409 thereby confirms that the extra $200,000.00 added to the purchase price of Alaska was due to the contract to operate the ice and fur trade that was based in Woody Island.

514.   L-Doc 410 is the December 21, 1904 report of the Coroner's inquest over the bodies of Paul Pavloff and Suzie Bower, deceased. The document notes that the bodies were taken out of a lake on Woody Island and notes that their deaths may have been caused by criminal means. A coroner's jury was then impaneled, studied evidence, and ultimately concluded that the drownings were an accident. Information concerning the date and location of the death of Paul Pavloff was incorporated into the Pavloff Family Genealogy, L-Chart 6.

515.   L-Docs 411, 412, and 413, are records from the United States Commissioner's Court for the District of Alaska, Third Division at Kodiak, pertaining to minor offenses that were committed on Woody Island during the early 1930s. The documents provide background information about Woody Island, and also corroborate that John and Peter Tunahun were residents of Woody Island in the 1930s.

516.   L-Doc 414 is the 1939-1940 Annual School Census Report for the Longwood School on Woody Island. The document has the same relevance as do L-Docs 397 through 400.

517.   L-Doc 415 is the December 24, 1937 Certificate of Holy Matrimony of Kelly and Natalie Simeonoff. These two Native Woody Island villagers later gave birth to Kelly Simeonoff, Jr. and Christina Simeonoff Hoen, both of whom testified live at the hearings in Kodiak. The Simeonoff family has longstanding ties to Woody Island.

518.   L-Doc 416 is the October 31, 1910 Certificate of Holy Matrimony of the parents of Kelly Simeonoff, Sr. The document is background information on the Simeonoff clan.

310

519.    L-Doc 417 is the Village Checklist prepared by the Department of the Interior, Bureau
of Indian Affairs in July of 1973.  The document, signed by Gail Fitzpatrick,
concludes that Woody Island did on April 1, 1970 have more than 25 enrolled Native
residents; that more than 13 persons enrolled to Woody Island Village actually lived
there for a period of time in 1970; that Woody Island Village always had an
identifiable location; and that Woody Island Village is not modern and urban in
character.  After studying documentary evidence and having listened to the testimony
presented at the hearings in Anchorage, this Court finds that the conclusions made by
Gail Fitzpatrick in 1973 were correct.  The document has attached to it a number of
affidavits.  The affidavit of Wilton T. White reflects that the school on Woody Island
was closed by the Kodiak Island Borough in 1969 after the FAA announced it was
moving its FAA facility personnel from Woody Island to Kodiak and closing the FAA
housing project complex and reducing the frequency of the FAA furnished ferryboat
operations between Woody Island and Kodiak.  Wilton White, the chairman of the
Kodiak Island Borough, stated under oath that "These acts of government authority,
the closure of the school, transfer of FAA personnel, closure of the FAA housing
complex and substantial reduction in ferryboat service, made it virtually impossible
for people with school aged children to remain domiciled at Woody Island."  A
second affidavit by Wilton T. White described the transient lifestyle of Native Woody
Island villagers.  A number of affidavits of Native Woody Island villagers were also
attached.  These appear to have been form affidavits rather than individually crafted
affidavits.  These affidavits reflect that the affiants hunted deer, elk, rabbits, and

311

ducks; however, the affidavits do not state that the deer and elk hunting occurred on Woody Island, so the line of questioning by counsel for Protestant of a number of witnesses establishing that the elk population was on Afognak Island rather than Woody Island does not undercut the veracity of the affiants. The affidavits refer to the affiants' "residence" on Woody Island. That term of art, as defined by the Secretary of the Interior, encompasses more than just a physical use and occupation of the Island, and extends to include persons who had the intent to return to Woody Island although they were not physically present in 1970. Thus, use of the term "residence" in the affidavits does not undercut the veracity of the affiants. Reference to banyas and gardens on Woody Island was corroborated by archaeological evidence described by Chris Wooley in his report entitled "A Walk In Time." The Court finds that the affidavits do not constitute any evidence of fraud on the part of the enrollees.

520.    L-Doc 418 is a letter from the Area Director of the Bureau of Indian Affairs to Karl Armstrong recommending immediate action be taken to acquire a use permit from the FAA for their Woody Island facilities. The document has the same relevance as do other correspondence to and from Karl Armstrong on the subject of use of the former FAA housing complex on Woody Island.

