# EXHIBIT "3"

49346

0380-5535

## UNITED STATES DEPARTMENT OF THE INTERIOR

### OFFICE OF HEARINGS AND APPEALS
Interior Board of Land Appeals
4015 Wilson Boulevard
Arlington, VA 22203

| | | |
|---|---|---|
| OMAR STRATMAN, | ) | IBLA 96-152 |
| | ) | No. A76-0132 CV (JKS) |
| Protestant | ) | |
| | ) | Challenge to the eligibility of Woody Island |
| | ) | as a Native village under Section 11(b)(3) |
| v. | ) | of the Alaska Native Claims Settlement |
| | ) | Act, 43 U.S.C. §1610(b)(3) (1994) |
| LEISNOI, INC., | ) | |
| | ) | |
| Respondent | ) | |
| ——————————— | ) | |
| | ) | |
| KONIAG, INC. | ) | |
| BUREAU OF INDIAN AFFAIRS, | ) | |
| | ) | |
| Intervenors. | ) | |
| ——————————— | ) | |

## LEISNOI, INC.'S OBJECTIONS TO RECOMMENDED DECISION OF ADMINISTRATIVE LAW JUDGE HARVEY SWEITZER

Respectfully submitted,

John Richard Fitzgerald
McALPINE, PEULER & COZAD
701 South Peters Street   Suite 300
New Orleans, Louisiana 70130
Telephone (504) 561-0323
Facsimile (504) 528-9442
Attorneys for Leisnoi, Inc.

49346

0280-5535

# UNITED STATES DEPARTMENT OF THE INTERIOR

## OFFICE OF HEARINGS AND APPEALS
Interior Board of Land Appeals
4015 Wilson Boulevard
Arlington, VA 22203

| | | |
|---|---|---|
| OMAR STRATMAN, | ) | IBLA 96-152 |
| | ) | No. A76-0132 CV (JKS) |
| Protestant | ) | |
| | ) | Challenge to the eligibility of Woody Island |
| | ) | as a Native village under Section 11(b)(3) |
| v. | ) | of the Alaska Native Claims Settlement |
| | ) | Act, 43 U.S.C. §1610(b)(3) (1994) |
| LEISNOI, INC., | ) | |
| | ) | |
| Respondent | ) | |
| ———————————— | ) | |
| | ) | |
| KONIAG, INC. | ) | |
| BUREAU OF INDIAN AFFAIRS, | ) | |
| | ) | |
| Intervenors. | ) | |
| ———————————— | ) | |

## LEISNOI, INC.'S OBJECTIONS TO RECOMMENDED DECISION OF ADMINISTRATIVE LAW JUDGE HARVEY SWEITZER

Respectfully submitted,

John Richard Fitzgerald
McALPINE, PEULER & COZAD
701 South Peters Street   Suite 300
New Orleans, Louisiana 70130
Telephone (504) 561-0323
Facsimile (504) 528-9442
Attorneys for Leisnoi, Inc.

# INDEX

Page

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. THE RD FAILS TO ADDRESS A NUMBER OF CRUCIAL LEGAL ISSUES . . 3

    A.  Congressional action has validated the eligibility of the Native Village
        of Woody Island . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        (i)  Adopting the RD, notwithstanding ANILCA, would create a
               conflict with subsequently enacted regulations that recognize
               the Native Village of Woody Island as an Alaska Native Village
               that has a government-to-government relationship with the
               United States, and would constitute an end-run around the
               Federally Recognized Indian Tribe List Act of 1994 . . . . . . . . . 10

        (ii)  The formula for ANCSA land distributions throughout the
              State of Alaska would have to be recalculated and additional
              acreage would have to be conveyed by the federal government
              if this Board were to adopt the RD notwithstanding ANILCA . . . 13

    B.  The doctrine of Administrative Finality precludes adoption of the RD . . . 17

    C.  The protestant is collaterally estopped from relitigating issues already
        decided in favor of Leisnoi, Inc. by the Alaska Native Claims Appeal
        Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    D.  The protestant's delay has deprived this Board of jurisdiction to consider
        his untimely challenge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    E.  The protestant lacks administrative standing . . . . . . . . . . . . . . . . . . 30

III. THE NATIVE VILLAGE OF WOODY ISLAND IS AN HISTORIC NATIVE
     VILLAGE THAT MEETS THE REQUIREMENTS FOR ELIGIBILITY UNDER
     THE ALASKA NATIVE CLAIMS SETTLEMENT ACT . . . . . . . . . . . . . . . 37

    A.  The RD improperly relies upon recommended decisions in cases
        that were overturned in *Koniag, Inc. v. Kleppe* . . . . . . . . . . . . . . . . 37

**INDEX  Cont'd**

Page

B.  The RD erroneously suggests disqualifying a number of Native Woody Islanders simply on the basis of perceived conflicts between the information contained in Column 16 and that contained in Columns 17-21 . . . . . . . . . . . . . . . . . . . . . . 42

C.  The Native Village of Woody Island is a traditional village . . . . . . . . 46

D.  Governing legal standards . . . . . . . . . . . . . . . . . . . . . . . . 84

E.  Consistent with the Natives' own cultural patterns and lifestyle, more than thirteen enrolled Natives used Woody Island village as a place where they actually lived for a period of time in 1970 . . . . . . . . . . . . 87

    1.   Christina Simeonoff Hoen . . . . . . . . . . . . . . . 88
    2.   Cien Marie Weeks . . . . . . . . . . . . . . . . . . . 96
    3.   Chrislyn Kay Hoen . . . . . . . . . . . . . . . . . . . 98
    4.   Maurice Harmon . . . . . . . . . . . . . . . . . . . . 99
    5.   Paul Harmon . . . . . . . . . . . . . . . . . . . . . 107
    6.   James Harmon Hartle . . . . . . . . . . . . . . . . . 112
    7.   Johnny Maliknak . . . . . . . . . . . . . . . . . . . 115
    8.   Anita Sundberg Hartman . . . . . . . . . . . . . . . 115
    9.   John Chya . . . . . . . . . . . . . . . . . . . . . . 120
    10.  Mary Chya . . . . . . . . . . . . . . . . . . . . . . 120
    11.  Edward Chya . . . . . . . . . . . . . . . . . . . . . 120
    12.  John William Chya . . . . . . . . . . . . . . . . . . 120
    13.  Tamera Rae Chya . . . . . . . . . . . . . . . . . . . 120
    14.  Michael George Chya . . . . . . . . . . . . . . . . . 120
    15.  Nova Lenore Chya . . . . . . . . . . . . . . . . . . 120
    16.  Marie Redick Ungar . . . . . . . . . . . . . . . . . 123
    17.  Larry T. Redick . . . . . . . . . . . . . . . . . . . 123
    18.  William W. Redick . . . . . . . . . . . . . . . . . . 123
    19.  Robert J. Redick . . . . . . . . . . . . . . . . . . 123
    20.  Marty Charles Shuravloff . . . . . . . . . . . . . . 133
    21.  Karl Armstrong, Jr. . . . . . . . . . . . . . . . . . 138
    22.  Frank Pagano . . . . . . . . . . . . . . . . . . . . 145
    23.  Ellen Simeonoff Pagano . . . . . . . . . . . . . . . 145
    24.  Carole Pagano . . . . . . . . . . . . . . . . . . . . 146
    25.  Charlotte Pagano . . . . . . . . . . . . . . . . . . 146
    26.  Michael Pagano . . . . . . . . . . . . . . . . . . . 146

