# EXHIBIT "6"

101.     On April 4, 1965, Mary Ponchene Fadaoff Pavloff died of cancer, after having lived almost her whole life on Woody Island. Her husband, Nick Pavloff, could not take care of all of their children. Their son William was adopted out to an Anchorage family. Edson and Joseph Fadaoff were taken in by Frank and Ellen Pagano. (Doc 12 [Alaska State. Department of Health and Welfare, Bureau of Vital Statistics. Certificate of Death.])

102.     On December 26, 1965, lifelong Woody Island resident James Fadaoff committed manslaughter upon his common-law wife, Rosemary Challiak at the Chabitnoy house on Woody Island. (Doc 179 ["Man Pleads Guilty In Girl's Death." Anchorage Daily News. 13 April 1966.])

103.     On April 22, 1966, James Fadaoff plead guilty to manslaughter in the killing of his common law wife, Rosemary Challiak. (Doc 179 ["Man Pleads Guilty In Girl's Death." Anchorage Daily News. 13 April 1966.])

104.     In 1967, the King Crab industry began to decline rapidly. (Book 14 [Chaffin, Yule. Alaska's Konyag Country] and Book 15 [Chaffin, Yule. Koniag To King Crab.])

105.     On May 19, 1967, Wilfred Pavloff, a lifelong resident of Woody Island, died in a drowning accident on Woody Island. He was buried with full military honors, having served six years in the Army beginning in World War II. (Doc 169 ["Lifetime Resident Wilfred Pavloff Burial Friday." Kodiak Mirror. 19 May 1967])

106.    On June 2, 1967, Daniel Harmon was killed in battle in Vietnam. He died heroically only two days away from the end of his tour. His brother, Maurice, who testified at the hearing, picked Danny's grave site on the bluff near the old (2nd) Russian Church because this is where Danny had wanted to build his home upon his return to Woody Island. Nick Pavloff, Sr. dug the grave. The marker and its fence remain today. The Vietnam War was an act of governmental authority that resulted in the death of Daniel Harmon, a resident of Woody Island who likely would have procreated and remained on the Island. (Book 11 [Testimony of Maurice Harmon at p. 1577.])

107.    In 1967, Darrell Chaffin retired from the FAA, and he and his wife, Yule, moved into their cabin near Lake Una on Woody Island. (Deposition of Yule Chaffin , Tr. at p. 105.)

108.    On October 23, 1968, the Kodiak Disabled American Veteran's (DAV) named its Post for Danny Harmon. It was noted that "He was already a much decorated young soldier when he was killed on the front in Vietnam." (Doc 152 ["Kodiak DAV Post Named For Army Hero Dan Harmon." Kodiak Mirror. 23 October 1968: 1])

109.    In 1968, Roger Page, in his self-published book, This is Kodiak, documented that several of the residences of families of Woody Island still were standing. He further documented erosion and changes in the landscape resulting from the 1964 Earthquake. (Book 66 [Page, Roger. ed. This Is Kodiak.])

110.        On April 24, 1969, James O. Fadaoff committed suicide at McNeil Island Federal Penitentiary where he had been serving time for the manslaughter of his common law wife.  (Doc 148 ["Kodiak Prisoner Ruled A Suicide." <u>Kodiak Daily Mirror.</u> April 1969: 7.])

111.        On May 27, 1969, the Woody Island School was closed after the last day of operation.  The reason for the school closure was that the FAA was winding down its operations on Woody Island.  This closure of public schools on Woody Island was an act of governmental authority that occurred within the ten years pre-dating April 1, 1970, that made it difficult for Native families to live and raise children on Woody Island.  Winding down of the FAA operations was also an act of governmental authority occurring within the ten years pre-dating April 1, 1970.  (Doc 417 [<u>Village Check List.</u>  United States Department of the Interior, Bureau of Indian Affairs. 18 July 1973.])

112.        On July 5, 1969, Yule Chaffin won a first place award at the National Federation of Press Women (NFPW) conference in Billings, Montana for her historical piece in the <u>Anchorage Daily News</u> entitled "Woody Island."  (Doc 321 ["Press Women Receive Awards." <u>Kodiak Mirror.</u> 9 July 1969: 3.])

113.        Yule Chaffin recorded the names of seven Native individuals who came to visit her at her cabin near Lake Una on Woody Island in 1970.  These names include the following: Johnny Maliknak; Nick Pavloff; Bruce Robertson; Anna Mueller Blinn; Myra Robertson; Paul Mueller; Natalie Ponchene.  (Exhibit 17 of Deposition of Yule Chaffin, Tr. at pp. 131, 134, 139.)

