BRUCE M. LANDON
DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone: 907-271-5452
Facsimile: 907-271-5827
Email: bruce.landon@usdoj.gov
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| OMAR STRATMAN, | ) | |
| | ) | CASE NO. 3:02-cv-0290 (JKS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEISNOI, INC., KONIAG, INC., | ) | |
| and DIRK KEMPTHORNE, | ) | |
| Secretary of the Interior, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANT KEMPTHORNE'S REPLY ON CONGRESSIONAL RATIFICATION
OF LEISNOI'S ELIGIBILITY FOR ANCSA BENEFITS

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  THIS CASE IS CONTROLLED BY THE LAW RELATING TO RATIFICATION, WHICH
    APPLIES TO THE RATIFICATION OF EXECUTIVE ACTS REGARDLESS OF
    WHETHER THEY ARE UNAUTHORIZED OR ERRONEOUS . . . . . . . . . . . . . . . . . 2

II.  CONGRESS RATIFIED THE CERTIFICATION OF LEISNOI'S ELIGIBILITY WHEN IT
     ENACTED SECTION 1427 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  PLAINTIFF'S OBJECTIONS TO RATIFICATION ARE WITHOUT MERIT . . . . . . . . . . 9

      A.  Plaintiff Misunderstands Sub-Section 1427(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.  Ratification of Leisnoi's Eligibility is Fully Consistent with Section 1412 of ANILCA
          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.  Plaintiff's Interpretation of Section 1427 Frustrates Congress's Plan for A Rapid and
          Certain Settlement of Land Claims in the Koniag Region Leading to the
          Expansion the the Alaska Peninsula National Wildlife Refuge  . . . . . . . . . . . . 11

      D.  The Ratification of Leisnoi's Eligibility Is Consistent with Subsection 1427(e) . . . . 15

IV.  THE SECRETARY'S INTERPRETATION IS ENTITLED TO CHEVRON DEFERENCE
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.  Congress Implicitly Delegated To The Secretary Authority To Act With The Force Of
          Law With Regard to ANCSA and Section 1427  . . . . . . . . . . . . . . . . . . . . . . . . 16

      B.  Plaintiff's Objection to Chevron Deference Is Premised On The Erroneous Theory
          That This Case Is Governed By The Law Relating To Implied Repeals Rather
          Than Ratification of Executive Action  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      C.  The Fact That The Secretary Disagreed With The IBLA Does Not Lessen The
          Deference Due The Secretary's Interpretation of Section 1427 . . . . . . . . . . . . . 18

      D.  The Secretary's Adoption Of The Deputy Solicitor's Opinion Does Not Diminish The
          Deference Owed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.  IN THE ALTERNATIVE, THE SECRETARY'S INTERPRETATION IS ENTITLED TO
    *SKIDMORE* DEFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

TABLE OF AUTHORITIES

FEDERAL CASES

Aleknagik Natives Ltd. v. United States, 806 F.2d 924 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . 16

Chugach Alaska Corp. v. Lujan, 915 F.2d 454, 457 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . 16, 17

Confederated Salish and Kootenai Tribes of the Flathead Reservation, Montana v. United States, 401 F.2d 785 (Ct Cl. 1968), cert. denied, 393 U.S. 1055 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Eichelberger v. N.L.R.B., 765 F.2d 851 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Friends of the Earth v Weinberger, 562 F.Supp. 265 (D. D.C 1983) . . . . . . . . . . . . . . . . . . 5, 15

Good Samaritan Hosp. v. Shalala, 508 U.S. 402 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Haynes v. United States, 891 F.2d 235 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Holden v. Joy, 84 U.S (17 Wall.) 211 (1872) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Iowa Homestead Company v. Des Moines Nav. & R. Co., 84 U.S. 153 (1872) . . . . . . . . . . . . . 3

INS v. Cardoza-Fonseca, 480 U.S. 421 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Isbrandtsen-Moller Co. v. United States, 300 U.S. 139 (1937) . . . . . . . . . . . . . . . . . . . . 7, 9, 15

Leisnoi v. Stratman, 154 F.3d 1062 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Lujan-Armendariz v. Immigration and Natural Service, 222 F.3d 728 (9th Cir. 2000) . . . . . . . 4

Radzanower v. Touche Ross & Co., 426 U.S. 148 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Security Industry Ass'n v. Board of Governors of Federal Reserve System, 468 U.S. 137 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Seldovia Native Ass'n, Inc. v. Lujan, 904 F.2d 1335 (9th Cir. 1990) . . . . . . . . . . . . . . . 16, 19-21

Southwest Sunsites, Inc. v. Federal Trade Commission, 785 F.2d 1431 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Stamper v. Secretary of Agriculture, 722 F.2d 1483 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 18

United States v. Alaska, (Alaska) 521 U.S. 1 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 15

United States v. Creek Nation, 295 U.S. 103 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Des Moines Valley R. Co., 84 F. 40 (8th Cir. 1897) . . . . . . . . . . . . . . . . . . . . 4

United States v. Mead Corporation, 533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

United States v. United Continental Tuna Corp., 425 U.S. 164 (1976) . . . . . . . . . . . . . . . . . . . 5

Wilderness Society v. U.S. Fish & Wildlife Service, 353 F.3d 1051 (9th Cir. 2003 en banc)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

