*reced 8/10/95*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### No. 95-35376

OMAR STRATMAN,

Plaintiff-Appellant

v.

BRUCE BABBITT, Secretary,
United States Department of the Interior;
LEISNOI, INC.; and KONIAG, INC.

Defendants-Appellees

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

### FEDERAL DEFENDANT-APPELLEE'S OPPOSITION TO
### MOTION FOR INJUNCTION PENDING APPEAL

Plaintiff-appellant Omar Stratman seeks an injunction
pending appeal freezing the assets of defendant-appellee Leisnoi,
Inc., and enjoining Leisnoi from harvesting any timber from its
privately-owned lands.  Because the relief sought is not against
the government, our interests in this motion are limited.  We do
have an interest, however, in clarifying that, contrary to the
representations in his motion, Omar Stratman does not represent
the United States, and the relief he seeks cannot and will not
benefit the government or the "public interest."  Stratman is a
private plaintiff, and his transparent purpose in seeking this
injunction is to obtain a private benefit by forcing Leisnoi to
settle with Stratman on Stratman's terms.



EXHIBIT

9

## STATEMENT OF THE CASE

Stratman's statement of the case provides an adequate factual background for the purposes of this motion.  See Mot. at 1-8.

## STANDARD OF REVIEW

This Court recognizes "two interrelated legal tests" governing the issuance of an injunction pending appeal.  Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983).  The "traditional" test, endorsed by the Supreme Court in Hilton v. Braunskill, 481 U.S. 770 (1987), contains four factors.

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

481 U.S. at 776.  The "alternative" test requires the movant to demonstrate either

> a combination of probable success on the merits and the possibility of irreparable injury or [] that serious questions are raised and the balance of hardship tips sharply in its favor.

Chalk v. United States Dist. Ct., Cent. Dist. of Calif., 840 F.2d 701, 704 (9th Cir. 1988).  These standards are not separate but rather represent "the outer reaches of a single continuum." Los Angeles Memorial Coliseum Comm'n v. NFL, 634 F.2d 1197, 1201 (9th Cir. 1980) (L.A. Coliseum).

2

**ARGUMENT**

I

**STRATMAN HAS FAILED TO SHOW THAT HE WILL SUFFER
IRREPARABLE INJURY IF THE INJUNCTION IS DENIED**

Stratman contends that if this Court declines to freeze
Leisnoi's assets and to enjoin Leisnoi from cutting timber on its
lands, then the public and the government will suffer irreparable
injury. Significantly, Stratman does not claim that _he_ will
suffer any injury. As even Stratman admits, even if he were to
succeed on the merits of his lawsuit, he would have no legal
right to any of Leisnoi's money or its lands. Stratman therefore
cannot make the requisite showing that "the _applicant_ will be
irreparably injured absent a stay." Hilton v. Braunskill, 481
U.S. at 776 (emphasis added).

A. Stratman cannot obtain injunctive relief on the basis of
an alleged irreparable injury to the government. -- Although he
admittedly has no interests in Leisnoi's property himself,
Stratman claims to represent the government's interests, and
argues that injunctive relief should be granted to protect the
government's ability to collect a future judgment against
Leisnoi. Mot. at 15-18. First of all, the government is a party
to this suit and is capable of representing its own interests.
Secondly, Stratman's claim that the government would be the
beneficiary of his crusade against Leisnoi is utterly without
legal or factual support.

Stratman states, without any support, that if he were to
prevail on the merits, that "the Government would be entitled to

3

recover not only the land, but also damages and/or restitution for the losses caused by Leisnoi's logging." Mot. at 16. Stratman has never articulated any legal theory under which the United States would be able to recover Leisnoi's land, and the government is aware of no such theory.

