2   titled to participate in the Afognak joint venture. I refer

3   Your Honor to 94 Stat. 2371 at 2518 through 28. We're speci-

4   fically listed, so we've been ratified by the U.S. Congress.

5         Your Honor, there is no basis in law or fact to

6   issue a preliminary injunction here, and I'm going to turn

7   this over to Edgar Paul Boyko who will further expand upon

8   that. Thank you, Your Honor.

9         THE COURT: Thank you, counsel. Mr. Boyko?

10        MR. BOYKO: Please the Court and distinguished

11  counsel. I am not going to respond to Mr. Schneider's rather

12  colorful jury argument, but I would allow there -- like to

13  address this Court on the issue of legal and equitable con-

14  siderations, and particularly on the issue of public policy

15  which Mr. Stratman waves as a banner in his attempt at the

16  1995 equivalent of the great train robbery, and I'm borrowing

17  from my distinguished colleague in terms of similes here.

18        The public interest, Your Honor, is indeed involved

19  in this case. And I say this with some feeling because as

20  Your Honor knows, I was one of the handmaidens or midwives

21  that brought into being the Alaska Native Claims Settlement

22  Act which Congress fortified by declarations of policy which

23  stress the importance of settling Native claims, land claims

24  in Alaska, once and for all and with certainty and stability.

25        As Your Honor may recall when I was sworn into

1   office as the Attorney General of the state, the entire state

2   was covered by overlapping aboriginal land claims.  And I've

3   litigated before Your Honor the case against Secretary Udall

4   who had imposed a land freeze which brought basically the --

5   the State of Alaska to a screeching halt, and Your Honor made

6   a correct ruling that he had no legal authority to do so and

7   the Ninth Circuit says, well, yeah, but there's legislation

8   pending, so I think it's premature to -- to do that.

9          I have often been tempted to say to a court in a --

10  let's say, a drug case, well, there's legislation pending to

11  decriminalize marijuana so let's not prosecute anybody.  I

12  don't think the Ninth Circuit was right that time, I think

13  you were right, but in any event, Congress settled that issue

14  with the Alaska Native Claims Settlement Act.

15         And now twenty years later comes Mr. Stratman and

16  says I want to unravel the fabric of the Alaska Native Claims

17  Settlement Act, the distribution of lands, the allocation of

18  -- of resources in an entire region the -- involving the --

19  the Koniag Region, basically, because I represent the public

20  interest.  Well, we know from the record in this case what

21  Mr. Stratman means when he talks about the public interest;

22  he's talking about -- what was it, eighteen thousand acres

23  that he wanted and I don't know how many dollars?  And I am

24  sure if this -- if he succeeds in this raid and gets an in-

25  junction with a nominal bond, that his new demand will be

1   much higher than that, and that he will be able -- thinks

2   he'll be able to extort from this Native village corporation

3   more land and more money for himself, not for the public.

4        The public interest demands that this vixacious

5   litigation be terminated once and for all, and there is

6   nothing in the recent decision of the Ninth Circuit that

7   precludes you from doing that on the merits.  All it said is

8   that he has a right to go back to square one and litigate the

9   merits of his claim as a recreational user who wants to vin-

10  dicate his -- his position as to the -- the validity of the

11  original certification.  Doesn't direct this Court to find

12  for him on it; it simply says the fact that there was this

13  settlement which blew up for one reason or another, doesn't

14  bar him from continuing his litigation, but this Court is --

15  is -- is invited to look at the issue of adminis -- of ex-

16  hausting administrative remedies.

17       And Mr. Fitzgerald has very cogently stated to the

18  Court how on several occasions he failed to pursue his admin-

19  istrative remedies, he failed to -- he failed to -- to appeal

20  from final judgments -- a -- a final judgment of this Court,

21  he lost in the Alaska Supreme Court, he lost here, he lost

22  before the -- the Bureau of Indian Affairs Appeals Board, he

23  lost before the ANCSA Appeals Board, and he's back for more.

24       And for the first time in twenty years, he wants

25  not only to -- to be -- continuing litigating, but he wants

to shut his opponents down. He wants to cut off their one

2  and only source of revenue, he wants to -- to tie up their --

3  their funds. He already has a lis pendens filed on all their

4  land. He wants to have them gagged, bound and helpless, and

5  then cut them up for his own benefit, and he is claiming to

6  do that in the name of the United States Government, which is

7  on the other side from him in this litigation.

8      I -- I -- I guess if you -- if you make a claim

9  outrageous enough, that you can get a hearing, whereas if --

10  you know, if it was a little less crazy, maybe it'd be

11  laughed out of court. I -- I sincerely hope that this Court

12  will not be seduced into -- into granting a preliminary in-

13  junction on this state of the case.

14      If -- if he real -- if it's really true that there

15  are some irreparable harm done from continuing rational,

16  government-permitted and regulated logging operations that

17  have been going on for years -- if that's really such a dan-

18  ger, then the remedy is not to grant a preliminary injunc-

19  tion, but simply to set this case for an early trial and, by

20  golly, if he then prevails, he can have whatever he wants.