521.    L-Doc 419 is an April 9, 1995 affidavit of John Michael Waller. Mr. Waller, a Leisnoi shareholder and former president of the company, testified live at the hearings in Kodiak, so Protestant had a full and fair opportunity to cross examine him about the contents of the affidavit. Accordingly, the Court finds no prejudice in considering the affidavit in addition to the live testimony presented at the hearings. The affidavit

recites that Mr. Waller's biological parents are Margie Fadaoff Williams and Eugene Litz.  Mr. Litz was an employee of the FAA who worked on Woody Island. Mr. Waller states in his affidavit that "I consider my roots to be on Woody Island and would consider residing there at some point in the future, economics permitting."  He also describes the reconstruction and renovation efforts underway at the FAA complex on Woody Island while he was a director of Leisnoi, Inc.

522.    L-Doc 420 are records of the Longwood Territorial School compiled from the Alaska State Archives in Juneau.  These cover the period of time from 1919 through 1962. The documents establish the presence of a number of the Alaska Native Woody Island families on Woody Island during this period of time.  Although there was a decline in the population of Native school age children on Woody Island in the 1960s, the Court finds that the Native Village of Woody Island was still in existence as of April 1, 1970.

523.    L-Doc 421 are additional Longwood School records covering the period 1934 through 1942.  These records include Bureau of Indian Affairs Alaska Medical Service family folders that identify for example, Rudolph and Jenny Sundberg as owning a log framed wood house on Woody Island; Nicholas Pavloff as having a six-room framed house on Woody Island; Steven and Angeline Maliknak owning a log framed wood house on Woody Island; Nick Fadaoff as owning a log framed wood house on Woody Island; and also lists the various children from these families that attended school on Woody Island.  These primary source documents confirm the presence on Woody Island of a number of the Native families discussed at the hearings in this case.  The

313

documents further establish the existence of Native dwellings on Woody Island, thereby corroborating evidence contained in the Chris Wooley archaeology report.

524.    L-Doc 422 is an April 6, 1979 letter to Senator Henry M. Jackson from Edward Weinberg, Esq. responding to the "blunderbus and broad brush allegations of fraud of the so-called Citizens Action Group" and stating that "no objections were presented in the administrative process established by the Secretary of the Interior for determination of village eligibility by people who make up the Citizens Action Group." The document describes how the Protestant in this case offered to sell out his interest in a ranch to Leisnoi for $750,000. Mr. Weinberg notes that "this fact bespeaks volumes regarding the true nature of the so-called 'controversy' which has been engendered by a handful of people in Kodiak who speak only for themselves and who have bestowed upon themselves the pretentious title of 'Citizens Action Group'". L-Doc 422 is relevant to the history of the challenge to Woody Island's certification, which was the subject of the hearings in Anchorage and Kodiak in August of 1998.

525.    L-Doc 423 is the transcript of a March 26, 1998 interview of Lucille Westman, the adoptive mother of Ginny R. Griffin, whose birth mother was Agnes Frump. Ms. Westman told Kathleen Putman that she had lived on Woody Island from 1946 to 1951 and that she adopted Ginny Frump in 1951 and left the Island shortly thereafter. She noted that as an FAA family, she did not have a great deal of contact with the Native community on Woody Island, and observed that this lack of contact with the Native population was typical for most FAA families. Ms. Westman confirmed that while she was on Woody Island, the Chabitnoy family also lived on

314

the Island, as did Angeline Pananarioff.  She estimated that there were at least 25 Natives residing on Woody Island while she lived there.  Although Lucille Westman did not testify live at trial, and therefore was not subjected to cross examination, the Court finds no prejudice in reviewing the transcript of her interview, since her statements concern Woody Island in the 1950s rather than the key issue of who was on Woody Island in 1970.  Ms. Westman's statements corroborate sworn testimony of Harold King, who testified at the hearings in Anchorage, and described how his sister had been adopted out to an FAA family.

526.   L-Doc 424 is a June 12, 1964 <u>Kodiak Mirror</u> newspaper article entitled "What Nature Takes Away, The Hand Of Man Sometimes Restores."  The article recounts how Ella Chabitnoy had bemoaned the loss of her sewing machine in the earthquake and tidal wave, but that a company in Seattle sent her a new Singer machine which arrived on Mother's Day.  The article notes that Ella Chabitnoy had survived two tragic disasters that struck the Kodiak area, the June 6, 1912 eruption of Mount Katmai, as well as the earthquake and tidal wave of March 27, 1964.