### INDEX  Cont'd

Page

27.    Joseph Francis Fadaoff . . . . . . . . . . . . . . . . . . . . . . 146
28.    Edson Fadaoff, Jr. . . . . . . . . . . . . . . . . . . . . . . . . . 146
29.    Rudy Sundberg, Jr. . . . . . . . . . . . . . . . . . . . . . . . . 155
30.    Jenny Pestrikoff Sundberg . . . . . . . . . . . . . . . . . . . 158
31.    William C. Robertson . . . . . . . . . . . . . . . . . . . . . . 159
32.    Bruce Robertson . . . . . . . . . . . . . . . . . . . . . . . . . . 159
33.    John Michael Waller . . . . . . . . . . . . . . . . . . . . . . . 165
34.    Kyra Ward . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 169
35.    Edward Ward . . . . . . . . . . . . . . . . . . . . . . . . . . . 169
36.    Charles C. Naughton . . . . . . . . . . . . . . . . . . . . . . . 179
37.    George Hansen . . . . . . . . . . . . . . . . . . . . . . . . . . . 182
38.    Anna Kerr Blinn . . . . . . . . . . . . . . . . . . . . . . . . . . 184
39.    Roy Harding Madsen . . . . . . . . . . . . . . . . . . . . . . . 186
40.    Charles Allen Madsen . . . . . . . . . . . . . . . . . . . . . . . 186
41.    Jacqueline Adams Madsen . . . . . . . . . . . . . . . . . . . 186
42.    Nicholas William Pavloff, Sr. . . . . . . . . . . . . . . . . . . 191
43.    Nick Andy Pavloff, Jr. . . . . . . . . . . . . . . . . . . . . . . 191
44.    Alexander John Fadaoff, Sr. . . . . . . . . . . . . . . . . . . . 192
45.    Fred Zharoff . . . . . . . . . . . . . . . . . . . . . . . . . . . . 197

F.    There were more than 25 permanent residents in the Native Village
      of Woody Island in 1970 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 200

    (i)    Additional Permanent Residents were in the Native Village
           of Woody Island in 1970 . . . . . . . . . . . . . . . . . . . . . . . . . 200

        46.    Cecil Chabitnoy . . . . . . . . . . . . . . . . . . . . . . . . 201
        47.    Mitch Gregoroff . . . . . . . . . . . . . . . . . . . . . . . . 205
        48.    Rudy Sundberg, Sr. . . . . . . . . . . . . . . . . . . . . . . 212
        49.    Esther DeNato . . . . . . . . . . . . . . . . . . . . . . . . . 216
        50.    Walda Hoff . . . . . . . . . . . . . . . . . . . . . . . . . . . 220
        51.    Martin Love . . . . . . . . . . . . . . . . . . . . . . . . . . . 220
        52.    David Love . . . . . . . . . . . . . . . . . . . . . . . . . . . 220
        53.    Keith Abraham . . . . . . . . . . . . . . . . . . . . . . . . . 220
        54.    Randy Abraham . . . . . . . . . . . . . . . . . . . . . . . . 220
        55.    Natalie Ponchene Chiliak . . . . . . . . . . . . . . . . . . . 223
        56.    Giorgi Nekeferoff . . . . . . . . . . . . . . . . . . . . . . . 225
        57.    Myra Malutin Robertson . . . . . . . . . . . . . . . . . . . 227

**INDEX  Cont'd**

Page

(ii)  More Permanent Residents of the Native Village of
Woody Island . . . . . . . . . . . . . . . . . . . . . . . . . . . . 229

58.  David Redick . . . . . . . . . . . . . . . . . . . . . . . . 230
59.  Herman Sundberg . . . . . . . . . . . . . . . . . . . 232
60.  Freddy Simeonoff, Jr. . . . . . . . . . . . . . . . . . . 233
61.  Angeline Pananarioff Pestriakoff Pavloff Maliknak . . . . . . 233
62.  Herman Ponchene . . . . . . . . . . . . . . . . . . . . . 236
63.  Ione Jean Shuravloff . . . . . . . . . . . . . . . . . . . 237
64.  Mona Lynn Shuravloff . . . . . . . . . . . . . . . . . . . 237
65.  Nicholas Shuravloff, Jr. . . . . . . . . . . . . . . . . . . 237
66.  Nicholas Shuravloff III . . . . . . . . . . . . . . . . . . 237
67.  Michael Wayne Shuravloff . . . . . . . . . . . . . . . . 237
68.  Walter Allen Shuravloff . . . . . . . . . . . . . . . . . . 237
69.  Richard Lee Shuravloff . . . . . . . . . . . . . . . . . . 237
70.  Anastasia "Nettie" Fadaoff Harmon Hartle . . . . . . . . . . 237
71.  Charlotte White Fadaoff . . . . . . . . . . . . . . . . . 241
72.  Alexander John Fadaoff, Jr. . . . . . . . . . . . . . . . . 241
73.  David James Fadaoff . . . . . . . . . . . . . . . . . . . 241
74.  Virginia "Ginny" Frump Griffin . . . . . . . . . . . . . . 242
75.  Harold Wayne Frump King . . . . . . . . . . . . . . . . 242
76.  Maryanne Frump . . . . . . . . . . . . . . . . . . . . . 242
77.  Brenda Frump . . . . . . . . . . . . . . . . . . . . . . 242
78.  William Nicholas Pavloff . . . . . . . . . . . . . . . . . 244
79.  Michle P. Pavloff . . . . . . . . . . . . . . . . . . . . . 244
80.  Peter Nicholas Pavloff . . . . . . . . . . . . . . . . . . 244
81.  Tanya Alexandra Pavloff . . . . . . . . . . . . . . . . . 244
82.  Mary Anna Pavloff . . . . . . . . . . . . . . . . . . . . 244
83.  Martin W. Pavloff . . . . . . . . . . . . . . . . . . . . . 245
84.  Bobbie Marti Pavloff . . . . . . . . . . . . . . . . . . . 245
85.  Fekla Ella Fadaoff Korniloff Chabitnoy . . . . . . . . . . . 246

(iii)  Other Woody Island villagers are listed on the Native Roll and
they qualify as permanent residents of the Native Village of
Woody Island . . . . . . . . . . . . . . . . . . . . . . . . . . 249

G.  The Native Village of Woody Island had an Identifiable Physical
Location on April 1, 1970 . . . . . . . . . . . . . . . . . . . . 251

(iv)

## INDEX  Cont'd

                                                                    Page

IV.    ALTERNATIVELY, THE TRADITIONAL VILLAGE WAS
       TEMPORARILY ABANDONED BY VIRTUE OF ACTS OF GOD AND
       GOVERNMENTAL AUTHORITY OCCURRING WITHIN TEN YEARS
       PREDATING APRIL 1, 1970 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 266

       (i)    The March 27, 1964 earthquake and tidal wave . . . . . . . . . . . . . . . 268
       (ii)   The May 27, 1969 closure of the FAA school . . . . . . . . . . . . . . . . 275
       (iii)  The April 12, 1963 removal of FAA ferry service, and
              subsequent scaleback in FAA operations on Woody Island . . . . . . . . 278
       (iv)   Implementation of Borough real property taxes on Woody Island
              in the mid-1960's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 286
       (v)    The Vietnam War . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 288


V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 289

COMES NOW, LEISNOI, INC., through counsel, McALPINE, PEULER & COZAD, and hereby objects to the recommended decision of Administrative Law Judge Harvey Sweitzer.