114.    The following Native people lived for a period of time in Woody Island Village during 1970:

1.    Christina Simeonoff Hoen
2.    Cien Marie Weeks
3.    Chrislyn Kay Hoen
4.    Maurice Harmon
5.    Paul Harmon
6.    James Harmon Hartle
7.    Johnny Maliknak
8.    Anita Sundberg Hartman
9.    John Chya
10.    Mary Chya
11.    Edward Chya
12.    John William Chya
13.    Tamera Rae Chya
14.    Michael George Chya
15.    Nova Lenore Chya
16.    Marie Redick Ungar
17.    Larry T. Redick
18.    William W. Redick
19.    Robert J. Redick
20.    Marty Charles Shuravloff
21.    Karl Armstrong, Jr.
22.    Frank Pagano
23.    Ellen Simeonoff Pagano
24.    Carole Pagano
25.    Charlotte Pagano
26.    Michael Pagano
27.    Joseph Francis Fadaoff
28.    Edson Fadaoff, Jr.
29.    Rudy Sundberg, Jr.
30.    Jenny Pestrikoff Sundberg
31.    William C. Robertson
32.    Bruce Robertson
33.    John Michael Waller
34.    Kyra Ward
35.    Edward Ward
36.    Charles C. Naughton
37.    George Hansen
38.    Anna Kerr Blinn
39.    Roy Harding Madsen

40.    Charles Allen Madsen
41.    Jacqueline Adams Madsen
42.    Nicholas William Pavloff, Sr.
43.    Nick Andy Pavloff, Jr.
44.    Alexander John Fadaoff, Sr.
45.    Fred Zharoff
46.    Cecil Chabitnoy
47.    Mitch Gregoroff
48.    Rudy Sundberg, Sr.
49.    Esther DeNato
50.    Walda Hoff
51.    Martin Love
52.    David Love
53.    Keith Abraham
54.    Randy Abraham
55.    Natalie Ponchene Chilliak
56.    Giorgi Nekeferoff
57.    Myra Malutin Robertson

(Doc 108 at p. 116-117; Doc 108 at Tab 4, p. 12; Doc 168 at pp. 14-15; Books 14 and 15; Docs 73, 96, 103, 104, 106, 107, 117, 118, 119, 122, 124, 125, 129, 130, 148, 149, 152, 168, 169, 173, 174, 176, 179, 182, 281, 333, 344, 346, 348, 353, 419, and 437; Diary of Yule Chaffin; Exhibit 17 to deposition of Yule Chaffin; Depositions of Karl Armstrong, Marie Redick Unger, Mary Chya, Charles Naughton, and Christina Hoen; and Testimony of George Hansen, Joe Fadaoff, Ed Ward, William Robertson, Bruce Robertson, John Waller, Paul Harmon, Mitch Gregoroff, Roy Madsen, Maurice Harmon, James Hartle, Esther DeNato, Nancy Davis, Chris Wooley, Frank Feichtinger, Marty Shuravloff, Christina Hoen, and Kelly Simeonoff, Jr., and other evidence described in this brief.

115.        On April 17, 1970, Freddy Simeonoff was killed in combat in Vietnam while

            piloting a UH-1 Huey helicopter. (Tr. at pp. 3169-3170.)

116.        On December 18, 1971, the Alaska Native Claims Settlement Act became law.

117.        In 1972, the Kodiak Area Natives Association (KANA) built three small cabins

            in the North Village area on Woody Island.  These cabins were built for John

            Maliknak, Rudy Sundberg, Jr., and Nick Pavloff.  (Doc 108 at p. 118.)

118.    On January 30, 1973, Karl Armstrong, Jr., writing for Koniag, Inc. on behalf of Woody Island Village, wrote to Maurice Thompson, Area Director of the BIA, requesting that a 25 Township Withdrawal be designated immediately for Woody Island Village so the land selection process could begin.   (Doc 33 [Letter by Karl Armstrong to Maurice Thompson.])

119.    On August 8, 1973, Gail Fitzpatrick, Realty Specialist, Bureau of Indian Affairs, issued his report recommending that Woody Island be certified under ANCSA as an eligible Village qualifying for land benefits.   (Doc 417 [Department of the Interior, Village Checklist.])

120.    On September 4, 1973, the Native village of Woody Island was determined to be eligible for land benefits as an unlisted Village under ANCSA.   The Certificate of Eligibility was officially issued.   (BIA-6 [Certificate of Eligibility.])

121.    In January of 1974, the Alaska Chapter of the Sierra Club and the Alaska Wildlife Federation and Sportsman Council, Inc. protested to the Department of the Interior the eligibility of Woody Island as an Alaska Native Village under ANCSA.  On February 8, 1974, the Department of the Interior issued its final decision concerning the eligibility of Woody Island as a Native village for purposes of ANCSA.   (Doc 408 [Federal Register, Administrative Determination, Final Decision concerning the eligibility of Woody Island as a Native Village for purposes of ANCSA.])

122.     In October of 1974, the first annual shareholders meeting of Leisnoi, Inc. was held. The very first resolution passed by the corporation was to make all efforts to acquire the former FAA site on Woody Island and make a feasibility study of its possible uses for housing Woody Island shareholders. (Doc 165 [Leisnoi Resolution No. 74-1-1.])

123.     Omar Stratman filed suit challenging Woody Island's eligibility for benefits in Case No. A76-132 on July 2, 1976, without having first exhausted his administrative remedies. (BIA-1A, BIA-1B, BIA-4.)

124.     Leisnoi consolidated financial statements for 1977 and 1978 reveal that Leisnoi expended $352,000.00 in renovating the former FAA housing units on Woody Island. (Doc 164 [Consolidated Financial Statements.])

125.     On February 13, 1978, the board of directors of Leisnoi, Inc. voted to assist John Maliknak and Nick Pavloff with the repair of their houses on Woody Island. (Doc 163 [Minutes of Leisnoi, Inc. Board of Directors meeting.])