FEDERAL STATUTES

43 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

43 U.S.C. § 1601(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

43 U.S.C. § 1610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

43 U.S.C. § 1611(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

43 U.S.C. § 1611(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

43 U.S.C. § 1611(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

43 U.S.C. § 1613(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11, 13

43 U.S.C. § 1613(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

43 U.S.C. § 1613(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

43 U.S.C. § 1613(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

43 U.S.C. § 1613(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

43 U.S.C. § 1613(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

43 U.S.C. § 1613(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

43 U.S.C. § 1624 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5 U.S.C. § 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

94 Stat. 2372 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pub. L. 96-487 (Dec. 2, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


## FEDERAL REGULATIONS

43 CFR § 2651.2(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


## OTHER MISCELLANEOUS

43 Federal Register 55287 (Nov. 27, 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

47 Federal Register 26392 (June 18, 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

INTRODUCTION

In Defendant Kempthorne's Memorandum on the Merits of the Secretary's Decision That Congress Has Ratified Leisnoi's Eligibility As A Native Village Under The Alaska Native Claims Settlement Act (hereafter Secretary's Brief) (Docket # 149), we demonstrated that the Secretary's interpretation of Section 1427 of the Alaska National Interest Lands Conservation Act (ANILCA), Pub. L. 96-487 (Dec. 2, 1980) 94 Stat. 2372,[1] as ratifying the determination that Leisnoi is eligible as a Native village for benefits under the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. § 1601 *et seq.* was entitled to deference, and was, in any event, clearly correct. That interpretation of Section 1427 moots the remaining issues in this action. Accordingly, this Court should affirm the Secretary's determination and dismiss this action.

In his response, Plaintiff ignores the well-established law regarding Congressional ratification of Executive actions. His brief captioned "Stratman's Combined Opposition to Defendant's Motions to Dismiss at Docket Nos. 120, 143, & 149 (ANILCA Section 1427 Legislatively Ratified Leisnoi's Status and Mooted Stratman's Action)" (hereafter "Plnt's 1427 Opposition") is premised almost exclusively on the erroneous proposition that the rules regarding Congressional ratification of Executive action apply only to instances where the Executive's action was "unauthorized." Plaintiff argues that because the Executive action here was "erroneous" rather than "unauthorized," the standards for evaluating ratifications are inapplicable and that the Court should instead apply the standards for determining whether Congress has impliedly repealed a statute.

---

[1] For the convenience of the Court, the complete text of Section 1427 was attached as Fed. Def. Exh. 1 to Docket # 149.

Rather than attempting to refute our showing that the ratification in Section 1427 fits comfortably within the Supreme Court's cases on ratification, Plaintiff focuses on the wrong doctrine and seeks to show that Section 1427 fails to satisfy the test for an implied repeal.

In this Reply, we demonstrate that the courts, including the Supreme Court, have applied the doctrine of ratification both to actions of the Executive that were unauthorized and to those that were erroneous. No higher standard is required for ratification of erroneous actions than for unauthorized actions. Indeed, the Supreme Court has found ratification of erroneous actions based on statutes far less clear than Section 1427.

Because Section 1427 meets the requirements for ratification, the Court should affirm the Secretary's interpretation. This is particularly so given the deference to which the Secretary's interpretation is entitled.

## I. THIS CASE IS CONTROLLED BY THE LAW RELATING TO RATIFICATION, WHICH APPLIES TO THE RATIFICATION OF EXECUTIVE ACTS REGARDLESS OF WHETHER THEY ARE UNAUTHORIZED OR ERRONEOUS

Plaintiff's analysis goes most astray in the portion of his brief titled "The principles and canons of construction regarding implied repeal govern the determination of this issue." Docket # 171 at 8-17. Plaintiff would have the Court ignore the law on congressional ratification or confirmation of Executive action by arguing that ratification "relate[s] to Congressional ratification of 'unauthorized' acts. *Id.* at 10. Plaintiff states that his "challenge to the Secretary's determination of Leisnoi's eligibility is not based on the contention that [the] Secretary's decision was unauthorized, it is based on the contention that the Secretary's decision was *erroneous*." Plaintiff continues:

> The issue is not whether Section 1427 "ratified" any unauthorized act by the
> Secretary in certifying Leisnoi as an eligible Native village.  Rather it is whether
> Section 1427 exempted Leisnoi from the village eligibility requirements provided
> in ANCSA Section 11(b)(3), irrespective of whether Leisnoi satisfied the
> eligibility requirements.  The issue properly framed, is whether Section 1427
> repealed Section 11(b)(3)'s village eligibility provisions with regard to Leisnoi.

*Id.*

This tortured recasting of the issue is contrary to Supreme Court precedent and must fail.

Congress can and has ratified Executive action regardless of whether that action was

unauthorized or erroneous, and the Courts have imposed no different standard for ratification

based on whether the potential defect in the Executive action arose out of lack of authority or an

erroneous determination.[2]  In *United States v. Creek Nation*, 295 U.S. 103 (1935), the Supreme

Court found confirmation and ratification of an erroneous action of the Executive – an erroneous

survey of the boundary of the unceded lands of the Creek tribe and a subsequent conveyance of

those unceded lands pursuant to a congressional statute.  Similarly, in *Confederated Salish and*

*Kootenai Tribes of the Flathead Reservation, Montana v. United States,* 401 F.2d 785 (Ct Cl.