Even if Stratman were to succeed in showing that Leisnoi was erroneously certified as a Native village eligible for ANCSA benefits, it is not possible to recover the lands. All of the lands conveyed to Leisnoi pursuant to its ANCSA entitlement were patented to Leisnoi in 1986 or earlier. Because Stratman has, admittedly, no claim to the lands, he may not attack the patent. Northern Plains Resource Council v. Lujan, 874 F.2d 661, 667 (9th Cir. 1989) ("It is well established federal law that a plaintiff must establish his own entitlement to the land before a land patent may be challenged"). Even if Stratman could somehow stand in the government's shoes -- which he does not -- he still could not recover the lands because suits brought by the United States to cancel patents must be brought within six years of the patent's issuance. 43 U.S.C. 1166.[1]

_____

[1]   The United States may avoid that limitation only by alleging specific facts showing that its failure to discover its cause of action within the limitations period was due to concealment by the patentee, or fraud of a self-concealing nature, and that it was not due to negligence or want of diligence. United States v. Puget Sound Traction, Light & Power Co., 215 F. 436, 4318 (D. Wash 1914). Because Stratman has been claiming since at least 1976 that Leisnoi was not entitled to receive the patents, neither he nor the government could credibly claim that they did not discover their cause of action in time to bring a timely suit to cancel the patents.

(continued...)

4

The United States, as well as Leisnoi and Koniag, have repeatedly pointed out to Stratman that his assertion that Leisnoi's lands could be returned to public ownership lacks any legal basis. Stratman has never addressed that criticism, but instead continues to make that unsubstantiated claim in an attempt to create the illusion that his suit is in the public interest.

B.  <u>Leisnoi's logging of its own land does not irreparably injure Stratman or "the public interest"</u>. -- Stratman argues that Leisnoi's timber-cutting activities "threaten irreparable injury to the lands under dispute." Once again, Stratman does not claim, and cannot claim, that <u>he</u> will be irreparably injured if an injunction is denied. Once again, he claims to be acting on behalf of the "public interest" and the government.

Stratman argues that "[i]t is axiomatic that the cutting of timber constitutes an irreparable injury for which a preliminary injunction may issue." Mot. at 13. In support of that overly broad proposition, Stratman cites a string of cases in which logging was enjoined. Each of those cases, however, involved either logging on <u>public lands</u> alleged to be in violation of some

---

[1](...continued)
The Secretary's probable inability to recover the land from Leisnoi, however, would not relieve the Secretary of the duty, under ANCSA, to convey forty million acres to qualified native corporations. If the acres selected by Leisnoi no longer count towards that total, the Secretary must take other public land and convey it to the Native corporations in accordance with 43 U.S.C. 1611(b).

Thus, Stratman's suit will not return land to the public domain, but if successful, it could result in the <u>loss</u> of as much as 115,200 acres -- 180 square miles -- of publicly-held land.

5

environmental law, or a dispute between interest-holders in the lands.  Moreover, in each case, the party requesting the injunction alleged that they would be harmed if an injunction did not issue.  Stratman does not cite any case, however, and we are aware of none, in which this Court has enjoined logging on privately-owned land at the request of a plaintiff with no interest in the property in a case with no allegation that the logging is in violation of environmental laws.

It is not illegal for Leisnoi to cut timber on its own property, and Stratman's complaint does not allege to the contrary.[2]  The only legal basis for his bid to shut Leisnoi down is his contention that Leisnoi does not really own the land and so has no right to cut timber on it.  As explained above, Leisnoi does really own the land -- it was patented to Leisnoi in 1986 -- and neither Stratman nor the government can take it back. Because the land belongs irrevocably to Leisnoi, and because its logging is not alleged to be in violation of any state or federal environmental law, there is no reason for this Court to help Stratman bring Leisnoi to its knees by enjoining its logging activities on its privately-owned lands.

## II

**GRANTING THE INJUNCTION IS NOT IN THE PUBLIC INTEREST**

---

[2]  Although Stratman suggests in his motion for injunction pending appeal that Leisnoi has committed some violations of requirements imposed by Alaska state regulatory authorities, he has not amended his complaint or brought a suit alleging that Leisnoi is in violation of state or federal environmental laws.