21  But not at this moment to disarm and -- and force into bank-

22  ruptcy one of the parties of this litigation on -- on these

23  wild claims which have no substance in law or equity, and

24  which we have demonstrated clearly do not have substance and

25  which -- to which there has been no response in either the

1  pleadings or the oral argument thus far.  And I'm waiting

2  with bated breath what's going to happen in the next fifteen

3  minutes.

4        But in any event, should Your Honor consider, and I

5  -- I sincerely hope and pray that you will not, issuing a

6  preliminary injunction, when it comes to the issue of the

7  bond, clearly there needs to be a determination of the facts

8  as to what the economic impact will be on this defendant

9  corporation.  That was not a proper time to do at this ac-

10  celerated consideration of the merits.  If Your Honor even

11  would consider, we would like to have an opportunity to sub-

12  mit to you economic data to show how this would bankrupt us

13  and cause irreparable harm to Leisnoi.

14        THE COURT:  Would you conclude your argu -- your

15  argument now, counsel, please?

16        MR. BOYKO:  Yes, sir.  Mr. -- let me say one last

17  thing that Mr. Fitzgerald pointed out, and it's in the brief

18  so forgive me for repeating it.

19        What Mr. Stratman has not addressed is that even if

20  he were to prevail somehow on this decertification issue, the

21  -- the Leisnoi Corporation would still keep the land and the

22  government has agreed to that.  It would still be private

23  land, it would still be subject to their rational use and --

24  and disposal.  So there is no way that he can accomplish at

25  the end what he seeks to do in some kind of preliminary,

extraordinary remedy, hoping to kind of slide it by and --

2  and strike a blow that will force us to the bargaining table.

3  I hope Your Honor will see through that and rule accordingly.

4  THE COURT:  Thank you.  Mr. Middleton?

5  **DEFENDANT KONIAG, INC.'S ARGUMENT**

6  MR. MIDDLETON:  Thank you, Your Honor.  Your Honor,

7  I'm only here for the issue that Mr. Schneider rise -- raises

8  on the 1990 agreement with Mr. Stratman.  He has made the

9  motion that the caption should be cleaned up and Koniag dis-

10  missed.  I have -- we -- we posed and I -- I have -- I have

11  finally put into the Court a supplemental memorandum with an

12  affidavit.  The -- the purpose behind the supplemental

13  affidavit was it was becoming apparent that Mr. Schneider --

14  or Mr. sna -- Stratman's motion perhaps was going to an abso-

15  lute dismissal of Koniag based upon the 1990 agreement with

16  Mr. Stratman.  Let me point out a couple of things to the

17  Court.

18  First, the Court has never -- this Court has never

19  ruled on what the meaning of that 1990 agreement is, the

20  Ninth Circuit never ruled on what the meaning of that 1990

21  agreement was, either.  There is a cryptic comment in the

22  Ninth Circuit opinion which has been quoted to you, and I'm

23  sure will be again, of -- in all of the briefing.  It's under

24  a heading called indispensable party and it indicates that

25  Koniag may apparently be dis -- have to be dismissed because

of the agreement.  There's nothing which prevents an indis-
pensable party from being -- from settling with a -- with a
-- another party during the pendency of the litigation.

The meaning of the 1990 agreement has never been
judicially determined by this Court or by any court.  In --
in giving you a supplemental memorandum and an affidavit, I'm
seeking to show factually what I believe that that 1990
agreement called for, and what it called for, I believe, is
that Mr. Stratman was never to reopen this litigation or
affect Koniag's interest which he knew about in 1990; the
interest being in the subsurface estate of all lands which
Koniag -- or which Leisnoi has

The determination of this Court -- the only deter-
mination this Court has made about the standing of Koniag in
this litigation was that it was a necessary party.  The only
determination -- even if you read the Ninth Circuit opinion
was referring somehow or another, though it never says so, to
the 1990 settlement agreement between Koniag and -- and Mr.
Stratman as requiring -- excuse me -- holds that Koniag may
not be an indispensable party.  There's a clear difference
between a necessary party and indispensable party.

One of the things which Mr. Stratman at this point
is trying to tell the Court in this motion -- which, by the
way, has -- it cites us to no rule or no -- nor do I have any
-- is it apparent under what rule it is that Koniag's dismis-

1  sal is sought -- is this a 12(b) motion to dismiss?  Is it a

2  56(f) motion to dismiss?

3         The -- what -- what Mr. Stratman is apparently

4  indicating in this motion is that even though he has settled

5  with Koniag, even though he has settled and said that he

6  would not bring this litigation and he's not going to con --

7  he's not going to live up to his part of the bargain, Koniag

8  nonetheless is precluded from both defending this litigation

9  and defending its interests -- it's subsurface interest in

10  all of the lands which is sought to be -- which the complaint

11  at least seek -- seeks to have returned to the United States

12  or to Mr. Stratman or someone.