527.   L-Docs 425, 426, and 427 were withdrawn.

528.   L-Doc 428 is a December 27, 1965 <u>Anchorage Daily Times</u> article entitled "Woman Found Dead at Kodiak."  The article notes that "Homicide is suspected in the death of 45-year-old Rosemary Challiak of Woody Island, near Kodiak, who was found Sunday morning with extensive skull injuries, State Police said today."  The document has the same relevance as do the other pieces of evidence pertaining to the

315

manslaughter of Woody Island resident Rosemary Challiak by her common-law husband, Woody Island resident James O. Fadaoff.

529.    L-Doc 429 is a December 7, 1895 publication of The Alaskan containing an article "Wood Island Baptist Mission." The article states that "Wood Island is noted for being one of the prettiest little dots of land in all Alaska and it well deserves its reputation." The article describes the recent construction of the orphanage on Woody Island and notes that the first child entered the orphanage on July 4, 1893. A number of Leisnoi shareholders trace their roots on Woody Island to the orphanage, which played a significant role in the history of Woody Island.

530.    L-Doc 431 are survey notes and field observations of Chris Wooley pertaining to the historic use and occupancy of Woody Island. Mr. Wooley testified that he had incorporated most of the data contained in this document into his final report entitled "A Walk In Time." That document was analyzed in the findings of fact pertaining to the archaeological evidence and use occupancy of Woody Island.

531.    L-Doc 432 are declassified United States government documents pertaining to the naval radio station and property on Woody Island, Alaska. The Navy radio station was one of the historical uses of Woody Island that occurred during the American period of its history, and L-Doc 432 corroborates the description of the facility in the Feichtinger investigative report as well as the Chris Wooley archaeological report.

532.    L-Doc 433 is an April 12, 1963 Kodiak Mirror article entitled "Woody Isle Ferry now for FAA Only." The article states that "The privilege of using the FedAir IV, the government operated ferryboat to Woody Island, has been restricted to employees of

316

the FAA and their families and invited guests according to an announcement released this week." The Court finds that the restriction of the *FedAir IV* to FAA personnel was an act of governmental authority occurring within the 10 years predating April 1, 1970 that adversely affected the ability of Natives to live on Woody Island and commute to Kodiak for work or education.

533.     L-Doc 434 is a January 18, 1963 <u>Kodiak Mirror</u> newspaper article entitled "Woody Island Ferry." The one sentence article recited that "The Woody Island ferry, the FedAir IV, runs between Woody Island and Kodiak 2,000 times each year and carries between 8,000 and 9,000 passengers in addition to freight." The document shows that the *FedAir IV* shuttled back and forth between Woody Island and Kodiak thousands of times each year, thereby establishing that its restriction announced just three months later, on April 12, 1963, was a serious blow to the Native Woody Islanders who had relied upon it for transportation and freight.

534.     L-Doc 435 is a December 18, 1979 <u>Kodiak Daily Mirror</u> article entitled "Woody Island Fund Set." It describes how "Kodiakans can make Christmas and the New Year a bit brighter for the victims of the Woody Island fire by donating to funds set up by the Kodiak Chapter of the Red Cross." It recites how families had homes destroyed in the fire on Woody Island "which swept through a series of houses and apartments during the high winds and cold weather." The article corroborates testimony by Mike Waller about the fire that destroyed the refurbished FAA housing units on Woody Island.

317

535.   L-Doc 436 is a July 14, 1977 letter by Congressman Don Young to Karl Armstrong, President of Leisnoi, Inc. responding to Karl Armstrong's request that a small boat harbor be constructed on Woody Island.  The document is pertinent to show Karl Armtrong's efforts to repopulate Woody Island.  Although counsel for Protestant at numerous occasions during the hearings attempted to insinuate that Karl Armstrong had improper motives or had engaged in some sort of fraudulent misconduct in his efforts to champion the rights of the Woody Island Natives, the Court has reviewed numerous letters to and from Karl Armstrong, and finds that he honorably and diligently advanced the cause of the Native Woody Island villagers, and that he did not engage in any improper conduct.