## I. INTRODUCTION

In light of the substantial body of evidence introduced showing the Native Village of Woody Island is an historic Native Village that met the eligibility requirements of the Alaska Native Claims Settlement Act, as already determined by the Secretary of the Interior and confirmed by the Alaska Native Claims Appeal Board (hereinafter "ANCAB"), the Interior Board of Land Appeals (hereinafter "this Board" or "the IBLA") should decline to adopt the flawed October 13, 1999 recommended decision (hereinafter the "RD") of the Honorable Administrative Law Judge Harvey Sweitzer (hereinafter "ALJ Sweitzer" or "the ALJ"). The RD contains erroneous suggestions as to how this Board should deal with a number of key issues. This Board should reject those suggestions and instead confirm the Bureau of Indian Affairs' original certification of the Native Village of Woody Island.

The story of the Native Woody Islanders is one of a rich cultural heritage; their village has played an important role in the history of the Kodiak Island region and Alaska. In the past 25 years, it also represents one of the most frustrating chapters in the history of the effort by the United States to settle aboriginal claims by the original inhabitants of Alaska. The Alaska Native Claims Settlement Act (hereinafter "ANCSA") was intended to provide a just settlement for Native claims to Alaska. A principal catalyst for developing ANCSA was the strong desire by industry and government to open the way for the extraction of petroleum resources of Alaska's North Slope. In order for oil development to take place, Native claims had to be dealt with first.

The Native Americans involved in this case, over 285 Alaska Natives of Alutiiq descent, were promised clear title to lands and resources in the Kodiak Island area in exchange for relinquishing their aboriginal claims pursuant to ANCSA.  In that Act, Congress declared:

> "There is an immediate need for a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims [and] the settlement should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation…"

43 U.S.C. section 1601(a)-(b).

With Congress' intent in mind, the Bureau of Indian Affairs determined on September 4, 1973 that the Native village of Woody Island was eligible for land and benefits as an unlisted village.[1]  For over 25 years, the 285 Alaska Natives with historical, familial, and cultural ties to Woody Island have relied on that certification as their assurance that the federal government would keep its promise to them.  This Board is now called upon to make a judgment as to whether or not these Native Woody Islanders are going to be told that the United States government's ANCSA commitment to them was illusory.

---

[1] The infusion of non-Natives over the years into Woody Island, first Russian and later American, subjected the Natives of Woody Island, whose forbearers lived there for thousands of years before contact, to a host of outside influences which had deleterious effects on the people, their culture, health, and survival.  For example, small pox and the Spanish Flu epidemics killed large numbers of Native Woody Islanders.  The amalgamation of 62 villages into seven (one of which was Woody Island) during the Russian period, resulted in many Natives on the Kodiak Archipelago, Woody Islanders included,  having familial and cultural ties to several different villages.  At least 285 chose to enroll to Woody Island.   That there has been historically a substantial Native presence on Woody Island is a matter that cannot seriously be disputed by anyone or any court, even by the disgruntled cattle rancher who brought this challenge apparently because he was concerned that certification of the Native Village of Woody Island could somehow jeopardize a special arrangement he had with the Bureau of Lands and Management to graze his cattle on thousands of acres of public lands in Kodiak for only a few hundred dollars a year.

## II.  THE RD FAILS TO ADDRESS A NUMBER OF CRUCIAL LEGAL ISSUES.

Before considering the objectionable portions of the RD, this Board should first address the key legal issues that the RD did not even address and explicitly reserved for determination by the IBLA.  See, RD at pages 16-17.

The most significant issue the RD defers to this Board without any analysis or suggested resolution is whether Congress has already ratified the status of the Native Village of Woody Island as an eligible Native village by enactment of section 1427 of the Alaska National Interest lands Conservation Act.  Another unresolved and potentially dispositive issue is whether the doctrine of administrative finality precludes protestant's present challenge, since the Alaska Native Claims Appeal Board already ruled against Omar Stratman's challenge to the eligibility of the Native Village of Woody Island in *Appeal of Omar Stratman*, and that decision became final when he did not appeal it.  This Board also needs to determine whether protestant has administrative standing to pursue his challenge to the certification of the Native Village of Woody Island.  Additionally, this Board must consider whether jurisdiction is lacking because the protestant failed timely to appeal the eligibility determination of the Area Director within 30 days after he acquired actual knowledge that the village had been certified as eligible.

## A.  Congressional action has validated the eligibility of the Native Village of Woody Island.

Congress enacted into law Section 1427 of the Alaska National Interest Lands Conservation Act (ANILCA), Public Law 96-487, 94 Stat. 2371 at 2518-2528 (1980).  Leisnoi, Inc. was specifically listed in that law as being a village corporation eligible to receive the surface estate of lands pursuant to the Alaska Native Claims Settlement Act.  Congress thereby

-3-

rejected the theory espoused in the RD that Leisnoi, Inc. is ineligible to receive lands pursuant to the Alaska Native Claims Settlement Act.

Protestant's administrative challenge to the eligibility decision whereby Leisnoi, Inc. received land as the Native Village Corporation for the Native Village of Woody Island must therefore be dismissed, since Congress has already spoken on this issue, and Congress has determined that, notwithstanding Stratman's contentions, Leisnoi, Inc. is a Native Village Corporation entitled to land conveyances under ANCSA.

The certification of the Native Village of Woody Island has been statutorily confirmed in Section 1427 of the Alaska National Interest Lands Conservation Act, 94 Stat. 2371 at 2518-2528 (1980). Congress listed and recognized Leisnoi, Inc., by name, as a village corporation eligible to receive the surface estate of lands pursuant to the Alaska Native Claims Settlement Act.

Congress necessarily rejected protestant's theory that Leisnoi, Inc. was improperly certified and therefore ineligible to receive ANCSA lands, since four years after Stratman filed his suit, Congress declared Leisnoi, Inc. to be an eligible Village Corporation:

> "Koniag deficiency village corporation" means any or all of the following:
>
> > Afognak Native Corporation;
> > Nu-Nachk-Pit, Incorporated;
> > Ouzinkie Native Corporation; and
> > **Leisnoi, Incorporated.** (emphasis added)

Section 1427(4) of ANILCA.[2]

---

[2] The statute declares that Leisnoi, Inc. is a particular type of Native Village Corporation, a Koniag Deficiency Village Corporation. "Village Corporations" as used within that area of

-4-

Congress defined "Deficiency village acreage on the Alaska Peninsula" to mean:

> "the aggregate number of acres of public land **to which
> 'Koniag deficiency Village Corporations' are entitled, under
> section 14(a) of the Alaska Native Claims Settlement Act, to
> a conveyance of the surface estate** on account of deficiencies in
> available lands on Kodiak Island, and to which Koniag,
> Incorporated is entitled under section 14(f) of that Act to
> conveyance of the subsurface estate." (emphasis added)

Section 1427(2) of ANILCA.