126.     On March 14, 1978, a group calling itself the Citizens Action Group held its first meeting on Kodiak. The group's purpose was to file suit to decertify Leisnoi. The group alleged that Woody Island was a "phantom village". (Doc 313 [Kodiak Daily Mirror article dated March 13, 1978.])

127.     On December 12, 1979, a fire, fueled by winds gusting up to 70 miles per hour, destroyed the renovated FAA housing project on Woody Island. In the course of renovating the housing units, Leisnoi, Inc. had lost two boats. (Doc 134

[Kodiak Daily Mirror article dated December 13, 1979]; Doc 419 [Affidavit of Michael Waller]; and [testimony of Marty Shuravloff, Tr. at pp. 3154-3155.])

128.    In 1980, Leisnoi merged with Koniag. [Testimony of Edward Ward, Tr. at p. 2509]

129.    On March 9, 1982, lifelong Woody Island resident Nick Pavloff, Sr. died from a drowning accident in the Kodiak boat harbor at the age of 57. He was eulogized by Yule Chaffin in an article in the March 18, 1982 edition of the Kadiak Times. (Doc 79 [Eulogy of Nick Pavloff published in the Kadiak Times.)

130.    In 1984, the Alaska courts demerged Koniag and Leisnoi, and the merger was declared void *ab initio* [Testimony of Edward Ward, Tr. at p. 2589].

131.    In the early 1990s, the board of directors of Leisnoi, Inc. began considering plans to convey property on Woody Island to Leisnoi shareholders. (Testimony of Bruce Robertson, Tr. at pp. 1719-1720.])

132.    On July 2, 1993, Omar Stratman placed a *lis pendens* on all of Leisnoi's lands, thereby clouding title to the property. (Tr. at pp. 2490, 2495, 2510, 2514, 2529-32.)

133.    In 1996, Leisnoi, Inc. wrote to the Kodiak Island Borough requesting that the Borough consent to 1.5-acre shareholder home sites being conveyed to Leisnoi shareholders. The Kodiak Island Borough refused to consent, citing local Borough ordinances that restrict conveyances to a minimum of five acres. (Doc A-13 [July, 1996 letter to Borough attorney]; Doc A-14 [August 16, 1996

response letter from Borough attorney.])   (Exhibits introduced in Kodiak pertaining to the shareholder home site program.)

134.        In January of 1998, the United States District Court dismissed a lawsuit Leisnoi, Inc. had filed against the Borough in an effort to compel the Borough to allow shareholder home sites to be conveyed to Leisnoi shareholders.   The Court dismissed based upon lack of jurisdiction, finding that Leisnoi needed to apply for zoning variances, notwithstanding the letter from the Borough stating that the Borough would not consent to the 1.5-acre conveyances.   (Doc A-15 [January 16, 1998 order dismissing federal suit Leisnoi had brought against the Kodiak Island Borough.])

135.        In August of 1998, hearings were held in Kodiak and Anchorage pertaining to the eligibility of the Native Village of Woody Island for benefits under the Alaska Native Claims Settlement Act.

### D.  Governing legal standards.

The Native Village of Woody Island has complied with the requirements for village eligibility.

Title 43 CFR §2651.2(b) sets forth the substantive regulations governing Native village[25] selections.  Section 2156.2(b) provides as follows:

---

[25]The term "Native village" is defined at 43 U.S.C. section 1602(c) as meaning "any tribe, band, clan, group, village, community, or association in Alaska listed in sections 1610 and 1615 of this title, or which meets the requirements of this chapter, and which the Secretary determines was, on the 1970 census enumeration date (as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instance), composed of twenty-five or more Natives."

(b)    Except as provided in paragraph (b)(4) of this section, villages must meet each of the following criteria to be eligible for benefits under sections 14(a) and (b) of the Act:

(1)    There must be 25 or more Native residents[26] of the village on April 1, 1970, as shown by the census or other evidence satisfactory to the Secretary. A Native properly enrolled to the village shall be deemed a resident of the village.

(2)    The village shall have had on April 1, 1970, an identifiable physical location evidenced by occupancy consistent with the Natives' own cultural patterns and life style and at least 13 persons who enrolled thereto must have used the village during 1970 as a place where they actually lived for a period of time: *Provided*, That no village which is known as a traditional village shall be disqualified if it meets the other criteria specified in this subsection by reason of having been · temporarily unoccupied in 1970 because of an act of God or government authority occurring within the preceding 10 years.

(3)    The village must not be modern and urban in character. A village will be considered to be of modern and urban character if the Secretary determines that it possessed all the following attributes as of April 1, 1970:

(i)    Population over 600.

(ii)    A centralized water system and sewage system that serves a majority of the residents.

(iii)    Five or more business establishments which provide goods or services such as transient accommodations or eating establishments, specialty retail stores, plumbing and electrical services, etc.

---

[26]"Permanent Residence" is defined at 25 CFR section 43h.1(k) as meaning "the place of domicile on April 1, 1970, which is the location of the permanent place of abode intended by the applicant to be his actual home. It is the center of the Native family life of the applicant to which he has the intent to return when absent from that place. A region or village may be the permanent residence of an applicant on April 1, 1970, even though he was not actually living there on that date, if he has continued to intend that place to be his home."

-85-

       (iv)     Organized police and fire protection.

       (v)     Resident medical and dental service, other than those provided by Indian Health Service.