1968), *cert. denied,* 393 U.S. 1055 (1969), two erroneous surveys caused the Executive to place

certain lands belonging to the tribes into a National Forest.  The Court of Claims found

confirmation and ratification of the erroneous action by virtue of the consistent legislative and

executive treatment of the lands as national forest land.

In *Iowa Homestead Company v. Des Moines Nav. & R. Co.,* 84 U.S. 153, 165 (1872), the

Supreme Court held that Congress had ratified an adjustment agreement as to "lands that were

---

[2] Indeed it would be incongruous to impose a higher standard in cases of ratification of erroneous
acts than of ultra vires acts.  Presumably Congress would be more willing to give effect to a
merely erroneous, but authorized action than to a completely unauthorized action.

erroneously certified" by the Secretary of the Interior.  *See also, United States v. Des Moines Nav. & R. Co.,* 84 F. 40, 43 (8th Cir. 1897).

These cases also demonstrate the folly of trying to draw an distinction between the ratification of erroneous actions on the one hand, and unauthorized actions on the other.   When a statute conditions Executive action on the existence of certain facts and the Executive takes that action erroneously believing that those facts are present, the action is erroneous, but arguably also without authority.  Congress in ANCSA authorized the conveyance of benefits to Alaska Native villages that met certain requirements.  If the Secretary certifies a village under the mistaken belief that the village meets the requirements of ANCSA, it is a matter of semantics whether the action was "unauthorized" or "erroneous."  Indeed the courts in *Creek Tribe* and *Confederated Salish and Kootenai Tribes* use the terms interchangeably in their opinions.

The proper distinction between ratification and confirmation on the one hand and implied repeal on the other does not turn on whether the Executive's action was erroneous as opposed to unauthorized.  Rather, it depends  on whether Congress  (1) was ratifying or confirming an action of the Executive or (2) was changing the law prospectively without regard to an existing action of the Executive.  The Secretary's decision at issue in this case involves the first situation.  The cases relied upon by Plaintiff involve the latter situation.  *Lujan-Armendariz v. Immigration and Natural Service,* 222 F.3d 728 (9th Cir. 2000) (whether Congress intended in the 1996 amendments to the Immigration and Nationality Act to deprive legal aliens of the protections of the Federal First Offenders Act against deportation); *Radzanower v. Touche Ross & Co.,* 426 U.S. 148 (1976) (whether provision of Securities and Exchange Act impliedly repealed provision

of National Banks Act that limited venue of suits against national banks to the district where the bank is located); *United States v. United Continental Tuna Corp.,* 425 U.S. 164 (1976) (whether the 1960 amendments to the Suits in Admiralty Act permitted claims previously governed by the Public Vessels Act to be filed free from the restrictive provisions of the Public Vessels Act).

*Friends of the Earth v Weinberger,* 562 F.Supp. 265 (D. D.C 1983), also relied on by plaintiffs, is likewise irrelevant to the law relating to ratification.  In that case, there was no question of congressional ratification of the Executive's action.  To the contrary, Congress *rejected* the Executive's action (a legislative proposal for the basing of missiles supported by an abbreviated EIS).  By a new statute, Congress then directed the Executive to resubmit a report on the issue, while explicitly providing that the required report would not be subject to NEPA.

This case, on the other hand, presents a classic case of Congressional ratification of Executive action.  Congress was on notice that the Secretary had determined that Leisnoi was an eligible ANCSA village, but that a controversy existed about the correctness of that decision.  Various parties requested Congress to refrain from enacting a settlement of the Koniag regional land claims until the controversy regarding Leisnoi's eligibility was resolved.  Congress rejected those suggestions.  Instead, it enacted a complex settlement of the entitlements in the Koniag region.  As explained in detail below, that settlement assumed and depended on Leisnoi's eligibility for its implementation.  Congress's action fits comfortably within the standards for a finding of ratification used by the Supreme Court in *Creek Tribe, Confederated Salish and Kootenai Tribes* and other cases.

II.  CONGRESS RATIFIED THE CERTIFICATION OF LEISNOI'S ELIGIBILITY WHEN IT
ENACTED SECTION 1427

That Section 1427 satisfies the requirements for Congressional ratification of Executive

Action is clear from the Supreme Court's recent decision in *United States v. Alaska, (Alaska)* 521

U.S. 1, 44-45 (1997) .  In that case, the Supreme Court held that Congress ratified the

Executive's action of including submerged lands in the withdrawal for the National Petroleum

Reserve-Alaska even if the Executive had lacked authority to include them at the time of the

Executive Order creating the Reserve.  As explained in detail at pages 16-17 of the Secretary's

Brief (Docket # 149), no particular words are required for Congressional ratification.

Ratification will often be found in instances where Congress was on notice of the disputed

matter, and the ratification is important to the successful implementation of the scheme and goal

of the statute involved.   Such was the case with the ratified Executive action in *Alaska,* and such

is the case here.

The parallels between the congressional ratification of Leisnoi's eligibility in Section

1427 and the congressional ratification of the reservation of submerged lands found by the

Supreme Court in *Alaska,* are striking.  First, in both cases the ratification was expressed by a

statement of Congress's understanding of a legal situation – in *Alaska* that the lands in the NPRA

belonged to and would continue to belong to the United States –  here that the section would be

"in full satisfaction" of the "right of each Koniag Deficiency Village Corporation [including

Leisnoi] to conveyance under [ANCSA]" and that Koniag Deficiency Village Corporations are

"entitled, under section 14(a) of [ANCSA] to a conveyance...."  Second, in both cases, Congress

was on notice of a potentially questionable action by the Executive – in *Alaska* the Executive's

use of the Pickett Act to reserve submerged lands, here the challenges to the Secretary's

certification of Leisnoi[3/].  Finally, in both cases the ratification was important to the smooth

implementation of a complex provision of the statute.