6

One of the factors considered in the "traditional" test
governing motions for injunctive relief is "where the public
interest lies." <u>Hilton v. Braunskill</u>, 481 U.S. at 776.  Stratman
argues that the public interest favors granting the injunction,
but in fact it is his private financial interests that Stratman
is seeking to advance.

A.  <u>Stratman is pursuing his own financial interests, not
the public interest</u>. -- Stratman's claim to be a champion of the
public interest is disingenuous at best.  In 1982, Stratman and
Koniag entered into a settlement in this case under which Koniag
agreed to sell Stratman 17,637 acres on Kodiak Island at the
bargain price of $13 per acre, or $233,099.50.  That settlement,
however, ultimately fell through due to the demerger of Koniag
and Leisnoi.  Stratman has since claimed, in a malpractice
complaint recently filed against the lawyer who represented him
at the time, that "[t]he land which [he] was entitled to receive
under the Agreement has a value in excess of $10,000,000.00."
Stratman's willingness to dismiss his claims in exchange for a
$10 million settlement indicates that his concern is for his own
private interests, not the public interest.

Indeed, a recent editorial written by Stratman establishes
that he does not intend to pursue this lawsuit and decertify
Leisnoi.  He is pursuing the lawsuit to try to obtain the
financial benefits he anticipated from the 1982 settlement.
Stratman wrote:

7

I really believe that I now have the capability to decertify Leisnoi and if I wanted to be vindictive, that's what I would do. So what do I want?

Well you have to understand I'm really tired of this fight; it's almost 20 years old. I feel for some of the older Native people who may get hurt if decertification is accomplished.

Even if we follow Circuit Judge Fernandez's reasoning in the Ninth Circuit Court oral argument that any people who signed up to Leisnoi knowing that it did not qualify before the law might well be regarded as "accomplices" to that action,[3] I would not want to bring something like that down on the older Leisnoi shareholders.

I guess what I really want is protection for the green space that we have here. I'd like to get what I bargained for in 1982 plus interest from then until now, and enough to pay my attorney.

In 1982 I had plans to develop this property into a great recreational, buffalo and elk ranch. I don't know if I have the energy to do that now. I believe they got millions in land and cash from the federal government, and if they have frittered it away then I guess they will have to use additional land to pay the bill. My attorney is very expensive, but very capable, so if we don't get what we want we are going to court.

Stratman admits that his goal is not to decertify Leisnoi and return the lands to the public. He himself describes decertifying Leisnoi as "vindictive" and admits it would hurt older Native villagers. He also clearly does not want to return Leisnoi's land to the public domain, even if that were possible; he wants Leisnoi to "use" its land (by selling it? logging it?) "to pay the bill" -- i.e., to pay Stratman. He wants "what [he] bargained for in 1982 plus interest" -- presumably $10 million, if his malpractice complaint is to be believed -- plus enough to

---

[3] This is strictly Stratman's interpretation of Judge Fernandez's questioning.

8

pay his "very expensive" contingency-fee lawyer[4] -- probably
another $3.3 million.  While no law prevents Stratman from using
this lawsuit to obtain a private benefit, he certainly cannot
credibly ask for extraordinary equitable relief on the grounds
that he is pursuing this suit in the public interest.

B.   The public interest in maintaining government control
over public lands is not relevant in this case. -- Stratman
stubbornly persists in pretending that he represents the
government's interests and that Leisnoi's lands are public lands.
He argues that

> The primary interest at stake in the preliminary injunction
> is the public interest in preserving public lands and
> maintaining governmental management and control over them
> during the pendency of actions involving their right or
> title.  In recognition of this interest, preliminary
> injunctions are always granted in favor of the government in
> actions involving a defendant's right or title to public
> lands.

Mot. at 21.  What Stratman refuses to face is that Leisnoi's
lands are not public lands, and Stratman is not the government.
Therefore, the cases he cites discussing the government's
interest in maintaining control over public lands are simply
inapposite.