13         Not only does -- not only does he say that Koniag

14  shouldn't defend those particular interests, but also he says

15  that Koniag really shouldn't defend the interest that it has

16  in the bargain that it reached with Mr. Stratman.  Clearly,

17  our bargain, as far as we are concerned, is that he was never

18  going to bring this.  Clearly, this is a place where -- this

19  is the proper place to -- to bring that, and this is the

20  proper court to request enforcement of that agreement.

21         But mostly what I'm here to say is that this is not

22  the proper place to determine what the meanings and the para-

23  meters of that agreement really are.  When I said that this

24  is presented to you in -- in the form of a let's-clean-up-

25  the-caption motion, what I -- what I'm indicating to you is

that there are substantial issues, factual issues and other
issues, which need to be resolved, and this is not the proper
place to do so.

The Ninth Circuit opinion does not require the
dismissal of Koniag, it doesn't say so, it doesn't talk about
the 1990 agreement, it does not indicate that Koniag's posi-
tion in this litigation as a necessary party, it mentions
nothing about that. And for those reasons, I oppose having
Koniag stricken from the -- being a -- a participant in this
-- in this litigation. We've been a participant in this
litigation, obviously, since 1976 when it was first formed
and filed before the Court, and will continue to be so. We
will amend the complaint to allege that Mr. Stratman has
violated the terms of the agreement, this is a -- and that
the litigation should not go forward. And -- and we have
presented extrinsic evidence in the form of Mr. Gross' affi-
davit to indicate that that's exactly what we felt that that
-- that decision -- or excuse me -- that agreement stated.

I had also placed in the memorandum a suggestion
that a Rule 16 conference might be of use to determine the
order of things and the way this litigation should proceed.
There's been a great flurry of memoranda back and forth and
motions to discover and so on and so forth since the Ninth
Circuit ruled. And certainly, the salutary effects of Rule
16 are to try to straighten the litigation up so that we know

2   issues.

3       What the -- the mandate from the 1982 Ninth Circuit

4   requests that the Court, for instance, make a (indiscernible)

5   determination as to whether or not Mr. Stratman should have

6   exhausted his remedies.  I don't want to -- I -- I -- I don't

7   want to characterize exactly what the Ninth Circuit said.  I

8   think it says those terms -- clearly, there -- that's an

9   issue that the Court should look at.

10      Clearly, also another issue for the Court to deter-

11  mine was in 1982 there was a -- a request pending by the

12  United States to have the matter sent back to the -- I sup-

13  pose Interior Board of Land Appeals or ANCAB, whatever --

14  whichever of those two organizations.  Clearly, that's some-

15  thing which the Court should consider.

16      In any event, we strongly oppose the Court consi-

17  dering it without Koniag being present.  Unless the Court has

18  other questions.

19      THE COURT:  All right.  Thank you.  Mr. Landon?

20          **DEFENDANT UNITED STATES' ARGUMENT**

21      MR. LANDON:  Morning, Your Honor.  I just have four

22  brief points.

23      The first, of course, is that no relief is sought

24  against the United States, so we're really rather peripher-

25  ally involved in this injunction motion.  However, I did want

1  to clarify because in much of the argument this morning, it

2  seemed as if Mr. Stratman was presuming to speak in the name

3  of the United States; that we do not join in the motion.

4          We have said previously in our filings in this case

5  that eve -- that it is our belief that even if Leisnoi were

6  decertified, that they would still have existence as a state

7  law corporation and that the United States would be barred by

8  1166 of Tile 43 of the U.S. Code from regaining the land, and

9  we also believe that our -- any false claims or fraud act

10 claims that we have -- would have had against Leisnoi are now

11 ba -- now barred by the statute of limitations.

12         So that in -- in focusing on the harm here, there

13 seems to be an assumption that if Leisnoi was improperly

14 certified, the plaintiff is entitled to the relief he -- he

15 seeks.  We don't think that were they decertified, that would

16 be the result.  In addition --

17         THE COURT:  Wait -- wait a minute.

18         MR. LANDON:  Yes, sir.

19         THE COURT:  Does -- does the Government oppose the

20 motion for preliminary injunction?  I assume you do from what

21 you say.

22         MR. LANDON:  I don't -- I don't know whether we can

23 oppose a motion against which no relief has been asked

24 against us, but we do not believe its well taken.

25         THE COURT:  All right.  Go ahead.

MR. LANDON:  And I also notice that there seem to

2  be a discussion today that Mr. Stratman was representing the

3  possible interest of the state or another Native corporation

4  which he posits might get the land were the land to go out of

5  Leisnoi's ownership.  And of course, in a preliminary injunc-

6  tion motion, the harm to be considered is the harm to the

7  plaintiff.  Plaintiff cannot use the putative harms the third

8  parties to -- if -- if the state is concerned about timbering

9  on these lands, it should be the Office of the Attorney Gen-

10  eral of the State of Alaska here asking you to shut down the

11  operations.