536.   L-Doc 437 is an April 8, 1995 affidavit of Senator Fred Zharoff.  Senator Zharoff testified live at the hearings in Kodiak, so counsel for Protestant had a full and fair opportunity to cross examine him about the contents of the affidavit.  Accordingly, the Court finds no prejudice in reviewing the affidavit as a supplement to Senator Zharoff's live testimony.  Senator Zharoff states in his affidavit that he believes some of his ancestors lived and worked on Woody Island during the days of cutting ice on the freshwater lakes on Woody Island.  He recounts how his mother told him of building their family home in Kodiak in the 1930s from timber that was harvested on Woody Island.  Senator Zharoff's mother also talked with him about gardens that had been maintained on Woody Island.  Senator Zharoff accounts how in the 1960s he and his friends frequented Woody Island, often camping, hiking, picking berries, hunting rabbits, and cutting firewood used in their wood stove.  He described hunting seals

on the northeast end of Woody Island, hunting both fresh and saltwater ducks, and fishing for halibut from the Woody Island shore. Senator Zharoff states in his affidavit that in 1977 he moved himself, his wife and his four children to a renovated structure at the old FAA site, and paid rent to Leisnoi during that time. He notes that a fire destroyed the complex in 1979. Senator Zharoff states that "If Leisnoi were today to make lands available for sale on Woody Island on which I could build a home and reside, I would be interested." The Court finds that Senator Zharoff was present on Woody Island in 1970 and that he had and still has a genuine intent to return to Woody Island if economics would permit.

537.    L-Doc 438 is the transcript of a March 30, 1998 interview of Fred Zharoff by Kathleen Putman. The unsworn interview contains some additional details about Fred Zharoff's connections with Woody Island and his activities on the Island. Senator Zharoff confirms that Karl Armstrong was on Woody Island frequently. Senator Zharoff describes Karl Armstrong as having "talked quite a bit of going back -- gosh, I'm trying to remember, it seems like he kept saying he wanted -- you know, going back home, if I remember, 'cause a number of Kodiak families lived over on Woody Island for a period of time." L-Doc 438 supplements the sworn testimony Senator Zharoff presented at the hearings in Kodiak.

538.    L-Doc A-1 is an August 7, 1970 <u>Kodiak Daily Mirror</u> newspaper article about Woody Island. It describes the two Russian orthodox churches that were built on Woody Island, and mentions Nicholas Pavloff, "the son of the former Russian governor of

319

Kodiak" as having been a priest or psalmist at the Russian orthodox church on Woody Island.

539.  L-Doc A-2 are a series of photographs and descriptions of the naval radio station buildings on Woody Island erected in 1919.  The documents note that the Navy purchased the site from the North American Commercial Company that had constructed a cottage, office building, and two warehouses in 1890.  An earlier version of the radio station had been built in 1911, but was struck by a fire on June 8, 1912.  L-Doc A-2 corroborates some of the historical information contained in the Feichtinger investigative report.

540.  L-Doc A-3 is a November 27, 1972 letter to Honorable Rogers Morton, Secretary of the Department of the Interior by Karl Armstrong requesting a withdrawal of 25 townships to provide sufficient land selection area for Woody Island Village.  The document has the same relevance as other evidence pertaining to Karl Armstrong's efforts to obtain a withdrawal of land for Woody Island Native Village land selections.

541.  L-Doc A-4 is an article by Phyllis Carlson entitled "An Earth Shaking Event."  The article was apparently written in 1972, since it references that "Sixty years ago nature provided another earth shaking event, when the earth exploded, June 6, 1912..."  The article notes that following the Katmai eruption, the vessel MANNING "first anchored off Woody Island...where its 103 inhabitants were brought to the boat.  Many of them were nearly famished for food and water."  The Katmai eruption was another of the natural disasters that impacted the history of Woody Island.

320

542.  L-Doc A-5 is a May 19, 1988 <u>Cordova Times</u> newspaper article entitled "Carlson Given Special Award." It notes that Phyllis Carlson was given the 1988 Woman of Achievement for Alaska Press Women Award. It notes that "Carlson survived the 1964 earthquake on isolated Woody Island near Kodiak by ordering food from the Sears & Roebuck catalog. Her order arrived through the mail, bypassing interrupted freight supply routes." Phyllis Carlson is the researcher and historian who personally observed that there were at least 20 Natives on Woody Island on the date of the earthquake in 1964.