In ANILCA, Congress authorized conveyance of land on Afognak Island in lieu of

deficiency village acreage on the Alaska Peninsula to which the Koniag deficiency village

corporations were entitled:

> (b)(1)  In full satisfaction (A) of the right of Koniag,
> Incorporated, Regional Native Corporation to conveyance
> of Koniag 14(h)(8) lands on the Alaska Peninsula under
> the Alaska Native Claims Settlement Act; (B) **the right
> of each Koniag Deficiency Village Corporation to
> conveyance under that Act [ANCSA] of the surface
> estate of deficiency village acreage on the Alaska
> Peninsula...** and in lieu of conveyances thereof
> otherwise, the Secretary of the Interior shall, under the
> terms and conditions set forth in this section, convey as

---

art, are defined as having the same meaning as under Section 3(j) of the Alaska Native Claims
Settlement Act. ANCSA, in turn, defines Village Corporations as being Alaska Native Village
Corporations organized to hold or distribute lands and property on behalf of a Native Village.
If there is no Native Village, then there obviously can be no Native Village Corporation. See,
43 USC §1602(c) and (j).  By declaring Leisnoi, Inc. to be a Koniag Village Deficiency
Corporation, a specific type of Native Village Corporation, and by enacting a law statutorily
recognizing the Koniag Village Deficiency Corporations as having a right to conveyances under
ANCSA, Congress necessarily recognized the Native Village of Woody Island as being eligible
for benefits.  Therefore, this Board should not adopt the recommended decision declaring the
Native Village of Woody Island ineligible for benefits.

provided in subsection (c)[3] of this section the surface estate of all the public lands on Afognak Island except those lands referred to in subparagraphs 2 (A), (B), (C), and (D) of this subsection, and simultaneously therewith, the Secretary shall, under the terms and conditions set forth in this section, convey the subsurface estate of such lands to Koniag, Incorporated.

Section 1427(b)(1) of ANILCA.

As this Board can see by examining the above-quoted language from the statute, section 1427(b)(1) of ANILCA explicitly recognized "the **right** of each Koniag Deficiency Village Corporation to conveyance under that Act [ANCSA]..." (Emphasis added.)[4]  Likewise, in Section 1427(a)(1) of ANILCA, Congress recognized that the Koniag Deficiency Village Corporations "**are entitled**, under Section 14(a) of the Alaska Native Claims Settlement Act, **to conveyance...**" (Emphasis added.)  Although the RD suggests this Board rule that Leisnoi, Inc. does not have a right to conveyance under ANCSA and is not entitled to benefits, allegedly because the Native Village did not meet the eligibility requirements as the (mis)construed them, Congress has enacted the ANILCA legislation expressly recognizing that Leisnoi, Inc. does have a "right ... to conveyance" and is "entitled ... to conveyance" under ANCSA.  This Board should report to the district court that by statutorily recognizing  Leisnoi's right to

_____

[3]Subsection (c) of the statute provided that the land on Afognak Island would be conveyed to a joint venture consisting of the Koniag Deficiency Village Corporations, the Koniag 12(b) Village Corporations and Koniag, Incorporated (or wholly owned subsidiaries thereof).  94 Stat 2523.

[4]Stratman's thesis, that Leisnoi does not have a right to conveyance under ANCSA, is thus inconsistent with the Alaska National Interests Lands Conservation Act.

-6-

conveyances under ANCSA, Congress has effectively ratified the Department of the Interior's earlier certification of the Native Village of Woody Island.

Stratman's administrative challenge to Leisnoi's eligibility to receive land under ANCSA should therefore be dismissed, since Congress has already spoken on this issue. Congress has determined that, notwithstanding Stratman's contentions which the RD suggests this Board adopt, Leisnoi, Inc. is a Native village corporation entitled to land conveyances under ANCSA.

Congress says that Leisnoi is eligible to receive ANCSA land, but the RD suggests the IBLA to declare otherwise. Congress specifically listed Leisnoi, Inc. as being eligible to participate in the Afognak Joint Venture and receive ANCSA benefits, so the IBLA should not attempt to override the Congressional statute that was signed into law by the President of the United States. Protestant's administrative challenge should be denied.

The United States Supreme Court has observed that "[W]e must adopt the plain meaning of a statute, however severe the consequences." *Jay v. Boyd*, 351 U.S. 345, 357 (1956). The meaning of ANILCA is plain. It directs that lands on Afognak be patented to the Afognak Joint Venture in satisfaction of the right of each Koniag Deficiency Village Corporation to select lands on the Alaska Peninsula. Leisnoi, Inc. is recognized by Congress as being a Koniag Deficiency Corporation. This moots any challenge to Leisnoi, Inc.'s status as an Alaska Native Village Corporation. The United States Supreme Court observed in *Caminetti v. United States*, 242 U.S. 470 (1916) that "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole

-7-

function of the courts is to enforce it according to its terms." *Caminetti*, 242 U.S. at 485. The Court went on to observe that "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are aid to doubtful meanings need no discussion." *Id.* Leisnoi, Inc. merely asks this Board to give effect to the plain meaning of the ANILCA statute.[5]

It is now a moot issue whether or not the Secretary of the Interior was correct in certifying the Native Village of Woody Island as being eligible for benefits. Congress has officially recognized Leisnoi, Inc. as a Native Village Corporation that has a right to conveyances under ANCSA. See, ANILCA §1427(b)(1).

Congress has plenary authority under the property clause of the United States Constitution to dispose of public lands as it sees fit. See, *Van Brocklin vs. Anderson*, 117 U.S. 151, 165 (1886); *Maxwell Land Grant Case*, 121 U.S. 325 (1887); *Kleppe v. New Mexico*, 426 U.S. 529 (1976). If the Secretary of the Interior had erroneously certified the Native Village of Woody Island, as the RD recommends this Board declare, then Congress still had the authority to ratify the act even if it should not have originally been made (which is not the case). See, *Swayne & Hoyt v. United States*, 300 U.S. 297 (1936); *Isbrandtsen-Moller Co. v.*

---

[5]While Leisnoi, Inc. contends that the meaning of ANILCA is plain and unambiguous, to the extent that the protestant alleges there is some ambiguity where none actually exists, any such ambiguity must be resolved in favor of the Native Woody Islanders because there is a "settled principle that, in Indian law, all ambiguities must be resolved in favor of the Indians." Matter of *City of Nome, Alaska*, 780 P.2d 363, 367 (Alaska 1989). See also, *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655, 660 (9th Cir. 1975) ("[A]mbiguities in federal treaties or statutes dealing with Indians must be resolved favorably to the Indians."; *Parker Drilling Co. v. Metlakatla Indian Community*, 451 F.Supp. 1127, 1140 (D. Alaska 1978), observing that there is a "general tenet of Indian law that all ambiguities must be resolved in favor of the Indians...."