       (vi)     Improved streets and sidewalks maintained on a year-round basis.

(4)     In the case of unlisted villages, a majority of the residents must be Native, but in the case of villages listed in sections 11 and 16 of the Act, a majority of the residents must be Native only if the determination is made that the village is modern and urban pursuant to paragraph (b)(3) of this section.

43 CFR 2651.2(b).

Anyone appealing or protesting a decision concerning the eligibility of an unlisted Native village has the burden of proof in establishing that the decision was incorrect. 43 CFR §2651.2(a)(9). In this case, Stratman has the burden of showing that there were not 25 residents of the Native Village of Woody Island in 1970 of whom 13 actually lived there for some period of time. 43 CFR §2651.2(b). He failed to carry this heavy burden of proof.

Native Woody Islanders have a long history of ties to Woody Island, with family lineage and ties to the village extending back many generations. The village had an identifiable physical location with more than 25 permanent residents as of April 1, 1970. More than 13 Natives enrolled to the village actually lived there for a period of time in 1970. The usage of the village by the Natives was consistent with their own cultural patterns and lifestyle. The village was not modern and urban in character. A majority of the residents were Native. The village meets the requirements for eligibility and its certification should be confirmed by this Board.

In reviewing the recommended decision, the Board should keep in mind that its standard of review is *de novo*. <u>See</u>, *United States v. Higgins*, 134 IBLA 307, 316 (IBLA 1996). The

ALJ did not find Leisnoi's witnesses lied or were not credible; the RD is not based upon any assessment of the demeanor or credibility of witnesses. Rather, the RD misapplies principles of law from ANCAB rulings that were thrown out in *Koniag, Inc. v. Andrus*, 580 F.2d 601 (D.C. Cir. 1978), misinterprets the definition of permanent residency, and mischaracterizes traditional Native activities on Woody Island as having been "mere recreation." This Board is free to substitute its own judgment and legal conclusions, and make its own factual findings based upon its independent review of the transcripts, photographs, affidavits, newspaper accounts, archaeology reports, historical records, and other evidence in the record.

### E.  Consistent with the Natives' own cultural patterns and lifestyle, more than thirteen enrolled Natives used Woody Island as a place where they actually lived for a period of time in 1970.

Consistent with the Natives' own cultural patterns and lifestyle, more than 13 Natives who were enrolled to Woody Island used the village as a place where they  actually lived for a period of time in 1970, including but not limited to the following:

1. Christina Simeonoff Hoen
2. Cien Marie Weeks
3. Chrislyn Kay Hoen
4. Maurice Harmon
5. Paul Harmon
6. James Harmon Hartle
7. Johnny Maliknak
8. Anita Sundberg Hartman
9. John Chya
10. Mary Chya
11. Edward Chya
12. John William Chya
13. Tamera Rae Chya
14. Michael George Chya
15. Nova Lenore Chya
16. Marie Redick Ungar
17. Larry T. Redick

18.     William W. Redick
19.     Robert J. Redick
20.     Marty Charles Shuravloff
21.     Karl Armstrong, Jr.
22.     Frank Pagano
23.     Ellen Simeonoff Pagano
24.     Carole Pagano
25.     Charlotte Pagano
26.     Michael Pagano
27.     Joseph Francis Fadaoff
28.     Edson Fadaoff, Jr.
29.     Rudy Sundberg, Jr.
30.     Jenny Pestrikoff Sundberg
31.     William C. Robertson
32.     Bruce Robertson
33.     John Michael Waller
34.     Kyra Ward
35.     Edward Ward
36.     Charles C. Naughton
37.     George Hansen
38.     Anna Kerr Blinn
39.     Roy Harding Madsen
40.     Charles Allen Madsen
41.     Jacqueline Adams Madsen
42.     Nicholas William Pavloff, Sr.
43.     Nick Andy Pavloff, Jr.
44.     Alexander John Fadaoff, Sr.
45.     Fred Zharoff

These 45 enrollees who lived for a period of time in Woody Island village in 1970 are described below.

1.     One of the Native Woody Island villagers who lived for a period of time on Woody Island during 1970 and who has deep and long-lasting family ties to Woody Island is **Christina "Tina" Simeonoff Hoen**.  Tina, born in 1943, testified at the hearings in Kodiak. Her father was Woody Island villager Kelly Simeonoff, Sr. (1911-1997).  Her mother was Woody Island villager Natalie Fadaoff (1916-1992).  The Fadaoff family started on Woody

Island in the late 1800s. Nicholas Fadaoff (who had spelled his name Fadeef), born in 1888, was the grandfather of Tina Simeonoff Hoen. He had been placed as a young boy in the Baptist Mission Orphanage on Woody Island at about the same time Fekla Balamutoff Kornilov (later known as Ella Chabitnoy) was placed in the orphanage. Fekla was Tina Simeonoff's grandmother and was one of the matriarchs on Woody Island. (L-Chart 5; L-Doc 108 at Tab 4, p. 6.)[27]

Tina had seven siblings: Woody Island villager Arthur Fadaoff (born 1932 on Woody Island; Richard Simeonoff (born 1933 on Woody Island); Woody Island villager and Leisnoi shareholder Ellen Mae Simeonoff (born 1937), married to Leisnoi shareholder/Woody Island villager/mission child Frank Pagano; Woody Island villager and Leisnoi shareholder Kelly Simeonoff, Jr. (born 1939), who testified at the hearing in Kodiak; Judith May "Tilla" Simeonoff (born in 1940 on Woody Island); Woody Island villager Peter E. Simeonoff (1944-1975); and Woody Island villager Freddie Simeonoff (born 1949, died in combat in Vietnam in 1971).