     The Supreme Court found ratification in a number of similar cases without requiring the

particular language or analysis of the standards for "implied repeal" Plaintiff contends apply.

Thus, in *Holden v. Joy,* 84 U.S. (17 Wall.) 211, 247 (1872) the Supreme Court found

congressional ratification of any defects in a treaty with the Cherokee because Congress had

repeatedly recognized the validity of the treaty by enacting appropriation statutes for its

implementation.  *See also*, *Isbrandtsen-Moller Co. v. United States,* 300 U.S. 139, 147 (1937)

("Whatever doubt may be entertained as to the intent of Congress that the Shipping Board should

be subject to transfer by the President, and, if so, whether the order lay before Congress the

requisite number of days to satisfy the statutory mandate, Congress appears to have recognized

the validity of the transfer and ratified the President's action by the appropriations Acts of April

7, 1934, March 22, 1935, and May 15, 1936, all of which make appropriations to the Department

of Commerce for salaries and expenses to carry out the provisions of the Shipping Act as

amended and refer to the executive order.").

     In arguing against ratification, Plaintiff also mischaracterizes what Section 1427 actually

does and how it works.  He repeatedly refers to Section 1427 as "amending ANCSA's original

land selection and entitlement provisions."  Plnt's 1427 Brief at 22, see also *Id.* at 23, 24.   But

---

[3/] Plaintiff seeks to have the Court ignore the various indications that Congress was on notice of
the potential dispute about Leisnoi's eligibility because they did not make their way into a
committee report.  Suffice to say, that those indications of notice compare very favorably to the
indications of notice found sufficient in *Alaska.*

the section does much more than that. It recognizes certain entities (including Leisnoi) as having entitlements under ANCSA, and directs an exchange of lands to those entities and a division of interests using a complex formula based on the entitlements of the various villages. Under ANCSA, villages do not have an entitlement unless they are eligible for ANCSA benefits. 43 U.S.C. § 1613(a).

Congress in Section 1427(a)(4) and (5) listed Leisnoi by name as a "Koniag deficiency village corporation" and a "Koniag 12(b) Village Corporation." In Section 1427(a)(2), Congress stated that "Koniag deficiency village corporations" are "entitled under section 14(a) of the Alaska Native Claims Settlement Act, to a conveyance of the surface estate" of lands on the Alaska Peninsula. In Section 1427(a)(3), Congress stated that "Koniag 12(b) Village Corporations" are "entitled under section 14(a) of the Alaska Native Claims Settlement Act by reason of section 12(b) of that Act, to conveyance of the surface estate" of lands on the Alaska Peninsula. In full satisfaction of those entitlements and other entitlements, Congress mandated an exchange of lands on the Alaska Peninsula for lands on Afognak Island. Section 1427(b). Congress likewise mandated that the Afognak lands be conveyed to a joint venture "consisting of the Koniag Deficiency Village Corporations, the Koniag 12(b) Village Corporations and Koniag Incorporated." Section 1427(c).

Congress also provided that

[i]n such joint venture, each Koniag Deficiency Village Corporation shall participate in the share of the Koniag Deficiency Village corporations as a class in the ratio that the entitlement of each to deficiency village acreage on the Alaska Peninsula bears to the total deficiency village acreage on the Alaska Peninsula and each Koniag 12(b) Village Corporation shall participate in the share of the Koniag 12(b) Village Corporations as a class in the ratio that the number of Natives

enrolled under the Alaska Native Claims Settlement Act to the village that corporation bears to the number of Natives enrolled to all villages represented by Koniag 12(b) Village Corporations.

Section 1427(c).

Thus Congress defined Leisnoi as a member of two groups of corporations "entitled" to conveyances under section 14(a) of ANCSA, and directed that lands be conveyed to a joint venture including Leisnoi in satisfaction of that entitlement.  Koniag's share in the Koniag 12(b) class portion is calculated in accordance with the number of members enrolled to Leisnoi, with no need for any further determination of entitlement or eligibility.

The conclusion is inescapable that Congress intended to and did ratify, that is, accept as final, the Executive's certification of Leisnoi's eligibility.  This ratification closely resembles the ratification of the Executive Order at issue in *Isbrandtsen-Moller Co. v. United States,* 300 U.S. 139, 147 (ratification where appropriations act appropriated salaries and mentioned the executive order) and in *Alaska* (ratification by Congress where statute mentioned a reserve and signaled Congress's understanding that the reserve would remain in federal ownership).

III.  PLAINTIFF'S OBJECTIONS TO RATIFICATION ARE WITHOUT MERIT

    A.  <u>Plaintiff Misunderstands Sub-Section 1427(f)</u>

Subsection 1427(f) provides:

    (f) All conveyances made by reason of this section shall be subject to the terms and conditions of the Alaska Native Claims Settlement Act as if such conveyances (including patents) had been made or issued pursuant to that Act.

Plaintiff argues that this provision negates the ratification of Leisnoi's eligibility.  According to Plaintiff, a "term and condition" of ANCSA is that conveyances be made only to villages found

eligible; and therefore, Section 1427 as a whole cannot be read as "exempting" Leisnoi from the eligibility requirements.