Stratman attempts to invoke the government's support for his
cause by claiming that "the Government acknowledged at an earlier
stage in this litigation that Stratman's action was indeed

---

[4]   In explaining his delay in bringing his Rule 60(b)(6)
motion, Stratman stated that it took him months to find a lawyer
willing to handle his case on a contingency-fee basis.  See
Stratman's opening brief, Stratman v. Babbitt, No. 93-36006, p.
38.

meritorious * * *." Mot. at 20-21. That statement is absolutely
false. The government has never held or expressed the view that
Stratman's suit is meritorious. What the government did say is
that discovery in other litigation had revealed "substantial
ambiguities and inconsistencies" in the administrative findings
concerning other villages, and that based on those
inconsistencies and Stratman's allegations, the Department of the
Interior wished to conduct an administrative review of Leisnoi's
eligibility determination. See ER 38-44. The government still
holds the view that this matter should be remanded to the
Interior Board of Land Appeals (IBLA) for a determination of
Leisnoi's eligibility. In fact, the district court has issued an
order stating that it will do so unless the case is resolved on
one of several threshhold issues. It is the grossest
exaggeration, however, for Stratman to claim that the
government's intention to conduct an administrative review of
Leisnoi's eligibility constitutes an acknowledgement that
Stratman's suit is meritorious.

### III

**STRATMAN HAS NOT SHOWN THAT HE IS LIKELY
TO SUCCEED ON THE MERITS**

The issue of the likelihood of success on the merits is
likely to be thoroughly briefed in Leisnoi's opposition to
Stratman's motion, and therefore we will confine our response to
several points.

First, Stratman has attempted to ignore the four threshhold
issues pending before the district court that could result in his

10

suit being dismissed.   The district court has not yet ruled on

whether the action should be dismissed for Stratman's failure to

exhaust his administrative remedies; whether res judicata bars

the action; whether Stratman's second settlement agreement with

Koniag precludes Stratman from proceeding against Leisnoi; and

whether Section 1427 of the Alaska National Interest Lands

Conservation Act (ANILCA) constitutes congressional ratification

of Leisnoi's eligibility, thus barring Stratman's suit.   If

Stratman loses on any one of those issues, his suit will be

dismissed.   Stratman has failed to show, as he must, that he will

prevail on all of those threshhold issues.

Second, the district court has ruled that, if it does not

dispose of the case on one of the threshhold issues, then it will

remand the case to the IBLA for a determination of Leisnoi's

eligibility.[5]   Before the IBLA, Leisnoi will be able to argue,

among other defenses, that even if it did not have the requisite

number of resident villagers in 1970, it should still be

certified under the "act of God" exception in 43 C.F.R.

2651.2(b)(2).   That regulation provides that

> (2) The village shall have had on April 1, 1970,
> an identifiable physical location evidenced by
> occupancy consistent with the Natives' own
> cultural patterns and life style and at least 13
> persons who enrolled thereto must have used the
> village during 1970 as a place where they actually
> lived for a period of time: <u>Provided</u>, That no
> village which is known as a traditional village
> shall be disqualified if it meets the other

---

[5]   In 1980, Congress made exhaustion of administrative
remedies in any dispute under ANCSA a statutory prerequisite to
judicial review.   43 U.S.C. 1632(a).

11

> criteria specified in this subsection by reason of
> having been temporarily unoccupied in 1970 because
> of an act of God or Government authority occurring
> within the preceding 10 years.

The particular Act of God that seriously disrupted many villages,

including Leisnoi, was the earthquake and tidal wave of 1964.

Stratman has failed to show that, assuming that Leisnoi did not

have the requisite number of resident villagers in 1970, it

should not be certified anyway under the act of God exception.

Finally, of the three grounds upon which Stratman claims

that he is challenging the Secretary's decision, two are not

presented by his complaint, and the third does not lead to a

conclusion that he will prevail on the merits.  Stratman claims

that 1) the regulations under which Leisnoi was certified are

invalid; 2) the investigation of Leisnoi was inadequate; and 3)

the certification was based on fraud.