12  And in the briefing, I was concerned there.  In

13  plaintiff's reply brief, there was a -- a discussion which

14  suggested that the village eligibility provision on the act

15  of God and act of government was illegal -- invalid under the

16  statute.  There is, of course, a presumption of the validity

17  of regulations.  It is my understanding that quite a number

18  of villages were certified under that provision, and -- and I

19  urge the Court to exercise some caution in approaching that

20  -- that issue.

21  Finally, I -- I would like to strongly support the

22  suggestion of Koniag that the Court hold a -- a status con-

23  ference rather soon.  It seems hardly a day goes by that I

24  don't get a -- a new motion delivered to me, and I think had

25  it not been for your stay order, there would be a lot more

motions already before the Court.  It does seem to me that

2  there are some threshold issues.

3        If there is to be a determination of eligibility

4  and these threshold issues do not preclude Mr. Stratman's

5  claim, it's the Government's view that the proper thing for

6  the Court to do would be to remand the case to the IBLA for

7  initial determination of the eligibility of -- of Leisnoi

8  because that was -- there never was an administrative appeal

9  on that issue.  There was the initial decision, but there was

10 never -- that was never looked at by the agency in one of the

11 administrative appeal tribunals in the Interior Department.

12        I would suggest that the conference would be most

13 useful if prior to the conference each of the parties were

14 asked to submit maybe a five-page paper to suggest what sort

15 of motions they foresee coming up and their suggestions on

16 which would be the most rational way to approach those.  I --

17 I do think that this is one of the most procedurally complex

18 cases that I've ever dealt with and I think that the -- all

19 parties and the Court would benefit from an early status

20 conference.  Thank you, Your Honor.

21        THE COURT:  All right.  Thank you.  Mr. Schneider,

22 you have the right of rebuttal.

23        **PLAINTIFF STRATMAN'S REBUTTAL ARGUMENT**

24        MR. SCHNEIDER:  I think you have about eighteen

25 minutes, Judge, and I'm going to try not to use them.

The U.S.'s position.  Let's remember these are the

2   same folks that gave away the farm here to a non-existent

3   village with no investigation, and now they want to cover

4   that up.  They don't want the light of day to shine on the

5   Secretary's malfeasance here.  Instead, they want to say,

6   hey, we just -- you know, statute of limitations and all that

7   happy stuff, Mr. Stratman can't get where he's going.  There

8   is nothing in 43 U.S.C. 1166 that should bar this claim --

9   nothing.  That's for folks that show up late.  We sued these

10  people about this problem before they got conveyance of the

11  land.

12          We don't care if Leisnoi keeps its state law certi-

13  ficate; that's fine with us.  We just want to get all their

14  land and all their money.  And, yes, it's true, we want to

15  shut them down, we want to take them off the map.  That's the

16  object of our endeavor.  That's the only endeavor we're al-

17  lowed under the state of the pleadings right now; that's it.

18          While it is suggested that it's harm to the plain-

19  tiff that -- that Your Honor ought to consider in granting or

20  denying our request, that only flies where the plaintiff has

21  a direct economic interest.  We wish we did -- we don't.  We

22  just don't.

23          Your Honor's seen -- seen me get a contingency fee

24  of zero before, you know it's a possibility.

25          THE COURT:  Oh, I remember a few months ago --

MR. SCHNEIDER:  Yeah.  I'd like to forget.  I

2  can't.  We've got a right to do what we're doing --

3       THE COURT:  Wait a minute.  The Government's dis-

4  avowing you, in effect.  Mr. Landon --

5       MR. SCHNEIDER:  Well, of course, they're disallow-

6  ing us, Your Honor.

7       THE COURT:  No, I didn't say allowing, avowing.

8       MR. SCHNEIDER:  Disavowing our efforts?  I agree.

9  They are disavowing our efforts.  Let's -- let's look at the

10  only analogy I can -- I can really give to the Court that's

11  out there, that's definite, that's got a few cases on it

12  because this is -- this is an extremely unusual case.  If we

13  look at the False Claims Act setting, bounty hunter statute,

14  okay?  In that setting, the government has a right to come in

15  and disavow.  Usually, they do.

16       The keytam (ph) relater stands up, says I have a

17  claim, the government has so much time to say yes or no, they

18  usually say no, you know, bounty hunter goes on his separate

19  way, brings back scalp, gets a slice of the pie; that's the

20  way it works.  Here, the government is disallow -- disavowing

21  our position; we don't think he can get there, we're not

22  really a party to the motion, we'd kind of like not to see

23  this happen.  That doesn't solve the problem because the

24  irreparable harm is there, the probability of success on the

25  merits is there, these technical defenses --- and, boy, tech-

2   that this village thing under ANCSA is smoke and they just

3   can't get there, so they've got to talk about technical de-

4   fenses, and Your Honor knows that the law on that is very

5   clear -- you don't resolve those at this hearing.  You don't.