543.  L-Doc A-6 is an April 22, 1969 <u>Kodiak Mirror</u> newspaper article entitled "Death Claims Former Resident Dorothy Mayberry." The article notes that "Dorothy Pavloff Mayberry...is survived, in addition to her nine children, and Mrs. Sundberg, by her mother, Angeline Maliknak...[and] three brothers, Nick and Johnny Pavloff...and Martin Pavloff..." This information was incorporated into the Pavloff Family Genealogy, L-Chart 6.

544.  L-Doc A-7 is an excerpt from the June 24, 1872 San Francisco publication of <u>The Alaska Herald</u>. It states that "Wood Island contains quite a number of native inhabitants, many of whom were formerly engaged in working for the ice company...A sawmill is amongst the valuable institutions." The article further notes that "The Aleuts are excellent hunters and fishermen. Brought up to these employments from infancy, they become, at an early age, experts in handling the gun and casting the net; their life work is to fish and hunt. During the past few years the natives here and elsewhere have been trying their hands at gardening." L-Doc A-7

321

is relevant to show the Native use and occupancy of Woody Island as far back as 1872.

545.   L-Docs A-9-A is the corrected copy of Chris Wooley's publication entitled "A Walk In Time:  Woody Island Historical Use and Occupancy."  Data contained in anthropologist Chris Wooley's report was described at length in the portion of these findings of fact pertaining to archaeology evidence and use occupancy of Woody Island.

546.   L-Doc A-10 is a June 29, 1970 <u>Kodiak Mirror</u> article entitled "Family of Fishermen." It notes that "Bill Robertson, with his son and crewman Bruce, are busy on their boat LAURA ANN, getting ready for the humpies."  It contains a photograph of Bill Robertson and Bruce Robertson, both of whom testified live at the hearings in Anchorage.  The document corroborates their testimony that they had been engaged in fishing activities in the Kodiak area in 1970.

547.   L-Doc A-11 is a listing of exhibits introduced by Leisnoi at the proceedings in this case.

548.   L-Doc A-12 is an August 30, 1965 newspaper article in the <u>Cheechako News</u>.  The article contains a legal notice pertaining to Ella Chabitnoy having submitted final proof for her homestead application for a tract of land on Woody Island.  It notes that her witnesses were Angeline Maliknak and William J. Robertson.  The application is objective evidence that Ella Chabitnoy had the intent to live on Woody Island.

549.   L-Doc A-13 is a July 16, 1996 letter from John R. Fitzgerald to Joel H. Bolger, counsel for the Kodiak Island Borough.  In the letter, Mr. Fitzgerald, the counsel for

Leisnoi, Inc., informs the Kodiak Island Borough attorney that Leisnoi, Inc. wants to implement an ANCSA shareholder homesite program on Woody Island, conveying 1.5-acre tracts to its shareholders. The letter explores the legal issues that arise from a 1.5-acre federal maximum allowed by 43 USC §1620(j), and the five-acre minimum imposed by the Kodiak Island Borough zoning ordinances. The letter states "Local zoning and replatting five-acre requirements should not be permitted to frustrate the federal statute that allows distributions of only 1.5 acres to shareholders."

550.    L-Doc A-14 is the August 16, 1996 letter by Joel H. Bolger, Esq. responding to the letter authored by John R. Fitzgerald, L-Doc A-13. In it, Mr. Bolger states that "Leisnoi must comply with the Kodiak Island Borough subdivision and zoning requirements to establish a shareholder homesite program...Under state law, a subdivision waiver is not authorized for lots less than five acres."

551.    L-Doc A-15 is a January 16, 1998 Order by the U. S. District Court in a case brought by Leisnoi, Inc. against the Kodiak Island Borough attempting to force the Borough to allow 1.5-acre shareholder homesites to be conveyed to Leisnoi shareholders. The Borough had refused to allow the 1.5-acre homesites to be conveyed, since the Borough has imposed a five-acre minimum lot size for conveyances on Woody Island. The Kodiak Island Borough took the position that Leisnoi, Inc. had not formally exhausted all administrative remedies before having brought the suit. Accordingly, the U. S. District Court entered an Order dismissing the suit for lack of jurisdiction without reaching the merits of the dispute. The document is relevant to show that Leisnoi, Inc. has continued to make efforts to repopulate Woody Island, but has run

into legal hurdles arising from the conflicting 1.5-acre maximum allowed under ANCSA, and the five-acre minimum lot size mandated by local Borough ordinances.