-8-

*United States*, 300 U.S. 139 (1936). Congress has plenary authority over public lands, and it has exercised its authority by directing the Secretary of the Interior to issue the patents to lands on Afognak in satisfaction of Leisnoi, Inc.'s rights under ANCSA to select lands on the Alaska Peninsula. It no longer matters whether the Native Village of Woody Island met the regulatory test for benefits under ANCSA, since Congress has passed ANILCA into law, declaring Leisnoi, Inc. to be a Koniag Village Deficiency Corporation that has a "right to conveyance" under ANCSA. See, ANILCA §1427(b)(1).

Congress had the right and authority to direct that the land patents be issued on behalf of Leisnoi, Inc., and the fact that the protestant wishes he could still challenge the certification of the Native Village of Woody Island does not alter this outcome. Congress has ratified the certification of the Native Village of Woody Island by enacting legislation recognizing Leisnoi, Inc.'s "right to... conveyance" under ANCSA, allowing it to participate in the Afognak Joint Venture, and directing the Secretary of the Interior to convey public lands in satisfaction of certain ANCSA selection rights of Leisnoi, Inc., the Native Village Corporation for the Village of Woody Island.

United States District Judge Singleton directed this Board to consider the impact of ANILCA on the certification of the Native Village of Woody Island. This Board should report that the impact was congressionally to ratify the village's eligibility for ANCSA benefits.

-9-

> *Adopting the RD, notwithstanding ANILCA,*
> *would create a conflict with subsequently*
> *enacted regulations that recognize the Native Village*
> *of Woody Island as an Alaska Native Village that has a*
> *government-to-government relationship with the United States,*
> *and would constitute an end-run around the*
> *Federally Recognized Indian Tribe List Act of 1994.*

A detrimental consequence that would flow from adopting the RD notwithstanding ANILCA would be the inherent conflict with regulations published by the United States Department of the Interior recognizing the Native Village of Woody Island as having a government-to-government relationship with the United States government. Subsequent to the adoption of ANILCA, the Bureau of Indian Affairs published "the list" of Indian tribal entities, including Alaska Native Villages, that have been officially recognized as Indian tribes by the United States Bureau of Indian Affairs.[6]  See, 63 FR 71941 (December 30, 1998). Included within that list is "Lesnoi Village (aka Woody Island)."

---

[6]     The Indian Self-Determination Act that provides for benefits to recognized Indian tribes, defines the term "Indian tribe" as meaning "any Indian tribe, band, nation, or other organized group or community, **including any Alaska native village** or regional or village corporation **as defined in** or established pursuant to **the Alaska Native Claims Settlement Act** (85 Stat. 688)...." 25 USC §450b(e) (emphasis added). Inclusion of "Lesnoi Village (aka Woody Island)" in the approved list of federally acknowledged tribes, 63 FR 71941 (1998), means that the United States of America recognizes Woody Island is an Alaska Native Village as that term is defined in the Alaska Native Claims Settlement Act. The Bureau of Indian Affairs published the list of federally acknowledged tribes and native villages that "have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes." Thus, not only has Congress, in ANILCA, confirmed that Leisnoi, Inc. is an Alaska Native Village Corporation with a right to conveyances under ANCSA, but the Secretary of the Interior, in implementing the Indian Self-Determination Act, has recognized Woody Island as an Alaska Native Village that has a government-to-government relationship with the United States.

-10-

The suggestion in the RD that Woody Island be declared not to be an Alaska Native Village is in contravention of inclusion of Woody Island in the list of tribes and Alaska Native Villages officially recognized by the Bureau of Indian Affairs. <u>See</u>, 63 FR 71941 (1998). Leisnoi, Inc. is specifically listed by name in ANILCA as being eligible for ANCSA benefits, and its tribal entity has been recognized by the Department of the Interior as an Alaska Native Village that enjoys a government-to-government relationship with the United States.

In order to accept theories espoused in the RD that Woody Island is not an Alaska Native Village as defined in ANCSA, and that Leisnoi, Inc. does not have a right to conveyances under ANCSA, this Board would have to somehow disagree with or attempt to nullify a Congressional statutory finding in ANILCA that Leisnoi, Inc. is a Koniag Deficiency Village Corporation with a right to conveyances under ANCSA, and set aside the finding of the Secretary of the Interior that Woody Island is an Alaska Native Village that enjoys a government-to-government relationship with the United States.[7]

The Department of the Interior lacks jurisdiction to "de-list" the Native Village of Woody Island as the ALJ's recommended decision essentially asks it to do.[8]  The inclusion of

---

[7] The Interior Board of Land Appeals has no jurisdiction even to consider setting aside the listing of Woody Island as a recognized tribal entity. Such a challenge would have to have been brought by Stratman before the Interior Board of Indian Appeals pursuant to 25 CFR section 83.11; Stratman has not timely commenced any such challenge within the required 90 days after publication of the list of recognized tribes. Even if Stratman were to try to challenge Woody Island's inclusion on the list at the Bureau of Indian Affairs, his challenge would be subject to summary dismissal since "The Board shall dismiss a request for reconsideration that is not filed by the [90 day] deadline specified in paragraph (a) of this section."

[8] "While the Department clearly has a role in extending recognition to previously unrecognized tribes, it does not have the authority to 'derecognize' a tribe... **The Committee cannot stress enough its conclusion that the Department may not terminate the federally-**

Woody Island in the list of federally recognized tribes has been statutorily recognized by the United States Congress. The Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C. section 479a provides that "a tribe which has been recognized ... may not be terminated except by an Act of Congress."[9] Thus, in order to prevail, Stratman must persuade Congress to pass an Act of Congress de-recognizing Woody Island as an Alaska Native village; the Department of the Interior no longer has jurisdiction to do that which the RD recommends that it do.

This Board should not adopt the conclusions espoused in the RD since doing so would require this Board to invalidate the BIA's original certification of the Native Village of Woody Island, eviscerate the Congressional declaration that Leisnoi, Inc., is a Koniag Deficiency Village Corporation with a right to conveyances under ANCSA, and nullify the Bureau of Indian Affairs' inclusion of Woody Island as a recognized Alaska Native Village that enjoys a government-to-government relationship with the United States. The statutes passed subsequent to ANCSA, namely, ANILCA, the Indian Self-Determination Act, and the Federally Recognized Indian Tribe List Act of 1994, and the inclusion of Woody Island on the list of federally recognized tribes and Alaska Native villages, have eliminated the ability of the Department of the Interior and the courts to declare Woody Island not to be an Alaska Native

---

**recognized status of an Indian tribe absent an Act of Congress.**" House Report No. 781, 103[rd] Cong., 2[nd] Sess. 1994, 1994 U.S.C.C.A.N. 3768.