While married to Cyril "Cy" Frederick Hoen (who testified at the hearing in Kodiak), Tina gave birth to two children, both of whom lived on Woody Island for a period of time during 1970: Cien Marie Hoen Weeks (born 1963, and testified at the hearings in Kodiak) and Chrislyn Kay Hoen (born 1969).

---

[27]Inscriptions in the Holy Bible that Ella Chabitnoy gave to Tina Simeonoff Hoen, L-Doc A-16, contain dates of birth and death of numerous members of the Fadaoff and Chabitnoy families that corroborate the information contained in the Fadaoff Family Genealogy, L-Chart 5.

Tina Simeonoff Hoen's aunt was Woody Island villager Julia Ann "Judy" Fadaoff (1923-1980), who was married to Earl J. Komm, and raised Leisnoi shareholder and 1970 resident Mitch Komm Gregoroff, until Mitch's natural mother, Anastasia "Nettie" Fadaoff regained his custody and then raised him with her other children, known as the Harmon clan. Tina Simeonoff Hoen's other aunt was Woody Island villager Marjorie Fadaoff (born on Woody Island in 1924, died 1991), who gave birth to Tina's cousin, Woody Island villager, Leisnoi shareholder, and 1970 resident John Michael Waller (born 1947, and testified at the hearings in Kodiak). Tina Simeonoff Hoen had several other uncles and aunts who were Woody Island villagers with long ties to the island. Her uncle Edson Nicholas Fadaoff, Sr. was born on Woody Island in 1927 and died a Woody Island resident in 1958. He was married to Woody Island villager Mary Ponchene (1924-1965), and they had two children: Woody Island villager and Leisnoi shareholder Edson Fadaoff, Jr. (born 1956); and Woody Island villager, Leisnoi shareholder Joseph Francis Fadaoff (born 1954, lived on Woody Island for a period of time in 1970, and testified at the hearing in Anchorage). Another of Tina's uncles was Woody Island villager Simeon "Buddy" Fadaoff (born on Woody Island in 1930, died 1993). Another uncle of Tina Simeonoff born of the matriarch Ella Chabitnoy was Woody Island villager James O. Fadaoff (1932-1969), who committed manslaughter upon Tina's aunt, Woody Island villager Rosemary Challiak (born 1915, died on Woody Island in 1965).

Cousins of Tina Simeonoff who have ties to Woody Island include Leisnoi shareholder Mitch Komm Gregoroff (born on Woody Island in 1937, lived on Woody Island for a period of time in 1970, and testified at the hearing in Anchorage); Leisnoi shareholder Paul Harmon (born 1941, lived on Woody Island for a period of time in 1970, and testified at the hearing in

Anchorage); Leisnoi shareholder Maurice W. Harmon (born 1942, lived on Woody Island for a period of time in 1970, and testified at the hearing in Anchorage); Leisnoi shareholder Rayna Joyce Harmon (born 1944); Woody Island resident Daniel L. "Danny" Harmon (born 1947, died in combat in Vietnam in 1967); Leisnoi shareholder, Woody Island villager, mission child Ronald Fadaoff (born 1932); Leisnoi shareholder, mission child Alexander John Fadaoff, Sr. (born 1934 on Woody Island, lived for a period of time on Woody Island in 1970, died 1988); Woody Island villager, Leisnoi shareholder James G. Hartle (born 1952, lived on Woody Island for a period of time in 1970, and testified at the hearing in Anchorage); and Woody Island villager Leanna Ellen Harmon (born 1949).  (L-Chart 5; L-Doc 108 at Tab 4, p. 6.)

**Tina Hoen testified that she spent a great deal of time on Woody Island in 1970.** (Tr. at p. 2944.)  She testified that "When Cy would go out halibut fishing, I'd have him drop me off on the island with the girls and we'd spend the day or the evening there while he went fishing, and he'd pick us up on the way back." (Tr. at p. 2944.)  Tina Hoen frequented Woody Island often during 1970, stating "We spent just about every available spare minute over there." (Tr. at p. 2944.)  She owned a home on Woody Island and went to Woody Island in 1970 "as often as I went, which was, like I said, pretty much every available minute." Tr. at p. 2974.

In her deposition, when asked how many weeks she spent on Woody Island in 1970 she answered "Probably about eight or nine through the summer time." Deposition of Tina Hoen at page 33.  At the hearings, Tina Simeonoff Hoen confirmed that she considered Woody Island to be her home when she enrolled to the Native Village of Woody Island later known under ANCSA as being Leisnoi, Inc., and that when she did so enroll, she was not perpetrating any

type of fraud.  (Tr. at pp. 2968-2969.)  She had an intent to return to Woody Island to live if circumstances would permit.  Tr. at p. 2999.