Plaintiff seriously misunderstands subsection (f). The terms and conditions of ANCSA conveyances are set forth in 43 U.S.C. § 1613(c) which provides that patents to village corporations shall be "subject to the following requirements." Those requirements involve obligatory reconveyances to those occupying land as a primary place of residence, primary place of business, subsistence campsite, or reindeer husbandry headquarters (43 U.S.C. § 1613(c)(1)), to non-profit organizations (43 U.S.C. § 1613(c)(2), to municipal corporations (43 U.S.C. § 1613(c)(3), and to the appropriate government as airport and related sites (43 U.S.C. § 1613(c)(4). In addition, 43 U.S.C. § 1613(c)(5) affords Regional Corporations the right during the first ten years after the enactment of ANCSA to review and render advice to the Village Corporations on all land sales, leases and other transactions.

Congress left no doubt that the "terms and conditions" referred to in subsection 1427(f) are the reconveyance requirements in 43 U.S.C. § 1613(c), because Congress also refers to them in subsection 1427(e)(3)(B) in a context that makes clear that it is the reconveyance provisions of 43 U.S.C. § 1613(c) that are being referred to:

> (B) Upon conveyance of each Koniag Village Corporation of that land described in subparagraph (a), such village corporation shall comply with the requirements of subsection (f) of this section, except that it shall be required to convey twenty acres to the State in trust for any Municipal Corporation established in the Native village in the future for community expansion and appropriate rights of way for public use and other foreseeable community needs.

Indeed, giving "terms and conditions" the broad meaning Plaintiff attributes to it would effectively nullify Section 1427. If village eligibility is one of the "terms and conditions" for

conveyances under ANCSA (43 U.S.C. § 1613(a)), so is the requirement that conveyances be made only of land selected by and withdrawn for selection by a specific village. 43 U.S.C. § 1613(a); 43 U.S.C. § 1611(a). Another "condition" of ANCSA conveyances is that they be made directly to Village corporations rather than a joint venture. 43 U.S.C. § 1613(a). Neither of those "terms and conditions" is observed in the Koniag settlement.

In sum, Plaintiff's reliance on Subsection 1427(f) is without merit.

B. Ratification of Leisnoi's Eligibility is Fully Consistent with Section 1412 of ANILCA

Section 1412 of ANILCA provides:

> Except as specifically provided in this Act (i) the provisions of the Alaska Native Claims Settlement Act are fully applicable to this Act, and (ii) nothing in this Act shall be construed to alter or amend any of such provisions.

Plaintiff argues that this provision negates the ratification of Leisnoi, which Plaintiff views as a amendment of ANCSA not specifically provided for in ANILCA. He is wrong. First, Congress's ratification of the Executive's determination that Leisnoi is an eligible ANCSA village, does not amend the definition of eligibility in ANCSA any more than the ratification of the Executive Order creating the National Petroleum Reserve-Alaska (found by the Supreme Court in *Alaska*) altered or amended the President's powers under the Pickett Act. In any event, the ratification could hardly be more "specifically provided in this Act." Congress (1) listed Leisnoi by name, (2) stated that it was entitled to conveyances, and (3) directed a conveyance be made to a joint venture including Leisnoi.

C. Plaintiff's Interpretation of Section 1427 Frustrates Congress's Plan for A Rapid and Certain Settlement of Land Claims in the Koniag Region Leading to the Expansion the the Alaska Peninsula National Wildlife Refuge

Section 1427 is replete with indications that Congress intended a rapid and certain resolution of claims in the Koniag region. Because of this desire, Congress provided unusually

short deadlines throughout Section 1427.  Subsection 1427(a)(5) gave Koniag's board only 60

days in which to designate as "Koniag 12(b) Village Corporations" the four corporations listed in

Subsection 1427(a)(4).  The villages listed in Subsection 1427(e) had only sixty days to file a

release with the Secretary if they wished to be deemed an eligible village.  Additional acreage

was to be conveyed to Ouzinkie Native Corporation and Koniag, Incorporated pursuant to

Section 1427(d), if within 90 days they entered into an agreement with the Kodiak Island

Borough.

      The conveyance of the Afognak lands was to be made "as soon as practicable after there

has been filed with the Secretary of the Interior a duly executed joint venture agreement ...."

Section 1427(c).  Only upon conveyance of the Afognak lands to the joint venture would the

Alaska Peninsula lands become part of the Alaska Peninsula National Wildlife Refuge.  Section

1427(b)(3).  These short deadlines and obvious indications of a desire for prompt action make no

sense if one were to accept Plaintiff's theory that Congress intended Leisnoi's eligibility to

remain unresolved indefinitely.

      Despite these clear indications of congressional desire for prompt implementation of the

Koniag settlement, Plaintiff argues that both Congress and the Department of Interior had

reached a policy decision that accuracy of village eligibility determinations always trumps the

policy of timeliness.  Plaintiff notes that ANCSA in general was intended to effect a settlement of

Native claims "rapidly" and with "certainty" (43 U.S.C. § 1601(b)), yet the Secretary of the

Interior in Secretarial Order No. 2965 himself waived the two and one-half year deadline for

making village eligibility determinations.  See Plnt's 1427 Brief at 48 n. 22.  Plaintiff concludes

that the interest in making a careful and deliberate determination of a village's eligibility in all disputed cases had been elevated over the interests of speed and finality.