Stratman's complaint does not challenge the regulations

under which Leisnoi was certified, and it is too late for him to

amend his 1976 complaint to add this new claim.  See Sierra Club

v. Penfold, 857 F.2d 1307, 1316 (9th Cir. 1988).  Nor have the

regulations, as applied here, been invalidated elsewhere.

Stratman alleges that the regulations were declared invalid in

Koniag v. Kleppe, 405 F.Supp. 1360 (D.D.C. 1975), rev'd on other

grounds, Koniag v. Andrus, 580 F.2d 601 (D.C. 1978), but the

holding in that case applied only to listed villages, which the

court held are "presumptively eligible under the statute."  405

F.Supp. at 1374.  Therefore, that court held, the Secretary could

not impose additional requirements by regulation.  The court's

12

01/04/06  10:12 FAX 907 271 5827    DOJ,ENRD    Ø013

holding did not invalidate the regulations as applied to unlisted villages.    Ibid.    Leisnoi is an unlisted village.

Stratman's complaint also fails to allege fraud.  His original complaint, naming the Secretary as the only defendant, alleged fraud by Leisnoi.  The Secretary moved to dismiss the complaint on three grounds: first, because plaintiffs had failed to join Koniag and Leisnoi, both indispensable parties; second, because the plaintiffs' allegations of fraud were not pled with particularity; and third because the plaintiffs failed to exhaust their administrative remedies. .

The district court agreed that the alleged fraud had not been pled with the particularity required by Fed. R. Civ. P. 9(b), but noted that Stratman contended that his fraud claims were "mere surplusage."  Accordingly, he gave Stratman the option of filing an amended complaint in which he could either drop the fraud allegations or conform them to Fed. R. Civ. P. 9(b). Stratman chose to omit his allegations of fraud from the amended complaint.  Having deliberately omitted fraud charges from his complaint, Stratman cannot be permitted to raise them now, 20 years later.

As for Stratman's allegation that the investigation of Leisnoi was inadequate, even if that were true it does not imply that Stratman will ultimately succeed in decertifying Leisnoi. As explained above, the matter will be remanded to the IBLA, unless it is dismissed on other grounds, and Leisnoi will have the opportunity before the IBLA to offer evidence and testimony

13

supporting its eligibility.  Stratman has failed to show that a more thorough investigation would not produce the same result.

Finally, we observe that Stratman has once again relied on the statement made in 1982 by Koniag's lawyer estimating Stratman's chance of success in the decertification litigation at 90%.  We simply point out that that statement was made by Koniag's lawyer -- not Leisnoi's -- in a hearing in which his object was to persuade a court not to enjoin Koniag from settling with Stratman.  Because it was in his client's interest to portray the risk as high, we suggest that out of the range of possible estimates of the risk, Mr. Henderson probably chose the highest.  We also note that Mr. Henderson's estimate does not include the possibility that the suit could be dismissed on any of the threshhold issues discussed above.

### CONCLUSION

For the foregoing reasons, Stratman's motion for an injunction pending appeal should be denied.

Respectfully submitted,

*Joan M. Pepin*

Joan M. Pepin
Attorney, Appellate Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 23795
L'Enfant Plaza Station
Washington, DC  20026
(202) 514-4519

July 27, 1995

14

## CERTIFICATE OF SERVICE

I certify that, on July 27, 1995, a copy of the foregoing Federal Appellee's Motion for Extension of Time was mailed by first class mail to the following:

Michael J. Schneider, P.C.
880 N Street, Suite 202
Anchorage, Alaska  99501

R. Collin Middleton
Patrick J. McCabe
Middleton, Timme & Luke
550 West 7th, Suite 1600
Anchorage, AK  99501

Edgar Paul Boyko
John Richard Fitzgerald
Edgar Paul Boyko & Associates
711 H Street, Suite 510
Anchorage, AK  99501


Joan M. Pepin
Attorney, Appellate Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 23795
L'Enfant Plaza Station
Washington, DC  20026
(202) 514-4519