6   If you want to fight about those later, we fight about them

7   later, but we don't resolve those things at this hearing.

8           At this hearing, you have a couple of horses with

9   four legs, you have some irreparable harm to the only inter-

10  est that will be served if the lawsuit is successful, and

11  that's not Omar Stratman's, and if -- and if it's there, we

12  should get that injunction.  Where is the record?  I mean, we

13  -- after -- you know, sure, we filed our pleadings quite

14  awhile ago.  These folks have known this injunction motion

15  was coming from December, and what have they done about it?

16  You've got nothing in the record saying they're going to be

17  hurt.  You've got some smoke, you've got no fire; there's

18  nothing in the record.  The extent of the harm, none of that

19  stuff.

20          And if there is and this balancing act -- we've got

21  this in our brief and I'm not going to belabor it -- but

22  where the public interest is really the only interest at

23  stake, then they've got to show an awful lot of harm.  How

24  can they do it when they get to keep the trees and cut them

25  down later?  On the law and the facts, we ought to get this

1   injunction, the bond should be nominal because Mr. Stratman

2   has no direct economic interest.  He'd love to have one,

3   doesn't have one; can't get there from here.

4        The government interest, Your Honor, here is to

5   find by the Alaska Native Claims Settlement Act.  Nothing in

6   this case will change the fixed pie of benefits provided in

7   that act; will not change, can't change it -- can't change

8   it.  What it can do though -- what this case can do is make

9   the government, who seemed to be fairly generous back here

10  when Mr. Fitzpatrick was wandering around in the wind and the

11  rain and didn't want to look at the island too hard, and it

12  -- make them give those benefits to Native groups that are

13  entitled to those benefits.  How is that not in the public

14  interest?

15       And it's not in the public interest -- it's not in

16  the public interest to put the lid on Mr. Stratman just be-

17  cause the government's a little embarrassed about the way

18  they've handled this thing to date.  Your Honor, spe -- Your

19  Honor --

20       THE COURT:  You really hang your hat basically on

21  the public interest question now, don't you?

22       MR. SCHNEIDER:  On the bond issue, I think we have

23  to; on anything else, I don't think we have to.  But on the

24  bond issue, we have to be viewed as public interest liti-

25  gants.  The Court has to say what are our -- what could we do

1  here -- you know, one of the problems is
2  chance to amend the complaint, but if we did, what could we
3  claim?  Could Mr. Stratman, if we wanted to -- if we made
4  this -- if we made this motion a day before Christmas, what
5  could Mr. Stratman get here?  And the answer is zip.  Your
6  Honor said he has no economic claims, the Ninth Circuit has
7  affirmed, he's been thrown out at the State Supreme Court
8  level, he can't get there from here.  If he was a keytam (ph)
9  plaintiff where he could have an economic interest, then by
10  definition -- by statutory definition, he is proceeding on
11  behalf of the government and he would be entitled to this
12  relief without bond.
13          So eith -- he's -- he either gets to be a keytam
14  (ph) plaintiff and is entitled to the relief without bond as
15  a matter of statutory construction, or you look at what this
16  man could get under any conceivable theory and when you cut
17  -- when the answer is zero, he's a public interest litigant.
18  ANCSA itself defines, to use their words, alleged berry pick-
19  ers, like Mr. Stratman, is having the standing, the ability,
20  to challenge bogus Native village corporations, and that's
21  what he's doing; that's all he's doing.  He was part of a
22  citizens' group, the rest of the citizens jumped ship, he's
23  the only guy left.
24          THE COURT:  This may be over-naive, but why -- why
25  don't you have an adequate remedy at law?

1        MR. SCHNEIDER:  I can -- I can explain that, Judge.

2   A number of reasons.  We settled with these guys, with Kon-

3   iag, okay?  Can't sue Koniag.  However, if Koniag keeps fool-

4   ing with this thing, stays in this case, submits many more

5   affidavits, that could change.  But right now, we settled

6   with these people and so we can't sue Koniag yet.  Probably

7   can't sue Koniag unless they give us a couple more good affi-

8   davits to play with.

9        Now we can't sue Leisnoi because we did sue Leis-

10  noi.  That -- all those claims have to be joined, they all

11  when through the process, we got kicked out at the State

12  Supreme Court level.  I mean, we don't have any adequate

13  remedy at law because we've reached the end of the trial with

14  Leisnoi on our individual claims.  The individual claims we

15  tried to assert here Your Honor dismissed, the Ninth Circuit

16  said right on, so we're out of bullets there, too.

17       THE COURT:  Why isn't it better -- being the de-

18  vil's advocate --

19       MR. SCHNEIDER:  Please.

20       THE COURT:  -- why isn't it better to just go ahead

21  with the case as directed by the recent Ninth Circuit deci-

22  sion and decide that -- those issues on the merits rather

23  than get involved here with the kind of an injunction you

24  seek?