552.  L-Doc A-16 is a copy of the inscriptions in the Holy Bible of Ella Chabitnoy that was given to Tina Simeonoff Hoen. The document contains dates of birth and death of numerous members of the Fadaoff and Chabitnoy families that corroborate the information contained in the Fadaoff Family Genealogy, L-Chart 5.

553.  L-Doc A-17 is a publication entitled "Faces of Alaska from Barrow to Wrangle." It contains an article by Natalie Simeonoff describing her life on Woody Island. Natalie Fadaoff Simeonoff describes how her mother, Ella Chabitnoy, "moved from the Kodiak Baptist Mission, where she had been totally cared for, into a completely Native way of living where they moved from fish camp to fish camp...From a protected, sheltered life at the mission, she went into another culture completely and did well, learning to speak the languages...Papa was very Native, but his father was a Russian, so we had the baptist influence, we had the Native, which we lived, and then we had the Russian influence because we went to the Russian orthodox church...We lived on game, seal, ducks, fish, beans, and the potatoes that we grew." The document describes some of the customs and rituals the Natives celebrated and lived in Woody Island and discusses both the baptist and Russian influences on the Native Woody Islanders. She describes how after she married Kelly Simeonoff, "We built our home over there on Woody Island, close to where my mother lived. It was a wonderful place to live. All the children loved it. There must have been a hundred and some odd people and our children went to school there and the high school

324

children commuted on the boat every day to town." The article describes Natalie Simeonoff's sadness when her son, Freddie Simeonoff, was killed in Vietnam.

554.    L-Doc A-18 is the transcript of the April 14, 1995 proceedings held before United States District Judge James von der Heydt in the *Stratman vs. Leisnoi, Inc.* litigation that had been pending since 1976. Counsel for the Protestant was attempting to obtain a preliminary and permanent injunction barring Leisnoi, Inc. from conducting any timber harvesting activities, and freezing its bank accounts. In the course of oral arguments, counsel for the Protestant revealed that Omar Stratman's motivation in pursuing the litigation is one of an effort to obtain personal gain: "We don't care if Leisnoi keeps its state law certificate; that's fine with us. We just want to get all their land and all their money. And, yes, it's true, we want to shut them down, we want to take them off the map. That's the object of our endeavor." This document is relevant to show the Protestant's motivation in this proceeding is an effort to obtain personal gain for himself, and not to act as a public interest litigant.

555.    In addition to its documentary evidence, Leisnoi, Inc. also introduced a number of maps and charts pertinent to this case. The genealogical charts were already discussed in the findings of fact pertaining to the genealogical evidence. Other charts include U.S. Surveys of various parcels of land on Woody Island. These charts were incorporated into the analysis prepared by anthropologist Chris Wooley. Additionally, charts showing the freshwater pumping and piping system installed by the Navy Seabees on Woody Island during World War II were introduced by Leisnoi, Inc.

Field survey notes of Chris Wooley, and several maps of Woody Island were also introduced into evidence.

556.    Leisnoi also introduced 87 books into evidence. These books are listed in Leisnoi, Inc.'s Exhibit List, L-Doc A-11. The books corroborate the historical timeline of Woody Island described in Frank Feichtinger's investigative case report. The numerous references to Woody Island in these 87 publications provide additional details about the rich, colorful history of Woody Island.

557.    Protestant Omar Stratman introduced a number of exhibits at the hearings in this case. Stratman Exhibits 1 and 2 are reports prepared by the Federal Field Committee for Development Planning in Alaska. Stratman Exhibit 1 is entitled "Alaska Natives in the Land"; and Exhibit 2 is entitled "Villages in Alaska and Other Places having a Native Population of 25 or More, 1967." The Native Village of Woody Island was not listed in the excerpts provided by counsel for Protestant in Stratman Exhibits 1 and 2. The Court does not conclude, however, that the Federal Field Committee had found Woody Island not to be an historic Native Village. Leisnoi, Inc. supplied additional pages from the publication "Alaska Natives in the Land" prepared by the Federal Field Committee for Development Planning in Alaska at Book 83. At Figure 3, on page 248 of the "Alaska Natives in the Land" publication, Book 83, the Federal Field Committee for Development Planning in Alaska observed that census data for villages in the Kodiak region showed Woody Island had a Native population of 111 in 1950 and 78 in 1960. Additionally, at page 249 of the report, the Federal Field Committee included "Liesnoi" (Var. Woody Island) in its listing of historic Native