[9]"And for those who may have doubted the power of the Department of the Interior to recognize sovereign political bodies, a 1994 act of Congress appears to lay such doubts to rest. In the Federally Recognized Tribe List Act of 1994, Congress specifically directed the Department to publish annually 'a list of all Indian tribes which the Secretary recognizes to be eligible...' Through the 1993 tribal list and the 1994 Tribe List Act, the federal government has recognized the historical tribal status of Alaska Native villages..." *John v. Baker,* 982 P.2d 738 (Alaska 1999).

village. The only branch of government that could grant the drastic relief Stratman wants is the United States Congress. Rather than de-listing Woody Island, as Stratman has asked, Congress has instead enacted ANILCA that specifically recognizes Leisnoi as an Alaska Native Village Corporation with a federal right to ANCSA benefits.

*The formula for ANCSA land distributions throughout the State of Alaska would have to be recalculated and additional acreage would have to be conveyed by the federal government if this Board were to adopt the RD notwithstanding ANILCA.*

If this Board were to adopt the RD's suggestion the Native Village of Woody Island be decertified notwithstanding ANILCA, then this will necessitate that the Board recalculate ANCSA distributions throughout the state of Alaska. Moreover, it would then become necessary for the United States of America to allocate another 115,200 acres of public lands in Alaska among the regional corporations on the basis of the number of Natives enrolled to each region. Rejection of the proposition that ANILCA confirmed the certification of the Native Village of Woody Island, and acceptance of the RD that the Native Village of Woody Island be decertified, would have a harmful ripple effect throughout the state of Alaska, and would upset the distribution of lands that have already been made. Adoption of the course of action suggested in the RD some 25 years after the Department of the Interior certified the Native Village of Woody Island as eligible for ANCSA benefits would frustrate the congressional policy of finality and repose in ANCSA matters, as was made apparent in 43 USC §1601(b), that called for the settlement to be accomplished rapidly, with certainty, and without litigation.

-13-

If the Native Village of Woody Island were decertified, then lands that had been patented to Leisnoi, Inc. would not qualify as ANCSA land distributions. Leisnoi, Inc. would cease to be deemed a Native Village Corporation, so this Board would then have to recalculate the number of acres that Koniag, Inc. is entitled to receive under the formula set forth in 43 USC §1611(c). Recalculation would be necessary since the difference between thirty-eight million acres and the acreage selected by village corporations would become altered once Leisnoi, Inc. were determined not to be a village corporation based upon decertification of the Native Village of Woody Island. The ripple effect would extend to other regional corporations, since the formula set forth in 43 USC §1611 governed acreage conveyed not merely to Koniag, Inc., but also to the other regional corporations throughout the state of Alaska. This Board would have to recalculate the entire formula for land distributions throughout the state of Alaska. Public lands would have to be withdrawn for selection, and new patents would have to be issued to the various regional corporations. Issues such as what lands could be selected at this late date, what public lands in Alaska have to be withdrawn by the Department of the Interior for possible selection by Native Corporations, and problems of regional corporations having been patented more land than they would be entitled under the revised calculations would give rise to a host of legal problems that could cloud title to lands owned by ANCSA corporations in Alaska.

Rejection of the proposition that ANILCA confirmed the certification of the Native Village of Woody Island, through acceptance of the RD that the Native Village be decertified, would also affect the allocation of lands under 43 USC §1611(b). Under that section, the difference between 22 million acres and the total acreage selected by village corporations

-14-

pursuant to subsection (a) of 43 USC §1611 is to be allocated by the Secretary of the Interior among the 11 regional corporations on the basis of the number of Natives enrolled in each region. Obviously, if the 290 Natives who originally enrolled to the Native Village of Woody Island were deemed not to have enrolled to a Native Village in the Koniag region, then the Leisnoi shareholders would not be deemed enrolled to the Koniag region. Therefore, acreage that was allocated among the 11 regional corporations based upon figures in the formula that included the enrolled Woody Islanders would have to be reallocated by this Board based upon its recomputation of the formula excluding Leisnoi shareholders from the Koniag region. If the Native Village of Woody Island were decertified as the RD recommends, its shareholders may elect to enroll to villages in Koniag or other regions to which they may have ties or from which they may have ancestral connections. This could alter the number of Natives enrolled in each region, and would therefore upset the allocation of lands already made pursuant to 43 USC §1611(b).

Another ripple effect that would flow from a rejection of the proposition that ANILCA ratified the certification of the Native Village of Woody Island would be the distributions made under ANCSA §7(i), 43 USC §1606(i). That provision of ANCSA mandates that 70% of all revenues received by each regional corporation from timber resources and subsurface estate shall be divided annually by each regional corporation among all 12 regional corporations "according to the number of Natives enrolled in each region..." 43 USC §1606(i). If the Native Village of Woody Island were to be decertified, and its original 290 enrollees effectively de-enrolled from the Koniag region, some of those enrollees could choose to enroll to non-Koniag villages to which they may have ancestral or other ties. By changing the number of

-15-

Natives enrolled to each region, the formula for distribution of 7(i) funds would thereby be altered. This would give rise to an administrative nightmare of incredible proportions and would perpetuate the 25 years of misuse of the legal system. The Native Alaskans are entitled to a prompt settlement of their aboriginal claims; issues that should have been resolved in the 1970's should not fester into the next millenium. Litigations involving numerous regional and village corporations would likely result from a change in the distribution formula more than 20 years after the distribution formula was set.

Another detrimental effect that would flow from adopting the recommendation of decertification notwithstanding ANILCA would involve the distribution of funds pursuant to ANCSA § 7(j), 43 USC §1606(j). That section mandates that during the five year period following December 18, 1971, not less than 10% of all corporate funds received by each of the 12 regional corporations under Section 1605 of ANCSA and under subsection 7(i), and all other net income, shall be distributed among the stockholders of the 12 regional corporations. Not less than 45% of funds from such sources during the first five year period, and 50% thereafter, must be distributed among the village corporations in the region. If this Board were to decertify the Native Village of Woody Island, such that Leisnoi, Inc. were determined not to be a Native Village Corporation, then this Board would have to recalculate how those funds should be distributed pursuant to ANCSA §7(j). Woody Islanders would have to re-enroll to other villages, perhaps in other regions, and would have a right to claim funds that they should have received from the regional corporations pursuant to ANCSA §7(j). This would also give rise to a host of virtually intractable legal issues such as whether it would be fair to deny distributions to persons who had originally opted to enroll to the Native Village of Woody

-16-

Island.  Cash distributions might have to be made to the estates of various deceased shareholders, thereby possibly necessitating the reopening of estates that might already been probated.

As this Board can readily see, if it were to adopt the ALJ's recommended decision notwithstanding the congressional enactment of ANILCA and Woody Island's listing on the Federally Recognized Indian Tribe List Act of 1994, this Board would open up a Pandora's Box.  It would exascerbate the agony the 300 shareholders of this village corporation have endured so far, and further place into question whether justice and equity will ever be achieved for these Native peoples who deserve settlement of their aboriginal claims. The Board would have to recalculate complex formulas involving the distribution of millions of acres of land throughout the state of Alaska.  When the results varied from the prior computations, new distributions and new allocations of land would have to be made not just in the Koniag region, but throughout the state of Alaska.  Such reallocations and redistributions at this late date would run contrary to the Congressional policies enacted into law in ANCSA that the settlement should be accomplished "rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation…" See, 43 U.S.C. § 1601(b).