Following the earthquake in 1964, Kodiak had no electricity, and the pipes had been shaken up such that there was a tremendous amount of debris and muck in the water, causing her to move back to Woody Island.  (Tr. at pp. 2970-2971.)  The water that had flowed through the pipes on Woody Island was no longer available since, shortly after the earthquake, the cap on the end of the pipe on the dock at Woody Island came off, causing all the water to flow into the ocean.  (Tr. at p. 2972.)  In order to get water, therefore, she had to carry it all the way from Upper Lake.  She could no longer use Lower Lake as a source of water because the earthquake had lowered Woody Island such that saltwater infiltrated Lower Lake.  (Tr. at pp. 2972-2973.)

Tina described how certain acts of governmental authority had made it more difficult to live on Woody Island.  Specifically, when she was growing up, the Natives had been allowed to use the FAA boat to commute back and forth between Woody Island, a means of transport that is no longer available.  (Tr. at pp. 2994-2995.)  She also described Acts of God that made it more difficult to live on Woody Island.  Specifically, the dock had been washed out in the tidal wave following the 1964 earthquake, and the new dock was narrower and did not have a float on the side.  (Tr. at pp. 2996-2997.)

Tina Simeonoff Hoen did not find out why her grandmother had sold her property on Woody Island to a non-Native, but believed that it may have been "due mostly to my Uncle James' suicide.  I believe one of her other children died during that period; and good business tactics on Mr. Brecken's part."  (Tr. at p. 3004.)  She testified that in 1971, she had been

-92-

trying to purchase her grandmother's home on Woody Island, and that "the news of Brecken's purchasing it was such a shock." (Tr. at p. 3007.) Tina Simeonoff Hoen's efforts to purchase the real property her grandmother owned on Woody Island in 1970 - 1971 evidences her intent and desire to return to live on Woody Island. Tina and her husband had offered $15,000.00 to Ella Chabitnoy to purchase the Chabitnoy house[28] on Woody Island. (Tr. at pp. 3007-2008.)

In his testimony at trial, Maurice Harmon verified that Tina Hoen had lived in the village while he was there in the 1960's, and that she had gone to school on Woody Island. Tr. at 1592. Johnny Maliknak, a lifelong resident of Woody Island, stated in his affidavit that Tina Hoen resided on Woody Island at various times during the period April 1, 1960 through April 1, 1970. L-Doc 176.

Cyril Hoen testified that he and his ex-wife, Tina, had two children, Cien Marie and Chrislyn Kay, born in 1963 and 1970 respectively. (Tr. at p. 2108.) He and his family had been living at Kodiak until the March, 1964 earthquake, and then "we moved onto Woody Island." He testified that he, his wife, Tina, and their daughter Cien stayed in what has been labeled the Simeonoff house. (Tr. at p. 2111.) In order to get drinking water, Mr. Hoen testified "I think all the water was pretty much carried for us at the time. We carried our own water in, drinking water." (Tr. at p. 2112.) **Cy Hoen estimated that his family spent at least 10 or 12 weekends staying on Woody Island in 1970.** (Tr. at pp. 2114-2115.)

---

[28]Ella Chabitnoy had obtained title to the property on which the home is situated, U.S. Survey 3630, on March 3, 1964. See, L-Doc 301. The purchase of real property on Woody Island by this Native who had longstanding ties to the village rebuts the thesis espoused in the RD that the village no longer existed after World War II. Witnesses to her homestead application were Angeline Maliknak and William J. Robertson. See, L-Doc A-12.

Although Mr. Hoen could not recall the date that the Simeonoff home on Woody Island burned down, he stated "If it was still there, that would be the dwelling that we would probably use, regardless of what the state was, as long as the roof was somewhat dry, and if we were over there for a couple of days." (Tr. at p. 2116.) Cy confirmed that **Tina Hoen, and his daughters, Cien Marie Hoen and Chrislyn Kay Hoen, were on Woody Island in 1970.** (Tr. at p. 2121.) Cy stated that it would be fair to say that his wife and her extended family have a substantial connection with Woody Island, that they have quite a bit of love for the Island, and "they have quite a bit of history there, yes." (Tr. at p. 2134.)

Tina Hoen "lived there [on Woody Island] in 1964 and clearly spent considerable time at the Simeonoff house each summer thereafter until 1973. She maintained the garden there, paid the taxes on the home, and attempted to buy the land from her grandmother." RD at page 60. This Alaska Native who owned real property on Woody Island, lived at various times on Woody Island, continued to frequent Woody Island, was on Woody Island on numerous occasions in 1970, and is duly enrolled to the Native Village of Woody Island, qualifies as a permanent resident of the Native Village of Woody Island who lived for a period of time in the village in 1970. Nonetheless, the RD erroneously suggests this Board must declare she "was not a permanent resident of the alleged Village on April 1, 1970" because in 1970 "she was willing to return to Woody Island to live only if the circumstances were right, *i.e.,* if her family's employment and earnings were such that it was feasible and affordable to do so." Id. at pages 60-61. Once again[29], the RD misconstrues the applicable law. "[W]here economic,

---

[29]The recommended decision is premised upon the falsehood that Natives who leave a village to pursue economic or educational opportunities forgo their entitlement to benefits under

educational, or other requirements have temporarily deprived one of any real choice, and both the subjective intent and the objective evidence indicate a genuine connection with the place of enrollment, that place is considered to be the permanent residence of the individual within the meaning of 25 CFR 43h.1(k), notwithstanding that for other purposes a court or an administrative agency may find that person's residence or domicile to be some place other than his 'permanent residence' as determined for purposes of the Alaska Native Claims Settlement Act." *Afognak*, VE 74-7 at page 13.