Whatever merit Plaintiff's argument may have had in the early 1970's, by the time ANILCA was enacted, Congress had lost patience with the dragging out of the village eligibility determination process and acted to eliminate that delay. The continued lack of resolution of village eligibility for some villages impeded the smooth implementation of ANCSA for the other villages and regions. This is so because the calculation of entitlement under numerous provisions of ANCSA depends on how many villages are determined eligible in each region. For example, 43 U.S.C. § 1613(a) allocates a certain number of acres (generally referrred to as 12(a) entitlement) to eligible villages depending on their Native population. Regional corporations receive additional acreage entitlement (generally referred to as 12(b) entitlement) for reallocation to the villages pursuant to 43 U.S.C. § 1611(b) in accordance with a formula based on the 12(a) entitlement of all eligible villages.

> (b) The difference between twenty-two million acres and the total acreage selected by Village Corporations pursuant to subsection (a) shall be allocated by the Secretary among the eleven Regional Corporations (which excludes the Regional Corporation for southeastern Alaska) on the basis of the number of Natives enrolled in each region.

It is not possible to calculate the 12(b) entitlement of any region or village until the eligibility of every village is determined. Similarly, the entitlement of Regional Corporations for their own purposes (generally referred to as 12(c) entitlement) cannot be calculated until the eligibility of all villages is finally determined. 43 U.S.C. § 1611(c). Further, the lack of certainty about village eligibility presented an obstacle to complex land exchange and consolidation schemes in

both the Koniag and Cook Inlet regions.

ANILCA, thus, represents a congressional policy of putting the village eligibility issues to rest. Congress did so by reversing the Secretary's determination that certain villages were not eligible in Sections 1427 and 1432 of ANILCA, and by ratifying the determination of Leisnoi's eligibility by identifying it as a village with 12(b) and deficiency entitlements and directing a conveyance to a joint venture including Leisnoi.

Conversely, Congress did not feel the same need to settle with as much rapidity the eligibility of Native Groups, whose eligibility *vel non* does not affect the calculation of 12(b) or 12(c) entitlement for other villages and the regions. Congress knew how to condition the benefits set forth in ANILCA on a final determination of eligibility, as it did in Section 1416 of ANILCA for Tanalian, Inc, the Native Group corporation for Port Alsworth. ("If Tanalian Incorporated is certified as a group under the Alaska Native Claims Settlement Act, Tanalian Incorporated shall be entitled to make selections ....").[4]

Even when dealing with a Native Group Corporation, Congress was careful to provide that nothing in the section on Tanalian "shall alter or affect the acreage entitlements of Cook Inlet Region, Incorporated, or Bristol Bay Native Corporation pursuant to section 12(c)" of ANCSA. ANILCA Section 1416(g). In the same way, Congress was very careful to describe exactly how the Koniag Settlement would be reflected in the calculation of 12(b) entitlements. ANILCA Section 1427(j).

It is simply not possible to ignore the intent of Congress to put the village eligibility issue

---

[4] As plaintiff correctly points out, the eligibility of other Native Groups, but not villages, remained unresolved after the enactment of ANILCA.

Stratman v. Leisnoi, 3:02-cv-0290 (JKS)
US Reply on § 1427                    14

to rest and to proceed, after nine years of delay with the implementation of ANCSA.

    D.  <u>The Ratification of Leisnoi's Eligibility Is Consistent with Subsection 1427(e)</u>

      Plaintiff erroneously argues that because Congress specifically provided in Subsection 1427(e) that seven Koniag villages would be "deemed an eligible village" under ANCSA if those villages filed certain releases of claims (Section 1427(e)(1)), the absence of Leisnoi from that provision indicates that Congress did not intend to ratify Leisnoi's eligibility.  As the Secretary correctly pointed out, Leisnoi and the other villages were treated differently in ANILCA because their legal status was quite different when ANILCA was enacted.

      Congress could not cure the issue of the status of the seven villages listed in Section 1427(e)(2) through ratification.  If Congress wanted to make those seven villages eligible, it had to do so explicitly.  The Secretary had determined that the seven villages listed in that subsection were *ineligible*.  Ratification of that decision would not result in the eligibility of those villages.  Subsection 1427(e), therefore, resembles the situation in *Friends of the Earth v Weinberger,* 562 F.Supp. 265 (D. D.C 1983), discussed above, where the Congress rejected the Executive action and provided a new legal scheme.

      Conversely, the Executive had determined that Leisnoi is *eligible.*  No action other than the acceptance (ratification) of that action was necessary to put the issue to rest.  Congress effected that ratification by a means well-established in the Supreme Court precedent regarding ratification  –  by including Leisnoi in the definition of types of Native corporations having entitlement under ANCSA and directing conveyances be made to a joint venture including Leisnoi.  *See, Alaska; Isbrandtsen-Moller Co. v. United States,* 300 U.S. 139, 147 (1937).