25       MR. SCHNEIDER:  Well, I'll tell you why that's not

better, Judge, is 'cause you can't take these two-hundred- to

2  four-hundred-year-old trees, once they're cut down, and glue

3  them back on the stumps.  And you can't take the money from

4  these two-hundred- to four-hundred-year-old trees once

5  they've squandered it, and have it there as a potential

6  source of recovery for the party, probably the U.S., but I

7  don't care who it is, ultimately entitled.

8        You know, we've talked about what's in our com-

9  plaint and what isn't in our complaint.  Lots of stuff could

10  be in our complaint once we get around to amending it.  We

11  could -- we could ask for a constructive trust, we could ask

12  for all kinds of relief.  Even if -- even if under this stat-

13  ute that the government's so proud of, 43 U.S.C. 1166, even

14  if we can't get the land back, we can get a judgment against

15  these people, and we could get a judgment for somebody else.

16        And in the meantime, Your Honor, if Your Honor

17  doesn't grant this injunction, you know what we're going to

18  get at the end of this trail when we win?  Zip.  Because logs

19  are going to be sold, the trees are going to be gone, and

20  they're going to say, well, gosh, I guess we got the money,

21  we got the logs, and we got our state certificate of incor-

22  poration.

23        Well, they can keep the state certificate, but

24  right now they shouldn't be allowed to cut down those trees,

25  they shouldn't be allowed to spend the money, and Your Honor

1   ought to lock up every cent that is something from those

2   operations.  Why?  Because the harm is irreparable by defini-

3   tion, because we've got a lot more than a horse race on the

4   merits, and because in the Ninth Circuit, when that happens,

5   we ought to win.

6           THE COURT:  Where does the money go if I lock it

7   up?

8           MR. SCHNEIDER:  I don't care where it goes.  As

9   long as it stays put --

10          THE COURT:  Well, now wait.  That's not an answer.

11          MR. SCHNEIDER:  No, it isn't an answer.  Let me --

12          THE COURT:  Whose -- whose the --

13          MR. SCHNEIDER:  Yes.

14          THE COURT:  -- whose the court -- to what party is

15  the Court going to direct the funds that have been impounded,

16  shall we say --

17          MR. SCHNEIDER:  Sure, sure.

18          THE COURT:  -- go when we have -- assuming you're

19  correct?  Where --

20          MR. SCHNEIDER:  Yes, let's assume --

21          THE COURT:  Not -- not to Mr. Stratman, you know --

22          MR. SCHNEIDER:  Negative.  Ab -- absolutely --

23          THE COURT:  Not to the government.

24          MR. SCHNEIDER:  Wait, eh, eh, eh, eh, eh -- not to

25  Mr. Stratman, and that's why we're public interest litigants.

2    these benefits came, okay?  What does the government have to

3    do with that money then?  First off, I'd suggest that's not

4    really our problem, but let me -- let me answer the question

5    directly.

6              The government tells us -- and by the way, I'm not

7    inclined to believe these folks, okay?  And we haven't

8    briefed this issue and we haven't thought about it, but if

9    you believe what they say, what they say is we would owe it

10   to some other entitled Native group.  And my answer then

11   directly to Your Honor's question is it's got to go to the

12   government first, they've got to give it to who they owe it

13   to, okay?  Somebody else can fight about that.  But they've

14   got to give it to people that are entitled to it, not people

15   that are unentitled to it.

16             THE COURT:  That sounds like litigation into the

17   twenty-fourth century to me.

18             MR. SCHNEIDER:  It may be, Your Honor, it may be,

19   but my son has expressed an interest in law school, he's in

20   the courtroom today, and anything is possible.

21             THE COURT:  Okay.

22             MR. SCHNEIDER:  Mr. Stratman assures me he has many

23   young and healthy heirs.

24             MR. BOYKO:  My son, Your Honor, graduates from law

25   school on May the 21st.

MR. SCHNEIDER:  MR. DOYKO's ahead of me in that
regard.

Judge, ANCSA is a fixed pie.  You know, everybody
said that, it's true by definition.  They gave the pie away
to people that aren't entitled to it; the pie ought to go to
people entitled to it.  No, they don't want to get their
hands on this pie because they know how it's going to look
when we start opening that box of worms and seeing what was
done and not done here.  It's going to be really hard to
explain why on an -- on an island where everybody knew there
wasn't a village, somebody got the equivalent of a hundred
and fifteen thousand two hundred acres of the best land in
Alaska.  But if we can get that back to the government, we
don't much care what they do with it after that.  They ought
to give it to the people that are entitled, if you believe
them.

If you don't believe them, then I suspect they may
just be able to keep it whether they like it or not.  But
I'll tell you what, they may not like it.  These poor folks
living in Kodiak that like to take the kids out the road to
go fishing in Rosalyn Creek would sure get a kick out of it.
They'd like to be able to go and enjoy the Chiniak Peninsula
with trees, not stumps; those people would think it's a great
outcome.