### B.  The doctrine of Administrative Finality precludes adoption of the RD.

The doctrine of administrative finality precludes adoption of the RD that the Native Village of Woody Island be decertified pursuant to the challenge brought by protestant Omar Stratman.    Mr. Stratman already brought his objections before the Alaska Native Claims Appeal Board, and he lost. *Appeal of Omar Stratman*, ANCAB No. LS77-4C (March 24, 1978.)  He failed to take an appeal from the dismissal by the ANCAB.  Accordingly, the

-17-

doctrine of administrative finality, the administrative corollary to the common law doctrine of *res judicata*[10], is applicable to bar Omar Stratman from again seeking to challenge the Secretary's decision pertaining to the Native Village of Woody Island:  "When a final Departmental adjudication has been made, the doctrine of administrative finality, the administrative counterpart of *res judicata*, generally bars consideration of a new appeal arising from a later proceeding involving the same claim and issues."  *Village of South Naknek*, 85 IBLA 74, 76 (February 11, 1985).  "The matter has been decided.  The doctrine of administrative finality precludes reconsideration of the matter now."  *State of Alaska (Henry J. Ekada)*, 117 IBLA 373, 376 (February 7, 1991).

The Board should decline to adopt the RD that sides with the protestant, because the protestant cannot relitigate before this Board matters already decided against him in the ANCAB decision from which he took no appeal.  The doctrine of administrative finality bars reconsideration of protestant's claims more than 16 years after his first challenge was dismissed.

On March 3, 1977, Omar Stratman appealed to the ANCAB from the Bureau of Indian Affairs Entitlement Decision of January 19, 1977.  The ANCAB rejected his appeal, holding that Leisnoi, Inc. is entitled to select a minimum of at least 69,120 acres.  The ANCAB

---

[10]The doctrine of administrative finality bars reconsideration in subsequent or collateral proceedings of earlier actions which were or could have been subject to direct review.  *Keith Rush d/b/a Rush's Lakeview Ranch*, 125 IBLA 346 (1993).  The doctrine of administrative finality is similar to its judicial counterpart of *res judicata*.  *Id.* at p. 351.  The doctrine applies here to preclude Stratman from challenging the eligibility of the Native Village of Woody Island for benefits under the Alaska Native Claims Settlement Act, and therefore militates against adopting the recommended decision that sides with the protestant.

concluded that "Where a village has been found eligible under Section 11 of ANCSA to receive land and monetary benefits, this constitutes a finding that such village had at least a minimum Native population of 25 on the 1970 census enumeration date and is therefore entitled to a minimum of 69,120 acres." *Appeal of Omar Stratman*, ANCAB No. LS 77-4C at p. 5.

Stratman failed to appeal from the March 24, 1978 decision and order of dismissal in *Appeal of Omar Stratman*, ANCAB No. LS 77-4C. Having failed to seek further review of that decision, he is now bound by the ruling and cannot collaterally attack it in the proceeding now pending before this Interior Board of Land Appeals.

The ANCAB's conclusion that Leisnoi was entitled to select at least 69,120 acres was predicated upon a finding that the Native Village of Woody Island "had at least a minimum Native population of twenty-five on the 1970 census enumeration date and is thus entitled to the minimum acreage allocation under Section 14(a) of ANCSA." *Appeal of Omar Stratman*, ANCAB No. LS 77-4C at p. 5. If the Native Village of Woody Island had been determined to be ineligible for benefits under the Alaska Native Claims Settlement Act, then Leisnoi, Inc. would not have been entitled to select and receive patents to the parcels it chose. See, 43 USC §1611(a)(1) and 43 USC §1613(a). In other words, entitlement of a Native Village Corporation to select lands is predicated upon a finding that the Native Village is eligible. A conclusion that a Native Village Corporation is entitled to select at least 69,120 acres necessarily constitutes a finding that the Native Village is eligible for benefits under ANCSA.

The village eligibility finding made at page 5 of ANCAB No. LS 77-4C was an integral component of the Board's conclusion that Leisnoi is entitled to select at least 69,120 acres. The eligibility determination constitutes a predicate finding upon which the land entitlement decision

-19-

was based. Had the Native Village of Woody Island been determined ineligible for benefits under ANCSA, then Leisnoi, Inc. would not have been entitled to select 69,120 acres. The doctrine of administrative finality applies to bar relitigation of "predicate findings" that were necessary to sustain a decision reached in an earlier litigation. *State of Alaska, Department of Transportation and Public Facilities*, 140 IBLA 205, 211 (1997). Having failed to appeal the ANCAB ruling that Leisnoi, Inc. is entitled to select at least 69,120 acres, the Protestant is barred by the doctrine of administrative finality from challenging in this case the factual underpinnings of the ANCAB ruling from which he failed to appeal.

If the IBLA were to acquiesce to Stratman's demand herein and the RD suggesting that the Native Village of Woody Island be declared ineligible for benefits under the Alaska Native Claims Settlement Act, then that would mean that Leisnoi, Inc. is not entitled to select a minimum of 69,120 acres.[11] Stratman therefore is improperly attempting to collaterally attack the land entitlement decision under the guise of challenging the eligibility of the Native Village of Woody Island. This type of collateral attack upon a ruling the protestant failed to appeal violates the doctrine of administrative finality. Failure to appeal from an administrative decision "renders that decision **and the findings contained therein final** for the Department and precludes a party from later challenging it..." *CCCo.*, 127 IBLA 291, 293-94 (1993). (Emphasis added.)

---

[11]Leisnoi, Inc. has not yet received its full acreage under ANCSA. Some lands selected by Leisnoi, Inc. have not yet been conveyed to Leisnoi, Inc. by the federal government. See, Opening Position Paper of the Bureau of Indian Affairs.

-20-

If Stratman wished to preserve his ability to challenge the finding of eligibility that supported the ANCAB's land entitlement decision, then he should have appealed from the ANCAB's March 24, 1978 decision and order of dismissal.  He could have moved to consolidate a court challenge to that decision with his 1976 court case that was then pending in Federal District Court for the District of Alaska.  All issues would then have been before the United States District Court, and Stratman would thereby have preserved his ability to challenge both the eligibility of the Native Village of Woody Island for benefits under ANCSA, as well as the entitlement of Leisnoi, Inc. to select the minimum of at least 69,120 acres. He failed to follow the appropriate procedure, however, by failing to appeal from the ANCAB decision and order of dismissal.  He dropped the ball.  Stratman chose not to appeal, and that should have been the end of this highly questionable, culturally offensive, and seemingly interminable litigation.