Tina Hoen described that there are no jobs on Woody Island so that "Unless I wanted to live on food stamps and welfare, you can't live over there", although, if economics would permit it, "I would love to…I would still do it." (Tr. at p. 2977.) According to Tina Hoen, it is not feasible to try to live and work off Woody Island, because jobs are on Kodiak, and there are difficulties in commuting back and forth between Woody Island and Kodiak. She gave examples of two boats owned by her and her husband having been swamped and battered while moored at Woody Island. (Tr. at p. 2992.) Moreover, she declined to become a ward of the State, testifying "I will not live on welfare." (Tr. at p. 2991.) She had the requisite

---

ANCSA: "The weight of the evidence shows that, prior to 1970, nearly all of the potential permanent residents had become part of the modern cash economy… They chose to live near employment, educational, and medical services or opportunities and intended to return to live on Woody Island, if at all, only if the island ever developed such services and opportunities…" RD at page 42. In fact, *Afognak* makes it clear that a village can be deemed the permanent residence of a Native even "where economic, educational, or other requirements" have forced a Native to seek jobs or schooling elsewhere. (Afognak was destroyed by the earthquake and Tsunami of 1964). *Afognak,* VE #74-7 at page 13.

intent to return in 1970[30], and the objective evidence indicates a genuine connection with Woody Island. ALJ Sweitzer ultimately concluded at page 83 of his decision that it was "more likely than not" that Christina was one of the "enrollees who qualify" as having lived on Woody Island for a period of time in 1970. This Board should formally find that she was, in fact, a permanent resident who did live for a period of time on Woody Island in 1970.

    2.      Another Leisnoi shareholder who lived on Woody Island for a period of time in 1970 and has longstanding family ties to the Native Village of Woody Island is Leisnoi shareholder **Cien Marie Hoen Weeks** (born 1963, and testified at the hearing in Anchorage). Cien is the daughter of Christina Carole "Tina" Simeonoff, described above. Cien Marie's sister is Leisnoi shareholder, Woody Island villager Chrislyn Kay Hoen (born 1969, and lived for a period of time on Woody Island in 1970). Cien Marie's aunts and uncles consist of the brothers and sisters of Tina Simeonoff, described above. These include Kelly Simeonoff, Jr. (born 1939), a Leisnoi shareholder who testified at the hearing in Kodiak. Cien Marie's grandmother was Natalie Fadaoff (born on Woody Island in 1916, died 1992), who was married to Woody Island villager Kelly Simeonoff, Sr. (1911-1997). Cien's great grandmother

---

[30]The RD mistakenly suggests that Tina Hoen lacked the intent in 1970 to return to Woody Island based upon "the efforts of herself and her husband to establish a home in Bell Flats rather than on Woody Island, beginning in 1973." RD at page 61. Efforts that began in 1973 to establish a home somewhere other than on Woody Island do not negate her intent in 1970 to have returned to the Village of Woody Island where she owned real property and had attempted, in 1970 - 1971, to purchase the home of her grandmother, Ella Chabitnoy. Tr. at pp. 3005-3008.

was Woody Island matriarch Fekla "Ella" Kornilov Chabitnoy (1891-1971). (L-Chart 5; L-Doc 108 at Tab 4, p. 5.)[31]

At the hearing in Kodiak in August of 1998, Cien reviewed her Fadaoff family genealogy chart, L-Chart 5, and testified that it appeared to be a correct depiction of the Fadaoff family genealogy. (Tr. at p. 2929.)

The RD contains a flawed recommendation at page 61 that the Board declare Cien's "permanent residence was not the alleged Village on April 1, 1970." **Cien Marie Weeks testified that she was on Woody Island in 1970.** (Tr. at pp. 2929-2930.) While on Woody Island in 1970, she slept in a tent on Woody Island, and also slept on the family boat tied up at Woody Island. (Tr. at p. 2941.) She testified that every summer herself, her mother, her father, and her sister, who was at that time a baby, would go to Woody Island for picnics, camping, fishing, and berry picking. (Tr. at p. 2930.) While on Woody Island, she and her mother would take care of her baby sister and would go through some of the berry patches near the houses. She would also go through "my great-grandmother Ella Chabitnoy's house." (Tr. at p. 2930.) Cien Marie Weeks has "great feelings about Woody Island." (Tr. at p. 2931.) She observed that her "family history is tied in with that island" and that her "great grandmother grew up there, my grandmother grew up there, my mother grew up there, aunts and uncles, all my mom's siblings grew up on that island. Most of the stories and the histories that I hear about my family come from my mother and the activities that they had on Woody Island." (Tr. at p. 2931.)

---

[31] A photograph of Ella Chabitnoy and her great grandchild, Cien Weeks, is pictured in the Hoen collection at Phot A8-3.

Cien Marie Weeks has continued to maintain family ties to Woody Island, having brought her children, Tyler and Jamison, the great-great grandchildren of Ella Chabitnoy, to visit Woody Island. Cien Marie Hoen Weeks is a good example of the longstanding ties of Native Woody Islanders to Woody Island. She can trace her family connections to Woody Island through multiple generations. (Tr. at p. 2934.)