IV.  THE SECRETARY'S INTERPRETATION IS ENTITLED TO CHEVRON DEFERENCE

    A.  <u>Congress Implicitly Delegated To The Secretary Authority To Act With The Force Of Law With Regard to ANCSA and Section 1427</u>

      As explained at pages 9-11 of the Secretary's Brief (Docket # 149), The Courts have repeatedly accorded great deference to the Department of the Interior's interpretation of ANCSA. *Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 (9th Cir. 1990) (according deference to agency's interpretation of ANCSA eligibility requirements for Native groups); *Seldovia Native Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1342 (9th Cir. 1990); *Haynes v. United States*, 891 F.2d 235, 238-39 (9th Cir. 1989); *Aleknagik Natives Ltd. v. United States*, 806 F.2d 924 (9th Cir. 1986). As the Ninth Circuit explained in *Leisnoi v. Stratman,* 154 F.3d 1062, 1068 (9th Cir. 1998): "Because the Secretary of the Interior bears '[t]he principal responsibility for administering [ANCSA]' his interpretations are entitled to 'great weight' upon judicial review."  (Brackets in original).  Congress explicitly delegated to the Secretary the general authority to promulgate regulations to implement ANCSA, 43 U.S.C. § 1624, and the specific authority to determine village eligibility for ANCSA benefits, 43 U.S.C. § 1610.

    In the same way, the Secretary has "primary responsibility" for administering Section 1427 –  itself a section of ANILCA Title XIV, Amendments to the Alaska Native Claims Settlement Act and Related Provisions.  That section requires, *inter alia,* that "the Secretary of Interior shall, under the terms and conditions set forth in this section, convey" the Afognak lands in exchange for the Alaska Peninsula lands.  Section 1427 (b)(1).  In order to make that conveyance the Secretary must be able to determine whether the joint venture agreement tendered to him includes the proper parties and the contains "provisions for sharing of and

entitlements in costs and revenues of such venture as provided" in Section 1427. Section

1427(c). These provisions make it necessary for the Secretary to be able to determine which

entities are eligible for benefits.

*Chevron* deference applies where "Congress would expect the agency to be able to speak

with the force of law when it addresses ambiguity in the statute or fills in the space in the enacted

law even in one about which the Congress did not actually have an intent as to a particular

result." *United States v. Mead Corporation,* 533 U.S. 218, 229 (2001). Good indicators of a

delegation to "speak with the force of law" include authorization to engage in rulemaking, or

instances where there is a "relatively formal administrative procedure tending to foster the

fairness and deliberation that should underlie a pronouncement of such force." *Id.* 229-30. The

process before the Secretary indubitably included a "relatively formal administrative procedure

tending to foster fairness and deliberation." The administrative process included an evidentiary

hearing and three rounds of briefing, including the opportunity to provide briefing to the

Secretary specifically on the interpretation of Section 1427.

Despite this well-established precedent, Plaintiff objects that *Chevron* does not apply

because "Congress either intended to exempt or repeal ANCSA's village eligibility requirements

as to Leisnoi or it did not, but it did not leave a gap" for the agency to interpret. Plaintiff's 1427

Brief (Docket # 171 at 60). One could make the same argument about many of the cases in

which the Ninth Circuit has accorded deference to the Secretary's interpretation of ANCSA. In

*Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, Congress either intended that Natives not

members of the applicant Native Groups to be counted in favor or against the group when

determining the Group's eligibility.  In *Haynes v. United States*, 891 F.2d 235, Congress either

intended to require the Secretary to convey the maximum acreage in a Native allotment

application or it did not.  Plaintiff's argument is without merit.

      B.  Plaintiff's Objection to *Chevron* Deference Is Premised On The Erroneous Theory That This Case Is Governed By The Law Relating To Implied Repeals Rather Than Ratification of Executive Action

      Plaintiff argues that no *Chevron* deference is owing because there is no ambiguity in

Section 1427.  His argument is based upon his erroneous premise that this case is controlled by

the law relating to implied repeals.  He argues that when one applies the narrow rules of

construction applicable to implied repeals, there is no ambiguity for Secretary or the Court to

resolve.  His argument fails because, as shown above, this case involves ratification of Executive

action rather than the implied repeal of a statute.  If there is any lack of ambiguity, it is that,

under the principles of ratification of Executive action, Congress has unambiguously ratified

Leisnoi's eligibility.

      C.  The Fact That The Secretary Disagreed With The IBLA Does Not Lessen The Deference Due The Secretary's Interpretation of Section 1427

      Plaintiff cites *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 416-17 (1993) and *INS v.*

*Cardoza-Fonseca,* 480 U.S. 421, 446 n. 30 (1987) for the proposition that less deference is due

to an agency that has changed its interpretation of a statute.  Plaintiff misunderstands these cases

when he argues that because the Secretary disagreed with the IBLA's analysis, the agency has

changed its interpretation, and is not entitled to deference.

      Under 43 CFR § 2651.2(a)(5), only the Secretary can make a final determination for the

Department of the Interior with regard to village eligibility.  The courts review only final agency

action, 5 U.S.C. § 704.  It is the interpretation of the final agency decision-maker to whom the

courts accord deference.  *Stamper v. Secretary of Agriculture,* 722 F.2d 1483, 1486 (9th Cir.

1984).  When the final decision-maker – in this case the Secretary – disagrees with intermediate

decision-makers such as an administrative law judge or administrative tribunal, the deference

standard does not change -- the intermediate decisions are merely part of the administrative

record to be weighed against other evidence supporting the agency's final decision.  *Eichelberger*

*v. N.L.R.B.,* 765 F.2d 851, 853 (9th Cir. 1985); *Southwest Sunsites, Inc. v. Federal Trade*

*Commission,* 785 F.2d 1431, 1437 (9th Cir. 1986).

    The situation in this case differs crucially from the *Good Samaritan* and *Cardoza-*

*Fonseca* in which the disagreement was not between the final decision-maker and lower officials,

but where the interpretation at the final decision-maker level for the agency changed over time.