So whether the government gets this stuff back and

keeps it or whether the government gets -- back and gives

2   to people entitled to it, in either instance, I -- I -- in

3   due respect, I'd suggest the Court's not just in a position

4   to terminate this case because it might be long, difficult,

5   unpleasant, and painful to Leisnoi.  You know, we're not the

6   ones that submitted --

7          THE COURT:  I'm not suggesting that, counsel, but

8   I'm suggesting that -- it seems -- it seems to me that --

9   that we're going to end up in the bog somewhere on what the

10  final result of all this has to be.

11         MR. SCHNEIDER:  You're ab -- Your Honor, that pos-

12  sibility under the law addressing permanent -- forgive me --

13  preliminary injunctions is something we sort out as the pro-

14  cess goes along, and you've got to save the trees in the

15  meantime, save the choices in the meantime on this record

16  with no evidence of harm, no reason to grant opening to brief

17  the matter further, they've had months.  They can sure get a

18  lot of affidavits.  Why can't they get one from somebody

19  saying there's going to be a loss here?  Maybe because there

20  isn't one, maybe because they've got deals that protect them,

21  I don't know, but I know that the record isn't here.

22         And I know that if we take all this stuff -- you

23  know, they've got fifty-some-thousand acres.  We take it away

24  from them, somebody's going to want it, somebody's going to

25  be entitled to it.  Won't be us, but it will be -- it will be

those governments, individuals, or entities defined by the

2  U.S. Congress to be the appropriate recipients of this land,

3  not a non-existent village corporation that flimflammed its

4  way into fifty-three thousand acres of Kodiak Island and

5  hundreds of thousand of bucks worth of ANCSA cash.  And just

6  the fact that that'll -- there will be an empty bag at the

7  end ought to be enough for the Court to grant this in-

8  junction.  It's an injunction, it's not a prejudgment attach-

9  ment.

10        Does your -- do your -- does Your Honor have other

11  questions that you'd like me to address?  Because if you do,

12  I will attempt to, and if you don't, I'll just sit down.

13        THE COURT:  Well, just briefly.  Mr. Fitzgerald

14  dwelled to some --

15        MR. SCHNEIDER:  Sure.

16        THE COURT:  -- extent on this question of whether

17  or not the -- what's involved are public lands or not.

18        MR. SCHNEIDER:  Yeah, and I think that's a good

19  question, and here's the answer to it.

20        They're not public lands in this sense:  When you

21  go down to the title -- you know, Leisnoi's a private outfit,

22  Leisnoi owns title.  Are they public lands?  Heck no.  That's

23  what this lawsuit's about.  When we get down to winning this

24  lawsuit, they'll certainly be public lands.

25        We -- the -- the public interest -- see, in each

one of these situations that we have cited in our brief,

2   there's a statute that allows a private person to stand up

3   and say, hey, wait, okay?  Same sort of thing exists in

4   ANCSA.  In ANCSA, private people, upon consideration of a

5   village corporation, can have a right to go and say, hey,

6   wait a minute, this isn't right, this shouldn't -- this out-

7   fit shouldn't be a village.  That's what we're doing here.

8   It is a perfectly analogous situation.

9        I can't give the Court a situation on point because

10  as Your Honor's figuring out, I'm sure this is going to be a

11  unique case, thank goodness.  It's a unique case, but, you

12  know, that's right, these are private lands, but that's the

13  problem, they shouldn't be private lands, they ought to be in

14  the hands of the public, and then on to the private party

15  entitled.  And wouldn't that private party like to get them

16  with the trees?  You know, let's say they're supposed to go

17  to some other Native --

18       THE COURT:  Maybe they'd rather have the money.

19       MR. SCHNEIDER:  Exactly why -- exactly --

20       THE COURT:  Maybe they would.

21       MR. SCHNEIDER:  -- exactly why Your Honor ought to

22  lock up the funds here.  So even though we -- you know, if

23  you don't stop the logging.  So at least the en -- the Native

24  entity ultimately -- ultimately entitled to these assets gets

25  something.  I mean, they either get the logs or they get the

1  money instead of saying, hey, you don't get either one.

2  Sorry, we've cut down the logs; sorry, we've spent all the

3  money; but we've got some nice grassland out here on the

4  Chiniak Peninsula we'd like to give you like we should have

5  given you back in 1980.  Have a nice day.

6        If -- if the Court -- and by the way, Your Honor, I

7  -- I think -- and I think we got some stuff -- we've got a

8  lot of stuff in our brief, but I think we've got some stuff

9  in our brief on this.  If you just lock up the money, don't

10  stop the logging, don't think we have to post -- I think that

11  bond problem goes way down for us.  So at a minimum, the

12  Court ought to lock up the dough, but I don't think that's

13  going to be a great solace to the parties ultimately entitled

14  to this land who don't get that choice.  Why should that

15  choice not be their's?

16        THE COURT:  Well, of course, you're correct if you

17  win, ultimately.