In carrying out the instructions of the district court that asked for agency review of this case, the Interior Board of Land Appeals should not relieve the Protestant of the consequences of his failure to appeal from the ANCAB ruling.  Stratman should not be permitted 21 years after the decision and order of dismissal to challenge the factual underpinnings of the ANCAB ruling that was decided adversely to him. The district court did not direct this Board to ignore the doctrine of administrative finality; indeed, the district court seeks the expertise and advice of this Board in considering administrative issues with which the Department of the Interior is familiar.

-21-

## C.  Protestant is collaterally estopped from relitigating issues already decided in favor of Leisnoi, Inc. by the Alaska Native Claims Appeal Board.

Just as the doctrine of administrative finality bars Stratman from pursuing decertification since he failed to appeal from the ruling in favor of Leisnoi, Inc. made by the Alaska Native Claims Appeal Board on March 24, 1978 in *Appeal of Omar Stratman*, No. LS77-4C (March 24, 1978), so too, the doctrine of collateral estoppel bars the protestant from pursuing decertification since no appeal was taken from the ruling that the Native Village of Woody Island is eligible for ANCSA benefits made by the Alaska Native Claims Appeal Board on September 9, 1974 in *In re Woody Island*,  VE #74-46 (Sept.9, 1974).

The RD mistakenly recommends that this Board revisit a number of arguments against the certification of the Native Village of Woody Island that have already been considered and rejected by the Alaska Native Claims Appeal Board.  The RD essentially asks that this Board overturn the 1974 ANCAB VE #74-46 from which no appeal was ever taken.

This Board should not follow the flawed recommendations of the RD.  Issues already decided by the Alaska Native Claims Appeal Board in favor of the Native Village of Woody Island are not subject to relitigation herein.  Leisnoi, Inc. had to spend countless thousands of dollars defending itself, money which should have been available to carry out the purposes of ANCSA by improving the lives of its shareholders, enhancing their culture, and preserving their heritage, but could not because of this litigation.  Leisnoi should be entitled to rely upon the ANCAB's prior determination of certain issues in favor of Leisnoi.

-22-

For example, the RD repeatedly suggests this Board find that alleged conflicts between the answers to Column 16 of the enrollment form[12] and answers in Columns 17-21[13] be used to rebut the permanent residence status of individual Native enrollees as of April 1, 1970. See, e.g., recommended decision at pages 37-38, 64, 66, 72, 74, 77, 81. This same argument was raised by the Alaska Wildlife Federation and Sportsman's Council, Inc. and Mr. Philip Holdsworth before the Alaska Native Claims Appeal Board in their unsuccessful challenge to the eligibility of the Native Village of Woody Island for benefits under the Alaska Native Claims Settlement Act. See, BIA 1A at pp. 398-397. The identical argument upon which the RD suggests this Board rely was also rejected in a number of other village eligibility cases, as discussed later in this brief.

The theory espoused in the RD, that there was an insufficient number of permanent residents to qualify for benefits under the Alaska Native Claims Settlement Act (see recommended decision at pages 40, 83), such that the Native Village of Woody Island allegedly must be declared ineligible for benefits, was already raised by the Alaska Wildlife Federation and Sportsman's Council, Inc. and Mr. Philip Holdsworth. See, BIA Exhibit 1A at p. 161. The Alaska Native Claims Appeal Board rejected this theory and determined that the Native

---

[12]Column 16 asked the Native enrollees to state "your permanent residence as of April 1, 1970." See, Enrollment Application, Stratman Exhibit 9.

[13] Column 17 asked for "your permanent residence as of the date you complete this form." Column 18 asked for the "region and village or city where you resided on April 1, 1970, if you resided there two or more years without substantial interruption." Column 19 asked for the "region and village or city where you previously resided for an aggregate of 10 years or more." Column 20 asked for the "region and village or city where you were born, or if outside Alaska, city and state." Column 21 asked for the "region and village or city from which an ancestor came." See, Enrollment Application, Stratman Exhibit 9.

Village of Woody Island is eligible for benefits under the Alaska Native Claims Settlement Act. See, *In re Woody Island*, Final Order of September 9, 1974.

This Board should rule that the Native Village of Woody Island is entitled to rely upon the issues already decided in its favor by the Alaska Native Claims Appeal Board. The protestant should be collaterally estopped from attempting to relitigate those issues herein. The RD is mistaken at pages 17-18 in recommending that the doctrine of collateral estoppel not be applied.

Although Omar Stratman was not himself named as a party in the first protest to the eligibility of the Native Village of Woody Island, his interests are the same as those of other protestants in that case. Protestant in this challenge to Woody Island's certification is in privity with the earlier protestants who challenged Woody Island's certification because "their interests are so nearly identical, that it is fair to treat them as the same parties for purposes of determining the preclusive effect" of the earlier ruling. *Ruple v. City of Vermillion*, 714 F.2d 860 (8th Cir. 1983). Stratman and the other protestants each have sought to prevent public lands from being transferred to a Native Village they contend did not qualify for benefits under the Alaska Native Claims Settlement Act. Both sets of protestants sought to decertify the Native Village of Woody Island and to achieve a ruling that the Native village was not eligible for benefits under the Alaska Native Claims Settlement Act.

The federal Environmental Protection Agency was collaterally estopped from relitigating the issue of whether a pulp mill exceeded effluent limitations, although it had not been a party to an earlier litigation brought by the State of Washington's Department of Ecology wherein that issue was resolved in favor of the pulp mill, *United States v. ITT Rayonier, Inc.*, 627

-24-

F.2d 996 (9th Cir. 1980). So too, protestant Stratman is collaterally estopped from relitigating the issue of whether the Native Village of Woody Island met the eligibility requirements under ANCSA, although he was not named as a party to the earlier litigation brought by protestants in *In re Woody Island.* As was noted by the Ninth Circuit in *ITT Rayonier,* "Courts are no longer bound by rigid definitions of parties or their privies for purposes of applying collateral estoppel or res judicata." *Id.* at 1003. The relationship between the protestants, who mutually have sought the decertification of the Native Village of Woody Island, "is sufficiently 'close' under the circumstances to preclude relitigation of the issue already resolved..." *Id.* at 1003.

Certain prison inmates who brought suit against prison officials for allegedly failing to take measures to protect inmates from exposure to the human immunodeficiency virus (HIV) were collaterally estopped from pursuing their litigation although they had not been named as parties in an earlier suit where the same issue was litigated, *Sumlin v. Krehbiel,* 876 F.Supp. 1080 (E.D.Mo.1994). So too, privity exists between the protestants in the first challenge to the certification of Woody Island and the protestant in the second challenge to the certification of Woody Island. "Privity exists between the plaintiffs in the two cases, because plaintiffs have such a close relationship, bordering on near identity, that they are for purposes of res judicata the same parties... [A] person is in privity with a party or a prior action if 'the interests of the non-party are so closely related to the interests of the party, that the non-party can fairly be considered to have had his day in court.'" *Id.* at 1081. Protestants Alaska Wildlife Federation & Sportsmen's Council, Inc., Phillip R. Holdsworth, and Omar Stratman all view the certification of the Native Village of Woody Island as being the equivalent of some sort of an AIDS virus that must be eradicated. The two sets of protestants sought to achieve the same

-25-