Cien Marie Hoen Weeks testified that if she had her choice of places to live, it would be Woody Island. She considers Woody Island to be her home. (Tr. at pp. 2934-2935.) As a minor in 1970, Cien's residence is determined according to that of her mother, Tina Simeonoff Hoen. *Manley Hot Springs*, VE #74-6 at page 27; *Village of Council*, VE #74-47 at page 26. As noted above, Tina Hoen was a permanent resident of Woody Island in 1970, so her daughter Cien also qualified as a permanent resident of Woody Island. Moreover, Cien actually lived on Woody Island for a period of time in 1970. At page 83 of his recommended decision, ALJ Sweitzer found that it was "more likely than not" that Cien qualified as an enrollee who actually lived for a period of time on Woody Island in 1970. This Board should find that she was, in fact, a resident of the village who did live for a period of time on Woody Island in 1970.

3.  **Chrislyn Kay Hoen** is another Leisnoi shareholder and Woody Island villager who lived on Woody Island for a period of time in 1970. Chrislyn was born in 1969. Her mother is Christina Carole "Tina" Simeonoff, described above. Her sister is Cien Marie Hoen, discussed above. Like her sister Cien, Chrislyn's grandparents include Woody Island villagers Natalie Fadaoff (1916-1992) and Kelly Simeonoff, Sr. (1911-1997). Her great grandmother is Fekla "Ella" Kornilov Chabitnoy (1891-1970). (L-Chart 5; L-Doc 108 at Tab 4, p. 6.)

-98-

The RD contains the flawed recommendation at page 61 that the Board declare that Chrislyn's "permanent residence was not the alleged Village on April 1, 1970." This fourth-generation Native Woody Islander was a minor in 1970, and is automatically deemed to be a permanent resident of Woody Island by virtue of the permanent residency status of her mother, Tina Simeonoff Hoen.

Chrislyn's presence on Woody Island in 1970 is established by the testimony of her mother, Tina Simeonoff Hoen, Tr. at p.2944; her father, Cy Hoen, Tr. at pp. 2114-2115, 2121, and her sister, Cien Marie Weeks, Tr. at pp. 2930, 2941. At page 83 of his recommended decision, the ALJ ultimately concluded that it was "more likely than not" that Chrislyn qualifies as one of the thirteen required enrollees who actually lived for a period of time on Woody Island in 1970. This Board should find that she was, in fact, a resident of the village who did live for a period of time on Woody Island in 1970.

**6.** Another Native Woody Island villager who lived on Woody Island for a period of time in 1970 and testified at the hearings in this case is **Maurice W. Harmon** (born 1942). Maurice's father was Woody Island villager Raymond Royal Harmon, Sr. (1912-1946). Maurice's mother was Leisnoi shareholder and Woody Island villager Anastasia "Nettie" Fadaoff (born on Woody Island in 1911, died 1974). Maurice's grandparents were Woody Island villager, mission child Nicholas Fadaoff (1888-1932, buried on Woody Island), and Woody Island villager, mission child Fekla "Ella" Kornilov Chabitnoy (1891-1970). Maurice is the half brother of Mitch Komm Gregoroff, another Leisnoi shareholder who lived on Woody Island for a period of time in 1970 and testified at the hearing in Anchorage. His sister is Rayna Joyce Harmon (born 1944), a Leisnoi shareholder and Woody Island villager. Another

brother of Maurice's is Leisnoi shareholder and Woody Island villager Paul Harmon (born 1941, who testified at the hearing in Anchorage and lived for a period of time on Woody Island in 1970). James G. Hartle (born 1952), a Leisnoi shareholder and Woody Island villager who lived for a period of time on Woody Island in 1970 and testified at the hearings in Anchorage, is the half brother of Maurice Harmon. Daniel L. "Danny" Harmon (1947-1967), was Maurice's other brother, who died in Vietnam in 1967 and is buried on Woody Island at the spot picked by Maurice Harmon. Three of Maurice's children are Leisnoi shareholders: Carol Raylene Harmon (born 1967); Kimberly Marie Harmon (born 1970); and Kariena Sue Harmon (born 1971). (L-Chart 5; L-Doc 108 at Tab 4, p. 7.)

Maurice Harmon labeled an acetate overlay, Overlay No. 2, on Phot 1-3, that served as the reference point for much testimony given by him and successive witnesses. He labeled numerous existing structures and the location of preexisting structures that were on Woody Island, including the Pavloff house, the Frump house, the Harmon house, the Fadaloff house, the Simeonoff house, the Pump house, the Russian church, his brother Danny's grave, other graveyards, the Simeonoff garden, and the Chabitnoy garden. His labeling was accurate and based upon firsthand knowledge that he acquired while living in the Native Village Woody Island. (Tr. at pp. 1568-1569.) He also identified the house owned by Pete Tunohun in the North Village a area that was not visible in the photograph. (Tr. at pp. 1568-1569.) Maurice Harmon resided in the Pavloff house when he first moved to Woody Island, and then he and his family later moved to the Harmon house. (Tr. at p. 1572.) He identified Angeline Maliknak as having lived in the Pavloff house after he and his family moved out to the Harmon house. (Tr. at pp. 1572-1573.) He identified Agnes Frump as having lived in the Harmon

-100-