Any doubt on this subject has been eliminated by the Ninth Circuit's decision in *Seldovia Native*

*Ass'n v. Lujan,* 904 F.2d at 1344-45, in which the Ninth Circuit rejected an argument that the

Secretary's decision was not entitled to difference because it differed from prior decisions of the

Alaska Native Claims Appeals Board (ANCAB).[5]    The Circuit explained:

>    The Secretary was acting within his paramount power; he was not bound by the
>    construction formulated by a subordinate body such as ANCAB.

*Id.* at 1345.

---

[5] ANCAB was an administrative tribunal within the Department of Interior that considered
appeals of decisions under ANCSA.  *See,* 47 Fed. Reg. 26392 (June 18, 1982).  The function was
transferred to the IBLA when ANCAB was abolished.  *Id.*

D.  The Secretary's Adoption Of The Deputy Solicitor's Opinion Does Not Diminish The Deference Owed

_____The Secretary's decision in this case was memorialized in a one sentence decision adopting a memorandum by the Deputy Solicitor on the subject.  Plaintiff misreads the case law when he argues that adoption of a solicitor's memorandum as an agency's decision disqualifies that decision for deference.

Plaintiff correctly notes that "*post hoc* rationalizations by counsel for agency action are entitled to little deference."  *Security Industry Ass'n v. Board of Governors of Federal Reserve System,* 468 U.S. 137, 144-45 (1984).  But there is nothing "*post hoc"* about the solicitor's memorandum here.  Through adoption by the Secretary, the memorandum became the Secretary's decision, stated by him at the time he made it.  The cases cited by Plaintiff deal with the situation where the agency decision-maker states one basis for a decision, and agency counsel states a different basis in subsequent litigation.

Plaintiff also notes, *citing, Wilderness Society v. U.S. Fish & Wildlife Service,* 353 F.3d 1051, 1068 (9th Cir. 2003 en banc), that Solicitor's Opinions are generally not themselves entitled to *Chevron* deference.  The Ninth Circuit explained why Solicitor's Opinions often do not qualify for *Chevron* deference.

> In terms of the principles set forth in *Chevron* and *Mead,* we likewise conclude that Solicitor's opinions, helpful as they may be to agencies which study them, cannot properly be viewed as an administrative agency interpretation of statute that has the force of law.  Such opinions, which normally are the product of individual lawyers advising their client agencies, and which do not in their formulation involve procedural protections comparable to an agency's rulemaking procedures, do not invoke *Chevron* deference.

351 F.3d at 1068 n. 16.

Stratman v. Leisnoi, 3:02-cv-0290 (JKS)
US Reply on § 1427                         20

While many Solicitor's opinions are not the result of a formal process with procedural safeguards, the Solicitor's memorandum here does qualify for deference because it was the result of a "relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement [having the force of law]."   *United States v. Mead Corporation,* 533 U.S. 218, 230 (2001).   Indeed the procedural safeguards and formality of procedures before the Secretary significantly exceeded those required for rule-making under the Administrative Procedures Act.  See, 5 U.S.C. § 553.

Again, any doubt on this matter is removed by the Ninth Circuit's decision in  *Seldovia Native Ass'n v. Lujan,* 904 F.2d 1335, in which the Ninth Circuit gave deference to the Secretary's interpretation of ANCSA in Secretarial Order S. 3029, which states:

> I hereby adopt the memorandum from the Solicitor, dated October 24, 1978, (copy attached), as the position of the Department....

43 Fed. Reg. 55287 (Nov. 27. 1978).  The Secretarial Order printed the Solicitor's Opinion in full.  *Id.*  That opinion, like the opinion adopted by Secretary Kempthorne, was the product of a formal administrative process through a reconsideration request based on the administrative record.  *Id.*

## V.  IN THE ALTERNATIVE, THE SECRETARY'S INTERPRETATION IS ENTITLED TO *SKIDMORE* DEFERENCE

The Secretary's brief (docket #149) demonstrated at 11-12 that his interpretation of Section 1427 is entitled to *Skidmore* deference even if it is not entitled to *Chevron* deference. Plaintiff's opposition to the application *Skidmore* deference is entirely premised on his argument that this case is controlled by the law relating to implied repeals.  In fact, this case involves

congressional ratification of Executive action.   Because, as shown above, plaintiff's premise is

erroneous, his objection to the application of *Skidmore* deference is without merit.

CONCLUSION

For the foregoing reasons, the Court should affirm the decision of Secretary Kempthorne

that Section 1427 ratified Leisnoi's eligibility.  That ratification disposes of all of the issues in

the third amended complaint, which should be dismissed.

Respectfully submitted this 17th day of July, 2007.

                                             S/ Bruce M. Landon
                                             BRUCE M. LANDON
                                             DEPARTMENT OF JUSTICE
                                             Environment & Natural Resources Division
                                             801 B Street, Suite 504
                                             Anchorage, Alaska 99501-3657
                                             907-271-5452
                                             Facsimile: 907-271-5827

                                             Attorney for Federal Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of July, 2007, a copy of the foregoing Defendant

Kempthorne's Reply On Congressional Ratification of Leisnoi's Eligibility for ANCSA Benefits

was served electronically to the following counsel of record:

John R. Fitzgerald
Michael J. Schneider
Collin Middleton

s. Bruce M. Landon
BRUCE M. LANDON