18        MR. SCHNEIDER:  Yeah, that's right.  And I --

19        THE COURT:  Who knows?

20        MR. SCHNEIDER:  Well --

21        THE COURT:  You know, I've been around here a lit-

22  tle while and I've seen the -- the silliest case win and the

23  best case lose.

24        MR. SCHNEIDER:  Yeah, yeah, and I --

25        THE COURT:  I mean to juries, of course.

MR. SCHNEIDER:  I hope Your Honor didn't take offense at my ready agreement to that suggestion based on some of the things in our past.

But -- but that's why the Ninth Circuit test -- that's why the Ninth Circuit test, when you have irreparable harm, just requires a horse race.  And like I said, two live horses, four legs a horse, that's all we need.  We're much closer than that.  In all of this smoke, Judge, did anybody -- you know, one more time -- did anybody point to the village, talk about twenty-five people?  They're dead meat on that stuff.  That's why they're -- they're off -- we're chasing fairies and dragons and all these technical defenses.  I mean, if -- if anything, their opposition shows we've got a darn good chance of success on the merits.

THE COURT:  Okay.  All right.

MR. BOYKO:  If it please the Court, you asked one question that I would like to give a one-sentence reply to, and that is if they win, the land and the trees still belong to a state corporation known as Leisnoi, Incorporated.  So eventually, it still winds up with Leisnoi and so their but -- their whole argument falls flat on its face.

THE COURT:  All right.

MR. SCHMITT:  Your Honor?  I'm here on behalf of Toni Burton, and we had filed that motion opposing having her removed as a party, and I -- just one comment from Mr.

1  Schneider to -- Toni doesn't need to be here because the

2  Court could direct could direct that planing -- or pleadings

3  be sent.  Well, if they weren't sent, Ms. Burton would lose

4  her ability to ask the Court for relief if she's removed as a

5  party.  And I think that the brief adequately addresses the

6  other points.  We would ask that the Court keep her in or

7  perhaps just direct Mr. Stratman to execute the lis pendens

8  and the other parties to be prohibited from using that in any

9  fashion in this litigation.

10          MR. SCHNEIDER:  That's fine with us.

11          MR. SCHMITT:  A real simple way to do it, but -- I

12  mean, she would very much like to go home and get on with her

13  life.  She's settled with Leisnoi and settled with Koniag,

14  claims against the United States are non-existent and claims

15  against Mr. Stratman are non-existent, but we're -- we're

16  very much a small fish in this big complicated pool here, and

17  if the Court could use its power here to get the parties to

18  get her out, we'd very much appreciate it.

19          THE COURT:  Let her out?

20          MR. SCHMITT:  Well, let her --

21          THE COURT:  I'm not -- I didn't hear what you said.

22  Let her out?

23          MR. SCHMITT:  In as sense, yeah, let her out of

24  this courtroom and -- and -- and out of this having to moni-

25  tor the pleadings.

1      THE COURT:  Do you want her dismissed as a party?

2      MR. SCHMITT:  Well, we don't want do unless we can

3  have that -- the lis pendens executed with the agreement from

4  the defendants that they aren't going to use it against Mr.

5  Stratman.  That's their concern as I mentioned in my opposi-

6  tion.  Without that, Ms. Strat -- Ms. Burton has to remain in

7  here to make sure that her rights are not impaired in some

8  fashion.

9      THE COURT:  Thank you.

10      MR. FITZGERALD:  Your Honor, may I address that

11  limited point?

12      THE COURT:  Go ahead.

13      MR. FITZGERALD:  Thank you.  It's fascinating that

14  Stratman is willing to let Burton keep land that was conveyed

15  from Leisnoi.  Here he purports to speak on behalf of the

16  government, but for his former co-hort in this frivolous

17  litigation, he says, well, it's okay for that party to keep

18  land that was originally conveyed to Leisnoi and then con-

19  veyed to Burton.  So I just make that -- that one point, Your

20  Honor.  If -- the lis pendens is there.  If for some reason

21  we were to lose the land, why would Burton be entitled to

22  keep it?  And the fact that Stratman says it's okay for my

23  co-hort to keep the land, I just don't want Leisnoi to keep

24  it, indicates he's not acting in the public interest.  Thank

25  you.

1      THE COURT:  All right.  The motion is submitted.  I

2  need to review my notes on what I've heard today.  Counsel

3  will receive notification in writing of the Court's decision.

4  I do not anticipate a lengthy delay.  We will adjourn till

5  the call of the gavel.

6      THE CLERK:  This Court is now adjourned subject to

7  call of the gavel.

8      (Whereupon, the proceedings in the above-entitled matter

9      were adjourned at 10:58 o'clock a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Donna K. Chertkow*
Donna K. Chertkow, Transcriber

4/24/95
Date

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Secretarial Assistance Service**
7033 Henderson Loop    Anchorage, Alaska  99507
Telephone/FAX   (907) 349-5259